DUANE MORRIS LLP
Gregory P. Gulia
1540 Broadway
New York, N.Y. 10036-4086
Telephone: 212.692.1000

and

Edward M. Cramp (*pro hac vice*)
Michelle Hon (*pro hac vice*)
101 West Broadway, Suite 900
San Diego, CA 92101-8285
Telephone: 619.744.2200

Attorneys for Defendants
MP3TUNES, LLC and
MICHAEL ROBERTSON

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC.; | No. 07 Civ. 9931 (WHP) |
| Plaintiffs, | DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA |
| v. | ORAL ARGUMENT REQUESTED |
| MP3TUNES, LLC AND MICHAEL ROBERTSON, | |
| Defendants. | |

## TABLE OF CONTENTS

page

TABLE OF AUTHORITIES ........................................................................................ iii, iv

I.   INTRODUCTION ............................................................................................... 1

   A.   The Parties ................................................................................................ 2

      1.   MP3tunes ........................................................................................ 2

      2.   Michael Robertson ......................................................................... 4

      3.   EMI .................................................................................................. 4

   B.   Factual and Procedural Background ......................................................... 5

II.  ARGUMENT ...................................................................................................... 8

   A.   This Case Must Be Dismissed Under The First To File Rule ................... 8

      1.   This Action Must Be Dismissed In Favor Of The First-Filed Action
           Currently Pending In The Southern District of California ............... 8

      2.   Any Decision Regarding Exceptions Under The First To File Rule Must
           Be Decided By The Court Hearing The First-Filed Action ............ 10

      3.   Anticipation of Litigation, Without More, Does Not Warrant An
           Exception To The First To File Rule ............................................. 10

   B.   Plaintiffs Failed To Make A Prima Facie Showing of Jurisdiction Over
        Robertson And MP3Tunes ...................................................................... 12

   C.   There Is No General Jurisdiction Over MP3Tunes Under N.Y. C.P.L.R. Section
        301 ........................................................................................................ 14

   D.   There Is No Specific Jurisdiction Over MP3Tunes Under N.Y. C.P.L.R. Section
        302 ........................................................................................................ 15

   E.   There Is No Jurisdiction Over Michael Robertson .................................. 15

      1.   There Is No General Jurisdiction Over Robertson Under N.Y. C.P.L.R.
           Section 301 ................................................................................... 16

      2.   There Is No Specific Jurisdiction Over Robertson Under N.Y. C.P.L.R.
           Section 302 ................................................................................... 16

3.  Exercising Jurisdiction Over Robertson Would Violate Constitutional Due Process ....................................................................................................... 17

F.  The Action Should Be Dismissed Under FRCP 12(b)(3) For Improper Venue.............. 18

G.  Alternatively, the Action Should Be Transferred To The Southern District Of California For The Convenience Of The Parties And In The Interest Of Justice ........... 18

1.  Convenience of Witnesses and Location of Relevant Evidence ........................... 19

2.  Locus of Operative Facts ....................................................................................... 19

3.  Convenience Of The Parties ................................................................................. 20

4.  Availability Of Process To Compel Testimony Of Unwilling Witnesses............. 20

5.  Transferee Forum's Familiarity With The Governing Law ................................... 20

6.  Relative Means Of The Parties .............................................................................. 21

7.  Plaintiff's Choice Of Forum .................................................................................. 21

8.  Trial Efficiency And Interests Of Justice .............................................................. 21

II.  CONCLUSION ....................................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

page

800-Flowers, Inc. v. Intercontinental Florist,
860 F. Supp. 128 (S.D.N.Y. 1994) ............................................................................21

Aerotel, Ltd. v. Sprint Corp.,
100 F. Supp. 2d 189 (S.D.N.Y. 2000) ........................................................................14

Archer Daniels Midland Co. v. Aon Risk Servs.,
187 F.R.D. 587 (D. Minn. 1999) ...............................................................................20

Arista Records Inc. v. MP3board, Inc.,
2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. August 28, 2002) .......................................5

Brinkmann v. Adrian Carriers, Inc.,
815 N.Y.S.2d 196 (App. Div. 2006)...........................................................................16

Citigroup Inc. v. City Holding Co.,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ....................................................................10, 14

D.H. Blair & Co. v. Gottdiener,
462 F.3d 95 (2d Cir. 2006) ..........................................................................................7

Daniel v. Am. Bd. of Emergency Med.,
428 F.3d 408 (2d Cir. 2005) ......................................................................................22

Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County,
542 F. Supp. 1317 (S.D.N.Y. 1982) ...........................................................................10

Duncan v. Nu-Life, Inc.,
1998 U.S. Dist. LEXIS 1729, 97 Civ. 7350 (S.D.N.Y. Feb. 17, 1998)......................17

First City Nat'l Bank & Trust Co. v. Simmons,
878 F.2d 76 (2d Cir. 1989) ........................................................................................18

Fort Knox Music, Inc. v. Baptiste,
139 F. Supp. 2d 505 (S.D.N.Y. 2001) ..............................................................12, 13, 22

Fort Knox Music, Inc. v. Baptiste,
203 F.3d 193 (2d Cir. 2000) ......................................................................................17

Frummer v. Hilton Hotels International Inc.,
19 N.Y.2d 533 (1967)..................................................................................14

GT Plus v. Ja-Ru, Inc.,
41 F.Supp.2d 421 (S.D.N.Y. 1998) ...............................................................9

Gaines, Emhof, Metzler & Kriner v. Nisberg,
843 F. Supp. 851 (W.D.N.Y. 1994).............................................................18

Genentech v. Eli Lilly & Co.,
998 F.2d 931 (Fed. Cir. 1993) ...........................................................12, 14

