UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

———————————————————————
CAPITOL RECORDS, LLC; CAROLINE )     No. 07 Civ. 9931 (WHP)
RECORDS, INC.; EMI CHRISTIAN )
MUSIC GROUP INC.; PRIORITY RECORDS )
LLC; VIRGIN RECORDS AMERICA, INC.; )
BEECHWOOD MUSIC CORP.; )     **EMI'S MEMORANDUM IN**
COLGEMS-EMI MUSIC INC.; EMI APRIL )     **OPPOSITION TO DEFENDANTS'**
MUSIC INC.; EMI BLACKWOOD MUSIC; )     **MOTION TO DISMISS OR, IN**
EMI FULL KEEL MUSIC; EMI GOLDEN )     **THE ALTERNATIVE, TO**
TORCH MUSIC CORP.; EMI LONGITUDE )     **TRANSFER TO THE SOUTHERN**
MUSIC; EMI VIRGIN MUSIC, INC.; )     **DISTRICT OF CALIFORNIA**
EMI VIRGIN SONGS, INC., )
                                     )     **REDACTED**
            *Plaintiffs*, )     **PURSUANT TO**
                                       )     **PROTECTIVE ORDER**
v. )
)
MP3TUNES, LLC AND MICHAEL )
ROBERTSON )
)
            *Defendant.* )
———————————————————————

ANDREW H. BART  (Bar No. AB-6724)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

STEVEN B. FABRIZIO (Bar No. SF-8639)
BRIAN HAUCK (*pro hac vice*)
JENNER & BLOCK LLP
601 Thirteenth St., NW  Suite 1200S
Washington, DC 20005
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

INTRODUCTION ....................................................................................................1

BACKGROUND .......................................................................................................2

I.  STATEMENT OF THE CASE......................................................................2

II.  STATEMENT OF FACTS ...........................................................................5

ARGUMENT .............................................................................................................8

I.  This Court has personal jurisdiction over mp3tunes...................................8

    A.  Jurisdiction Is Appropriate Because MP3tunes and Robertson Transact Business in New York. .....................................................................9

    B.  Jurisdiction Is Also Appropriate Because Defendants Caused Harm, and Should Have Known They Would Cause Harm, in New York. ...........................13

    C.  Asserting Jurisdiction Over Defendants Would Not Offend Due Process. ..........15

II.  MP3TUNES HAS NOT OVERCOME THE STRONG PRESUMPTION THAT THIS IS AN APPROPRIATE VENUE. ....................................................16

III.  BECAUSE THE CALIFORNIA SUIT WAS AN IMPROPER ANTICIPATORY ACTION, THE CASE SHOULD PROCEED HERE.......................................20

    A.  EMI's Proper Infringement Suit Cannot Be Dismissed Simply Because MP3tunes Filed an Improper Anticipatory Declaratory Judgment Action. ..........20

    B.  This Court Need Not Defer to the California Court. ...........................................24

CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alpha International, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 WL 21511957
(S.D.N.Y. July 1, 2003) ............................................................................12, 16

*Bigio v. Coca-Cola Co.*, 448 F.3d 176 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1842
(2007)........................................................................................................20

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, No. 06-cv-1848, 2006 WL 4117032
(S.D. Cal. Nov. 12, 2006) ..............................................................................21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)........................................16

*Byrne v. British Broadcasting Corp.*, 132 F. Supp. 2d 229 (S.D.N.Y. 2001)................17

*Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350 (S.D.N.Y. 1992)..21, 22, 24

*Catalyst Energy Development Corp. v. Iron Mountain Mines, Inc.*, 630 F. Supp. 1314
(S.D.N.Y. 1986) ............................................................................................8

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000).............. 9, 14, 21, 24-25

*Columbia Pictures, Industries, Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977),
*aff'd*, 573 F.2d 1288 (2d Cir. 1978) (unpublished table decision)..........................24

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d
284 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 340 (1998)........................15

*Duncan v. Nu-Life, Inc. of Illinois*, No. 97 Civ. 7350, 1998 WL 66002 (S.D.N.Y. Feb. 17,
1998) ........................................................................................................14

*Editorial Musical Latino Americana, S.A. v. Mar International Records, Inc.*, 829 F.
Supp. 62 (S.D.N.Y. 1993)..............................................................................12

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), *overruled in part on other
grounds, MedImmune, Inc. v. Genetech*, -- U.S. --, 127 S. Ct. 764 (2007) ............22

*Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267 (S.D.N.Y. 1990).........................13, 16

*GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421 (S.D.N.Y. 1998) ........................22

*Gaines, Emhof, Metzler & Kriner v. Nisberg*, 843 F. Supp. 851 (W.D.N.Y. 1994)......................16

*Greystone CDE, LLC v. Sante Fe Pointe L.P.*, No. 07 Civ. 8377, 2008 WL 482291
(S.D.N.Y. Feb. 20, 2008) ...............................................................................22

*Gross v. Bare Escentuals, Inc.*, No. 03 Civ. 3089, 2006 WL 3161386 (S.D.N.Y. Oct. 30, 2006) ................................................................................................................................22

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...................................................................17, 19

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ......................................8

*Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) .............................................................................................................................8, 10

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) .........................17, 18, 19, 20

*Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420 (S.D.N.Y. 1998) ...................................................10

*Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947) .........................17

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ......................................8, 11

*Mattel, Inc. v. Procount Business Services*, No. 03 Civ. 7234, 2004 WL 502190 (S.D.N.Y. Mar. 10, 2004) ...................................................................................................10

*McGraw-Hill Cos. v. Ingenium Technologies Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005) .............................................................................................................................14, 18

*National Football League v. Miller*, No. 99 Civ. 11846, 2000 WL 335566 (S.D.N.Y. Mar. 30, 2000) ................................................................................................................16

*Novak v. Overture Services, Inc.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) ...................................15

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) ...............24

*PDK Laboratories, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ........................................8

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007)................................................................................................................10

*Real Good Toys, Inc. v. XL Machine Ltd.*, 163 F. Supp. 2d 421 (D. Vt. 2001)............................14

*Smith v. NBC Universal*, 524 F. Supp. 2d 315 (S.D.N.Y. 2007) .................................................24

*Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279 (E.D.N.Y. 2007) ............................................15

*Strougo v. Brantley Capitol Corp.*, 243 F.R.D. 100 (S.D.N.Y. 2007)...........................................19

*Thomas Publishing Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) ......................................................................................................11

*Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) ..................................19, 20, 21

*UMG Recordings, Inc. v. MP3.com, Inc.*, No. 00 Civ. 0472, 2000 WL 1262568 (S.D.N.Y. Sept. 6, 2000) ...........................................................................................8, 15

