UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

CAPITOL RECORDS, INC. et al., :

                Plaintiffs, : 07 Civ. 9931 (WHP)

    -against- : MEMORANDUM AND ORDER

MP3TUNES, LLC et al., :

                Defendants. :
------------------------------------X

WILLIAM H. PAULEY III, District Judge:

Plaintiffs, fourteen record companies and music publishers, bring this copyright infringement action against Defendants MP3tunes, LLC ("MP3tunes") and Michael Robertson ("Robertson"). Defendants move to dismiss for lack of personal jurisdiction and improper venue, and alternatively, to transfer this action to the Southern District of California.[1] For the following reasons the Defendants' motion is granted in part and denied in part.

BACKGROUND

MP3tunes is located in San Diego and operates two websites: www.mp3tunes.com and www.sideload.com. (Declaration of Michael Robertson dated Feb. 22, 2008 ("Robertson Decl. I") ¶¶ 4, 9.) The mp3tunes.com website sells mp3 music files and allows users to store music files in personal online storage "lockers." (Robertson Decl. I ¶¶ 9-10.) "LockerSync," a software program provided on the website, enables users to load music into their lockers. (Robertson Decl. I ¶ 11.) Users may create free accounts that provide a locker

---

[1] Prior to the filing of this action, Defendants filed an action against Plaintiffs for a declaratory judgment in the Southern District of California. Plaintiffs moved to dismiss and, on April 18, 2008, Judge Hayes granted that motion.

and the ability to listen to the stored songs from any computer and download them to a personal computer. (Complaint dated Nov. 9, 2007 ("Compl.") ¶ 30.) Alternatively, users may purchase premium accounts for $39.95, allowing them to download songs from the locker to multiple computers and portable music players. (Compl. ¶¶ 30-31.) The mp3tunes.com website also offers technical support and an open forum where users can post messages. (Robertson Decl. I ¶ 10.)

The sideload.com website allows users to search for music downloads available on third-party websites, and listen to and store copies of songs in a locker ("sideloading"). (Robertson Decl. I ¶ 12; Compl. ¶¶ 26-28.) The site does not directly store or transmit files. (Roberston Decl. I. ¶ 12.) MP3tunes also provides a software program, Oboe Sideload Plugin, which allows sideloading from other internet sites. (Compl. ¶ 29.)

At least 400 New York uses have engaged in approximately 950 paying transactions with MP3tunes. (Declaration of Andrew H. Bart dated Apr. 18, 2008 ("Bart Decl.") Ex. 13: List of New York transactions.) These include both music and premium memberships sales. (Bart Decl. Ex. 13, Ex. 5: Deposition of Doug Reese dated Apr. 8, 2008 ("Reese Tr.") at 152-53, 157-58, 161-62.) In the past twelve months, users with New York internet protocol ("IP") addresses played a song approximately 100,000 times and downloaded 189,000 music files from the mp3tunes.com website to the user's computer.[2] (Bart Decl. Ex. 6: Declaration of Elijah Pacis dated Apr. 18, 2008 ("Pacis Decl.") ¶¶ 11, 14.) Each time a user listens to or downloads a song, MP3tunes transmits music files from its server to the user's computer. (Pacis

---

[2] Plaintiffs retained a digital forensic examiner and investigator to examine web server log data produced by MP3tunes. (Pacis Decl. ¶¶ 1-2.) The examiner also provided his opinion as to how MP3tunes stores copies of music files. This Court will not consider the examiner's opinion, as opposed to his factual statements regarding the web server log data, because it is not necessary for this motion.

2

Decl. ¶ 11; Reese Tr. at 100-01.) In addition, users with a New York IP address copied approximately 32,000 music files from third-party websites to an MP3tunes server. (Pacis Decl. ¶ 15.)

Robertson is the founder, chief executive officer, shareholder and only director of MP3tunes. (Compl. ¶ 24; Bart Decl. Ex. 8: Deposition of Michael Robertson dated Apr. 11, 2008 ("Robertson Dep.") at 40-41.) Robertson has traveled to New York on business at least twice: once for an August 2007 meeting with representatives of a company called vTuner and once in February 2008 to speak about MP3tunes at an industry forum. (Robertson Dep. at 37, Bart Decl. Ex. 22: Transcript of Robertson's interview at the Digital Music Forum East.)

Plaintiffs submit affidavits from Kevin Carmony and Chad Olson, who were chief operating and chief financial officers of Linspire while Robertson was chief executive officer and chairman of the board. (Bart Decl. Ex. 12: Affidavit of Kevin Carmony dated Jan. 25, 2008 ("Carmony Aff.") ¶ 2; Ex. 11: Affidavit of Chat Olson dated Jan. 25, 2008 ("Olson Aff.") ¶ 2.) In 2005, Linspire spun off MP3tunes and Robertson, while remaining chairman, left to become chief executive officer of MP3tunes. (Carmony Aff. ¶ 4.) Based on his experiences with Robertson at Linspire, Carmony describes Robertson as "extremely hands-on and involved in his companies' strategic decisions and day-to-day operations, . . . very technologically savvy and regularly involved in technological decisions," and that "the company is Michael Robertson." (Carmony Aff. ¶ 11 (emphasis in original).) According to Olson, "Michael Robertson runs the business." (Olson Aff. ¶ 8.) Neither Carmony nor Olson worked at MP3tunes. Carmony and Olson also describe discussions they had with Robertson regarding his ideas for the structure and design of MP3tunes' music storage. (Carmony Aff. ¶¶ 6-9; Olson Aff. ¶¶ 4-6.)

