UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI FEIST CATALOG, INC., EMI GOLD HORIZON CORP., EMI GROVE PARK MUSIC, INC., EMI HASTINGS CATALOG, INC., EMI MILLS MUSIC, INC., EMI MILLER CATALOG, INC., EMI ROBBINS CATALOG, INC., EMI U CATALOG, INC., EMI UNART CATALOG, INC., JOBETE MUSIC CO., INC., SCREEN GEMS-EMI MUSIC, INC., STONE AGATE MUSIC, and STONE DIAMOND MUSIC, | No. 07 Civ. 9931 (WHP) (FM) **ECF CASE** <br><br><br> **<u>FIRST AMENDED COMPLAINT</u>** |
| Plaintiffs, | |
| v. | |
| MP3TUNES LLC, | |
| Defendant. | |

Plaintiffs Capitol Records, Inc.; Caroline Records, Inc.; EMI Christian Music

Group Inc.; Priority Records LLC; and Virgin Records America, Inc. (collectively, "the EMI

Music Plaintiffs"), and Beechwood Music Corporation; Colgems-EMI Music Inc.; EMI April

Music Inc.; EMI Blackwood Music; EMI Full Keel Music; EMI Golden Torch Music Corp.;

EMI Longitude Music; EMI Virgin Music, Inc.; EMI Virgin Songs, Inc., EMI Al Gallico Music

Corp., EMI Algee Music Corp., EMI Feist Catalog, Inc., EMI Gold Horizon Corp., EMI Grove

Park Music, Inc., EMI Hastings Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc.,

EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, Inc., Jobete Music Co.,

Inc., Screen Gems-EMI Music, Inc., Stone Agate Music, and Stone Diamond Music

(collectively, "the EMI Publishing Plaintiffs") hereby allege as follows:

## NATURE OF THE CASE

1.      This is a case of willful infringement of copyright over the Internet. Defendants MP3tunes, LLC ("MP3tunes") and Michael Robertson have built a commercial, for-profit business dependent upon providing their users with access to popular copyrighted music. MP3tunes, however, does not own the music it exploits; nor does MP3tunes have any legal right or authority to use or exploit that music.  Instead, in violation of copyright and other laws, Defendants take for themselves the creative and financial investments of others, including the EMI Music Plaintiffs and EMI Publishing Plaintiffs.  In doing so, Defendants severely and irreparably injure Plaintiffs and other copyright owners by eroding legitimate sales of music through both traditional and online channels.  MP3tunes does not in any way compensate the lawful owners of the music it exploits.

2.      MP3tunes engages in these acts of willful infringement through its operation of two Internet websites, www.sideload.com and www.mp3tunes.com.  Through these websites, Defendant MP3tunes provides its users with an integrated music service through which they can listen to music over their computers, obtain permanent copies of music stored in online "lockers" provided by MP3tunes, transfer music from their MP3tunes lockers to their computers or other portable devices, and further distribute that music to others.  MP3tunes boasts that its catalog of music contains over 400,000 musical recordings by 40,000 artists.  Indeed, MP3tunes advertises its service as the place where users should come to get "FREE MUSIC ON THE INTERNET."  The more users MP3tunes is able to attract to its service through the lure of free music, the more money MP3tunes makes.

3.      But, as Defendants know, the music they exploit is not "free":  Copyright owners such as Plaintiffs make enormous financial and creative investments in developing and

promoting music of the highest quality, and bringing this music to consumers.  Songwriters and recording artists, as well as others in the music industry, count on royalties from lawful sales of musical works for their livelihoods.

4.      MP3tunes and Robertson also know full well – because it is self-evident from even a passing review of MP3tunes' sites and because Plaintiffs have told them – that the vast majority of the music available through the MP3tunes service is infringing.  Defendants readily could stop the infringement.  They simply choose not to.  The financial viability of their business depends upon exploiting the most popular music to attract users to their sites.

5.      Defendants' actions infringe Plaintiffs' copyrights and common-law rights in sound recordings in numerous ways.  MP3tunes directly infringes Plaintiffs' exclusive rights under copyright to publicly perform, reproduce and distribute their works.  Additionally, MP3tunes unlawfully enables, encourages and profits from massive copyright infringement by MP3tunes users.  Under established theories of inducement, contributory infringement, and vicarious infringement, Defendants are liable for the infringing acts of their users.

## THE PARTIES

6.      The EMI Music Plaintiffs are among the leading record companies in the United States and the world.  They are in the business of producing, manufacturing, distributing, selling, and licensing the distribution and sale of sound recordings, or arranging to do so, in the United States.  They are responsible for some of the world's most popular recordings.

7.      The EMI Publishing Plaintiffs are among the leading music publishers in the United States and the world.  They are in the business of acquiring, protecting, and administering rights in musical compositions in the United States.  They are responsible for some of the world's most popular compositions.

8.      Each of these plaintiffs owns the copyrights and/or the exclusive rights to

reproduce, distribute and publicly perform innumerable popular sound recordings and compositions, including for illustrative purposes those recordings listed on Exhibit A and compositions listed on Exhibit B.  Plaintiff Capitol Records, Inc. further owns rights to sound recordings that were initially "fixed" prior to February 15, 1972 (the "Pre-1972 Works") and that are therefore subject to protection under state law, including for illustrative purposes those recordings listed on Exhibit C.

9.      Plaintiff Capitol Records, Inc. is a Delaware corporation, with its principal place of business in New York, NY.

10.     Plaintiff Caroline Records, Inc. is a New York corporation, with its principal place of business in New York, NY.

11.     Plaintiff EMI Christian Music Group Inc. is a California corporation, with its principal place of business in Brentwood, TN.

12.     Plaintiff Priority Records LLC is a Delaware limited liability company with its principal place of business in New York, NY.

13.     Plaintiff Virgin Records America, Inc. is a California corporation, with its principal place of business in New York, NY.

14.     Plaintiff Beechwood Music Corporation is a California corporation, with its principal place of business in New York, NY.

15.     Plaintiff Colgems-EMI Music Inc. is a Delaware corporation, with its principal place of business in New York, NY.

16.     Plaintiff EMI April Music Inc. is a Connecticut corporation, with its principal place of business in New York, NY.

17.     Plaintiff EMI Blackwood Music is a Connecticut corporation, with its

principal place of business in New York, NY.

