# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CAPITOL RECORDS, LLC, *et al,*

                   *Plaintiffs,*

MP3TUNES, LLC,

                   *Defendant.*

MP3TUNES, LLC,

                   *Counter-Claimant,*

CAPITOL RECORDS, LLC, *et al,*

                   *Counter-Defendants.*

No. 07 Civ. 9931 (WHP)(FM)

**Memorandum of Law in Support of Plaintiffs' Motion to Amend and Add a Party**

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT.........................................................................................................7

I.    Plaintiffs' Motion Should Be Granted Pursuant to Fed.R.Civ.P. 15 & 21 ...............................7

   A.  Leave to Amend and Add a Party Under Rules 15 And 21 Should Be Freely
       Granted................................................................................................7

       1.  Plaintiffs' Motion Is Not Futile...............................................................9

           a.  Robertson Exercised Extensive Control Over MP3tunes and Directed The
               Very Illegal Activities That Form The Heart Of This Case....................................10

           b.  Robertson's Control Over MP3tunes Gives Rise to Personal Liability For
               Copyright Infringement Committed At His Direction..........................................17

           c.  New York Law Allows the Exercise of Personal Jurisdiction Over
               Corporate Employees That Directed Illegal Conduct.........................................18

           d.  The Court's Earlier Ruling Does Not Bar This Motion........................................19

       2.  Adding Robertson As A Defendant Will Not Prejudice Defendants...........................21

   B.  Leave Should Be Granted to Add Additional Allegations of Infringement. .....................22

       1.  The Single Master Architecture..............................................................22

       2.  Cover Art ........................................................................................24

       3.  LockerShare ....................................................................................25

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acito v. IMCERA Group, Inc.,*
  47 F.3d 47 (2d Cir. 1995)..................................................................................8

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,*
  404 F.3d 566 (2d Cir. 2005)..............................................................................9

*Alpha Int'l, Inc. v. T-Reproductions, Inc.,*
  No. 02 Civ. 9586 (SAS), 2003 WL 21511957 (S.D.N.Y. July 1, 2003) ...........18, 19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
  902 F.2d 194 (2d Cir. 1990)..............................................................................8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779 (2d Cir. 1999)..............................................................................8

*Barr Rubber Prods. Co. v. Sun Rubber Co.,*
  425 F.2d 1114 (2d Cir. 1970).............................................................................8

*Capitol Records, Inc. et al., v. MP3tunes, LLC, et al.,*
  No. 07 Civ. 9931, slip op. (S.D.N.Y. Sept. 29, 2008) ........................................3

*Chapple v. Levinsky,*
  961 F.2d 372 (2d Cir. 1992)..............................................................................7

*Clarke v. Fonix Corp.,*
  98 Civ. 6116(RPP), 1999 WL 105031 (S.D.N.Y. March 1, 1999)..........................8

*Deveer v. Government Employees Ins. Co.,*
  No. 07-civ-4437 (JS), 2008 WL 4443260 (E.D.N.Y., Sept. 26, 2008)...................9

*Digital Cornerstone, Inc. v. Kevin Carmony,*
  Case No. 37-2008-00093670-CU-IP-CTL (Superior Court of the State of California,
  San Diego, Oct. 27, 2008)................................................................................22

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,*
  829 F.Supp. 62 (S.D.N.Y. 1993)............................................................17, 18, 19

*Facit, Inc. v. Krueger, Inc.,*
  732 F.Supp. 1267 (S.D.N.Y. 1990) ........................................................18, 19

*Foman v. Davis,*
   371 U.S. 178 (1962) ...................................................................................................8

*Great American Ins. Co. of New York v. TA Operating Corp.,*
   No. 06 Civ. 13230 (WHP)(JCF), 2008 WL 1848946 (S.D.N.Y. April 24, 2008) ...................9

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
   763 F.2d 55 (2d Cir. 1985).........................................................................................16

*Holiday Publishing Co. v. Gregg,*
   330 F.Supp. 1326 (S.D.N.Y. 1971) ...........................................................................20

*Hsin Ten Enter. USA, Inc. v. Clark Enters.,*
   138 F.Supp.2d 449 (S.D.N.Y. 2000)...........................................................................16

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.,*
   517 F.Supp. 900 (S.D.N.Y. 1981) .............................................................................18

*Lechner v. Marco-Domo Int'l Interieur GmbH,*
   No. 03 Civ. 5664, 2005 WL 612814 (S.D.N.Y. March 14, 2005)...........................17

*Luft v. Crown Publishers, Inc.,*
   772 F.Supp. 1378 (S.D.N.Y. 1991) .....................................................................17, 18

*Manna v. Hirschmann Corp.,*
   No. 77 Civ. 839, 1980 U.S. Dist. LEXIS 14529 (S.D.N.Y. Oct. 28, 1990) ...........21

