Donald S. Zakarin (dzakarin@pryorcashman.com)
Frank P. Scibilia (fscibilia@pryorcashman.com)
Mark A. Tamoshunas (mtamoshunas@pryorcashman.com)
M. Mona Simonian (msimonian@pryorcashman.com)
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100, Facsimile: (212) 326-0806
*Attorneys for EMI Publishing Plaintiffs*

Andrew H. Bart (abart@jenner.com)
Carletta F. Higginson (chigginson@jenner.com)
Joseph J. McFadden (jmcfadden@jenner.com)
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone: (212) 891-1690, Facsimile: (212) 891-1699
*-and-*
Steven B. Fabrizio (sfabrizio@jenner.com) (*admitted pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000, Facsimile: (202) 639-6066
*Attorneys for EMI Record Label Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CAPITOL RECORDS, INC., et al., | 07 Civ. 9931 (WHP) (FM) |
| *Plaintiffs*, | |
| v.- | |
| MP3TUNES, LLC AND MICHAEL ROBERTSON, | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MP3TUNES' MOTION TO DISMISS PARTIES AND CLAIMS FROM PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS............................................................................................... 3

ARGUMENT ................................................................................................................ 7

   I.   DEFENDANT'S MOTION IS MERITLESS ................................................................ 7

      A.  Defendant's Motion Is Based On An Unpleaded Affirmative
          Defense As To Which It Has Yet To Offer Any Proof ........................................ 7

      B.  Defendant's Motion Incorrectly Assumes That Sending
          A DMCA-Compliant Notice Is Required Prior To
          Asserting A Cause of Action For Copyright Infringement .................................... 9

      C.  Plaintiffs' Amended Complaint Sufficiently Alleges Each Cause Of Action .................. 17

      D.  Inducement Has Been Held To State A
          Claim Separate from Contributory Infringement.............................................. 21

   II.  DEFENDANT'S MOTION IS BARRED BY FED. R. CIV. P. 12 ...................................... 22

      CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                                                    <u>PAGE(s)</u>

*Arista Records, Inc. v. Flea World, Inc.*,
      No. 03-2670 (JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006)................................. 14

*Arista Records v. Does 1-16*,
      1:08-CV-765 (GTS/RF), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) ...........................17, 24

*Arista Records LLC v. Media Services LLC*,
      06 Civ. 15319 (NRB), 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) ....................................... 16

*Arista Records LLC v. Usenet.com, Inc.*,
      No. 07 Civ. 8822 (HB), 2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008)................................8, 9

*Arista Records LLC v. Usenet.com, Inc.*,
      -- F. Supp. 2d. --, 2009 WL 1873589 (S.D.N.Y. June 30, 2009) .................... 12, 13, 19, 21, 22

*Arma v. Buyseasons, Inc.*,
      591 F. Supp. 2d 637 (S.D.N.Y. 2008)..........................................................................3, 16, 24

*Ashcroft v. Iqbal*,
      129 S. Ct. 1937 (U.S. 2009).................................................................................................24

*Bell Atlantic Corp. v. Twombly*,
      550 U.S. 544 (2007) ....................................................................................................17, 24

*Bogart v. Shearson Lehman Bros., Inc.*,
      No. 91 CIV. 1036 (LBS), (NG), 1995 WL 46399 (S.D.N.Y. Feb. 6, 1995) ..........................23

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
      536 F.3d 121 (2d Cir. 2008) ..............................................................................................20

*Chapman v. New York State Division for Youth*,
      546 F.3d 230 (2d Cir. 2008) ...........................................................................................3, 24

*CoStar Group, Inc. v. LoopNet, Inc.*,
      373 F.3d 544 (4th Cir. 2004) .........................................................................................18, 19

*Dorchester Investors v. Peak Trends Trust*,
      No. 99 Civ. 4696 (LMM), 2002 WL 272404 (S.D.N.Y. Feb. 26, 2002) ...............................23

*Ellison v. Robertson*,
      357 F.3d 1072 (9th Cir. 2004) .......................................................................................13, 18

**CASES**                                                                                                    **PAGE(s)**

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir. 1996) ................................................................ 13

*In re Fuwei Films Securities Litigation,*
    -- F. Supp. 2d --, 2009 WL 2005291 (S.D.N.Y. July 10, 2009)................................. 9

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,*
    443 F.2d 1159 (2d Cir. 1971) ............................................................ 13

*Hsin Ten Enterprise U.S., Inc. v. Clark Enterprises,*
    138 F. Supp. 2d 449 (S.D.N.Y. 2000)...................................................... 3

*Jones v. Hoosman,*
    No. 05 C 2909, 2006 WL 1302524 (N.D. Ill. May 9, 2006) ................................. 23

*KBL Corp. v. Arnouts,*
    08 Civ. 4873 (JGK), 2009 U.S. Dist. LEXIS 9192 (S.D.N.Y. Feb. 7, 2009)..................... 21

*Kuklachev v. Gelfman,*
    600 F. Supp. 2d 437 (E.D.N.Y. 2009) .................................................. 17, 24

*MGM, Inc. v. Grokster, Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .................................................. 22

*MGM Studios, Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005) ................................................................. 13, 21

*Microsoft Corp. v. EEE Business, Inc.,*
    555 F. Supp. 2d 1051 (N.D. Cal. 2008) .................................................. 13

*In re Napster, Inc. Copyright Litigation v. Hummer Windblad Venture Partners,*
    No. C-MDC-00-1369, 2006 U.S. Dist. LEXIS 30338 (N.D. Cal. May 17, 2006) ........... 21, 22

*New York Times Co. v. Tasini,*
    533 U.S. 483 (2001) ................................................................... 19

*Ortiz v. Guitian Music Brothers, Inc.,*
    No. 07 Civ. 3897, 2009 WL 2252107 (S.D.N.Y. July 28, 2009)................................ 9

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    No. 05-4753 (AHM)(SHx), 2009 WL 1334364 (C.D. Cal. May 12, 2009) ................... 14

*Perfect 10, Inc. v. Visa International Serv. Association,*
    494 F.3d 788 (9th Cir. 2007) ........................................................... 22

**CASES**                                                                    **PAGE(s)**

*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*,
    982 F. Supp. 503 (N.D. Ohio 1997)...............................................................14, 19

*Playboy Enterprises v. Webbworld, Inc.*,
    968 F. Supp. 1171 (N.D. Tex. 1997)......................................................................19

*RSO Records, Inc. v. Peri*,
    596 F. Supp. 849 (S.D.N.Y. 1984)........................................................................14

*Shapiro, Bernstein and Co. v. H.L. Green Co.*,
    316 F.2d 304 (2d Cir. 1963).................................................................................13

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).............................................................................................20

*Stumm v. Drive Entertainment, Inc.*,
    No. 00 Civ. 4676(DC), 2002 WL 5589 (S.D.N.Y. Jan. 2, 2002)..........................13

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007)..................................................................8

**STATUTES**

Fed. R. Civ. P. 8.........................................................................................................2

Fed. R. Civ. P. 9.......................................................................................................17

Fed. R. Civ. P. 9(b)..................................................................................................17

