UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> MP3TUNES, LLC, <br><br> *Defendant.* <br><br> MP3TUNES, LLC, <br><br> *Counter-Claimant*, <br><br> CAPITOL RECORDS, LLC, *et al.*, <br><br> *Counter-Defendants.* | No. 07 Civ. 9931 (WHP)(FM) <br><br> ECF Case <br><br> <u>Portions Filed Under Seal</u> |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO AMEND AND ADD A PARTY**

I.      **Plaintiffs' Motion to Add Robertson as a Party Should be Granted**

MP3tunes' opposition argues, first, that Plaintiffs' motion is procedurally barred and, second, that Plaintiffs have failed to present evidence sufficient for this Court to exercise personal jurisdiction over Robertson. Neither argument has merit.

A.      **Plaintiffs' Motion to Amend is Procedurally Proper**

A ruling based on a lack of personal jurisdiction is not a decision on the merits. *See* Motion to Amend at 7. Defendant does not deny that this Court's September 29, 2008 Order (the "2008 Order") dismissing Robertson for lack of personal jurisdiction was not a final judgment or a decision on the merits. Therefore, contrary to MP3tunes' repeated references to a higher standard, the rules governing reconsideration under Rules 59 and 60 of the Federal Rules of Civil Procedure – both of which apply by their terms exclusively to final judgments – are not applicable to Plaintiffs' motion. Plaintiffs would be free to institute a new suit against Robertson, even in this District, because newly discovered facts support jurisdiction here. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n.4 (2d Cir. 1994).

Furthermore, Rule 21 can be used to add a party to a lawsuit at *any time*. Fed.R.Civ.P. 21. To avoid the plain language of Rule 21, MP3tunes manufactures an argument that Rule 21 can only be used to add a "new" party, not one that was previously dismissed. However, neither Rule 21 nor the case law interpreting the rule contains any such limitation. Fed.R.Civ.P. 21 ("the court may at <u>any time</u>...add or drop <u>a</u> party") (emphasis added). Nor do the cases MP3tunes cites support its argument. Although *Klecher v. Metro. Life Ins. Co.*, 331 F.Supp.2d 279, 283 (S.D.N.Y. 2004), and *Highland Capital Mgmt. L.P. v. Glova Aero. Underwriting Managers Ltd.*, No. 02 Civ. 9360 (BSJ), 2004 U.S. Dist. Lexis 8711 at *4 (S.D.N.Y. May 18, 2004), involved adding new parties (and thus use the words "new parties"), the Court did not distinguish a party never before involved in the case from one who had previously been dismissed. The cases do

2

not raise the issue. Tellingly, MP3tunes has presented no authority to show there is any legal significance to its distinctions. Plaintiffs, however, have cited cases in which Rule 21 was found to be an appropriate method for adding a previously dismissed party. *See, e.g., NAACP v. A.A. Arms, Inc.*, No. 99 Civ. 3999 (JBW), 2003 WL 21242939 at *17-18 (S.D.N.Y. April 1, 2003); *In re Ski Train Fire in Kaprun*, 224 F.R.D. 543 (S.D.N.Y. 2004).[2]

Finally, both the law of the case doctrine and Local Rule 6.3 are discretionary and are inapplicable when new evidence is presented that justifies a different result. *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996). Without acknowledging Plaintiffs' cases, MP3tunes cites two cases for the proposition that "reconsideration is an extraordinary remedy." MP3tunes' Opp. at 7. Both cases, however, involved <u>final judgments</u>, and were therefore governed by Rules 59(e) and 60. *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000); *Davey v. Dolan*, 453 F.Supp.2d 749, 758 (S.D.N.Y. 2006). Moreover, the cases cited by MP3tunes make explicit both that the law of the case doctrine is discretionary and that the "availability of new evidence" warrants a departure from an earlier, non-final ruling. *Time Prods., Plc. v. J. Tiras Classic Handbags*, No. 93 Civ. 7856 (RWS), 1997 U.S. Dist. Lexis 3545 at *6 (S.D.N.Y. March 26, 1997); *Katz v. Mogus*, No. 07 Civ. 8314 (PKC), 2008 U.S. Dist. Lexis 40497 at *8 (S.D.N.Y. May 19, 2008); *Aequitron Medical v. CBS Inc.*, No. 93 Civ. 950 (SS), 1994 U.S. Dist. Lexis 942 at *18 (S.D.N.Y. Jan. 27, 1994).

