UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CAPITOL RECORDS, INC. et al., :

                Plaintiffs, :   07 Civ. 9931 (WHP)

    -against- :   MEMORANDUM AND ORDER

MP3TUNES, LLC, :

                Defendant. :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/09

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs, fourteen record companies and music publishers, bring this copyright infringement action against Defendant MP3tunes, LLC ("MP3tunes"). On July 28, 2009, the Plaintiffs filed an Amended Complaint ("Amended Complaint" or "Am. Compl."), adding fifteen additional music publishing parties as Plaintiffs, but otherwise mirroring the original complaint. MP3tunes now moves to dismiss: (1) all claims asserted by twenty-six Plaintiffs who were not identified in Plaintiffs' pre-complaint take-down notice; and (2) all direct infringement claims and the inducement of copyright infringement claim. Plaintiffs move to bring Michael Robertson ("Roberston"), who this Court previously dismissed for lack of personal jurisdiction, back into the case as a defendant and to add certain allegations and one claim to the Amended Complaint. Finally, MP3tunes moves for sanctions, attorney's fees, and costs relating to Plaintiffs' motion regarding Robertson. For the following reasons Plaintiffs' motion is granted and Defendants' motions are granted in part and denied in part.

## BACKGROUND

MP3tunes provides users an integrated music service through its two websites: www.mp3tunes.com and www.sideload.com. (Am. Compl. ¶¶ 40-41.) MP3tunes.com provides its members with an online locker for unlimited storage of music, as well as the ability to stream music from the locker, listen to music from any computer with an internet connection, and to download copies of the music to any computer. (Am. Compl. ¶ 45.) For a $39.95 fee, members can also upload files from their computers to the locker and download the contents of the locker onto any computer or portable music player. (Am. Compl. 45.)

Sideload.com provides an organized listing of music files and links to those files, which are hosted on third-party websites. (Am. Compl. ¶ 41.) A user can search for a song, browse an alphabetical catalog of artists, or choose songs from lists of "Most Popular Tracks," "Newest Tracks," and "Featured Tracks." (Am. Compl. ¶ 42.) Once the user clicks on a link to a music file, the song is streamed to the user. (Am. Compl. ¶ 42.) Users can also click on an icon to have a copy of the file stored on the user's locker at mp3tunes.com. (Am. Compl. ¶ 43.) In addition, users can install the "Oboe Sideload Plugin," which allows the user to copy songs from any website and store them in the user's locker. (Am. Compl. ¶ 44.) Once a user copies a song from a third-party website, a link to that song at that website is added to sideload.com (Am. Compl. ¶ 48.)

Plaintiffs allege that MP3tunes knows that the vast majority of songs they make available are infringing because the works listed on sideload.com are recognizable as copyrighted works. (Am. Compl. ¶ 50.) Plaintiffs bring claims for direct infringement of their reproduction, distribution, and public performance rights, inducement of copyright infringement,

contributory copyright infringement, vicarious copyright infringement, common law copyright infringement for pre-1972 works, and unfair competition.

## DISCUSSION

I. <u>MP3tunes's Motion to Dismiss</u>

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. <u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 129 S. Ct at 1949 (citation omitted). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991).

A. <u>Twenty-Six Plaintiffs Unidentified in Take-Down Notice</u>

Title II of the Digital Millennium Copyright Act ("DMCA") provides statutory safe harbors that "protect qualifying service providers from liability for all monetary relief for

