UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI FEIST CATALOG, INC., EMI GOLD HORIZON CORP., EMI GROVE PARK MUSIC, INC. EMI HASTINGS CATALOG, INC., EMI MILLS MUSIC, INC., EMI MILLER CATALOG, INC., EMI ROBBINS CATALOG, INC., EMI U CATALOG, INC., EMI UNART CATALOG, INC., JOBETE MUSIC CO., INC., SCREEN GEMS-EMI MUSIC, INC., STONE AGATE MUSIC, AND STONE DIAMOND MUSIC, | No. 07 Civ. 9931 (WHP)(FM) **ECF CASE** **SECOND AMENDED COMPLAINT** |
| *Plaintiffs*, | |
| v. | |
| MP3TUNES, LLC AND MICHAEL ROBERTSON | |
| *Defendants*. | |

Plaintiffs Capitol Records, Inc.; Caroline Records, Inc.; EMI Christian Music

Group Inc.; Priority Records LLC; and Virgin Records America, Inc. (collectively, "the EMI

Music Plaintiffs"), and Beechwood Music Corporation; Colgems-EMI Music Inc.; EMI April

Music Inc.; EMI Blackwood Music; EMI Full Keel Music; EMI Golden Torch Music Corp.;

EMI Longitude Music; EMI Virgin Music, Inc.; EMI Virgin Songs, Inc., EMI Al Gallico Music

Corp., EMI Algee Music Corp., EMI Feist Catalog, Inc., EMI Gold Horizon Corp., EMI Grove

Park Music, Inc., EMI Hastings Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc.,

EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, Inc., Jobete Music Co.,

Inc., Screen Gems-EMI Music, Inc., Stone Agate Music, and Stone Diamond Music

(collectively, "the EMI Publishing Plaintiffs") hereby allege as follows:

**NATURE OF THE CASE**

1.      This is a case of willful infringement of copyright over the Internet.

Defendants MP3tunes, LLC ("MP3tunes") and Michael Robertson have built a commercial, for-

profit business premised upon providing their users with access to popular copyrighted music.

MP3tunes, however, does not own the music it exploits; nor does MP3tunes have any legal right

or authority to use or exploit that music.  Instead, in violation of copyright and other laws,

Defendants take for themselves the creative and financial investments of others, including the

EMI Music Plaintiffs and EMI Publishing Plaintiffs.  In doing so, Defendants severely and

irreparably injure Plaintiffs and other copyright owners by eroding legitimate sales of music

through both traditional and online channels.  MP3tunes does not in any way compensate the

lawful owners of the music it exploits.

2.      MP3tunes engages in these acts of willful infringement largely through its

operation of two Internet websites, www.sideload.com and www.mp3tunes.com.  Through these

websites, Defendant MP3tunes provides its users with an integrated music service through which

they can listen to music over their computers, obtain permanent copies of music from infringing

third party websites, store music (including illegal copies obtained from such websites) on

MP3tunes' servers, transfer music from the MP3tunes' servers  to their computers or other

portable devices, and further distribute that music to others.  MP3tunes boasts that its catalog of

2

music contains over 400,000 musical recordings by 40,000 artists.  Indeed, MP3tunes advertises its service as the place where users should come to get "FREE MUSIC ON THE INTERNET." The more users MP3tunes is able to attract to its service through the lure of free music, the more money MP3tunes makes.

3.     But, as Defendants know, the music they exploit is not "free":  Copyright owners such as Plaintiffs make enormous financial and creative investments in developing and promoting music of the highest quality, and bringing this music to consumers.  Songwriters and recording artists, as well as others in the music industry, count on royalties from lawful sales of musical works for their livelihoods.

4.     MP3tunes and Robertson also know full well – because it is self-evident from even a passing review of MP3tunes' sites and because Plaintiffs have told them – that the vast majority of the music available through the MP3tunes service is infringing.  Defendants readily could stop the infringement.  They simply choose not to.  The financial viability of their business depends upon exploiting the most popular music to attract users to their sites.

5.     Defendants' actions infringe Plaintiffs' copyrights and common-law rights in sound recordings in numerous ways.  MP3tunes directly infringes Plaintiffs' exclusive rights under copyright to publicly perform, reproduce and distribute their works.  Additionally, MP3tunes unlawfully enables, encourages and profits from massive copyright infringement by MP3tunes' users.  Under established theories of inducement, contributory infringement, and vicarious infringement, Defendants are liable for the infringing acts of their users.

