

# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036  Tel: 212-421-4100  Fax: 212-326-0806          www.pryorcashman.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/10

Jacob B. Radcliff
Attorney at Law

Direct Tel: (212) 326-0471
Direct Fax: (212) 798-6316
jradcliff@pryorcashman.com

February 16, 2010



**VIA FACSIMILE**

Honorable William H. Pauley
United States District Court
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  Capitol Records, LLC et al. v. MP3Tunes & Michael Robertson, No. 07-9931 (WHP)(FM)

Dear Judge Pauley:

The following is a joint letter from all the parties regarding two pressing issues. First, the parties request a briefing schedule with regard to the Defendants' objection filed on February 5, 2010 to Magistrate Judge Maas's discovery order dated January 22, 2010 (the "Objection"). The parties have agreed that it would be acceptable for Plaintiffs' response to Defendants' Objection to be due on or before February 23, 2010, and for Defendants' reply memorandum to be filed on March 5, 2010. If the Court agrees with this schedule, we ask that it be so-ordered.

*Second*, Plaintiffs write to request permission to move to disqualify one of Defendants' designated expert witnesses. Pursuant to the Court's Order dated September 10, 2009, the parties' positions on this issue are set forth below.

**Plaintiffs' Position:**

Defendants have designated Linda R. Stamm, CPA, a Managing Principal of the Analysis Group, Inc. in New York. Ms. Stamm and her team were engaged by EMI Music Publishing *during the pendency of this case* -- but prior to being designated as an expert by Defendants -- to perform consulting work for EMI Music Publishing regarding its licensing business. To protect its proprietary information, EMI Music Publishing required the Analysis Group to enter into a confidentiality agreement, a copy of which is annexed hereto as Exhibit A.

During the course of this consultancy, Ms. Stamm and the Analysis Group gained access to virtually all of EMI Music Publishing's confidential files regarding advances, royalties and licensing revenue. The information reviewed by Ms. Stamm and the Analysis Group covered the period precisely at issue in this case: Ms. Stamm and the Analysis Group had unfettered access to EMI Music Publishing's files between the fall of 2005 and June of 2008 (six months after the

# PRYOR CASHMAN LLP

Honorable William H. Pauley
February 16, 2010
Page 2


inception of this action), and the infringement at issue in this litigation began no earlier than February of 2005, when MP3Tunes was incorporated, and continues to the present day.

Ms. Stamm confirmed that her prospective report will address the EMI Music Publishing Plaintiffs' lost revenue, sales and profits in a declaration dated January 29, 2010 and filed on February 8, 2010 in support of Defendants' Objection to Judge Maas's order. In the signed declaration, Ms. Stamm claims to have been retained by Defendants to opine on the "lost sales or other profits that the [Plaintiffs] would have obtained from the sale or license of the infringed work[s]" at issue in this case. Citing a need for the materials "to conduct a proper damages evaluation for Defendants," Ms. Stamm requests that the Court compel Plaintiffs to produce, *inter alia*, data regarding the profits associated with the songs at issue, documents regarding "royalty rates, royalty schedules or other monetary compensation" and documents regarding Plaintiffs' costs attendant to licensing.[1] *See* Stamm Decl. ¶¶ 4-5.

Ms. Stamm's proffer makes it plain, even before her report has been drafted, that any report she might file would concern precisely the same confidential information she reviewed while working as a consultant for the EMI Music Publishing Plaintiffs.[2] Plaintiffs therefore request permission to move for Ms. Stamm's disqualification, and ask that the Court set a briefing schedule for that motion so that opening briefs are filed on March 5, 2010. Plaintiffs also request that Ms. Stamm be precluded from accessing any information designated "Confidential" pursuant to the stipulated protective order until the disqualification motion is determined by the Court.[3]

---

[1] Obviously, if Judge Maas's order is sustained and Ms. Stamm elects to not submit a report opining as to Plaintiffs' actual damages, the parties will notify the Court of such and no disqualification motion need be made. If Defendants do not withdraw their designation of Ms. Stamm, however, Plaintiffs reserve the right to move to strike her testimony upon receipt of any report she may file on any ground suggested by the report.

