

RECEIVED AUG 23 2010 CHAMBERS OF WILLIAM H. PAULEY U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/2010

**Duane Morris®**  FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

GREGORY P. GULIA
DIRECT DIAL: 212.692.1027
E-MAIL: gpgulia@duanemorris.com

www.duanemorris.com

August 20, 2020

**BY HAND**

The Hon. William H. Pauley, III
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Application Granted. The Court will hold a conference on September 23, 2010 at 12:00 p.m. addressing both parties' proposed matters.*

**SO ORDERED:**

WILLIAM H. PAULEY III U.S.D.J.
9/3/2010

Re:  *Capitol Records, LLC et al. v. MP3tunes, Inc. et ano*, 07 Civ. 9931

Dear Judge Pauley:

Pursuant to Individual Rule of Practice 3(A) and the June 28, 2010 Order, we write on behalf of defendants to seek leave to move for summary judgment.

Defendants seek summary judgment based on Sections 512(c) and (d) of the Digital Millennium Copyright Act (the "DMCA"). Congress enacted the DMCA to safeguard the development of the Internet, by immunizing Internet Service Providers such as MP3tunes from claims of copyright infringement based on users' activities. The undisputed facts demonstrate MP3tunes' entitlement to DMCA immunity. Additionally, defendants seek summary judgment based on plaintiffs' failure to prove, inter alia: ownership of many of the works at issue; that there was any copying within the meaning of the Copyright Act; any infringement of any rights of Plaintiffs; any contributory or vicarious copyright infringement; any common-law copyright infringement; and the required elements of their "unfair competition" claim. Lastly, Michael Robertson seeks summary judgment based on lack of personal jurisdiction.

The following facts are undisputed: MP3tunes operates two websites, MP3tunes.com, which allows users to store their music collections "in the cloud," and Sideload.com, which allows users to search for free music downloads available on the Internet. Plaintiffs are music labels and music publishing companies which sell and distribute music. In September 2007, EMI Music Group North America ("EMI"), which is not a plaintiff in this action, sent a letter to MP3tunes as a supposed take-down notice under the DMCA, identifying approximately 350 alleged infringements. MP3tunes promptly disabled access to those 350 links and offered to remove any other allegedly infringing links if EMI would identify them. EMI refused to do so, claiming that its list was merely "representative." It demanded that MP3tunes remove all of EMI's copyrighted

DUANE MORRIS LLP

1540 BROADWAY   NEW YORK, NY 10036-4086         PHONE: 212.692.1000   FAX: 212.692.1020

DuaneMorris

The Hon. William H. Pauley, III
August 20, 2010
Page 2

works, directing MP3tunes to the EMI website and the few artists listed there. In October 2007, EMI and EMI Entertainment World each sent further letters identifying alleged infringements and, again, MP3tunes promptly disabled the links to the songs identified.

That should have been the end of the matter. Instead, on November 9, 2007, plaintiffs brought the instant action. Plaintiffs have since put defendants through almost three years of fact and expert discovery, which has only served to confirm the lack of viability of their causes of action. Indeed, the last three years have seen plaintiffs' theories rejected in court after court.[1]

Summary judgment on plaintiffs' copyright infringement claims is appropriate because Section 512 of the DMCA provides MP3tunes with a safe harbor from liability for monetary relief for any allegedly infringing acts occurring on its sites at the direction of its users. *See Viacom Int'l v. Youtube*, 2010 U.S. Dist. Lexis 62829 (S.D.N.Y. June 23, 2010) (awarding summary judgment to internet service provider). The DMCA provides such protection because: "In the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability." *Id.* at *39 (citation omitted).

