**DUANE MORRIS** LLP
Gregory P. Gulia
John Dellaportas
Vanessa C. Hew
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000
 -and-
Edward M. Cramp (*pro hac vice*)
Michelle Hon (*pro hac vice*)
101 West Broadway, Suite 900
San Diego, CA 92101
(619) 744-2200

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI FEIST CATALOG, INC., EMI GOLD HORIZON CORP., EMI GROVE PARK MUSIC, INC., EMI HASTINGS CATALOG, INC., EMI MILLS MUSIC, INC., EMI MILLER CATALOG, INC., EMI ROBBINS CATALOG, INC., EMI U CATALOG, INC., EMI UNART CATALOG, INC., JOBETE MUSIC CO., INC., JOBETE MUSIC CO., INC., SCREEN GEMS-EMI MUSIC, INC., STONE AGATE MUSIC, and STONE DIAMOND MUSIC, <br><br>               Plaintiffs, <br><br>      v. <br><br> MP3TUNES, LLC. And MICHAEL ROBERTSON <br>               Defendants. | CIVIL ACTION NO. 07-Civ. 9931 (WHP) <br> ECF Case <br><br><br><br><br><br> **STATEMENT OF UNDISPUTED FACTS AS TO WHICH THERE IS NO MATERIAL ISSUE TO BE TRIED** |

**TABLE OF CONTENTS**

**Page**

I.    MP3TUNES PROVIDES USER-DIRECTED INTERNET SERVICES ..........................1

II.   MP3TUNES MAINTAINS A COMPREHENSIVE POLICY AND PRACTICE
      OF PROHIBITING INFRINGING ACTIVITY ..............................................................8

III.  MP3TUNES COMPLIED WITH THE DMCA IN RESPONDING TO TAKE-
      DOWN NOTICES FROM EMI GROUP NORTH AMERICA AND EMI
      ENTERTAINMENT WORLD, INC. ..........................................................................11

IV.   MP3TUNES HAD NO KNOWLEDGE OF THE ALLEGED INFRINGEMENTS
      THAT ARE AT ISSUE IN THIS LITIGATION. ........................................................13

      A.   MP3tunes Had No Actual Knowledge of the Specific Alleged
           Infringements That Are at Issue in This Litigation. ...............................13

      B.   MP3tunes Had No Apparent Knowledge of the Specific Alleged
           Infringements at Issue in this Litigation. ..............................................14

           1.   MP3tunes Did Not Know Which of Plaintiffs Purported Works Were
                Allegedly Infringed until More than One Year after the Plaintiffs Filed
                Suit. ...............................................................................................14

           2.   MP3tunes Cannot Know Which Downloads on the Internet may be
                Infringing and which Are Not Infringing. .................................15

V.    MP3TUNES DERIVES NO DIRECT FINANCIAL BENEFIT FROM ANY
      ALLEGED INFRINGEMENT ..................................................................................22

**LEGEND**

For the purposes of Defendants' Statement of Undisputed Facts in Support of Its Motion for Summary Judgment, the following abbreviations shall be used:

1. "DR Dec." shall refer to the October 29, 2010 Declaration of Douglas Reese in Support of Defendants' Motion for Summary Judgment.

2. "MR Dec." shall refer to the October 29, 2010 Declaration of Michael Robertson in Support of Defendants' Motion for Summary Judgment.

3. "GPG Dec." shall refer to October 29, 2010 Declaration of Gregory P. Gulia in Support of Defendants' Motion for Summary Judgment.

4. "SP Dec." shall refer to the October 29, 2010 Declaration of Sarah Peyronnel in Support of Defendants' Motion for Summary Judgment.

5. "DM Dec." shall refer to the October 29, 2010 Declaration of Derek Mekkawy in Support of Defendants' Motion for Summary Judgment.

## STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(a) of the United States District Court for the Southern District of New York, defendants MP3tunes, LLC, ("MP3tunes") and Michael Robertson (hereinafter "Defendants") hereby submit the following Statement of Material Facts As To Which There is No Genuine Issue to Be Tried.

## I. MP3TUNES PROVIDES USER-DIRECTED INTERNET SERVICES

| Undisputed Fact | Evidence |
|---|---|
| 1. MP3tunes operates two websites – MP3tunes.com and Sideload.com. | DR Dec. ¶ 2.<br><br>MR Dec. ¶ 2. |
| 2. The function of MP3tunes.com does not depend upon the functioning of Sideload.com. If MP3tunes.com were shut down, Sideload.com would still function. If Sideload.com were shut down, MP3tunes.com would still function. | DR Dec. ¶ 2.<br><br>GPG Dec. ¶ 17, Ex. P (Deposition of Ellis Horowitz taken on August 19, 2010 ("Horowitz Trans.") 35:5-7) (Mr. Horowitz was designated as a Plaintiffs' expert witness concerning the technology behind MP3tunes' services). |
| 3. Users store music files at MP3tunes.com. This service is called "cloud storage" which means that users upload content to MP3tunes' servers and access the data via the Internet instead of storing the data on a local hard drive. | DR Dec. ¶ 3.<br><br>MR Dec. ¶ 3. |
| 4. Microsoft offers a cloud storage service with its Microsoft SkyDrive, Google offers a cloud storage service with its Google Docs, and Apple offers a cloud storage service with its MobileMe iDisk. | DR Dec. ¶ 3. |
| 5. A user cannot store music files at MP3tunes.com unless he or she creates an account using a valid email address and | DR Dec. ¶ 4. |

