UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CAPITOL RECORDS, LLC; CAROLINE       )
RECORDS, INC.; EMI CHRISTIAN MUSIC   )
GROUP INC.; PRIORITY RECORDS LLC;    )
VIRGIN RECORDS AMERICA, INC.;        )   CIVIL ACTION NO. 07 Civ. 9931 (WHP)
BEECHWOOD MUSIC CORP.; COLGEMS-EMI   )   ECF Case
MUSIC INC.; EMI APRIL MUSIC INC.; EMI )
BLACKWOOD MUSIC; EMI FULL KEEL       )
MUSIC; EMI GOLDEN TORCH MUSIC CORP.; )
EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, )
INC.; EMI VIRGIN SONGS, INC., EMI AL )
GALLICO MUSIC CORP., EMI ALGEE MUSIC )
CORP., EMI FEIST CATALOG, INC., EMI GOLD )
HORIZON CORP., EMI GROVE PARK MUSIC, )
INC., EMI HASTINGS CATALOG, INC., EMI )
MILLS MUSIC, INC., EMI MILLER CATALOG, )
INC., EMI ROBBINS CATALOG, INC., EMI U )
CATALOG, INC., EMI UNART CATALOG, INC., )
JOBETE MUSIC CO., INC., SCREEN GEMS-EMI )
MUSIC, INC., STONE AGATE MUSIC, and )
STONE DIAMOND MUSIC,                 )
                                     )
            Plaintiffs,              )
        v.                           )
                                     )
MP3TUNES, INC., and MICHAEL ROBERTSON, )
                                     )
                                     )
Defendants.                          )
_____

**PLAINTIFFS' RESPONSE TO MP3TUNES COUNTERSTATEMENT TO PLAINTIFFS'
STATEMENT OF UNCONTROVERTED FACTS**

Plaintiffs, by their undersigned counsel, respectfully submit this response to MP3tunes'

"Counterstatement to Plaintiffs' Local Rule 56.1 Statement of Uncontroverted Facts In Support

of their Motion for Summary Judgment."

When one examines MP3tunes' proffered bases for "disputing" the material facts, they

are, in virtually all cases, not really a dispute about the fact at all.   At times, MP3tunes attempts

to explain or put some "spin" on some of the facts.   At other times, it sets up a straw man and

argues that a fact that is not even asserted in the particular paragraph is "disputed" in order to make it appear that the fact actually asserted is disputed when it plainly is not.   And at still other times, all it offers is a frivolous "objection" to easily understood and unambiguous terms like "music file" and "takedown notice" as being "vague and without foundation" in order to avoid stipulating to the truth of the fact, all in an attempt to avoid summary judgment.

There is no *bona fide* dispute as to how MP3tunes' services function, or that these functions are employed by MP3tunes and its users to engage in copyright infringement on a massive scale.   Nor is there any good faith dispute about the material facts supporting the elements of each of Plaintiffs' claims.   MP3tunes does not rebut those material facts, nor does it cite other facts that provide a defense to Plaintiffs' claims, under the DMCA or otherwise.   The undisputed facts establish that Plaintiffs are entitled to summary judgment on their direct, contributory, and vicarious copyright infringement claims against MP3tunes.

In this document, Plaintiffs have addressed each of MP3tunes' objections and purported challenges to the Uncontroverted Facts submitted by Plaintiffs in support of their motion for summary judgment.   For the Court's convenience, this document incorporates Plaintiffs' original Statement of Uncontroverted Facts, Defendant's Counterstatement, and Plaintiffs' response.

**Citation Format**

Plaintiffs use the following citation forms in their Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment and in this Statement of Uncontroverted Facts:

| Document | Date Filed | Citation |
|---|---|---|
| Declaration of **Michael Abitbol** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #187) | Abitbol |
| Supplemental Declaration of **Michael Abitbol** | November 24, 2010 (Docket #213) | Supp. Abitbol |
| Declaration of **Audrey Ashby** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #188) | Ashby |
| Declaration of **Greg Gulia** in Support of MP3tunes' Motion for Summary Judgment | October 29, 2010 (Docket #189) | Gulia |
| Declaration of **Greg Gulia** in Opposition to Plaintiffs' Motion for Summary Judgment | November 25, 2010 (Docket # 221) | Gulia Opp. |
| Declaration of **Robert Heinemann** | November 24, 2010 (Docket #212) | Heinemann |
| Supplemental Declaration of **Robert Heinemann** | December 17, 2010 | Supp. Heinemann |
| Declaration of **Ellis Horowitz** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Filed under seal) | Horowitz |
| Supplemental Declaration of **Ellis Horowitz** | November 24, 2010 (Filed under seal) | Supp. Horowitz |
| Declaration of **Alasdair McMullan** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #191) | McMullan |
| Supplemental Declaration of **Alasdair McMullan** | November 24, 2010 (Docket #211) | Supp. McMullan |
| Declaration of **Doug Reese** in Opposition to Plaintiffs' Motion for Summary Judgment | November 24, 2010 (Docket #218) | Reese Opp. |
| Declaration of **Michael Robertson** in Support of MP3tunes' Motion for Summary Judgment | October 29, 2010 (Docket #184) | Robertson |
| Declaration of **Michael Robertson** in Opposition to Plaintiffs' Motion for Summary Judgment | November 24, 2010 (Docket #217) | Robertson Opp. |

| Document | Date Filed | Citation |
|---|---|---|
| Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment | October 29, 2010 (Docket #207) | Pls. Mem. |
| MP3tunes' Memorandum of Law in Support of Its Motion for Summary Judgment | October 29, 2010 (Docket #196) | Defs. Mem. |
| Plaintiffs' Memorandum of Law in Opposition to MP3tunes' Motion for Summary Judgment | November 24, 2010 (Docket #209) | Pls. Opp. |
| MP3tunes' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment | November 25, 2010 (Docket #222) | Def. Opp. |
| Plaintiffs' Statement of Uncontroverted Fact in Support of Their Motion for Summary Judgments | October 29, 2010 (Filed under seal) | SUF |
| MP3tunes' Statement of Undisputed Facts in Support of Its Motion for Summary Judgment | October 29, 2010 (Docket #195) | Defs. SUF |
| Plaintiffs' Rule 56.1 Counterstatement of Undisputed Facts in Response to MP3tunes Statement of Undisputed Facts | November 24, 2010 (Docket #214) | Pls. Counter-SUF |
| Plaintiffs' Response to MP3tunes' Counterstatement to Plaintiffs' Rule 56.1 Statement of Uncontroverted Facts in Support of Their Motion for Summary Judgment | December 17, 2010 | Pls. Reply-SUF |
| Plaintiffs' Evidentiary Objections to Evidence Presented by MP3tunes in Opposition to Plaintiffs' Motion for Summary Judgment | December 17, 2010 | Pls. Reply Obj. |

a.  As in Plaintiffs' Memorandum of Law in Support of their Motion for Summary

Judgment, references to the exhibits attached to the **Declaration of Andrew H. Bart**

(Docket # 190) and the **Errata** annexed thereto (Docket # 198) are referred to simply as

"Ex. __."   Similarly, references to the exhibits attached to the **Supplemental**

**Declaration of Andrew H. Bart** (Docket # 209) and the **Reply Declaration of Andrew**

**H. Bart** filed herewith ("Bart Reply Decl.") are also referred to simply as "Ex. __."   The exhibits are sequentially numbered.   As a result, citations to Exs. 1 – 98 refer to Exhibits 1 through 98 of the Declaration of Andrew H. Bart and accompanying Errata (Docket #190, #198).   Citations to Exs. 99 – 116 refer to Exhibits 99 through 116 of the Supplemental Declaration of Andrew H. Bart.   Citations to Exs. 117- 124 refer to Exhibits 117 through 124 of the Reply Declaration of Andrew H. Bart..

b.   When Plaintiffs reference transcripts of deposition testimony, the citation includes the last name of the deponent and the specific page and line numbers.   For example, "Ex. 1 (Robertson) at 46:7-12" refers to Lines 7-12 on Page 46 of the transcript of the deposition of defendant Michael Robertson, excerpts of which are collected and attached as Exhibit 1 to the Declaration of Andrew H. Bart.

c.   When Plaintiffs reference a specific paragraph of a declaration, they use the symbol "¶." For example, "Horowitz ¶ 10" refers to paragraph ten of the Declaration of Ellis Horowitz in Support of Plaintiffs' Motion for Summary Judgment.

| FACT | PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACT | DEFENDANTS RESPONSE IN COUNTERSTATEMENT | PLAINTIFFS' REPLY |
|---|---|---|---|
| 1. | The EMI Label Plaintiffs own or control copyrights in 3,189 sound recordings at issue on plaintiffs' motion for summary judgment, which are identified in Exhibit A to the Declaration of Alasdair McMullan in support of Summary Judgment, dated October 28 2010. McMullan ¶ 4 & Ex. A. | **Disputed.**  The evidence does not establish that Plaintiffs own or control copyrights in all of these 3,189 sound recordings. Ownership of 2,026 of these sound recordings lack the necessary documentation. The alleged copyright registrations submitted do not correspond to these works. SP Opp. ¶ 5, Ex. I.  Moreover, ownership of 2,026 of these works lack evidence that the copyrights in these works were legally acquired by any of the Plaintiffs.  SP Opp.  ¶ 5, Ex. I. | The evidence Defendant cites has no bearing on whether the Plaintiffs own the 3,189 sound recordings at issue. The citation to paragraph 5 of the Peyronnel Declaration is likely a mistake.

Paragraph 5 of the Peyronnel Declaration addresses which sound recordings at issue on this motion were specifically referenced in Plaintiffs' original Takedown Notices.  Exhibit I thereto is a chart illustrating the "conclusions" in that paragraph.

To the extent that MP3tunes intended to cite to paragraph 6 of that declaration, it has still failed to create a material dispute of fact.  Paragraph 6 and Exhibit J of the Peyronnel Declaration simply identify a subset of the 3.190 recordings at issue that are listed as works for hire.  MP3tunes claims that the EMI Labels inadequately documented that the works were, in fact, works for hire.  This argument fails for the reasons set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Pls. Opp.) pp. 33-35.

Moreover, Defendant admits that Plaintiffs own or control copyrights in over 1,000 sound recordings at issue.  Such ownership more than suffices to establish the ownership element of Plaintiffs' infringement claim for the purposes of summary judgment on liability. |

| | | Accordingly, this fact is **UNDISPUTED.** |
|---|---|---|
| 2. | The EMI Publishing Plaintiffs own or control copyrights in 562 musical compositions at issue on this motion, which are identified in Exhibits A and B to the Declaration of Audrey Ashby in support of Summary Judgment, dated October 29,2010. Ashby ¶¶ 8-10 & Exs. A-B. | **Disputed.**  The evidence does not demonstrate that Plaintiffs own or control copyrights in all these 562 musical compositions. Ownership of 4 of these musical compositions lack the necessary documentation that these works were created by an employee of Plaintiffs in the scope of the employment that employee's [sic]. Peyronnel ¶ 5, Ex. I. | The evidence Defendant cites has no bearing on whether the Plaintiffs own the 562 compositions at issue.  The citation to paragraph 5 of the Peyronnel Declaration is likely a mistake.

Paragraph 5 of the Peyronnel Declaration addresses which musical compositions at issue were specifically referenced in Plaintiffs' original Take Down notices, and Exhibit I thereto is a chart illustrating the conclusions in this paragraph.

To the extent that MP3tunes intended to cite to paragraph 6 of that declaration, it has still failed to create a material dispute of fact.  Paragraph 6 and Exhibit J of the Peyronnel Declaration simply identify a subset of the 562 compositions at issue that are listed as works for hire.  MP3tunes claims that the EMI Publishing Plaintiffs inadequately documented that the works were, in fact, works for hire.  *See* Pls. Opp. pp. 33-35.

Moreover, Defendant admits that Plaintiffs own or control copyrights in 558 of the compositions  at issue; such ownership more than suffices to establish the ownership element of Plaintiffs' infringement claim for the purposes of summary judgment on liability.

Accordingly, this fact is **UNDISPUTED.** |
| 3. | The EMI Label Plaintiffs also own or control copyrights in 328 images of album cover artwork ("Cover Art") at issue on plaintiffs' | **Disputed.**  There is no evidence that Plaintiffs own or control copyrights in all these 328 images. The registration numbers | MP3tunes's legal objection to this evidence is meritless.  *See* Pls. Reply pp. 7-8.  The law is clear that artwork associated with sound recordings may be |

| | | | |
|---|---|---|---|
| | motion for summary judgment, which are identified in Exhibit B to the McMullan Declaration.  McMullan ¶ 5 & Ex. B. | listed in Ex. B correspond to copyright registration for sound records, not for works of visual art.  See McMullan ¶ 5 & Ex. B and the copyright registration certificates with the United States Copyright Office referenced therein.  Cover art must be separately registered as a work of visual art.  Plaintiff has not produced any evidence that they are, in fact, the owner the cover art at issue. | registered on the same form as the sound recording. MP3tunes does not dispute that the EMI Labels produced copyright registrations which explicitly list artwork as part of the work being registered.  *See* McMullan ¶ 5 & Ex. B; *see also* Ex. 121. |
| 4. | For the past five years, MP3tunes has operated a website, located at www.mp3tunes.com (the "Locker Website").  (Horowitz ¶ 15 & Ex. B; Docket # 135 at ¶ 38.). | **Disputed.**  First, the cited evidence provides no support of Plaintiffs' allegation that MP3tunes has operated the website located at www.mp3tunes.com for the past five years. EMI's expert, Professor Horowitz lacks personal knowledge relating to MP3tunes business; therefore, his statement is inadmissible.  Docket #135 (MP3tunes' Answer) admits to ownership of the www.mp3trunes.com website.  Second, the reference to "the past five years" is vague.<br><br>**Undisputed.**  MP3tunes operates a website located at www.mp3tunes.com.  Def. SUF ¶ 1. | Michael Robertson stated that MP3tunes was already in transition from an online music store to website providing a locker service in October 2005.  Ex. 4 (Robertson) at 165:17-22; Ex 5 (Reese) 59:8-62:24; Ex. 16.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 5. | The Locker Website allows users to store digital music files on MP3tunes' computer servers, and to listen to those files from a variety of internet-enabled devices. (Horowitz ¶¶ 16-17 & Ex. C; Ex. 5 (Reese) at 389:6-390:17; Ex. 17.) | **Undisputed.** | |

| 6. | There are 300,000 to 350,000 registered locker users, some of whom subscribe to MP3tunes' "Premium" service for a monthly or annual fee. (Ex. 8 (Dawson) at 235:9-15; Ex. 18.) Users who subscribe to the Premium service can store more than two gigabytes of music in their lockers; thus, MP3tunes' business model is more profitable the more content users have in their lockers. (Ex. 18.) | **Disputed.** First, the cited evidence provides no support for Plaintiffs' claim that the more content users have in their locker the more profitable MP3tunes' business model is. Plaintiffs' inclusion of argumentative, conclusory statements violates Local Rule 56.1 and those statements should be stricken. Second, the reference to "MP3tunes' business model" is vague. | The cited testimony from Mr. Dawson supports Plaintiffs' allegation that there are 300,000 to 350,000 MP3tunes users. Exhibit 18 is a screenshot from the MP3tunes Website showing that users may store up to 2 gigabytes of music files on Defendant's servers, but must pay a surcharge if the user seeks to store more than this much music. Defendants' purported objection to the term "business model" is frivolous. Defendant's business model (to obtain revenue from the operations of its locker service) is apparent from these documents and many others in this case. It is undisputed that Defendant's business earns more if users store more music on their system. Defendant has submitted no evidence to rebut these facts and accordingly, they are **UNDISPUTED.** |
| 7. | Users could copy or "upload" to their MP3tunes locker accounts digital music files that they had stored on their personal computers, through a software application developed and distributed by Defendant called "LockerSync," which was available for free download on the Locker Website. (Horowitz ¶ 19; Ex. 2 (Robertson) at 65:15-21; Ex. 4 (Robertson) at 171:7-20; Ex. 5 (Reese) at 105:20-106:7.) | **Undisputed.** | |
| 8. | Users could copy or "sideload" music files to their MP3tunes locker accounts from another website owned and operated by defendants, located at www.sideload.com (the "Sideload Website"). (Horowitz ¶¶ 20-24; Ex. 2 (Robertson) at 92:8-21; Ex. 5 (Reese) at | **Undisputed.** | |