Jazini by Jazini v. Nissan Motor Co., Ltd.,
148 F.3d 181 (2nd Cir. 1998) ...........................................................14, 15

Kwatra v. MCI, Inc.,
1996 U.S. Dist. LEXIS 17883 (S.D.N.Y. Dec. 3, 1996) ...............................21

Laufer v. Ostrow,
55 N.Y.2d 305 (N.Y. 1982) .........................................................................16

National Equipment Rental, Ltd. v. Fowler,
287 F.2d 43 (2d Cir. 1961) ...........................................................................9

New York v. Exxon Corp.,
932 F.2d 1020 (2d Cir. 1991)........................................................................8

PDK Labs, Inc. v. Friedlander,
103 F.3d 1105 (2d Cir. 1997) ......................................................................12

Pacesetter Systems, Inc. v. Medtronic, Inc.,
678 F.2d 93 (9th Cir. 1982)..........................................................................11

Seinfeld v. Bartz,
2001 U.S. Dist. LEXIS 7168 (S.D.N.Y. June 1, 2001) ..................................19

Siegel v. Holson Co.,
768 F. Supp. 444 (1991) ...............................................................................17

Smith v. M'Iver,
22 U.S. 532 (1824) .........................................................................................8

Starmedia Network, Inc. v. Star Media, Inc.,
2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 23, 2001) ..........................13, 15

Stewart Org., Inc. v. Ricoh Corp.,
487 U.S. 22 (1988) ........................................................................................................... 19

Warner Bros. Entm't v. Ideal World Direct,
516 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................................................................... 12

Wiwa v. Royal Dutch Petroleum Co.,
226 F.3d 88 (2nd Cir. 2000) ............................................................................................ 14

## STATUTES

17 U.S.C. § 512 ....................................................................................................... 5,9,11

28 U.S.C. § 1391(b) ........................................................................................................ 18

28 U.S.C. 1404(a) ................................................................................................... 1, 18,19

28 U.S.C. § 1406 ............................................................................................................. 18

Fed. R. Civ. P. 12(b)(2) ..................................................................................................... 1

Fed. R. Civ. P. 13(a) ...................................................................................................... 12

Fed. R. Civ. P. 30(b)(6) ................................................................................................... 20

*Federal Practice & Procedure: Civil 2d § 2103*, pp ........................................................ 20

California Business & Professions Code § 17200 ....................................................... 8, 9, 11

N.Y. C.P.L.R. § 301 ............................................................................................. 13,14, 16,

N.Y. C.P.L.R. § 302 ........................................................................................ 13, 15,16, 17

## OTHER AUTHORITIES

Moore's Federal Practice, Civil §111.13 ........................................................................... 9

## I.    INTRODUCTION

Defendants MP3tunes, LLC ("MP3tunes"), a corporation with its office located in California, and Michael Robertson ("Robertson"), an individual residing in California (collectively "Defendants"), move to dismiss all of plaintiffs' ("Plaintiffs") claims pursuant to the First to File Rule, and Federal Rules of Civil Procedure ("FRCP") Rules 12(b)(2) and 12(b)(3). Defendants' Motion should be granted because (i) under the First to File rule, the action should be heard in the Southern District of California; (ii) personal jurisdiction does not exist over MP3tunes or Robertson in New York; and (iii) venue is improper in New York, or in the alternative venue should be transferred under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.

This case must be dismissed under the First to File Rule. It is undisputed that MP3tunes filed the first action in the Southern District of California. Both cases involve the same operative facts and legal issues arising from allegations relating to websites operated by MP3tunes. Therefore, the action must be heard in the Southern District of California.

Furthermore, there is no personal jurisdiction over MP3tunes or Robertson. Plaintiffs have made only vague and general allegations that "Defendants have continuous contacts in the State of New York and its residents." Plaintiffs have made no effort to establish even a single requirement under any of the New York jurisdiction statues. It would be unreasonable to exercise jurisdiction under the due process test.

Venue is improper because there is no personal jurisdiction over MP3tunes or Robertson. Venue should be transferred in the interest of justice and the convenience of the parties. All factors favor transfer to the Southern District of California: (1) almost all of the witness and evidence are located in the Southern District of California; and (2) Defendants and Plaintiffs are

all either residents of or qualified to do business in California. Failure to dismiss or transfer this case will result in two cases pending simultaneously on the same subject matter and may lead to inconsistent results.

Defendants further note that the Court need not resolve the personal jurisdiction issues or venue issues to dismiss this action or to order it transferred to the Southern District of California. Under the First to File Rule, the Court must dismiss this action in favor of the first filed action currently pending in the Southern District of California. This litigation has little or no nexus with the State of New York and all of the pertinent factors favor litigation of Plaintiffs' claims in the Southern District of California. Dismissal or transfer is appropriate even if Plaintiffs somehow manage to make a *prima facie* showing of personal jurisdiction over Defendants in New York. Plaintiffs will not be prejudiced in any way by litigating this case in the Southern District of California.