*Warner Brothers Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007) ..................................................................................1, 9, 10, 11

*Williams Advanced Materials, Inc. v. Target Technologies Co., LLC*, No. 03 Civ. 276-A, 2007 WL 2245886 (S.D.N.Y. Aug. 1, 2007) ..........................................................21

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ................................................15

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates., Inc.*, 16 F. App'x 433 (6th Cir. 2001) ............................................................................................23

## STATUTES

28 U.S.C. § 1400 ..................................................................................................................16

28 U.S.C. § 1404(a) .............................................................................................................16

Fed. R. Civ. P. 15(c) ...........................................................................................................23

N.Y. C.P.L.R. § 302(a) ........................................................................................................12

N.Y. C.P.L.R. § 302(a)(1) ...............................................................................................9, 10

N.Y. C.P.L.R. § 302(a)(3) ...................................................................................................13

N.Y. C.P.L.R. § 302(a)(3)(ii) ..............................................................................................13

Plaintiffs (collectively, "EMI") hereby oppose the motion by Defendants MP3tunes and Michael Robertson to dismiss or transfer the present action.

## INTRODUCTION

Defendants' motion fails to come to grip with the facts. It is undisputed that Defendants raced to the San Diego courthouse to file a declaratory judgment suit that they hoped would preempt EMI's right as the true plaintiff to choose a forum. It is undisputed that they have sold hundreds of music files and premium memberships to New York residents. It is undisputed that they have transmitted hundreds of thousands of files to New York computers, files that are at the heart of this case. It is undisputed that they have held meetings and offered to hold meetings in New York as a convenient place to conduct their business. While it is clear that Defendants would prefer to litigate in California, that preference is not enough.

EMI can show far more than the "prima facie case" required in order to assert personal jurisdiction over Defendants. Just as in *Warner Bros. Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007), Defendants are in the business of transmitting files to users; in the last 12 months, Defendants have transferred 289,000 files to – and engaged in hundreds of paid commercial transactions with – New York users. Unlike the defendants in *Warner Bros.*, however, these defendants also collaborate with New York companies, seek New York partners, and travel to New York to promote their company. Defendant Michael Robertson, MP3tunes' CEO and founder, has knowledge of and exerts control over all the activities forming the basis of jurisdiction in New York, which under New York law subjects him to this Court's jurisdiction, as well.

Moreover, MP3tunes has failed to overcome the heavy presumption that a lawsuit can proceed in the plaintiff's chosen forum. But even beyond that presumption, New York is an appropriate forum. Thirteen of the 14 plaintiffs are located here, as are material evidence and

witnesses on EMI's copyrights. As Defendants' actions have made clear that they consider New York a perfectly convenient place to do business, they cannot now claim that it is an inconvenient place to litigate.

Finally, Defendants' anticipatory declaratory judgment action in California falls within a clear exception to the first-filed rule. Filed in immediate response to EMI's unambiguous threat to litigate, but not served for over a month while MP3tunes attempted to negotiate with EMI, the California lawsuit is not entitled to any deference. To the contrary, the law is clear that a proper infringement suit should *not* be dismissed in favor of a declaratory judgment claim filed to preempt the proper plaintiff's right to select a forum.

## BACKGROUND

## I.    STATEMENT OF THE CASE

The plaintiffs in this action are fourteen record companies ("EMI Music") and music publishers ("EMI Publishing") owned by EMI Group, Ltd. Together, these companies own the copyrights to some of the world's most popular sound recordings and musical compositions.[1]

The defendants are MP3tunes, LLC and its CEO, Michael Robertson. Through websites that Defendants operate, called MP3tunes.com and Sideload.com, Defendants engage in, facilitate, encourage, and profit from massive infringement of musical works, including sound recordings owned by EMI Music labels and musical compositions owned by EMI Publishing catalogs. It is readily apparent from the face of MP3tunes' websites that copyright infringement is part and parcel of MP3tunes' and Robertson's business plan.

---

[1] Every song consists of two sets of copyrights. The underlying music and lyrics are known as the musical composition, the rights to which are owned by EMI Publishing. The recorded performance of a musical composition is known as the sound recording, the rights to which are owned by EMI Music.

In order to put a stop to massive infringement of EMI Music's sound recordings, EMI Music sent MP3tunes a case-and-desist letter on September 4, 2007. The letter, sent by EMI's outside litigation counsel, advised that MP3tunes "is copying and storing to its servers, indexing, publicly performing, and making available for download hundreds (if not thousands) of our client's copyrighted recordings in violation of the Copyright Act." Ex. 1 at 1 (9/4/07 Fabrizio Letter). EMI further advised MP3tunes that none of the Digital Millennium Copyright Act's ("DMCA's") safe harbors protected this conduct. Ex. 1 at 2 (9/4/07 Fabrizio Letter).

In its response, within days of the September 4 letter, MP3tunes CEO Michael Robertson advised EMI's counsel that MP3tunes would make a substantive proposal to resolve the dispute and to ensure that there would be no further infringement of EMI Music sound recordings. Ex. 2 at 1 (9/18/07 Fabrizio Letter). Based on MP3tunes' representation, EMI Music postponed filing litigation. MP3tunes' eventual response did not contain the expected proposal for a global resolution, but rather legal arguments as to why EMI's positions were supposedly incorrect. In response, EMI made clear (1) that its legal position was absolutely sound, and (2) that it intended to file suit imminently if the promised settlement proposal was not forthcoming:

> If MP3tunes has made an informed decision to litigate the issue of its copyright liability, so be it. If, on the other hand, MP3tunes has a meaningful proposal to make for an overall resolution, the time to make it is now.

Ex. 2 at 3 (9/18/07 Fabrizio Letter). Indeed, EMI stated expressly that it was "not [its] intention to engage in an extended exchange of letters" and that it would respond to MP3tunes' legal arguments only "to avoid litigation born of misunderstanding." Ex. 2 at 3 (9/18/07 Fabrizio Letter). EMI made its intentions to litigate – "If MP3tunes does not intend to make a meaningful proposal to resolve this matter, kindly let us know and we will proceed accordingly" – and its timing – "the time to make it is now" – crystal clear. Ex. 2 at 1, 3 (9/18/07 Fabrizio Letter).

But instead of making a substantive proposal or advising that they had decided not to, on September 20 – just *two days* after (and before even responding to) EMI's September 18 letter – MP3tunes filed a declaratory judgment suit in the Southern District of California. MP3tunes' California complaint concedes the company filed suit to preempt litigation by copyright owners, "because [MP3tunes] was informed by [EMI's] counsel that the matter would not be resolved without litigation unless there was a substantial monetary payment." Ex. 3 (Am. Dec. J. Compl. ¶ 4); *see also id.* ¶¶ 78-79 (calling suit "a result" of this threat to litigate).