3

MP3tunes derives substantial revenue from interstate and international commerce. (Bart Decl. Ex. 23: Stipulation regarding MP3tunes revenue from interstate and international revenue dated Feb. 11, 2008.) Robertson has never received a salary or bonus from MP3tunes or any shareholder dividends. (Declaration of Michael Robertson dated May 2, 2008 ¶ 3.)

All Plaintiffs, except one, have their principal place of business in New York and four are New York corporations. (Compl. ¶¶ 9-22.)

Plaintiffs allege that MP3tunes violates federal copyright law by enabling users to listen to infringing music through sideload.com, to make copies of infringing music to store in a "locker," and to download copies of music to multiple locations and to multiple individuals.

## DISCUSSION

I. Legal Standard

On a motion to dismiss, the court must view all allegations in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). A plaintiff bears the burden of establishing a court's jurisdiction over a defendant. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). The plaintiff may rely on the complaint, affidavits, and other supporting evidence. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Kernan, 175 F.3d at 240.

II. Carmony and Olson Affidavits

Any evidence submitted outside the pleadings on a motion to dismiss for lack of jurisdiction must be competent. Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d

Cir. 1986). A court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge." Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999). Carmony and Olson have no personal knowledge of Robertson's role at MP3tunes. Therefore, the Court will not consider their statements as competent evidence regarding Robertson's role at MP3tunes.

II. Personal Jurisdiction

New York law determines whether this Court has jurisdiction over a non-domiciliary defendant. Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). The Court must conduct a two-part inquiry: "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

New York's long-arm statute allows for jurisdiction over a non-domiciliary that, inter alia, transacts any business within the state or contracts anywhere to supply goods or services in the state or commits a tortuous act without the state causing injury to person or property within the state and either (a) regularly does or solicits business or derives substantial revenue in the state; or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. N.Y.C.P.L.R. § 302(a).

"A nondomiciliary transacts business under § 302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the

5

benefits and protections of its laws." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (internal citations and quotation marks omitted). While the Court must look to the "totality of the circumstances" to determine whether this standard is met, even a single New York business transaction may be sufficient, provided the cause of action arises "out of the subject matter of the [transaction]." Viacom Int'l, Inc. v. Melvin Simon Prods., 774 F. Supp. 858, 862 (S.D.N.Y. 1991).

In determining whether assertion of jurisdiction comports with the requirements of due process, a court must consider (1) whether a defendant has "minimum contacts" with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with "traditional notions of fair play and substantial justice." Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027 (2d Cir. 1997). Where a defendant conducts business in the forum state, it should reasonably anticipate being sued in that state. Alpha Int'l, Inc. v. T-Reproductions, Inc., No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *4 (S.D.N.Y. Jul. 1, 2003); Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (single internet sale in the forum state satisfied the due process requirement in a trademark infringement case).

A. MP3tunes

In applying § 302(a)(1) to cases involving the internet, courts have recognized three categories of websites. "At one end are cases where the defendant makes information available on what is essentially a 'passive' web site." Citigroup Inc., 97 F. Supp. 2d at 565. There is no basis for jurisdiction over these websites. At the other end is a defendant that "clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states." Citigroup Inc., 97 F. Supp. 2d at 565.

6

"[O]ccupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which, depending on the level and nature of the exchange, may be a basis for jurisdiction." Citigroup Inc., 97 F. Supp. 2d at 565. While the sliding scale model helps "frame the jurisdictional inquiry, . . . traditional statutory and constitutional principles remain the touchstone of the inquiry." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-52 (2d Cir. 2007).

MP3tunes' websites are not passive; they do more than just make information available to users. See e.g., Light v. Taylor, No. 05 Civ. 5003 (WHP), 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007) (website that posted allegedly infringing images was passive). Conversely, the MP3tunes websites do not conduct traditional business transactions over the internet with customers in New York. See e.g., Mattel, 2001 WL 286728, at *3 (sale of merchandise over the internet to customer in New York satisfied § 302(a)(1)). Nevertheless, the MP3tunes websites are interactive; they provide users with software, transfers music files to and from customers, and allow for the exchange of e-mails and postings. See e.g., Citigroup, 97 F. Supp. 2d at 565-66 (finding § 302(a)(1) jurisdiction over a website that allowed users to apply for loans, print out applications to submit by facsimile, chat on-line with representatives, and e-mail questions); Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) (transmission of files in exchange for membership fees sufficient for § 302(a)(1)). These interactions occurred with New York users, and some of those users paid for premium services. Moreover, some of these interactions—that is the transfers of music files—form the basis for Plaintiffs' claims. Therefore, MP3tunes transacts business in New York under § 302(a)(1).