18.     Plaintiff EMI Full Keel Music is a New York corporation, with its principal place of business in New York, NY.

19.     Plaintiff Golden Torch Music Corp. is a New York corporation, with its principal place of business in New York, NY.

20.     Plaintiff EMI Longitude Music is a New York corporation, with its principal place of business in New York, NY.

21.     Plaintiff EMI Virgin Music, Inc. is a New York corporation, with its principal place of business in New York, NY.

22.     Plaintiff EMI Virgin Songs, Inc. is a New York corporation, with its principal place of business in New York, NY.

23.     Plaintiff EMI Al Gallico Music Corporation is a Delaware corporation, with its principal place of business in New York, NY.

24.     Plaintiff EMI Algee Music Corporation is a Delaware corporation, with its principal place of business in New York, NY.

25.     Plaintiff EMI Feist Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

26.     Plaintiff EMI Gold Horizon Corporation is a New York corporation, with its principal place of business in New York, NY.

27.     Plaintiff EMI Grove Park Music, Inc. is a California corporation, with its principal place of business in New York, NY.

28.     Plaintiff EMI Hastings Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

29.     Plaintiff EMI Mills Music, Inc. is a Delaware corporation, with its principal place of business in New York, NY.

30.     Plaintiff EMI Miller Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

31.     Plaintiff EMI Robbins Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

32.     Plaintiff EMI U Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

33.     Plaintiff EMI Unart Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

34.     Plaintiff Jobete Music Co., Inc. is a Michigan corporation, with its principal place of business in New York, NY.

35.     Plaintiff Screen Gems-EMI Music, Inc. is a New York corporation, with its principal place of business in New York, NY.

36.     Plaintiff Stone Agate Music is a Michigan corporation, with its principal place of business in New York, NY.

37.     Plaintiff Stone Diamond Music is a Michigan corporation, with its principal place of business in New York, NY.

38.     Defendant MP3tunes is a Delaware limited liability company that, upon information and belief, owns and operates the Internet websites that are the subject of this Complaint.

39.     On information and belief, Defendant Michael Robertson is MP3tunes' founder, chief executive officer, and principal operator; and personally makes decisions

regarding, participates in, directs, exercises control over, and benefits from MP3tunes' infringing activities.  Indeed, on information and belief, Mr. Robertson is MP3tunes' key decision-maker and has actively directed, and continues to actively direct, MP3tunes' illegal conduct.  Mr. Robertson previously founded and launched another high-profile Internet venture, known as MP3.com, whose purpose was similar to the purpose of the websites at issue in this case: facilitating the unauthorized copying and distribution of copyrighted musical works.  In 2000, the leading record companies in the country, including some of the plaintiffs here, commenced an action against MP3.com in this Court for infringement of their copyrights.  The Court (Rakoff, J.) found that MP3.com had engaged in willful acts of copyright infringement.  Mr. Robertson then sold that company and ultimately started this one as a vehicle to achieve a comparable infringing purpose.  MP3tunes and Michael Robertson are referred to in this complaint collectively as "Defendants."

## DEFENDANTS' INFRINGING MUSIC SERVICE

40.    Defendants' two websites, Sideload.com and MP3tunes.com, provide an integrated music service.

41.    Sideload.com provides organized listings of music files – overwhelmingly infringing music files – available across the Internet.  It does not appear that Sideload.com physically hosts or stores the music files Defendants make available through Sideload.com.  Rather, the actual music files are hosted on, and dispersed across, countless third-party websites and servers on the Internet.  These third-party sites and servers are often called "source sites."  A source site may contain only a single song, or just a few songs.  Sideload.com collects and organizes "links" to songs on those disparate and far-flung source sites, such that Sideload.com can (and does) advertise itself as a "destination" where users can get all the music they want.  In fact, Defendant Robertson has explained that while music is scattered all across the Internet, his

service exists to "bring the music together into one index where you can quickly find and stream tracks."

42.     Sideload.com "streams" music to users, enabling them to listen to a wide array of music at Sideload.com on demand.  Functionally, a user visits Sideload.com, finds the song he or she wants to listen to, and clicks the Sideload.com "link"; the song begins to play through the user's computer.  To locate music on Sideload, the user can use a Sideload.com "search" function to find a song by artist or title, browse Defendants' "catalog" of music through alphabetical artist listings, or pick songs from Sideload.com's advertising of "Most Popular Tracks," "Newest Tracks" or "Featured Tracks."

43.     In addition to allowing users to listen to music, Defendants also enable users to obtain permanent copies of the digital music files accessible through Sideload.com. Next to each song listed on Sideload.com is a small "SL" icon – which stands for "Sideload." When users click that SL icon, MP3tunes makes a full, permanent copy of the desired work and stores it in a "locker" assigned to that user at MP3tunes.com.  This is referred to as "sideloading" a song to a locker.  An MP3tunes locker is storage space on an MP3tunes computer server devoted to a particular user.  MP3tunes enables and encourages users to stockpile digital music files – overwhelmingly infringing music files – in their MP3tunes locker.

44.     Defendants also provide software that enables easy "sideloading" of music to users' MP3tunes "lockers" from other Internet sites beyond Sideload.com.  Users who install MP3tunes' "Oboe Sideload Plugin" software will see, next to any music file linked to on any website they visit, the same SL icon that provides for one-click copying into their lockers. Clicking on the SL icon from any website transfers a copy of the file into the user's MP3tunes locker.

45.     Use of the MP3tunes.com service requires a membership, and the functionality of an MP3tunes locker depends upon the users' MP3tunes membership level.  With a "basic" membership, users are given an online locker for unlimited (or, in some cases, for one gigabyte worth of) Internet-based storage for digital music files, as well as the ability to stream the music from the locker, listen to it from any computer with an Internet connection, and download the copy from their locker to a personal computer.  With a "premium" MP3tunes membership, users pay $39.95 per year for the additional ability to upload files from their computer into their locker, and then, with a single click, to download the entire contents of their MP3tunes.com lockers onto any computer or portable music player, such as an iPod, via an automated so-called "syncing" process.

46.     Defendants have configured the service they own and operate so that copies of copyrighted works stored in a user's locker can be copied and downloaded to more than one computer at the same time, thus enabling multiple unauthorized copies to be made and distributed at once.  Defendants' MP3tunes.com website boasts of this feature and specifically instructs users on how to use it.