*Momentum Luggage & Leisure Bags v. Jansport, Inc.,*
   No. 00 Civ. 7909 (DLC), 2001 WL 58000 (S.D.N.Y. Jan. 23, 2001) ......................8

*PDK Labs, Inc. v. Friedlander,*
   103 F.3d 1105 (2d Cir. 1997).....................................................................................16

*Prisco v. A&D Carting Corp.,*
   168 F.3d 593 (2d Cir. 1999)......................................................................................20

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,*
   46 F.3d 230 (2d Cir. 1995)..........................................................................................8

*ResQNet.Com, Inc. v. Lansa, Inc.,*
   382 F.Supp.2d 424 (S.D.N.Y. 2005)..........................................................................21

*Retail Software Servs., Inc. v. Lashlee,*
   854 F.2d 18 (2d Cir. 1988).........................................................................................18

*Robinson v. Overseas Military Sales Corp.,*
   21 F.3d 502 (2d Cir. 1994).................................................................................7, 8, 19

iii

*Roller Bearing Co. of America, Inc. v. American Software, Inc.*,

570 F.Supp.2d 376 (E.D.N.Y. 2008) ...................................................................21

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008) ..............................................................................19

*Sagendorf-Teal v. County of Rensselear*,
100 F.3d 270 (2d Cir. 1996) ..............................................................................20

*Soler v. G & U, Inc.*,
86 F.R.D. 524 (S.D.N.Y.1980) .............................................................................8

*State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*,
246 F.R.D. 143 (E.D.N.Y. 2007) .......................................................................22

*Sygma Photo News, Inc. v. High Society Magazine, Inc.*,
778 F.2d 89 (2d Cir. 1985) .................................................................................17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
99 F.3d 538 (2d Cir. 1996) .................................................................................19

*United States v. Birney*,
686 F.2d 102 (2d Cir. 1982) ...............................................................................20

**OTHER AUTHORITIES**

Fed.R.Civ.P. 15 ..........................................................................................7, 8, 9

Fed.R.Civ.P. 15(a)(2) ...........................................................................................7

Fed.R.Civ.P. 21 .....................................................................................8, 9, 19, 20

Fed.R.Civ.P. 30(b)(6) ...........................................................................................21

Fed.R.Civ.P. 54 .....................................................................................................7

Fed.R.Civ.P. 59 ...................................................................................................19

Fed.R.Civ.P. 59(e) ...............................................................................................19

Fed.R.Civ.P. 60 ...................................................................................................19

Fed.R.Civ.P. 60(b) ...............................................................................................19

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 21, Plaintiffs hereby move for leave to file an Amended Complaint in order to add the CEO, sole director, and primary shareholder of Defendant MP3tunes, LLC, Michael Robertson ("Robertson") as an additional Defendant in this action and to conform the allegations and substantive claims in the Complaint to the evidence uncovered during discovery.

The basis for Plaintiffs' motion is the substantial new evidence obtained through discovery that Robertson was the driving force behind, and personally participated in, the development and implementation of all of the key infringing features of the MP3tunes, LLC ("MP3tunes") websites. Indeed, as discussed herein, MP3tunes was nothing more than an instrumentality for Robertson's plans, and he made all strategic decisions, often over the objection of MP3tunes' President, Emily Richards. On this record, the case for including Robertson as a defendant is compelling.

Although Robertson was dismissed from this action in September 2008 based on this Court's determination that Plaintiffs had not been able to demonstrate that Robertson exercised the requisite degree of control over MP3tunes to warrant the exercise of personal jurisdiction, Robertson's dismissal was obtained, in large part, based on his own testimony. Information obtained through the course of discovery, however, demonstrates that Robertson's prior submissions were stunningly incomplete and inaccurate and provides the very evidence of control that the Court previously found lacking.

In addition, during discovery, Plaintiffs have uncovered new instances of copyright infringement that are closely related, and inextricably linked, to the copyright infringement already alleged in the initial complaint. While MP3tunes and Robertson are fairly on notice of the proposed additional claims from the allegations in the existing Complaint, out of an

abundance of caution, Plaintiffs also seek to conform certain allegations in the Complaint to reflect forms of copyright infringement supported by evidence only recently uncovered in discovery. A proposed Amended Complaint is annexed to this Memorandum as Exhibit 1.

## BACKGROUND

MP3tunes is a Delaware limited liability company with its principal place of business in San Diego, California. 

*See* Bart Decl. at ¶ 2 (Robertson Dep. at 40:5-23, 41:14-15) and ¶¶ 4, 5. Plaintiffs commenced this action on November 9, 2007 against both MP3tunes and Robertson asserting claims of copyright infringement and unfair competition. *See* Complaint at ¶¶ 41-88. On February 22, 2008, Defendants moved to dismiss the complaint, in part, on the grounds that this Court lacked jurisdiction over both MP3tunes and Robertson.