Fed. R. Civ. P. 12........................................................................................22, 23, 24

Fed. R. Civ. P. 12(b)(6).................................................................................2, 8, 9, 20

Fed. R. Civ. P. 12(c).................................................................................................23

Fed. R. Civ. P. 12(g)...........................................................................................22, 23

Fed. R. Civ. P. 12(h)(2).......................................................................................22, 23

Fed. R. Civ. P. 12(h)(2)(A)......................................................................................23

Fed. R. Civ. P. 12(h)(2)(B)......................................................................................23

Fed. R. Civ. P. 12(h)(3)............................................................................................23

## STATUTES                                                                    PAGE(s)

Fed. R. Civ. P. 15 ........................................................................................................ 16

Fed. R. Civ. P. 21 ........................................................................................................ 16

17 U.S.C. § 512(a) ........................................................................................................ 9

17 U.S.C. § 512(c) ............................................................................................... 1, 7, 8, 10

17 U.S.C. § 512(c)(1)(A)(i)-(iii) ................................................................................ 10

17 U.S.C. § 512(c)(1)(B) ........................................................................................... 10

17 U.S.C. § 512(c)(1)(C) ...................................................................................... 9, 11

17 U.S.C. § 512(c)(3) ................................................................................................. 11

17 U.S.C. § 512(c)(3)(A)(ii) ............................................................................... 11, 15

17 U.S.C. § 512(i) ..................................................................................................... 8, 9

17 U.S.C. § 512(k) .................................................................................................... 8, 9

## TREATISE

3 Melville B. & David Nimmer, Nimmer On Copyright § 12.04[A][4] (2009) ................................... 21

## CONGRESSIONAL HISTORY

H.R. Rep. 105-551 (II) ....................................................................................... 10, 11, 12

S. Rep. 105-190 ................................................................................................. 10, 11, 12

## PRELIMINARY STATEMENT

After asserting, without justification, that the EMI Publishing Plaintiffs' amendment of the Complaint to add as plaintiffs a few additional copyright-holding entities would result in "prejudice" and would be "futile," Defendant MP3tunes, LLC was granted permission to make a motion to dismiss those additional plaintiffs, on those grounds. Instead, Defendant has moved to dismiss *all* of the EMI Publishing Plaintiffs, and one EMI Record Label Plaintiff, on an *entirely different* ground: namely, that none of those Plaintiffs have adequately plead copyright infringement under a purportedly "new pleading standard" that is not new at all. Defendant's motion is based on a fundamental misunderstanding of the Digital Millennium Copyright Act ("DMCA") and its safe harbors, well-established principles of copyright law, and fundamental rules of pleading, procedure, and burdens of proof.

Defendant is advancing an extraordinary request: dismissal of a complaint, at the pleading stage, based on an affirmative defense as to which it has yet to offer any proof (and which, in fact, it has yet to even *plead* since no answer to the Amended Complaint has yet been filed). Section 512(c) of the DMCA is an *affirmative defense*. Yet Defendant's motion merely *assumes* that it entitled to the protection of Section 512(c), and then demands that Plaintiffs' claims be dismissed on that assumption. To be clear, it is black letter law that pleading and proving every element of an affirmative defense is *Defendant's* burden*, not* the Plaintiffs'. Plaintiffs have no obligation to plead the inapplicability of the defense (which happens to be inapplicable). (*See* Point I.A, *infra.*)

Not only is Defendant's motion based on an as yet unplead and unproven affirmative defense, that defense is legally baseless. Defendant should not be permitted to further burden this action with the assertion of a baseless defense.

Defendant argues that sending a DMCA-compliant notice under 17 U.S.C. § 512(c) is a

precondition to filing a copyright infringement suit, and that the *only* compositions that it can be held liable for infringing are those that have been identified in such a notice. That is not the law. A defendant can be (and this Defendant is) disqualified from the safe harbor based on its knowledge or conduct, *irrespective of notices*. A defendant can be liable under the doctrine of contributory liability for the infringement of *any* copyrights as to which it had actual or constructive knowledge, regardless of whether such works were listed in a DMCA-compliant notice, or, for that matter, in any other notice. And knowledge (actual, constructive, from notice, or otherwise) is not even an element of the cause of action for direct, vicarious infringement or induced infringement.[1] The DMCA did not abrogate these well-settled principles. In fact, the statute and its legislative history *explicitly reject* Defendant's argument, providing, *inter alia*, that *"copyright owners are not obligated to give notification of claimed infringement in order to enforce their rights."* (*See* Point I.B, *infra.*)

Defendant also challenges the sufficiency of Plaintiffs' pleading of certain claims. Defendant would have the Court believe that all Plaintiffs have done is "parrot all of the elements of [their] cause[s] of action." (*See* Def's Mem. at 2.) As detailed below, nothing could be further from the truth. Plaintiffs' allegations on their affirmative claims easily satisfy the requirements of Rule 8, which is precisely why Defendant did not challenge them when it made its first Rule 12 motion. (*See* Point I.C, *infra.*)

Indeed, Defendant's failure to challenge in its first Rule 12 motion precludes this motion. Defendant already moved under Rule 12 to dismiss the claims of the Plaintiffs named in original Complaint. None of those claims were changed by the Amended Complaint. Because Defendant failed to challenge in its first Rule 12 motion the adequacy of the pleading of these un-amended claims, it is precluded from doing so now by way of a Rule 12(b)(6) motion. (*See* Point II, *infra.*)

---

[1]  For this and other reasons, contrary to Defendant's assertion, inducement of infringement has been held to state a claim separate from contributory infringement. (*See* Point I.D, infra.)

## STATEMENT OF FACTS

Other than the procedural facts which are supported by references to the docket, all of the pertinent facts on this motion come directly from the Complaint and the Amended Complaint.[2]

On November 9, 2007, various record labels affiliated with EMI Music North America, and various music publishing entities affiliated with EMI Entertainment World Inc. and collectively doing business as EMI Music Publishing, filed a Complaint against MP3tunes and its principal Michael Robertson alleging direct, contributory, vicarious and induced copyright infringement (and unfair competition with respect to pre-1972 sound recordings).  (Dkt. 1.)

After finally obtaining from Defendant, earlier this year, server data and source code that permitted Plaintiffs to determine the precise universe of musical compositions and sound recordings that have been infringed by Defendant in the manner alleged in the original Complaint, the EMI Publishing Plaintiffs were granted permission to amend the Complaint to add to the caption, as plaintiffs, additional music publishing entities that hold copyrights in certain of those musical compositions, to conform the pleading to the evidence.  The addition of these publishing entities as plaintiffs is the *only* amendment to the original Complaint made in the Amended Complaint.  The Amendment does not change the original allegations that form the basis for and provide notice to the Defendant of Plaintiffs' claims in *any* way whatsoever.  (*Compare* Dkt. 1 & Dkt. 91.)