Plaintiffs have uncovered significant new evidence that demonstrates that this Court can and should exercise jurisdiction over Robertson. Plaintiffs' inability to present this evidence

---

[2] Likewise, MP3tunes' attempt to distinguish *Manna v. Hirschmann Corp.*, No. 77 Civ. 839 (MJL), 1980 U.S. Dist. LEXIS 14529 (S.D.N.Y. Oct. 28, 1990), a case in which a party was allowed to reassert claims against a party previously dismissed for lack of personal jurisdiction, is unavailing. While *Manna* involved a change in law, as opposed to new evidence, the case still stands for the proposition that the Rules of Federal Civil Procedure that govern the general addition of claims and parties still govern the addition of previously dismissed parties, so long as the plaintiff can show circumstances, such as a change in controlling law or the production of new evidence, that justify a different result.

earlier was not due to their neglect or lack of diligence. It was a direct result of MP3tunes' and Robertson's interference with discovery. *See* Motion to Amend at 3-6, 21-22; Plaintiffs' Opp. to MP3tunes' Motion for Sanctions at 3, 4; Ex. A to the Bart Decl.

### B. Plaintiffs' New Evidence Allows for the Exercise of Personal Jurisdiction

In claiming that Robertson cannot be subject to personal jurisdiction for his pervasive role in the infringing activities, MP3tunes makes two arguments: (1) Robertson did not "actually benefit" from the conduct; and (2) Robertson did not "exclusively" control the infringing activities. Both arguments misstate the controlling law.

#### 1. Personal Jurisdiction is Proper Because Robertson Stood to Benefit from MP3tunes' Infringing Conduct

Recognizing that, as MP3tunes' primary shareholder, Robertson stood to benefit from any profits derived from its illegal activity, MP3tunes argues that Robertson is not subject to personal jurisdiction because he did not "actually" benefit from its infringing activity. *See* MP3tunes Opp. at 8. However, this argument misstates controlling New York law.

MP3tunes cites only one case to support their "actually benefitted" argument, *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367 (S.D.N.Y. 2006), but that case does not support its position. *Beatie* confirms that corporate action does <u>not</u> need to actually benefit an officer, but need only be undertaken, at least in part, for the officer's ultimate benefit. *Id.* at 389. Any other rule would insulate executives from responsibility for their illegal activities simply because they did not turn a profit. New York courts routinely hold that owning a large percentage of a company's stock, without more, satisfies the requirement that a defendant "benefit" from the activity. *Luft v. Crown Publishers, Inc.*, 772 F.Supp. 1378, 1379-80 (S.D.N.Y. 1991) (corporate officer "had a 65 percent interest in the corporation and he was [defendant's] President. Surely, he benefitted from the profitability of selling the infringing materials."); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp.

4

62, 66 (S.D.N.Y. 1993) (a "corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable" for copyright infringement and subject to personal jurisdiction).

Plaintiffs have presented evidence that, in addition to being CEO and sole director, Robertson is the controlling shareholder of MP3tunes – ████████████████████ ████████. *See* Declaration of Andrew Bart in Support of Plaintiffs' Motion to Amend at ¶¶ 4, 5. Furthermore, Richards testified that the infringing activities directed by Robertson were done to increase the number of MP3tunes' users and thereby increase revenues. Richards Dep. at 32:8-19; 58:17-21; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (finding attempt to increase number of users, even without revenue, enough to establish financial benefit from infringing conduct). Such evidence is sufficient to show Robertson and MP3tunes undertook their actions with the objective of benefitting themselves. That is all that is required for personal jurisdiction.