3

direct, vicarious and contributory infringement, leaving copyright owners with limited injunctive relief." Io Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132, 1141 (N.D. Cal. 2008); see also Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004). In order to qualify for the safe harbor, a plaintiff must be considered a service provider, as defined by the DMCA, and inter alia "it must adopt, reasonably implement and inform subscribers of a policy providing that it may, in appropriate circumstances, terminate the accounts of repeat infringers." Io Group, 586 F. Supp. 2d at 1142 (citing 17 U.S.C. § 512(i)(1)(A)). One of the safe harbors is "for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c). "In essence, a service provider is eligible for safe harbor under section 512(c) if it (1) does not know of infringement; or (2) acts expeditiously to remove or disable access to the material when it (a) has actual knowledge, (b) is aware of facts or circumstances from which infringing activity is apparent, or (c) has received DMCA-compliant notice; and (3) either does not have the right and ability to control the infringing activity, or if it does that it does not receive a financial benefit directly attributable to the infringing activity." Io Group, 586 F. Supp. 2d at 1146. MP3tunes argues that because twenty-six Plaintiffs were not mentioned in Plaintiffs' pre-complaint takedown notices, MP3tunes did not know of any infringement of those Plaintiffs' copyrights and therefore is protected by the DMCA safe harbor.

While "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint," Official Comm. of Unsecured Creditors v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003), "the complaint itself [must] establish[] the facts necessary to sustain defendant's defense." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998);

4

see also Ortiz v. Guitian, No. 07 Civ. 3897 (RWS), 2009 WL 2252107, at *2-3 (S.D.N.Y. July 28, 2009). First, the Amended Complaint does not establish that MP3tunes meets the threshold requirements to qualify for the safe harbor. As one example, the Amended Complaint does not plead that MP3tunes adopted, reasonably implemented and informed subscribers of a policy providing that it could terminate the accounts of repeat infringers. Moreover, while the Amended Complaint states that Plaintiffs notified MP3tunes of the infringing content on their websites, it does not discuss the take-down notices in any detail. Accordingly, MP3tunes's motion to dismiss twenty-six Plaintiffs is denied.

B. Direct Infringement Claims

"To establish a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." Arista Records LLC v. Usenet.com, Inc., -- F. Supp. 2d --, 2009 WL 1873589, at *16 (S.D.N.Y. June 30, 2009) (quoting Byrne v. British Broad. Corp., 132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001)). "[V]olitional conduct is an important element of direct liability." Cartoon Network LLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir. 2008); see also Usenet.com, 2009 WL 1873589, at *17 ("a finding of direct infringement . . . requires a showing that Defendants engaged in some volitional conduct sufficient to show that they actively engaged in distribution of the copies of Plaintiffs' copyrighted sound recordings").

MP3tunes argues that the Amended Complaint fails to allege any direct infringement by MP3tunes—that is, any volitional conduct by MP3tunes. Rather, the Amended Complaint establishes that MP3tunes' customers are the ones engaged in volitional acts of infringement. See Cartoon Network, 536 F.3d at 131 ("[T]he person who actually presses the

5

button to make the recording supplies the necessary element of volition, not the person who manufactures, maintains, or, if distinct from the operator, owns the machine.").

While it may be that the user pushes the button to upload, sideload, or stream songs, Plaintiffs allege that through sideload.com, MP3tunes provides a service that collects and organizes links to music files for its customers to listen to and download into their lockers. If users add music from websites other than sideload.com to their lockers, MP3tunes adds links to those songs on sideload.com, thereby increasing the number of songs available to other users. Plaintiffs allege that MP3tunes knows many of the songs on sideload.com are infringing because they are recognizable copyrighted works, which is reasonable given that Plaintiffs allege that sideload.com features the newest and most popular tracks. Taken as a whole, these allegations plausibly suggest volitional conduct. Compare Usenet.com, 2009 WL 1873589, at *18 (where online bulletin board was aware of infringing digital music files on their service and took measures to increase retention of those songs and monitored newsgroups on the service, those actions "transformed Defendants from passive providers of a space in which infringing activities happened to occur to active participants in the process of copyright infringement"); Playboy Enter., Inc. v. Russ Hardenburgh, Inc., 982 F. Supp. 503, 513 (N.D. Ohio 1997) (bulletin board service that encouraged users to upload images and moved images to a generally available file was liable for direct infringement) with Netcom, 907 F. Supp at 172-73 (internet service provider could not be liable for direct infringement where it merely provided access to a bulletin board service on which copyrighted materials were posted); CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 555-56 (4th Cir. 2004) (website that allowed for posting of commercial real estate properties could not be liable for direct infringement where users posted infringing pictures

6

simply because it undertook a gatekeeping process to prevent obviously infringing photographs). Accordingly, MP3tunes' motion to dismiss the direct infringement claims is denied.