## THE PARTIES

6.     The EMI Music Plaintiffs are among the leading record companies in the United States and the world.  They are in the business of producing, manufacturing, distributing,

selling, and licensing the distribution and sale of sound recordings, or arranging to do so, in the United States. They are responsible for some of the world's most popular recordings.

7.     The EMI Publishing Plaintiffs are among the leading music publishers in the United States and the world. They are in the business of acquiring, protecting, and administering rights in musical compositions in the United States. They are responsible for some of the world's most popular compositions.

8.     Each of these plaintiffs owns the copyrights and/or the exclusive rights to reproduce, distribute and publicly perform innumerable popular sound recordings and compositions, including for illustrative purposes those recordings listed on Exhibit A and compositions listed on Exhibit B. Plaintiff Capitol Records, Inc. further owns rights to sound recordings that were initially "fixed" prior to February 15, 1972 (the "Pre-1972 Works") and that are therefore subject to protection under state law, including for illustrative purposes those recordings listed on Exhibit C.

9.     Plaintiff Capitol Records, Inc. is a Delaware corporation, with its principal place of business in New York, NY.

10.     Plaintiff Caroline Records, Inc. is a New York corporation, with its principal place of business in New York, NY.

11.     Plaintiff EMI Christian Music Group Inc. is a California corporation, with its principal place of business in Brentwood, TN.

12.     Plaintiff Priority Records LLC is a Delaware limited liability company with its principal place of business in New York, NY.

13.     Plaintiff Virgin Records America, Inc. is a California corporation, with its principal place of business in New York, NY.

14.    Plaintiff Beechwood Music Corporation is a California corporation, with its principal place of business in New York, NY.

15.    Plaintiff Colgems-EMI Music Inc. is a Delaware corporation, with its principal place of business in New York, NY.

16.    Plaintiff EMI April Music Inc. is a Connecticut corporation, with its principal place of business in New York, NY.

17.    Plaintiff EMI Blackwood Music is a Connecticut corporation, with its principal place of business in New York, NY.

18.    Plaintiff EMI Full Keel Music is a New York corporation, with its principal place of business in New York, NY.

19.    Plaintiff Golden Torch Music Corp. is a New York corporation, with its principal place of business in New York, NY.

20.    Plaintiff EMI Longitude Music is a New York corporation, with its principal place of business in New York, NY.

21.    Plaintiff EMI Virgin Music, Inc. is a New York corporation, with its principal place of business in New York, NY.

22.    Plaintiff EMI Virgin Songs, Inc. is a New York corporation, with its principal place of business in New York, NY.

23.    Plaintiff EMI Al Gallico Music Corporation is a Delaware corporation, with its principal place of business in New York, NY.

24.    Plaintiff EMI Algee Music Corporation is a Delaware corporation, with its principal place of business in New York, NY.

25.    Plaintiff EMI Feist Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

26.    Plaintiff EMI Gold Horizon Corporation is a New York corporation, with its principal place of business in New York, NY.

27.    Plaintiff EMI Grove Park Music, Inc. is a California corporation, with its principal place of business in New York, NY.

28.    Plaintiff EMI Hastings Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

29.    Plaintiff EMI Mills Music, Inc. is a Delaware corporation, with its principal place of business in New York, NY.

30.    Plaintiff EMI Miller Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

31.    Plaintiff EMI Robbins Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

32.    Plaintiff EMI U Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

33.    Plaintiff EMI Unart Catalog, Inc. is a New York corporation, with its principal place of business in New York, NY.

34.    Plaintiff Jobete Music Co., Inc. is a Michigan corporation, with its principal place of business in New York, NY.

35.    Plaintiff Screen Gems-EMI Music, Inc. is a New York corporation, with its principal place of business in New York, NY.

36.    Plaintiff Stone Agate Music is a Michigan corporation, with its principal place of business in New York, NY.

37.    Plaintiff Stone Diamond Music is a Michigan corporation, with its principal place of business in New York, NY.

38.    Defendant MP3tunes is a Delaware limited liability company that, upon information and belief, owns and operates the Internet websites that are the subject of this Complaint.