[2] The parties have stipulated to exchange expert reports within 21 days of the final fact deposition in this case, following Judge Maas's approval of fact depositions continuing beyond the Court's January 29, 2010 deadline.

[3] While the Court has ordered the parties to submit joint letters to the Court, Plaintiffs respectfully request clarification of the process the Court expects the parties to follow. On February 9, Plaintiffs sent Defendants half of a joint letter and requested Defendants provide their portion in response. Defendants responded by stating that they intended to write a response to Plaintiff's portion and then file the letter without giving Plaintiffs an opportunity to review it. While Defendants eventually allowed Plaintiffs to review their portion of the letter, they did so on the condition that Plaintiffs would make no changes. Defendants' approach to joint letters effectively renders their purpose meaningless, as rather than being "joint" the letters become an opportunity for one party to seize the last word for itself. Therefore, Plaintiffs request clarification that joint letters are intended to be jointly approved by the parties in their final form. As a result of Defendants' unilaterally imposed requirement that Plaintiffs make no changes to the letter after receiving Defendants' portion, Plaintiffs intend to respond to Defendants' substantive arguments when briefing the requested motion.

# PRYOR CASHMAN LLP

Honorable William H. Pauley
February 16, 2010
Page 3

**Defendants' Position:**[4]

This letter is just the latest effort by plaintiffs to deny defendants any recourse to address their absurd, frivolous, multi-billion "damages" claim. As set forth more fully in defendants' February 5, 2010 Objection, which is currently pending before this Court, plaintiffs have totally stonewalled all damages discovery in this case, notwithstanding numerous precedents from the Second Circuit Court of Appeals requiring its production. (DI 144-45) Plaintiffs seem to appreciate that defendants' Objection will be granted, and thus are now seeking to disqualify defendants' damages expert on the ground that years ago, EMI Music Publishing retained her "to analyze its financial records applicable to its advances and royalties paid" to songwriters, which has nothing to do with the issues in this case.

Defendants indentified Ms. Stamm as their damages expert on January 8. The EMI Publishing Plaintiffs did not object until several weeks later. (The EMI Record Labels made no timely objection.) Defendants thereafter offered to provide the EMI Publishing Plaintiffs with a declaration from Ms. Stamm attesting to the fact that she had concluded her work for EMI Music Publishing two years ago, and that such work had no relation to her current work for defendants. (See Stamm Decl. annexed hereto as Exhibit B.) The EMI Publishing Plaintiffs refused the offer, and apparently now take the position that their November 8, 2005 Confidentiality Agreement with Analysis Group, Ms. Stamm's employer, precludes her from any future retentions adverse to any party connected with EMI Music Publishing.

Plaintiffs' position is devoid of merit and contrary to law. First, there is nothing in the November 8, 2005 Confidentiality Agreement that prohibits Ms. Stamm, upon the completion of her assignment, from taking on new assignments for parties adverse to the EMI Publishing Plaintiffs, provided she does not use any confidential information provided thereunder. As Ms. Stamm attests, she is not using any of that information in this case. Rather, she will only be using information produced in this case or otherwise publicly available. Indeed, it is because plaintiffs have refused to produce the relevant sales or profit information that defendants are now forced to pursue their Objection with this Court. Basically, plaintiffs are trying to transform a mere confidentiality agreement into a permanent non-compete agreement.

Plaintiffs' position runs afoul of Second Circuit precedent. "Disqualification of an expert is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Baghdady v. Baghdady*, 2007 U.S. Dist. Lexis 84453, *6 (D. Conn. Nov. 15, 2007). Furthermore, "attorney conflict standards do not ... apply to experts who, unlike attorneys, serve generally as sources of information and not necessarily as recipients of confidences." *Bristol-Myers Squibb v. Rhone-Poulenc Rorer, Inc.*, 2000 U.S. Dist. Lexis 321,*10 (S.D.N.Y. Jan. 14, 2000).