A service provider qualifies for safe harbor: "if it (1) does not know of the infringement; or (2) acts expeditiously to remove or disable access to the material when it (a) has actual knowledge, (b) is aware of facts or circumstances from which infringing activity is apparent, or (c) has received DMCA-compliant notice; and (3) either does not have the right and ability to control the infringing activity, or—if it does—that it does not receive a financial benefit directly attributable to the infringing activity." *Io Group. Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1146 (N.D. Cal. 2008) (awarding summary judgment to Veoh because plaintiff only pointed to a general awareness of infringing activity at Veoh's website, not specific acts of infringement). "In all of the published cases addressing the knowledge component of § 512(c), the copyright holder has provided evidence that it notified the service provider of the infringing material." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1007 (W.D. Wash., 2004). Here, the undisputed facts establish that, to the extent plaintiffs provided proper DMCA notices, MP3tunes promptly removed access to all allegedly infringing material.

Plaintiffs have attempted numerous end-runs around the DMCA, all of which were recently rejected in the strikingly similar case of *Viacom Int'l v. Youtube*, 2010 U.S. Dist. Lexis 62829 (S.D.N.Y. June 23, 2010). There, the copyright holder, Viacom, argued that the DMCA did not immunize the Internet Service Provider, Youtube, because: (a) Youtube allegedly had knowledge of infringing activity and failed to act expeditiously to stop it; (b) it allegedly received a financial benefit directly attributable to the infringing activity and had the right and ability to control such activity; and (c) defendants' infringement allegedly did not result "solely from providing storage at the direction of a user or any other Internet function specified in section 512." *Id.* at *9.

---

[1] Because plaintiffs' view that search engines and storage systems violate copyright law would jeopardize the operation of the Internet, including cloud computing, several major companies and organizations have told us they would like to submit amicus briefs opposing Plaintiffs' expansive and distorted view of copyright law.

DuaneMorris

The Hon. William H. Pauley, III
August 20, 2010
Page 3

Judge Stanton rejected each of these arguments, holding that the DMCA safe harbor applied because Viacom failed to notify Youtube of specific acts of infringement. *Id.* Judge Stanton held that term "storage at the direction of the user" must be interpreted broadly to include activities that "flow from the material's placement on the providers' system or network." *Id.* at *38. "If providing access could trigger liability without the possibility of DMCA immunity, service providers would be greatly deterred from performing their basic, vital and salutary function—namely, providing access to information and material for the public." *Id.* at *40 (citation omitted).

In the instant case, twenty-six of the plaintiffs in this action never bothered to send MP3tunes a DMCA notification in any form. As for the three remaining plaintiffs, Capitol Records, LLC, Priority Records LLC, and Virgin Records America, Inc. ("Plaintiffs"), which arguably did send such a notice, there is no dispute that MP3tunes promptly disabled access to all of the identified links. As in *Viacom*, the DMCA's safe harbor provisions therefore protect MP3tunes against all of Plaintiffs' claims of direct and secondary copyright infringement. Equally, as in *Viacom*, any claims by Plaintiffs that MP3tunes is liable for the technical means in which it stored information fail because the storage flowed from the users' direction. The DMCA does not allow copyright owners to determine the technology Internet Service Providers use to store data.

Summary judgment is also appropriate for plaintiffs' claim for unfair competition as to "Pre-1972 Works." A claim for unfair competition "requires competition in the marketplace or similar actions designed for commercial benefit or deception of the public." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 563 (2005) (citations omitted). Here, there is no dispute that MP3tunes' storage and search services do not compete with plaintiffs' goods and services. Nor is there any evidence that MP3tunes deceived the public.

Lastly, Michael Robertson, an individual defendant, seeks to file a separate motion for summary judgment on the lack of personal jurisdiction over him. An individual defendant is not subject to New York's long-arm statute unless plaintiffs prove a corporate defendant is acting as his or her agent. *See, e.g., Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467-72 (1988). To prove such agency, Plaintiffs must show that Mr. Robertson actually benefits from allegedly infringing activities. *Id.* Although the Court previously found Plaintiffs' jurisdictional arguments to have been adequately pled, the evidence has now debunked those allegations.

Because Plaintiffs assert nine separate causes of action based on multiple theories, MP3tunes respectfully asks for an extension of Your Honor's page limit to 50 pages for its motion. We thank the Court for its consideration.

Respectfully submitted,

Gregory P. Gulia

cc:   All Counsel of Record (via email)