| Undisputed Fact | Evidence |
|---|---|
| password. | |
| 6. A user can store music files at MP3tunes.com by selecting songs located on their local drive and uploading them to their locker. | DR Dec. ¶ 4. |
| 7. A user can also store music files at MP3tunes.com by downloading software that will upload songs from a music library on the user's local hard drive, such as iTunes, via a synchronization process. | DR Dec. ¶ 4. |
| 8. A user can also store music files at MP3tunes.com by downloading files from third party websites like spin.com or mtv.com. | DR Dec. ¶ 4. |
| 9. The process of downloading a file from a third party website to a locker is called "sideloading." | DR Dec. ¶ 4. |
| 10. MP3tunes does not control which songs users choose to store. | DR Dec. ¶ 5. |
| 11. MP3tunes' employees do not monitor the content that users upload to their lockers and it would be impossible to do so given that there are roughly 700,000 different users and millions of files. | DR Dec. ¶ 5. |
| 12. The series of events that is triggered by a user's decision to store a music file to MP3tunes.com and ends with the storage of that file, is fully automated and does not involve the intervention or active involvement of MP3tunes personnel. | DR Dec. ¶ 5. |
| 13. In order for a user to listen to the music that he or she has stored to the MP3tunes servers, the user must first log-in to MP3tunes.com using his or her email address and password. | DR Dec. ¶ 7. |

2

| Undisputed Fact | Evidence |
|---|---|
| 14. The user must then initiate the listening process by selecting the desired song and clicking on an icon. | DR Dec. ¶ 7. |
| 15. In response to the user's request, the MP3tunes system plays back the requested file from its servers over the Internet to the user's computer or other Internet-connected device. | DR Dec. ¶ 7. |
| 16. MP3tunes was conceived with the express intent to provide lawful services to music fans. | MR Dec. ¶ 12. |
| 17. MP3tunes' cloud-based storage service is not a peer-to-peer file sharing service. | DR Dec. ¶ 8.<br><br>MR Dec. ¶ 13.<br><br>GPG Dec. ¶ 17, Ex. P (Horowitz Trans. at 27:20) |
| 18. It is not possible to transfer or share music files between lockers. | DR Dec. ¶ 8. |
| 19. A user's locker cannot be accessed by anyone other than the user because lockers are password-protected. | DR Dec. ¶ 8.<br><br>GPG Dec. ¶ 26, Ex. Y (Richards Trans. 85:21-86:11) |
| 20. Sideload.com enables users to search for music downloads that are available on the Internet. To search for a music download on Sideload.com, the user must enter a search query at Sideload.com. The software program then locates corresponding links. | DR Dec. ¶ 9. |
| 21. Sideload.com allows users to search for free music downloads that are available on the Internet. | DR Dec. ¶ 9. |
| 22. The links to music sites generated by searching Sideload.com are largely the same as those that can be found by running tailored searches on standard search | DR. Dec. ¶ 9. |

| Undisputed Fact | Evidence |
|---|---|
| engines such as Google or Microsoft Bing. | |
| 23. Free music downloads are made available on the Internet by small independent labels seeking inexpensive ways of promoting their music, as well as all the major music companies, including the Plaintiffs in this action. | MR Dec. ¶ 20-21.<br><br>GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 14:24-25; 45:18-22). |
| 24. The user may store the downloadable files that are made available on third party websites by clicking the Sideload icon in the search results. | DR Dec. ¶ 11. |
| 25. Music files are not stored at Sideload.com; Sideload.com merely links to third party websites.  Thus, when a downloadable file is removed from a source website, like Amazon.com or MTV.com, the link on Sideload.com becomes inoperable. | DR Dec. ¶ 11.<br><br>GPG Dec. ¶ 17, Ex. P (Horowitz Trans. at 27:20). |
| 26. Sideload.com does not search user lockers for songs. | DR Dec. ¶ 11. |
| 27. Software at Sideload.com automatically generates "Most Popular" tracks by based on the number of times users click on the links that are available at Sideload.com. | DR Dec. ¶ 12. |
| 28. Software at Sideload.com automatically generates the "Newly Added" track feature by tracking new links that appear as a user adds links to the Sideload.com database. | DR Dec. ¶ 12. |
| 29. Neither the "Newly Added" list nor the "Most Popular" lists require the intervention of MP3tunes personnel. | DR Dec. ¶ 12. |
| 30. Sideload.com also provides a list of "Featured" tracks, a list of special promotions available on the Internet. | DR Dec. ¶ 12. |
| 31. The "Sideload Plug-in" is a browser plug-in that enables users to identify | DR Dec. ¶ 13. |

| Undisputed Fact | Evidence |
|---|---|
| downloadable music files as they surf the Web. | |
| 32. This plug-in operates in much the same way that Mozilla's Firefox Plug-in facilitates music downloads to the Google Docs storage service.  Namely, it merely enables the user to more easily store already downloadable files the user finds on third party websites by clicking the Sideload icon next to the search results. | DR Dec. ¶ 13. |
| 33. The Sideload Plug-in does not circumvent any access restrictions to websites.  For example, if a user name or password are required to access a page where a music file is available for download, the Plug-in will no circumvent those access restrictions. | DR Dec. ¶ 13. |
| 34. Sideload Plug-in does not enable users to convert streaming files to downloadable files, nor does any other function offered by MP3tunes convert streaming files to downloadable files. | DR Dec. ¶ 14.<br><br>GPG Dec. ¶ 17, Ex. P (Horowitz Trans. at 75:10-15). |
| 35. Additionally, the Sideload Plug-in does not circumvent any technical restrictions on the music files that are designed to restrict or block a music file from being downloaded such as digital rights management (DRM) protections, nor does any other function offered by MP3tunes. | DR Dec. ¶ 13. |
| 36. MP3tunes uses the MogileFS open source file system software distributed by Danga Interactive, as a base program in connection with efficiently storing and retrieving of the millions of audio files uploaded or sideloaded to MP3tunes servers by its 700,000 users. | DR Dec. ¶ 15. |
| 37. The Mogile FS storage system is an example of a Content-Addressable Storage (CAS) solution.  CAS solutions store | DR Dec. ¶ 15. |