| | | | |
|---|---|---|---|
| | 529:3-531:4.) | | |
| 9. | Users could copy or "sideload" music files to their MP3tunes locker account by using software developed and distributed by MP3tunes called the "Sideload Plug-in," which was available for free download on the Locker Website.  After a user installed the Sideload Plug-In, when the user visited a third-party webpage on which a music file in the mp3 format was available, the Sideload Plug-In would place an icon next to the link to that music file.  When the user clicked the icon, the MP3tunes server would download (transfer) a copy of the music file from the internet server on which it was stored to the MP3tunes server and the user would be given access to that song through his MP3tunes locker account.  "Sideloading" is the term used to describe the transferring of a copy of a file from a website to an MP3tunes locker.  (Horowitz ¶¶ 21, 25 & Ex. H & DVD Ex. 1; Ex. 2 (Robertson) at 65:15-66:2; Ex. 3 (Robertson) at 42:15-21; Ex. 4 (Robertson) at 177:22-178:18, 180:14-181:16, 470:18-471:12; Ex. 30.) | **Undisputed.** | |
| 10. | Users could copy or "sideload" music files to their MP3tunes locker account through MP3tunes's "Webload Feature."  The Webload Feature included a text box on the Locker Website where a user could manually input the internet address of a music file | **Undisputed.** | |

| | | |
|---|---|---|
| | available on the internet [sic].  As a result, the MP3tunes server would download (transfer) a copy of the music file from the internet server on which it was stored to the MP3tunes server and the user would be given access to that song through his MP3tunes locker account.  (Horowitz ¶ 26 & Ex. I & DVD Ex. 1; Ex. 5 (Reese) at 102:4-14; Ex. 4 (Robertson) at 172:8-173:13). | | |
| 11. | Once users had access to a song through their MP3tunes locker account, those users could listen to the song from the Locker Website or other internet-enabled devices.  The users also could download a copy of the song from the MP3tunes server to any personal computer from which they logged into their MP3tunes locker account.  (Horowitz ¶¶ 17, 28; Ex. 15 (Reese) at 123:12-126:12; Ex. 5 (Reese) at 103:8-105:6, 105:20-106:16.) | **Disputed.**  The cited evidence provides no support for Plaintiffs' claim that "users also could download a copy of the song from the MP3tunes server to any personal computer from which they logged into their MP3tunes locker account."<br><br>**Undisputed.**  Users could listen to the song from the Locker Website or other internet-enabled devices.  Def. SUF ¶ 15. | MP3tunes cites no evidence in support of its objection.  Professor Horowitz's unrebutted testimony in Paragraph 17 of his declaration is that "a user can add music files to the 'Locker' and then listen to or download those files from an Internet connected computer or other device" (emphasis added).  Accordingly, this fact is **UNDISPUTED.** |
| 12. | When users of the Locker Website sideloaded a song into their MP3tunes "locker" – whether using the Sideload Plug-In or the Webload feature – MP3tunes added a "link" to that song on the Sideload Website.  (Horowitz ¶ 27; Ex. 2 (Robertson) at 92:8-21; Ex. 5 (Reese) at 529:3-531:4.) | **Disputed.**  MP3tunes does not add "links" to the Sideload Websites.  The testimony states that the addition of links occurs as the result of an automated process that is initiated by the users of MP3tunes services.  Ex. 2 (Robertson) at 92:8-21; Ex. 5 (Reese) at 529:3-531:4. | MP3tunes's cited testimony does not rebut this basic assertion about how the links on Sideload appear.  Reese and Robertson agreed that the MP3tunes software placed tracks on the Sideload Index whenever users sideloaded files by means of the Sideload Plug-In or the Webload feature.  Ex. 2 (Robertson) at 92:8-21; Ex. 5 (Reese) at 529:3-531:4.  The testimony of Ellis Horowitz makes clear that the addition of links to the Sideload Website was the result of MP3tunes' design decisions.  Supp. Horowitz ¶ 13.  Accordingly, this |

| | | | fact is **UNDISPUTED.** |
|---|---|---|---|
| 13. | The only way "links" to songs could be added to the Sideload Website was through the Sideload Plug-In or the Webload Feature. Thus, every link to a song file on the Sideload Website represented a song file that had been copied or "sideloaded" to the MP3tunes server by an MP3tunes "locker" user. (Horowitz ¶¶ 22, 27 | **Undisputed.** | |
| 14. | In this manner, links to hundreds of thousands of song files from all over the internet [sic] came to be included on the Sideload Website. (Horowitz ¶ 23; Ex. 2 (Robertson) at 86:19-21.) | **Disputed.** Plaintiff's use of the phrase "hundreds of thousands of song files from all over the internet [sic]" is purposely vague. Further, the cited evidence provides no support for this vague statement. | Defendant's vagueness objection is frivolous and is asserted simply to avoid admitting the fact. Defendant provide no support for its objection. Robertson answered the question "Do you have any idea how many sound recordings are available on Sideload?" with the answer "About 400,000." Ex. 2 (Robertson) at 86:19-21. Horowitz echoes this statement, based on his review of Defendant's database, in ¶23 of his report. Accordingly, this fact is **UNDISPUTED.** |
| 15. | After MP3tunes added a link to a song to the Sideload Website, any other user with an MP3tunes locker account could click a "sideload" icon on the Sideload Website, which would cause the MP3tunes server to download (transfer) a copy of the music file from the internet server on which it was stored to the MP3tunes server, and the user would be given access to that song through his MP3tunes locker account. (Horowitz ¶¶ 22, 27, 28 & DVD Ex. 1; Ex. 2 (Robertson) at 84:24-85:7, 92:8-21; Ex. 5 (Reese) at | **Disputed.** MP3tunes does not add "links" to the Sideload Websites. See supra MP3tunes' response to paragraph 12. Further, the "sideload" icon on the Sideload Website will not always allow a user to sideload a music file from a third-party website to their locker. The sideload function will only work if the file is still available on the third party website. Thus, when a downloadable file is removed from a source website, like Amazon.com or MTV.com, the link on Sideload.com becomes inoperable. Def. | Defendants have not submitted a proper response to the fact. The material they deem disputed is not contained in the asserted fact but rather is an improper and unresponsive legal argument. Robertson admitted that the MP3tunes software adds links to the Sideload Website, *see* Pls. Reply-SUF ¶12, supra. Defendant's objections regarding what may happen when a third party no longer provides access to a sound recording does not rebut this undisputed fact. Defendant does not respond to the statement that sideloaded files are stored on the MP3tunes server, and the user who sideloaded the file was given access to that song from the |

| | | | |
|---|---|---|---|
| | 529:3-531:14.) | SUF ¶ 25.<br><br>**Undisputed.**  Defendants do not dispute that the transfer, storage, and retrieval of the music file is user-directed.  Defendants do not dispute that MP3tunes merely provides a passive conduit. | MP3tunes server when he accessed the file through his MP3tunes locker account.   Furthermore, MP3tunes' argument related to user-direction is factually unsupported and incorrect.  Supp. Horowitz ¶¶ 11-17.  The evidence does not conflict on this point and accordingly this fact is **UNDISPUTED.** |
| 16. | The Sideload Website provided a search function, so users could search for songs they wanted by artist or title.  (Horowitz ¶¶ 22-23 ; Ex. 2 (Robertson) at 102:14-22; see also Ex. 74.) | **Undisputed.** | |
| 17. | It also provided lists of "Most Popular" songs, "Featured" songs, and "New" songs to help users find songs available through the Sideload Website.  (Horowitz ¶ 23 & Ex. D.) | **Disputed.**  MP3tunes disputes the characterization that lists of "Most Popular" songs, "Featured" songs, and "New" are created by MP3tunes.  These lists are a result of an automated process that is initiated by the users of MP3tunes' services.  See Def. SUF ¶ 27-29. | Defendant's response is not a proper response to this fact.  Plaintiffs state that MP3tunes "provided" various lists to customers.  MP3tunes states that it disputes that it "created" these lists.  MP3tunes response is non-responsive and, accordingly, this fact should be deemed admitted and **UNDISPUTED.**<br><br>In any event, the lists are entirely the result of a process created by MP3tunes.  Supp. Horowitz ¶¶ 11-17.  Defendant's SUF admits that "software at Sideload.com automatically generates" these lists.  Def. SUF ¶¶ 27-30.  Defendant's claim that this makes the lists "user generated" is a legal argument and must be rejected. |
| 18. | For each song link added to the Sideload Website, MP3tunes generated a "Track Details" page that provided additional details about the song file, and presented the user with a list of other songs from the same artist | **Disputed.**  MP3tunes disputes the characterization that it generates a "Track Details" page on Sideload.com.  The "Track Details" page is a result of an automated process that is initiated by the users of | The evidence does not conflict on this point.  Accordingly, this fact is **UNDISPUTED.**  The page generated is entirely the result of a process created by MP3tunes, and thus it is irrelevant who initiates the generation of the page.  *See* Supp. Horowitz ¶¶ 11-17. |

| | | | |
|---|---|---|---|
| | available through the Sideload Website. (Horowitz ¶ 24 & Ex. F.) | MP3tunes' service.  To the extent that the song that is sideloaded contains details about a song file located in an ID3 tag, this information automatically populates a "Track Details" page.  DR Opp. ¶ 15. | Reese admits that the generation of the "Track Details" page is an "automated process," i.e., a process performed by MP3tunes software.  Defendant's contention that this process is "user directed" because a user must trigger this function by using MP3tunes' service is improper legal argument. |
| 19. | MP3tunes uses a method of identifying digital music files on its system known as an MD5 hash.  Because an MD5 hash is the result of a mathematical calculation based on the sequence of bits in a particular file, two identical digital files necessarily have the same MD5 hash.  (Horowitz ¶¶ 45-46; Ex. 5 (Reese) at 26:11-27:21, 120:8-121:9.) | **Disputed.**  The term "necessarily have the same MD5 hash" is vague, without foundation. and misleading.  The term "digital files" is vague, without foundation and misleading.  **Undisputed.**  The third party storage system used by MP3tunes uses a mathematical calculation to create an identification number called an MD5 hash based on the sequence of bits in a particular file.  If two blocks of data, consisting of the bits representing the encoded music and the bits representing the metadata that provides information about the track, i.e., its title, artist, and/or album and sometimes information about the user, are uploaded to the storage system, those identical blocks of data are assigned the same hash tag.  Def. SUF ¶¶ 40-41. | Defendant has not put forth a proper response, and its definitional objections are frivolous.  Moreover, the section referred to as "undisputed" improperly sets forth Defendant's legal position instead of admitting or denying Plaintiffs' statement.  It is undisputed that every file has an MD5 hash and two files with the same MD5 hash cannot simultaneously exist in any usable manner.  *See* Horowitz ¶¶ 45-46; Supp. Horowitz ¶ 35 (explaining how Reese's testimony  - cited in Def. SUF ¶¶40-41 – regarding "raw data blocks" that users do not access or share access to is irrelevant and immaterial).  Defendant's own expert, Azer Bestavros, testified in agreement.  Gulia Opp. Ex. LL at ¶ 37, 39; Ex. 120 (Bestavros) at 141:10-16, 156:7-18.  Accordingly, this fact is **UNDISPUTED.** |
| 20. | When a user uploaded or sideloaded a particular digital music file to the Locker Website, the MP3tunes system processed the file and assigned it an MD5 hash.  The music content was stored on MP3tunes servers with reference to the MD5 hash alone and without | **Disputed.**  MP3tunes disputes this inaccurate and oversimplified description of how music is stored and retrieved in a Content-Addressable Storage system.  The cited evidence does not support Plaintiffs' mischaracterization of the Content- | Defendant has not submitted a proper response.  Defendants cites no specific objection and no evidence.  Rather, it engages in improper attacks on credibility.  Professor Horowitz's testimony that he was unfamiliar with a single specific term of Defendant's choosing, a term which nowhere appears in this case is wholly |

| | | |
|---|---|---|
| | reference to the user who uploaded or sideloaded the file. (Horowitz ¶ 48; Ex. 5 (Reese) at 29:16-30:3; 30:20-32:4.) To keep track of which users had access to which songs, MP3tunes created an entry in a database "table" for each user that listed each MD5 hash to which that user had access. (Horowitz ¶¶ 47-48; Ex. 5 (Reese) at 26:22-27:25, 97:3-98:23, 116:14-118:6, 120:8-121:9, 124:22-125:9; Ex. 19.) | Addressable Storage system used by MP3tunes. Further, EMI's expert Professor Horowitz testified that he has no expertise on storage systems. Indeed, Professor Horowitz was not even familiar with the basic terminology of network storage systems, such as SAN (storage area network). GPG Opp. Dec. ¶ 5, Ex. HH (Horowitz 217: 7-16; 220: 7-12) Therefore, his testimony on this subject is inadmissible. | irrelevant to the statements in this paragraph. Professor Horowitz explicitly testified that he had studied the MogileFS storage system at issue in this case. GPG Opp., Ex. HH (Horowitz 217:18-21).<br><br>MP3tunes has not moved to strike Professor Horowitz's testimony, nor has it demonstrated how the "dispute" it attempts to create in its response is relevant to the facts in this case. Accordingly, this fact is **UNDISPUTED.** |
| 21. | If a subsequent user uploaded or sideloaded to the Locker Website a song file that was digitally identical to a song file already stored MP3tunes' servers – that is, the second song file had the same MD5 hash as the first – MP3tunes did not permanently store on its servers an additional copy of that song file. (Horowitz ¶¶ 43, 48; Ex. 5 (Reese) at 34:13-21, 38:6-40:16, 154:13-163:12; Ex. 20.) | **Disputed.** The term "digitally identical" is vague, without foundation and misleading. The term "permanently store" is vague, without foundation and misleading. The Reese testimony contradicts Plaintiffs' characterization that MP3tunes does not store files that some users upload. Ex. 5 (Reese) at 28:18-24. MP3tunes stores every song uploaded by its users. GPG Dec. ¶ 4, Ex. GG (Reese 164:23-165:4). | Defendants have not submitted a proper response but contrive to assert frivolous definitional objections in an improper attempt to avoid admitting undisputed facts. MP3tunes objects to the term "permanently store" not because it is vague, but because it reveals the fact that when Mr. Reese uses the word "store" he is referring to transitory, inaccessible copies of fleeting duration.<br><br>It is **UNDISPUTED** that the MP3tunes system only permanently stores one copy of a music file and distributes that copy to every user who accesses it. *See* Supp. Horowitz ¶33. Reese claims that MP3tunes stores multiple copies of the same file until the system "resolve[s]." However, what Mr. Reese means by "resolves" is that the system stores a copy of a file long enough to check whether the file already exists in the system. If the system determines that the file already exists, the second uploaded file is "resolved" or, in other words, deleted. Gulia Opp. GG, (Reese) at 164:17-165:8; *see* Supp. Horowitz ¶¶ 33-36 (explaining how every single file sideloaded from the Sideload Website is "discarded in favor of allowing users to |