A.     The Parties

1.     MP3tunes

MP3tunes is a small start-up company located in San Diego California with only 15 employees. Robertson Decl. ¶¶ 4-5. MP3tunes offers a variety of services through its websites www.sideload.com and www.mp3tunes.com. *Id.* at ¶ 9. For example, on the www.mp3tunes.com website ("mp3tunes.com"), MP3tunes sells digital music files, commonly known as "mp3" files, through the MP3tunes Store.[1] *Id.* MP3tunes also offers free online storage called "lockers" for users to store the music they purchase from the MP3tunes store or other retailers such as iTunes or Amazon. *Id.* at ¶ 10. The lockers are populated by users, who must enter their user name and password to access their locker. *Id.* Music files cannot be

---

[1] *See* http://store.mp3tunes.com/store.php

2

transferred or shared directly between lockers. *Id.* MP3tunes users can utilize a software program called "LockerSync" to load music into their storage locker. *Id.* at ¶ 11. This requires their unique user name and password. *Id.*

MP3tunes also provides a search engine for free music downloads available on third-party websites via its www.sideload.com website ("sideload.com"). *Id.* at ¶ 12. No files are stored on sideload.com or transmitted to users from sideload.com. *Id.* The free music downloads come from a variety of sources, including promotional music offered for free through online music magazines such as Spin and Filter[2] and other popular online sources such as Salon.com and MTV.com.[3] *Id.* at ¶ 13. Free promotional downloads are also available on the websites associated with music events such as South by Southwest.[4] *Id.* at ¶ 14. Additionally, many labels offer music downloads on their websites.[5] *Id.* at ¶ 15. The search engine is populated solely by MP3tunes users. *Id.* at ¶12.

MP3tunes is incorporated in Delaware; however, its sole office is located in San Diego, California. *Id.* at ¶ 4. It is not authorized to transact business in any other state. *Id.* at ¶ 5. All of MP3tunes' employees are located in San Diego. *Id.* at ¶ 7. All of MP3tunes officers and owners also reside in California. *Id.* All of MP3tunes' servers are located in San Diego. *Id.* at ¶ 8. As such, any alleged copyright infringement, whether direct or indirect would have to take place in San Diego. Therefore, almost all of the witnesses and evidence relating to Plaintiffs' infringement allegations will be in California.

---

[2] *See* http://www.spin.com/features/band_of_the_day/.

[3] *See* http://www.salon.com/ent/audiofile/archive_by_alpha/index.html and http://www.mtv.com/music/downloads/

[4] *See* http://2005.sxsw.com/music/showcases/band/19433.html

[5] *See* http://www.subpop.com

MP3tunes has no connection to New York. MP3tunes has no bank accounts or property in New York, has no phone listing in New York, has no agents in New York, does not use or rely on any individuals or companies in New York to promote its interests, has never solicited business in New York, and has no contracts anywhere to supply goods or services in New York. *Id.* at ¶ 5.

### 2.    Michael Robertson

Robertson is the Chief Executive Offer of MP3tunes. Robertson Decl. ¶ 1. Robertson has been a resident of San Diego, California since 1985 and does not own any property in New York. *Id.* at ¶ 2. Robertson does not transact business on behalf of MP3tunes in New York, either personally or through any agent. *Id.*

### 3.    PLAINTIFFS

Plaintiffs are wholly owned divisions or subsidiaries of EMI Group Limited, which claims to be the "world's leading independent music company operating directly in 50 countries, with licensees in a further 20 countries." Declaration of Michelle A. Hon ("Hon Decl.") ¶ 5. Plaintiffs' music and publishing catalogs are listed on the EMI Group Limited website at http://www.emigroup.com/About/Music/EMI+Music +catalogue.htm and http://www.emigroup.com/About/Music/EMI+Music+Publishing+catalogue.htm respectively. *Id.* at ¶ 6.

All Plaintiffs are either California corporations or qualified to do business in California.[6] *Id.* at. ¶ 3 and Exhibit A.

---

[6] EMI Full Keel Music and EMI Longitude Music are listed in the Complaint as "duly organized corporations" but with no statement as to where the companies are allegedly incorporated. Hon Decl. ¶ 4. A diligent search, which included a Dun and Bradstreet search, did not find any record of a corporation under either of these names. *Id.* at ¶ 4. Thus, MP3tunes is uncertain of the form of these businesses. They are believed to be publishing companies owned by EMI and doing business and subject to jurisdiction in California.

B.    Factual and Procedural Background

On or about September 4, 2007, Plaintiffs, through counsel, sent MP3tunes a cease and desist letter which, although deficient, purported to serve as a take down notice under 17 U.S.C. § 512, commonly referred to as the "safe harbor" provision of the Digital Millennium Copyright Act ("DMCA"). Robertson Decl. Exhibit A. The September 4, 2007 letter alleged that MP3tunes infringed Plaintiffs' copyrighted works and purported to provide required notice under 17 U.S.C. § 512(c)(3)(A)(ii). A CD-ROM was enclosed which contained a spreadsheet listing approximately 350 song titles, artists and URLs that Plaintiffs claimed to be infringing its copyright. Numerous URLs listed in the notice clearly were not infringing as they were from well known and reputable organizations such as *Filter*, *Spin*, and *Paste Store*. Robertson Decl. ¶ 18.

The notice was deficient, in part, because Plaintiffs failed to properly identify all of the allegedly infringing links it wanted removed. Instead Plaintiffs directed MP3tunes to the EMI catalog of artists purportedly listed on Plaintiffs' website at www.emigroup.com/About/Music/Default.htm and demanded that MP3 remove all of Plaintiffs' copyrighted works, even though the works were not specifically identified. This is not sufficient to substantially comply with the notice requirement of the DMCA. Arista Records Inc. v. MP3board, Inc., 2002 U.S. Dist. LEXIS 16165, *43 (S.D.N.Y. August 28, 2002) ("[Plaintiff's] letter did not constitute an effective notification to [defendants] pursuant to the DMCA because it listed solely artists' names, and neglected to specify any links or even particular songs.").[7]

---

[7] Counsel for EMI (and author of the September 4, 2007 notice) is well aware of the holding in *Arista* and the requirement to provide specific URLs for any allegedly infringing websites as Mr. Fabrizio was counsel of record in the *Arista* case, which was also cited in EMI's Motion to Dismiss in the Southern District of California action.