MP3tunes did not serve EMI with its California complaint for over a month. Instead, content that it had secured the "first-filed" date, MP3tunes' counsel forwarded a "courtesy copy" of the complaint, paradoxically professing that MP3tunes "remain[ed] open to amicably resolving this situation without resorting to litigation." Ex. 4 at 1 (9/21/07 Sacks Letter).

In fact, despite MP3tunes' preemptive declaratory judgment filing, the parties did meet. After that meeting did not produce a settlement, EMI brought the present infringement action in this Court. This suit alleges that MP3tunes and its owner and founder, Michael Robertson, are directly and secondarily infringing the plaintiffs' copyrighted sound recordings and musical compositions. Compl. ¶¶ 41-93. Plaintiff Capitol Records, Inc. also asserts causes of action under New York common law for unfair competition and the infringement of sound recordings that were fixed before 1972, because such pre-72 sound recordings are covered not by the federal Copyright Act, but by state common law. Compl. ¶¶ 84-93. Because EMI's affirmative suit would resolve all of the issues raised in MP3tunes' declaratory judgment suit, plus the New York claims and defendant Robertson's liability, and because MP3tunes' action was an improper declaratory judgment suit, EMI moved to dismiss the California suit.

While EMI's motion to dismiss was pending, MP3tunes filed an amended complaint that does not even purport to cover all the claims at issue in this suit. Its amendment tried to deepen that suit's supposed California roots by adding a three-sentence state-law allegation that EMI had engaged in "unfair, unlawful, or deceptive" practices. Ex. 3 (Dec. J. Am. Compl. ¶ 87-89). But while the amended complaint there named additional EMI entities as defendants, MP3tunes did not broaden its suit to address EMI's vicarious infringement or New York state law claims, or the personal liability of its owner, Michael Robertson.

EMI's motion to dismiss MP3tunes' declaratory judgment claim under the anticipatory-filing exception to the first-filed rule, and to dismiss MP3tunes' other claims for failure to state a claim, is pending in the California court.

## II.    STATEMENT OF FACTS

EMI is one of the best-known and most respected music companies in the world. The plaintiffs here, both record companies and music publishers, own, acquire, protect, and administer copyrights in some of the world's most popular musical works. Thirteen of the plaintiffs are organized or headquartered in New York. Compl. ¶¶ 9-10, 12-22.

Defendant MP3tunes is the brainchild of its CEO, Defendant Michael Robertson, and operates two websites. At Sideload.com, users can browse or search a list of hundreds of thousands of overwhelmingly infringing music files hosted on websites and servers across the Internet. Compl. ¶ 26. With a single click on Sideload.com, users can listen to ("stream") the music they have chosen or make a perfect, permanent copy of that work to keep for themselves and distribute further. Compl. ¶¶ 27-28. The music they desire may then be stored on servers

operated by Defendants.[2]  At MP3tunes.com, users may create either a free account, with limited

functionality, or a $39.95 "premium" account with advanced capabilities.  Compl. ¶ 30.  When a

New York user plays music through MP3tunes, Defendants ███████████████████████████

███████████████ Ex. 5 (Reese Dep. at 100-01, 103-04).  Although Defendants advertise

MP3tunes.com as a "locker service" in which users are assigned a personal locker to store

personal copies of their music, Defendants' Chief Technology Officer has testified that ███

██████████████████████████████████████████████████████████████████████

███████████ Ex. 5 (Reese Dep. at 30, 33-34).  It also appears highly likely that MP3tunes

maintains only *a single* copy of any given file, no matter how many thousands of users have

sought to put it in their "locker"; in other words, if two users try to store the same file, it appears

that MP3tunes actually stores only one copy – and then provides a copy of that single master to

any user who subsequently wants to listen to or download it.  Ex. 6 (Pacis Decl. ¶¶ 17-25); ███

████████████████████████[3]

      CEO Michael Robertson is ██████████████████████████████████████████

Ex. 8 (Robertson Dep. at 41, 144).  Robertson is intimately involved in and, typically, the

primary driver of MP3tunes' decisions and actions.  Ex. 11 (Olson Aff. ¶ 8); Ex. 12 (Carmony

Aff. ¶ 11).  Indeed, given his superior technological knowledge and MP3tunes' relatively small,

---

[2] When a file is sideloaded from a third-party "source site" based in New York, ███████
██████████████████████████████████████████ Ex. 5 (Reese Dep. at 115-16).

[3] None of Defendants' deposition witnesses – CEO Michael Robertson, CTO Doug Reese, or
President Emily Richards – would ██████████████████████████████████████████
███████████████████ *Rather, and incredibly, see* Ex. 6 (Pacis Decl. ¶ 26), all three testified that ███
████ Ex. 8 (Robertson
Dep. at 97); Ex. 5 (Reese Dep. at 48-49); Ex. 9 (Richards Dep. at 67).  Moreover, while their use
(or not) of the single-master system is a scientific fact that could be resolved by reference to their
source code or the database of files ordered produced by the Court's March 19 Order,
Defendants have refused to produce either.  Ex. 10 (4/14/08 Email from Duane Morris).

15-person staff, ███████████████████████████████ Ex. 7

(Carmony Dep. at 34-36).[4] ███████████████████████████

████████████████████████████████████████████

██████████████ Ex. 9 (Richards Dep. at 17).  In particular, Robertson himself came up

with the plan to maintain only a "single master" of any given file, over express warnings that

such a system would result in massive copyright violations.  ███████████████████

███ Ex. 11 (Olson Aff. ¶¶ 4-6).

     MP3tunes and Robertson have actively transacted business in New York, and have

actively sought more.  MP3tunes has been a party to approximately 950 paying transactions with

over 400 New York users, Ex. 13, ██████████████████████, and in the past

12 months (Defendants did not produce data going back any further) has directly transmitted at

least 289,000 files to New York users.[5]  Ex. 6 (Pacis Decl. ¶ 14████████████████

██████ MP3tunes also ███████████████████████████████

███████ Ex. 15 (7/9/07 Richards Email), and ████████████████████

████████ Ex. 16 (7/5/07 Richards Email).  MP3tunes ██████████████

████████████ Ex. 17 (8/7/07 Richards Email), and ███████████████

██████████████ Ex. 18 (Robertson Itinerary), Ex. 19 (6/15/07 Richards Email).  Robertson

himself has represented MP3tunes on such trips in both New York, Ex. 18 (Robertson Itinerary),

---

[4] Kevin Carmony is the former CEO of one of Robertson's other companies, Linspire.
MP3tunes was initially started under Carmony's leadership at Linspire and was later spun off.
Carmony, whom Robertson has called "a tremendous leader," ██████████████████
██████████████████████████████████████ Ex. 7 (Carmony Dep. at 18-
19); Ex. 14 (6/15/05 Michael's Minute); Ex. 8 (Robertson Dep. at 63).