Because MP3tunes does business with New York customers, it has minimum contacts with New York such that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." Chaiken, 119 F.3d at 1027. Accordingly, MP3tunes' motion to dismiss for lack of personal jurisdiction is denied.

B. Robertson

Individuals whose sole contacts with the forum state are in a corporate capacity are subject to jurisdiction under the long-arm statute. See Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44-47 (N.Y. 1988). There is no evidence that Robertson's only activities in New York—a trip for a meeting with vTunes and a trip to speak at an industry forum—relate to Plaintiffs' claims. Therefore, this Court does not have jurisdiction over Robertson under N.Y.C.P.L.R. § 302(a)(1). As for N.Y.C.P.L.R. § 302(a)(3), two visits to New York are insufficient to show regular solicitation of business, and there are no allegations or evidence that Robertson derives substantial revenue in the state. In addition, although MP3tunes derives substantial revenue from interstate or international commerce, Robertson has not benefited from that revenue since he has not received a salary, bonus, or dividends from MP3tunes. Therefore, this Court does not have jurisdiction over Robertson under N.Y.C.P.L.R. § 302(a)(3).

An individual defendant may also be subject to jurisdiction under New York's long-arm statute if a corporate defendant is acting as his agent. Kreutter, 522 N.E.2d at 44-47. The plaintiff need not establish a formal agency relationship, but rather the plaintiff "need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the [officer defendant] and that [the officer defendant] exercised some control over [the corporation] in the matter." Kreutter, 522 N.E.2d at 44. "At the heart of this inquiry is whether the out-of-state

corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in' it." Karabu Corp. v. Gitner et al, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1988) (quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)).

"[C]ontrol cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." Karabu, 16 F. Supp. 2d at 324; see also Ross v. UKI Ltd, No. 02 Civ. 9297 (WHP), 2004 WL 384885, at *6 (S.D.N.Y. Mar. 1, 2004) (conclusory allegations that defendant was de facto head insufficient to establish personal jurisdiction); Kinetic Instruments v. Lares, 802 F. Supp. 976, 984-85 (S.D.N.Y.1992) ("The fact that [the defendant] is the President and majority shareholder of [the corporation] does not necessarily mean that the corporation will be considered his agent.").

Plaintiffs' assertion that Robertson benefits from and exercises control over MP3tunes' infringing activities is conclusory. The only competent evidence before this Court is that Robertson had conversations with Carmony and Olson regarding his ideas for the structure and design of MP3tunes' music storage. This is insufficient to show he exercised control over the corporation's allegedly infringing activities in New York. Robertson's position as chief operating officer, director, and shareholder are also insufficient to show his control over the infringing activities. Accordingly, Robertson's motion to dismiss is granted.

III. Venue

A copyright action "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). A defendant "may be found" in any

district where the defendant is subject to personal jurisdiction. Cavu Releasing, LLC. v. Fries, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005); Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 215 (S.D.N.Y. 1995); Business Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452, 1456 (S.D.N.Y. 1987). Because the Court has personal jurisdiction over MP3tunes, the motion to dismiss for improper venue is denied.

IV. Transfer to the Southern District of California

A court may transfer an action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a); see also Van Dusten v. Barrack, 376 U.S. 612 (1964). The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate. Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2007).

Courts consider the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight to be according a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F.Supp. 2d 474, 477 (S.D.N.Y. 2006). A "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." Iragorri v. United Techs. Corp., 274 F.3d 65, 75 (2d Cir. 2001). "Although courts can consider the relative means of the parties, this factor is not entitled to great weight where plaintiff and defendant are both

corporations." Toy Biz, Inc. v. Centuri Corp., 990 F. Supp. 328, 331 (S.D.N.Y. 1998); Arrow Electronics Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y.1989).

Because all but one Plaintiff has its principal place of business in New York, the Court must defer to Plaintiffs' choice of forum. The remaining factors do not weigh in favor of either the Southern District of New York or the Southern District of California. This district is more convenient for Plaintiffs while the Southern District of California is more convenient for MP3tunes. The locus of the operative facts is neither wholly in New York nor in California and, therefore, there are likely to be witnesses and documents in both locations. As a result, there may be witnesses that are not subject to process to compel testimony in both fora. Because Plaintiffs and MP3tunes are all corporations, the relative means of the parties is not entitled to great weight. Both fora are sufficiently familiar with the governing law. Finally, there is no reason to believe that the interests of trial efficiency or justice would be better served in the Southern District of California. Accordingly, MP3tunes' motion to transfer this action to the Southern District of California is denied.

## CONCLUSION

For the foregoing reasons, Defendant Michael Robertson's motion to dismiss is granted, and Defendant MP3tunes' motion to dismiss or to transfer the action to the Southern District of California is denied. This Court with hold a status conference on October 17, 2008 at 10:00 a.m.

Dated: September 29, 2008
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*

Andrew H. Bart, Esq.
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022
*Counsel for Plaintiffs*

Gregory P. Gulia, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
*Counsel for Defendants*