47.     Defendants have configured the service they own and operate to facilitate the distribution of copyrighted works in other ways as well.  MP3tunes.com members access their online locker by entering an e-mail address and password associated with that account. Once a user has entered the e-mail address and password for a premium account, the user may both access the content obtained using Sideload.com and download all of the music files contained in the locker.  On information and belief, users have used this feature to copy and distribute Plaintiffs' copyrighted works, by uploading music files into a locker, then "publishing" their password so that other users can access the files obtained from Sideload and download all

9

of the music copied into that locker.  MP3tunes thus serves as a virtual drop-box for this illegal

distribution.

48.     Defendants have designed the websites they own and operate to perpetuate

and increase this infringement.  Every time that a file is copied from a source site into a user's

MP3tunes locker, a link to the song at the source site automatically appears on the Sideload.com

website, thus increasing Defendants' service's "catalog" of infringing songs.  As a result,

Sideload.com now offers a searchable, browsable database of over 400,000 of the most popular

music files on the Internet.

49.     To illustrate the integrated (and harmful) nature of the music service

Defendants own and operate, a user can visit Sideload.com and search for songs by Norah Jones.

The user can select the song "My Dear Country" and listen to it from Sideload.com, on demand,

as many times and as often as the user wants.  Thus, the user has no need to visit any of the

legitimate websites that are authorized by Plaintiffs and compensate Plaintiffs for the right to use

"My Dear Country."  The user can also ask MP3tunes to copy the song to the user's locker at

MP3tunes.com.  In doing so, the user obtains a permanent digital copy of the Norah Jones song

"My Dear Country."  The user can download the song to any computer or iPod, or copy it to a

CD.  Thus, the user has no need to purchase a digital copy of "My Dear Country" from Apple's

iTunes store or any number of other legitimate websites that are authorized and licensed by

Plaintiffs to sell digital downloads of their works.

50.     Defendants know that the vast majority of sound recordings and

compositions they make available through their service infringe the copyright and common-law

rights of the owners of those works, including the rights of the EMI Music and EMI Publishing

Plaintiffs.  The works listed on Sideload.com are readily recognizable as copyrighted works;

indeed, Defendants' service provides, when available, images reflecting the covers of albums on which the works originally appeared.  Plaintiffs have also notified Defendants of the infringing content on their websites and have provided them with representative lists of musical works being infringed on their service.  Despite these specific notifications, Defendants continue to provide full access to thousands of works owned by Plaintiffs.

51.    On information and belief, Defendant Michael Robertson has personally made decisions regarding, participated in, directed, exercised control over, and benefited from MP3tunes' infringing activities.  He has played a personal role in creating Defendant MP3tunes' business plan and in executing that plan, including playing a key decision-making role in the actions of MP3tunes that constitute direct and secondary copyright infringement, and violations of New York common law.  He is personally aware of the infringing activity and chooses not to stop it.

52.    Defendants could stop infringing Plaintiffs' works, and could cease encouraging and facilitating infringement by their users.  But, because Defendants' revenues are dependent upon infringement, Defendants instead choose to continue infringing – and enabling, encouraging and profiting from the infringement of users.

## JURISDICTION AND VENUE

53.    This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore this Court has jurisdiction under 17 U.S.C. § 101 *et seq.*; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

54.    Personal jurisdiction over Defendants is proper.  Defendants enable users, including New York residents, to access music files using the service that Defendants own and operate to download infringing copies of Plaintiffs' works.  The voluminous acts of direct

infringement for which Defendants are liable require a high level of interaction between users'
computers and Defendants' websites.  On information and belief, many of these acts of direct
infringement for which Defendants are liable occur in New York, where New York residents
access Defendants' website in order to download infringing copies of Plaintiffs' works.  In these
and other ways, Defendants have had continuous contact with the State of New York and its
residents.

55.     Venue in this District is proper under 28 U.S.C. § 1391(b) and/or 28
U.S.C. § 1400(a).  On information and belief, a substantial part of the acts of infringement
complained of herein occurs or has occurred in this District.

### FIRST CLAIM FOR RELIEF

### Infringement of Plaintiffs' Reproduction Rights

56.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1
through 40 as if fully set forth herein.

57.     Without authorization, Defendants are making and causing to be made
unauthorized reproductions of Plaintiffs' copyrighted sound recordings and compositions in
violation of 17 U.S.C. §§ 106(1) and 501, including but not limited to the copyrighted sound
recordings listed in Exhibit A hereto and the copyrighted musical compositions listed in Exhibit
B hereto.

58.     The infringement of Plaintiffs' reproduction rights in each of their
copyrighted sound recordings and compositions constitutes a separate and distinct act of
infringement.  Each time Defendants copy a work to a user's MP3tunes locker, Defendants make
a perfect, fixed digital copy of the work from the source site onto their computer servers in
violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(1).

59.     Defendants' acts of infringement are willful, intentional and purposeful, in

disregard of and indifference to Plaintiffs' rights.

60.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

61.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

62.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## SECOND CLAIM FOR RELIEF

### Infringement of Plaintiffs' Distribution Rights

63.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

64.    Without authorization, Defendants are distributing and have distributed to the public copies of Plaintiffs' copyrighted sound recordings and compositions in violation of 17 U.S.C. §§ 106(3) and 501, including but not limited to the copyrighted sound recordings listed in Exhibit A hereto and the copyrighted musical compositions listed in Exhibit B hereto.

65.    The infringement of Plaintiffs' rights to distribute each of their copyrighted sound recordings and compositions constitutes a separate and distinct act of

infringement.  Each time Defendants transfer an unauthorized copy of one of Plaintiffs'

copyrighted musical works from an MP3tunes locker to another computer or portable music

device, Defendants distribute that copy in violation of Plaintiffs' exclusive rights under 17

U.S.C. §§ 106(3).

66.     Defendants' acts of infringement are willful, intentional and purposeful, in

disregard of and indifference to Plaintiffs' rights.

67.     As a direct and proximate result of Defendants' infringement of Plaintiffs'

copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work

infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at

Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual

damages, including Defendants' profits from infringement, as will be proven at trial.

68.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees,

pursuant to 17 U.S.C. § 505.

69.     Defendants' conduct is causing and, unless enjoined by this Court, will

continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or

measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C.

§ 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement

of Plaintiffs' copyrights and exclusive rights under copyright.

## THIRD CLAIM FOR RELIEF

### Infringement of Plaintiffs' Public Performance Rights

70.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1

through 54 as if fully set forth herein.