The response to the portion of the motion addressed to MP3tunes was simple – in the 12 months leading up to the motion, hundreds of New York customers paid MP3tunes to use their service, and New York customers played more than 100,000 songs from MP3tunes' websites, downloaded more than 189,000 music files from MP3tunes' servers, and stored ten of thousands of music files on MP3tunes' servers that they had illegally obtained from third-party websites.

In opposition to the portion of the motion addressed to Robertson, Plaintiffs submitted the affidavits of Kevin Carmony and Chad Olson, who each discussed Robertson's history of exercising tight control over his companies and relayed specific firsthand conversations with Robertson about issues relating to the infringing conduct alleged in the Complaint. In response to these allegations,

*See* Bart Decl. at ¶ 2 (Robertson Dep. at 49:4-7, 97:4-9, 138:12-18).

2

On September 29, 2008, this Court issued a Memorandum and Order denying Defendants' motion with regard to MP3tunes and granting the motion with regard to Robertson. *See Capitol Records, Inc. et al., v. MP3tunes, LLC, et al.*, No. 07 Civ. 9931, slip op. at 7-9 (S.D.N.Y. Sept. 29, 2008) (the "2008 Order"). The 2008 Order contained a determination that MP3tunes had sufficient contacts with New York such that the assertion of personal jurisdiction was proper. *Id.* at 8. The 2008 Order also expressly recognized that Robertson could be held responsible in New York for the conduct of MP3tunes if he "benefits from and exercises control over MP3tunes' infringing activities…". *Id.* at 9. However, since Carmony and Olson were not employees of MP3tunes, this Court determined that their conversations with Robertson were not proof that Robertson exercised control over the activities of MP3tunes. *Id.* at 5. Therefore, the Court ruled that there was inadequate evidence to show that Robertson was subject to personal jurisdiction in New York. *Id.* at 9.

Plaintiffs' ability to demonstrate Robertson's personal involvement in the infringing activities of MP3tunes has been thwarted by the Defendants' concerted effort to deny Plaintiffs access to information that would have proven that personal jurisdiction over Robertson existed. When Plaintiffs sought discovery related to personal jurisdiction, Defendants refused to produce relevant documents. Finally, on March 23, 2008, this Court ordered Defendants to produce a number of categories of documents, including "documents related to Michael Robertson's role in the creation of MP3tunes' business plan and technical structure and design of its websites." On March 26, 2008, MP3tunes and Robertson produced a small number of documents related to Robertson's travel to New York, ███████████████████████████████

██████████████████████████████ *See* Bart Decl. at ¶ 2

(Robertson Dep. at 146:1 - 147:12).

Recently, however, it has become clear that Defendants' response was inaccurate and that MP3tunes and Robertson failed to conduct a good faith search for documents relevant to Robertson's control over the company. During a June 15, 2009 conference before Magistrate Judge Maas following a 30(b)(6) deposition relating to MP3tunes' document production, MP3tunes was forced to admit that, when it came to producing documents related to the design and development of its websites, Robertson personally conducted an electronic search consisting of but a single word, "design." That blatantly inadequate search was the only email search conducted – and clearly violated Judge Maas' order. Judge Maas himself noted: "I don't consider this, quite frankly, a good faith effort to comply with my directive." Bart Decl. at ¶ 6, Ex. E at 6:20-21. Nonetheless, even this manifestly inadequate search revealed documents sent to and received by Robertson relating to the development and design of critical features of the sites that had not been produced during jurisdictional discovery. Undoubtedly, after full compliance with its discovery obligations, there will be additional documentary evidence reflecting Robertson's role and participation in the development and design of these features.

Without access to documents demonstrating Robertson's degree of involvement with MP3tunes, Plaintiffs were forced to rely on the testimony of third-party witnesses. Both Olson and Carmony testified that, as to one key infringing aspect of the MP3tunes service (referred to as the "single master" design), Robertson himself boasted of coming up with the idea. Without evidence of Robertson's controlling or directing the implementation of the single master design, however, this Court determined that Plaintiffs had no first-hand knowledge of Robertson's conduct at MP3tunes.

Those witnesses who did have such knowledge, however, were employed by MP3tunes and Robertson at the time of the 2008 Order and gave evasive answers when questioned. Plaintiffs have recently learned why. Robertson, as their employer, attempted to control the

4

testimony and the information revealed through discovery. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮



Bart Decl. at ¶ 3 (Richards Dep. at 20:4 - 21:3).



---

[1] Richards understood the import of Robertson's "instructions" about her deposition testimony. ▮▮▮ Bart Decl. at ¶ 3 (Richards Dep. at 21:21-22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bart Decl. at ¶ 3 (Richards Dep. at 23:1-11).



Bart Decl. at ¶ 3 (Richards Dep. at 82:23 - 83:12).