---

[2]  Defendant eschews the statement of facts that would ordinarily be contained in a memorandum of law in favor of a two-page "Background" section that ignores the allegations in Plaintiffs' pleadings. The few "facts" offered by Defendant in that section -- which consists mostly of rhetoric, inaccurate legal conclusions, and unfounded and nonsensical accusations regarding, *inter alia*, "vertical integration" -- come from a self-serving declaration of Michael Robertson, which have either not been tested in discovery or have been, based on the discovery adduced to date, proven untrue. Regardless, because on a motion to dismiss a Court must accept "all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor" notwithstanding a controverting presentation by the moving party, *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234-235 (2d Cir. 2008); *Arma v. Buyseasons, Inc*., 591 F. Supp. 2d 637, 642 (S.D.N.Y. 2008); *see also Hsin Ten Enter. U.S., Inc. v. Clark Enters*., 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000), those untested assertions (and, indeed, Defendant's entire "Background" section) should be disregarded.

Contrary to Defendant's assertion (Def's Mem. at 2, 10), the allegations in the Complaint and the Amended Complaint go far beyond the assertion of "mere legal conclusions" or the "parroting" of the elements of the causes of action asserted.  In fact, Plaintiffs' twenty-four page, one-hundred and eight paragraph Amended Complaint describes the manner in which Defendant has infringed Plaintiffs' copyrights in painstaking detail.

Plaintiffs allege that Defendant engaged in willful copyright infringement by providing users with access to popular copyrighted music through two websites, www.sideload.com (the "Sideload site") and www.mp3tunes.com (the "MP3tunes site").  (Dkt. 91 (Amended Compl.) ¶¶ 1-2.) Through these two websites, Defendant "provides its users with an integrated music service through which they can listen to music over their computers," obtain and store permanent copies of music, transfer music to their computers or other portable devices, and further distribute that music to others. (*Id.* ¶ 2.)  Plaintiffs "own the copyrights, or the exclusive reproduction, distribution and public performance rights, in the copyrighted works listed on Exhibits A and B and many others that have been infringed through [these two] websites."  (*Id.* ¶ 79; *see also* ¶¶ 8, 57, 64, 72, 86, 93, 100, 105.)

The Amended Complaint, like the initial Complaint, further details the numerous ways in which Defendant infringes Plaintiffs' copyrights through these websites.  (*Id.* ¶ 5.)  Through the Sideload site, Defendant collects, organizes, indexes and offers "links" to music files that are being unlawfully made available by third-party websites.  (*Id.* ¶ 41.)  A user can search Defendant's index by artist or title to locate virtually any copyrighted recording or composition that he or she desires. (*Id.* ¶ 42.)  A user can also browse Defendant's "catalog" of music through alphabetical artist listings, or pick songs from Defendant's listings on the Sideload site that advertise the "Most Popular Tracks," "Newest Tracks" or "Featured Tracks."  (*Id.*)  Defendant then "streams" this music to the user, "on-demand."  (*Id.*)

Defendant also enables users to obtain permanent copies of the digital music files accessible through the Sideload site.  (*Id.* ¶ 43.)  "Next to each song listed on Sideload.com is a small 'SL' icon -- which stands for 'Sideload.'"  (*Id.*)  When a user that has a "locker" at the MP3tunes site clicks that SL icon, "MP3tunes makes a full, permanent copy of the desired work."  (*Id.*)  That copy which is stored on Defendant's servers, is then made available by Defendant to that user and any future user who has a "locker" at MP3tunes.com.[3]  "This is referred to as "sideloading" a song to a locker," and Defendant provides software that also enables users to "sideload" infringing music files from Internet sites other than the Sideload site."  (*Id.* ¶¶ 43-44.)  A user can obtain as many copies of a "sideloaded" work as he or she desires by copying it or downloading it to several computers at the same time.  (*Id.* ¶ 46.)

Plaintiffs allege that, by virtue of the aforementioned acts, Defendant has ***directly*** infringed Plaintiffs' copyrights, including but not limited to the works listed in the complaint.  Each time a user uses the Sideload site or the SL feature to "sideload" a recording from a third-party website, Defendant makes one or more perfect, fixed digital copies of the work onto its servers (whether as a "single master" to be distributed to several users, or whether as multiple copies "placed" in user's "lockers," as Defendant had originally represented) in violation of Plaintiffs' exclusive rights of ***reproduction***.  (*Id.* ¶¶ 56-62.) Each time Defendant transfers an unauthorized copy of one of

---

[3]    While the original and Amended Complaint allege that "MP3tunes makes a full, permanent copy of the desired work and stores it in a 'locker' assigned to that user at MP3tune.com" (*id.*), Plaintiffs have come to learn through discovery that Defendant, in fact, does not store a copy of the work in the user's "locker," but, instead, copies and stores a "single master" copy of the work on its own servers, and uses file references to direct users who wish to stream or copy that same work to that same "single master."  For the purposes of this motion, this is a distinction without a difference, as either method of exploiting infringing music files violates the Plaintiffs' exclusive rights of reproduction (either by making one "single master" server copy, or hundreds of "individual locker" server copies, of each work), distribution and public performance.  Plaintiffs are however, by their motion of July 31, 2009, seeking to amend the Amended Complaint to, *inter alia*, conform these and other allegations to the evidence.

Plaintiffs' copyrighted musical works from its server (whether from the "single master" or from a copy "placed" in a user's "locker") to another computer or portable music device, Defendant distributes that copy in violation of Plaintiffs' exclusive rights of *distribution*.  (*Id.* ¶¶ 63-69.) And each time Defendant streams an unauthorized copy of one of Plaintiffs' copyrighted musical works to one of its users (whether from the Sideload or MP3tunes site), Defendant publicly performs Plaintiffs' works in violation of Plaintiffs' exclusive rights of *public performance*.  (*Id.* ¶¶ 70-77.)

Plaintiffs also allege that, by virtue of the aforementioned acts, Defendant is liable under the doctrines of contributory, vicarious, and induced copyright infringement. (*Id.* ¶ 5.)

On the claim for *contributory infringement*, Plaintiffs allege that "[t]hrough the creation, maintenance, and operation of the sites and facilities" for this infringement, Defendant "knowingly cause[s] and/or otherwise materially contribute[s] to the unlawful reproduction, distribution, and public performance of Plaintiffs' copyrighted works . . . in violation of Plaintiffs' exclusive" copyright rights.  (*Id.* ¶ 87.)  Specifically, on the issue of *knowledge* (which, to state a claim for contributory infringement, may be actual or constructive), Plaintiffs allege, *inter alia*, that "[t]he works listed on Sideload.com are readily recognizable as copyrighted works; indeed, Defendants' service provides, when available, images reflecting the covers of albums on which the works originally appeared.  Plaintiffs have also notified Defendants of the infringing content on their websites and have provided them with representative lists of musical works being infringed on their service."  (*Id.* ¶ 50.)  MP3tunes and its principal, Michael Robertson, "know full well -- because it is self-evident from even a passing review of MP3tunes' sites and because Plaintiffs have told them -- that the vast majority of the music available through the MP3tunes service is infringing."  (*Id.* ¶ 4.)