### 2. Personal Jurisdiction is Proper Because Robertson Exercised Control Over MP3tunes' Infringing Conduct

MP3tunes argues that Robertson is not subject to personal jurisdiction because he did not exercise <u>exclusive</u> control over MP3tunes' infringing activities. *See* MP3tunes Opp. at 10, 15, 17. Once again, that is not the legal standard.

As this Court has ruled, and indeed as a case cited by MP3tunes makes clear, Plaintiffs need only show that MP3tunes engaged in activities "with the knowledge and consent of [Robertson] and that [Robertson] exercised <u>some</u> control over [MP3tunes] in the matter." 2008 Order at 8 (emphasis added); *see also Beatie and Osborn LLP*, 431 F.Supp.2d at 389. Robertson cannot disclaim responsibility because the infringing features were not exclusively his "idea." MP3tunes Opp. at 12, 13. The law looks to who participated in, directed, or had some control over the decisions to engage in the activities, not whose "idea" they were. Here it is

unmistakable, and MP3tunes acknowledges, that Robertson's activities at MP3tunes meet this standard. *See, e.g.,* Ex. A to the Decl. of Terry Parker in Support of MP3tunes' Motion for Sanctions ("Richards Dep.") at 30:12-25 (Robertson was directly involved in decision to expand MP3tunes into a locker service, over the objection of his President); *id.* at 38:18-39:7 (Robertson was one of two directly involved in decisions over the single master architecture).

Richards testified that, as to each core infringing activity, Robertson (the CEO) advocated the position and Richards (the President) opposed it or at least had serious concerns about it:

- *The expansion of the locker service.* Robertson directed this change and Richards objected so strongly that she considered resigning. *Id.* at 27:22-28:7, 32:20-33:2.

- *The launch of www.sideload.com.* Richards objected. Robertson told Richards that her copyright concerns were unfounded. *Id.* at 51:9-52:20.

- *The implementation of the sideloading feature.* Richards objected and expressed fear that the feature could be "navigating gray waters" of copyright law. Robertson again assured her that "he would handle any matters that arose because of it." *Id.* at 57:14-25.

- *The decision to implement a single master architecture.* Robertson directed MP3tunes' Chief Technology Officer to explore a single master architecture. Richards objected and was excluded from further discussions after Robertson said he "had more experience in the area than [Richards] did, and he knew what he was doing...." *Id.* at 38:25-41:14.[3]

In each case MP3tunes went forward despite Richards' objections and concerns. Richards was MP3tunes' President, and her position was subordinate only to CEO Robertson. It is axiomatic that when the President of a company vehemently objects to a decision (almost to the point of resignation), the company does not go forward because her subordinates were in favor of it. As she testified, Richards was overruled by Robertson and further testified that Robertson was behind MP3tunes' activities as a whole. For example, Richards testified that:

- Although she was President, "decisions would be made by Michael [Robertson] and I would assign tasks to people and they would do it." Richards Dep. at 59:12-14.

---

[3] In light of this evidence, the previously submitted affidavits of Kevin Carmony and Chad Olson take on an entirely new context. Both witnesses testified unequivocally to having had personal discussions with Robertson in which Robertson explained and boasted that the "single master" design was his idea. *See* Jan. 25, 2008 Aff. of Chad Olson (hereinafter the "Olson Affidavit") at ¶¶ 4-6, Jan. 25, 2008 Aff. of Kevin Carmony at ¶¶ 6-9, attached as Exhibits 11 and 12, to Docket Entry #29.

- She was in charge primarily of operational matters and "[t]echnological decisions, main product decisions" were made by Robertson. *Id.* at 59:11-12, 61:7-12.

- Generally, when she objected to something, she was overruled whenever Robertson had more experience than she had. *Id.* at 52:12-20.