B. Inducement of Copyright Infringement

As the Supreme Court recently observed, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). In Grokster, the Court discussed an "inducement rule," finding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." Grokster, 545 U.S. at 936-37. In light of this discussion, "several courts recently have expressed doubt as to whether inducement of infringement states a separate claim for relief, or rather whether it is a species of contributory infringement." Usenet.com, 2009 WL 1873589, at *18 n.17. Given that Grokster explicitly states that "one infringes contributorily by intentionally inducing" infringement, this Court cannot find that inducement to infringe is a separate claim from contributory infringement. See KBL Corp. v. Arnouts, No. 08 Civ. 4873 (JGK), 2009 WL 302060, at *8 (S.D.N.Y. Feb. 9, 2009) (dismissing claim for inducement to infringe). Accordingly, MP3tunes' motion to dismiss the inducement of infringement claim is granted.

II. Plaintiffs' Motion to Amend

A. Legal Standard

Rule 15(a) provides that leave to amend should be freely granted when justice so requires. However, "where it is apparent to the Court that amending the complaint would be futile, permission to amend should be denied." Hunt v. Alliance N. Am. Gov't Income Trust

7

Inc., 159 F.3d 723, 728 (2d Cir. 1998). A proposed amendment is futile if it would not withstand a Rule 12(b)(6) motion to dismiss. Hunt, 159 F.3d at 728. A proposed amendment should also be denied where it is offered in bad faith or would cause undue delay or prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962).

Rule 21 provides that "the court may at any time, on just terms, add or drop a party." Rule 21 on its face is not limited to new parties. Courts in this circuit have considered rejoining a previously dismissed defendant pursuant to Rule 21. See N.A.A.C.P. v. A.A. Arms, Inc., No. 99 Civ. 3999 (JBW), 2003 WL 21242939, at *17-18 (S.D.N.Y. Apr. 1, 2003) (denying motion to restore previously dismissed defendants pursuant to Rules 60(b) and 21 because jury selection had commenced and the previously dismissed defendants had not participated in any discovery).

B. Michael Robertson

1. Law of the Case

On September 29, 2008, this Court granted Michael Robertson's motion to dismiss for lack of personal jurisdiction (the "September 2008 Memorandum"). See Capitol Records v. MP3tunes, LLC, No. 07 Civ. 9931 (WHP), 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008). Plaintiffs now seek to rejoin Robertson as a defendant in a Second Amended Complaint pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, this Court "has authority to revise decisions entered before the entry of a final judgment." In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004, 224 F.R.D. 543, 545-56 (S.D.N.Y. 2004); see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996) ("a district court is vested with the power to revisit its decision before entry of final judgment"). That authority is subject

8

to the law of the case doctrine, which "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." Sagendorf-Teal v. Cty. of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996); see also Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). However, the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." Sagendorf-Teal, 100 F.3d at 277; see also United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982) (The doctrine is "at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided."). "Among the major grounds justifying such a reconsideration is the availability of new evidence." Sagendorf-Teal, 100 F.3d at 277. Thus, while the Court must be convinced that there is good reason, it has the discretion and the authority pursuant to Rules 15, 21, and 54(b) to rejoin Robertson as a defendant in this case.

When Robertson moved to dismiss the claims against him, Plaintiffs had conducted jurisdictional discovery. However, the only evidence Plaintiffs presented was that Robertson was the founder, chief executive officer, shareholder and only director of MP3tunes and that Robertson had conversations with two individuals he had previously worked with regarding his ideas for the structure and design of MP3tunes' music storage. See Capital Records, 2008 WL 4450259, at *5.