39.    Defendant Michael Robertson is MP3tunes' founder and chief executive officer and personally makes decisions regarding, participates in, directs, exercises control over, and benefits from MP3tunes' infringing activities. Indeed, Mr. Robertson is MP3tunes' key decision-maker and has actively directed, and continues to actively direct, MP3tunes' illegal conduct. Mr. Robertson personally conceived of, and participated in, many of the illegal features and services of MP3tunes, and he directed employees to engage in illegal conduct despite the concerns and/or objections of MP3tunes' President, Emily Richards. Mr. Robertson previously founded and launched another high-profile Internet venture, known as MP3.com, whose purpose was similar to the purpose of the websites at issue in this case: facilitating the unauthorized copying and distribution of copyrighted musical works. In 2000, the leading record companies in the country, including some of the plaintiffs here, commenced an action against MP3.com in this Court for infringement of their copyrights. The Court (Rakoff, J.) found that MP3.com had engaged in willful acts of copyright infringement. Mr. Robertson then sold that company and ultimately started this one as a vehicle to achieve a comparable infringing purpose. MP3tunes and Michael Robertson are referred to in this complaint collectively as "Defendants."

## DEFENDANTS' INFRINGING MUSIC SERVICE

40.    Defendants' two websites, Sideload.com and MP3tunes.com, provide an integrated music service.

41.    Sideload.com provides organized listings of music files – overwhelmingly infringing music files – available across the Internet. It does not appear that Sideload.com physically hosts or stores the music files Defendants make available through Sideload.com. Rather, the actual music files are hosted on, and dispersed across, countless third-party websites and servers on the Internet. These third-party sites and servers are often called "source sites." A source site may contain only a single song, or just a few songs. Sideload.com collects and organizes "links" to songs on those disparate and far-flung source sites, such that Sideload.com can (and does) advertise itself as a "destination" where users can get all the music they want. In fact, Defendant Robertson has explained that while music is scattered all across the Internet, his service exists to "bring the music together into one index where you can quickly find and stream tracks." Defendant Robertson personally directed the creation of Sideload.com despite the concerns and/or objections of MP3tunes' President.

42.    Defendants enable users to obtain permanent copies of the digital music files accessible through Sideload.com. Next to each song listed on Sideload.com is a small "SL" icon – which stands for "Sideload." When users click that SL icon, MP3tunes makes a full, permanent copy of the desired work and stores it on Sideload's servers. This is referred to as "sideloading" a song. While Defendants claim that a distinct physical copy of each song is maintained in each user's locker, in fact, no distinct physical copy is kept in users' lockers. Instead, the recordings are stored in centralized MP3tunes' servers. The user has a series of file references which enable the user to access specific files on Defendants' servers that are digitally

identical to the copies the user has uploaded or sideloaded. MP3tunes enables and encourages users to stockpile digital music files – which are overwhelmingly infringing various copyrights.

43.     In addition to allowing users to download songs, Sideload.com also "streams" music to users, enabling them to listen to a wide array of music at Sideload.com on demand. Functionally, a user visits Sideload.com, finds the song he or she wants to listen to, and clicks the Sideload.com "link"; the song begins to play through the user's computer. To locate music on Sideload, the user can use a Sideload.com "search" function to find a song by artist or title, browse Defendants' "catalog" of music through alphabetical artist listings, or pick songs from Sideload.com's advertising of "Most Popular Tracks," "Newest Tracks" or "Featured Tracks."

44.     Defendants also provide software that enables users easy "sideloading" of music from other Internet sites beyond Sideload.com. Users who install MP3tunes' Sideload Plugin software will see, next to any music file linked to on any website they visit, the same SL icon that provides for one-click copying onto the MP3tunes' servers. Clicking on the SL icon from any website transfers a copy of the file into MP3tunes' servers.

45.     Use of the MP3tunes.com service requires a membership, and the functionality of an MP3tunes membership depends upon the users' MP3tunes membership level. With a "basic" membership, users are given two gigabytes worth of Internet-based storage for digital music files, as well as the ability to stream the music from the MP3tunes' servers, listen to it from any computer with an Internet connection, store music from Sideload.com, and download copies to a personal computer. With a "premium" MP3tunes membership, users pay a fee ranging from $39.95 to $139.95 per year for additional storage capacity and the added ability to stream music to non-PC devices and view unrestricted Cover Art.

46. Defendants have configured the service they own and operate so that copies of copyrighted works to which a user has access can be copied and downloaded to more than one computer at the same time, thus enabling multiple unauthorized copies to be made and distributed at once. Defendants' MP3tunes.com website boasts of this feature and specifically instructs users on how to use it.