---

[4] Defendants object that this letter exceeds the Court's three-page limit, and disputes plaintiffs' account in footnote 3 above. Because of space limitations, defendants shall reserve any further response on that issue.

# PRYOR CASHMAN LLP

Honorable William H. Pauley
February 16, 2010
Page 4

An expert cannot be disqualified based merely on the fact that he or she received confidential information in the past from what is now an adverse party. As an initial matter, the confidential information must be relevant to the case. *See, e.g., Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 2003 U.S. Dist. Lexis 23260, *5 (W.D.N.Y. Dec. 4, 2003) ("The critical question then is whether [witness] received confidential information 'that is relevant' to the current patent litigation"). Plaintiffs fail to satisfy even this initial burden. As the November 8, 2005 Confidentiality Agreement makes clear, Analysis Group was previously retained "to analyze [EMI Music Publishing's] financial records applicable to its advances and royalties paid." The advances and royalties paid to EMI artists are have nothing to do with plaintiffs' claims in this case, nor with the defenses asserted by the defendants.

Moreover, even prior disclosure of relevant confidential information does not permit disqualification of an expert. Rather, disclosure of relevant attorney-client privilege and/or attorney work product is required. *See, e.g., Baghdady*, 2007 U.S. Dist. Lexis 84453, *11 (D. Conn. Nov. 15, 2007) (expert's analysis of documents held not confidential because it did not "entail confidential litigation strategy"); *Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*, 2006 U.S. Dist. Lexis 97164 (C.D. Cal. Nov. 6, 2006) ("Only the disclosure of confidential information that the opposing party would be unable to obtain through discovery should form a basis for disqualification of an expert witness."); *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 312 (S.D.N.Y. 2003) (holding confidential data, analyses and information not to be "confidential information" for disqualification purposes because it was not privileged) *United States ex rel. Cherry Hill Convalescent Ctr. v. Healthcare Rehab Sys.*, 994 F. Supp. 244, 250 (D.N.J. 1997) ("Confidential information, in the context of expert disqualification, includes: discussion of the retaining party's strategies in the litigation, the kinds of expert the party expected to retain, the party's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, and anticipated defenses.").

The EMI Publishing Plaintiffs did not disclose their litigation strategy to Ms. Stamm. They did not disclose anything about this case to her – not the kinds of experts they expected to retain, nor their views of the strengths and weaknesses of this case, nor their anticipated theories of prosecution. Rather, EMI Music Publishing merely disclosed information relevant to artist advances and royalties. Such information is properly discoverable and thus not "confidential information" for the purposes of disqualification.

Ms. Stamm has been working diligently in the past five weeks as defendants' damages expert, and to replace her now would wreak a severe prejudice upon defendants. As plaintiffs' application is without any merit, defendants ask that it be denied forthwith.

**PRYOR CASHMAN LLP**

Honorable William H. Pauley
February 16, 2010
Page 5

Respectfully submitted,

*[signature]*
Jacob B. Radcliff
*On behalf of All Plaintiffs*

*[signature]*
John Dellaportas
*On behalf of Defendants*

Enclosures

cc:  All Counsel of Record (via email attachment)

Application Granted. The court will hold a telephone conference on March 3, 2010 at 2:00 p.m.

SO ORDERED:

*[signature]*
WILLIAM H. PAULEY III U.S.D.J.
2/19/10

**PRYOR CASHMAN LLP**

# EXHIBIT A

November 8, 2005

Analysis Group, Inc.
111 Huntington Avenue, 10th Floor
Boston, MA 02199

Re: <u>Analysis work for EMI Music Publishing</u>

Ladies and Gentlemen:

You have been contracted by EMI Music Publishing to analyze its financial records applicable to advances and royalties paid.

In connection with this work, you hereby acknowledge that you have access to the books and records and/or other proprietary information of EMI, insofar as the same pertain to the analysis work.