| Undisputed Fact | Evidence |
|---|---|
| information based on its content rather than by its storage location, using a unique hash tag that is created based on the content of the file.  This allows the system to store and quickly access large volumes of data, while ensuring that the retrieved content is the exact bit-for-bit identical content that was originally stored. | |
| 38. CAS is not new or unique to MP3tunes; it has been used since the 1980s. | DR Dec. ¶ 15. |
| 39. CAS systems are considered to be the best practice for use in modern storage systems and are prevalent in many modern operating systems. | DR Dec. ¶ 15. |
| 40. The unique hash tag is created using a mathematical formula that results in a unique numeric sequence that is created based on the content of the data that is stored.  A music file generally consists of two blocks of data that will be used to create this hash tag:  (1) the lower level block made up of the bits representing the encoded music; and (2) the metadata that provides information about the track, i.e., its title, artist, and/or album and sometimes information about the user.  Some files will also include additional data such as album art. | DR Dec. ¶ 16. |
| 41. When two or more bit-identical blocks of data are uploaded to the storage system, those identical blocks of data are assigned the same hash tag. | DR Dec. ¶ 16. |
| 42. Identical bit identical representations are rare for several reasons:  (1) the bit rates vary when users burn CDs, even when the same CD is burned and (2) online versions of songs often vary slightly in their bit sequences. | DR Dec. ¶ 16. |

| Undisputed Fact | Evidence |
|---|---|
| 43. Only about 3% of the data stored on MP3tunes' servers have had an identical bit sequence. | DR Dec. ¶ 16. |
| 44. After the data is stored and assigned a hash tag, the MogileFS system uses a complex efficient storage algorithm to manage the stored data blocks. | DR Dec. ¶ 17. |
| 45. Copying and de-duplication of data within a storage system occurs constantly behind the scenes as a basic function of how computers operate. | DR Dec. ¶ 17. |
| 46. In the process of handling and/or moving raw data blocks within a computer system, it is inevitable that multiple copies of such data blocks are made and in some case deleted. Yet these duplicate blocks of data do not constitute different copies of the same file; they are just different instances of the same content just as the block of data may have to be simultaneously present in several places at once: as a physical copy on a device, in the cache of the device, in the memory of a computer accessing the device or on the wires and routers connecting a remote computer accessing the data. In order to operate without crashing, storage systems are constantly moving blocks of data from one area of storage to another and cleaning up duplicate copies in order to balance the amount of data on each server to prevent server failure and data loss. | DR Dec. ¶ 17. |
| 47. What is retrieved from the system is the user's own unique copy, that is, a bit-for bit identical copy of the file that was stored in the user's locker. | DR Dec. ¶ 17. |

## II.    MP3TUNES MAINTAINS A COMPREHENSIVE POLICY AND PRACTICE OF PROHIBITING INFRINGING ACTIVITY

| Undisputed Fact | Evidence |
|---|---|
| 48. It is made clear in the MP3tunes Terms and Conditions that MP3tunes takes copyright and other intellectual property laws very seriously and expects its users to do the same. | MR Dec. ¶ 5. |
| 49. Before permitting users to store music at MP3tunes.com, MP3tunes requires its users to agree to Terms and Conditions, which at some places on its websites are referred to as its Terms of Use ("Terms and Conditions"). | MR Dec. ¶ 6. |
| 50. MP3tunes' Terms and Conditions state, *inter alia*: "You agree that you will not upload music and content, and will not request that any music or content be uploaded to your account maintained on the Site, that infringes the copyright or other intellectual property rights of any third party." | MR Dec. ¶ 6, Ex. A (MP3tunes Terms and Conditions). |
| 51. MP3tunes employees who respond to user queries remind users that MP3tunes does not tolerate infringement. | MR Dec. ¶ 7, Ex. B (Correspondence between MP3tunes and its users wherein MP3tunes instructs users that infringement is not permitted). GPG Dec. ¶ 23, Ex. V (Deposition of Kendal Dawson taken on Jan. 22, 2010 ("Dawson Trans."), 236:24-242:10) (Mr. Dawson is a current employee at MP3tunes who is responsible, *inter alia*, for responding to customer service tickets and forum postings). |
| 52. The Terms and Conditions provide the following:  "MP3tunes respects the intellectual property of others, and we ask our users to do the same. The Digital Millennium Copyright Act of 1998 (the DMCA) provides recourse for copyright owners who believe that material appearing on the Internet infringes their rights under | MR Dec. ¶ 9, Ex. A. |

| | |
|---|---|
| U.S. copyright law. If you believe in good faith that materials hosted by MP3tunes infringe your copyright (for example, materials stored by MP3tunes for a subscriber or on one of our Forums), you (or your agent) may send us a notice requesting that the material be removed, or access to it blocked . . .  Notices and counter-notices with respect to the Site should be sent to MP3tunes, Inc, 5960 Cornerstone Court, Suite 100, San Diego, CA 92121, Attn: Michael Robertson." | |
| 53. MP3tunes copyright policy allows copyright owners to notify MP3tunes of infringing activities discovered at MP3tunes.com or Sideload.com by sending a DMCA takedown notice to its designated DMCA agent. | MR Dec. ¶ 9. |
| 54. MP3tunes has formally registered a DMCA agent with the Copyright Office who is the designated agent to receive notices of alleged infringement. | MR Dec. ¶ 9. |
| 55. MP3tunes' DMCA agent's contact information is accessible through MP3tunes' Terms and Conditions and through MP3tunes' "Frequently Asked Questions" page. | MR Dec. ¶ 8. |
| 56. MP3tunes removes or disables access to allegedly infringing content when it or its agent receives a DMCA takedown notice that identifies the material that is claimed to be infringing or to be the subject of infringing activity and provides information reasonably sufficient to permit MP3tunes to locate the material. | MR Dec. ¶ 10, Ex. C (Examples of a take-down notices to which MP3tunes responded by disabling access to the allegedly infringing material). GPG Dec. ¶ 24, Ex. W (Deposition of Sharmaine Lindal taken on March 31, 2010 ("Lindal Trans."), 42:11-43:16;  43:18-44:5; 91:8-25) (Mr. Lindal is a former employ of MP3tunes). GPG Dec. ¶ 25, Ex. X (Deposition of Julian Kraus taken on March 13, 2010 ("Kraus Trans."), 11:14-16; 12:6–14:6; 15:6-12; 18:15-19:24; 21:10-22:14) (Mr. Kraus is a former |