| | | | |
|---|---|---|---|
| | | | share a single master copy of the file …"); Gulia Opp. Ex. LL at ¶ 36, 39; Ex. 120 (Bestavros) at 141:10-16, 156:7-15. |
| 22. | Instead, MP3tunes made an entry in the database table for the second user indicating that the second user now had access to the same song file (identified by the same MD5 hash) already in storage that had been uploaded or sideloaded by the first user (herein after referred to as the "master content file").  (Horowitz ¶¶ 46-50; Ex. 5 (Reese) at 38:6-40:16, 154:13-163:12.) | **Disputed.**  MP3tunes disputes this inaccurate and oversimplified description of how music is stored and retrieved in a Content-Addressable Storage system.  *See Supra* MP3tunes' response to SUF 20. Additionally, Plaintiffs' use of the phrase "access to the same song file" is vague and without foundation.  As stated above, when two bit-for-bit identical data blocks are stored, they are assigned the same MD5 hash tag.  Professor Horowitz has only established that multiple users have stored bit-for-bit identical data blocks in the MP3tunes system.  He has not established how many copies of those bit-for-bit identical data blocks are stored on the MP3tunes servers. Indeed, as Mr. Reese testified, it is impossible to know how many copies of a bit-for-bit identical data block is on the server at any given time.  GPG Dec. ¶ 4, Ex. GG (Reese 32:17-33:15) | Defendant has not submitted a proper response to this fact but again relies on a frivolous definitional objection and an unresponsive argument.  Users access files, and the unrebutted testimony of Professor Horowitz shows that only a single, accessible copy of any given file is stored at one time and that this single file is shared by more than one user.  *Id.*; Horowitz ¶¶ 46-50.  Defendant does not rebut this testimony, and accordingly it is **UNDISPUTED.**  *See* Pls. Reply-SUF ¶20, supra.  *See also* Supp. Horowitz ¶¶30-36 (explaining how Reese's arguments in his Declaration in Support of Defendant's Motion for Summary Judgment – that in the process of routine system maintenance Defendant sometimes makes "multiple copies of raw data blocks" that no users ever access – does not rebut Plaintiff's factual assertions). |
| 23. | The same pattern held true for all subsequent users who sideloaded or uploaded a song file that was digitally identical to another song file already in storage on the MP3tunes servers:  additional copies of the song files | **Disputed.**  *See Supra* MP3tunes' response to SUF 22. | Defendant's objections to Pls. SUF ¶ 22 do not rebut the statements of fact in this paragraph, and accordingly they are **UNDISPUTED.**  *See* Pls. Reply-SUF ¶ 22, *supra*. |

| | | |
|---|---|---|
| | uploaded by subsequent users were not permanently stored on MP3tunes servers; rather, MP3tunes made an entry in the database table for each subsequent user indicating that the subsequent user now had access to the same master content file already in storage that had been uploaded or sideloaded by the first user.  (Horowitz ¶ 48; Ex. 5 (Reese) at 154:13-163:12, 168:2-23.) | | |
| 24. | When any of those MP3tunes users who had uploaded/sideloaded digitally identical song files played that song from their MP3tunes locker account, MP3tunes accessed the same master content file to stream (i.e., play) the song to all those users.  (Horowitz ¶ 49; Ex. 5 (Reese) at 168:2-23, 174:8-180:3; Ex. 21.) | **Disputed.**  MP3tunes disputes this inaccurate and oversimplified description of how music is stored and retrieved in a Content-Addressable Storage system.  *See Supra* MP3tunes' response to SUF 20. Additionally, the term "digitally identical" is vague, without foundation and misleading. The term "file" is vague, without foundation and misleading.  The phrase "same master content file" never appears in the cited evidence. In addition, Plaintiffs cite conflicting evidence for this proposed fact. Mr. Horowitz claims "MP3tunes provides multiple users with access to a single digital music file, whether for playback or downloading."  Horowitz ¶ 49.  Mr. Reese's testimony contradicts this claim.  GPG Dec. ¶ 4, Ex. GG (Reese 170:2-171:18). | Defendant has not submitted a proper response to this statement and again relies on frivolous definitional challenges.  *See* Pls. Reply-SUF ¶20, *supra*. The cited testimony of Reese discusses how a system makes temporary copies of a file in its memory, or "cache," which Reese later admitted were all deleted. *See* Ex. 5(Reese) 174:4-7; *see also* Pls. Reply-SUF ¶ 22, *supra*.  This testimony does not rebut the fact that multiple users access the same file.  Accordingly, the statements of fact in this paragraph are **UNDISPUTED.** |
| 25. | 2,598 files embodying sound recordings and compositions owned by the plaintiffs were played by multiple MP3tunes users from master content files.  (Horowitz ¶¶ 54-55 & | **Disputed.**  First, *see supra,* MP3tunes' response to SUF 1-2; the cited evidence provides no evidence of Plaintiffs' ownership of all of these sound recordings | Defendant has cited no evidence rebutting the factual statements in this paragraph and accordingly they are **UNDISPUTED.**  See Plaintiffs' Reply to ¶¶1-2, 24. |

| | | | |
|---|---|---|---|
| | Exs. O-P.) | and compositions. Second, *see supra*, MP3tunes' response to SUF 24. | |
| 26. | MP3tunes displayed Cover Art to its users when they were listening to songs through the Locker Website and when they were uploading songs using the LockerSync program.  (Ex. 4 (Robertson) at 335:8-19; Ex. 9 (Goodwin) at 30:16-31:8, 31:11-13, 32:6-23, 35:9-22; Ex. 5 (Reese) at 355:6-356:5.) | **Disputed.**  To the extent that Plaintiffs use the term "display" to suggest an infringing act, the proposed fact calls for legal conclusions that violate Local Rule 56.1 and such a statement should be stricken.  The cited evidence provides no support for the assertion that the referenced "Cover Art" was infringed.  The record shows that Defendants have a license to cover art at issue in this litigation.  Pl. SUF ¶ 32. | Defendant has not submitted a proper response to this fact.  There is no reference to "infringement" in this fact.  The word "display" has its ordinary meaning.

The cited testimony supports the statement that cover art was displayed to users.  In addition, Exhibit V to the Declaration of Ellis Horowitz contains a copy of cover art images owned by Plaintiffs and the corresponding image stored on MP3tunes' servers. MP3tunes has presented no evidence rebutting this fact.  Accordingly, this fact is **UNDISPUTED.**

MP3tunes' argument that it had a license for cover art is irrelevant to this paragraph, and is addressed in paragraph 35 below. |
| 27. | During all times relevant to this litigation, the Cover Art images MP3tunes displayed to users were stored on MP3tunes servers. (Horowitz ¶¶ 78-79; Ex. 5 (Reese) at 346:19-347:19; Ex. 5 (Reese) Exs. 22-23.) | **Disputed.**  Plaintiffs' use of the phrase "During all times relevant to this litigation" is intentionally overly broad and vague.  The testimony from Mr. Goodwin, the engineer who created the source code for the cover art queries, establishes that cover art was no [sic] introduced to MP3tunes until sometime after October 2006.  GPG Dec. ¶ 6, Ex. II (Goodwin 38-6:12)  In addition, this proposed fact calls for a legal conclusion. *See supra* MP3tunes' response to SUF 26. | Defendant has not submitted a proper response to the fact but again disputes a definition that is not material to the stated fact.  The material fact is that MP3tunes stored Cover Art images on its servers.  *See* Plaintiffs' Reply to ¶ 26.  Defendant has cited no evidence rebutting the material factual statements in this paragraph.  Accordingly, this fact is **UNDISPUTED.** |
| 28. | During all times relevant to this litigation, when users were uploading songs to their | **Disputed.**  MP3tunes disputes Plaintiffs' inaccurate and oversimplified | Defendant's lengthy list of digressions and definitional challenges do not dispute that it is a function of the |

| | | |
|---|---|---|
| | MP3tunes locker using the LockerSync program, the LockerSync program would retrieve Cover Art images from the Amazon.com ("Amazon") website and cause those images to be copied to and stored on MP3tunes servers.  (Ex. 4 (Robertson) at 335:8-19; Ex. 9 (Goodwin) at 31:11-13, 32:6-23, 35:9-22; Ex. 5 (Reese Tr.) at 355:6-356:17; Horowitz ¶¶ 78-81.) | characterization of the LockerSync program. The Locker sync program will only retrieve cover art images if the user configures the program to do so and then, only if the user has no cover art images on his personal computer.  The user can choose whether or not to retrieve cover art images.  GPG Opp. Dec. ¶ 6, Ex. II (Goodwin 35:12-14); GPG Opp. Dec. ¶ 3, Ex. FF Robertson 327:3-8)  If the user elects to retrieve cover art images, Lockersync will first attempt to retrieve cover art that is embedded within the file itself (in the ID3 tag) or from the user's personal computer before  utilizing the Amazon.com API.  GPG Opp. Dec. ¶ 6, (Goodwin 68:6-12); GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 334:15-25); GPG Dec. ¶ 4, Ex. GG (Reese 332:12-20).  Additionally, the user controls whether such images are displayed by his choice of media players as not all interfaces display images.  GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 339:13-340:14.  Further, Plaintiffs' use of the phrase "During all times relevant to this litigation" is overly broad and vague.  See supra MP3tunes' response to SUF ¶ 28.  To the extent that Plaintiffs use the term "copied" to suggest an infringing act, the proposed fact calls for legal conclusions.  See supra MP3tunes' response to SUF 26. | MP3tunes software to retrieve Cover Art from Amazon.com and to display it to users of the LockerSync program. Whether a user must "configure" the program to retrieve the Cover Art from Amazon, whether the MP3tunes software also searches user hard drives for other images, or whether a user's choice of media players will keep the Cover Art from displaying in some instances pose immaterial and nonresponsive caveats to the facts asserted in this paragraph, which are **UNDISPUTED.**  See Plaintiffs' Reply to ¶26.<br><br>Furthermore,  the undisputed testimony shows that the default setting of the LockerSync client was to retrieve Cover Art from Amazon.  Horowitz ¶ 81.  Users were not informed about how Cover Art was being retrieved or how to prevent it.  Id.  The evidence also fails to establish that any method of retrieving Cover Art, other than through Amazon, was used prior to December 2008, the cut-off date for the infringement at issue in this case occurred.  Mr. Reese specifically testified that these other "options" for Cover Art were implemented in the August 2009 version of the LockerSync software.  GPG Opp. Ex. GG (Reese 332:12-333:6).  Mr. Robertson's testimony was discussing the present method for retrieving Cover Art, and does not contradict or otherwise affect Mr. Reese's testimony. |
| 29. | MP3tunes programmed the LockerSync software so that the default setting was that, | **Disputed.**  This proposed fact mischaracterizes the fact that retrieval of | Defendant has not submitted a proper response to this fact but has instead alleged separate, immaterial facts |

| | | | |
|---|---|---|---|
| | without the user affirmatively requesting Cover Art, the LockerSync program automatically would retrieve Cover Art images from the Amazon.  (Horowitz ¶ 81; Ex. 9 (Goodwin) at 35:9-22, 107:18-108:22.) | Cover Art is one of many "options" available to users when employing the LockerSync function and the fact that LockerSync will first attempt to retrieve the cover art locally from the ID3 tag and the user's computer.  *See supra* MP3tunes' response to SUF 28. | in order to avoid admitting an undisputed fact – that the default setting of the LockerSync program made it so Cover Art would be automatically retrieved.  Accordingly, the facts in this paragraph are **UNDISPUTED**.  *See also* Plaintiffs' Reply to ¶28. |
| 30. | The LockerSync program did not inform users that it was retrieving Cover Art from the Amazon website, or that it was obtaining Cover Art at all.  (Id.) | **Disputed.**  The cited evidence does not establish the proposed fact.  This proposed fact also mischaracterizes the fact that retrieval of Cover Art is one of many "options" available to users when employing the LockerSync function and the fact that LockerSync will first attempt to retrieve the cover art locally from the ID3 tag and the user's computer.  *See supra* MP3tunes' response to SUF 28. | Defendant has not submitted a proper response to this fact and instead has alleged separate, immaterial facts in order to avoid admitting an undisputed fact – that users were never told that LockerSync was retrieving Cover Art from the Amazon Website.  Ex. 5 (Goodwin) at 107:18-108:22.  Accordingly these facts are **UNDISPUTED**.  *See also* Plaintiffs' Reply to ¶ 28. |
| 31. | The LockerSync program accessed the Cover Art on the Amazon website using the Amazon "application program interface" ("API") to query Amazon for Cover Art Amazon had associated with the songs the user was uploading.  (Ex. 5 (Robertson) at 335:8-19; Ex. 9 (Goodwin) at 31:11-13, 32:6-23, 35:9-22; Ex. 5 (Reese) at 355:6-356:17; Horowitz Decl. ¶¶ 78-81.) | **Disputed.**  The cited evidence does not establish the proposed fact.  The lines immediate [sic] preceding the cited Robertson and Reese testimony states that cover art comes from multiple sources, including images imbedded in the music file itself and from the user's hard drive.  GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 334:15-24); GPG Opp. Dec. ¶ 4, Ex. GG (Reese 332:12-20)  Goodwin also acknowledged that cover art images are retrieved from the user's local drive.  GPG Opp. Dec. ¶ 6, Ex. II (Goodwin 68:6-12)  *See supra* MP3tunes' response to SUF 28. | Defendant has not submitted a proper response to this fact and instead has alleged separate, immaterial facts in order to avoid admitting an undisputed fact – that one of the features of the LockerSync program used the Amazon API to query Amazon for Cover Art that Amazon had associated with songs uploaded by a user.  Accordingly, this fact is **UNDISPUTED**.  *See also* Plaintiffs' Reply to ¶ 28. |

| 32. | To use the Amazon API, MP3tunes (or someone acting on its behalf), needed to obtain a "partner token" from Amazon, which required MP3tunes to agree to Amazon's contractual terms of use. (Horowitz ¶ 78; Ex. 4 (Robertson) at 322:17-325:14; Ex. 5 (Reese) at 383:11-384:17.) | **Undisputed.** | |
| 33. | As one of its terms of use, Amazon prohibited companies using its API to copy the Cover Art images onto their servers; API users were permitted only to "link" to copies of the Cover Art images stored on Amazon's servers. (Tarpey ¶ 4 & Ex. C.) | **Disputed.** Plaintiffs selective reference to one term of the overall Amazon agreement is misleading. The Tarpey declaration and its accompanying exhibits demonstrate that, per Amazon's Associates Program Operating Agreement, Amazon permits companies to "copy and display" Amazon "Content." Content is defined to include Cover Art for music sold at Amazon.com. on their websites. Tarpey ¶ 4 & Ex. A. | Defendant cite to an inapplicable agreement that did not go into effect until September 2010. The relevant Amazon Associates Program Operating Agreement specifically forbids copying of content and storing it elsewhere. See Tarpey Ex. C at ¶ 4(n), Ex. B at ¶ 2; *see also* Pls. Reply pp. 7-8. The evidence that MP3tunes cites does not contradict this undisputed testimony. Accordingly, this fact is **UNDISPUTED.** |
| 34. | As another of its terms of use, Amazon prohibited websites from using the Cover Art images unless the "principal purpose" of the website was to drive sales of Amazon products. Id. | **Undisputed.** | The original statement of fact contained an error. The actual citation states "solely for the purpose" not "principal purpose." Tarpey ¶ 4 & Ex. C |
| 35. | The copying of Cover Art images to the MP3tunes server was not authorized by Amazon. (Tarpey ¶ 5 & Ex. A-C.) | **Disputed.** Plaintiffs' inclusion of argumentative conclusory statements in their statement of uncontroverted facts violates Local Rule 56.1 and those statements should be stricken. Moreover, such a statement is not supported by the cited evidence. *See Supra* MP3tunes' response to SUF 33. The Tarpey declaration is based on limited set of | The fact at issue in this paragraph is whether MP3tunes has a license to utilize Cover Art, not whether MP3tunes is an affiliate of Amazon or whether MP3tunes sends traffic to Amazon in some way. MP3tunes' bears the burden of proving the existence of a valid license from Plaintiff. The contract governing the retrieval of content from Amazon explicitly states that the party retrieving content may not store the |