However, relying on Plaintiffs' notice, despite its deficiencies and misrepresentations, MP3tunes promptly removed all of the URLs listed in the September 4, 2007 letter. Robertson Decl. ¶ at ¶ 19. Thereafter, MP3tunes contacted counsel for Plaintiffs to confirm that the URLs had been removed and suggested that Plaintiffs and MP3tunes work on a plan to protect Plaintiffs' copyrights. *Id.* Plaintiffs made it clear that they expected a substantial monetary payment in order to resolve the dispute. *Id.*

On or about September 13, 2007, MP3tunes, though its counsel, sent a letter to Plaintiffs' counsel responding to the cease and desist letter. Robertson Decl. Exhibit B. The letter enumerated deficiencies in Plaintiffs' notice and numerous material misrepresentations relating to non-infringing URLs. *Id.* at ¶ 20. MP3tunes also set forth its proposed resolution, namely that if Plaintiffs complied with their obligations under the DMCA by providing a list of tracks to which Plaintiffs owned the copyright, providing information reasonably sufficient to permit MP3tunes to locate the material, and accurately represent that the listed tracks are not legally available for downloading, then MP3tunes would disable the songs from its website. *Id.*

In its September 18, 2007 letter, Plaintiffs rejected this proposal, insisting that any meaningful proposal must "redress past infringements" (apparently referring to its prior insistence on a large monetary sum). Robertson Decl. ¶ 21 and Exhibit C. Plaintiffs also accused MP3tunes' counsel of having an actual conflict of interest in the matter as representing an EMI affiliate, Caroline Records. *Id.* at 22. The letter also reiterated Plaintiffs' allegations of infringement and invited MP3tunes to either make a "meaningful proposal" or decide to litigate the issue. *Id.* MP3tunes chose the latter.

MP3tunes filed a Complaint in the Southern District of California on September 20, 2007, seeking damages, costs and attorneys' fees for the material misrepresentations of Plaintiffs

and declaratory relief that MP3tunes is a service provider as defined by the DMCA; that MP3tunes's conduct falls within the safe harbor provisions of the DMCA; that the notice provided by Plaintiffs was deficient; to the extent that such notice was not deficient, that MP3tunes complied with its obligations under the DMCA; and that MP3tunes' conduct did not constitute copyright infringement. The Complaint was served on October 23, 2007. Hon Decl. ¶ 7.

On October 25, 2007, after the MP3tunes' Complaint was served, Plaintiffs sent two additional cease and desist letters: one from "EMI Music Group North America" and one from "EMI Entertainment World." Robertson Decl. at ¶ 25 and Exhibit D. The letter from EMI Music Group North America was almost identical to the September 4, 2007 letter from the same party, with a new allegation that MP3tunes violated pre-1972 works in violation of common law copyright and with a different CD-ROM with new songs. The EMI Entertainment World letter was similar, but alleged infringement of sound recordings. The two letters appeared to have the same deficiencies and material misrepresentations as the September 4, 2007 letter. Despite the deficiencies and misrepresentations, MP3tunes promptly disabled all the songs listed in both letters and notified Plaintiffs of the removal. *Id.* at ¶ 26.

Plaintiffs then waited until November 9, 2007 to file the instant action, alleging copyright infringement, common law copyright infringement and unfair competition. Complaint (Docket No. 1). Plaintiffs' Complaint was not filed by EMI Music Group North America or EMI Entertainment World. Instead the complaint was filed by individual record labels and publishers owned by Plaintiffs.

MP3tunes named EMI Music North America, EMI Group North America and EMI Group Holdings North America as defendants in its original Complaint in the Southern District

7

of California based in the representation in the September 4, 2007 cease and desist letter. These defendants did not dispute that they owned the copyrights at issue. However, because individual record labels and publishers have alleged at least some interest in or to Plaintiffs' copyrights, on December 3, 2008, MP3tunes filed an Amended Complaint adding the individual record labels and publishers, facts and claims related to the October 25, 2007 cease and desist letters, and an action under California Business & Professions Code § 17200. Hon Decl. ¶ 7 and Exhibit C. Thus, all Plaintiffs are named defendants in the Southern District of California action.

II.    ARGUMENT

    A.    This Case Must Be Dismissed Under The First To File Rule.

        1.    This Action Must Be Dismissed In Favor Of The First-Filed Action Currently Pending In The Southern District of California.

It is well established under the First to File Rule that where an action is brought in one federal district court and a later action embracing the same issues is brought in another federal court, the action must be heard in the court where it is first filed. Smith v. M'Iver, 22 U.S. 532, 535 (1824) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it."); see also New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991) ("The 'first filed' rule states that 'where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action'") (citations omitted); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989); D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Deference to the first filing "embodies considerations of judicial administration and conservation of resources." First City Nat'l, 878 F.2d at 80 (citations omitted). In fact, the first-filed court "may enjoin the suitor in the more recently commenced

case from taking any further action in the prosecution" of the later filed case. <u>National Equipment Rental, Ltd. v. Fowler,</u> 287 F.2d 43, 45 (2d Cir. 1961) (citations omitted).