[5] New York users have also transferred untold numbers of works to MP3tunes' servers.  Even
setting aside however many thousand files New York users have uploaded from their personal
computers, in the last 12 months they have copied approximately 32,000 works from other
locations on the Internet to MP3tunes servers.  Ex. 6 (Pacis Decl. ¶ 15).

█████████ Ex. 8 (Robertson Dep. at 128-29), and has come here to promote MP3tunes at industry events, Ex. 20 (2/27/08 Robertson Interview).

In light of all of this New York activity, Defendants could hardly be surprised to be sued here. Including the litigation in which one of Robertson's previous online music ventures, MP3.com, which was found liable for willful copyright infringement and ordered to pay a $53.4 million judgment, *see UMG Recordings, Inc. v. MP3.com, Inc.*, No. 00-0472 (JSR), 2000 WL 1262568, at *1 (S.D.N.Y. Sept. 6, 2000), Robertson recalled ████████████

████████████████████████████████████████████

Ex. 8 (Robertson Dep. at 25-28). He has told colleagues that he ████████████████████

███████████████████ Ex. 7 (Carmony Dep. at 38-39).

## ARGUMENT

**I.    This Court has personal jurisdiction over mp3tunes.**

In order to establish personal jurisdiction over the defendants here, EMI must establish jurisdiction under New York's long arm statute and the constitutional due process standard. In this case, where the Court will rule without the benefit of an evidentiary hearing, EMI "need only allege facts constituting a *prima facie* showing of personal jurisdiction," *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), MP3tunes Mem. at 12, which requires less than a preponderance of evidence, *Catalyst Energy Dev. Corp. v. Iron Mountain Mines, Inc.*, 630 F. Supp. 1314, 1315 (S.D.N.Y. 1986). The Court must "assume all of the plaintiff's factual allegations are true, and all doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000) (internal quotations omitted); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

New York law provides two bases on which jurisdiction is appropriate in this case.  First, under New York C.P.L.R. 302(a)(1), jurisdiction is appropriate because MP3tunes transacts business within the state.  This was the basis on which this Court recently asserted personal jurisdiction over the operator of websites that transmitted infringing movie files to New York residents.  *Warner Bros. Entm't, Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2007) (Pauley, J.).  Second, C.P.L.R. 302(a)(3) provides for personal jurisdiction over a defendant who, while deriving substantial revenue from interstate commerce and causing injury in the state, either regularly does or solicits business in New York or has reason to expect that its acts could have consequences in New York.  It is undisputed that Defendants have engaged in hundreds of transactions with, and directly transmitted hundreds of thousands of song files to, New York users.  Moreover, with their knowledge of the music industry, experience in New York courts, and effects on music industry copyrights, Defendants could have expected nothing *other* than to have substantial effects in New York.  Asserting jurisdiction over defendants here fits squarely within Section 302, and well within constitutional bounds.

**A.      Jurisdiction Is Appropriate Because MP3tunes and Robertson Transact Business in New York.**

Defendants' activities more than satisfy the standards of Section 302(a)(1), by which New York provides for long-arm jurisdiction over any entity who "transacts any business within the state."  N.Y. C.P.L.R. § 302(a)(1).  In applying this standard to the Internet, New York courts have recognized three categories of websites.  At one end are purely passive sites that are in no way interactive; without more, that one of these sites is merely accessible from a state does not provide a basis for personal jurisdiction.  At the other end are highly interactive sites "in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states."  *Citigroup Inc. v. City Holding Co.*, 97 F.

9

Supp. 2d 549, 565 (S.D.N.Y. 2000) (citations omitted).  Such highly interactive sites, like MP3tunes' sites, provide a sufficient basis for jurisdiction.  Defendants knowingly and "repeatedly transmit[] computer files to customers in other states," as *Citigroup* puts it.  *Id.*  That is their very business, and they have engaged in such business repeatedly with New York customers.  Compl. ¶¶ 27-31, 39.

This Court's decision in *Warner Bros. Entertainment* is controlling.  There, a defendant who operated websites that "transmit[ted] files to customers in exchange for membership fees" challenged jurisdiction over it in New York.  516 F. Supp. 2d at 266-67.  But because the websites had transmitted files to New York residents, the defendant was "subject to the personal jurisdiction of this Court pursuant to § 302(a)(1)."  *Id.*  Defendants here similarly transmit files to their users in massive numbers, Ex. 6 (Pacis Decl. ¶ 14), and their "premium" memberships include New York residents.  Ex. 13, ████████████████████████████████████████[6]

Under New York law, even *one* sale to a New York user would be enough to support personal jurisdiction.  *See, e.g.*, *Warner Bros.*, 516 F. Supp. 2d at 266; *Mattel, Inc. v. Procount Business Servs.*, No. 03 Civ. 7234, 2004 WL 502190, at *2 (S.D.N.Y. Mar. 10, 2004); *Hsin Ten*, 138 F. Supp. 2d at 455; *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412, at *5 (S.D.N.Y. Mar. 12, 2007) (basing personal jurisdiction on one order for three cartons of cigarettes).  Defendants' New York business is much more active than that.  Ex. 13; Ex. 6 (Pacis Decl. ¶ 14).  *See Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998) (basing jurisdiction in part on allegation that defendant "has many customers in New York").  MP3tunes has also collaborated ████████████████████████████████████

---

[6] Robertson's statement in his declaration that MP3tunes does not transact business in New York is not to the contrary.  He acknowledged in his deposition that ████████████████████ ████████████████████████████ Ex. 8 (Robertson Dep. at 154-56).

███████████████████████████ Ex. 15 (7/9/07 Richards to Robertson

Email); Ex. 21 (2/20/07 Email Thread), Ex. 5 (Reese Dep. at 128-29).