71.     Without authorization, Defendants are publicly performing and have

publicly performed, by means of digital audio transmission, the EMI Music Plaintiffs' copyrighted sound recordings in violation of 17 U.S.C. §§ 106(6) and 501, including but not limited to the copyrighted sound recordings listed in Exhibit A hereto.

72.     Without authorization, Defendants are publicly performing and have publicly performed the EMI Publishing Plaintiffs' copyrighted compositions in violation of 17 U.S.C. §§ 106(4) and 501, including but not limited to the copyrighted musical compositions listed in Exhibit B hereto.

73.     The infringement of Plaintiffs' rights in the public performance of each of their copyrighted sound recordings and compositions constitutes a separate and distinct act of infringement.  Each time Defendants stream an unauthorized copy of one of Plaintiffs' copyrighted musical works using Defendants' Sideload.com website to one of their users, Defendants publicly perform Plaintiffs' works in violation of the EMI Publishing Plaintiffs' exclusive right under 17 U.S.C. § 106(4) and the EMI Music Plaintiffs' exclusive rights under 17 U.S.C. § 106(6).

74.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Plaintiffs' rights.

75.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

76.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees,

pursuant to 17 U.S.C. § 505.

77.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### FOURTH CLAIM FOR RELIEF

### Inducement of Copyright Infringement

78.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

79.    Sound recordings and compositions owned by Plaintiffs have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Defendants' websites in violation of 17 U.S.C. § 501 *et seq.*  Plaintiffs own the copyrights, or the exclusive reproduction, distribution, and public performance rights, in the copyrighted works listed on Exhibits A and B and many others that have been infringed through Defendants' websites.  Defendants are secondarily liable under the Copyright Act for such infringing acts, including Defendants' users' direct infringement of Plaintiffs' exclusive right of reproduction each time they download a copy of Plaintiffs' works from an MP3tunes locker onto their computer or portable music device.  Additionally, in the event it is determined that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public performance right and/or that Defendants' users (and not Defendants) are responsible for directly infringing Plaintiffs' reproduction right in connection with the copy made to the MP3tunes locker, Defendants are secondarily liable under the Copyright Act for such infringing acts.

80.     Defendants operate and maintain their sites with the object of promoting their use to infringe Plaintiffs' copyrighted works.  Defendants' inducement of copyright infringement is apparent from, among other things, the predominantly infringing content available on Defendants' sites; Defendants' open listing and advertising of obviously infringing works; Defendants' express invitations to copy the most sought-after music for free; Defendants' failure to make any earnest effort to prevent or filter copyright infringement on their sites; and Defendants' business model, which is overwhelmingly dependent upon widespread copyright infringement.  Defendants unlawfully induce the direct infringement of Plaintiffs' copyrighted works, including those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

81.     The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

82.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

83.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

84.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

### FIFTH CLAIM FOR RELIEF

### Contributory Copyright Infringement

85.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 69 as if fully set forth herein.

86.     Sound recordings and compositions owned by Plaintiffs have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Defendants' websites in violation of 17 U.S.C. § 501 *et seq.*  Plaintiffs own the copyrights, or the exclusive reproduction, distribution and public performance rights, in the copyrighted works listed on Exhibits A and B and many others that have been infringed through Defendants' websites.  Defendants are secondarily liable under the Copyright Act for such infringing acts, including for Defendants' users' direct infringement of Plaintiffs' exclusive right of reproduction each time they download a copy of Plaintiffs' works from an MP3tunes locker onto their computer or portable music device.  Additionally, in the event it is determined that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public performance right and/or that Defendants' users (and not Defendants) are responsible for directly infringing Plaintiffs' reproduction right in connection with the copy made to the MP3tunes locker, Defendants are secondarily liable under the Copyright Act for such infringing acts.

87.     Defendants are liable as contributory copyright infringers.  Defendants have actual and constructive knowledge of the infringing activity that occurs on and through their sites.  Through the creation, maintenance, and operation of the sites and facilities for this infringement, Defendants knowingly cause and/or otherwise materially contribute to the unlawful reproduction, distribution, and public performance of Plaintiffs' copyrighted works,

18

including those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

88.    The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Plaintiffs' rights.

89.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

90.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

91.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## SIXTH CLAIM FOR RELIEF

### Vicarious Copyright Infringement

92.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 76 as if fully set forth herein.

93.    Sound recordings owned by Plaintiffs have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Defendants' websites in violation of 17 U.S.C. § 501.  Plaintiffs own the copyrights, or the exclusive

reproduction, distribution, and public performance rights in the copyrighted works listed on Exhibits A and B and many others that have been infringed through Defendants' websites. Defendants are secondarily liable under the Copyright Act for such infringing acts, including for Defendants' users' direct infringement of Plaintiffs' exclusive right of reproduction each time they download a copy of Plaintiffs' works from an MP3tunes locker onto their computer or portable music device. Additionally, in the event it is determined that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public performance right and/or that Defendants' users (and not Defendants) are responsible for directly infringing Plaintiffs' reproduction right in connection with the copy made to the MP3tunes locker, Defendants are secondarily liable under the Copyright Act for such infringing acts.

94.     Defendants are vicariously liable for such infringing acts. Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their websites, and at all relevant times has derived a direct financial benefit attributable to the infringement through those sites. Defendants are therefore vicariously liable for the unlawful reproduction, distribution, and public performance of Plaintiffs' copyrighted works, including those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

95.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Plaintiffs' rights.

96.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at

Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

97.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

98.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## SEVENTH CLAIM FOR RELIEF

### Common-Law Copyright Infringement of Pre-1972 Works

99.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 83 as if fully set forth herein.

100.     Plaintiff Capitol Records, Inc.'s Pre-1972 Works are subject to common-law copyright protection under the law of the State of New York.  As the owner of valid common-law copyrights in the Pre-1972 Works, this Plaintiff possesses the exclusive rights to manufacture, copy, perform, sell, distribute, and otherwise exploit the Pre-1972 Works.

101.     Plaintiff Capitol Records, Inc. has not granted or licensed to Defendants any rights with respect to the Pre-1972 Works.  Defendants' performance, reproduction, and distribution of unauthorized copies of the Pre-1972 Works, including but not limited to those works listed in Exhibit C hereto, constitute infringement of Capitol Records, Inc.'s common-law copyright rights in the Pre-1972 Works.