     Plaintiffs were finally able to penetrate this veil of secrecy on June 30, 2009, when Emily Richards, who was, by then, no longer the President of MP3tunes, was deposed a second time. Richards, who as President of MP3tunes worked closely with Robertson and is the person in the best position to know his degree of control at MP3tunes, provided a first-hand account of Robertson's control over the company and corroborated the information that Carmony and Olson had previously provided.

██████████████████████████████████

██████████████████████████████ As a

result, there is now an adequate factual foundation for this Court's exercise of personal

jurisdiction over Robertson and the claims against him.

## ARGUMENT

### I.    Plaintiffs' Motion Should Be Granted Pursuant to Fed.R.Civ.P. 15 & 21

On September 29, 2008, this Court issued a Memorandum and Opinion denying

MP3tunes' motion to dismiss for lack of personal jurisdiction and granting an identical motion

by Robertson.  The 2008 Order was not entered with prejudice and was not a final judgment

pursuant to Rule 54.

Dismissals based on the lack of jurisdiction or improper venue are not adjudications on

the merits and do not preclude a party from later litigating the same claim, provided that the

defect has been corrected.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n.4 (2d

Cir. 1994) ("[A] dismissal for want of subject matter or personal jurisdiction is not a decision on

the merits.  Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a

jurisdiction or under circumstances supporting jurisdiction."); *Chapple v. Levinsky*, 961 F.2d

372, 374 (2d Cir. 1992) (an order that adjudicates the rights and liabilities of fewer than all of the

parties is not a final order unless the court directs the entry of a final judgment and makes an

express finding that delay is not justified).  Therefore, Plaintiffs now move to amend and to add a

party pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure.

#### A.    Leave to Amend and Add a Party Under Rules 15 And 21 Should Be Freely Granted

Leave to amend a complaint should be "freely give[n] . . . when justice so requires."  Fed.

R.Civ.P.15(a)(2).  "In the absence of any apparent or declared reason – such as undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) (holding same).

Furthermore, courts must apply "the same standard of liberality" when assessing a motion to add a party under Rule 21 as they would in assessing a motion to amend under Rule 15. *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980); *see also Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999).

Plaintiff need only make a prima facie showing of personal jurisdiction over a defendant, and the Court is required to construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *Robinson*, 21 F.3d at 507. Where a plaintiff has engaged in extensive jurisdictional discovery, the Plaintiff may be required to aver to specific facts necessary for the exercise of personal jurisdiction, but a court must still construe all disputed facts in favor of the plaintiff and the plaintiff still need only present facts necessary to make a prima facie showing of personal jurisdiction. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Motions to amend under Rule 15 and motions to add a party under Rule 21 are both left to the discretion of the trial court. *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). Nevertheless, "the Supreme Court has emphasized that a refusal to grant leave to amend must be justified by grounds such as undue delay, bad faith, futility, or prejudice to the opposing party." *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00 Civ. 7909 (DLC), 2001 WL 58000 at * 2

(S.D.N.Y. Jan. 23, 2001). Plaintiffs' motion is not futile or prejudicial, and has not been unduly delayed or made in bad faith.

### 1. Plaintiffs' Motion Is Not Futile

While a motion to amend may be denied on the grounds of futility, Courts should not refuse leave to amend due to futility unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604 (2d Cir. 2005). Because Rule 15 and Rule 21 are governed by identical standards, futility in the context of adding a defendant under Rule 21 is only shown where a plaintiff cannot allege or aver to facts sufficient to survive a motion to dismiss. *Great American Ins. Co. of New York v. TA Operating Corp.*, No. 06 Civ. 13230 (WHP)(JCF), 2008 WL 1848946 at *2 (S.D.N.Y. April 24, 2008). When determining whether an amendment or the addition of a defendant is futile, the court must draw all factual inferences in favor of the plaintiff. *Deveer v. Government Employees Ins. Co.*, No. 07-civ-4437 (JS), 2008 WL 4443260 at *7 (E.D.N.Y. Sept. 26, 2008).

As this Court recognized in its 2008 Order dismissing the claims against Robertson, "the heart of the inquiry is whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation, and not merely some corporate employees who played no part in it." 2008 Order at 8-9 (internal quotation and citation omitted). Robertson was dismissed *only* because Plaintiffs were unable, at the time of the Motion to Dismiss, to provide sufficient evidence to convince the Court that Robertson exercised actual control over MP3tunes' infringing activities. *Id.* at 9. The testimony of MP3tunes' former President, Emily Richards, now provides exactly the evidence that was missing at the time of the 2008 Order.

    a.       **Robertson Exercised Extensive Control Over MP3tunes and Directed The Very Illegal Activities That Form The Heart Of This Case**

Plaintiffs' allegations of copyright infringement involve four core features of MP3tunes' services: i) MP3tunes' website www.sideload.com; ii) Mp3tunes' "Sideload Feature" which allows users to transfer songs found on the internet directly into their account with MP3tunes; iii) the "single master" design, whereby MP3tunes stores a single copy of a particular file and makes it available to multiple users; and iv) the expansion of MP3tunes from an independent music store into a "locker" service distributing, copying, displaying and performing illegally obtained copyrighted works. Showing that Robertson directed or controlled the creation of even one of these features would be enough to establish personal jurisdiction over him, but the evidence will show that he was the driving force behind all of them and that he directed essentially all of MP3tunes' strategic decisions.