With respect to their *vicarious infringement* claim, Plaintiffs allege that Defendant has "the right and ability to supervise and control the infringing activities that occur through the use of [the]

websites, and at all relevant times has derived a direct financial benefit attributable to the infringement through those sites." (*Id.* ¶ 94.)  On the issue of "financial benefit," Plaintiffs allege that Defendant takes for itself "the creative and financial investments of others," including by charging fees for "premium" membership, and that "[t]he financial viability of [Defendant's] business depends upon exploiting the most popular music to attract users to [Defendant's] sites." (*Id.* ¶¶ 1, 4, 45.)  In fact, Defendant boasts that its catalog of music contains "over 400,000 musical recordings by 40,000 artists," and advertises its service as a "destination" where users can get all of the "free" music they want. (*Id.* ¶¶ 2, 41.)

Plaintiff further alleges, with respect to its claim for ***inducement of copyright infringement***, that Defendant operates and maintains its sites "with the object of promoting their use to infringe Plaintiffs' copyrighted works." (*Id.* ¶ 80.)  Defendant's inducement of infringement "is apparent from, among other things, the predominantly infringing content available on Defendants' sites; Defendants' open listing and advertising of obviously infringing works; Defendants' express invitations to copy the most sought-after music for free; Defendants' failure to make any earnest effort to prevent or filter copyright infringement on their sites; and Defendants' business model, which is overwhelmingly dependent upon widespread copyright infringement." (*Id.*)

## ARGUMENT

### I.    DEFENDANT'S MOTION IS MERITLESS

#### A.    Defendant's Motion Is Based On An Unpleaded Affirmative Defense As To Which It Has Yet To Offer Any Proof

Section 512(c) of the DMCA, as Defendant recognizes, is an affirmative defense.  *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822 (HB), 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008) (citing *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271-72 (S.D. Cal. 2007)); *see also* Dkt. 52 (Def's Amended Answer to original Complaint, Tenth

Affirmative Defense). As such, Defendant has the burden of pleading and then proving each of the elements of the defense. *See id*. at *4, n.3 (defendant has to demonstrate, among other things, that it is a "service provider" under the DMCA in order to receive protection under Section 512(c)).

In order to establish that it is eligible for the defense, Defendant must prove, *inter alia*, **each** of the following: (a) it meets the statutory definition of "service provider"; (b) it has adopted, implemented and informed users of a policy providing for termination of repeat infringers; (c) the material on its sites and service are stored at the direction of users; (d) it has neither actual nor constructive knowledge of infringement or has expeditiously removed or disabled access to infringing material upon obtaining such knowledge; (e) it has either received no financial benefit attributable to infringing activity or it does not have the right and ability to control such infringing activity; **and** (f) in cases where it has been sent a DMCA-compliant notice, it has responded expeditiously to remove or disable access to material claimed in such notice to be infringing. *See* 17 U.S.C. §§ 512(c), (i), (k).

To begin with, there is no procedural predicate for a motion based on an affirmative defense that has yet to be pleaded. Beyond the absence of a pleading, Defendant has obviously also not proved any of the elements of the defense.[4] Instead, Defendant's motion starts with the unsupported and unsustainable **assumption** that it qualifies for the safe harbor. (*See* Def's Mem. at 1-2, 6-7 (asserting in conclusory fashion that it "is a Service Provider under the DMCA," and is "eligible for

---

[4] In fact, evidence adduced to date in discovery shows that Defendant cannot meet several of these elements. For example, even though discovery is far from complete, Plaintiffs have obtained evidence that demonstrates Defendant routinely ignored or waited months to respond to take down notices, and responded only after repeated requests, and did nothing to even attempt to comply with the "representative list" aspect of notices (*see* pp. 11-12, *infra*). Plaintiffs do not believe that they are required to submit any evidence in connection with a Rule 12(b)(6) motion in order to disprove the availability of a defense that Defendant itself has made no effort to meet its burden to prove. Nevertheless, if the Court feels it is useful for deciding this motion, Plaintiffs will provide that evidence.

safe harbor")).  Proceeding from that improper assumption, Defendant infers that the Plaintiffs have the burden of alleging sufficient facts to demonstrate that Defendant does ***not*** qualify for the safe harbor.  Of course, it is Defendant's burden to establish each of the elements of its affirmative defense, ***not*** the Plaintiff's burden to show that the defense is not available.  *See Ortiz v. Guitian Music Bros., Inc.*, No. 07 Civ. 3897, 2009 WL 2252107, at *2-3 (S.D.N.Y. July 28, 2009) (defendant bears burden of proving affirmative defense; unless affirmative defense is conclusively established on face of complaint, dismissal on Rule 12(b)(6) is inappropriate); *In re  Fuwei Films Secs. Litig.*, -- F. Supp. 2d. --, 2009 WL 2005291, at *18 (S.D.N.Y. July 10, 2009) (same); s*ee also Usenet.com*, 2008 WL 4974823, at *4, n.3 (defendant must establish the requirements set forth in DMCA sections 512(a), (c), (i) and (k) to demonstrate that its conduct is protected).

Defendant's motion turns fundamental rules of pleading and burdens of proof on their heads.  Plaintiffs' claims simply cannot be dismissed on a Rule 12(b)(6) motion based on an affirmative defense that the Defendant has yet to (and will ultimately be unable to) prove (and which, in fact, it has not even yet plead).

### B.    Defendant's Motion Incorrectly Assumes That Sending A DMCA-Compliant Notice Is Required Prior To Asserting A Cause of Action For Copyright Infringement

Defendant argues that unless a Plaintiff has sent Defendant a DMCA-complaint notice listing the specific works that have been infringed by Defendant, that Plaintiff cannot sue Defendant for copyright infringement.  Defendant's argument is contrary to and cannot be reconciled with the express language (and, indeed, the entire structure) of the DMCA, its legislative history, and well-settled doctrines of copyright law.

Defendant conflates the elements of Plaintiffs' affirmative claims with the elements of its yet to be proven affirmative defense, arguing that "[n]otification is an element in this cause of action." (Def's Mem. at 8, citing Section 512(c)(1)(C) affirmative defense.)  Putting aside that notification **--**

let alone DMCA-complaint notification -- is *not* required to state an affirmative claim for copyright infringement (*see* pp. 12-14, *infra*), failure to receive DMCA-compliant or any other notification does not, as Defendant asserts, automatically entitle a defendant to the benefit of the safe harbor. A defendant can be (and this Defendant is) disqualified from the safe harbor based on its knowledge or conduct, ***irrespective of notices***.

The statutory text and legislative history to the DMCA are unambiguous: ***"Section 512 does not require use of the notice and take-down procedure.*** A service provider wishing to benefit from the limitation on liability under subsection (c) must 'take down' or disable access to infringing material residing on its system or network of which it has actual knowledge or constructive knowledge, ***even if the copyright owner or its agent does not notify it of a claimed infringement***." S. Rep. 105-190, at 45; H.R. Rep. 105-551 (II), at 54 (emphasis added). As if that were not clear enough, Congress added: "***For their part, copyright owners are not obligated to give notification of claimed infringement in order to enforce their rights***." *Id*. (emphasis added).