In deciding whether a motion is futile, even on jurisdictional issues, a court must take care that "all doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 452 (S.D.N.Y. 2000) (internal quotations omitted). Here, MP3tunes cannot credibly deny that MP3tunes engaged in these activities "with the knowledge and consent of [Robertson] and that [Robertson] exercised some control over [MP3tunes] in the matter." Plaintiffs have presented a *prima facie* case, supported with competent evidence. MP3tunes cannot oppose the motion by arguing that the facts should be construed in a different light.[4]

## II.   Plaintiffs Should be Permitted to Conform Allegations to the Evidence

MP3tunes does not dispute that a motion to amend should be freely granted, and should only be denied in cases of undue delay, prejudice or bad faith. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995). Here MP3tunes has not even attempted to argue that Plaintiffs' motion is unduly delayed or prejudicial. MP3tunes' sole argument in seeking to prevent the amendment is that Plaintiffs' claims are "futile."

Although MP3tunes acknowledges that in the context of a motion to amend "futility is governed by the same standards as a motion to dismiss," MP3tunes Opp. at 18, MP3tunes' entire argument then proceeds by ignoring the corollary and equally established rule that "a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). MP3tunes' opposition consists of

---

[4] MP3tunes' thematic argument that Richards' 2009 testimony provides no more compelling evidence than her 2008 deposition cannot be reconciled with the truth. Fortunately, the parties have submitted both transcripts in full to the Court and the Court can readily make its own determination as to which side has fairly presented Richards' testimony.

*factual* arguments based on facts outside the Complaint that conflict with both the Complaint and the record evidence.

MP3tunes presents no law to support an argument that claims related to the single master architecture and Lockershare are *legally* deficient. Rather, MP3tunes argues only that the claims are "not supported by any deposition testimony or other record citations." MP3tunes Opp. at 19. This is not, and has never been, the standard by which to measure a motion to amend. Moreover, MP3tunes' argument that Plaintiffs' Cover Art claims are foreclosed by *The Cartoon Network, LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008), misconstrues Plaintiffs' claims. MP3tunes cites to a portion of *The Cartoon Network* decision discussing violations of a copyright owner's exclusive right of public performance. However, MP3tunes ignores that Plaintiffs have asserted claims that MP3tunes infringed Plaintiffs' copyrights by *reproducing* and *distributing* Plaintiffs' Cover Art. *See* Exhibit 1 to the Motion to Amend, at ¶¶ 53, 60, and 67. *The Cartoon Network* does not address these claims at all. Likewise, even as to Plaintiffs' claim that MP3tunes violates their right of public display, *The Cartoon Network* decision was based on facts unique to that defendant's system design. Based on a few lines in a supporting declaration, MP3tunes asks the Court to rule now that MP3tunes' system has an identical design. The Court should decline. Furthermore, in *The Cartoon Network*, it was the defendant's users (not defendant) who copied the content onto the defendant's servers. Here, MP3tunes itself affirmatively searches for and reproduces the Cover Art on its servers. Certainly, none of Reese's statements undermines Plaintiffs' claim that MP3tunes violates the law by illegally downloading Plaintiffs' Cover Art from third-party sources and by distributing Plaintiffs' Cover Art to users without authorization.

With regard to Lockershare, MP3tunes states that Lockershare was never publicly released and that Lockershare would not have allowed a user to access another user's music files.

8

*See* Declaration of Douglas Reese in Opposition to Motion to Amend (the "Reese Decl.") at ¶¶ 9, 10. Plaintiffs do not know if Lockershare was "publicly released," but access to Lockershare was clearly provided to some MP3tunes users, and some users in fact accessed Lockershare to download copies of copyrighted songs. *See* Bart Decl. at Exs. B & D ███████████ ███████████████████████████████████████████████████████████████████████████ ███. MP3tunes even advertised that Lockershare allowed users to download music:

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████.

Bart Decl. at Ex. C ████████████████████████████████████████████████████.

This evidence squarely contradicts MP3tunes' representations, and the declaration of Douglas Reese, that Lockershare did not allow users to download files from other users.

With regard to the "single master architecture," Plaintiffs have long maintained that MP3tunes' allows many users to share a single song file while telling users that their music is stored in distinct "lockers." ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. Bart Decl. at Ex. E (Reese Dep. at 40:13-68:21).