As this Court explained in the September 2008 Memorandum, under New York law an individual can be "subject to jurisdiction under New York's long-arm statute if a corporate defendant is acting as his agent." Kreutter, 522 N.E.2d at 44-47. The plaintiff need not establish a formal agency relationship, but rather the plaintiff "need only convince the court

9

that [the corporation] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the [officer defendant] and that [the officer defendant] exercised some control over [the corporation] in the matter." Kreutter, 522 N.E.2d at 44; Alpha Int'l, Inc. v. T-Reproductions, Inc., No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) ("Jurisdiction extends to the employees of a corporation who had knowledge of, and extensive control over, the New York transaction that is the source of the litigation."). "At the heart of this inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in' it." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1988) (quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)). In the September 2008 Memorandum, this Court found that the evidence presented was insufficient to establish that Robertson benefits from and exercises control over MP3tunes's infringing activities. See Capitol Records, 2008 WL 4450259, at *5.

In addition, this Court must determine that "assertion of jurisdiction under [New York law] comports with the requirements of due process." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). In determining whether assertion of jurisdiction comports with the requirements of due process, a court must consider (1) whether a defendant has "minimum contacts" with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with "traditional notions of fair play and substantial justice." Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027 (2d Cir. 1997)

2. Richards' Contradictory Testimony

Plaintiffs now present additional testimony from Emily Richards, MP3tunes' President until September 2008. While she was deposed in April 2008, in connection with

10

MP3tunes and Robertson's motion to dismiss for lack of personal jurisdiction, Plaintiffs deposed her a second time in June 2009. At the later deposition, Richards stated that while the company as a whole made the decisions, she had concerns about MP3tunes' decision to expand from a music store to a locker service, to start the sideload.com website and the sideload feature, and the so-called "single master locker design."[1] (Declaration of Andrew H. Bart dated July 31, 2009 ("Bart Decl.") Ex. B: Deposition of Emily Richards dated June 30, 2009 ("2009 Richards Tr.") 27-31, 37-41, 51-52, 56-58.) When Richards expressed her misgivings to Robertson, he told her that he "would handle any matters that arose" and that "he had more experience in the area . . . and he knew what he was doing, that [Richards] shouldn't worry about it." (2009 Richards Tr. 40-41.) Richards testified that it was common "for the company to go forward with decisions that [Richards] as president disagreed with" in areas where Robertson "had more experience" than Richards. (2009 Richards Tr. 51-52.) As for their respective roles, Richards testified that Robertson handled technical, product decision, and legal matters without her involvement, while she handled operational, financial, and personnel matters and developing partner relationships. (2009 Richards Tr. 60-62, 66.) She also stated that the hierarchy of the company "was very flat." (2009 Richards Tr. 61-62.)

MP3tunes argues that this testimony is entirely consistent with Richards' April 2008 testimony and presents no new evidence. From the Court's review of both depositions, it is clear that Richards provided new testimony at her later deposition regarding Robertson's control over the activities at issue in this case.

---

[1] Plaintiffs contend that Mp3tunes.com does not keep music files for each of its users in an online "locker." Rather, MP3tunes saves a master copy of each music file on a centralized server and users' lockers reference the relevant files on that server. In order to save on storage costs, if the same music file is uploaded by multiple users, it is only saved once and each locker references the same master copy.

11

To some degree, the new testimony was elicited in response to different questions. For example, at the first deposition, Plaintiffs did not question Richards about Robertson's and Richards' respective roles at MP3tunes. However, on some subjects, in her second deposition, Richards directly contradicted her testimony at her first deposition. For example, when asked at her first deposition whether she discussed potential copyright issues implicated by sideload.com with anyone at MP3tunes, she testified she had not. (Transcript of the Deposition of Emily Richards dated Apr. 10, 2008 ("2008 Richards Tr.") 80, 101-02.) At her later deposition, she specifically testified that she had expressed concerns regarding sideload.com copyright issues with Robertson, but that Robertson told her the activities were protected by the DMCA and that he would handle any matters that arose. (2009 Richards Tr. 56-57.)