47. Defendants have configured the service they own and operate to facilitate the distribution of copyrighted works in other ways as well. MP3tunes.com members access the sites by entering an e-mail address and password associated with that account. Once a user has entered the e-mail address and password for a premium account, the user may both access the content obtained using Sideload.com and download all of the music files associated with the account. On information and belief, users have used this feature to copy and distribute Plaintiffs' copyrighted works, by uploading music files, then "publishing" their password so that other users can access the files obtained from Sideload and download all of the music available to that account. MP3tunes thus serves as a virtual drop-box for this illegal distribution.

48. Defendants have designed the websites they own and operate to perpetuate and increase this infringement. Every time that a user "sideloads' a file from a source site, a link to the song at the source site automatically appears on the Sideload.com website, thus increasing Defendants' service's "catalog" of infringing songs. As a result, Sideload.com now offers a searchable, browsable database of over 400,000 of the most popular music files on the Internet.

49. To illustrate the integrated (and harmful) nature of the music service Defendants own and operate, a user can visit Sideload.com and search for songs by Norah Jones. The user can select the song "My Dear Country" and listen to it from Sideload.com, on demand, as many times and as often as the user wants. Thus, the user has no need to visit any of the

legitimate websites that are authorized by Plaintiffs and compensate Plaintiffs for the right to use "My Dear Country." The user can also ask MP3tunes to make a permanent copy of the recording available to the user at MP3tunes.com. The user can listen to the recording on demand from MP3tunes' servers. The user can also download the song to any computer or iPod, or copy it to a CD. Thus, the user has no need to purchase a digital copy of "My Dear Country" from Apple's iTunes store or any number of other legitimate websites that are authorized and licensed by Plaintiffs to sell digital downloads of their works.

50. Defendants know that the vast majority of sound recordings and compositions they make available through their service infringe the copyright and common-law rights of the owners of those works, including the rights of the EMI Music and EMI Publishing Plaintiffs. The works listed on Sideload.com are readily recognizable as copyrighted works. Indeed, Defendants' service provides, when available, images reflecting the covers of albums on which the works originally appeared. Plaintiffs have also notified Defendants of the infringing content on their websites and have provided them with representative lists of musical works being infringed on their service. Despite these specific notifications, Defendants continue to provide full access to thousands of works owned by Plaintiffs.

51. "Sideloading" a file is not the only way for users to populate the MP3tunes' servers with music. Users may also upload their own music files from their computers to an MP3tunes server through the use of software provided by Defendants. Users are informed that their MP3tunes' lockers contain a personal copy of each song that they upload to the system. Contrary to what MP3tunes states publicly, the company does not keep distinct copies for each user in the user's locker. Instead, MP3tunes assigns each digital file on its system a "file key." A users' locker only contains listings of file keys to which that user has

access. When one user attempts to upload a digital music file that is an exact match of a file already in the MP3tunes database, MP3tunes simply deletes the new file and adds a file key reference in the user's locker to the pre-existing file. As a result, MP3tunes retains only a single digital copy of a song that is then shared by multiple users. This form of file sharing, which is referred to herein as the "Single Master Architecture," results in Defendants maintaining a centralized library of music as opposed to individual libraries for users. The Single Master Architecture was created at the personal direction of Defendant Robertson in order to save on storage costs.

52.    In addition to the websites www.sideload.com and www.mp3tunes.com, MP3tunes also owned and operated a website at www.lockershare.com ("LockerShare"). Upon information and belief, LockerShare allowed a user to gain access to and make permanent copies of another user's sideloaded music files. Even if a song was removed from Sideload.com or from its location on another website, the song was not removed from any MP3tunes user that had already obtained it. Therefore, upon information and belief, LockerShare effectively circumvented any attempt by content owners to remove infringing content from Sideload.com and further facilitated widespread copyright infringement.

53.    In addition to illegally sharing and distributing Plaintiffs' sound recordings and musical compositions, Defendants also illegally share and distribute photographic and other artistic works owned by Plaintiffs. Records, Cassettes, CDs, DVDs, and other physical media containing sound recordings and compositions are generally sold in packaging with photographs, paintings, or other artistic works on the cover. Record companies obtain copyright protection for this Cover Art. The tradition of using "Cover Art" has carried over into the digital age so that even digital music files are sometimes sold with Cover Art attached to or embedded

in the music files.  In order to encourage users to use their services, Defendants searched the internet for digital copies of Cover Art, illegally copied that Cover Art onto their servers, and automatically associated that Cover Art with digital music files uploaded or sideloaded by users onto MP3tunes' servers.  When a user plays a song for which Defendant has obtained the Cover Art, the Cover Art is displayed on Defendant's website.  Upon information and belief, Cover Art is also available for download to users' computers.  Further upon information and belief, Defendants use this feature to entice users to pay for the MP3tunes service.  Plaintiffs own the Cover Art associated with many of the sound recordings and compositions that appear in Defendants' locker service, and the Cover Art appears without Plaintiffs' license or authorization.