You agree that the material shall be kept confidential by you and your employees, representatives and agents and shall not, except as hereinafter provided, without the prior written consent of EMI, be disclosed to or used by you or any person, partnership, corporation, association or other entity in any manner whatsoever, in whole or in part, and shall not be used or disclosed other than for the sole purpose of conducting the analysis in accordance with the agreement. Moreover, you further agree to transmit the material only to those of your partners, principles and employees who need to know such information for the sole purpose of conducting the analysis and who shall (i) be advised by you of this Confidentiality Agreement and (ii) agree to be bound by the provisions hereof. You shall be responsible, without limitation, for any breach or threatened breach of this Confidentiality Agreement by any of your employees, representatives and agents.

If you are in agreement with the foregoing, please sign where indicated below.

Very truly yours,

EMI MUSIC PUBLISHING

By: _____J. Kelly_____

Accepted and agreed to as of
the date first above written:

_____
Analysis Group, Inc.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAPITOL RECORDS, LLC; CAROLINE )
RECORDS, INC.; EMI CHRISTIAN MUSIC )
GROUP INC.; PRIORITY RECORDS LLC; )
VIRGIN RECORDS AMERICA, INC.; )
BEECHWOOD MUSIC CORP.; COLGEMS-EMI )
MUSIC INC.; EMI APRIL MUSIC INC.; EMI )
BLACKWOOD MUSIC; EMI FULL KEEL )
MUSIC; EMI GOLDEN TORCH MUSIC CORP.; )
EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, )
INC.; EMI VIRGIN SONGS, INC., EMI AL )
GALLICO MUSIC CORP., EMI ALGEE MUSIC )
CORP., EMI FEIST CATALOG, INC., EMI GOLD )
HORIZON CORP., EMI GROVE PARK MUSIC, )
INC., EMI HASTINGS CATALOG, INC., EMI )
MILLS MUSIC, INC., EMI MILLER CATALOG, )
INC., EMI ROBBINS CATALOG, INC., EMI U )
CATALOG, INC., EMI UNART CATALOG, INC., )
JOBETE MUSIC CO., INC., SCREEN GEMS-EMI )
MUSIC, INC., STONE AGATE MUSIC, and )
STONE DIAMOND MUSIC, )
   )
                            Plaintiffs, )
               v. )
   )
MP3TUNES, INC., and MICHAEL ROBERTSON, )
   )
                            Defendants. )

CIVIL ACTION NO. 07-Civ. 9931 (WHP)
ECF Case

**DECLARATION OF
LAURA B. STAMM**

---

I, Laura B. Stamm, hereby declare:

1.   I am a Managing Principal of Analysis Group. I have been retained by the defendants in the instant case to evaluate whether the plaintiffs suffered any damages as a result of the activities that occur on the websites www.MP3tunes.com and www.Sideload.com, and, if so, to calculate the extent of any such alleged damages. A true and correct copy of my current curriculum vitae is attached hereto as Exhibit A.

2. I understand that certain of the plaintiffs in this case (the "EMI Publishing Plaintiffs") are seeking to disqualify me, based on prior consulting services I provided to EMI Music Publishing, in an unrelated matter. That retention concluded in 2008.

3. As part of that retention, I was provided certain confidential materials by EMI Music Publishing pursuant to a November 8, 2005 agreement (the "Confidentiality Agreement). I did not receive any attorney-client privileged documents or information. Rather, I reviewed certain business records relating to EMI Music Publishing's revenue and payment streams from its publishing contracts with songwriters. Such materials have no bearing on the work I am undertaking for defendants in this case. Further, I have not reviewed such materials since the completion of my assignment in 2008, and I have offered, through defendants' counsel, to return or destroy all such materials.

4. For the analysis I am undertaking for defendants, I will be using only materials and information that are produced in this case or that are publicly-available. There is nothing in the Confidentiality Agreement that restricts me from taking on retentions adverse to the EMI Publishing Plaintiffs after the completion of my retention, nor would I ever have agreed to such a provision. I am completely confident I can represent defendants in this case without violating any provision of the Confidentiality Agreement or any ethical rule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 16, 2010
New York, NY

By: _____
LAURA B. STAMM