| | |
|---|---|
| | employ of MP3tunes). |
| | GPG Dec. ¶ 26, Ex. Y (Deposition of Emily Richards taken on April 10, 2008 ("Richards Trans."), 71:8–72:22; 81:17–82:6)(Ms. Richards is the former president of MP3tunes). |
| 57. MP3tunes has implemented and informed its users of its Repeat Infringer Policy, which is clearly set forth in its Terms and Conditions, to which users must agree prior to creating an account with MP3tunes. | MR Dec. ¶ 11. |
| 58. The Repeat Infringer Policy in the Terms and Conditions state, *inter alia*: "Under the appropriate circumstances, it is MP3tunes's policy to remove and/or disable access from MP3tunes to web pages of repeat infringers, to terminate subscribers and account holders who are repeat infringers . . . " | MR Dec. ¶ 11. |
| 59. A link to MP3tunes' Terms and Conditions is on each and every page of its websites MP3tunes.com Sideload.com, wherein MP3tunes encourages copyright owners to notify its designated DMCA agent of any suspected infringing files. | MR Dec. ¶ 7-8. |
| 60. MP3tunes has never allowed its users to engage in infringing activity and actively prevents users from engaging in copyright infringement on its websites. | MR Dec. ¶ 13. |
| 61. MP3tunes terminated user accounts for users who were identified to be infringing, disabling access to the locker and deleting its contents. MP3tunes has terminated 153 different accounts in accordance with its policies. | GPG Dec. ¶ 23, Ex. V (Dawson Trans. 242:11–243:10). GPG Dec. ¶ 24, Ex. W (Lindal Trans. 239:15-240:14). MR Dec. ¶ 11, Ex D. |
| 62. MP3tunes makes each locker password-protected to prohibit users from accessing lockers that they do not own. | MR Dec. ¶ 12. |
| 63. MP3tunes' Terms and Conditions provide: | MR Dec. ¶ 12, Ex. A (Terms and Conditions). |

| | |
|---|---|
| "You will be responsible for the confidentiality and use of your email address and password and you agree not to provide, disclose, transfer or resell your email address and password or use of or access to the Site to any third party.  If you have reason to believe that your account with us is no longer secure, you must promptly change your password by visiting http://shop.mp3tunes.com/forgotPassword.php and immediately notify us of the problem by contacting us at http://ww.mp3tunes.com/cb/contact/.  You are entirely responsible for maintaining the confidentiality of your email address and password and for any and all activities that ARE CONDUCTED through your account." | |
| 64. MP3tunes does not encourage infringement by informing its users in its Terms and Conditions that file sharing is not tolerated. | MR Dec. ¶ 12. |
| 65. MP3tunes does not market itself to the users of file sharing websites. | MR Dec. ¶ 13. |
| 66. MP3tunes tries to prevent infringement by designing its system with access controls that limit the number of simultaneous log-ins to a locker account. | MR Dec. ¶ 14. <br><br> GPG Dec. ¶ 26, Ex. Y (Richards Trans. 86:18-87:2). |
| 67. MP3tunes also blocked entire domains for third party websites that were identified as infringing. | MR Dec. ¶ 15, Ex. E (Examples of ISP address suspected of file sharing). |

## III.   MP3TUNES COMPLIED WITH THE DMCA BY RESPONDING TO TAKE-DOWN NOTICES FROM EMI GROUP NORTH AMERICA AND EMI ENTERTAINMENT WORLD, INC.

| | |
|---|---|
| 68. On September 4, 2007 counsel for EMI Music Group North America, which is not a plaintiff in this action, sent MP3tunes a letter, in which it identified specific links to be found on the website Sideload.com as allegedly unauthorized works but also | MR Dec. ¶ 16, Ex. F (EMI Music Group North America's letter of September 4, 2010). |

| | |
|---|---|
| stated that MP3tunes was obligated to remove all of EMI's copyrighted works. | |
| 69. MP3tunes removed the links identified in the September 4, 2007 letter from EMI Music Group North America but informed counsel for EMI Music Group North America. | MR Dec. ¶ 16, Ex. F.<br><br>GPG Dec. ¶ 25, Ex. X (Kraus Trans. 24:4-19; Ex. 5; Ex. 6). |
| 70. In addition to the approximately 350 song titles referenced in its letter, EMI Music Group North America represented that MP3tunes was "obligated to remove all of EMI's copyrighted works, even those not specifically identified on the attached" and provided an Internet link listing certain EMI artists. | MR Dec. ¶ 17, Ex. F. |
| 71. However, EMI Music Group North America provided no means of determining which specific songs of these artists were in question and where links to these songs were located. | MR Dec. ¶ 17, Ex. F. |
| 72. In a responding letter dated September 13, 2007, MP3tunes offered to remove any other infringing links if EMI would merely identify them: "[i]f you provide another list with additional songs to which EMI and/or its affiliates represent they own the copyrights, MP3tunes will promptly remove those songs from availability for sideloading as well." | MR Dec. ¶ 17, Ex. G. |
| 73. In a follow-up letter dated September 18, 2007, EMI Music Group North America refused to do so, claiming its merely representative list had shifted the burden to MP3tunes to determine, among the millions of works that could be linked to from Sideload.com, which ones belonged to EMI Music Group North America and should be disabled. | MR Dec. ¶ 17, Ex. H. |
| 74. While it was plainly impossible to comply with this request, MP3tunes continued | MR Dec. ¶ 17. |