16

| | | | |
|---|---|---|---|
| | | assumed facts and does not address the actual system implemented by MP3tunes, which complies with the terms of the agreement. MP3tunes is an advertising affiliate. MP3tunes advertises products at several different locations throughout the site:  1) there is an Amazon store section of the website; 2) When listening to a track, there is a song recommendation area that directs the users to similar music with links to Amazon.com; 3) the MP3tunes music player also has a "buy more songs like this" section with links to music on Amazon.com.  GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 325:14-327:2)  Indeed, over the past 3 years, MP3tunes has sent over 20,472 users to Amazon.com from MP3tunes resulting in over 1,271 purchases being made.  MR Opp. Dec. ¶ 4. | content on its servers.  Tarpey ¶ 5 & Ex. B-C.  The agreements also state that the *sole purpose* of using material obtained from Amazon will be to drive traffic back to Amazon.  MP3tunes has not rebutted Plaintiffs' evidence that it stores Cover Art on its servers in violation of the Amazon agreement.  MP3tunes has also failed to present *any evidence* that the use of Cover Art is for the "sole" purpose of driving traffic to Amazon.  The Tarpey declaration does not need to address every nuance of the MP3tunes' system, because two activities (the unauthorized storage of Cover Art, and the use of Cover Art for the purpose of displaying it to users during playback of songs they already own) clearly are impermissible under the licenses in evidence.  MP3tunes has failed to come forth with any agreement or evidence that these activities were authorized by Plaintiffs.   Accordingly, this fact is **UNDISPUTED.**  As an aside, MP3tunes' cited testimony in no way establishes that the Amazon links that MP3tunes claims to offer are related to the storage, retrieval, and display of Cover Art.  In fact, the testimony indicates the opposite is true: any links to Amazon from MP3tunes' websites have no relationship to the storage and display of Cover Art.  Gulia Opp. Ex. FF (Robertson 325:14-327:2). |
| 36. | MP3tunes did not obtain a license from the EMI Label Plaintiffs to reproduce their copyrighted Cover Art.  (McMullan Decl. ¶ | **Undisputed.** | |

| | | |
|---|---|---|
| | 10.) | | |
| 37. | Tens of thousands of files representing 328 distinct pieces of Cover Art owned by the EMI Label Plaintiffs were reproduced by MP3tunes on its server. (McMullan Decl. ¶ 5 & Ex. B; Horowitz ¶ 80 & Ex. V.) | **Disputed.** *See supra* MP3tunes' response to SUF 3. The cited evidence provides no evidence of Plaintiffs' ownership of all of these Cover Arts. | Defendant's objection is invalid for the reasons set forth in Pls. Reply pp.7- 8. *See* Pls. Reply-SUF ¶ 3. Accordingly, this fact is **UNDISPUTED.** |
| 38. | Plaintiffs sent MP3tunes three take down notices advising of "countless" instances of copyright infringement occurring on the Sideload Website and Locker Website (the "EMI Takedown Notices"). Those Takedown Notices expressly told MP3tunes that the infringement was far more extensive than the specifically identified infringing files identified. (Exs. 24-26.) | **Disputed.** First, the term "Takedown Notices" is without foundation and misleading. Second, the cited evidence does not support the proposed fact. The letters referenced by Exs. 24-26 were not sent by any of the plaintiffs in this litigation. Def. SUF ¶¶ 68 and 75. | Defendant has not submitted a proper response to this fact and has again engaged in frivolous definitional challenges. Tellingly, it has even used the very term "takedown notices" it allegedly finds to be without foundation in its response to the next fact. Moreover, there is no evidentiary support for Defendants' position. Defendant's contentions are argument purportedly supported by citations to passages of Defendant's SUF that are in turn only citations to Exs. 24-26 (the Takedown Notices). These documents clearly establish the statements in this paragraph, and accordingly they are **UNDISPUTED.** |
| 39. | Additionally, the EMI Takedown Notices collectively advised MP3tunes of 416 specific infringing files available through the Sideload and Locker Websites. Id. | **Disputed.** *See supra* MP3tunes' response to SUF 38. The term "files" is misleading and without foundation. The take down notices referenced links to third party websites available through Sideload.com. Additionally, MP3tunes disputes that all such links were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85. | Defendant has not submitted a proper response to this fact and again has engaged in frivolous definitional challenges. Defendant submits no evidence challenging the plain language of the Takedown Notices, which is accurately reflected in this paragraph. Accordingly, the facts in this paragraph are **UNDISPUTED.** *See* Pls. Reply-SUF ¶ 38. Defendant's citation to paragraph 85 of its own SUF fails to establish that any of the specific works on the EMI Takedown Notices were authorized for use through the Sideload Services. *See* Pls. Counter-SUF ¶ 85; Pl. Opp. pp. 7-8. Furthermore, MP3tunes' |

| | | | argument, even if supported, is irrelevant. If MP3tunes suspected anything improper about the EMI Takedown Notices, the proper procedure was to send a notification to its users that the work was subject to a Takedown Notice and give the user the opportunity to challenge the notice. The failure to follow this procedure means MP3tunes is not able to claim DMCA safe harbor protection. Pls. Reply pp.10-12. |
|---|---|---|---|
| 40. | MP3tunes also received takedown notices from other copyright owners or their representatives indentifying infringing files available without authorization on MP3tunes' Websites, including notices from major record labels and individual artists. (Exs. 27-31, 32, 33, 34, 35-43, 46.) | **Disputed.** The term "Takedown Notices" is without foundation and misleading. The term "major record labels" is vague and without foundation. The term "individual artists" is vague and without foundation. The term "files" is misleading and without foundation. The take down notices referenced links to third party websites available through Sideload.com. | Defendant has not submitted a proper response to this fact and again has simple made frivolous definitional challenges. MP3tunes offers no alternative reading of the terms to which it objects, its objections are unsupported by evidence, and the evidence cited supports common sense readings of all of the challenged terms. Accordingly, this fact is **UNDISPUTED.** |
| 41. | Every member of the MP3tunes executive team repeatedly used MP3tunes' Sideload Services to sideload infringing song files, including the following: | **Disputed.** The proposed facts calls for a legal conclusion and should be stricken for violation of Local Rule 56.1. In addition, the cited evidence provides no support for the assertion that the referenced "sideloads" were infringing. The record shows that Plaintiffs have expressly and implicitly authorized the "copying" of digital music on the Internet and are incapable of determining whether the songs are [sic] issue are unauthorized. See Def. SUF ¶ 85. | MP3tunes has presented no evidence to rebut Plaintiffs' evidence that MP3tunes' executives sideloaded numerous infringing files. *See* Horowitz ¶¶ 82-85, Ex. W(i)-(xi), X. Moreover, for the reasons set forth in Plaintiffs' Counterstatement of Undisputed Facts ¶ 85, Defendants have set forth no competent evidence to support this objection.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 41. a. | Robertson sideloaded numerous files embodying EMI recordings from file storage | **Disputed.** First, Plaintiffs' characterization of these files as "numerous" is vague and | Defendant produced user ID numbers for Mr. Robertson, reflected in Horowitz ¶82 and reflected in |

| | | | |
|---|---|---|---|
| | sites, including www.fileden.com and www.myfilestash.com.   (Horowitz ¶ 84(a) & Exs. W(i), W(vi); Ex. 44, 45.) | foundationless. Second, Plaintiffs cited evidence provides no support for the assertion that it was Mr. Robertson that sideloaded files from storage sites.  This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | Ex. 122.  Horowitz used this information to identify the files Robertson had sideloaded, which included files from the storage sites referenced in this paragraph.  In addition, Exhibit W(i) and W(vi) reflect the sideloading activity of two of Michael Robertson's accounts.  These exhibits show that Mr. Robertson sideloaded at least 9 files from the www.fileden.com and www.myfilestash.com websites, including at least 5 songs owned by the EMI Labels.  Horowitz ¶ 84, Exs. W(i), W(vi).  These were among many other examples of unauthorized sideloading activity by Michael Robertson.  Horowitz ¶ 84, Exs. W(i), W(vi), X.  Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| 41. b. | Robertson sideloaded The Police's "Every Breath You Take" from the Roseville Sugarbears high school swim team website. (Horowitz ¶ 84(f) & DVD Ex. 4; Ex. 87.) | **Disputed.**  Plaintiffs cited evidence provides no support for the assertion that it was Mr. Robertson who allegedly sideloaded the Police's "Every Breath You Take" from the Roseville Sugarbears high school swim team website.  This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | Defendant produced user ID numbers for Mr. Robertson, reflected in Horowitz ¶82 and reflected in Ex. 122.  Professor Horowitz used this information to identify the files Robertson had sideloaded, which included files from the storage sites referenced in this paragraph.  *See also* Horowitz ¶ 84, Exs. W(i), W(vi), X, DVD Ex.4, .  Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| 41. c. | Robertson sideloaded a Michael Jackson song from a French website that urged people to download its music before it was shut down "under censorship pressure of a few billionaires."  (Horowitz ¶ 84(d); Exs. 47-48.) | **Disputed**  First, this statement is irrelevant because Plaintiffs' do not own any rights to any Michael Jackson music, which is owned by Sony Music Entertainment.  Second, Plaintiffs cited evidence provides no support for the proposed fact.  The website in question was written in French and | This fact is offered to demonstrate that Robertson used the Sideload Services to obtain copyrighted music files from pirate websites, and as such, which major record label owns the copyrights in those files is irrelevant.  Defendant produced user ID numbers for Mr. Robertson, reflected in Horowitz ¶82 and reflected in Ex. 122.  Horowitz used this information to identify the |

| | | Plaintiffs' quote from a computerized Babelfish translation, which on its face makes no sense and appears inaccurate. (Exs. 47-48.) Additionally, Plaintiffs cited evidence provides no support for the assertion that it was Mr. Robertson who allegedly sideloaded a Michael Jackson song. This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | files Robertson had sideloaded, which included files from the storage sites referenced in this paragraph. Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| --- | --- | --- | --- |
| 41. d. | Robertson sideloaded a Madonna song from a site offering "10 million mp3z." (Horowitz ¶ 84(e); Ex. 49.) | **Disputed.** First, this statement is irrelevant because Plaintiffs' do not own any rights to any Madonna music, which is owned by Warner Music Group and Live Nation. Second, Plaintiffs' cited evidence does not demonstrate that it was Mr. Robertson who sideloaded a Madonna song from a site offering "10 million mp3z." This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | This fact is offered to demonstrate that Robertson used the Sideload Services to obtain copyrighted music files from pirate websites, and as such, which major record labels owns the copyrights in those files is irrelevant. Defendant produced user ID numbers for Mr. Robertson, reflected in Horowitz ¶82 and reflected in Ex. 122. Horowitz used this information to identify the files Robertson had sideloaded, which included files from the storage sites referenced in this paragraph. Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| 41. e. | Emily Richards, MP3tunes' President, sideloaded songs from the EMI artists Coldplay and Radiohead from the file storage site www.ezarchive.com; the Beatles recording of "In My Life" from a student's personal webpage at Oregon State University; and nearly an entire John Lennon album from the online storage site www.onlinestoragesolutions.com. | **Disputed.** Plaintiffs cited evidence does not demonstrate that it was Ms. Richards who sideloaded these songs. This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | Defendant produced user ID numbers for Ms. Richards, reflected in Horowitz ¶82 and reflected in Ex. 122. Horowitz used this information to identify the files Richards had sideloaded, which included files from the storage sites referenced in this paragraph. Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |

| | (Horowitz ¶¶ 84(i), (j), (l), (r); (Exs. 50-52.) | | |
|---|---|---|---|
| 41. f | Mark Wooten, another member of MP3tunes' executive team, sideloaded 16 songs by EMI artist the Beastie Boys from the online storage website www.idisk.mac.com.  He sideloaded a song by the Beatles from the fileserver of Wheaton College in Massachusetts.  And he sideloaded a song by EMI artist David Bowie from the website of a store based in New Jersey that sells electronic components for use in military equipment.  (Horowitz ¶¶ 84(x), (aa), (dd); Exs. 53, 54, 90, 91). | **Disputed.**  Plaintiffs cited evidence does not demonstrate that it was Mr. Wooten is an MP3tunes executive or that he sideloaded the songs referenced by Mr. Horowitz.  This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | Defendant produced user ID numbers for Mr. Wooten, reflected in Horowitz ¶82 and reflected in Ex. 122.  Horowitz used this information to identify the files Wooten had sideloaded, which included files from the storage sites referenced in this paragraph.  Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| 41. g | Doug Reese, MP3tunes' Chief Technology Officer, sideloaded a songs by the Beatles, "A Day in the Life," from the file storage websites www.filefactory.com.  Reese also sideloaded nine songs by the EMI band Coldplay from the personal website of a French citizen who primarily posted photos of her various vacation travels.  (Horowitz ¶¶ 84 (s) (v); Ex. 87, 88). | **Disputed:**  Plaintiff's cited evidence does not demonstrate that it was Mr. Reese that [sic] sideloaded the songs referenced by Mr. Horowitz.  This statement is made without foundation and without personal knowledge and is, therefore, inadmissible. | Defendant produced user ID numbers for Mr. Reese, reflected in Horowitz ¶82 and reflected in the Ex. 122.  Horowitz used this information to identify the files Reese had sideloaded, which included files from the storage sites referenced in this paragraph.  Defendant has no evidence to rebut this point, and accordingly it is **UNDISPUTED.** |
| 42. | The music files sideloaded by MP3tunes' executives include files from prominent recording artists such as the Beatles, the Beastie Boys, Sting, Radiohead, Coldplay, | **Disputed.**  *See supra* MP3tunes' response to Pl. SUF 41(a)-(g). | *See* Plaintiffs' Reply to ¶41. |

| | | | |
|---|---|---|---|
| | Billy Joel, Madonna, Michael Jackson, and Led Zeppelin.  (Horowitz ¶ 84, Exs. W(i)-(xi).) | | |
| 43. | Defendant's executive team sideloaded 171 of plaintiffs' works at issue on this motion.  (Horowitz Ex. Z.) | **Disputed.**  The evidence does not demonstrate that plaintiffs own the 171 works to which they refer.  *See supra* MP3tunes' response to Pl. SUF ¶¶ 1-2.  Additionally, the cited evidence does not demonstrate that it was Defendants' executives who sideloaded the alleged 171 works.  This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. | Defendant's challenge to Plaintiffs' ownership of the works at issue is meritless.  See Plaintiffs' Reply ¶¶1-2.  Horowitz Ex. Z is a chart of all of the sideloads by MP3tunes employees, and this exhibit includes works sideloaded by MP3tunes executives with their admitted User ID numbers.  *See* Horowitz ¶ 82; Ex. 122.  Horowitz Ex. X is a chart of only those works owned by Plaintiffs at issue on summary judgment that were sideloaded by MP3tunes executives, also indexed by the admitted User ID numbers.  This evidence conclusively proves that these works at issue were sideloaded by MP3tunes executives.  Accordingly, this fact is **UNDISPUTED.** |
| 44. | Neither the source sites from where the files were sideloaded nor the MP3tunes executives were authorized to reproduce or distribute EMI works.  (Abitbol ¶¶ 3-5; McMullan ¶¶ 4, 10) | **Disputed.**   First, the proposed facts calls for a legal conclusion and should be stricken for violation of Local Rule 56.1.  Second, there is no evidence to support that Plaintiffs own the 171 works in question.  *See supra* MP3tunes' response to Pl. SUF ¶¶ 1-2.  Third, the record shows that Plaintiffs have expressly and implicitly authorized the reproduction and distribution of their works on the Internet to the extent that they are incapable of determining whether the 171 songs at issue are unauthorized or not.  See Def. SUF ¶ 85.  Indeed, many of the cited songs come from authorized distributors | Defendant's challenge to Plaintiffs' ownership of the works at issue is meritless.  *See* Plaintiffs' Reply ¶¶1-2.  Defendant's claim that Plaintiffs authorized the distribution of their works is unsupported by competent evidence.  *See* Pls. Counter-SUF ¶ 85.  Furthermore, MP3tunes does not even attempt to offer evidence showing that any (let alone "many") of these specific files were authorized for download.  Defendant's citation to paragraph 85 of its own SUF fails to establish that any of the specific works at issue on summary judgment were authorized for use through the Sideload Services.  See *id.*; Pl. Opp. pp 7-8.  Accordingly, this fact is **UNDISPUTED.** |