     The Complaint filed by MP3tunes in the Southern District of California was filed well before the instant action and involves the same issues and the same parties. All plaintiffs in the instant action are named defendants in the first-filed Southern District of California action. Both cases involve the same operative facts and address allegations of copyright infringement based on the websites operated by MP3tunes (www.sideload.com and www.mp3tunes.com), Plaintiffs' take down notices, and the safe harbor provisions of the DMCA. MP3tunes' Amended Complaint seeks damages, costs, attorneys' fees and injunctive relief for violation of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 512(f), violation of California Business & Professions Code § 17200, and a declaration that (i) the sideload.com and mp3tunes.com websites and Oboe software do not directly or contributorily infringe or induce others to infringe Plaintiffs' copyright, (ii) MP3tunes is a "service provider" as defined under the DMCA, (iii) MP3tunes falls under the safe harbor provisions of the DMCA § 512 (a), (b), (c) and/or (d) Plaintiffs' take down notice was deficient, and (iv) to the extent the take down notices were not deficient, MP3tunes fully complied with its obligations under DMCA § 5121(c) and/or (d). Hon Decl. Exhibit C.

     The fact that MP3tunes filed an Amended Complaint has no effect on the First to File Rule. Courts generally apply the First to File Rule <u>in favor</u> of plaintiffs who first file a complaint, but later amend it to include all causes of action in the later filed complaint. <u>GT Plus, v. Ja-Ru, Inc.,</u> 41 F.Supp.2d 421, 424 (S.D.N.Y. 1998) (court transferred action to court where earlier action had been filed, when that suit, after amendment of complaint, raised all substantial issues between parties); see also Moore's Federal Practice, Civil §111.13(1)(o)(2)(A).

9

This action and the first-filed action in the Southern District of California both embrace the same issues of fact and law. Thus, the Court should dismiss the instant case as the later filed action.

2.    Any Decision Regarding Exceptions Under The First To File Rule Must Be Decided By The Court Hearing The First-Filed Action.

Courts may make an exception to the First to File Rule only in exceptional cases. However, the decision as to whether special circumstances dictate an exception to the First to File Rule must be made by the district court hearing the first-filed action. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000). "Absent such a rule, there exists the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort." Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County, 542 F. Supp. 1317, 1321. (S.D.N.Y. 1982) (dismissing New York action in favor of the first filed action in California). This is particularly true here, where Plaintiffs have sought an exception to the First to File Rule in a Motion to Dismiss currently pending before the Southern District of California. Thus, this Court need not and should not consider whether this is an exceptional case under the First to File Rule.

3.    Anticipation of Litigation, Without More, Does Not Warrant an Exception to The First-To-File Rule.

In its Motion to Dismiss, pending in the Southern District of California, and its letter to the Court dated February 6, 2008, Plaintiffs argue that they are entitled to an exception to the First to File Rule, arguing that MP3tunes' Complaint is an anticipatory declaratory relief action. This argument mischaracterizes the law and the nature of MP3tunes' Complaint.

MP3tunes is familiar with Gribin v. Hammer Galleries, 793 F.Supp. 233 (C.D. Cal. 1992), cited in Plaintiffs' February 6 letter. In that case, the plaintiff sought only declaratory relief and had no affirmative claims. The Gribin Court did not address the First to File Rule. In

10

fact, when the *Gribbin* Court entered its ruling no second action had even been filed. The Court merely exercised its discretion under the Declaratory Relief Act and declined to exercise jurisdiction over a declaratory relief action.

Conversely, MP3tunes' first filed action is not merely a "declaratory relief" action. MP3tunes seeks damages, including treble damages, costs, attorney fees, and injunctive relief under the DMCA, 17 U.S.C. § 512(f), and California Business & Professions Code § 17200. Thus, MP3tunes' declaratory relief action is only one of three separate causes of action. Regardless, "[t]he considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." Genentech v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed. Cir. 1993). Therefore, this argument must fail.

Plaintiffs further argue that the first-to-file rule should not be applied because MP3tunes knew that Plaintiffs threatened litigation. Anticipation of a coercive suit, without more, is not sufficient to create an exception to the First to File Rule. The Court must consider numerous factors, including convenience and availability of witnesses, absence of jurisdiction of all or some of the parties, and possibility of consolidation with related litigation. Genentech, 998 F.2d at 937; Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93 (9th Cir. 1982) (considering the convenience of witnesses and parties and consolidation with first filed case).

The Southern District of California is the most convenient forum. MP3tunes is located in San Diego. All of MP3tunes' servers are located in San Diego. All evidence of alleged acts of infringement would be found on MP3tunes' servers located in San Diego. All MP3tunes' employees reside in San Diego. Additionally, venue and personal jurisdiction are not proper in the Southern District of New York.

Conversely, Plaintiffs do not dispute that jurisdiction and venue are proper in the Southern District of California. In the first-filed Southern District of California action, Plaintiffs have appeared and have not contested jurisdiction or venue. Indeed, Plaintiffs are all either California corporations or qualified to do business in California and thus subject to jurisdiction. Finally, the claims pending in the instant action can be easily consolidated with the Southern District of California action as the claims presented are compulsory counterclaims arising out of the same transaction or occurrence. Fed. R. Civ. P. Rule 13(a). This case is not exceptional and does not qualify for an exception under the First to File Rule. Therefore, the action must be dismissed.

**B.    Plaintiffs Failed To Make A *Prima Facie* Showing of Jurisdiction Over Robertson And MP3tunes.**

Absent an evidentiary hearing, a plaintiff bears the burden of making a *prima facie* case that jurisdiction exists. Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505, 508 (S.D.N.Y. 2001) (*Fort Knox III*), *appeal dismissed*, 257 F.3d 108 (2d Cir. 2001). A court is to construe all pleadings and affidavits in the light most favorable to the plaintiff. *Id.* Conclusory allegations, however, do not establish a *prima facie* case for the existence of personal jurisdiction, and do not justify delaying dismissal to permit a plaintiff to conduct discovery on personal jurisdiction. See Jazini by Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-86 (2d Cir. 1998) (specific pleading required to make *prima facie* showing of personal jurisdiction based on the actions of an alleged agent; district court did not abuse its discretion in denying discovery on personal jurisdiction where *prima facie* showing was not made by plaintiff).