Even the massive volume of files transferred and hundreds of paid transactions understate just how interactive MP3tunes.com really is. It is not, as MP3tunes claims, a mere passive "bailor" of others' music, which it allows them to deposit in and withdraw from the users' "locker." Jurisdiction would be appropriate under *Warner Bros.* regardless, as MP3tunes nonetheless transmits hundreds of thousands of files to New York. But MP3tunes admits that so-called "lockers" are just "a concept" and not a physical reality. Far from just giving users access to the copy that the user uploaded to MP3tunes' servers, it appears that MP3tunes simply holds one *master copy* of any given file, which it then distributes to all such users. Users receive not a copy of the file that *they* uploaded, but a copy that MP3tunes makes for them from that *single master* that *someone else* uploaded. Ex. 6 (Pacis Decl. ¶¶ 17-25). This is not only massive copyright infringement, but evidence of the active service MP3tunes provides.[7]

Specific jurisdiction based on Defendants' business transactions in New York is thus plainly appropriate, because this lawsuit arises directly out of the copying and transmitting of infringing music files that connect the case to New York. *See Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) (finding jurisdiction appropriate "because the cause of action for infringement arises directly out of the transaction of business, to wit, the use of an allegedly infringing website"). To cite just one example, Defendants have transmitted Amy Winehouse's "Rehab," one of the representative works attached to EMI's Complaint, to New York users 69 times in the last 12 months. Ex. 6 (Pacis Decl. ¶ 16). As the

---

[7] As Defendants have refused to produce the evidence that would conclusively prove the use of a single-master structure – that is, the database ordered produced by the Court or the source code – on a threshold motion to dismiss, Defendants should not be permitted to now dispute this fact. *See Marine Midland Bank, N.A.*, 664 F.2d at 904.

suit includes claims based on MP3tunes' secondary infringement of EMI-owned works, such

direct transfers of copyrighted works to New York are at the heart of EMI's claims, and the

dispute clearly arises out of the New York dealings. N.Y. C.P.L.R. § 302(a).

EMI need not pierce the corporate veil in order to assert jurisdiction over MP3tunes'

founder and CEO, Defendant Michael Robertson, because he is intimately involved in every

aspect of MP3tunes' business. Just as copyright law makes an executive liable for infringement

within his knowledge and control, New York law makes an executive who exerts control over

the activities that give rise to New York jurisdiction subject to jurisdiction along with his

company. *See, e.g.*, *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.

Sup. 62, 66 (S.D.N.Y. 1993); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003

WL 21511957, at *3 (S.D.N.Y. July 1, 2003). Here, Robertson is deeply involved in every

aspect of the small company's business, personally making decisions regarding, participating in,

directing, exercising control over, and benefiting from MP3tunes' activities. In particular, he

had complete knowledge of ███████████████████████ Ex. 7 (Carmony Dep.

at 19-31, 32-34). As his former employees describe him, he is "extremely hands-on and

involved in his companies' strategic decisions and day-to-day operations," Ex. 12 (Carmony Aff.

¶ 11); ███████████████ and "Michael Robertson runs the business. It is *his*

business." Ex. 11 (Olson Aff. ¶ 8). Indeed, MP3tunes president Emily Richards testified that ██

████████████████████████████████████

████████████ Ex. 9 (Richards Dep. at 99-100).

Robertson personally tends to MP3tunes' New York-specific business. In the Summer of

2007, Robertson met at ████████████████████ Ex. 18

(summarizing trip); Ex. 8 (Robertson Dep. at 37). More recently, Robertson came to New York

to promote MP3tunes at an industry forum, Ex. 22 at 1-2 (Digital Music Forum East Announcement), where he used his "keynote" presentation to demonstrate MP3tunes' new services to an audience of New York attendees.  Ex. 20 at 7-9 (Trans. of 2/27/08 Robertson Interview).  Robertson can hardly deny that he is both intimately involved in MP3tunes' every move and actively nurturing his company's New York contacts.  *See Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267, 1273-74 (S.D.N.Y. 1990) ("The revenue made by HFT combined with the New York contacts by Morse and Jahn on behalf of HFT lead to the conclusion that they are amenable to New York's long-arm statute.");  ███████████████  EMI has thus established far more than the "prima facie case" necessary at this stage.

**B.    Jurisdiction Is Also Appropriate Because Defendants Caused Harm, and Should Have Known They Would Cause Harm, in New York.**

Even if Defendants had never done business with a New York user or company, they would still be subject by virtue of the harm that MP3tunes caused in New York under Robertson's control and with his full knowledge.  Section 302(a)(3) provides for personal jurisdiction over a defendant who

> commits a tortious act without the state causing injury to person or property within the state … if he …
>
>> (ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3).  Defendants have already stipulated that they derive substantial revenue from interstate or international commerce.  Ex. 23 (Stipulation).  Defendants are thus subject to jurisdiction if MP3tunes (1) committed a tortious act, that (2) caused harm in New York, and (3) expects or should reasonably expect its acts to have consequences in New York.  N.Y. C.P.L.R. § 302(a)(3)(ii).

There should be no doubt with respect to the first two requirements. The fourteen EMI plaintiffs, thirteen of which are either organized or have a principal place of business in New York, allege that MP3tunes have infringed and continue to infringe their copyrighted musical works. Copyright infringement is well established as a "tortious act," *see McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005), and "[t]he torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held," *id.* at 256 – here, in plaintiffs' New York offices. Infringement of the rights and any economic harm to those plaintiffs is legally determined to occur in New York. *See Citigroup Inc.*, 97 F. Supp. 2d at 568 ("Injury within the State includes harm to a business in the New York market.").[8] Moreover, downloads and plays by New York users cause lost sales and sales opportunities in New York.

There is no question that Defendants knew their activities would have consequences in New York. Robertson has ███████████████████████████████████████ ███████████████████████████████████████████ Ex. 8 (Robertson Dep. at 150-51); Ex. 7 (Carmony Dep. at 38-39). Just as jurisdiction is appropriate when a defendant "infringed upon the copyright … of a Vermont corporation, knowing that the brunt of the injury would be sustained in Vermont," *Real Good Toys, Inc. v. XL Mach. Ltd.*, 163 F. Supp. 2d 421, 425 (D. Vt. 2001), so is it appropriate when Defendants know they are aiming at a New York industry. *See also McGraw-Hill Cos.*, 375 F. Supp. 2d at 256 ("It is reasonably foreseeable that the provision of materials that infringe the copyrights … of a New York company will have consequences in

---

[8] *Duncan v. Nu-Life, Inc. of Illinois*, No. 97 Civ. 7350, 1998 WL 66002 (S.D.N.Y. Feb. 17, 1998), is not to the contrary. In that case, the court concluded that the harm from a particular *commercial tort* was suffered in Illinois, and that the plaintiff's home in New York was an insufficient basis for personal jurisdiction. *Id.* at *6. The court there explicitly limited its finding to commercial torts, and in no way undermined the well-settled rule that copyright infringement is felt where the copyright is owned.

14

New York."); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 340 (1998). Indeed, Robertson specifically *intends* for his actions to have consequences in New York, as he has told colleagues that he intends to change the way the music industry does business. Ex. 11 (Olson Aff. ¶ 10).