102.     As a direct and proximate result of Defendants' wanton and reckless copyright infringement, Plaintiff is entitled to compensatory damages in such amounts as will be

proven at trial, as well as punitive damages.

103.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money damages.  Plaintiff has no adequate remedy at law and are entitled to preliminary and permanent injunctive relief prohibiting Defendants from further violating its rights in the Pre-1972 Works.

**EIGHTH CLAIM FOR RELIEF**

**Unfair Competition as to Pre-1972 Works**

104.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1-88 as if fully set forth herein.

105.    Plaintiff Capitol Records, Inc. possesses exclusive ownership interests in and to the Pre-1972 Works and is engaged in the business of selling, distributing and otherwise commercially exploiting the Pre-1972 Works, and licensing others to do the same.  Plaintiff has made a substantial investment of money, creative talents and other resources in order to develop, market, promote, and commercially exploit its sound recordings.

106.    Through the conduct described above, Defendants are violating Capitol Records, Inc.'s rights in the Pre-1972 Works, including but not limited to those recordings listed in Exhibit C hereto, and are guilty of unfair competition under the common law of the State of New York.  By performing, reproducing, distributing, and otherwise commercially exploiting unauthorized copies of the Pre-1972 Works, Defendants compete directly with Plaintiff and its lawful licensees, and further take advantage of and undermine Capitol Records, Inc.'s substantial creative and financial investment in the Pre-1972 Works.  Defendants are willfully, wantonly and unfairly appropriating Plaintiff's rights to the Pre-1972 Works for their own commercial benefit.

107.    As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

108.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money damages.  Plaintiff has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendants from further violating its rights in the Pre-1972 Works.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For a declaration that Defendants have directly and/or secondarily infringed Plaintiffs' copyrights under the Copyright Act and the common law of the State of New York;

B.    For a declaration that such infringement is willful;

C.    For a declaration that Defendants have engaged in unfair competition and other violations of New York state law;

D.    For a preliminary and permanent injunction enjoining Defendants and Defendants' agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly infringing, and/or aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringement of, any of Plaintiffs' copyrights or exclusive rights protected by the Copyright Act or common law, whether now in existence or hereafter created;

E.    For Counts 1 through 6, all damages to which Plaintiffs may be entitled, including Defendants' profits, in such amounts as may be found, or, in the alternative and at Plaintiffs' election, for statutory damages in the maximum amount allowed by law;

F.    For Counts 7 and 8, compensatory damages in such amounts as will be proven at

trial, as well as punitive damages;

G.      For Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §

505;

H.      For prejudgment interest according to law; and

I.      For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       July 24, 2009

Respectfully submitted,

JENNER & BLOCK LLP

By: _____
    Andrew H. Bart
    Carletta F. Higginson
    Joseph J. McFadden
    919 Third Avenue, 37th Floor
    New York, New York 10022

    Steven B. Fabrizio
    1099 New York Avenue, N.W.
    Suite 900
    Washington, DC 20001-4412

*Attorneys for EMI Record Label Plaintiffs*

PRYOR CASHMAN LLP

By: _____
    Donald S. Zakarin
    Frank P. Scibilia
    Mark A. Tamoshunas
    M. Mona Simonian
    7 Times Square
    New York, New York  10036-6569
    (212) 421-4100

*Attorneys for the EMI Publishing Plaintiffs*

To:    John Dellaportas
       Gregory P. Gulia
       DUANE MORRIS LLP
       1540 Broadway
       New York, New York 10036

       *Attorneys for Defendant MP3tunes LLC*

# EXHIBIT A

EXHIBIT A

| ARTIST | WORK | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|---|
| Beastie Boys | Sabotage | Capitol Records, Inc. | SR 213-461 | 9/11/1995 |
| Blondie | One Way Or Another | Capitol Records, Inc. | SR 004-090 | 10/23/1978 |
| Blondie | Sunday Girl | Capitol Records, Inc. | SR 004-090 | 10/23/1978 |
| Blur | Girls & Boys | Virgin Records America, Inc. | SR 345-517 | 12/31/2003 |
| Bowie, David | Heroes | Virgin Records America, Inc. | SR 032-243 | 11/5/1981 |
| Bush, Kate | Cloudbusting | Capitol Records, Inc. | SR 082-918 | 6/19/1987 |
| Chemical Brothers | Star Guitar | Caroline Records, Inc. | SR 342-384 | 10/31/2003 |
| Coldplay | Fix You | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | In My Place | Capitol Records, Inc. | SR 322-958 | 9/9/2002 |
| Coldplay | Low | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | The Hardest Part | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | The Scientist | Capitol Records, Inc. | SR 322-958 | 9/9/2002 |
| Coldplay | Til Kingdom Come | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | Trouble | Capitol Records, Inc. | SR 328-762 | 3/18/2003 |
| Coldplay | Twisted Logic | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | What If | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Coldplay | White Shadows | Capitol Records, Inc. | SRu 573-811 & SR 376-828 | 3/10/2005 & 8/17/2005 |
| Corey Hart | Sunglasses at Night | Capitol Records, Inc. | SR 056-014 | 8/27/1984 |
| Corinne Bailey Rae | Like A Star | Capitol Records, Inc. | SR 385-316 | 6/28/2006 |
| Crowded House | Don't Dream It's Over | Capitol Records, Inc. | SR 093-842 | 7/12/1988 |
| Culture Club | Karma Chameleon | Virgin Records America, Inc. | SR 058-266 | 8/14/1984 |
| Daft Punk | Aerodynamic | Virgin Records America, Inc. | SR 379-190 | 11/8/2005 |
| Daft Punk | Da Funk | Virgin Records America, Inc. | SR 022-0421 | 3/26/1997 |
| Daft Punk | Harder Better Faster Stronger | Virgin Records America, Inc. | SR 379-190 | 11/8/2005 |