*The Sideload Website and the Sideload Feature*

One of the methods for users to obtain access to music files through MP3tunes' service is for the users to transfer a song from external websites on the internet to an MP3tunes server in a process that the company describes as "sideloading." MP3tunes allows users to "sideload" music through a software "plug-in" (the "Sideload Feature") which users download onto their computers. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bart Decl. at ¶ 3 (Richards Dep. at 54:4-25). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* (Richards Dep. at 53:2 - 53:13).

Richards, as President of MP3tunes, was the second most senior officer of the company, with only Robertson more senior to her.  Only Robertson could have made and implemented decisions with which Richards disagreed. ████████████████

██████████████████████████████████

████████████████



*Id.*  (Richards Dep. at 51:19 - 52:20).



*Id.*  (Richards Dep. at 56:3-13).

11



*Id.* (Richards Dep. at 57:17-25).



*Id.* (Richards Dep. at 58:17-21).

Richards' testimony provides ample support for the claim that Robertson directed and controlled the creation of two critical infringing aspects of MP3tunes: the sideload website and the Sideload Feature.

### *The Single Master Design*

Whenever a user uploaded or sideloaded a file to MP3tunes' servers, MP3tunes would check to see if the identical file already existed in the system. If the file already existed, MP3tunes would delete the new file and simply give the user access to the identical pre-existing file.[2] ████████████████████████████

███████████████████████

---

[2] The existence of the "single master" design cannot reasonably be denied. ████████████

████████████████████████████████████████████████████████

Further, the declarations of Elijah Pacis, submitted as Exhibit 6 to the Bart Declaration in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, presented further evidence to support Plaintiffs' allegations of a single master copy being distributed to multiple users.



*Id.* (Richards Dep. at 37:1-7).



*Id.* (Richards Dep. at 38:18 - 39:7).





*Id.* (Richards Dep. at 40:5 - 40:22, 41:2-4; 41:8-14) (emphasis added).

<u>*Expanding MP3tunes' From Music Store to "Locker" Service*</u>



*Id.* (Richards Dep. at 27:22 - 28:7, 31:3-6).



14

*Id.* (Richards Dep. at 31:7-19, 32:20 - 33:2).



*Id.* (Richards Dep. at 32:8-19).

<u>*Robertson's General Control Over MP3tunes*</u>

Richards did not only testify to specific examples of Robertson's control over the illegal activities of MP3tunes, but she also discussed his management style and approach to strategic decision-making which made clear that Robertson controlled the Company.  Bart Decl. at ¶ 3 (Richards Dep. at 61:7-12).

*Id.* (Richards Dep. at 61:25 - 62:4, 65:15-21). Although she was nominally the President of the company,

*Id.* (Richards Dep. at 59:11-14) (emphasis added).



*Id.*   (Richards Dep. at 64:21 - 65:11; 69:23 - 70:6) (emphasis added).

Richards' deposition testimony conflicts with Robertson's testimony on a number of

issues, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████ *See* Bart Decl. at ¶ 2 (Robertson Dep. at 97:4-9, 138:12-18, 139:18-21); Defendants'

Reply Memorandum of Law in Support of Motion to Dismiss, dated May 2, 2008, at 10.

While Plaintiffs believe that Richards' testimony will ultimately prove far more credible

than Robertson's self serving denials, this Court need not decide issues of credibility when

deciding this motion.  Rather, even on jurisdictional issues, a court must assume that "all doubts

are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving

party." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 452 (S.D.N.Y. 2000)

(internal quotations omitted); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d

Cir. 1997); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

> **b.    Robertson's Control Over MP3tunes Gives Rise to Personal Liability For Copyright Infringement Committed At His Direction**

In view of the foregoing, Robertson and MP3tunes are jointly and severally liable for the acts of direct and secondary copyright infringement, and therefore the proposed amendment to the Complaint is well founded and should be granted. *See, e.g., Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers") (citation omitted).

In New York, "[i]t is well-established that corporate officers can be held liable for the infringing acts of the corporations if they personally participated in the acts constituting infringement." *Lechner v. Marco-Domo Int'l Interieur GmbH*, No. 03 Civ. 5664, 2005 WL 612814 at *6 (S.D.N.Y. Mar. 14, 2005). Furthermore, courts have no trouble holding corporate officers liable for copyright infringement where the senior corporate officer has knowledge of the infringing activity, has the ability to put an end to it, and fails to do so. *Luft v. Crown Publishers, Inc.*, 772 F.Supp. 1378, 1379-80 (S.D.N.Y. 1991) (holding president and majority shareholder of corporation jointly and severably liable for acts of copyright infringement).