This is also clear from the statutory text: In order to be eligible for the Section 512(c) "safe harbor," a qualifying Internet Service Provider ("ISP") must demonstrate, *inter alia*, that it not only "does not have actual knowledge that the material or an activity using the material on [its] system or network is infringing," ***but also***, "in the absence of such actual knowledge, ***is not aware of facts or circumstances from which infringing activity is apparent.***" 17 U.S.C. § 512(c)(1)(A)(i)-(iii)(emphasis added).[5]

Even if the ISP can establish that it does not have such actual or constructive knowledge of infringing activity occurring on its site, it must, ***in addition,*** demonstrate that, in the event it ***has*** been

---

[5] Even if the service provider meets each of the three conditions under that section, it must ***also*** meet the test of Section 512(c)(1)(B), which demands that the service provider "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B).

sent a notice pursuant to Section 512(c)(3), it has expeditiously removed or disabled access to the material that is the subject of the notice. § 512(c)(1)(C). *The tests are disjunctive*: to benefit from the safe harbor the provider must not have failed to act to remove infringing material in the face of *either* actual or constructive knowledge, *or* a proper notice. The service provider independently must also meet *each* of the other statutory prerequisites outlined above. *See* p. 8, *supra*. Thus, contrary to Defendant's argument, the DMCA, by its very terms, does *not* limit knowledge sufficient to vitiate the safe harbor defense *only* to knowledge of specific infringing files to which the provider has been given notice via a DMCA-compliant notice.

Indeed, Congress made express its intention to hold service providers accountable for infringing activity occurring on their sites generally, where that activity would be apparent to a "reasonable person" similarly situated. According to Congress, the knowledge standard "can best be described as a 'red flag' test":

> [I]f the service provider becomes aware of a 'red flag' from which infringing activity is apparent, it will lose the limitation of liability if it takes no action. The 'red flag' test has both a subjective and an objective element. In determining whether the service provider was aware of a 'red flag,' the subjective awareness of the service provider of the facts or circumstances in question must be determined. However, in deciding whether those facts or circumstances constitute a 'red flag' -- in other words, whether infringing activity would have been apparent to a reasonable person operating under the same or similar circumstances -- an objective standard should be used.

S. Rep. 105-190, at 44; H.R. Rep. 105-551 (II), at 53 (1998). Failure to act in the face of such a red flag is fatal to the liability limitation, regardless of whether any notice was sent.

Moreover, when a copyright owner does choose to send a notice -- which is not required -- by the express terms of the DMCA that notice does *not* need to exhaustively list each and every work that has been infringed. To the contrary, as the notice provision states expressly, "if multiple copyrighted works at a single location are covered by a single notice, a *representative list* of such works at that site" is all that is required. 17 U.S.C. § 512(c)(3)(A)(ii) (emphasis added). Again,

Congress could not have been more explicit:

> Where multiple works at a single on-line site are covered by a single notification, a representative list of such works at that site is sufficient.  Thus, for example, where a party is operating an unauthorized Internet jukebox from a particular site, it is not necessary that the notification list every musical composition or sound recording that has been, or may have been, or could be infringed at that site.  Instead, ***it is sufficient for the copyright owner to provide the service provider with a representative list of those compositions or recordings in order that the service provider can understand the nature and scope of the infringement being claimed.***

H.R. Rep. 105-551 (II), at 55; *see also* S. Rep. 105-190, at 46 (same).  Defendant concedes (*see* Def's Mem. at 4) that it did not do anything to even attempt to comply with the "representative list" aspect of any of Plaintiffs' DMCA notices.

Defendant rebukes Plaintiffs (Def's Mem. at 6) for pleading allegations that "are straight from the Copyright Act," as if the DMCA somehow vitiated half a century of copyright law.  That is simply not the case.  *See, e.g.,* S. Rep. 105-190, at 55 ("New section 512 does not define what is actionable copyright infringement in the online environment, and does not create any new exceptions to the exclusive rights under copyright law.  The rest of the Copyright Act sets those rules."); H.R. Rep. 105-551 (II), at 64 (same); *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004) ("DMCA did not simply rewrite copyright law for the online world. . . .  Claims against service providers for direct, contributory, or vicarious infringement, are generally evaluated just as they would be in the non-online world.").  And, under well-settled principles of copyright law, a plaintiff can state a claim, and a defendant can be held liable, for infringement, regardless of whether plaintiff sent or defendant received a notice identifying those specific works that the plaintiff alleges have been infringed.

To state a claim for direct infringement, a plaintiff need only allege: "(1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act."  *Arista Records LLC v. Usenet.com, Inc.*, -- F.

Supp. 2d. --, 2009 WL 1873589, at *16 (S.D.N.Y. June 30, 2009); *Stumm v. Drive Entertainment, Inc.*, No. 00 Civ. 4676(DC), 2002 WL 5589, at *4 (S.D.N.Y. Jan. 2, 2002) ("intent or knowledge is not an element of infringement."). To state a claim for vicarious infringement, a plaintiff need only allege that defendant has the right and ability to control the direct infringer's actions, and obtained a direct financial benefit from the infringement. *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005), *citing Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304, 301 (2d Cir. 1963). To state a claim for induced infringement, a plaintiff need only allege that defendant distributed its device, or operated and maintained its site or service, with the object of promoting its use to infringe. *MGM, Inc.*, 545 U.S. at 936-37. Knowledge, actual (whether by virtue of a DMCA-compliant or other notice) or constructive, is not an element of any of these claims.

To state a claim for contributory infringement, a plaintiff need only allege that the defendant "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), cited in, *MGM, Inc.*, 545 U.S. at 930. With respect to the "knowledge" prong, it is well-settled (by a legion of cases both pre-and post-DMCA) that the plaintiff need not allege (or prove) actual knowledge; constructive knowledge will suffice. *See*, *e.g.*, *Ellison,* 357 F.3d at 1077 ( "a reasonable trier of fact could certainly find that AOL had reason to know that infringing copies of [plaintiff's] works were stored on [its] servers"); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996) (finding swap meet operator contributorily liable for sale of counterfeit tapes by its vendors after it received letters from sheriff imparting generalized knowledge that infringing goods were being sold at meet); *Microsoft Corp. v. EEE Bus., Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) ( "[a]n individual may be liable for contributory infringement even where she does not have actual knowledge of the infringing activity, but should have reason to know of the

13

infringing conduct"); *Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670 (JBS), 2006 WL 842883 at *14 (D.N.J. Mar. 31, 2006) (finding defendants incorrect in their proposition that knowledge of "specific infringements" is necessary for contributory infringement, since this argument runs contrary to prior case-law); *Playboy Enters., Inc. v. Russ Hardenburgh, Inc*., 982 F. Supp. 503, 514 (N.D. Ohio 1997) (finding computer bulletin board service contributorily liable where it had "at least constructive knowledge that infringing activity was likely to be occurring…"); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 858 (S.D.N.Y. 1984) (finding knowledge of infringing use where "the very nature of color separation manufacture -- the photographing of the packaging of copyrighted records and tapes -- would suggest infringement to a rational person").