Now, in order to defeat the Motion to Amend, MP3tunes produced an affidavit from Reese in which he swears that "[t]here is not, and has never been, any 'single master architecture' in the MP3tunes' source code." Reese Decl. at ¶ 4. Not only is Reese's affidavit impossible to reconcile with his deposition testimony, but Reese's affidavit appears to be

9

intentionally misleading. Reese states that every file a user attempts to *upload* to MP3tunes is in fact *uploaded*, but Reese artfully avoids the fact that MP3tunes does not *store* every uploaded file and the fact that MP3tunes allows multiple users access to the same files. Plaintiffs have attached the declaration of Ellis Horowitz, a source code expert and the recent past Chair of the Computer Science Department at the University of Southern California, whose review of MP3tunes' source code fully corroborates Plaintiffs' theory of a single master architecture and fully reveals the deficiencies in Reese's declaration. Furthermore, Robertson himself has admitted the existence of the single master architecture. In an October 22, 2008 article in CNET news, Robertson is quoted as follows:

> "Music uploaded into the site isn't tucked neatly into some walled-off area. Songs from every customer are loaded onto the same hard drive, [Robertson] said. But it's important to note much of the music is never actually stored, Robertson acknowledged. It would be inefficient and expensive to store numerous copies of, say, The Beatles' classic 'Yesterday' or AC/DC's 'Back in Black.' …Robertson said[,] 'We didn't invent this technology. That's a default feature in every single storage system.' …Robertson has acknowledged customers of MP3tunes, like those of MP3.com, aren't listening to their own music files."

Bart Decl. at Ex. F, pp. 3, 4 (emphasis added).

Reese's declaration is consistent with the testimony of Chad Olson, who recounted a conversation he had with Robertson in which Robertson stated that MP3tunes would make it appear that files were being stored to its system by allowing users to upload files without actually storing them. Olson Affidavit at ¶ 5. In light of the evidence, Reese's declaration is simply a continuation of MP3tunes' strategy of deception. MP3tunes' conclusory denials of the single master architecture cannot support denying Plaintiffs' Motion to Amend.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Motion to Amend and Add a Party be granted.

DATED: August 21, 2009

Respectfully submitted,

By: /s/ Andrew H. Bart
Andrew H. Bart
Carletta F. Higginson
Joseph J. McFadden
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690
fax (212) 891-1699

-and-

Steven B. Fabrizio
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC, Caroline Records, Inc, EMI Christian Music Group Inc., Priority Records LLC, Virgin Records America, Inc.*

By: /s/ Donald S. Zakarin
Donald S. Zakarin
Frank P. Scibilia
Mark A. Tamoshunas
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for the Beechwood Music Corp., Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music, EMI Full Feel Music, EMI Golden Torch Music Corp., EMI Longitude Music, EMI Virgin Music, Inc., EMI Virgin Songs, Inc., EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI Feist Catalog, Inc., EMI Gold Horizon Corp., EMI Grove Park Music, Inc. EMI Hastings*

11

*Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc., EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, Inc., Jobete Music Co., Inc., Screen Gems-EMI Music, Inc., Stone Agate Music, and Stone Diamond Music*

## CERTIFICATE OF SERVICE

Joseph J. McFadden, an attorney, hereby certifies and/or states on oath that the within *Reply Memorandum of Law in Support of Plaintiffs' Motion to Amend and Add a Party* was served on the below named individual(s) and law firm(s) via electronic mail and overnight mail delivery on this 21st day of August, 2009:

John Dellaportas, Esq.
Gregory P. Gulia, Esq.
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036

Edward M. Cramp, Esq.
Michelle Hon, Esq.
**DUANE MORRIS LLP**
101 West Broadway, Suite 900
San Diego, CA 92101

Frank P. Scibilia, Esq.
M. Mona Simonian, Esq.
**PRYOR CASHMAN LLP**
410 Park Avenue
New York, NY 10022

_____
Joseph J. McFadden