Comparing the two transcripts, it is also clear that Richards appeared to know more about MP3Tunes at her later deposition—when she had not been employed by MP3tunes for nine months—than at her first deposition, when she was president of the company. For example, she testified that she did not know if sideload.com provided a database or listing of links to music files or if users could copy the contents of their lockers to multiple devices at her first deposition. (2008 Richards Tr. 85.) At that time, Richards also testified that she did not know how MP3tunes stored copies of the same music file uploaded by different users. (2008 Richards Tr. 68.) However, at her later deposition, Richards testified extensively about the ability to sideload songs (2009 Richards Tr. 53-55), her discussions with Doug Reese, MP3tunes' chief technology officer regarding copyright issues raised by MP3tunes storage of music files, and that she even consulted counsel on that issue. (2009 Richards Tr. 42-46.)

It is apparent from these contradictions that Richards was untruthful at one of her depositions. Not surprisingly, the parties have different theories. Plaintiffs point to Richards'

12

testimony at her later deposition that Robertson spoke to her the night before her first deposition and told her that she "should not speak to anything regarding technology because [she] had no expertise in that area" and the "circumstances in which he believed it would be appropriate for [Richards] to answer a deposition question I do not know or words to that effect." (2009 Richards Tr. 15, 20-21.) According to Richards, Robertson also told her not to tell anyone about the conversation. (2009 Richards Tr. 20.) However, when asked at her first deposition whether she had conversations with Robertson about her testimony, she testified she had not. (2008 Richards Tr. 29-30.) At her second deposition, Richards also testified that she was generally intimidated by Robertson, who was present at both of her depositions, and feared that he might retaliate against her if he did not approve of her testimony. (2009 Richards Tr. 21-23.)

MP3tunes responds that the circumstances surrounding Richards' second deposition are suspect and explain her later testimony. When Plaintiffs learned Richards had left MP3tunes, they contacted her to see if she was represented by an attorney and would be willing to speak with them. (Declaration of Stephen B. Fabrizio ("Fabrizio Decl.") dated Aug. 14, 2009 ¶ 5.) After Richards refused to meet with Plaintiffs' counsel, Plaintiffs obtained a subpoena. Richards' counsel informed Plaintiffs that he would move to quash the subpoena and/or seek reimbursement of Richards' costs in responding to the subpoena. (Fabrizio Decl. ¶ 9.) Plaintiffs countered that they would reimburse Richards for documented legal fees and costs up to a total of $10,000 and pay her counsel's expenses in traveling to the deposition. (Fabrizio Decl. Ex. A: Email from Fabrizio to Michael Page dated June 12, 2009.) There is no evidence that Plaintiffs spoke with Richards on any occasion other than their initial phone call. However, Richards also testified that Kevin Carmony, one of Robertson's former co-workers who had a falling out with Robertson, told Richards that she could either be a witness or a defendant in the case. (2009

13

Richards Tr. 112.) Richards testified that Carmony indicated he was conveying a message from Plaintiffs. (2009 Richards Tr. 11-12.) Thus, MP3tunes argues that Richards testified more favorably to Plaintiffs at her second deposition because she was threatened with being added as a defendant and because Plaintiffs paid her legal expenses.

Finally, while neither party points it out, Richards also testified that she left the company because "Michael asked me to leave, told me I was leaving." (2009 Richards Tr. 9.) Certainly, the circumstances under which Richards left MP3Tunes also bear on her credibility.

### 3. Conclusion

The parties have raised a number of troubling issues including possible perjury by a witness and obstruction of justice. At this stage, this Court reaches no conclusion regarding the impetus for Richards' changed testimony.