54.    Defendant Robertson has personally made decisions regarding, participated in, directed, exercised control over, and benefited from MP3tunes' infringing activities.  He has played a personal role in creating Defendant MP3tunes' business plan and in executing that plan, including playing a key decision-making role in the actions of MP3tunes that constitute direct and secondary copyright infringement, and violations of New York common law.  Among other things, Defendant Robertson directed, controlled and personally participated in the creation of Sideload.com, the sideloading feature, the expansion of the locker functionality to allow users to upload and sideload recordings onto MP3tunes' servers, and the Single Master Architecture.  Robertson further controlled, directed and participated in virtually all major strategy decisions, including the marketing strategy, for the company, and personally posted thousands of music files to sideload.com.  He is personally aware of the infringing activity, has contributed to it, and chooses not to stop it.

55.     Defendants could stop infringing Plaintiffs' works, and could cease encouraging and facilitating infringement by their users.  But, because Defendants' revenues are dependent upon infringement, Defendants instead choose to continue infringing – and enabling, encouraging and profiting from the infringement of users.

## JURISDICTION AND VENUE

56.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore this Court has jurisdiction under 17 U.S.C. § 101 *et seq.*; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

57.     Personal jurisdiction over Defendants is proper.  Defendants enable users, including New York residents, to access music files using the service that Defendants own and operate to download infringing copies of Plaintiffs' works.  The voluminous acts of direct infringement for which Defendants are liable require a high level of interaction between users' computers and Defendants' websites.  On information and belief, many of these acts of direct infringement for which Defendants are liable occur in New York, where New York residents access Defendants' website in order to download infringing copies of Plaintiffs' works.  In these and other ways, Defendants have had continuous contact with the State of New York and its residents.

58.     Venue in this District is proper under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a).  On information and belief, a substantial part of the acts of infringement complained of herein occurs or has occurred in this District.

## FIRST CLAIM FOR RELIEF

### Infringement of Plaintiffs' Reproduction Rights

59.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60.     Without authorization, Defendants are making and causing to be made unauthorized reproductions of Plaintiffs' copyrighted sound recordings, compositions and Cover Art in violation of 17 U.S.C. §§ 106(1) and 501, including but not limited to the copyrighted sound recordings (and associated Cover Art) listed in Exhibit A hereto and the copyrighted musical compositions listed in Exhibit B hereto.

61.     The infringement of Plaintiffs' reproduction rights in their copyrighted sound recordings, compositions, and Cover Art constitutes a separate and distinct act of infringement.  Each time a user requests a copy of a recording from a source site, Defendants make a perfect, fixed digital copy of the work from the source site and transfer it onto their computer servers in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(1).

62.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Plaintiffs' rights.

63.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

64.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

65.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## SECOND CLAIM FOR RELIEF

### Infringement of Plaintiffs' Distribution Rights

66.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 65 as if fully set forth herein.

67.    Without authorization, Defendants are distributing and have distributed to the public copies of Plaintiffs' copyrighted sound recordings, compositions, and Cover Art in violation of 17 U.S.C. §§ 106(3) and 501, including but not limited to the copyrighted sound recordings listed in Exhibit A hereto and the copyrighted musical compositions listed in Exhibit B hereto.

68.    The infringement of Plaintiffs' rights to distribute their copyrighted sound recordings, compositions, and Cover Art constitutes a separate and distinct act of infringement. Each time Defendants transfer an unauthorized copy of one of Plaintiffs' copyrighted musical works from  MP3tunes' servers  to another computer or portable music device, Defendants distribute that copy in violation of Plaintiffs' exclusive rights under 17 U.S.C. §§ 106(3).

69.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Plaintiffs' rights.

70.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work

infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

71.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

72.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### THIRD CLAIM FOR RELIEF

### Infringement of Plaintiffs' Public Performance Rights

73.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 72 as if fully set forth herein.

74.    Without authorization, Defendants are publicly performing and have publicly performed, by means of digital audio transmission, the EMI Music Plaintiffs' copyrighted sound recordings in violation of 17 U.S.C. §§ 106(6) and 501, including but not limited to the copyrighted sound recordings listed in Exhibit A hereto.