| | |
|---|---|
| trying to work out a resolution. | |
| 75. On or around October 25, 2007, MP3tunes received two further cease and desist letters, one from "EMI Music Group North America" and the other from "EMI Entertainment World" maintaining the position that MP3tunes was obligated to remove not only the specific songs identified in their take-down notices but also all other "EMI" songs, which could only be identified by conducting investigation of EMI's websites | MR Dec. ¶ 18, Ex. I (EMI Music Group North America's letter of October 25, 2010) & Ex. J (EMI Entertainment World's letter of October 25, 2010). |
| 76. MP3tunes disabled access to the links identified in the EMI Music Group North America and EMI Entertainment World letters dated October 25, 2007 and again offered to remove any other "EMI" songs if "EMI" would provide information reasonably sufficient to permit MP3tunes to locate the material. | MR Dec. ¶ 18.<br><br>GPG Dec. ¶ 25, Ex. X (Kraus Trans. 34:9-35:14; Exs. 8-11). |

## IV.   MP3TUNES HAD NO ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE ALLEGED INFRINGEMENTS AT ISSUE IN THIS LITIGATION.

### A.   MP3tunes Had No Actual Knowledge of the Specific Alleged Infringements at Issue in This Litigation.

| Undisputed Fact | Evidence |
|---|---|
| 77. On June 19, 2009 and June 22, 2009, more than a year and six month after Plaintiffs first filed this law suit, Plaintiffs disclosed to MP3tunes the works that are the subject of their copyright infringement claims. | GPG Dec. ¶ 6 & ¶ 7, Ex. E (June 19, 2009 email from the Publishers identifying the works for which they allege infringement in this litigation) & F (June 22, 2009 email from the Publishers identifying the works for which they allege infringement in this litigation). |
| 78. Prior to June 19, 2009, Plaintiffs did not disclose this list of allegedly infringed works. | MR Dec. ¶ 25. |
| 79. Of the 33,759 works listed on the two songs list produced by Plaintiffs, more than 80% are | DM Dec. ¶ 5-6, Exs. A and B |

| | |
|---|---|
| associated with artists or song writers who are not identified on the two URLs http://www.emimusicpub.com/songwriters/index-d.php and http://www.emimusicpub.com/songwriters/index-d.php | |

**B.   MP3tunes Had No Constructive Knowledge of the Specific Alleged Infringements at Issue in this Litigation.**

       **1.   MP3tunes Did Not Know Which of Plaintiffs Purported Works Were Allegedly Infringed until More than One Year after the Plaintiffs Filed Suit.**

| Undisputed Fact | Evidence |
|---|---|
| 80. On June 19, 2009 and June 22, 2009, more than a year and six month after Plaintiffs first filed this law suit, Plaintiffs disclosed to MP3tunes the works that are the subject of their copyright infringement claims. | GPG Dec. ¶ 6 & ¶ 7, Ex. E (June 19, 2009 email from the Publishers identifying the works for which they allege infringement in this litigation) & F (June 22, 2009 email from the Publishers identifying the works for which they allege infringement in this litigation). |
| 81. On June 19, 2009 and June 22, 2009, Plaintiffs did not disclose these lists of allegedly infringed works. | MR Dec. ¶ 25. |
| 82. Prior Plaintiffs' disclosure of this list, MP3tunes had no knowledge that these works in fact belonged to Plaintiffs. | MR Dec. ¶ 25. |
| 83. Plaintiffs only name 752 of the 33,756 works claimed to be infringed by Defendants in this litigation, all of which Defendants took down before this suit began | SP Dec. and Exhibits. |

2.   **MP3tunes Cannot Know Which Downloads on the Internet Are Allegedly Infringing and which Are Not.**