| | | such as Amazon.com and Spin.  Id. | |
|---|---|---|---|
| 45. | MP3tunes employees undertook a project on behalf of MP3tunes whereby they sought out websites offering music that they could sideload as a means of populating the Sideload Website.  (Ex. 11 (Lindahl) at 151:3-152:22; Exs. 55-58.) | **Disputed.**  There is no evidence to support this statement. First, Ms. Lindahl's testimony does not demonstrate the proposed fact. Ms. Lindahl does not testfy [sic] that there was project whereby employees sought out websites offering music that they could sideload as a means of populating the Sideload Website on behalf of MP3tunes. Ex. 11 (Lindahl) at 151:3-152:22. Nor do the email exchanges and charts cited in Exs. 55-58 demonstrate the proposed fact. | Lindahl answered "Yes" in response to the question "Are you aware of any projects where you and other people at MP3tunes specifically sought out websites on the Internet to locate files and sideload them into the Sideload Index?" Ex. 11 (Lindahl) at 151:11-15); *see also* Ex. 57 at DSP00121 (where Lindahl addresses the MP3tunes "Team" and says "As requested by Michael [Robertson] for sideloading purposes here is a list of some files featuring free MP3s.  Let me know if you need more!").  She also testified that when the MP3tunes employees engaged in such projects, they did so as employees, not for personal reasons. *Id.* 152:17-22.  Defendant's challenge to this evidence is meritless. Accordingly, this fact is **UNDISPUTED.** |
| 46. | Executives openly discussed having MP3tunes employees "seed[ ]" the sideload index themselves with "higher quality tracks" by "sideloading desirable tracks ourselves, which would put them in the [Sideload Website] index and get them out there."  (Ex. 56). | **Disputed.**  Plaintiffs selectively quotes from a document to distort its meaning.  The passage shows the MP3tunes employs [sic] discussed different ways to feature music on its websites. Ex. 56 The discussion of auto-populating top rated tracks is a reference to a proposal to obtain a license from artists who were selling music through the MP3tunes.com music store, make these tracks available for free at Sideload.com, and next to every song put "Buy the entire album at MP3tunes." Id., Robertson Opp. Decl. ¶ 2. Furthermore, this proposal was never implemented.  Robertson Sup. Decl. ¶ 2. | MP3tunes' reference to the supplemental declaration of Michael Robertson does not support the argument that the proposal to "seed" sideload "with higher quality tracks" was never implemented.  MP3tunes executives, and indeed, Michael Robertson, stated that in seeding the Sideload index "the goal here is not to showcase our music store, but instead put more interesting content into sideload.com …" Ex. 56 at DSP 001815; *see also* Ex. 57 at DSP 00121. Furthermore, evidence that MP3tunes executives attempted to populate the sideload website with music files is not limited to Exhibit 56; *see also* Ex. 37 (where Lindahl addresses the MP3tunes "Team" and says "As requested by Michael [Robertson] for sideloading purposes here is a list of some files featuring free MP3s. Let me know if you need more!"). Accordingly, |

| | | this fact is **UNDISPUTED.** |
|---|---|---|
| 47. | MP3tunes was notified that users were posting their own personal music files on their own personal websites or web servers, and then "sideloading" that music to their music "locker" – a practice that resulted in those users' personal music files being made publicly available on the Sideload Website. (Ex. 5 (Reese) at 450:11-453:19, 464:17-20; Exs. 59-62); Ex. 4 (Robertson) at 188:9-18). | **Disputed.**  The cited references do not support this statement.  The evidence establishes that on at least one occasion, MP3tunes discovered that a small number of its users were "gaming" the system.  Gaming is when users write script that allows them to sideload their personal music collection from a directory website into their lockers to get around locker size limitations for unpaid lockers.  GPG Opp. Dec. ¶ 4, Ex. GG (Reese 464:8-24)  The domains for these websites were blocked, which removed links from those websites from Sideload.com and prevented any further links from that website from appearing in the Sideload search engine.  GPG Opp. Dec. ¶ 4, Ex. GG (Reese 464:17-20; 818:6-821:20; Exs. 36 and 73); GPG Opp. Dec. ¶ 3, Ex. FF Robertson 214:22-217:15; Def. SUF ¶ 67. | Defendant's citations merely attempt to prove that, in some cases, once MP3tunes became aware of users gaming the system, MP3tunes disabled those users' domains as sources for other sideloads.  Notably, Defendant's executives did not testify that files which were accessed from "gaming" users' domains were removed from user lockers, or that the domains were blocked because of copyright infringement.  Accordingly, this fact is **UNDISPUTED.** |
| 48. | Users warned MP3tunes that source sites listed on the Sideload Website "were sites that had no legal right to provide access to the MP3 files." (Ex. 75; see also Exs. 92, 69, 72).  For example: | **Disputed.**  The cited exhibits do not demonstrate that users "warned" MP3tunes that source sites listed on the Sideload Website "were sites that had no legal right to provide access to the MP3 files." | MP3tunes presents no evidence disputing or contradicting the cited exhibits.  Plaintiffs respectfully state that the exhibits speak for themselves.  Accordingly, this fact is **UNDISPUTED.** |
| 48. a. | One user contacted MP3tunes, writing: "Please stop directly linking to Johnny Cash and Biff-Five Feet High and Rising on www.warble.org. I obviously don't own the rights…" (Ex. 96.)  MP3tunes did not | **Disputed.**  The cited evidence does not demonstrate the proposed fact.  The language quoted in the proposed fact appears in the cited email.  However, there is no evidence that MP3tunes did not remove those files. | Ex. 96 clearly reveals that MP3tunes's response to this user was to cut and paste MP3tunes's DMCA policy regarding takedowns into a response, without any further follow up.  Defendant offers no proof that it removed the files in response.  Accordingly, this fact is |

| | remove those files. *Id.* | | **UNDISPUTED.** |
|---|---|---|---|
| 48. b. | Another user contacted MP3tunes and explained that the source for The Clash's version of "I Fought the Law" that was posted on the Sideload Website had a source "website that blatantly acknowledges that it contains infringing MP3's." (Exs. 92). | **Disputed.** Plaintiffs selectively quote from a document to distort its meaning. The language quoted in the proposed fact appears in the cited email. However, the proposed fact calls for a legal conclusion and should be stricken for violation of Local Rule 56.1. Moreover, the email was sent from an anonymous Yahoo! email address and there is no evidence that the source website was infringing. The record shows that Plaintiffs have expressly and implicitly authorized the reproduction and distribution of their works on the Internet that they are incapable of determining whether the songs at issue are unauthorized or not. *See* Def. SUF ¶ 85. | The URL listed as a source by this complainant is www.officerjellynutz.com, a website claiming to be "Citizens Against Cops" with the moniker "Remember Kids, the Only Good Cop is a Dead Cop." The page referencing downloads from The Clash, http://officerjellynutz.tryptechnics.com/anti-police_songs.php, has a banner that states "OFFICER JELLY NUTZ SAYS FUCK THE INDUSTRY – DOWNLOAD FOR FREE." Ex. 123. Defendant's protestations as to the possible legality of this site are frivolous and, in any event, are nothing more than argument unsupported by evidence. Accordingly, this fact is **UNDISPUTED.** |
| 48. c. | Yet another user explained how both webloading from a personal website and accessing a song on the Sideload Website provided the appearance of seemed to violate copyright laws, stating: "I was just wondering as I saw all those Madonna songs popping up on sideload. they were all sideloaded from some weird side that doesn't exist anymore, how can that be legal. so basically i just have to upload all my songs to a webserver, sideload them all and then the whole world can listen for free?" (Ex. 16) (errors in original)). | **Disputed.** MP3tunes objects to the mischaracterization of the cited email. The undisputed facts show that when a downloadable file is removed from a source website, the link on Sideload.com becomes inoperable. Def. SUF ¶ 25. Thus, links previously available on a now "defunct" website would not work. Additionally, this statement is not relevant because Madonna is not an EMI artist.  **Undisputed.** The language quoted in the proposed fact appears in the cited email. | Defendant's objections do not rebut the point that this user clearly made MP3tunes aware of infringement occurring via the MP3tunes services. In addition, Defendants confuse the difference between a Source URL (which can be a file) and a Referrer URL (which can be a website). Supp. Horowitz ¶ 22-24. The removal of the website, the Referrer URL, does not result in the file becoming inoperable. *Id.* ¶¶ 25-26. Defendant presents no evidence to the contrary. Accordingly, this fact – irrespective of which major record label owns the copyrights in the songs made available for free by MP3tunes services – is **UNDISPUTED.** |
| 49. | MP3tunes' CTO, Reese, admitted that many | **Disputed.** The cited evidence does not | The fact that Defendant was aware that users were |

| | | |
|---|---|---|
| of the "top" source sites for sideloading to the Sideload Website were "personal sites," i.e., "non-commercial sites," including "some college address book site." (Ex. 5 (Reese) at 461:22-464:16, 470:18-471:4; Exs. 60, 63). | demonstrate the proposed fact.  The cited evidence discusses the revelation that a small number of users were "gaming" the system. The personal websites used by these gamers were blocked by MP3tunes.  *See supra* MP3tunes' response to Pl. SUF ¶ 47. | using personal websites to sideload files and that copyright infringement occurred as a result, is **UNDISPUTED.**  *See* Plaintiffs' Reply to ¶¶47-48. Furthermore, MP3tunes has presented no evidence that these sites were blocked for copyright infringement or that files sideloaded from these sites were removed from lockers.  Moreover, as for the user who admittedly sideloaded his "massive collection" into a locker from his "own webserver," Ex. 63, Reese testified that he could not recall terminating that user's account or taking any action to identify the links to that user's files on the Sideload Website. Ex.124 (Reese) 471:10-474:25.  Defendant's objections are otherwise inapposite and irrelevant. |
| 50. | The top source sites as of January 29, 2006 contained a selection of archive, personal, and other small, amateur sites that no reasonable person could believe were authorized to provide free downloads.  (Ex. 60). | **Disputed.**  First, the proposed facts calls for a legal conclusion and should be stricken for violation of Local Rule 56.1.  Second, the record shows that Plaintiffs have expressly and implicitly authorized the reproduction and distribution of their works on the Internet that they, nor any other person, are incapable of determining whether a song is unauthorized or not.  *See* Def. SUF ¶ 85. | Defendant's have not rebutted the evidence established by Exhibit 60, which is that no reasonable person could believe that top source sites, such as www.box.net and www.fileden.com were authorized to distribute free downloads.  Exhibit 60 includes file sharing, archive and personal websites.  Furthermore, defendant's evidence does not stand for the proposition cited.  *See* Pls. Counter-SUF ¶ 85.  Accordingly, this fact is **UNDISPUTED.** |
| 51. | There are numerous third-party locker websites that allow users to upload and store their own digital files, including music files. (Horowitz ¶ 69; Ex. 64). | **Undisputed.** | |
| 52. | Robertson conceded that he was aware that many such websites permitted public access to personal files uploaded by other users, | **Disputed.**  This completely misstates the cited testimony.  Mr. Robertson testified that he thought file sharing is wrong and unfair. | Defendant does not address the cited testimony, which speaks for itself and fully supports this statement of fact.  Mr. Robertson was asked if, from his perspective, |

| | | | |
|---|---|---|---|
| | which he understood to be wrong. (Ex. 4 (Robertson) at 425:13-431:14). | This is the reason, he explained, why MP3tunes has always employed access controls and required a user name and password to access lockers – specifically to prevent file sharing (unlike any other cloud storage services). However, Mr. Robertson went on to explain that just because music is located on a locker website does not mean it is unauthorized. He gave the specific example of the Wired CD which contained tracks from major labels but was released with authorization to freely copy and distribute by anyone. Another specific example, discussed in his testimony is the Grateful Dead music found on archive.org. It is well known that the Grateful Dead allow people to record and distribute their music. GPG Opp. Dec. ¶ 3, Ex. GG Robertson 226:3-228:20; 275:13-276:15. | it would be a problem if a user "purchased the Beatles box set that came out this past Christmas, with all the remastered Beatle tracks" and posted that box set on an Xdrive server so that "anybody else can access them." After suggesting that Xdrive might be legally in the clear if they followed the DMCA as his first response, Mr. Robertson testified "I don't think that people should take copyrighted materials that they don't have permission for to [sic] distribute and put them in a place where other people can get them. I – I think that is set aside legal or illegal – I think it's unfair. I don't think it's the right thing to do." Ex. 4 (Robertson) 428:23-430:3.  

Furthermore, MP3tunes assertion that "it is well known that the Grateful Dead allow people to record and distribute their music" is unsupported by competent evidence and is, in any event, irrelevant. Similarly, Mr. Robertson's testimony that a "Wired CD" was "released with authorization to freely copy and distribute by anyone" is unsupported by competent evidence and is also irrelevant.  

Accordingly, this fact is **UNDISPUTED.** |
| 53. | Every member of MP3tunes' executive team personally sideloaded multiple files from such locker websites. (Horowitz ¶ 84 & Exs. W(i) - (xi).) | **Disputed.** The cited evidence does not demonstrate that it was Defendants' executives who sideloaded "multiple files from such locker websites." This statement is made without foundation and without personal knowledge, and is therefore, inadmissible. Additionally, the phrase "such lockers" is vague. | Defendant's conclusory objections do not rebut the detailed findings of Professor Horowitz, and Defendant presents no contrary evidence. Accordingly, this fact is **UNDISPUTED.** *See also* Plaintiffs' Reply-SUF ¶¶41-44. |

| 54. | At one time, the locker website www.fileden.com was the 6th most popular source of music on the Sideload Website. (Horowitz ¶ 69 & Ex. R.) | **Disputed.** The cited evidence does not demonstrate the proposed fact. The evidence claims to be a chart showing the "Source Domains for the works listed in the Takedown List." Thus, the evidence does not establish the alleged popularity of the www.fileden.com website on the Sideload Website. | Exhibit R to the declaration of Ellis Horowitz establishes that, among sources of music appearing on Takedown Notices, www.fileden.com was the 6th most popular source. In addition, Exhibit A to the supplemental declaration of Ellis Horowitz shows that among all sources of sideloaded music, the file sharing site www.fileden.com was the 10th most popular site overall. |
|---|---|---|---|
| 55. | At one time, the file storage website www.rapidshare.com was the 13th most popular source of music on the Sideload Website. Id. | **Disputed.** The cited evidence does not demonstrate the proposed fact. The evidence claims to be a chart showing the "Source Domains for the works listed in the Takedown List." Thus, the evidence does not establish the alleged popularity of the www.rapidshare.com website on the Sideload Website. | Exhibit R to the declaration of Ellis Horowitz establishes that, among sources of music appearing on Takedown Notices, www.rapidshare.com was the 13th most popular source. In addition, Exhibit A to the supplemental declaration of Ellis Horowitz shows that among all sources of sideloaded music, the file sharing site www.rapidshare.com was the 55th most popular site overall, with other file sharing websites, such as www.box.net appearing among the top ten most popular sites. |
| 56. | MP3tunes employees periodically reviewed lists of "top" sideload source sites that revealed the prominence of such locker sites. (Ex. 5 (Reese) at 461:19-464:7; Exs. 60, 63.) | **Disputed.** The cited evidence does not demonstrate the proposed fact. Indeed, Mr. Reese's testimony directly contradicts this statement. When asked if he periodically reviewed the top domain lists. Mr. Reese said he had no recollection of ever reviewing the "top" sideloaded sources site, not even the one time that is referenced in the cited email. GPG Opp. Dec. ¶ 4, Ex. GG Reese | Reese's purported lack of memory does not "directly contradict" or even undermine the evidence in Ex. 60, which is an email Reese wrote including the "top 100" sideload domains and analyzing what could be done with this list. Ex. 60. Defendant has not rebutted this fact with competent evidence, and as such it remains **UNDISPUTED.** |