In a federal question case involving a non-resident defendant, a federal court applies the forum state's personal jurisdiction rules. Fort Knox III, 139 F. Supp. 2d at 508-509 (citing PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). In this judicial district, personal

jurisdiction is governed by New York's general jurisdiction statute, N.Y. C.P.L.R. § 301, and/or New York's long arm statute, N.Y. C.P.L.R. Section 302(a). Assuming jurisdiction exists under at least one of New York's jurisdictional statutes, a court must determine whether the Due Process Clause of the U.S. Constitution is satisfied. Fort Knox III, 139 F. Supp. 2d at 509.

Plaintiffs have not specifically alleged any basis for jurisdiction under any New York jurisdictional statute. Plaintiffs do not allege any specific acts by MP3tunes or Robertson in New York that would give rise to either general or specific personal jurisdiction. Plaintiffs merely make the conclusory statement that Defendants have an allegedly interactive website that is available to users in New York and based on the website, "Defendants have had continuous contact with the State of New York and its residents." This allegation is not sufficient to find jurisdiction over MP3tunes or Robertson in New York.

General allegations that a defendant has continuous contact with New York, without stating any specific connections to New York, are insufficient to establish jurisdiction. Warner Bros. Entm't v. Ideal World Direct, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (holding plaintiff's conclusory statement that Defendants engaged in "continuing and ongoing business contacts with residents of the state of New York" insufficient to establish jurisdiction.) This Court in *Warner Bros. Entm't* held there was no jurisdiction where defendant Molinaro provided links to third-party download providers and Plaintiffs did not aver any specific connection to customers in New York. Moreover, the fact that a website is accessible by users in New York does not establish jurisdiction. Starmedia Network, Inc. v. Star Media, Inc., 2001 U.S. Dist. LEXIS 4870, at *7 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a

web site which residents of that state visit."). Thus, Plaintiffs have failed to make a *prima facie* showing of jurisdiction.

C.    There Is No General Jurisdiction Over MP3tunes Under N.Y. C.P.L.R. Section 301.

Plaintiffs have made no attempt to satisfy the requirements of Section 301. Plaintiffs have not even made any conclusory allegation that MP3tunes has any continuous and systematic contacts in New York (an allegation that, standing alone, would be insufficient under *Jazini*). Nor have Plaintiffs made any specific allegations that MP3tunes is "doing business" in New York. In any event, Plaintiffs cannot make the required showing. To meet the high standard of Section 301, Plaintiffs must demonstrate that MP3tunes has "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 191-92 (S.D.N.Y. 2000) (quoting Frummer v. Hilton Hotels Int'l Inc., 19 N.Y.2d 533, 536 (1967)).

MP3tunes is not "doing business" in New York. MP3tunes has no contacts with New York other than through its websites. MP3tunes does not have any offices or employees in New York, any bank accounts or other property in New York, does not have a phone listing in New York, or use individuals or companies in New York to promote its interests. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 89 (2d Cir. 2000). Nor does the availability of MP3tunes' websites to New York users give rise to general jurisdiction. See Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d at 570-71.

Accordingly, Plaintiffs have failed to allege facts sufficient to establish general personal jurisdiction over MP3tunes under New York law, and cannot do so because MP3tunes is not doing business in New York within the meaning of Section 301.

D.    There Is No Specific Jurisdiction Over MP3tunes Under N.Y. C.P.L.R. Section 302.

Under N.Y. C.P.L.R. 302(a) jurisdiction can be found over a non-resident defendant in New York if the plaintiff shows that the defendant:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

Plaintiffs have made no attempt to satisfy the requirements of Section 302(a). Plaintiffs have not made even a conclusory allegation that MP3tunes is transacting business in New York, committed a tortious act in New York, committed a tortious act outside New York that cause injury within the state, or owns, uses or possesses any real property in the state. Plaintiffs' only allegations relating to contacts with New York appear to be through the MP3tunes' websites, which are accessible to New York residents. This is not sufficient to find jurisdiction. Starmedia Network, Inc. v. Star Media, Inc., 2001 U.S. Dist. LEXIS 4870, at *7 (S.D.N.Y. Apr. 23, 2001). Plaintiffs have failed to make a *prima facie* showing of jurisdiction. Therefore, this action must be dismissed.

E.    There Is No Jurisdiction Over Michael Robertson.

Plaintiffs do not cite to any specific statutes upon which they purportedly base jurisdiction over Robertson in this action. Regardless of the basis, the exercise of jurisdiction

15

over Robertson under either New York's general jurisdiction statute, N.Y. C.P.L.R. Section 301, or New York's long arm statute, N.Y. C.P.L.R. § 302(a) is inappropriate.

        1.    There Is No General Jurisdiction Over Robertson Under N.Y. C.P.L.R. Section 301.

General jurisdiction cannot be exercised over Robertson under New York's general jurisdiction statute. N.Y. CPLR § 301 states that a New York court "may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." However, "[a]n individual cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." Brinkmann v. Adrian Carriers, Inc., 815 N.Y.S.2d 196, 199 (App. Div. 2006) (affirmed dismissal of complaint against individual non-resident defendant); Laufer v. Ostrow, 55 N.Y.2d 305, 313 (N.Y. 1982) (motion to dismiss against individual non-resident defendant granted). Plaintiffs have not alleged that Robertson is conducting business in New York as an individual. Nor have Plaintiffs made any specific allegations as to why jurisdiction should be exercised over Robertson other than in connection with Plaintiffs' allegations regarding the activities of MP3tunes. Accordingly, there is clearly no basis for any exercise of jurisdiction over Robertson under New York's general jurisdiction statute.