Moreover, Defendants have *actual* knowledge that their activities affect New York. MP3tunes has received copyright infringement notices from EMI and other New York copyright owners, advising that it has caused them harm. Exs. 24-29. And Robertson knows from personal experience that his activities could land him in this Court, just as other of his previous online music ventures have. *See, e.g., UMG Recordings, Inc. v. MP3.com, Inc.*, No. 00 Civ. 0472, 2000 WL 1262568, at *1 (S.D.N.Y. Sept. 6, 2000); ███████████████████. Section 302(a)(3)(ii) is thus plainly satisfied.

Having built a business off New York copyright owners, and having repeatedly transmitted infringing files to New York users under circumstances that would reasonably advise them of effects their actions would have in New York, MP3tunes and Robertson can hardly complain when they have to answer here for their actions. *See Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 289 (E.D.N.Y. 2007) (inquiring only whether reasonable person would have expected harm in state). Jurisdiction under § 302(a)(3) is appropriate.

**C.    Asserting Jurisdiction Over Defendants Would Not Offend Due Process.**

As established *supra*, both MP3tunes and Robertson had every reason to expect that their actions would resonate in New York. Because they transact business and cause harm there, Defendants "must proffer 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 456 (E.D.N.Y. 2004) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). Having repeatedly transmitted song files to and entered membership agreements with

New York users, taken payment from New York customers, ████████████████

████████████ and promoted their service in New York at industry events, Defendants have

clearly subjected themselves to New York law and put themselves in a position to "reasonably

anticipate" – and actually anticipate – "being haled into court there." *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 474 (1985).  Defendants profit from their New York business, but

those profits come with a responsibility.  *See, e.g., Nat'l Football League v. Miller*, No. 99 Civ.

11846, 2000 WL 335566, at *2 (S.D.N.Y. Mar. 30, 2000) ("Since he apparently profits

substantially from the activity that does damage to the plaintiffs in New York, it does not offend

due process to require him to defend his actions in a New York courtroom."); *Facit, Inc.*, 732 F.

Supp. at 1274; *Alpha Int'l*, 2003 WL 21511957, at *5 ("By virtue of [having an interactive

website from which at least one New York resident purchased an accused product], TRI – and

thereby [its officer] – have purposefully availed themselves of the privilege of conducting

business in New York and should have reasonably anticipated being sued here.").  Defendants

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ and due process cannot be offended by

requiring that they answer here for their actions.[9]

## II.     MP3TUNES HAS NOT OVERCOME THE STRONG PRESUMPTION THAT THIS IS AN APPROPRIATE VENUE.

MP3tunes cannot satisfy the heavy burden of showing that a transfer to the Southern

District of California is required under 28 U.S.C. § 1404(a).  As the Supreme Court has

---

[9] Because the Defendants are subject to personal jurisdiction in New York, this is a proper venue. 28 U.S.C. § 1400; *Gaines, Emhof, Metzler & Kriner v. Nisberg*, 843 F. Supp. 851, 853 (W.D.N.Y. 1994); MP3tunes Mem. at 18.

recognized, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). This is particularly true when, as here, the plaintiffs have sued in the forum where they are headquartered. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); Compl. ¶¶ 9-10, 12-22. When reviewing a motion to transfer, "[c]ourts should be mindful that … defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) (en banc) (reversing district court for giving inadequate deference to plaintiff's chosen forum). Although MP3tunes' forum-shopping tactics speak for themselves, even without that background they are unable to overcome the presumption for EMI's chosen home forum.

    ***Location of witnesses and relevant evidence.*** The issues likely to be tried in the parties' disputes include the ownership of EMI's copyrights and other rights under New York common law, any authorizations EMI may have granted related to those rights, EMI's damages, and representations that EMI made in a cease-and-desist letter. Ex. 30 (9/13/07 Sacks Letter); MP3tunes' Mem. at 7 (claiming "material misrepresentations" regarding EMI's copyrights). Witnesses and documents relevant to these issues are located here. *Byrne v. British Broad. Corp.*, 132 F. Supp. 2d 229, 238 (S.D.N.Y. 2001) (refusing to dismiss when evidence and witnesses were in both jurisdictions). Moreover, unlike the issue of EMI's damages, disputes regarding MP3tunes' infringement liability for infringement are likely to turn on questions of law presented at summary judgment, not issues of fact requiring trial testimony in New York. In these circumstances, proceeding in New York will not present a meaningful challenge for witnesses or the collection of evidence – and certainly not more difficult challenge than

17

proceeding in California. *See Iragorri*, 274 F.3d at 74 (indicating, in convenience analysis, that "the court should focus on the precise issues that are likely to be actually tried").

   ***Locus of operative facts.*** EMI's infringement suit will involve proof not only of MP3tunes' activities, but evidence that EMI owns valid copyrights and, for works fixed prior to 1972, other rights under New York common law – which, as noted, appears to be contested – and evidence regarding the extent of harm to EMI. These latter facts occurred in New York. *See McGraw-Hill Cos.*, 375 F. Supp. 2d at 256.

   ***Convenience of the parties.*** Defendants' protests that New York is an inconvenient place to litigate are in serious tension with their clear belief that it is a fine place to do business. In dealing with ███████████████████████████████████████████ ███████████████████ Ex. 19 (6/15/07 Richards Email); Ex. 31 (6/22/07 Richards Email); Ex. 16 (7/5/07 Richards Email). In dealing with ███████████████████████████ ████████████████████████████████████████████ Ex. 17 (8/7/07 Richards Email at D000080) █████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████ And Defendant Robertson has had ████████████ ████████████████████████████████ Ex. 18; Ex. 7 (Carmony Dep. at 40), to promote MP3tunes at industry conferences, Ex. 22 at 1-2 (Digital Music Forum East Announcement), or to ██████████████████████████████ Ex. 32 (7/9/07 Robertson Email). The convenience of the parties clearly favors New York.

   ***Availability of process to compel testimony.*** MP3tunes is perfectly able to bring its employees to New York to testify if necessary. MP3tunes' Mem. at 20. But even if it could not, the fact that Defendants' infringement is likely to be decided as an issue of law, not based on

disputed facts, means that compelling MP3tunes employees' testimony in New York is unlikely to be an issue. *See Iragorri*, 274 F.3d at 74 (looking to "precise issues that are likely to be actually tried"). The determination of EMI's damages is more likely to involve factual disputes; to the extent that compelled testimony is even an issue, the key question is thus where *EMI* employees can be compelled to appear. This factor thus favors New York.