1

| ARTIST | WORK | PLAINTIFF | COPYRIGHT | DATE |
|--------|------|-----------|-----------|------|
| Daft Punk | One More Time | Virgin Records America, Inc. | SR 379-190 | 11/8/2005 |
| Dandy Warhols | Bohemian Like You | Capitol Records, Inc. | SR 285-787 | 9/1/2000 |
| DC Talk | Jesus Freak | EMI Christian Music Group, Inc. | SR 230-848 | 1/17/1996 |
| Dem Franchize Boyz | Lean Wit It, Rock Wit It | Virgin Records America, Inc. | SR 386-686 | 3/8/2006 |
| Duran Duran | Ordinary World | Capitol Records, Inc. | SR 278-777 | 3/24/2000 |
| Everclear | Santa Monica | Capitol Records, Inc. | SR 279-015 | 10/20/1998 |
| George Thorogood & The Destroyers | Bad To The Bone | Capitol Records, Inc. | SR 039-765 | 9/16/1982 |
| Gorillaz | Kids With Guns | Virgin Records America, Inc. | SRu 573-812 & SR 379-135 | 3/10/2005 & 11/14/2004 |
| Idol, Billy | White Wedding | Capitol Records, Inc. | SR 039-673 | 6/16/1982 |
| Iggy Pop | Candy | Virgin Records America, Inc. | SR 120-958 | 8/27/1990 |
| Iggy Pop | Nightclubbing | Virgin Records America, Inc. | N-044125 | 3/8/1977 |
| James Iha | Be Strong Now | Virgin Records America, Inc. | SR 252-234 | 3/2/1998 |
| Jamie T | Salvador | Virgin Records America, Inc. | Pending | Pending |
| Jane's Addiction | Just Because | Capitol Records, Inc. | SR 333-443 | 10/21/2003 |
| John Hiatt | Cry Love | Capitol Records, Inc. | SR 212-552 | 5/1/1996 |
| Lenny Kravitz | Mr. Cabdriver | Virgin Records America, Inc. | SR 111-095 | 9/22/1989 |
| Lerche, Sondre and the Faces Down Quartet | Everyone's Rooting For You | Caroline Records, Inc. | SR 407-601 | 6/20/2007 |
| Lerche, Sondre and the Faces Down Quartet | Minor Detail | Caroline Records, Inc. | SR 407-601 | 6/20/2007 |
| Lily Allen | Smile | Capitol Records, Inc. | SR 392-059 | 6/20/2007 |
| Manu Chao | Clandestino | Virgin Records America, Inc. | SR 339-801 | 3/9/2004 |
| Massive Attack | Angel | Virgin Records America, Inc. | SR 261-537 | 3/5/1999 |
| Massive Attack | Protection | Virgin Records America, Inc. | SR 207-041 | 3/13/1995 |
| Wings | Live and Let Die | Capitol Records, Inc. | N 8073 | 7/18/1973 |
| Meredith Brooks | Bitch | Capitol Records, Inc. | SR 181-390 | 7/31/1998 |
| Norah Jones | Don't Know Why | Capitol Records, Inc. | SR 320-120 | 8/13/2002 |
| Norah Jones | My Dear Country | Capitol Records, Inc. | SRu 630-866 | 11/9/2006 |
| OMD | Enola Gay | Virgin Records America, Inc. | SR 031-214 | 11/30/1981 |
| Oye, Erlend | No Train to Stockholm | Caroline Records, Inc. | SR 344-759 | 12/31/2003 |
| Pink Floyd | Another Brick In Wall (Part 1) | Capitol Records, Inc. | SR 014-787 | 1/14/1980 |

| ARTIST | WORK | PLAINTIFF | COPYRIGHT | DATE |
|--------|------|-----------|-----------|------|
| Pink Floyd | Comfortably Numb | Capitol Records, Inc. | SR 014-787 | 1/14/1980 |
| Placebo | Pure Morning | Virgin Records America, Inc. | SR 262-976 | 3/5/1999 |
| Placebo | Sleeping With Ghosts | Virgin Records America, Inc. | SR 336-547 | 5/30/2003 |
| Poison | Every Rose Has Its Thorn | Capitol Records, Inc. | SR 093-741 | 8/23/1988 |
| Radiohead | Creep | Capitol Records, Inc. | SR 190-976 | 6/16/1994 |
| Radiohead | Exit Music (For A Film) | Capitol Records, Inc. | SR 330-613 | 3/20/2003 |
| Radiohead | Fake Plastic Trees | Capitol Records, Inc. | SR 280-260 | 5/16/2000 |
| Radiohead | High and Dry | Capitol Records, Inc. | SR 280-260 | 5/16/2000 |
| Radiohead | Knives Out | Capitol Records, Inc. | SR 299-390 | 6/15/2001 |
| Radiohead | Let Down | Capitol Records, Inc. | SR 330-613 | 3/20/2003 |
| Radiohead | Lucky | Capitol Records, Inc. | SR 330-613 | 3/20/2003 |
| Radiohead | No Surprises | Capitol Records, Inc. | SR 330-613 | 3/20/2003 |
| Radiohead | Paranoid Android | Capitol Records, Inc. | SR 330-613 | 3/20/2003 |
| Radiohead | Street Spirit (Fade Out) | Capitol Records, Inc. | SR 280-260 | 5/16/2000 |
| Roxette | Joyride | Capitol Records, Inc. | SR 129-842 | 5/24/1991 |
| Royksopp | Poor Leno | Caroline Records, Inc. | SR 342-822 | 6/30/2003 |
| Smashing Pumpkins | 1979 | Virgin Records America, Inc. | SR 183-904 | 2/12/1996 |
| Smashing Pumpkins | Cherub Rock | Virgin Records America, Inc. | SR 169-635 | 8/10/1993 |
| Smashing Pumpkins | Disarm | Virgin Records America, Inc. | SR 169-635 | 8/10/1993 |
| Smashing Pumpkins | Today | Virgin Records America, Inc. | SR 169-635 | 8/10/1993 |
| Snoop Dogg | Beautiful | Priority Records, LLC | SR 324-294 | 12/20/2002 |
| SOUND Team | Your Eyes Are Liars | Capitol Records, Inc. | SR 390-677 | 6/12/2006 |
| Steve Miller Band | Fly Like An Eagle | Capitol Records, Inc. | N 33473 | 6/24/1976 |
| Steve Miller Band | The Joker | Capitol Records, Inc. | N 11264 | 10/31/1973 |
| Stranglers | Golden Brown | Capitol Records, Inc. | SR 043-632 | 3/29/1983 |
| Supergrass | Alright | Capitol Records, Inc. | SR 338-466 | 7/9/2003 |
| The Decemberists | O Valencia | Capitol Records, Inc. | SR 399-124 | 10/13/2006 |
| The Red Jumpsuit Apparatus | False Pretense | Virgin Records America, Inc. | SR 394-029 | 8/11/2006 |
| The Rolling Stones | Let Me Down Slow | Virgin Records America, Inc. | SR 375-854 | 10/20/2005 |
| The Rolling Stones | Miss You | Virgin Records America, Inc. | SR 001-522 | 6/14/1978 |
| The Rolling Stones | Rough Justice | Virgin Records America, Inc. | SR 375-854 | 10/20/2005 |
| The Rolling Stones | Shattered | Virgin Records America, Inc. | SR 001-522 | 6/14/1978 |