In addition to directing and controlling the infringing conduct at MP3tunes, Robertson stood to benefit from it as well. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Bart Decl. at ¶¶ 4, 5. Courts have routinely determined that when a corporate officer, who also happens to be a large shareholder, takes action intended to benefit the corporation, the officer is also taking action intended to benefit himself. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 66 (S.D.N.Y. 1993) (a "corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable" for copyright infringement.); *Luft,*

772 F.Supp. at 1379-80 (S.D.N.Y. 1991) (corporate officer "had a 65 percent interest in the corporation and he was [defendant's] President. Surely, he benefitted from the profitability of selling the infringing materials."); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y. 1981).

The evidence Plaintiffs have presented provides ample support for Plaintiffs' allegations that Robertson was aware of MP3tunes' infringing activities, directed the infringing activity, stood to benefit from the infringing activity, and had the ability to put an end to it if he wished.

### c.    New York Law Allows the Exercise of Personal Jurisdiction Over Corporate Employees That Directed Illegal Conduct

Not only do the facts presented give rise to liability on the part of Robertson, they also give rise to personal jurisdiction over Robertson in the Southern District of New York. New York law is clear that an executive who exerts control over and stands to benefit from the activities that give rise to New York jurisdiction is subject to jurisdiction along with his company. *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (personal jurisdiction will be found where corporate officer is "primary actor" in corporation's transaction in New York); *see, e.g., Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003); *Facit, Inc. v. Krueger, Inc.,* 732 F.Supp. 1267, 1273-74 (S.D.N.Y. 1990).

In cases of copyright infringement, New York courts apply a similar standard in determining whether a defendant is liable for the infringing acts of the corporation and whether the defendant is subject to personal jurisdiction. For example, courts have determined that where a corporate executive causes and directs the creation of infringing material which is later sold in New York, the executive is subject to jurisdiction in New York. *Editorial Musical Latino Americana, S.A.* 829 F.Supp. at 66.

As a result, Robertson, like MP3tunes, is subject to New York's long-arm statute. *See, e.g., Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) ("Jurisdiction extends to the employees of a corporation who had knowledge of, and extensive control over, the New York transaction that is the source of the litigation."); *Facit, Inc.* 732 F.Supp. at 1272-73 (under New York law, corporate officers are not shielded from personal jurisdiction because they purport to act on behalf of the company).

The Court has already determined that MP3tunes is subject to jurisdiction in New York. 2008 Order at 8. Through evidence that Robertson directed and controlled the infringing activities giving rise to jurisdiction over MP3tunes, Plaintiffs have carried their burden of presenting a prima facie case of personal jurisdiction. *See Robinson*, 21 F.3d at 507; *Editorial Musical Latino Americana, S.A.* 829 F.Supp. at 66.

### d.    The Court's Earlier Ruling Does Not Bar This Motion

The Federal Rules of Civil Procedure provide that a "court may *at any time*, on just terms, add or drop a party." Fed.R.Civ.P. 21 (emphasis added). Because no judgment was entered with respect to Robertson, Plaintiffs are not required to bring a motion for reconsideration under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, both of which are limited to judgments expressly entered by the Court. Fed.R.Civ.P. 59(e); Fed.R.Civ.P. 60(b). It is well established that "a district court is vested with the power to revisit its decisions before entry of final judgment and is free of the constraints of Rule 60 in so doing... ." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996); *see, e.g., Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (Motions to reconsider or vacate under Rule 59(e) and Rule 60(b) are required prior to granting leave to amend only in cases where judgment is final).

Because the dismissal of Robertson was made without prejudice to Plaintiffs' claims, nothing precludes Plaintiffs from refiling their case against Robertson in this district or in any

other. In cases where filing a claim against a party is not precluded by a final judgment, courts have not only recognized Rule 21 as an appropriate vehicle for adding the defendant, but they have preferred it to the expense and burden of multiple litigations. *Holiday Publishing Co. v. Gregg*, 330 F.Supp. 1326, 1328 (S.D.N.Y. 1971) (granting motion to add a party because where "plaintiff could commence a new identical action" forcing "the court to spend time on such procedural rigmarole would be wasteful and unwarranted").

The fact that the 2008 Order does not bar Plaintiffs' motion is not meant to be construed as an argument that the Court's prior determination regarding personal jurisdiction over Robertson is irrelevant or unimportant. Quite the contrary, the prior decision serves as the background for arguments that Defendant is expected to assert regarding futility. For the reasons discussed, however, Plaintiffs' proposed amendments and additions are not futile.