Defendant's "post-litigation notification of infringement" argument is also a red herring. First, *Perfect 10, Inc. v. Amazon.com, Inc.*, No. 05-4753 (AHM)(SHx), 2009 WL 1334364 (C.D. Cal. May 12, 2009) is hardly "on all fours with the facts here," as Defendant claims. *Perfect 10* was decided on a motion for ***summary judgment***, after discovery. The ***only*** evidence proffered by plaintiff to demonstrate knowledge were the notices that it sent both before and after it filed its complaint. The court held that the pre-complaint notices were insufficient to establish actual knowledge because there was no evidence that defendant had received them, and the post-complaint notices were legally irrelevant to establish actual knowledge of the infringements of the works listed in the complaint. Absent valid notices, plaintiff had no evidence at all. In other words, there was a failure of proof.

Here, on the other hand, Plaintiffs are not relying exclusively on notices sent to Defendant to establish actual knowledge. To be sure, the four notices which Defendant admits were sent by EMI Music and EMI Publishing -- which listed numerous representative works, and which also stated that "an initial investigation suggests that hundreds, if not thousands," of additional works were

infringed -- are highly relevant to establishing, at the very least, constructive or "red flag" knowledge of **all** of the infringing activity occurring on and via its sites.[6]  But Plaintiffs have also specifically alleged that Defendant has the requisite knowledge based on the obviously infringing nature of the material and the system.  (*See, e.g.,* Am. Comp. ¶ 4 (Defendants "know full well -- because it is self-evident from even a passing review of MP3tunes' sites and because Plaintiffs have told them -- that the vast majority of the music available through the MP3tunes service is infringing"); *id.* ¶ 50 ("The works listed on Sideload.com are readily recognizable as copyrighted works; indeed, Defendants' service provides, when available, images reflecting the covers of albums on which the works originally appeared.  Plaintiffs have also notified Defendants of the infringing content on their websites and have provided them with representative lists of musical works being infringed on their service"). *see also id.* ¶ 80 (referring to Defendant's "open listing and advertising of obviously infringing works" and "express invitations to copy the most-sought after music for free").  And, Plaintiffs have alleged numerous other facts that would give rise to or evidence knowledge, including that copyrighted works are indexed and catalogued in Defendant's database, index, or "catalog," and that Defendant "open[ly] list[s] and advertis[es] obviously infringing works" and makes "express invitations to copy the most-sought after music for free." (*Id.* ¶¶ 41-42; 80.)  These allegations -- all of which must be taken as true on a motion to dismiss -- suffice to establish constructive knowledge (and liability) consistent with the standard set forth in the cases cited above.[7]

Nor are Plaintiffs relying on the Complaint or the Amended Complaint as evidence of

---

[6]  And, given that notices sent under the DMCA need only provide a "representative list" of works, 17 U.S.C. § 512(c)(3)(A)(ii), Defendant's admission (Def's Mem. at 4) that it took down only the representative works is an admission that Defendant did not comply with those notices.  For that reason alone it is ineligible for the Section 512 safe harbor.

[7]  The fact that, as discovery has revealed, Defendant analyzes each user uploaded file and then rejects any such files that correspond to a "master" that Defendant has already stored on its servers, also suffices to establish, ***at a minimum,*** constructive knowledge.

knowledge.  Plaintiffs have alleged that Defendant had both actual and red flag knowledge of rampant copyright infringement *before* Plaintiffs even sent their notices.  The EMI Record Labels and EMI Music Publishing additionally put Defendant on notice of their infringing activities prior to filing suit, even though they did not need to.  They then filed, on behalf of their representative copyright-owning affiliates, a Complaint that alleged the *precise manner* in which Defendant was and is infringing copyrights and actual and constructive knowledge of infringement (as described above), and provided a list of representative copyrights that they were aware at that time had been infringed.  Promptly after learning in discovery the entire universe of EMI compositions that had been infringed by the Defendant, EMI Publishing requested leave to add additional copyright-holding entities under the EMI Publishing umbrella in order to conform the pleading to the evidence, and were granted leave, under the liberal standards of Fed. R. Civ. P. 15 and 21, to do so.  There is simply no requirement that a defendant be provided in advance of filing the complaint and prior to discovery an exhaustive list of each and every work that the defendant has infringed and as to which a plaintiff will be seeking relief and recovery (particularly where the evidence required to create such a list is exclusively in the custody and control of the defendant).[8]

---

[8]    In fact, such an exhaustive list is not even required *at the pleading stage*.  *See, e.g., Arista Records LLC v. Media Services LLC*, 06 Civ. 15319 (NRB), 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008), at *2-3 (denying motion to dismiss where it included only a "non-exhaustive" and "illustrative" list of works infringed; plaintiffs must, however, "specify the copyrights for which they seek relief in order to obtain a monetary judgment against [defendant] for any established infringement"); *Arma*, 591 F. Supp. at 644 (complaint listing 14 images "serve[d] as a predicate" for plaintiffs' claims for infringement of 26 images).

Defendant's assertion (Def's Mem. at 4) that "plaintiffs have not been able until now to figure out, even amongst themselves, which entities allegedly hold copyrights to which songs" is too cute by half:  Plaintiffs know what they own, and indeed, the Defendant knows what Plaintiffs own because the information is publicly available:  Plaintiffs just could not know the universe of songs infringed by Defendant, and hence all of the proper entities to name as plaintiffs, until after they obtained discovery of what was on Defendant's server.

C.    **Plaintiffs' Amended Complaint Sufficiently Alleges Each Cause Of Action**

Defendant bases its motion in large measure on the incorrect assertion that the Supreme Court's decision in *Twombly* imposed a "new" or "heightened" pleading standard, which Plaintiffs have failed to meet. Defendant's argument mischaracterizes *Twombly*'s holding and effect, and completely ignores most of the pertinent allegations in the Complaint. But even if *Twombly* stood for the proposition proclaimed by Defendant, Plaintiffs have more than satisfied any alleged "heightened" pleading standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Twombly did ***not*** create a heightened pleading standard requiring a complaint to plead detailed and particularized facts to withstand dismissal by Rule 12(b)(6) motion. In fact, the Court explicitly stated that was not its intention or goal, holding "we do not require heightened fact pleading of specifics, but only enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court further noted that it was not broadening the scope of Fed. R. Civ. P. 9 requiring particularized pleadings for certain causes of action. *Id.* at 569, n. 14.

Courts in this Circuit have routinely held that copyright infringement claims need not be pled with particularity, and *Twombly* did not change that rule. *See e.g., Arista Records v. Does 1-16*, 1:08-CV-765 (GTS/RF), 2009 WL 414060, at *2-5 (N.D.N.Y. Feb. 18, 2009) (*Twombly* did not require a heightened pleading standard; plaintiff's allegation that defendant "distributed" copyrighted sound recordings was sufficient to state a plausible claim for relief under *Twombly*); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 473 (E.D.N.Y. 2009) (complaint's allegations were sufficient under Rule 8 despite Plaintiff's failure to plead every infringement with specificity).[9]

While Defendant spends most of its brief taking Plaintiffs to task for failing to allege facts

---

[9]  Indeed, by demanding that Plaintiffs provide further facts regarding what and when MP3tunes and Michael Robertson knew would elevate the pleading requirement of Rule 8 to an even stricter standard than that contained in Rule 9, as even Rule 9 provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

relevant to Defendant's unproven *affirmative defense* even though Plaintiffs have no obligation to do so (*see* Point I.A, *supra*), it challenges the sufficiency of the allegations underlying only two of Plaintiffs' *affirmative claims*: Plaintiffs' pleading of constructive knowledge, which is an element of Plaintiffs' claim for contributory infringement (*see* Def's Mem. at 8-9), and volitional conduct, some measure of which is required to assert certain direct infringement claims (*see* Def's Mem. at 10-11.) Plaintiffs' allegations as to each more than satisfy *Twombly*.