In determining whether the re-joinder of Robertson is futile, this Court must resolve all doubts in Plaintiff's favor. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). This includes doubts resulting from contradictory testimony provided by the same witness. See Vacation Travel Int'l, Inc. v. Sunchase Beachfront Condo. Owners, No. 06 Civ. 2195 (LTB), 2007 WL 757580, at *4 (D. Colo. Mar. 8, 2007) (resolving conflicting affidavits by the same witness in favor of the plaintiff on a motion to dismiss for lack of personal jurisdiction).

At her later deposition, Richards provided significant new testimony regarding Robertson's control over the activities at issue in this action. Richards testified that it was Robertson who handled technical matters, product decision, and legal matters and that Robertson overruled her concerns regarding the matters at issue in this case because he would handle them. While the testimony does not establish that Robertson had sole control over MP3Tunes' decision

14

marking, it certainly demonstrates, if accepted as true, that he was a "primary actor," see Karabu, 16 F. Supp. 2d at 323, and had "extensive control," see Alpha, 2003 WL 21511957, at *3, with respect to the activities giving rise to this suit. See also Kreutter, 522 N.E.2d at 44 (requiring that the individual defendant "exercised some control"). In addition, as a shareholder of MP3tunes, Robertson certainly benefits from MP3tunes' activities.[2] See Retail Software, 854 F.2d at 22 (individual defendants who were shareholders benefited from corporation's activities). This is sufficient to establish personal jurisdiction over Robertson under New York law.

With respect to the requirements of due process, this Court previously noted that MP3tunes does significant business with New York customers. See September 2008 Order, at 7-8. Plaintiffs have demonstrated that Robertson exercised extensive control over MP3tunes. Thus, he could "reasonably anticipate being haled into court" in New York with respect to MP3tunes' business. Editorial Musical Latino Americana, S.A. v. Mar Intern. Records, Inc., 829 F. Supp. 62, 65 (S.D.N.Y. 1993) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 29 (1980); see also Retail Software, 854 F.2d at 23 (minimum contacts established where defendants exercised extensive control over a corporation that sold franchises to be operated in New York).

There will be no undue delay or prejudice as a result of rejoining Robertson as a defendant. Robertson has participated in all aspects of discovery because regardless of whether he was a defendant, he remained a central witness in the case. Moreover, even if this Court were to deny Plaintiffs' motion, they would be free to bring a new suit against Robertson. See

---

[2] After oral argument, Robertson submitted evidence that the majority of MP3tunes' shares are owned by two trusts in which he is a trustee. However, he testified that he was a shareholder, along with two other individuals. (Bart Decl. Ex. A: Transcript of Deposition of Michael Robertson dated Apr. 9, 2008 at 39-10.) For purposes of this motion, this Court will not delve into the structure of Robertson's shareholdings and accepts his testimony that he is a shareholder.

15

Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 n.4 (2d Cir. 1994) ("[A] dismissal for want of subject matter or personal jurisdiction is not a decision on the merits. Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction."). Discovery has progressed in this action, at the expense of significant judicial resources.[3] Given that the parties should be close to a resolution on the merits, judicial economy and efficiency counsel that the issue of Robertson's liability for any copyright infringement that Plaintiffs can establish should be resolved at the same time as MP3tunes's liability.

Accordingly, this Court grants Plaintiffs' motion to rejoin Robertson as a defendant in this action. In making this ruling, this Court notes that while Plaintiffs may have provided evidence sufficient for this Court to grant Plaintiffs' motion, "[e]ventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial." Petra Bank, 989 F.2d at 79-80. Thus, Robertson will be free to argue at trial that the evidence does not establish personal jurisdiction by a preponderance of the evidence. And at that time, this Court can consider Richards' credibility in light of the issues raised on this motion.