75.    Without authorization, Defendants are publicly performing and have publicly performed the EMI Publishing Plaintiffs' copyrighted compositions in violation of 17 U.S.C. §§ 106(4) and 501, including but not limited to the copyrighted musical compositions listed in Exhibit B hereto.

76.    The infringement of Plaintiffs' rights in the public performance of each of their copyrighted sound recordings and compositions constitutes a separate and distinct act of

infringement. Each time Defendants stream an unauthorized copy of one of Plaintiffs' copyrighted musical works using Defendants' Sideload.com website to one of their users, and/or from MP3tunes servers from a "Single Master" recording, Defendants publicly perform Plaintiffs' works in violation of the EMI Publishing Plaintiffs' exclusive right under 17 U.S.C. § 106(4) and the EMI Music Plaintiffs' exclusive rights under 17 U.S.C. § 106(6).

77.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Plaintiffs' rights.

78.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

79.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

80.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## FOURTH CLAIM FOR RELIEF

### Infringement of Plaintiff's Public Display Rights

81.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

82.     Without authorization, Defendants are publicly displaying and have publicly displayed, by means of digital transmission, the Plaintiffs' copyrighted Cover Art, including without limitation the Cover Art associated with the recordings identified in Exhibit A hereto, in violation of 17 U.S.C. §§ 106(5) and 501.

83.     The infringement of Plaintiffs' rights in the public display of their copyrighted Cover Art constitutes a separate and distinct act of infringement. Each time Defendants displays an unauthorized copy of one of Plaintiffs' copyrighted works of Cover Art in connection with musical works on Defendants' websites, Defendants publicly displays Plaintiffs' works in violation of the Plaintiffs' exclusive right under 17 U.S.C. § 106(5).

84.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Plaintiffs' rights.

85.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from infringement, as will be proven at trial.

86.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

87.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or

measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## FIFTH CLAIM FOR RELIEF

### Inducement of Copyright Infringement

88.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89.    Sound recordings, compositions, and Cover Art owned by Plaintiffs have been and continue to be illegally reproduced, distributed, and publicly performed and displayed without authorization on Defendants' websites in violation of 17 U.S.C. § 501 *et seq.* Plaintiffs own the copyrights, or the exclusive reproduction, distribution, and public performance rights, in the copyrighted works listed on Exhibits A and B and many others that have been infringed through Defendants' websites. Defendants are secondarily liable under the Copyright Act for such infringing acts, including Defendants' users' direct infringement of Plaintiffs' exclusive right of reproduction each time they download a copy of Plaintiffs' works from MP3tunes' servers onto their computer or portable music device. Additionally, in the event it is determined that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public performance and display rights and/or that Defendants' users (and not Defendants) are responsible for directly infringing Plaintiffs' reproduction right in connection with the copy made to the MP3tunes servers, Defendants are secondarily liable under the Copyright Act for such infringing acts.

90.    Defendants operate and maintain their sites with the object of promoting their use to infringe Plaintiffs' copyrighted works. Defendants' inducement of copyright infringement is apparent from, among other things, the predominantly infringing content

available on Defendants' sites; Defendants' open listing and advertising of obviously infringing

works; Defendants' express invitations to copy the most sought-after music for free; Defendants'

failure to make any earnest effort to prevent or filter copyright infringement on their sites; and

Defendants' business model, which is overwhelmingly dependent upon widespread copyright

infringement. Defendants unlawfully induce the direct infringement of Plaintiffs' copyrighted

works, including those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive

rights under the copyright laws of the United States. 17 U.S.C. § 106.

91.     The foregoing acts of infringement by Defendants have been willful,

intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

92.     As a direct and proximate result of Defendants' infringement of Plaintiffs'

copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work

infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at

Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual

damages, including Defendants' profits from infringement, as will be proven at trial.

93.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant

to 17 U.S.C. § 505.

94.     Defendants' conduct is causing and, unless enjoined by this Court, will

continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or

measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements

of their copyrights and exclusive rights under copyright.