a.   **Plaintiffs Virally Market Their Copyrighted Works on the Internet.**

| Undisputed Fact | Evidence |
|---|---|
| 84. Counsel for Plaintiffs made the following representation before the Court: "The notion that we at EMI put up material for free is pure fantasy. Right now, there's a pending motion to dismiss their counterclaims. Whether or not it is ever -- whether or not it's granted, the complaint -- and there is no evidence in the complaint or anywhere else that reflects that EMI has ever put any of its music out for free. There's no allegation that they know of a single one that's been put out for free." | GPG Dec. ¶ 3, Ex. B (Court Transcript dated February 25, 2009 30:24-31:5). |
| 85. One or more of the Plaintiffs have authorized distribution of one or more of Plaintiffs' copyrighted works for free down load in connection with following websites or entities: Wal-Mart'; Amazon.com; Borders; Best Buy; iTunes; Toyota; Pepsi; Citibank; Microsoft; Coke; Starbuck's; Push Entertainment; Social Networking; Myspace; Facebook; Buzznet; Bebo; Google; AOL; CNN; Seventeen; People; KCRW; Clear Channel (approximately 100 different radio stations); New York Post; Village Voice; Minnesota Public Radio; Spin; MTV; MTV2; VH1; SXSW; Lastfm; Stereogum; Pitchfork; Buzzgrinder.com; Fluxblog; Prefixmag; Filter; Cocaineblunts.com; ilike.com; Absolutepunk.com; 944 Magazine; Fader; Delicious Vinyl; Myplaydigital.com; DropCard.com; Hipdigital.com; Tool Shed; BetterPropoganda.com; Freeallmusic.com; Spinner; Rolling Stone; EW's; Popwatch; Top Spin; Pure Volume | GPG Dec. ¶ 11, Ex. J (Deposition of Sanford Schwartz taken on February 9, 2010 whom the Labels designated to testify on the their behalf regarding their digital marketing practices ("Schwartz Trans.") *passim*<br><br>GPG Dec. ¶ 12, Ex. K (Deposition of Michael Abitbol taken on January 21, 2010, Vice President of Legal and Business Affairs at EMI Music Publishing, whom the Publishers designated to testify on the their behalf regarding their digital marketing practices ("Abitbol Dec.") *passim*<br><br>GPG Dec. ¶ 15, Ex. N (Deposition of Ernesto Schmitt taken on March 19, 2010, former President of Central Marketing for EMI Music) *passim*<br><br>GPG Dec. ¶ 18, Ex. Q (documents produced in response to a subpoena served on Prefix Media requesting information concerning the authorization from EMI or its artist to make free downloads available on the internet ("Prefix Production"), PM000001; PM000002; |

PM000003; PM000005; PM000009; PM000011; PM000014; PM000015; PM000016; PM000019; PM000021; PM000023; PM000024; PM000027; PM000029; PM000030; PM000031; PM000032; PM000034; PM000035; PM000036; PM000037; PM000038; PM000040; PM000041; PM000042; PM000043; PM000045; PM000047; PM000050.

GPG Dec. ¶ 19, Ex. R (documents produced in response to a subpoena served on Purevolume.com requesting documents concerning the authorization by EMI or its artist to make free downloads available on the internet), PV000009; PV000012; PV000028.

GPG Dec. ¶ 20, Ex. S (documents produced in response to a subpoena served on MTV.com requesting documents concerning the authorization by EMI or its artist to make free downloads available on the internet), MTVN-016-MTVN 017; MTVN-019-MTVN 020; MTVN 021- MTVN 020 MTVN 022; MTVN 024- MTVN 025; MTVN 027; MTVN 029-MTVN 030.

GPG Dec. ¶ 26, Ex. Y (documents produced in response to a subpoena served on Top Spin Media requesting documents concerning the authorization by EMI or its artist to make free downloads available on the internet).

GPG Dec. ¶ 27, Ex. Z (documents produced by Plaintiffs referencing their authorization of free downloads on the Internet).

GPG Dec. ¶ 28, Ex. AA (The EMI Labels' Responses and Objections to Defendants' Fifth Set of Interrogatories).

GPG Dec. ¶ 29, Ex. BB (The EMI Music Publishing Plaintiffs' Objections and Responses Defendants' Fifth Set of Interrogatories).

| | |
|---|---|
| 86. One or more of the Plaintiffs has authorized Toolshed Media, Inc. to distribute for free download one or more of Plaintiffs authorized works. | GPG Dec. ¶ 21, Ex. T (documents produced in response to the third party subpoenas served on Toolshed Incorporated, a company that specializes in digital marketing, requesting documents concerning the authorization by EMI or its artist to make free downloads available on the internet); T000182; T000822-T000824; T002058; T002198; T002202; T003728; T005685; T006224- T006225; T005371; T005414; T006197; T006475; T010369.<br><br>GPG Dec. ¶ 18, Ex. Q (Prefix Production), PM000053; PM000054; PM000055; PM000056; PM000057; PM000058; PM000059; PM000060; PM000061; PM000062; PM000063; PM000064; PM000065; PM000066; PM000067; PM000068; PM000069; PM000070; PM000071; PM000072; PM000074; PM000075; PM000076; PM000077; PM000078; PM000079; PM000080; PM000081; PM000082; PM000083; PM000084. |
| 87. One or more of the Plaintiffs has authorized Akamai Technologies Inc. to distribute free downloads on the Internet of one or more of Plaintiffs copyrighted works. | GPG Dec. ¶ 27, Ex. Z (documents produced by Plaintiffs referencing their authorization of free downloads on the Internet ("Plaintiffs Production"), EMI-R008937- EMI-R008941; EMI-R008942- EMI-R008946; EMI-R008947-EMI-R008949; EMI-R008950- EMI-R008951; EMI-R008952- EMI-R008956; EMI-R008957; EMI-R008958; EMI-R008959; EMI-R008960; EMI-R008961; EMI-R008962; EMI-R008963; EMI-R008964; EMI-R008965; EMI-R008966; EMI-R008967; EMI-R008968- EMI-R008972; EMI-R008973; EMI-R008974; EMI-R008975; EMI-R009039; EMI-R009078; EMI-R009191-EMI-R009203; EMI-R009223- EMI-R009226; EMI-R009324; EMI-R009447; EMI-R009451; EMI-R009462- EMI-R009472; EMI-R009514; EMI-R009578; EMI-R009980; EMI-R010084; EMI-R010087; EMI-R010090; EMI-R010099; EMI-R010177; EMI-R010203; EMI-R010260. |
| 88. One or more of the Plaintiffs have authorized distribution of one or more of | GPG Dec. ¶ 27, Ex. Z (Plaintiff Production), EMI-R000172; EMI-R000174; EMI-R010565; |