| | | 462:4-8. | |
|---|---|---|---|
| 57. | MP3tunes received a takedown notice from a major record company identifying dozens of recordings sideloaded from the locker website www.rapidshare.com. (Ex. 33). | **Disputed** The cited evidence provides no support for the proposed fact. The evidence shows a help ticket from Daniel Carter. | Paragraph 8 of the Declaration of Andrew H. Bart Regarding Errata in Connection With Plaintiffs' Motion for Summary Judgment, filed on November 3, 2010, clearly identified this error. The corrected citation is to paragraph 28, which Defendants have not addressed. Accordingly, this fact is **UNDISPUTED.** |
| 58. | The MP3tunes employee responsible for responding to takedown notices acknowledged that www.rapidshare.com was a website used for personal files, but admitted that he was not instructed to take any action to block the site from the Sideload Website. (Ex. 10 (Krause) at 45:17-46:6, 46:13-48:14.) | **Disputed.** Mr. Kraus is not the "employee responsible for responding to takedown notices." It is undisputed that MP3tunes' president Emily Richards was the designated DMCA agent and person responsible for responding to takedown notices. GPG Opp. Dec. ¶ 7, Ex. JJ (Richards 71:8-10) Mr. Kraus was simply the engineer that was changed the status of the links so that the links would be removed and blocked from Sideload.com. | Defendant does not dispute that Mr. Krause, who Defendant admits was the "engineer that was changed [sic] the status of the links so that the links would be removed and blocked from Sideload.com" was not instructed to take any action to block www.rapidshare.com from being a source of sideloads listed on the Sideload Website. Accordingly, this fact is **UNDISPUTED.** |
| 59. | The Sideload Website promoted itself as the source for "FREE MUSIC ON THE INTERNET." (Horowitz Ex. D.) | **Undisputed** that the language quoted in the proposed fact appears on the website, but Plaintiffs' selective excerption omits the end of the sentence. Such omission alters the implications and meaning of the language quoted. The full sentence does not present the Sideload Website as the source for free music on the internet. It rather presents the Sideload Website as a tool to find music available for free on the internet and copy it to the user's locker. Horowitz Ex. D. | Defendant's characterization of the evidence is not a rebuttal. The evidence, which is the home page for the Sideload Website, clearly promotes www.sideload.com in the manner described. Accordingly, this fact is **UNDISPUTED.** |

| 60. | The opening page of the website included lists of the "Most Popular Tracks" being sideloaded. This set of tracks routinely listed copyrighted works by some of the world's most popular recording artists and composers, including Green Day, U2, the Beatles and Amy Winehouse. *Id.* | **Disputed.** The cited evidence provides no support for the proposed fact. Specifically, the exhibit does not show any links to songs by Green Day, U2, the Beatles and Amy Winehouse. Further, the cited evidence provides no support for the assertion that the referenced works were copyrighted. See supra, MP3tunes' response to SUF 1-2. Plaintiffs' characterization of those songs' artists and composers as "some of the world's most popular" is vague and foundationless and such characterization is no proof of copyright registration and/or protection. | Horowitz Exhibit D demonstrates clearly that the Sideload Website contains a "Most Popular Tracks" section and that it includes tracks by major label artists whose work is all copyrighted. Exhibit D specifically reflects that, as of the date Exhibit D was printed, Bjork, Pink Floyd, Air, Christina Aguilera, Neil Young, and Clap Your Hands Say Yeah were listed among the most popular tracks. While the specifically referenced artists do not appear on Horowitz Exhibit D, there can be no dispute that the specifically referenced artists are among those whose works have appeared on the Sideload Website. *See* Horowitz Ex. O-P. |
| 61. | MP3tunes also had access to the domains (website names) from which songs were being sideloaded, and periodically reviewed lists of the top sideloading domains. (Horowitz ¶¶ 67-69; Ex. 4 (Robertson) at 202:22-204:21; Ex. 5 (Reese) at 732:5-13.) | **Disputed.** The term "periodically" is vague and without foundation. Moreover, Plaintiffs have offered incomplete excerpts. The full Reese testimony actually demonstrates that he did not recall ever reviewing a list of top 100 links on Sideload.com. GPG Opp. Dec. ¶ 4, Ex. GG Reese 462:4-8. Moreover, the implication that such review resulted in a knowledge whether the links provided authorized downloads is inaccurate. The full Robertson testimony demonstrates that he did not have knowledge. | As stated above, Reese's purported lack of memory is insufficient to create a dispute as to whether he periodically reviewed the Top 100 Sideloads given the undisputed email evidence demonstrating that he did, in fact, review them. *See* Plaintiffs' Reply-SUF ¶56. Moreover, Defendant's citation to all of Robertson's testimony – 5 days, much of which has not been entered into the record – for the point that "he did not have knowledge" is a reflection of Defendant's lack of evidence on this point and is impossible to respond to in this context. This citation should thus be disregarded by the Court.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 62. | On numerous occasions, MP3tunes employees acknowledged that certain domains from which files were being | **Disputed.** The cited evidence provides no support for the proposed fact. The term "numerous" is vague and without foundation. | "Numerous" is not a vague term without foundation when supported by three pieces of record evidence referring to "personal" files, "user" sites and a "random |

| | | |
|---|---|---|
| | sideloaded appeared to offer infringing music, were "personal" or "non-commercial sites," or otherwise were not "legit" sideload sources.  (Bart Decl. Exs. 64-65, 66.) | The emails cited to support this statement, discuss an investigation into the user listed as number one in the Sideload Hall of Fame to determine if that user was gaming the system, but it turns out the person was "legit." | sample" of "sideload referring URLs," some of which Doug Reese admittedly believed "might not be legit." Defendant has cited no evidence to rebut the facts in this paragraph, and its objections should  be stricken and Plaintiffs' statement deemed **UNDISPUTED.** |
| 63. | MP3tunes also received numerous emails and messages from users expressing concern that the Sideload Website was offering copyrighted music for free download without authorization: | **Disputed.**  The term "numerous" is vague and without foundation.  Plaintiff's can site to only four emails/messages from users over the past five years.  The term "concern" is vague and without foundation. | Defendant does not contest any of the facts appearing in support of this paragraph. *See*  Defs. Counterstatement ¶¶63(a)-(d), below.  Accordingly, this fact is **UNDISPUTED.** |
| 63. a. | One user emailed as follows:  "Does sideload.com verify the validity of the sources of its tracks before posting them or simply post every track and then wait until somebody goes through the process of submitting a notice requesting that illegal material be removed?  I ask because I was curious about the source of the "free" files available on sideload.com so I randomly picked several artists and took a look at the online source of their tracks.  Without exception ALL of the sources I checked were sites that had no legal right to provide access."  (Ex. 67.) | **Undisputed.** | |
| 63. b. | Another user who had posted tracks on her personal site and found them on the Sideload Website wrote saying she didn't "want them seen in google (or other search engines) and point to my website."  She then identified the | **Undisputed.** | |

| | | | |
|---|---|---|---|
| | tracks.  (Ex. 68.) | | |
| 63. c | Bloggers wrote to complain that MP3tunes users were using up the bloggers' bandwidth by linking to music the bloggers had posted on their sites.  (Exs. 69-70.) | **Undisputed.** | |
| 63. d | Another user was more direct:  "A note to Michael [sic] Robertson  you should be ashamed of the ease you have created here to download copyrighted music.  I just downloaded songs from Gorillaz it was easy to do and I know they are not giving it away. I am going to delete it from my computer and find a place that I can buy it.  Not that I want to support the record industry I think that they suck but I don't steal either."  (Ex. 71; see also Ex. 72.) | **Undisputed.** | |
| 64. | MP3tunes was made aware of infringement on the Sideload Website by numerous artists and artist representatives, who requested that links to certain recordings be taken down from the Sideload Website because such recordings were not authorized for free download.  (Exs.  27-43, 46, 97; Ex. 11 (Lindahl) at 65:7-66:3.) | **Disputed.**  The proposed fact calls for a legal conclusion that violates Local Rule 56.1 and such a statement should be stricken.  In addition, the cited evidence provides no support for the assertion that MP3tunes was made aware of "infringement on Sideload Website."  The record shows that Plaintiffs have expressly and implicitly authorized the "copying" of digital music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not.  *See* Def. SUF ¶ 85.  In addition, the term "numerous" is vague and without foundation. Plaintiffs cite to only 16 messages from | Defendant's objections do not rebut the statement in this paragraph.  Accordingly, this fact is **UNDISPUTED.**  Defendant points to evidence that they allege establishes that the infringement identified by artist and artist representatives was de minimis, that the Defendant was confused about whether artists were honestly entitled to tell MP3tunes to remove their own music, and whether an artist who posts his or her own music online has the right to demand that MP3tunes remove access to that music from Defendant's websites.  Pls. Counter-SUF ¶ 85.  MP3tunes's arguments as to their weight are legal in nature and should be disregarded. |

| | | artists and their representatives received over the last 5 years.  Many of the demands were to remove links from the own artist's website where the artist made his or her music available for free download. *See e.g.* Exs. 31, 34, 36, and 40. | |
|---|---|---|---|
| 65. | MP3tunes operates and/or provides its users with the Locker Website and computer servers that store and give users access to song files.  (Horowitz ¶¶ 15-17 & Exs. B-C; see Ex. 5 (Reese) at 338:24-339:5; Ex. 17.) | **Disputed.**  The phrase "gives users access to song files" is vague and without foundation.  It is undisputed that users can only access songs they have loaded into their locker and that the "Locker Website" is not a file sharing site.  Def. SUF ¶ 17. | Defendant's citation to its own Statement of Facts does not rebut any of the statements in this paragraph.  Accordingly, this fact is **UNDISPUTED.** |
| 66. | MP3tunes developed, maintains and provides its users with the LockerSync software that enables them to upload and download songs to and from their MP3tunes lockers, and further retrieves Cover Art for users.  (Horowitz ¶ 19; Ex. 2 (Robertson) at 65:15-66:21; Ex. 4 (Robertson) at 171:11-17; Ex. 5 (Reese) at 105:20-106:7.) | **Disputed.**  The LockerSync software will only retrieve cover art if it is configured by the user to do so.  GPG Opp. Dec. ¶ 6, Ex. II (Goodwin 35:12-14); GPG Opp. Dec. ¶ 4, Ex. GG (Robertson 327:3-8)<br><br>**Undisputed.**  It is undisputed that MP3tunes developed, maintains and provides its users with the LockerSync software that enables them to upload and download songs to and from their MP3tunes lockers. | It is **UNDISPUTED** that the default setting for the LockerSync software is to retrieve Cover Art for users, and accordingly the notion that a user must "configure" the LockerSync software to do this is erroneous. Ex. 9 (Goodwin) 35:9-17 (the LockerSync software was "configured to" automatically check for Amazon art, "by default.").  The evidence that MP3tunes cites does not contradict this undisputed testimony. |
| 67. | MP3tunes developed, maintains and provides its users with the Sideload Plug-In and the Webload Feature that enable them to sideload songs into their MP3tunes lockers. (Horowitz Decl. ¶ 25 & Ex. H; Ex. 2 (Robertson) at 66:1-17; Ex. 3 (Robertson) at | **Undisputed.** | |

| | | | |
|---|---|---|---|
| | 42:15-21; Ex. 4 (Robertson) at 177:22-178:18, 470:18-471:4.) | | |
| 68. | MP3tunes operates and/or provides its users with the Sideload Website and computer servers that host, index and organize the links to songs.  (Horowitz ¶¶ 20-24.) | **Undisputed.**  The cited evidence provides no support for the proposed fact.  Specifically, the evidence does not support that MP3tunes' "host, index and organize the links to songs."  MP3tunes does not "host" links.  The links are hosted by third party websites. MP3tunes does not index or organize the third party links.  It is searchable, just as any other search engine.  DR Opp. ¶ _. | MP3tunes has not disputed this fact.  Further, the evidence that MP3tunes cites does not contradict the statement that the Sideload Website hosts *links* to files.  Defendant's contentions are nonresponsive and unsupported by evidence.  The Sideload Website provides an index of all the links that have been provided by any user.  Horowitz ¶¶ 22-28 .  It allows users to search for these links by artist, track, or album name.  *Id.*  It further displays links to these tracks.  *Id.*  This evidence is more than sufficient to demonstrate that MP3tunes "hosts, indexes and organizes" links to files, and MP3tunes' citations do not rebut this evidence.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 69. | The Sideload and Locker Websites physically reside on MP3tunes's proprietary servers, which host the song files (in the case of the Locker Website) and links to song files (in the case of the Sideload Website.) (Horowitz ¶¶ 61, 63-77.) | **Disputed.**  MP3tunes does not "host" links.  The links are hosted by third party websites. DR Opp. ¶15.  MP3tunes' servers are not "proprietary" but are industry standard servers purchased from third parties.  DR Opp. ¶ 15.<br><br>**Undisputed.**  The Sideload.com and MP3tunes.com websites reside on MP3tunes' servers.  MP3tunes also stores song files on its servers at the direction of its users. | MP3tunes is incorrect.  Plaintiffs acknowledge that the Sideload Website does not host files, but it is undisputed that it hosts links to those files, meaning that the links to songs are stored on MP3tunes' servers.  Horowitz ¶¶ 22-28, 61, 63-77.  MP3tunes' evidence does not rebut these points.  Accordingly, these facts are **UNDISPUTED.**  Moreover, the song files themselves are hosted on MP3tunes servers whenever users sideload them into "lockers."  *Id.* |
| 70. | MP3tunes controls the databases and tables used to support the Sideload and Locker | **Disputed.**  The phrase "ability to search" is | Defendant's definitional objection is frivolous, especially as Plaintiffs are describing basic features of |

| | Websites, and has the ability to search for songs or links in those tables and databases by artist, song title, or URL.  (Horowitz ¶¶ 23, 73-77 & Exs. D-F, & DVD Ex. 1, DVD Ex. 3; Ex. 74). | vague and without foundation. | the Sideload and Locker Websites.  The words used have their ordinary meaning and the testimony of Ellis Horowitz clearly establishes the foundation for this fact  Accordingly, this fact is **UNDISPUTED.** |
|---|---|---|---|
| 71. | MP3tunes has the technical ability to: | **Disputed.**  The phrase "technical ability" is vague and without foundation. | Defendant's definitional objection is frivolous, especially as Plaintiffs are describing basic features of the Sideload and Locker Websites.  The words used have their ordinary meaning. |
| 71. a. | Delete or disable access to song files from its servers.  (Ex. 73; Horowitz 63-66 & Ex. Q; Ex. 5 (Reese) at 200:12-201:11.) | **Disputed.**  The phrase "technical ability" is vague and without foundation.  While it may be possible from a purely technical aspect to disable access to song files, MP3tunes does not necessarily have the "ability" to disable access to song files if such actions violate the rights of its users and subject MP3tunes to legal liability. | Defendant's objection does not address the stated fact, which does not contemplate Defendant's unsupported conjecture about its potential "legal liability" to users or their users' rights.  This objection should be stricken.  Accordingly, this fact is **UNDISPUTED.** |
| 71. b. | Delete or disable access to links on the Sideload Website.  (Id.; Ex. 10 (Krause) at 13:5-18:25.) | **Undisputed.** | |
| 71. c. | Prevent links from appearing on the Sideload Website.  (Horowitz ¶¶ 68, 73-75 & Exs. Q , Y; Ex 5 (Reese) at 200:25-201:11.) | **Undisputed.** | |
| 71. d. | Identify the "source URL" for each song sideloaded.  (Horowitz ¶¶ 67-69, & Ex. R.; Ex. 5 (Reese) at 552:7-553:1, 901:16-905:11. | **Undisputed.** | |