        2.    There Is No Specific Jurisdiction Over Robertson Under N.Y. C.P.L.R. Section 302.

Again, Plaintiffs have made no attempt to satisfy the requirements of Section 302 and have not made even a single allegation as to any of the requirements under this Section. Furthermore, the exercise of jurisdiction over Robertson under the New York long-arm statute is unwarranted. None of these four categories accurately describes Robertson in this case. First, Robertson does not transact any business personally on behalf of MP3tunes in New York, nor does he own any real estate in New York. Robertson Decl. at ¶ 3. Second, Robertson is not the

16

principal actor in the commission of any tortious acts within New York or any other state. Id. at
¶ 7. Third, the alleged acts commissioned by Robertson outside of New York did not cause
injury within New York. See Duncan v. Nu-Life, Inc., 1998 U.S. Dist. LEXIS 1729, at *17, No.
97 Civ. 7350, (S.D.N.Y. Feb. 17, 1998) ("In cases of commercial torts, the mere fact that the
plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a
sufficient basis for jurisdiction under § 302(a)(3).") Accordingly, the New York long-arm
statute does not confer jurisdiction over Robertson in this action.

> 3.    Exercising Jurisdiction Over Robertson Would Violate Constitutional Due
>        Process.

Even if New York's long arm statute conferred jurisdiction over Robertson—which it
does not—Robertson's personal contacts with New York are insufficient to satisfy
Constitutional due process. See Siegel, 768 F. Supp. at 446. In order to exercise personal
jurisdiction, due process requires that "there exist between that party and the forum state 'certain
minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of
fair play and substantial justice.'" Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir.
2000). To determine whether minimum contacts exist, the court looks to the relationship
between the defendant, the forum, and the litigation and determines whether the exercise of
jurisdiction "is reasonable under the circumstances of [the] particular case." Id. at 196-97.

Accordingly, the exercise of jurisdiction by a New York court in this case would be a
violation of Robertson's due process rights. Plaintiffs have not alleged in the Complaint any
contacts between Robertson and New York. Furthermore, there is nothing in the Complaint
sufficient to demonstrate that Robertson purposefully availed himself of the benefits and
protections of the state's laws for the activities involved in this suit. See Siegel, 768 F. Supp. at
446 (holding due process not met where defendants' contacts with forum were relatively few).

17

Indeed, Robertson could not have foreseen being sued in New York as a result of his employment at MP3tunes. Id. In the absence of personal jurisdiction over Robertson, this action must be dismissed as to the claims against him.

F.    **The Action Should Be Dismissed Under FRCP 12(b)(3) For Improper Venue.**

An action that is filed in the wrong division or district must be dismissed or, if it is in the interest of justice, transferred to a district or division in which it could have been brought. 28 U.S.C. § 1406. A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(b). Additionally, civil actions arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found. 28 U.S.C. § 1400. A defendant "may be found" in any district where the defendant is subject to personal jurisdiction. Gaines, Emhof, Metzler & Kriner v. Nisberg, 843 F. Supp. 851, 853 (W.D.N.Y. 1994).

Venue is improper as to MP3tunes and Robertson. As set forth in detail in Sections II, C-E, *supra*, there is no jurisdiction over MP3tunes or Robertson in the Southern District of New York. Therefore, the action should be dismissed in its entirety.

G.    **Alternatively, the Action Should Be Transferred To The Southern District Of California For The Convenience Of The Parties And In The Interest Of Justice.**

Section 1404(a) of Title 28 to the United States Code provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that this action could be filed in the Southern District of California. In fact, under the First to File Rule

18

and FRCP Rule 13, Plaintiffs' claims must be filed in the Southern District of California as mandatory counterclaims in the first filed action.

As for the separate question of whether this action should now be transferred, the Supreme Court has held that "[a] motion to transfer under §1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The courts in this Circuit generally consider the following factors: "(1) the convenience of the witnesses; (2) the location of relevant evidence; (3) the locus of operative facts; (4) the convenience of the parties; (5) the availability of process to compel testimony of unwilling witnesses; (6) the transferee forum's familiarity with the governing law; (7) the relative means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." Seinfeld v. Bartz, 2001 U.S. Dist. LEXIS 7168, at *6-*7 (S.D.N.Y. June 1, 2001) (granting transfer). The balance of the factors weighs in favor of transfer to the Southern District of California.

       1.    Convenience of Witnesses and Location of Relevant Evidence

The majority of the witnesses and relevant evidence is located in California. MP3tunes and all of its officers, employees and owners all reside in California. Moreover, MP3tunes' servers are all located in California. Since the creation and operation of the MP3tunes' websites are the crux of the action, almost all of the witnesses and evidence will be found in the Southern District of California. Additionally, many of the Plaintiffs are California corporations with principal places of business in California.

       2.    Locus of Operative Facts

Again, the primary crux of Plaintiffs' action is allegedly infringing activity based solely on MP3tunes' websites, which are created, maintained, and physically located on servers in the

19

Southern District of California. Additionally, all of MP3tunes' employees who helped create and maintain the websites and servers are located in the Southern District of California.

### 3.    Convenience of the Parties

California is a more convenient forum for all parties. MP3tunes is wholly located and operated in California. Robertson also resides in California. Many of the Plaintiffs are California corporations with principal places of business in California. The remaining Plaintiffs all have offices in California and are qualified to do business in California. Thus, California is the most convenient forum for the parties.