**Familiarity with governing law.** EMI has alleged violations of not only the Federal Copyright Act for copyrights fixed after 1972, but violations of New York common law for copyrights fixed before 1972. Compl. ¶¶ 84-93. Even if the Court were to consider the state-law claim MP3tunes brought in California – which is of no relevance in determining where *this* suit should proceed – MP3tunes cannot carry its burden of showing this factor favors transfer.

**Relative means of the parties.** "Although courts can consider the relative means of parties, this factor is not entitled to great weight where plaintiff and defendant are both corporations." *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998). This is particularly true here, where MP3tunes has shown that it has more than adequate means to travel to New York when it wants to. Indeed, Defendant Robertson – who sold his previous digital music venture, MP3.com, for $400 million, Ex. 20 at 4 (Trans. of 2/27/08 Robertson Interview) – does not hesitate to travel to New York on business, ███████████████████████ ████████ Ex. 7 (Carmony Dep. at 40); Ex. 18. Absent some showing "that either venue would make it impossible for any party to continue this action," MP3tunes has not carried its burden. *Strougo v. Brantley Capitol Corp.*, 243 F.R.D. 100, 108 (S.D.N.Y. 2007).

**Plaintiff's choice of forum.** The U.S. Supreme Court and the Second Circuit have clearly indicated that EMI's decision to bring its copyright claims in its home forum deserves substantial deference. *Gulf Oil Corp.*, 330 U.S. at 508; *Iragorri*, 274 F.3d at 70-73.

19

*Trial efficiency and interests of justice.*  As already discussed, should this matter come to trial, the disputed issues of fact will likely focus entirely on activities, witnesses, and evidence in New York.  Until then, to the extent there is discovery regarding facts and witnesses in California, that discovery will largely occur in California, at no inconvenience to Defendants. MP3tunes' chosen counsel has offices in both San Diego and New York.  While Defendants may have their reasons for preferring to litigate in California rather than New York,[10] defendants' preferences merit no weight in this inquiry.  *See, e.g.*, *Toy Biz, Inc.*, 990 F. Supp. at 331 ("[I]f the location of [defendant] and its witnesses were enough to compel transfer, plaintiff's forum choice would have little meaning.").  Indeed, as *Iragorri*'s admonishment regarding forum-shopping defendants makes clear, MP3tunes' the procedural lengths it has gone through to get this case into a California court should weigh, if at all, in *favor* of keeping the case here.

Defendants have failed to carry their burden of showing that EMI's chosen forum is "genuinely inconvenient and the selected forum significantly preferable."  *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (quotations omitted), *cert. denied*, 127 S. Ct. 1842 (2007). Accordingly, their motion to transfer must be denied.

## III.    BECAUSE THE CALIFORNIA SUIT WAS AN IMPROPER ANTICIPATORY ACTION, THE CASE SHOULD PROCEED HERE.

### A.    EMI's Proper Infringement Suit Cannot Be Dismissed Simply Because MP3tunes Filed an Improper Anticipatory Declaratory Judgment Action.

The record is clear that MP3tunes filed its California declaratory judgment action solely so that it could try to invoke the first-filed rule and control a suit that it knew EMI was about to bring.  The law is clear that such anticipatory suits should be dismissed in favor of the underlying

---

[10] Indeed, Robertson has told others that ██████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ Ex. 7 (Carmony Dep. at 38-39); Ex. 8 (Robertson Dep. at 150-51).

merits suits that they sought to preempt. There is thus no basis on which this Court could dismiss EMI's proper infringement suit.

This Court has repeatedly recognized that "an exception to the first-filed rule applies when 'special circumstances' warrant giving priority to the second suit." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992). "Special circumstances that would warrant giving priority to a second-filed suit have been found to be present where the first suit constitutes an 'improper anticipatory filing,' i.e., one made under a direct threat of imminent litigation." *Toy Biz, Inc.*, 990 F. Supp. at 332.[11] There is no question that this occurred here.

MP3tunes' declaratory judgment suit was indisputably filed in response to a threat of imminent litigation. As the parties' correspondence and MP3tunes' declaratory judgment complaint make clear, litigation against MP3tunes was imminent, and MP3tunes knew it. Indeed, MP3tunes' California complaint *conceded* that it filed that suit because of EMI's letters "threaten[ing] that it will be sued," and because of a statement by EMI Music's counsel "that the matter would not be resolved without litigation unless there was a substantial monetary payment." Ex. 3 (Decl. J. Am. Compl. ¶ 4). This acknowledgement on its own resolves the question whether the suit was anticipatory. *See, e.g., Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, No. 06-cv-1848, 2006 WL 4117032, at *3 (S.D. Cal. Nov. 12, 2006) (proceeding

---

[11] Effectively conceding that its lawsuit was an improper anticipatory lawsuit, MP3tunes argues that the Court must consider the convenience of litigating in San Diego in deciding whether MP3tunes' California suit was an improper anticipatory action. MP3tunes' Mem. 11. MP3tunes misstates the law. Second Circuit law is clear that the first-filed rule should not be applied if *either* the first-filed case was improperly anticipatory *or* if convenience favors the second forum. *See, e.g., Citigroup Inc.*, 97 F. Supp. 2d at 555 (looking for "'special circumstances' *or* a balance of convenience") (emphasis added; internal quotation marks omitted); *Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, No. 03 Civ. 276-A, 2007 WL 2245886, at *7 (S.D.N.Y. Aug. 1, 2007). Since the California action was an improper anticipatory action, the Court need not reach the balance of convenience.

with second-filed suit based on party's "own attorney's statement that the threat of imminent

litigation … caused [the party] to file the Idaho suit").

MP3tunes' actions confirm that plain admission. Filed just two days after EMI's express

threat of litigation, Ex. 2 (9/18/07 Fabrizio Letter), MP3tunes' California declaratory judgment

action was a classic "race to the courthouse triggered by [EMI's] letter," and a paradigmatic

improper anticipatory lawsuit. *Capitol Records*, 810 F. Supp. at 1354; *see also, e.g., Greystone*

*CDE, LLC v. Sante Fe Pointe L.P.*, No. 07 Civ. 8377, 2008 WL 482291, at *2 (S.D.N.Y. Feb.

20, 2008) (applying exception to first-filed rule when "the California action was filed well after

Defendants received a notice of default and of [Plaintiff's] intent to pursue collection remedies");

*Gross v. Bare Escentuals, Inc.*, No. 03 Civ. 3089, 2006 WL 3161386, at *2 & n.14 (S.D.N.Y.