*Exhibit A*

| ARTIST | WORK | PLAINTIFF | COPYRIGHT | DATE |
|--------|------|-----------|-----------|------|
| The Specials | Blank Expression | Capitol Records, Inc. | SR 015-311 | 2/4/1980 |
| The Spice Girls | Wannabe | Virgin Records America, Inc. | SR 201-276 | 2/4/1997 |
| The Verve | Bittersweet Symphony | Virgin Records America, Inc. | SR 289-364 | 11/17/2000 |
| The Verve | Lucky Man | Virgin Records America, Inc. | SR 289-364 | 11/17/2000 |
| TOBYMAC | Extreme Days | EMI Christian Music Group, Inc. | SR 307-522 | 5/1/2002 |
| UB40 | Kingston Town | Virgin Records America, Inc. | SR 112-173 | 12/15/1989 |
| US3 | Cantaloop | Capitol Records, Inc. | SR 210-104 | 7/26/1995 |
| XTC | Dear God | Virgin Records America, Inc. | SR 079-666 | 3/3/1987 |

# EXHIBIT B

**EXHIBIT B**

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|
| When The Sun Goes Down | EMI April Music Inc. | PA 1-163-601 | 1/16/2006 |
| Slide | EMI Virgin Music, Inc.; EMI Virgin Songs, Inc. | PA 926-987 | 9/22/1998 |
| Lithium | EMI Virgin Songs, Inc. | PA 541 277 | 8/15/1991 |
| Not Too Late | EMI Blackwood Music | PA 1-167-082 | 1/30/2007 |
| Wake Me Up | EMI Blackwood Music | PA 1-167-086 | 1/30/2007 |
| Better | EMI Blackwood Music | PA 1-164-833 | 6/13/2006 |
| Synchronicity II | EMI Blackwood Music | PA 201-651 | 7/14/1983 |
| Truth Hits Everybody | EMI Blackwood Music | PA 52-675 | 4/30/1978 |
| Crazy | EMI April Music Inc. | PA 641 534 | 4/30/1993 |
| Mardy Bum | EMI April Music Inc. | PA 1-163-590 | 1/23/2006 |
| I Bet You Look Good On The Dancefloor | EMI April Music Inc. | PA 1-163-602 | 10/17/2005 |
| What's My Age Again? | EMI April Music Inc. | PA 957-349 | 6/1/1999 |
| Dammit | EMI April Music Inc. | PA 893 365 | 6/17/1997 |
| Everlong | EMI Virgin Songs, Inc. | PA 875 688 | 5/20/1997 |
| Iris | EMI Virgin Songs, Inc. | PA 900 647 | 3/31/1998 |
| Tears and Rain | EMI April Music Inc.; EMI Blackwood Music | PA 1-162-704 | 6/13/2005 |
| Hang | EMI April Music Inc.; EMI Blackwood Music | PA 844 644 | 10/1/1996 |
| Very Ape | EMI Virgin Songs, Inc. | PA 717 962 | 9/21/1993 |
| Broken | EMI Blackwood Music | PA 1-167-081 | 1/30/2007 |
| Against All Odds (Take A Look At Me Now) | EMI Golden Torch Music Corp.; EMI April Music Inc. | PA205-096 | 2/13/1984 |
| Trouble | EMI April Music Inc.; EMI Blackwood Music | PA 1-198-509 | 11/11/2003 |
| Crazy Little Thing Called Love | Beechwood Music Corporation | PA-65-077 | 11/12/1979 |
| Fidelity | EMI Blackwood Music | PA 1-164-835 | 6/13/2006 |
| Samson | EMI Blackwood Music | PA 1-286-734 | 12/30/2002 |
| Don't Stand So Close to Me | EMI Blackwood Music | PA 89-740 | 10/10/1980 |
| Every Breath You Take | EMI Blackwood Music | PA 201-652 | 7/14/1983 |
| Take It Away | EMI Blackwood Music | PA 1-256-603 | 9/28/2004 |
| I Caught Fire (In Your Eyes) | EMI Blackwood Music | PA 1-256-603 | 9/28/2004 |
| Sober | EMI Virgin Music, Inc. | PA 628 773 | 4/13/1993 |
| Vicarious | EMI Virgin Music, Inc. | PA 1-164-425 | 5/2/2006 |