In its pre-motion letter, Defendant argued that this Court's 2008 Order was the "law of the case." However, the law of the case doctrine is generally applied to situations in which a party is seeking to have the court reconsider the soundness of a prior ruling, and not in situations where the party seeks a wholly new determination. Moreover, even if the doctrine did apply the application of the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Sagendorf-Teal v. County of Rensselear*, 100 F.3d 270, 277 (2d Cir. 1996) (citations omitted). Furthermore, among the major grounds justifying departure from the doctrine is the availability of new evidence. *Id.* The Second Circuit is clear that the law of the case doctrine does not prevent judges from reconsidering earlier determinations, even at trial. *Prisco v. A&D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999); *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) ("[T]he law of the case is, at best, a discretionary doctrine 'which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided.'") (citation omitted);

20

*see also Manna v. Hirschmann Corp.*, No. 77 Civ. 839, 1980 U.S. Dist. LEXIS 14529, at *13-19

(S.D.N.Y. Oct. 28, 1990) (granting motion to add defendant previously dismissed for lack of

personal jurisdiction).

### 2.    Adding Robertson As A Defendant Will Not Prejudice Defendants

Whether or not a proposed amendment is prejudicial to a party is "often intertwined" with

the consideration of whether there was undue delay on the part of the movant. *Roller Bearing*

*Co. of America, Inc. v. American Software, Inc.*, 570 F.Supp.2d 376, 384 (E.D.N.Y. 2008).  With

that in mind, however, absent a showing of bad faith or prejudice, delay alone will rarely result

in the denial of a motion to amend. *ResQNet.Com, Inc. v. Lansa, Inc.*, 382 F.Supp.2d 424, 449

(S.D.N.Y. 2005).

The addition of Robertson as a defendant will not prejudice MP3tunes or Robertson in

this action.  First, the addition of Robertson will not impact the schedule set forth by the Court.

Although Robertson was dismissed from the case on September 29, 2008, as the CEO of

Defendant MP3tunes he has remained an integral part of this case in all respects.  He has

attended all third-party depositions and all depositions of present and former MP3tunes

employees, has been deposed as a witness pursuant to Federal Rule of Civil Procedure 30(b)(6),

has already been the subject of a personal document subpoena, and has personally handled

discovery requests for the company.   Robertson's involvement in this matter has been extensive,

and adding him as a named Defendant will not change how the case proceeds.  Furthermore, his

addition will add no significant expense or discovery, will require no additional resources in

preparing for a trial, and will not materially change any issues to be decided.

Similarly, Plaintiffs have not engaged in any delay in adding Robertson.  Robertson and

MP3tunes' purposeful obstruction of discovery is the cause of any delay.  As detailed above, to

date, Robertson and MP3tunes have failed to produce necessary documents relating to the

development of the infringing features of Defendants' services and Robertson has interfered with

the testimony of witnesses. ████████████████████████████████████████

████████████████████████████████[3] Only because a critical witness was removed

from Robertson's sphere of influence, were the Plaintiffs finally, on June 30, 2009, able to access

evidence that should have been revealed months ago.  Although MP3tunes still has not produced

documents related to Robertson's role in designing and developing the MP3tunes websites,

Plaintiffs have moved as quickly as possible in making this motion.

Indeed, the proposed amendment would be in the interest of judicial efficiency as it will

permit all the closely related and jointly responsible parties to be held liable in one suit and

obviate the need for Plaintiffs to commence a separate action against Robertson.

**B.      Leave Should Be Granted to Add Additional Allegations of Infringement.**

In addition to adding Robertson as a defendant, Plaintiffs seek to add allegations on three

topics, which will result in the addition of one new claim.  Plaintiffs' additional allegations are

designed to conform the allegations in the Complaint to the evidence revealed during discovery.

Although leave to amend should be freely granted, this is particularly true where, as here, new

facts were uncovered through discovery, are closely related to the original claims, and are

foreshadowed in earlier pleadings.  *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services,*

*P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y. 2007).

**1.      The Single Master Architecture**

Although users are informed that MP3tunes' server contains a personal copy of each song

that they upload or sideload, MP3tunes does not keep distinct files for each user.  Instead,

MP3tunes assigns each unique digital file on its system a "file key."  Despite what users are told

---

[3] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

by MP3tunes, a user does not have personal storage space containing actual digital files in a discrete location; user "lockers" simply have a list of file keys which are nothing more than references to digital files stored on a centralized server.

When one user attempts to upload or sideload a digital music file that is an exact match of a file already in the MP3tunes database, the system simply disregards the new file and uses the first uploaded file as a "master" file. As a result, MP3tunes retains only a single digital copy of a file that is then shared by multiple users. ████████████████████████████████ ████████████████████████████████████ Bart Decl. at ¶ 3 (Richards Dep. at 47:9-14). While Plaintiffs have long suspected that Defendant employed this single master design, through discovery, including of MP3tunes' source code, ████████████████████████ ████████████████████████████████████████████ *See* Bart Decl. at ¶ 3 (Richards Dep. at 36:2-4, 38:21 - 39:7). By employing the Single Master Architecture, MP3tunes is not merely a passive conduit for the infringing activities of its users. Rather, MP3tunes uses its central library of digital music files to publicly perform and distribute a single copy to multiple users. This constitutes <u>direct infringement</u> of Plaintiffs' exclusive rights under the Copyright Act to publicly perform and distribute their works. While the initial Complaint alleges direct infringement, the proposed amendment provides more details as to the various means by which Defendants infringe Plaintiffs' rights.