Plaintiffs' allegations regarding knowledge are set forth in detail above at pages 14-15. From these allegations, it is more than "plausible" that Defendant had, *at least*, constructive knowledge -- *i.e.,* that "a reasonable trier of fact could find that [Defendant] had reason to know" -- of "potentially infringing activity" occurring on and via the MP3tunes and Sideload sites. *See Ellison,* 357 F.3d at 1077. The argument that these allegations do no more than "parrot" the element of the cause of action (Def's Mem. at 2) does not pass the red face test. In fact, Defendant lists two of Plaintiffs' specific allegations, but then brushes them aside with the conclusory assertion that "[k]nowledge of infringement cannot reasonably be inferred" from these (selected) allegations. But Defendant is not the trier of fact.

With respect to direct infringement, Defendant dons the cloak of innocence, analogizing its integrated music service to "a machine used by others to make illegal copies" in order to claim that it has not engaged in any "volitional" conduct. (Def's Mem. at 10, quoting *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004).) But, as the Amended Complaint sufficiently alleges, Defendant does far more than merely provide "a machine." Indeed, even accepting Defendant's "machine" analogy, under *CoStar*, Plaintiffs have plainly alleged "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *CoStar*

18

*Group*, 373 F.3d at 550.

Plaintiffs allege that Defendant itself collects, organizes, indexes and offers "links to music files. (Am. Comp. ¶ 41.) They allege that Defendant creates and provides lists containing links to the "Most Popular Tracks," the "Newest Tracks," and "Featured Tracks," all of which contain obviously copyrighted material. (*Id.* ¶ 42.) They allege that Defendant itself makes full, permanent copies of infringing music files onto its own servers (*Id.* ¶¶ 43, 58.) And they allege that Defendant itself transfers and streams those copies to users' computers and portable devices. (*Id.* ¶¶ 65, 73.)[10] These volitional acts, individually and collectively, more than suffice to state a claim for direct infringement. *See e.g., Usenet.com, Inc.*, 2009 WL 1873589, at *18 (granting plaintiffs' motion for summary judgment on direct infringement claim; defendant's conduct was sufficiently volitional where it, *inter alia*, was "well aware that digital music files were among the most popular articles on their service, and took active measures to create servers dedicated to mp3 files"); *Russ Hardenburgh*, 982 F. Supp. at 513 (granting plaintiffs' motion for summary judgment on direct infringement claim; defendant's conduct sufficiently volitional where it, *inter alia*, actively encouraged subscribers to upload infringing files and knew there was a possibility that infringing files were being uploaded but failed to adopt procedures to ensure that such files would be discarded); *Playboy Enters. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1175 (N.D. Tex. 1997) (finding direct infringement where "it [was] clear that [defendant's] function [was] not to provide Internet access, but rather to provide its subscribers with adult images which are contained in the storage devices of its computers"); *see also New York Times Co. v. Tasini*, 533 U.S. 483, 498 (2001) (delivery by operator of online database of digital copies of news articles upon request of subscribers constituted direct infringement by

---

[10]  And again, discovery has shown that Defendant itself analyzes each user uploaded file and then rejects any such files that correspond to a "master" that Defendant already has stored on its servers -- using the "single master" to distribute and perform the work to its users.

operator).

It is noteworthy that, in each of these cases, the "volitional conduct" was found based on evidence adduced in discovery. The nature of facts that establish volitional conduct are inherently in the possession of the defendant and cannot be fully learned absent discovery.

Defendant relies on *Cartoon Network LP, LLLP v. CSC Holdings, Inc*., 536 F.3d 121 (2d Cir. 2008). There, the Second Circuit found, again, ***after discovery***, on summary judgment, that the "buffer copies" made by the defendant cablevision in connection with its Remote Storage Digital Video Recorder System ("RS-DVR") were not sufficiently "fixed" to qualify as "copies" under Section 101 of the Copyright Act. *Id.* at 127-30. Thus, the Court had no occasion to analyze whether the making by the defendant of those copies was sufficiently "volitional" to establish liability for direct infringement. Here, Plaintiffs allege, and Defendant does not and cannot dispute, that the copies made by Defendant on its server are sufficiently "fixed."

The Court went on to analyze whether the defendant could be held directly liable for the copies created by the users from those "buffer copies." The Court began by noting that "'the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn.'" *Cartoon Network*, 536 F.3d at 133, quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n. 17 (1984). And the Court acknowledged that "one's contribution to the creation of an infringing copy may be so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy." *Cartoon Network*, 536 F.3d at 133. The Court expressly noted the case-by-case nature of the determination, finding that "only on the [undisputed] facts of this case . . . Cablevision's contribution to this reproduction by providing the system does not warrant the imposition of direct liability." *Id.* No such determination can be made here, on a Rule 12(b)(6) motion for failure to state a claim made before the close of discovery.

D. **Inducement Has Been Held To State A Claim
   Separate from Contributory Infringement**

Defendant takes a different approach with respect to Plaintiffs' inducement claim, arguing that the claim should be dismissed because it is not "distinct from contributory infringement." This argument is makeweight.

In *MGM, Inc. v. Grokster, Ltd.*, 545 U.S. 913, the Supreme Court "focused on intent to induce infringement, the classic case being advertising that unlawful purpose." 3 Melville B. & David Nimmer, NIMMER ON COPYRIGHT § 12.04[A][4] at 12-110 (2009), citing *Grokster,* 544 U.S. at 935. In doing so, "*Grokster* adopted patent law's inducement standard." *Id.*

Unlike contributory liability, inducement liability "is based neither on knowledge of infringement nor on design that facilitates infringement. It rests instead on the defendant's 'active steps to encourage infringement' leading to actual infringement taking place." *Nimmer,* § 12.04[A][4] at 12-112-13, citing *Grokster*, 545 U.S 923-24; *see also, e.g., In re Napster, Inc. Copyright Litig. v. Hummer Windblad Venture Partners,* No. C-MDC-00-1369, 2006 U.S. Dist. LEXIS 30338, at *27-33 (N.D. Cal. May 17, 2006) (*Grokster* theory of liability does not require actual or even reasonable knowledge). As the Supreme Court put it: "It is not only that encouraging a particular consumer to infringe a copyright can give rise to secondary liability for the infringement that results. Inducement liability goes beyond that, and the distribution of a product can itself give rise to liability where evidence shows that the distributor intended and encouraged the product to be used to infringe. In such case, the culpable act is not merely the encouragement of the infringement, but also the distribution of the tool intended for infringing use." *Grokster*, 545 U.S. at 940 n. 13.