### C. Motion to Add Additional Allegations to the Amended Complaint

Plaintiffs seek to add certain allegations and one new claim as a result of evidence they obtained through discovery. First, Plaintiffs propose to add details regarding the alleged "single master architecture" to its existing direct infringement claims. Second, Plaintiffs wish to add allegations to their claims for infringement of reproduction and distribution rights and to add

---

[3] Magistrate Judge Frank Maas has conducted numerous discovery conferences with the parties and issued several lengthy orders regarding the parties' discovery disputes, which continue to this day.

16

a claim for infringement of public display rights with respect to certain photographs, paintings, and artistic work that are included in the packaging of Plaintiffs' products ("Cover Art"). Specifically, Plaintiffs allege that MP3tunes searches the internet for digital copies of Cover Art and associates that Cover Art with digital music files. (Proposed Second Amended Complaint dated July 31, 2009 ("Sec. Am. Compl.") ¶ 53.) When a user plays a song which has associated Cover Art, it is displayed on MP3tunes's website and available for download to the user's computer. (Sec. Am. Compl. ¶ 53.) Finally, Plaintiffs wish to add allegations regarding a website, lockershare.com, that allegedly allows a user to gain access to and copy other user's music files. (Sec. Am. Compl. ¶ 52.)

        MP3tunes responds that these additional allegations and claims are futile and submits an affidavit to refute them. However, this Court cannot consider affidavits on a motion to amend. It can only consider the sufficiency of the proposed amended pleading. Plaintiffs' "single master architecture" allegations have been a central issue in this case from the beginning. This Court discerns no prejudice to MP3tunes from the addition of these allegations or undue delay given that the parties have treated these allegations as if they were in the pleading. As for the allegations relating to lockershare.com, MP3tunes claims the project was never released to the public, so these allegations should be easily refuted. Finally, the Cover Art allegations plausibly plead a claim for copyright infringement. Because their factual predicate emerged during discovery, this Court finds no undue delay in raising them, and MP3tunes will have sufficient time to conduct any necessary discovery. Accordingly, Plaintiffs' motion to amend the complaint with these additional allegations and one new claim is granted.

### III. MP3tunes's Motion for Sanctions, Attorney's Fees and Costs

MP3tunes seeks sanctions in the form of all of its attorney's fees and costs incurred in connection with responding to Plaintiffs' motion to rejoin Robertson. MP3tunes also claims Robertson is a prevailing party under the Copyright Act and is entitled to attorney's fees and costs under 17 U.S.C. § 505.

MP3tunes' motion also questions the propriety of Plaintiffs' contact with Richards and agreement to pay her legal costs up to $10,000. Based on the record, it does not appear that Plaintiffs' contact with Richards was inappropriate. See, e.g., Judd v. Take-Two Interactive Software, Inc., No. 07 Civ. 7932 (GEL), 2008 WL 906076, at *1 (S.D.N.Y. Apr. 3, 2008) ("As a general rule, a party cannot prevent an adverse party from conducting ex parte interviews with its former employees."). Finally, without evidence that Plaintiffs made their payment of Richards' legal fees "contingent upon the content of [Richards'] testimony or the outcome of the matter," MP3tunes offers no authority suggesting that Plaintiffs' conduct is sanctionable. See New York Rules of Professional Conduct 3.4(b).

Given this Court's resolution of Plaintiffs' motion to rejoin Robertson, MP3tunes's motion for sanctions is denied as moot.

## CONCLUSION

For the foregoing reasons, MP3tunes' motion to dismiss is granted in part and denied in part. Plaintiffs' inducement of copyright infringement claim is dismissed. Plaintiffs' motion to file a Second Amended Complaint is granted and Robertson is rejoined as a defendant. MP3tunes's motion for sanctions and attorney's fees is denied as moot.

Dated: October 16, 2009
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

19

*Counsel of Record:*

Andrew H. Bart, Esq.
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022

and

Frank Phillip Scibilia, Esq.
Pryor Cashman LLP
7 Times Square
New York , NY 10036-6569
*Counsel for Plaintiffs*

Gregory P. Gulia, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
*Counsel for Defendants*