## SIXTH CLAIM FOR RELIEF

### Contributory Copyright Infringement

95.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96.     Sound recordings, compositions, and Cover Art owned by Plaintiffs have been and continue to be illegally reproduced, distributed, and publicly performed and displayed without authorization on Defendants' websites in violation of 17 U.S.C. § 501 *et seq.*  Plaintiffs own the copyrights, or the exclusive reproduction, distribution and public performance and display rights, in the copyrighted works listed on Exhibits A and B and many others that have been infringed through Defendants' websites.  Defendants are secondarily liable under the Copyright Act for such infringing acts, including for Defendants' users' direct infringement of Plaintiffs' exclusive right of reproduction each time they download a copy of Plaintiffs' works from MP3tunes' servers onto their computer or portable music device.  Additionally, in the event it is determined that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public performance and display rights and/or that Defendants' users (and not Defendants) are responsible for directly infringing Plaintiffs' reproduction right in connection with the copy made to the MP3tunes servers, Defendants are secondarily liable under the Copyright Act for such infringing acts.

97.     Defendants are liable as contributory copyright infringers.  Defendants have actual and constructive knowledge of the infringing activity that occurs on and through their sites.  Through the creation, maintenance, and operation of the sites and facilities for this infringement, Defendants knowingly cause and/or otherwise materially contribute to the unlawful reproduction, distribution, and public performance and display of Plaintiffs'

copyrighted works, including those listed on Exhibits A and B hereto, in violation of Plaintiffs'
exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

98.    The foregoing acts of infringement by Defendants have been willful,
intentional and purposeful, in disregard of and indifferent to Plaintiffs' rights.

99.    As a direct and proximate result of Defendants' infringement of Plaintiffs'
copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory
damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work
infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at
Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual
damages, including Defendants' profits from infringement, as will be proven at trial.

100.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant
to 17 U.S.C. § 505.

101.    Defendants' conduct is causing and, unless enjoined by this Court, will
continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or
measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502,
Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements
of their copyrights and exclusive rights under copyright.

### SEVENTH CLAIM FOR RELIEF

### Vicarious Copyright Infringement

102.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1
through 101 as if fully set forth herein.

103.    Sound recordings and Cover Art owned by Plaintiffs have been and
continue to be illegally reproduced, distributed, and publicly performed and displayed without
authorization on Defendants' websites in violation of 17 U.S.C. § 501. Plaintiffs own the

copyrights, or the exclusive reproduction, distribution, and public performance and display rights

in the copyrighted works listed on Exhibits A and B and many others that have been infringed

through Defendants' websites. Defendants are secondarily liable under the Copyright Act for

such infringing acts, including for Defendants' users' direct infringement of Plaintiffs' exclusive

right of reproduction each time they download a copy of Plaintiffs' works from MP3tunes'

severs onto their computer or portable music device. Additionally, in the event it is determined

that the source sites (and not Defendants) are responsible for directly infringing Plaintiffs' public

performance and display rights and/or that Defendants' users (and not Defendants) are

responsible for directly infringing Plaintiffs' reproduction right in connection with the copy

made to the MP3tunes' servers, Defendants are secondarily liable under the Copyright Act for

such infringing acts.

       104.    Defendants are vicariously liable for such infringing acts. Defendants

have the right and ability to supervise and control the infringing activities that occur through the

use of their websites, and at all relevant times has derived a direct financial benefit attributable to

the infringement through those sites. Defendants are therefore vicariously liable for the unlawful

reproduction, distribution, and public performance and display of Plaintiffs' copyrighted works,

including those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights

under the copyright laws of the United States. 17 U.S.C. § 106.

       105.    The foregoing acts of infringement by Defendants have been willful,

intentional and purposeful, in disregard of and indifferent to Plaintiffs' rights.

       106.    As a direct and proximate result of Defendants' infringement of Plaintiffs'

copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work

infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at

Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual

damages, including Defendants' profits from infringement, as will be proven at trial.

107. Plaintiffs further are entitled to their attorneys' fees and full costs pursuant

to 17 U.S.C. § 505.

108. Defendants' conduct is causing and, unless enjoined by this Court, will

continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or

measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements

of their copyrights and exclusive rights under copyright.

## EIGHTH CLAIM FOR RELIEF

### Common-Law Copyright Infringement of Pre-1972 Works

109. Plaintiffs repeat and reallege every allegation contained in paragraphs 1

through 108 as if fully set forth herein.

110. Plaintiff Capitol Records, Inc.'s Pre-1972 Works are subject to common-

law copyright protection under the law of the State of New York. As the owner of valid

common-law copyrights in the Pre-1972 Works, this Plaintiff possesses the exclusive rights to

manufacture, copy, perform, sell, distribute, and otherwise exploit the Pre-1972 Works.