| | |
|---|---|
| Plaintiffs' copyrighted works for free down load at the following artists web sites: Cold Play; Alice in Chains; Beastie Boys; Radio Head; Lily Allen; Joss Stone; Decemberists; Korn; Angel Taylor; Joanna Cotton; Jamey Johnson; Saving Abel; Varsity Fan Club; Natasha Marsh; The Last Goodnight; Tristan Prettyman; New Adelitas Way; Jet; The Last Goodnight; Melanie C; Yellow Card; Ak'Sent; Air; Kristina Train; A Fine Frenzy; Nine Inch Nails. | EMI-R000181; EMI-R024417; EMI-R000183; EMI-R009996; EMI-R023966; EMI-R026242; EMI-R009039; EMI-R009206; EMI-R011040; EMI-R009254; EMI-R024114; EMI-R025801; EMI-R009447; EMI-R009462- EMI-R009472; EMI-R009514; EMI-R009451; EMI-R010001; EMI-R009562; EMI-R009566; EMI-R009648; EMI-R009669; EMI-R009770; EMI-R009773; EMI-R010546; ; EMI-R009725; EMI-R009992; EMI-R026433; EMI-R009994; EMI-R010398; EMI-R010664; EMI-R010811; EMI-R024577; EMI-R024598; EMI-R024790; EMI-R010578; EMI-R024448; EMI-R024585; EMI-R026431; EMI-R010700; EMI-R010732; EMI-R010829; EMI-R010808; EMI-R024019; EMI-R010846; EMI-R010971; EMI-R010986; EMI-R011346; EMI-R011348; EMI-R011356; EMI-R026870; EMI-R011377; EMI-R024045; EMI-R02406; EMI-R024072; EMI-R024104; EMI-R024337; EMI-R025961; EMI-R024581; EMI-R024654; EMI-R024665; EMI-R024755; EMI-R024756; EMI-R024783; EMI-R024789; EMI-R024895; EMI-R025715; EMI-R025819; EMI-R026612; EMI-R026620; EMI-R026721.<br><br>GPG Dec. ¶ 14, Ex. M (Roger Faxon Correspondence), EMP 51318; EMP 51325; EMP 51326; EMP 51331; EMP 51335; EMP 51340; EMP 51348; EMP 51354; EMP 51356; EMP 51362; EMP 51370; EMP 51375; EMP 51378; EMP 51380; EMP 51386; EMP 51391; EMP 51400; EMP 51411; EMP 51415; EMP 51419; EMP 51425; EMP 51429; EMP 51437; EMP 51447; EMP 51462; EMP 51465; EMP 51469; EMP 51476; EMP 51484; EMP 51485; EMP 51491; EMP 51496; EMP 51501; EMP 51507; EMP 51510; EMP 51521; EMP 51525; EMP 51529; EMP 51534; EMP 51538; EMP 51545; EMP 51553; EMP 51555; EMP 51564; EMP 51579; EMP 51593; EMP 51606; EMP 51612; EMP 51623; EMP 51629; EMP 51635; EMP 51638; EMP 51642; EMP 51645; EMP 51656; EMP 51656; EMP 51670; EMP 51674; EMP 51678; EMP 51683; EMP 51694; EMP 51697; EMP 51702; EMP 51726; EMP 51744; EMP 51749; EMP 51753; EMP 51759; EMP 51761; EMP 51771; EMP 51787; EMP 51792; |

18

| | EMP 51802; EMP 51818; EMP 51822; EMP 51826; EMP 51841; EMP 51847; EMP 51845; EMP 51862; EMP 51865; EMP 51882; EMP 51882; EMP 51888; EMP 51889; EMP 51894; EMP 51898; EMP 51913; EMP 51915; EMP 51918; EMP 51922; EMP 51933; EMP 51937). |
|---|---|
| 89. One or more of the Plaintiffs has authorized one or more of their copyrighted works to be distributed by free download at the following record company websites: Astralwerks; Parlophone; Angel Records; Virgin Records; EMI Pop; Virgin Records; Capitol Music; Virgin Records; Tooth and Nail; EMI.com; Emirecords.com. | GPG Dec. ¶ 27, Ex. Z (Plaintiff Production), EMI-R009994; EMI-R010447; EMI-R011341; EMI-R011086; EMI-R026348; EMI-R024722; EMI-R024064; EMI-R024585; EMI-R025737; EMI-R025770; ; EMI-R025780; EMI-R026269; EMI-R026429; EMI-R026791 |

<strong>b.   Plaintiffs' Themselves Do Not Know Not Know which Downloads on the Internet Are Authorized and which are Not Unauthorized.</strong>

| Undisputed Fact | Evidence |
|---|---|
| 90. The Labels have the technology to control the spread of the free downloads it offers on the Internet but does not employ this technology for sound recordings, although it does use DRM for other media that it makes digitally available. | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 44:18-45:14). |
| 91. EMI does not limit its promotional downloads to lesser known artists and writers but authorizes free downloads for its well known assets as well. | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 134:17; 142:21; 164:2-17; 158:22; 159:14; 165:4-12). |
| 92. When asked how it could be determined how many songs authorized free downloads were on the Internet, the Labels testified: "It's impossible to answer." Schwartz further explained that EMI deliberately places songs on the Internet so that those songs can | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 44:14; 14:21-23). |