| 71. e. | Block all sideloading from selected domains. (Horowitz ¶¶ 67-69 & Ex. R.; Ex. 5 (Reese) at 901:16-905:11; Ex. 5 (Robertson) at 432:7-17.) | **Undisputed.** | |
|---|---|---|---|
| 71. f. | Search for other links to the works listed in the EMI Takedown Notices, by searching its databases for the title or artist listed on the Notices.  (Horowitz ¶¶ 73-77 & Ex. T; Ex. 5 (Reese) at 733:5-24, 735:5-19; Ex. 74.) | **Disputed.**  The cited evidence and testimony does not support the proposed fact.  While Sideload.com is searchable by song title and artist, it is impossible to know whether the resulting URL links to the same work listed in the takedown notice or whether the link resolves to an authorized or unauthorized download.  See Def. SUF ¶¶ 100-103.  The record shows that Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not.  *See* Def. SUF ¶ 85. | Defendant has not submitted a proper response to this fact.  It admits that the Sideload Website is searchable as Plaintiffs posit.  Accordingly, this fact is **UNDISPUTED.**  Defendant's argument that it could not be sure that the results – i.e., several other sources for The Beatles' "Penny Lane" – would have been to the "same work" identified in the Takedown Notices is unresponsive and frivolous, as is its argument that some of these sources may have been hypothetically "authorized."  This argument  should be rejected, since the Takedown Notices state that all instances of Plaintiffs' works are not authorized to be on Defendant's websites.  Plaintiffs' Reply-SUF ¶82.  MP3tunes' further argument about "authorization" is legally irrelevant.  MP3tunes was required to respond to Takedown Notices and was not allowed to substitute its judgment about what is authorized for the judgment of Plaintiffs if MP3tunes wanted safe harbor.  *See* Pls. Reply pp. 10-12; Exs. 24-26. |
| 71. g. | Search for other songs by the same artists identified on the EMI Takedown Notices by searching its databases for the artists listed. (Horowitz ¶¶ 63-66, 73-77 & Ex. T; Ex. 5 (Reese) at 733:5-24, 734:8-24.) | **Disputed.**  The cited evidence and testimony does not support the proposed fact.  While Sideload.com is searchable by song title and artist, it is impossible to know whether the resulting URL links to the same work listed in the takedown notice or whether the link | *See* Response to paragraph 71(f).  Accordingly, this fact is **UNDISPUTED.** |

| | | | |
|---|---|---|---|
| | | resolves to an authorized or unauthorized download. *See* Def. SUF ¶¶ 100-103. The record shows that Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not. *See* Def. SUF ¶ 85. | |
| 72. | MP3tunes required each locker user to register and gave each a unique user identification number ("User ID"). (Horowitz ¶¶ 64, 70-71 & Exs. R-S). | **Undisputed.** | |
| 73. | In the normal course of its operations, MP3tunes uses the User ID to record in a database each time each user sideloads or uploads a song to an MP3tunes locker, or listens to or downloads a song from an MP3tunes locker. (Horowitz ¶ 64 & Exs. O-P). | **Disputed.** The cited evidence and testimony does not support the proposed fact. There is no evidence that MP3tunes tracks when a user listens to a song from an MP3tunes locker. Further, there is no evidence that MP3tunes associates each sideloaded track with a user ID. On the contrary, the user locker information is stored in a completely different database (the User Locker Database) than the sideload information (the Sideload Database). DR Opp. Dec. ¶ 13. The two databases operate independently. DR Opp. Dec. ¶ 13. The phrase "in the normal course of its operations" is vague and without foundation.<br><br>**Undisputed.** MP3tunes assigns each users a unique ID. The Sideload.com database has a database entry for each sideload. | The cited evidence, and numerous other evidence, supports this claim as it is taken directly from MP3tunes' system. Defendant's cited evidence is non-responsive and irrelevant. The fact that information may be stored in multiple databases does not mean that information is not used in the normal course of MP3tunes operations. MP3tunes "separate" database tables are routinely combined in the ordinary course of business. In fact, Professor Horowitz demonstrated exactly how this data could be combined. Professor Horowitz evaluated Defendant's shared databases using simple queries to make the cited conclusions and supporting charts. *See also* Supp. Horowitz ¶¶4-9 (establishing that the Sideload Website and MP3tunes Website use shared databases).<br><br>Accordingly, this fact is **UNDISPUTED.** |

| 74. | MP3tunes had the technical ability to terminate its users' locker accounts. (Horowitz ¶ 63). | **Disputed.** The phrase "technical ability" is vague and without foundation. While it may be possible from a purely technical aspect to terminate users' locker accounts, MP3tunes does not necessarily have the "ability" to do so unless that user has violated the MP3tunes' Terms of Use. | Defendant's definitional objection is unsupported and should be rejected, especially as Plaintiffs are describing basic features of the Sideload and Locker Websites. The words used have their ordinary meaning. Moreover, the stated fact speaks to the technical ability to terminate – which Defendant admits it has – and accordingly the fact is **UNDISPUTED.** And MP3tunes does not dispute the next fact (in paragraph 75, below) that it has reserved the legal right to terminate locker accounts. |
| --- | --- | --- | --- |
| 75. | MP3tunes expressly reserved the legal right to terminate subscribers' locker accounts in its Terms of Use.  (Ex. 73.) | **Undisputed.** | |
| 76. | Michael Robertson  admitted that the Sideload Website was developed to make money for MP3tunes.  (Ex. 4 (Robertson) at 175:5-10, 208:21-210:3, 379:9-380:23; see also Ex. 75.) | **Disputed.** The cited evidence do not support the proposed fact.  Ex. 75 is irrelevant to the proposed fact.  The testimony of Mr. Robertson does not assert that the Sideload Website was developed in order to make money for MP3tunes.  Rather, it shows that MP3tunes would not have considered developing the Sideload Website if it would hurt MP3tunes.  On the contrary, Mr. Robertson testified that Sideload.com is irrelevant to its locker business.  GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 378:17-18) | The testimony cited by Plaintiffs establishes that Robertson hoped to make the MP3tunes business "big" so he could then "get VC money at a good price, then [ ] get bigger, then . . . sell it."  Ex. 75.  Moreover, the portions of Robertson's testimony cited by MP3tunes cannot be reconciled with the fact that  the Sideload Website is directly marketed as the source for "FREE MUSIC ON THE INTERNET TO SIDELOAD INTO YOUR LOCKER" to all visitors to the site.  Horowitz Ex. D (Sideload Website screenshot); see also Plaintiffs' Reply ¶ 77, infra.  Indeed, in the very next question at his deposition, Mr. Robertson conceded that the Sideload Website was meaningful to the Locker business because of its potential to drive paying traffic to that site.  Ex. 4 (Robertson) at 378:19-380:2 (purpose of the Sideload Website is to drive traffic to |

| | | the Locker Website).  Accordingly, this fact is **UNDISPUTED.** |
|---|---|---|
| 77. | MP3tunes created and built-up the Sideload Website as a music "destination" to attract users, who MP3tunes could then convert into paying subscribers to its Locker Website.  (Ex. 4 (Robertson) at 208:21-210:4, 379:9-380:23; Ex. 98.) | **Disputed.**  The cited evidence does not support the proposed fact.  On the contrary, Mr. Robertson testified that Sideload.com is irrelevant to its locker business.  GPG Opp. Dec. ¶ 3, Ex. FF (Robertson 378:17-18) | The cited testimony and evidence establish that Robertson characterized the Sideload Website as follows:<br><br>"Sideload is simply a SOURCE for music.  The more engaging source it is, the more users it will get.  Sideload is what's called a destination site.  MP3tunes.com is NOT a destination site.  There's nothing to see at sideload unless you're in the market for a locker.  Sideload on the other hand is a great site for ALL MUSIC FANS."<br><br>Ex. 98 at DSP 008256 (emphasis by Michael Robertson in original).  Defendant's objections are meritless.<br><br>Furthermore, Mr. Robertson acknowledged that the Sideload Website was not irrelevant to the Locker business because of its potential to drive paying traffic to that site.  Ex. 4 (Robertson) at 378:19-380:2.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 78. | MP3tunes generated more user traffic to the Locker Website from the Sideload Website than from any other website or MP3tunes partner.  (Ex. 76 at DSP 006358.) | **Disputed.**  The cited evidence does not support this statement.  DSP 006358 states that MP3tunes.com gets more traffic from Sideload.com, relative to its other partners.  "partners" is undefined, vague and without foundation.  There is no information on referrals from non-partner websites. | Exhibit 76 establishes that Doug Reese, Defendant's Chief Technology Officer, said that MP3tunes.com gets more traffic from the Sideload Website than from any other partner site.  This evidence is unrebutted.  Accordingly, this fact is **UNDISPUTED.** |

| 79. | 11,046 different files embodying 3,476 different copyrighted works owned by plaintiffs and indentified in the exhibits to the accompanying declarations of Alasdair McMullan and Audrey Ashby were sideloaded (reproduced) by MP3tunes users using the Sideload Services.  (Horowitz ¶¶ 54-55 & Exs. O-P; McMullan Decl. Ex. A; Ashby Decl. Exs. A-B.) | **Disputed.**  First, the cited evidence provides no support for the assertion that Plaintiffs own all of these 3,476 works.  Second, the cited evidence provides no support for the assertion that the all of these works were copyrighted.  *See supra*, MP3tunes' response to SUF 1-2 | By referring only to its unsupported challenge to the ownership of the copyrighted works at issue (*see* Plaintiffs' Reply-SUF ¶¶1-2), Defendant concedes that all of the remaining assertions in this statement are true.  *See* Local Rule 56.1.  Furthermore, the cited facts clearly establish both copyright registration and copyright ownership for each file at issue.  MP3tunes has presented no evidence (and only an incorrect legal argument) to demonstrate a lack of registration or ownership.  Accordingly, this fact is **UNDISPUTED.** |
| --- | --- | --- | --- |
| 80. | Many of plaintiffs' works were sideloaded by multiple MP3tunes users.  (Horowitz Exs. O-P.) | **Disputed.**  The cited evidence provides no support for the assertion that Plaintiffs own the "many works" referred to in the proposed assertion.  *See supra*, MP3tunes' response to SUF 1-2. | By referring only to its unsupported challenge to the ownership of the copyrighted works at issue (*see* Plaintiffs' Reply-SUF ¶¶1-2), Defendant concedes that all of the remaining assertions in this statement are true.  *See* Local Rule 56.1.  Furthermore, the cited Exhibits clearly demonstrate that thousands of Plaintiffs' works were sideloaded by multiple users.  Accordingly, this fact is **UNDISPUTED.** |
| 81. | None of those works were authorized by any plaintiff to be distributed at the original website from which the work was sideloaded, or distributed or reproduced by MP3tunes or its users on or through the Sideload Website or the Locker Website. (Abitbol ¶¶ 3-4; McMullan ¶¶ 4, 10.) | **Disputed.**  The proposed fact calls for legal conclusions that violate Local Rule 56.1 and such a statement should be stricken.  In addition, the cited evidence provides no support for the assertion that "works were unauthorized" was infringed.  The record shows that Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not.  *See* Def. SUF ¶ 85.  The deposition testimony of Mr. Abitbol establishes that the Plaintiffs do not know the | Both Mr. Abitbol and Mr. McMullan testified that none of the specific referenced files were authorized for download at the sources listed.  MP3tunes has presented no evidence showing that this was incorrect as to even a single one of the listed files.  Accordingly, this fact is **UNDISPUTED.**<br><br>Defendant's claim that Plaintiffs' authorize the viral distribution of music on the internet is unsupported by the evidence.  *See* Pls. Counter-SUF ¶ 85; Pls. Opp. at 3-8.<br><br>Defendant has not demonstrated that there is any issue of material fact as to Plaintiffs' ownership of the works |

| | | full extent of their authorization of free downloads on the Internet. Def. SUF ¶ 102. Therefore, his declaration is without personal knowledge or foundation and is inadmissible. Further, Plaintiffs failed to establish that they have any ownership in the works that would allow them to authorize any copying or distribution. See supra, MP3tunes' response to SUF 1-2. | at issue. See Pls. Reply-SUF ¶¶1-2; Pls. Counter-SUF ¶85; see Local Rule 56.1. Defendant's citations to Mr. Abitbol's testimony and declaration do not at all "establish that Plaintiffs do not know the full extent of their authorization of free downloads on the Internet," see Supp. Abitbol ¶¶9-13 and Ex. A, nor do they show him to be incompetent to testify as to the EMI Music Publishing Plaintiffs' authorization of music files for free download. |
|---|---|---|---|
| 82. | The EMI Takedown Notices expressly instructed MP3tunes to remove access to the songs from both the Sideload Website and the Locker Website. (Exs. 24-26; see also Ex. 4 (Robertson) at 238:5-20.) | | This paragraph was omitted from Defendant's counterstatement and is thus deemed admitted pursuant to Local Rule 56.1. |
| 83. | MP3tunes' did not remove the music files identified in takedown notices, including in the EMI Takedown Notices, from any user locker accounts into which they had already been sideloaded. (Ex. 77; Ex. 12 (Richards) at 87:24-88:3; Ex. 4 (Robertson) at 234:20-25, 286:24-287:11; Horowitz ¶¶ 63-66 & Ex. Q.) | **Disputed.** First, the term "music file identified" is vague and without foundation. The phrase "take down notices" is without foundation. The term "EMI Takedown Notices" is vague and without foundation. Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | Defendant has not submitted a proper response to this fact and has instead interposed frivolous definitional challenges. The EMI Takedown Notices are Exhibits 24-26, as is set forth in the Bart Declaration. The simple words "music," "file" and "identified" as "vague" and "without foundation" should be given their ordinary and defined meanings. Defendant offers no evidence in opposition to this fact and accordingly it is **UNDISPUTED.** |
| 84. | 4,337 different MP3tunes users had sideloaded the 657 different infringing files appearing on Takedown Notices into their MP3tunes lockers. (Horowitz ¶ 66 & Ex. Q.) | **Disputed.** Plaintiffs' inclusion of this argumentative conclusory statements in their statements of uncontroverted facts statements violates Local Rule 56.1 and should be stricken. The term "files" is misleading and without foundation. The take down notices | Defendant's claim that Plaintiffs' authorize the viral distribution of music on the internet is unsupported by the evidence. See Pls. Counter-SUF ¶ 85; Pls. Opp. at 3-8. Defendant's objection to the term "files" as |

| | | referenced only links to third party websites available through Sideload.com. Additionally, MP3tunes disputes that all such "files" were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | "misleading" and "without foundation" is unsupported and should be rejected.<br><br>Furthermore, MP3tunes citation is irrelevant. Plaintiffs have provided exhibits associated with *specific* files and have further provided testimony that none of these files were authorized for distribution from their source sites. Abitbol ¶¶ 3-4; McMullan ¶¶ 4, 10; *see also* Pls. Counter-SUF ¶¶ 85, 100-103. MP3tunes has failed to present any evidence that one of these specific files had been authorized.<br><br>Accordingly, this fact is **UNDISPUTED.** |
|---|---|---|---|
| 85. | MP3tunes readily could have disabled access to identified song files such that those song files would not have been available to MP3tunes users through their MP3tunes locker accounts. (Horowitz ¶¶ 63-65.) | **Disputed.** First, the term "readily could have disabled access" is vague and without foundation. While it may be possible from a purely technical aspect to disable access to song files, MP3tunes cannot "readily" disable access to song files if such actions violate the rights of its users and subject MP3tunes to legal liability.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | Defendant has not submitted a proper response and its vagueness objection to the phrase "readily could have disabled access" is unsupported. The words should be given their ordinary meaning. Defendant's conjecture about their potential liability for removing access to files stored in user lockers is irrelevant to the fact alleged. Accordingly, this fact is **UNDISPUTED.** |
| 86. | Instead, the song files identified in takedown notices, including in the EMI Takedown Notices, remained on MP3tunes servers and were available for all purposes to the thousands of MP3tunes locker users who had | **Disputed.** No "song files" were identified in the takedown notices. The take down notices referenced only links to third party websites available through Sideload.com. In addition, the term "for all purposes" is vague and | Defendant has not submitted a proper response to this fact. The Takedown Notices plainly referenced links to files. Exs. 24-26. In any event, by objecting only to the terms of this statement, Defendant concedes that, assuming the Court can discern their meaning, that all |