### 4.    Availability of process to compel testimony of unwilling witnesses

MP3tunes' employees cannot be compelled to testify in New York as non-party witnesses. FRCP R. 45(c)(3)(A)(ii); see also Archer Daniels Midland Co. v. Aon Risk Services, 187 F.R.D. 587 (D. Minn. 1999) ("'Except where the employee has been designated by the corporation under Rule (FRCP) 30(b)(6), or is an officer, director, or managing agent, an employee is treated in the same way as any other witness,' and 'his or her presence must be obtained by subpoena rather than notice.'"), quoting Wright, Miller & Marcus, 8A *Federal Practice & Procedure Civil 2d § 2103*, pp. 36-37.

### 5.    Transferee Forum's Familiarity with the Governing Law

Any federal court is familiar with the Copyright Act, over which federal courts have exclusive jurisdiction. There is no reason to believe that a federal court in California is less qualified to hear these claims than the Southern District of New York. Nor is there any reason to believe that the Southern District of California cannot apply New York law to any state and common law claims. Moreover, MP3tunes has California state claims that must be heard in connection with this action.

6.    Relative Means of the Parties

"A court may take into account the relative means of the parties in determining whether an action should be transferred." Kwatra v. MCI, Inc., 1996 U.S. Dist. LEXIS 17883, *8 (S.D.N.Y. Dec. 3, 1996). While both parties to this litigation are corporations, this factor still applies where "there is a disparity between the relative means of the two corporations." 800-Flowers, Inc. v. Intercontinental Florist, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). In *800-Flowers*, for instance, the defendant was a relatively small business, whereas the plaintiff had "offices nationwide, with far greater capital at its disposal." *Id.* The Court held this disparity to be relevant in determining where that case should proceed. *Id.*

Such disparity also exists in this case. MP3tunes is a small start-up company with only one office and 15 employees. Conversely, Plaintiffs claim to be the "world's leading independent music company." Plaintiffs operate directly in 50 countries, with licensees in a 20 additional countries. Additionally, there is a large disparity between Plaintiffs and Robertson, who is being sued in his individual capacity. Clearly, Plaintiffs have far greater capital at their disposal than either MP3tunes or Robertson.

7.    Plaintiff's Choice of Forum

MP3tunes, plaintiff in the first-filed California action, manifested its original choice of the Southern District of California as the forum in which to resolve the parties' dispute. San Diego is its hometown and principal place of business. As the first filed plaintiff, MP3tunes' choice of forum should not be disturbed and should be honored.

8.    Trial Efficiency and Interests of Justice

The interests of judicial economy heavily favor dismissal or transfer of Plaintiffs' Complaint. There are serious issues of personal jurisdiction in New York with regard to both MP3tunes and Robertson. In contrast, California has specific personal jurisdiction over

21

MP3tunes, Robertson and all Plaintiffs, each of which is either a California corporation or registered to do business in California. Venue is also proper in California. Thus, the pending action in California can resolve all of the issues between the parties in a single action, without the need to devote judicial resources to determining whether personal jurisdiction exists and without running the risk that, after substantial activity in this Court, personal jurisdiction may ultimately be found to be lacking. _See, e.g._, Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435-36 (2d Cir. 2005) (discussing when dismissal as opposed to transfer is appropriate, and noting the risk that lack of personal jurisdiction can require dismissal even after the parties have spent a substantial amount of time litigating); _Fort Knox III_, 139 F. Supp. 2d at 512 ("transfer at this juncture is necessary to ensure that the Court and the parties do not expend even greater judicial resources in further addressing an issue collateral to the merits of the underlying dispute and which could be challenged on appeal.")

Further, an earlier action addressing the same issues and parties is currently pending in the Southern District of California. Thus, if this action is not dismissed or transferred, there will be two actions pending in two different courts. This is an inefficient use of judicial resources and may lead to inconsistent results. Thus, the interests of justice and judicial efficiency favor dismissing or transferring this action in favor of the California Complaint.

All factors favor transfer to the Southern District of California where this action can and should have been brought. Defendants submit that this action must be dismissed. However, to the extent that the action is not dismissed in its entirety, any remaining claims should be transferred to the Southern District of California.

22

## III.    CONCLUSION

For all of the foregoing reasons and for the additional reasons set forth in the

accompanying affidavits, this case should be dismissed in its entirety, or alternatively,

transferred to the United States District Court for the Southern District of California.

Dated: February 22, 2008                    Respectfully submitted,

                                            DUANE MORRIS LLP


                                    By:    s/ Gregory P. Gulia
                                           Gregory P. Gulia
                                           DUANE MORRIS LLP
                                           1540 Broadway
                                           New York, NY  10036-4086
                                           Telephone:  212.692.1000
                                           gpgulia@duanemorris.com

                                           and

                                           Edward M. Cramp *(pro hac vice)*
                                           Michelle Hon *(pro hac vice)*
                                           101 West Broadway, Suite 900
                                           San Diego, CA  92101-8285
                                           Telephone: 619.744.2200


                          Attorneys for Defendants

23

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Defendants' Memorandum in Support of their

Motion to Dismiss, or in the Alternative, to Transfer to the Southern District of California to be

served by electronic mail and via facsimile, this 22nd day of February, 2008, on the following:

> Andrew H. Bart
> Jenner & Block LLP
> 919 Third Avenue, 37th Floor
> New York, NY 10022
>
> Steven B. Fabrizio
> Jenner & Block LLP
> 601 Thirteenth Street, NW, Suite 1200S
> Washington, D.C. 20005

Vanessa C. Hew

DM1\129\693.1

24