Oct. 30, 2006) (applying "preemptive lawsuit exception" when declaratory judgment action was

filed only after learning of natural plaintiff's intent to bring claims). This rush to court was

hardly motivated by some need to have MP3tunes' liability clarified: Upon filing, MP3tunes

waited over a month to serve its complaint and initiate that California suit. *See EMC Corp. v.*

*Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (refusing to proceed with declaratory judgment

action by plaintiffs who "thought it was in their interest to protect themselves first and continue

discussions," because doing so "would encourage parties who were negotiating with patentees to

use the declaratory judgment procedure to improve their bargaining positions"), *overruled in*

*part on other grounds*, *MedImmune, Inc. v. Genetech*, -- U.S. --, 127 S. Ct. 764 (2007).

Moreover, MP3tunes' declaratory judgment action does not even provide an adequate

vehicle to resolve the claims in issue. Unlike *GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421,

424 (S.D.N.Y. 1998), in which an amended complaint joined "all the substantive issues" between

all the relevant parties, MP3tunes *has failed* to make changes to bring the issues here before the

22

California court. Its declaratory judgment suit does not include EMI's vicarious infringement claim or its claims under New York law for infringement of pre-1972 works, and it does not address the liability of its CEO, who is a named defendant in New York. MP3tunes has tried to create the appearance of a single suit to resolve all the parties' claims, MP3tunes' Mem. at 9, but the issues that can be resolved there fall short.

MP3tunes' amended complaint in California did not remedy its anticipatory filing but simply confirmed its improper purpose. The parties and claims that MP3tunes added to that suit on December 3, 2007, after reading EMI's New York complaint, do not "relate back" to the original filing date, but are clearly "second-filed" suits that have no priority over this New York action. *See* Fed. R. Civ. P. 15(c) (permitting amendment that names new parties to relate back only if, "but for a mistake concerning the identity of the proper party, the action would have been brought against the party"); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 438 (6th Cir. 2001) (affirming dismissal of anticipatory filing based on "procedural fencing" that included amending complaint simply to incorporate new parties from second-filed action). MP3tunes never claimed that it added the new claims and parties to correct a mistake; it added the new parties only to bring the California suit closer in line with EMI's New York action, and added the state-law claim only to give that suit a California hook.[12]

Permitting soon-to-be defendants to misuse the Declaratory Judgment Act in this manner would undermine important federal policies. If defendants could usurp the plaintiff's prerogative by seeking a declaratory judgment whenever they hear of imminent litigation, "potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to

---

[12] The only parties MP3tunes can clearly claim as first-filed – though still subject to the anticipatory exception – are the four EMI entities it initially named. Because none of those four EMI entities are plaintiffs here (and are not the real parties in interest), their presence in the California action is irrelevant to the litigation here.

litigation." *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150-51 (S.D.N.Y. 1995); *see also, e.g., Capitol Records*, 810 F. Supp. at 1354; *Columbia Pictures, Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) (unpublished table decision). If MP3tunes' scheme can work, no plaintiff would send a pre-litigation letter explaining its legal positions and inviting settlement discussions, as EMI did, because the would-be defendant would immediately usurp the plaintiff's prerogatives.[13]

### B.     This Court Need Not Defer to the California Court.

Against this backdrop, MP3tunes' suggestion that this Court must defer to whatever action the California court takes is simply incorrect. Even if the California court decides to *proceed* with that obviously anticipatory lawsuit, this Court may still proceed with the affirmative suit properly filed here. As an initial matter, that case will not resolve the infringement of EMI's pre-1972 copyrights, MP3tunes' vicarious infringement of EMI's works, and Michael Robertson's personal liability, all of which are only at issue here. Moreover, *Citigroup*, on which MP3tunes relies, makes clear that the suit may proceed here *in its entirety*, regardless of what the California court decides. In *Citigroup*, after a district court in West Virginia improperly applied the first-filed rule, this Court noted that it was "unfortunate that judicial resources [were] expended twice" over the first-filed question, but that the West Virginia court's failure to dismiss the action there did not "obviate this Court's power to now enjoin" that

---

[13] The two affirmative claims MP3tunes has added to its California suit do not change this conclusion. Such claims receive weight in the anticipatory-lawsuit analysis only if the party was "genuinely concerned with obtaining a benefit beyond the scope of what the other party could be expected to bring suit for." *Ontel Prods.*, 899 F. Supp. at 1151-52. MP3tunes' affirmative claims in California do not reflect any hope of a genuine benefit. The complaint identifies no damages suffered from alleged mistakes in a DMCA notice MP3tunes received from EMI, *see Smith v. NBC Universal*, No. 06-5350, 524 F. Supp. 2d 315, 331 & n. 93 (S.D.N.Y. 2007) (concluding plaintiff "suffered no economic damage" when only damages were litigation costs), and MP3tunes added its California Section 17200 state-law claim only after seeing that EMI's New York suit included violations of New York law, Ex. 3 (Am. Dec. J. Compl. ¶¶ 87-89).

suit. *Citigroup*, 97 F. Supp. 2d at 556-57.  Because straightforward application of the first-filed rule in that case gave priority to the New York action, the New York court had full authority to proceed with its case – notwithstanding the West Virginia court's decision to proceed as well. *See id.*  Here, too, because straightforward application of the first-filed rule's anticipatory filing rules gives clear priority to this suit, this Court has full authority to go forward regardless of the California court's action.

**CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss, or in the Alternative, To Transfer to the Southern District of California should be denied.

Dated: April 18, 2008

Respectfully submitted,

JENNER & BLOCK LLP

By: _Andrew H Bart_____
    Andrew H. Bart

ANDREW H. BART  (Bar No. AB-6724)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

STEVEN B. FABRIZIO (Bar No. SF-8639)
BRIAN HAUCK (*pro hac vice*)
JENNER & BLOCK LLP
601 Thirteenth St., NW  Suite 1200S
Washington, DC 20005
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAPITOL RECORDS, LLC; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 07 Civ. 9931 (WHP)

**CERTIFICATE OF SERVICE** |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| MP3TUNES, LLC AND MICHAEL ROBERTSON | ) ) ) | |
| *Defendant.* | ) ) ) | |

       I, Carletta F. Higginson, do hereby certify that on this 18th day of April, 2008 I caused

***EMI's Memorandum in Opposition to Defendants' Motion to Dismiss or, in the Alternative, to***

***Transfer to the Southern District of California – Redacted Pursuant to Protective Order*** to be

filed via this Court's Electronic Filing System and to be served via electronic mail and overnight

mail delivery upon the following individuals and law firm(s):

                **Edward M. Cramp, Esq.**
                **DUANE MORRIS LLP**
                101 West Broadway, Suite 900
                San Diego, CA  92101

                **Gregory P. Gulia, Esq.**
                **DUANE MORRIS LLP**
                1540 Broadway
                New York, NY  10036

                                    _____
                                    Carletta F. Higginson