Exhibit B

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|-------|-----------|-----------|------|
| Fast Car | EMI April Music Inc. | PA 417 827 | 3/1/1988 |
| Baby Can I Hold You | EMI April Music Inc. | PA 417 830 | 3/1/1988 |
| Goodbye My Lover | EMI Blackwood Music | PA 1-162-698 | 6/13/2005 |
| No Bravery | EMI Blackwood Music | PA 1-162-699 | 6/13/2005 |
| You're Beautiful | EMI Blackwood Music | PA 1-162-696 | 6/13/2005 |
| Ever The Same | EMI April Music Inc. | PA 1-161-186 | 4/19/2005 |
| Aneurysm | EMI Virgin Songs, Inc. | PA 541 512 | 8/10/1991 |
| Smells Like Teen Spirit | EMI Virgin Songs, Inc. | PA 541 273 | 8/15/1991 |
| You Know You're Right | EMI Virgin Songs, Inc. | PA 1-073-542 | 10/29/2002 |
| Sinkin' Soon | EMI Blackwood Music | PA 1-167-083 | 1/30/2007 |
| Not My Friend | EMI Blackwood Music | PA 1-167-080 | 1/30/2007 |
| My Dear Country | EMI Blackwood Music | PA 1-167-079 | 1/30/2007 |
| Bark at The Moon | EMI Virgin Music, Inc. | PA-221-344 | 12/3/1983 |
| Who Knew | EMI Blackwood Music | PA 1-164-173 | 4/4/2006 |
| That Time | EMI Blackwood Music | PA 1-164-841 | 6/13/2006 |
| 20 Years of Snow | EMI Blackwood Music | PA 1-164-842 | 6/13/2006 |
| Driven to Tears | EMI Blackwood Music | PA 89-741 | 10/10/1980 |
| De Do Do Do De Da Da Da | EMI Blackwood Music | PA 89-745 | 10/10/1980 |
| On My Own | EMI Blackwood Music | PA 1-115-830 | 6/25/2002 |
| Listening | EMI Blackwood Music | PA 1-256-603 | 9/28/2004 |
| Lunacy Fringe | EMI Blackwood Music | PA 1-256-603 | 9/28/2004 |
| Give Me One Reason | EMI April Music Inc. | PA 795 005 | 11/1/1995 |
| Rehab | EMI Blackwood Music | PA 1-167-207 | 10/24/2006 |
| Addicted | EMI Blackwood Music | PA 1-167-184 | 10/30/2006 |
| Back to Black | EMI Blackwood Music | PA 1-167-190 | 10/30/2006 |
| Seize The Day | EMI April Music Inc. | PA 1-162-009 | 6/7/2005 |
| The Wicked End | EMI April Music Inc. | PA 1-162-014 | 6/7/2005 |
| Feel Good Inc. | EMI Blackwood Music | PA 1-161-611 | 5/24/2005 |
| Punk | EMI Blackwood Music | PA 1-066-506 | 3/26/2001 |
| Clint Eastwood | EMI Blackwood Music | PA 1-066-504 | 3/26/2001 |
| Because of You | EMI April Music Inc.; EMI Blackwood Music | PA 1-161-120 | 11/30/2004 |
| C'mon Billy | EMI Blackwood Music | PA 813-461 | 2/1/1995 |
| Down By The Water | EMI Blackwood Music | PA 813-458 | 2/1/1995 |

*Exhibit B*

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|
| My Beautiful Leah | EMI Blackwood Music | PA 928-991 | 9/29/1998 |
| La Bamba | EMI Longitude Music | EP 124401 | 10/1/1958 |
| Get Busy | EMI April Music Inc. | PA 1-104-704 | 9/24/2002 |
| Wannabe | EMI Full Keel Music | PA 823-685 | 11/4/1996 |
| Viva Forever | EMI Full Keel Music | PA 740-899 | 11/3/1997 |
| Naked | EMI Full Keel Music | PA 883-322 | 12/4/1996 |
| Season | EMI April Music Inc. | PA 1-162-349 | 2/8/2005 |
| Love Shack | EMI April Music Inc.; EMI Blackwood Music | PA-448-774 | 6/27/1989 |
| Semi-Charmed Life | EMI Blackwood Music | PA 797 856 | 4/8/1997 |
| Jumper | EMI Blackwood Music | PA 797 856 | 4/8/1997 |
| Never Too Late | EMI April Music Inc. | PA 1-164-544 | 6/13/2006 |
| I Hate Everything About You | EMI April Music Inc. | PA 1-215-642 | 7/22/2003 |
| Just Like You | EMI April Music Inc. | PA 1-215-642 | 7/22/2003 |

# EXHIBIT C

**EXHIBIT C**

| ARTIST | WORK | PLAINTIFF |
| --- | --- | --- |
| Beach Boys | Barbara Ann | Capitol Records, Inc. |
| Beach Boys | Be True To Your School | Capitol Records, Inc. |
| Beach Boys | Fun, Fun, Fun | Capitol Records, Inc. |
| Beach Boys | God Only Knows | Capitol Records, Inc. |
| Beach Boys | Good Vibrations | Capitol Records, Inc. |
| Beach Boys | Sloop John B | Capitol Records, Inc. |
| Beach Boys | Surfin USA | Capitol Records, Inc. |
| Beatles | All You Need Is Love | Capitol Records, Inc. |
| Beatles | Blackbird | Capitol Records, Inc. |
| Beatles | Get Back | Capitol Records, Inc. |
| Beatles | Girl | Capitol Records, Inc. |
| Beatles | Hello Goodbye | Capitol Records, Inc. |
| Beatles | Here Comes The Sun | Capitol Records, Inc. |
| Beatles | Love Me Do | Capitol Records, Inc. |
| Beatles | Lucy In The Sky | Capitol Records, Inc. |
| Beatles | Oh Darling | Capitol Records, Inc. |
| Beatles | Penny Lane | Capitol Records, Inc. |
| Beatles | Revolution | Capitol Records, Inc. |
| Beatles | The End | Capitol Records, Inc. |
| Beatles | Yellow Submarine | Capitol Records, Inc. |
| Beatles | You Never Give Me Your Money | Capitol Records, Inc. |
| Dean Martin | Dream A Little Dream | Capitol Records, Inc. |
| Dean Martin | Memories Are Made | Capitol Records, Inc. |
| Dean Martin | That's Amore | Capitol Records, Inc. |
| Dean Martin | You're Nobody Til Somebody Loves You | Capitol Records, Inc. |
| Don McLean | American Pie | Capitol Records, Inc. |
| Fats Domino | Walking To New Orleans | Capitol Records, Inc. |
| Ferlin Husky | Gone | Capitol Records, Inc. |
| Jessie Hill | Ooh Poo Pah Doo - Part II | Capitol Records, Inc. |
| John Lennon | Imagine | Capitol Records, Inc. |
| Johnny Mercer | Ac-Cent-Tchu-Ate The Positive | Capitol Records, Inc. |

1

*Exhibit C*

| ARTIST | WORK | PLAINTIFF |
|---|---|---|
| June Christy | Something Cool | Capitol Records, Inc. |
| Les Paul | Tico Taco | Capitol Records, Inc. |
| Nat King Cole | Aquellos Ojos Verdes | Capitol Records, Inc. |
| Nat King Cole | Azure-Te | Capitol Records, Inc. |
| Nat King Cole | September Song | Capitol Records, Inc. |
| Nat King Cole | Unforgetable | Capitol Records, Inc. |
| Paul McCartney | Every Night | Capitol Records, Inc. |
| Peggy Lee | Fever | Capitol Records, Inc. |
| Pink Floyd | Julia Dream | Capitol Records, Inc. |
| Pink Floyd | The Scarecrow | Capitol Records, Inc. |
| Ricky Nelson | Lonesome Town | Capitol Records, Inc. |
| The Seekers | Sinner Man | Capitol Records, Inc. |
| Wayne Newton | Danke Schoen | Capitol Records, Inc. |