The additional allegations related to the Single Master Architecture will not prejudice Defendants or delay the proceedings. Both Robertson and MP3tunes have been aware of Plaintiffs' interest in the Single Master Architecture since at least April 2008. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss at 11. ████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████

█████████s, *see* Bart Decl. at ¶ 2 (Robertson Dep. at 96:15 - 97:15), and to their refusal to produce the source code during jurisdictional discovery.

### 2. Cover Art

The recent deposition of Richards, as well as documents produced during the course of discovery, reveal that in addition to illegally sharing and distributing Plaintiffs' sound recordings and musical compositions, Defendants also illegally share and distribute photographic and other artistic works owned by Plaintiffs. Records, cassettes, CDs, DVDs, and other physical media containing sound recordings and compositions are generally sold in packaging with photographs, paintings, or other artistic works on the cover. The tradition of using "Cover Art" has carried over into the digital age so that even digital music files are sometimes sold with Cover Art attached to or embedded in the music files.

In order to encourage users to use their services and to upgrade to paying membership, Defendants searched the internet for digital copies of Cover Art, copied that Cover Art, and automatically associated that Cover Art with digital music files uploaded or sideloaded by users onto the MP3tunes servers. When a user plays a song for which MP3tunes has obtained the Cover Art, the Cover Art is displayed on MP3tunes' website. Plaintiffs own or control the copyrights in the Cover Art associated with many of the sound recordings and compositions that appear in Defendants' locker service, and the Cover Art on Defendant's websites is reproduced and publicly displayed without Plaintiffs' license or authorization.

████████████████████████████████████████████████████████

██████████████████████ *See* Bart Decl. at ¶ 3 (Richards Dep. at 107:6 - 108:7). Furthermore, allegations related to Cover Art result only in the addition of a claim for the infringement of Plaintiffs' rights to publicly display its artwork, a claim that is the graphic image analog of claims for the infringement of Plaintiffs' rights to publicly perform sound recordings and

compositions. The addition of this claim does not substantially change the nature of this action, nor will it result in any delay of the proceedings.

### 3.    LockerShare

In addition to services accessible from the websites www.MP3tunes.com and www.sideload.com, documents produced during the course of discovery reveal that Defendant operated an additional website at www.lockershare.com ("LockerShare"). A thorough study of the source code produced by Defendant indicates that LockerShare may have allowed a user to browse the music of other users. Furthermore, if one user had used Defendant's sideload service to obtain music, a second user could use LockerShare to access and create a permanent copy of the first user's music. Even if a song was removed from www.sideload.com or from its location on another website, the song was not removed from the MP3tunes servers or from MP3tunes users that had already obtained it. As a result, LockerShare effectively circumvented any attempt by content owners to remove infringing content from www.sideload.com and further facilitated widespread copyright infringement. Plaintiffs were unaware of the existence of LockerShare until their review of material recently produced during discovery. Furthermore, Plaintiffs' allegations related to LockerShare will not result in the addition of any new claims, but instead add factual support for existing claims of copyright infringement.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the motion be granted and the Plaintiffs granted leave to file the Amended Complaint attached as Exhibit 1 to the Motion.

DATED: July 31, 2009                   Respectfully submitted,

By: _Andrew H Bart_____

Andrew H. Bart
Carletta F. Higginson
Joseph J. McFadden

25

JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690
fax (212) 891-1699

-and-

Steven B. Fabrizio
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC,
Caroline Records, Inc, EMI Christian Music
Group Inc., Priority Records LLC, Virgin Records
America, Inc.*

By: _____
Donald S. Zakarin
Frank P. Scibilia
Mark A. Tamoshunas
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for the Beechwood Music Corp.,
Colgems-EMI Music Inc., EMI April Music Inc.,
EMI Blackwood Music, EMI Full Feel Music,
EMI Golden Torch Music Corp., EMI Longitude
Music, EMI Virgin Music, Inc., EMI Virgin Songs,
Inc., EMI Al Gallico Music Corp., EMI Algee
Music Corp., EMI Feist Catalog, Inc., EMI Gold
Horizon Corp., EMI Grove Park Music, Inc. EMI
Hastings Catalog, Inc., EMI Mills Music, Inc.,
EMI Miller Catalog, Inc., EMI Robbins Catalog,
Inc., EMI U Catalog, Inc., EMI Unart Catalog,
inc., Jobete Music Co., Inc., Screen Gems-EMI
Music, inc., Stone Agate Music, and Stone
Diamond Music*

26