While some courts "have expressed doubt as to whether inducement of infringement states a separate claim for relief, or rather whether it is a species of contributory infringement," *Usenet.com, Inc.*, 2009 WL 1873589, at *19 n. 17, citing *KBL Corp. v. Arnouts*, 08 Civ. 4873 (JGK), 2009 U.S.

Dist. LEXIS 9192, at *27-29 & n. 5 (S.D.N.Y. Feb. 7, 2009), most courts -- including this Court in *Usenet* -- have nevertheless continued to "address the inducement and contributory theories of secondary liability separately." *Id.* at *19 n. 17,* 21 (granting summary judgment in favor of plaintiff on inducement claim where "Defendants' intent to induce or foster infringement by its users was unmistakable"); *see also, e.g., Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-802 (9th Cir. 2007) (separately analyzing contributory and inducement claims); *MGM, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1235 (C.D. Cal. 2007) (finding defendants liable, on remand, under inducement theory).

Regardless, "[t]here may be multiple ways of constructing copyright's taxonomy," NIMMER § 12.04[A][[4][b] at n. 316, and Defendant offers no legal basis for dismissing a claim based on what amounts to, at most, a dispute over nomenclature. As this Court stated in *Usenet*, "[i]t is immaterial whether the [inducement] theory of liability is a subspecies of contributory . . . liability, or whether it is a wholly separate theory based on inducement. The question is whether it applies to defendants in this case." *USENET.com. Inc.*, 2009 WL 1873589, at *19 n. 17, quoting *In re Napster Inc. Copyright Litig.*, 2006 U.S. Dist. LEXIS 30338, at *31 (brackets and ellipsis in orginal). Plaintiffs have adequately plead and will ultimately prove that the theory applies to MP3tunes.

## II.    DEFENDANT'S MOTION IS BARRED BY FED. R. CIV. P. 12

Defendant already made a motion under Rule 12 to dismiss the claims of the Plaintiffs named in original Complaint, but did not at that time challenge the sufficiency of the pleading. As previously stated, Plaintiffs have now amended the Complaint but have not changed or amended the substantive claims or allegations of the original Complaint. Rule 12(g) expressly prohibits a defendant that has already made a motion under Rule 12 from asserting by way of a motion an objection or defense that it could have made in the first motion. Fed. R. Civ. P. 12(g) ("Except as

provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule ***must not*** make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.") (emphasis added).  Because Defendant could have challenged in its first Rule 12 motion the adequacy of the pleading of Plaintiffs' (un-amended) claims but chose not to, it is precluded from doing so now by way of a Rule 12(b)(6) motion.  *See id.*

Where a pre-answer motion to dismiss has previously been filed under Rule 12, a defense of failure to state a claim can ***only*** be raised in either a pleading or by motion for judgment on the pleadings under Rule 12(c).  Fed. R. Civ. P. 12(g),(h)(2)(A)-(B); *see also Dorchester Investors v. Peak Trends Trust*, No. 99 Civ. 4696 (LMM), 2002 WL 272404, at *3 (S.D.N.Y. Feb. 26, 2002); *Jones v. Hoosman*, No. 05 C 2909, 2006 WL 1302524, at *2 n.3 (N.D. Ill. May 9, 2006) (striking portion of motion to dismiss asserting argument that could have been raised in prior motion).  While some courts have, ***absent bad faith or dilatory purpose***, converted a successive Rule 12(b)(6) motion into a motion for judgment on the pleadings under Rule 12(c), *see, e.g., Bogart v. Shearson Lehman Bros., Inc*., No. 91 CIV. 1036 (LBS), (NG), 1995 WL 46399, at *4 (S.D.N.Y. Feb. 6, 1995), such conversion would not be appropriate here for two reasons.

First, under Rule 12(c), a motion for judgment on the pleadings may only be brought ***after*** the pleadings have closed.  Fed. R. Civ. P. 12(c).  Here, the pleadings are not yet closed, as Defendant has not answered the Amended Complaint.

Second, and more importantly, Defendant's filing was, in fact, brought in bad faith.  During the conference before this Court, Defendant listed several grounds for opposing the proposed amendment to correct the caption.  At no time did Defendant state its intention to move against all existing as well as additional plaintiffs.  Nor did it indicate that it would move on the lack of sufficiency of the already existing pleading.

Defendant attempts to excuse its failure to challenge the sufficiency of Plaintiff's allegations when it first moved to dismiss by disingenuously arguing that *"[u]ntil a few months ago,"* a plaintiff needed only to meet the "no set of facts" test, but now, since *Twombly*, that is no longer the standard. (Def's Mem. at 1, 5-6.)  Putting aside that *Twombly* did not, in fact, establish any "new" or heightened pleading standard (see Point I.C, *supra*), *Twombly* was not decided "a few months ago," but in *May 2007*, long before Defendant's first motion to dismiss was filed (in February 2008), long before Defendant answered the Complaint or amended such answer (in October and November 2008, respectively), and, in fact, even before Plaintiff's complaint was filed (in November 2007).

Contrary to Defendant's insinuation, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (U.S. 2009), established no "new" rule.  It merely rejected the argument of the defendant in that case that *Twombly* should be limited to pleadings made in the context of an antitrust suit, on the ground that *Twombly* was "based on [an] interpretation and application of [Fed. R. Civ. P.] 8," and "expounded the pleading standard for 'all civil actions.'"  *Id.* at 1953 (citation omitted).  And, courts in this Circuit, prior to *Iqbal*, did in fact apply *Twombly* in all manner of civil actions, including in copyright infringement actions.  *See, e.g., Chapman*, 546 F.3d at 235; *Arista Records v. Does 1-16*, 2009 WL 414060, at *2-4; *Arma*, 591 F. Supp. 2d at 642-44; *Kuklachev*, 600 F. Supp. 2d at 473.  Thus, Defendant's statement (Def's Mem. at 6) that it "answered the complaint" under the "former standard" is factually untrue.

Of course, at bottom, Defendant's arguments are, for the reasons discussed in Point I above, utterly devoid of merit, and this Court should reject them.  Defendant should not be permitted to further burden this action with them by way of *any* motion, or at trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the MP3tunes' motion to dismiss be denied in its entirety, and Plaintiffs be awarded their costs in opposing this motion.

Dated:  New York, New York
        August 14, 2009

                                Respectfully submitted,

By:      /s                                 
Donald S. Zakarin
Frank P. Scibilia
Mark A. Tamoshunas
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for Beechwood Music Corp., Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music, EMI Full Feel Music, EMI Golden Torch Music Corp., EMI Longitude Music, EMI Virgin Music, Inc., EMI Virgin Songs, Inc., EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI Feist Catalog, Inc., EMI Gold Horizon Corp., EMI Grove Park Music, Inc. EMI Hastings Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc., EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, inc., Jobete Music Co., Inc., Screen Gems-EMI Music, Inc., Stone Agate Music, and Stone Diamond Music*

By:      /s                   
Andrew H. Bart
Carletta F. Higginson
Joseph J. McFadden
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone: (212) 891-1690
Facsimile: (212) 891-1699

*-and-*

Steven B. Fabrizio (*admitted pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC, Caroline Records, Inc, EMI Christian Music Group Inc., Priority Records LLC, and Virgin Records America, Inc.*