111. Plaintiff Capitol Records, Inc. has not granted or licensed to Defendants

any rights with respect to the Pre-1972 Works. Defendants' performance, reproduction, and

distribution of unauthorized copies of the Pre-1972 Works, including but not limited to those

works listed in Exhibit C hereto, constitute infringement of Capitol Records, Inc.'s common-law

copyright rights in the Pre-1972 Works.

112.    As a direct and proximate result of Defendants' wanton and reckless copyright infringement, Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

113.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money damages.  Plaintiff has no adequate remedy at law and are entitled to preliminary and permanent injunctive relief prohibiting Defendants from further violating its rights in the Pre-1972 Works.

## NINTH CLAIM FOR RELIEF

### Unfair Competition as to Pre-1972 Works

114.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1-113 as if fully set forth herein.

115.    Plaintiff Capitol Records, Inc. possesses exclusive ownership interests in and to the Pre-1972 Works and is engaged in the business of selling, distributing and otherwise commercially exploiting the Pre-1972 Works, and licensing others to do the same.  Plaintiff has made a substantial investment of money, creative talents and other resources in order to develop, market, promote, and commercially exploit its sound recordings.

116.    Through the conduct described above, Defendants are violating Capitol Records, Inc.'s rights in the Pre-1972 Works, including but not limited to those recordings listed in Exhibit C hereto, and are guilty of unfair competition under the common law of the State of New York.  By performing, reproducing, distributing, and otherwise commercially exploiting unauthorized copies of the Pre-1972 Works, Defendants compete directly with Plaintiff and its lawful licensees, and further take advantage of and undermine Capitol Records, Inc.'s substantial

creative and financial investment in the Pre-1972 Works. Defendants are willfully, wantonly and unfairly appropriating Plaintiff's rights to the Pre-1972 Works for their own commercial benefit.

117.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

118.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money damages. Plaintiff has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendants from further violating its rights in the Pre-1972 Works.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For a declaration that Defendants have directly and/or secondarily infringed Plaintiffs' copyrights under the Copyright Act and the common law of the State of New York;

B.    For a declaration that such infringement is willful;

C.    For a declaration that Defendants have engaged in unfair competition and other violations of New York state law;

D.    For a preliminary and permanent injunction enjoining Defendants and Defendants' agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly infringing, and/or aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringement of, any of Plaintiffs' copyrights or exclusive rights protected by the Copyright Act or common law, whether now in existence or hereafter created;

E.    For Counts 1 through 7, all damages to which Plaintiffs may be entitled, including Defendants' profits, in such amounts as may be found, or, in the alternative and at Plaintiffs' election, for statutory damages in the maximum amount allowed by law;

F.    For Counts 8 and 9, compensatory damages in such amounts as will be proven at trial, as well as punitive damages;

G.    For Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

H.    For prejudgment interest according to law; and

I.    For such other and further relief as the Court may deem just and proper.

Dated: October 23, 2009                       Respectfully submitted,

                                              JENNER & BLOCK LLP

                                              By: _____

                                              Andrew H. Bart
                                              Carletta F. Higginson
                                              Joseph J. McFadden
                                              919 Third Avenue, 37th Floor
                                              New York, NY 10022
                                              Telephone:  (212) 891-1600
                                              Facsimile:  (212) 891-1699

                                              Steven B. Fabrizio
                                              1099 New York Avenue, N.W., Suite 900
                                              Washington, DC 20001
                                              Telephone:  (202) 639-6000
                                              Facsimile:  (202) 639-6066

                                              *Attorneys for the EMI Music Plaintiffs*

                                              PRYOR CASHMAN LLP

                                              By: _____

                                              Donald S. Zakarin
                                              Frank P. Scibilia

Mark A. Tamoshunas
M. Mona Simonian
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for the EMI Publishing Plaintiffs*

## CERTIFICATE OF SERVICE

Joseph J. McFadden, an attorney, hereby certifies and/or states on oath that the within

*Second Amended Complaint* was served on the below named individual(s) and law firm(s) via

electronic mail and overnight mail delivery on this 23rd day of October, 2009:

> John Dellaportas, Esq.
> Gregory P. Gulia, Esq.
> **DUANE MORRIS LLP**
> 1540 Broadway
> New York, NY 10036
>
> Edward M. Cramp, Esq.
> Michelle Hon, Esq.
> **DUANE MORRIS LLP**
> 101 West Broadway, Suite 900
> San Diego, CA  92101

Joseph J. McFadden