| | |
|---|---|
| become "viral": "By viral I mean giving fans the ability to disseminate to other fans, to spread like a virus." | |
| 93. When asked why it was impossible to answer, the Labels testified: "The intent in a download campaign whereby the consumer is not paying a fee directly assumes a copy to that consumer.  But we have no control over what happens to that file after a consumer has downloaded it." | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 44:18-22). |
| 94. Marketing personnel at the Labels are not required to seek executive approval to authorize the free downloads on the Internet. | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 58:2-9). |
| 95. The Labels do not have a policy that requires the authorization of free downloads on the Internet to be manifest the form of a written agreement. | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 62:14).<br><br>GPG Dec. ¶ 10, Ex. I (Ondrejka Trans. 48:17-25). |
| 96. Cory Ondrejka, the former President of Digital for EMI Music, testified that: "[t]here is no specialized responsibility for free downloads on the internet.  There are a host of resources that generally reside within different marketing groups, where questions related to web sites go.  So if a band requests that they want to have a download, the flow that I have observed has been artist, through artist's management, coming in to whoever their point of contact is within EMI." | GPG Dec. ¶ 10, Ex. I (Ondrejka Trans. 48:17-25). |
| 97. The Labels' artists, without prior notice to the Labels, have made their works available for free download on the Internet. | GPG Dec. ¶ 15, Ex. N (Deposition of Ernesto Schmitt taken on March 19, 2010 ("Schmitt Trans.") 129:23-130:1-3). |

| 98. Cory Ondrejka, the former President of Digital for EMI Music, testified that: "I mean that artists are individuals, and when working with and managing individuals, it is ineffective to try to impose global policies upon them." | GPG Dec. ¶ 10, Ex. I (Ondrejka Trans. 77:11-13). |
|---|---|
| 99. The Labels testified: "It would be very difficult for the [internet user] to ascertain [whether or not an EMI free download was authorized or not]." | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 161:7-8). |
| 100.  The Labels testified: "I am not aware of such a way that you would know [the difference between an authorized free download and unauthorized free download on a website like Spin.com]." | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 54:4-5). |
| 101.  The Labels testified: "It would be very difficult for the [Internet user] to ascertain [whether or not an EMI free download was authorized or not]." | GPG Dec. ¶ 11, Ex. J (Schwartz Trans. 161:7). |
| 102.  The Publishers do not know the full extent of their authorization of free downloads on the Internet. | GPG Dec. ¶ 12, Ex. K (Abitbol Trans. 63:3-5). |
| 103.  When viewing a link to a free download available on the Internet, the Publishers are unable to determine whether a download is authorized or unauthorized. | GPG Dec. ¶ 12, Ex. K (Abitbol Trans. 170:22-24). |
| 104.  The Publishers tolerate the presence of free downloads on the Internet even when they believe these free downloads are unauthorized. | GPG Dec. ¶ 12, Ex. K (Abitbol Trans. 174:13; 176:21; 177:14; 178:22; 180:16-22). |
| 105.  Plaintiffs expert witness Barry Massarsky testified: "It is difficult to tell what is authorized and what | GPG Dec. ¶ 16, Ex. O (Deposition of Barry Massarsky taken on August 20, 2010 ("Massarsky Trans.") 285:14-16). |

21

| | is unauthorized." |
|---|---|
| 106.    In recent years, there have been widespread media reports of record companies serving cease and desist letters on music blogs for posting free music their own marketing people sent them for precisely that reason.  For example, in Media Guardian, it was reported that: "After the success of blog-buzzy acts such as Arcade Fire, Lily Allen and Vampire Weekend, entire PR firms are dedicated to courting armchair DJs and amateur critics." The article goes on to report that the labels are so eager to have blogs offer free downloads of their music that often their lawyers are unaware that the marketing people have authorized free downloads.  One blogger, Bill Lipold, the owner of! Rock Cleveland [a music blog], cited four cases in the past year when he had received copyright violation notices for songs he was legally entitled to post, including a song by XX Teens called "Darlin." The company that authorized the free download was Mute Records - a label that is fully owned by EMI. | GPG ¶ 30, Ex. CC (Sean Michaels, *Google Shuts Down Music Blogs Without Warning*, GUARDIAN (Feb. 11, 2010) (last visited October 29, 2010)), http://www.guardian.co.uk/music/2010/feb/11/google-deletes-music-blogs); GPG ¶ 31, Ex. DD (Declan McCullagh, *RIAA: U.S. Copyright Law 'Isn't Working'*, CNET (Aug. 23, 2010) (last visited October 29, 2010), http://news.cnet.com/8301-13578_3-20014468-38.html). |

## V.    MP3TUNES DERIVES NO DIRECT FINANCIAL BENEFIT FROM ANY ALLEGED INFRINGEMENT

| Undisputed Fact | Evidence |
|---|---|
| 107.    MP3tunes' sole source of revenue, from either website, are the fees it charges consumers for providing storage services. | MR Dec. ¶ 3. |
| 108.    MP3tunes offers a basic plan to consumers free of charge, which limits storage space to two-gigabytes. | MR Dec. ¶ 3. |

| | |
|---|---|
| 109.   MP3tunes' storage limit for free accounts on the basic plan applies only to files that are uploaded from users' local hard drives. | MR  Dec. ¶ 3. |
| 110.   MP3tunes' storage limit for free accounts on the basic plan does not apply to files that are sideloaded from elsewhere on the Internet. | MR Dec. ¶ 3. |
| 111.   Users who seek to upload more than two gigabytes may upgrade to premium accounts, which cost up to $12.95 per month and offer users more storage space, as well as file back-up services. | MR Dec. ¶ 3. |
| 112.   Sideload.com search services are free of charge. | MR Dec. ¶ 4 |
| 113.   There have never been any advertisements on either mp3tunes.com or sideload.com. | MR Dec. ¶ 4 |
| 114.   Sideload.com benefits MP3tunes when users discover new music through free tracks that are being promoted on the Internet and then go out into the marketplace and purchase the music which, in turn, is stored in users' lockers at MP3tunes.com. | MR Dec. ¶ 4 |

Respectfully submitted,

DUANE MORRIS LLP

Dated:    October 29, 2010
          New York

By:  _/s /_____
Gregory P. Gulia
John Dellaportas
Vanessa Hew
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000

Edward M. Cramp (*pro hac vice*)
Michelle Hon (*pro hac vice*)

*Attorneys for Defendants.*

23