| | | |
|---|---|---|
| | already sideloaded them. (Ex. 4 (Robertson) at 286:24-8; Ex. 5 (Reese) at 208:12-21; Horowitz ¶¶ 63-66 & Ex. Q.) Those MP3tunes users continued to be able to listen to or download the identified song files from MP3tunes' servers through their locker accounts. (Id.) | without foundation.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | of the assertions in this statement are true. *See* Local Rule 56.1. |
| 87. | Even as to the precise links that were listed on the EMI Takedown Notices and removed from the Sideload Website, MP3tunes could have, but did not, block users from subsequently sideloading into their lockers the content at these very links using the Sideload Plug-in and the Webload feature. (Horowitz ¶ 65; Ex. 5 (Reese) at 901:16-905:11.) | **Disputed.** The proposed fact is incomprehensible. There is no evidence to support the statement that it would be possible to block links from being sideloaded via a browser plug-in or the Webload feature<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph.. | MP3tunes does not dispute that when a link to a file appeared in a Takedown Notice, MP3tunes did not attempt to prevent users from continuing to sideload the file using the Sideload Plug-in and the Webload Feature. MP3tunes cites no evidence showing that exercising such control was difficult or impossible. Accordingly, this fact is **UNDISPUTED.** |
| 88. | MP3tunes did not identify, keep track of, or terminate users who were repeatedly responsible for sideloading music files contained in take down notices, including the EMI Take Down Notices. (Horowitz ¶¶ 70-72 & Ex. S.) | **Disputed.** First, the phrase "repeatedly responsible" is vague and without foundation. Second, the phrase "EMI Take Down Notices" is vague and without foundation.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | Defendant has not submitted a proper response to this fact. By objecting only to the terms of this statement, Defendant concedes that, assuming the Court can discern their meaning, that all of the assertions in this statement are true. *See* Local Rule 56.1. |
| 89. | MP3tunes kept track of every song file that each user sideloads into his or her MP3tunes locker account. (Horowitz ¶¶ 64, 70 & Exs. | **Disputed.** The cited evidence does not support this statement. There is no evidence that MP3tunes associates each sideloaded track with each user. On the contrary, the | Defendant's definitional objections are frivolous, and Defendant's substantive objection is irrelevant. The fact that information may be stored in multiple databases does not mean that information from these |

| | | | |
|---|---|---|---|
| | O-P.) | user locker information is stored in a completely different database (the User Locker Database) than the sideload information (the Sideload Database).  DR Opp. ¶ 13.  The two databases operate independently.  DR Opp. ¶ 13.  The phrase "kept track of" is vague and without foundation.  The phrase "every song file that each user sideloads" is vague and without foundation.

Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | databases cannot be easily combined.  In fact, Professor Horowitz demonstrated exactly how this data could be combined.   Professor Horowitz evaluated Defendant's shared databases using simple queries to make the cited conclusions and supporting charts.  *See also* Supp. Horowitz ¶¶4-9 (establishing that the Sideload Website and MP3tunes Website use shared databases).  Accordingly, this fact is **UNDISPUTED.** |
| 90. | When it received a takedown notice, MP3tunes would not look at those records to determine which users had infringed the works on the notice.  (Ex. 10 (Krause) at 11:11-13; 12:11-4, 45:9-16.) | **Disputed.**  The phrase "those records" is vague and without foundation.  Additionally, MP3tunes disputes that all such work were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW.  Def. SUF ¶ 85.  The record shows that it is impossible to determine which users had infringed the works in the notice because Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not.  *See* Def. SUF ¶¶ 85, 100-103. | Defendants' definitional challenge to the term "those records" defined in paragraph 89 is frivolous.  Defendant's remaining objections is completely irrelevant and does not support the allegation that Defendant was unable to determine whether a song is authorized.  *See* Pls. Counter-SUF ¶¶ 85, 100-103; *see also* Exs. 24-26 (explaining that no copies of Plaintiffs' works were authorized to be on Defendant's websites).

MP3tunes concedes that it did not attempt to identify users that had sideloaded works appearing on Takedown Notices.  Defendant's citation to paragraph 85 of its own SUF fails to establish that any of the specific works on the EMI Takedown Notices were authorized for use through the Sideload Services.  *See* Pls. Counter-SUF ¶85; Pls. Opp. pp. 7-8.  Furthermore, MP3tunes' argument, even if supported, is irrelevant. |

| | | Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | If MP3tunes suspected anything improper about the EMI Takedown Notices, the proper procedure was to send a notification to its users that the work was subject to a Takedown Notice and give the user the opportunity to challenge the notice.  The failure to follow this procedure means MP3tunes is not able to claim DMCA safe harbor protection.  Pls. Reply pp. 10-12. Accordingly, this fact is **UNDISPUTED.** |
|---|---|---|---|
| 91. | Neither Robertson nor Reese could remember any instance where MP3tunes terminated a user account for repeatedly uploading or sideloading unauthorized music tracks.  (Ex. 4 (Robertson) at 195:2-11, 195:18-25; Ex. 5 (Reese) at 214:25-216:6, 228:3-229:1.) | **Disputed.**  The phrase "repeatedly" is vague and without foundation.  The phrase "unauthorized tracks" is vague and without foundation.  This statement is misleading to the extent that it implies that no users were terminated as repeat infringers.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | Defendant's definitional objections are frivolous.  Defendant has no substantive objection to the statement, and no challenge to the evidence cited by Plaintiffs.  Accordingly, this fact is **UNDISPUTED.** |
| 92. | Robertson and others testified that the only bases upon which MP3tunes has terminated user accounts were account sharing and the dissemination of hateful content.  (Ex. 4 (Robertson) at 195:2-11, 195:18-25; Ex. 5 (Reese) at 214:25-216:6, 228:3-229:1.) | **Disputed.**  Based on present recollection of Mr. Robertson.  The cited Reese deposition testimony does not support this statement.  Moreover, this statement incorrectly implies that user accounts were not terminated for other reasons.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | Plaintiffs' citation as to Robertson's testimony is wholly accurate and undisputed.  Robertson testified that he could only recall terminating users for "sharing," using lockers to disseminate music from a "hate group," and that "those are the only ones I can think of right now."  Ex. 4 (Robertson) at 195:2-11, 195:18-25.  Reese testified that he could not "think of a termination that [he knew] of because of copyright infringement."  Ex. 5 (Reese) at 228:3-229:1. Accordingly, this fact is **UNDISPUTED.** |

| 93. | Hundreds of defendants' users are repeat infringers of the very works identified to defendant in take down notices, including the EMI Takedown Notices. (Horowitz ¶¶ 71-72 & Ex. S.) | **Disputed.** Plaintiffs' inclusion of this argumentative conclusory allegation in their statements of uncontroverted facts statements violates Local Rule 56.1 and should be stricken. Additionally, MP3tunes disputes that all such works in the Takedown Notices were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85. Additionally, the record shows that it is impossible to determine which users had infringed the works in the notice because Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not. *See* Def. SUF ¶¶ 85, 100-103.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | By limiting their challenge to this statement only to the unsupported contention that the files in the Takedown Notices were authorized for distribution and performance through Defendant's websites, Defendant concedes that the other factual allegations in this statement are true. *See* Pls. Counter-SUF ¶¶ 85, 100-103. Furthermore, MP3tunes has presented no evidence that any specific files listed on these Takedown Notices were authorized, while Plaintiffs have presented evidence that they were not. Abitbol ¶¶ 3-4; McMullan ¶¶ 4, 10. Accordingly, this fact is **UNDISPUTED.** |
| 94. | By way of example: MP3tunes user #503100 infringed one recording identified on a notice dated August 29, 2007, infringed 14 recordings identified on a notice dated September 4, 2007, and infringed 18 recordings identified on two notices dated October 25, 2007. (Horowitz ¶ 72 (iii) & | **Disputed.** Plaintiffs' inclusion of this argumentative conclusory allegation in their statements of uncontroverted facts statements violates Local Rule 56.1 should be stricken. Nevertheless, the cited evidence does not demonstrate that "user #503100" infringed any recordings. Moreover, MP3tunes disputes that all such works in the Takedown | Defendant's conclusory statement that the Horowitz declaration and the exhibits thereto do not demonstrate that user #503100 infringed upon recordings identified in multiple takedown notices is completely unsupported by evidence, or even argument. MP3tunes has failed to show that any of the works sideloaded by user #503100 were authorized, and the Takedown Notices themselves stated that the files were not |

| | | |
|---|---|---|
| Ex. S.) | Notices were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85. Additionally, the record shows that it is impossible to determine which users had infringed the works in the notice because Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not. *See* Def. SUF ¶¶ 85, 100-103.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | authorized.<br><br>Defendant's other challenges to this statement are limited to unsupported statements that have been conclusively rebutted elsewhere. *See* Pls. Counter-SUF ¶¶85, 100-103.<br><br>Accordingly, this fact is **UNDISPUTED.** |
| 95. | Looking at the infringement expressly identified in take down notices, a total of 688 of defendants' users infringed recordings identified on at least 2 notices; 139 users infringed recordings identified on at least 3 notices. (Horowitz ¶¶ 71-72 & Ex. S.) | **Disputed.** Plaintiffs' inclusion of argumentative conclusory in their statements of uncontroverted facts statements violates Local Rule 56.1 and those statements should be stricken. Nevertheless, the cited evidence does not demonstrate that any users actually infringed any recordings. Moreover, MP3tunes disputes that all such works in the Takedown Notices were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85. Additionally, the record | Defendant's conclusory statement that the Horowitz declaration and the exhibits thereto do not demonstrate that users infringed upon recordings identified in multiple takedown notices is completely unsupported by contradictory evidence, or even analysis of why Defendant believes the statement to be false. MP3tunes has failed to show that any of the works sideloaded by the users in Horowitz Ex. S were authorized, and the Takedown Notices themselves stated that the files were not authorized.<br><br>Defendant's other challenges to this statement are limited to unsupported statements that have been conclusively rebutted elsewhere. *See* Pls. Counter-SUF |

<table>
<tr><td></td><td></td><td>shows that it is impossible to determine which users had infringed the works in the notice because Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable to determine whether a song is unauthorized or not. <em>See</em> Def. SUF ¶¶ 85, 100-103.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph.</td><td>¶¶ 85, 100-103.<br><br>Accordingly, this fact is <strong>UNDISPUTED.</strong></td></tr>
<tr><td>96.</td><td>Defendants did not terminate, suspend, warn, or take action against those repeat infringers. (Ex. 4 (Robertson) at 195:2-11, 195:18-25; Ex. 5 (Reese) at 214:25-216:6, 228:3-229:1.)</td><td><strong>Disputed.</strong>  Plaintiffs' inclusion of argumentative conclusory in their statements of uncontroverted facts statements violates Local Rule 56.1 and those statements should be stricken.  Nevertheless, the cited evidence does not demonstrate that any user is a repeated infringer.  Again, MP3tunes disputes that all such works in the Takedown Notices were infringing as many came from sites that were identified during discovery as being authorized to distribute Plaintiffs' works, including but not limited to Spin, Filter, Stereogum, MTV2, and SXSW. Def. SUF ¶ 85.  Additionally, the record shows that it is impossible to determine which users had infringed the works in the notice because Plaintiffs have expressly and implicitly authorized the viral distribution of music on the Internet to the extent that they are unable</td><td>Defendant's conclusory statement that the Horowitz declaration and the exhibits thereto do not demonstrate that 688 users infringed upon recordings identified in multiple takedown notices is completely unsupported by contradictory evidence, or even analysis of why Defendant believes the statement to be false. MP3tunes has failed to show that any of the works sideloaded by these users were authorized, and the Takedown Notices themselves stated that the files were not authorized.  <em>See also</em> Pls. Counter-SUF ¶¶ 85, 100-103; Abitbol ¶¶ 3-5; McMullan ¶¶ 4-10.<br><br>While MP3tunes' objections are related to the fact that the 688 users from the prior paragraph were "repeat infringers," MP3tunes does not challenge the portion of this fact stating that it took no action whatsoever against these users.  Accordingly, this fact is <strong>UNDISPUTED.</strong></td></tr>
</table>

| | | to determine whether a song is unauthorized or not.  See Def. SUF ¶¶ 85, 100-103.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | |
|---|---|---|---|
| 97. | Defendants did not advise those users that their conduct had been called into question. (Ex 10 (Krause) at 11:11-13, 38:2-5, 45:9-16.) | **Undisputed.**<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | |
| 98. | MP3tunes' executives were themselves repeat infringers.  (Horowitz Decl. ¶¶ 72(iv) - (vii).) | **Disputed.**  Plaintiffs' inclusion of this argumentative conclusory allegation in their statements of uncontroverted facts statements violates Local Rule 56.1 and those statements should be stricken.  Additionally, the cited evidence does not demonstrate that it was Defendants' executives who sideloaded the alleged works.  This statement is made without foundation and without personal knowledge, and is therefore, inadmissible.<br><br>Due to the error identified in Pls. Reply-SUF ¶82, Defendant's Counterstatement incorrectly identifies this objection as being in response to the previous paragraph. | *See* Pls. Reply-SUF ¶¶ 43, 46. |

DATED:  December 17, 2010          Respectfully submitted,

                                   By:  _Andrew H Bart_____

                                        Andrew H. Bart
                                        Joseph J. McFadden
                                        JENNER & BLOCK LLP
                                        919 Third Avenue
                                        37th Floor
                                        New York, NY 10022
                                        tel. (212) 891-1690
                                        fax (212) 891-1699

                                        -and-

                                        Steven B. Fabrizio
                                        JENNER & BLOCK LLP
                                        1099 New York Avenue, NW
                                        Suite 900
                                        Washington, DC 20001
                                        tel. (202) 639-6000
                                        fax (202) 639-6066

                                        *Attorneys for Plaintiffs Capitol Records, LLC,
                                        Caroline Records, Inc, EMI Christian Music
                                        Group Inc., Priority Records LLC, Virgin
                                        Records America, Inc.*


                                   By:  _T Scibria_____

                                        Donald S. Zakarin
                                        Frank P. Scibilia
                                        Jacob B. Radcliff
                                        M. Mona Simonian
                                        PRYOR CASHMAN LLP
                                        7 Times Square
                                        New York, New York  10036-6569
                                        Telephone: (212) 421-4100
                                        Facsimile: (212) 326-0806

                                        *Attorneys for the Beechwood Music Corp.,
                                        Colgems-EMI Music Inc., EMI April Music Inc.,
                                        EMI Blackwood Music, EMI Full Feel Music,
                                        EMI Golden Torch Music Corp., EMI Longitude*

*Music, EMI Virgin Music, Inc., EMI Virgin Songs, Inc., EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI Feist Catalog, Inc., EMI Gold Horizon Corp., EMI Grove Park Music, Inc. EMI Hastings Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc., EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, inc., Jobete Music Co., Inc., Screen Gems-EMI Music, inc., Stone Agate Music, and Stone Diamond Music*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CAPITOL RECORDS, LLC, *et al,* )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>MP3TUNES, LLC, and MICHAEL ROBERTSON, )<br><br>*Defendants.* )<br>_____ )<br>MP3TUNES, LLC, and MICHAEL ROBERTSON, )<br><br>*Counter-Claimant,* )<br><br>v. )<br><br>CAPITOL RECORDS, LLC, *et al,* )<br><br>*Counter-Defendants.* )<br>_____ ) | No. 07 Civ. 9931 (WHP)(FM) |

I, Joseph J. McFadden, do hereby certify that on this 17th day of December 2010 I caused the within **Reply Memorandum of Law, Plaintiffs' Evidentiary Objections, Plaintiffs' Response to MP3tunes' Counterstatement, Reply Declaration of Andrew H. Bart,** and **Supplemental Declaration of Robert Heinemann** to be served via U.S. First Class mail delivery and electronic delivery upon:

> **Gregory Paul Gulia**
> Duane Morris, LLP (NYC)
> 1540 Broadway
> New York, NY 10036-4086
> 212-692-1000
> Fax: 212-692-1020
> Email: gpgulia@duanemorris.com

BY: _____

Joseph J. McFadden
919 Third Avenue
37th Floor
New York, NY 10022
212 891-1600

16655.1