# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No. 07 Civ. 9931 (WHP)(FM) |
| v. ) | |
| ) | |
| MP3TUNES, LLC, and MICHAEL ROBERTSON, ) | |
| ) | |
| *Defendants*. ) | |
| MP3TUNES, LLC, and MICHAEL ROBERTSON, ) | |
| ) | |
| *Counter-Claimants*, ) | |
| ) | |
| v. ) | |
| ) | |
| CAPITOL RECORDS, LLC, *et al.*, ) | |
| ) | |
| *Counter-Defendants*. ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## CITATION FORMAT

Plaintiffs use the following citation forms in this Reply Memorandum of Law and in Plaintiffs' Response to MP3tunes' Counterstatement to Plaintiffs' Rule 56.1 Statement of Uncontroverted Facts in Support of Their Motion for Summary Judgment:

| Document | Date Filed | Citation |
|---|---|---|
| Declaration of **Michael Abitbol** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #187) | Abitbol |
| Supplemental Declaration of **Michael Abitbol** | November 24, 2010 (Docket #213) | Supp. Abitbol |
| Declaration of **Audrey Ashby** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #188) | Ashby |
| Declaration of Greg Gulia in Support of MP3tunes' Motion for Summary Judgment | October 29, 2010 (Docket #189) | Gulia |
| Declaration of Greg Gulia in Opposition to Plaintiffs' Motion for Summary Judgment | November 25, 2010 (Docket # 221) | Gulia Opp. |
| Declaration of **Robert Heinemann** | November 24, 2010 (Docket #212) | Heinemann |
| Supplemental Declaration of **Robert Heinemann** | December 17, 2010 (Filed herewith) | Supp. Heinemann |
| Declaration of **Ellis Horowitz** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Filed under seal) | Horowitz |
| Supplemental Declaration of **Ellis Horowitz** | November 24, 2010 (Filed under seal) | Supp. Horowitz |
| Declaration of **Alasdair McMullan** in Support of Plaintiffs' Motion for Summary Judgment | October 29, 2010 (Docket #191) | McMullan |
| Supplemental Declaration of **Alasdair McMullan** | November 24, 2010 (Docket #211) | Supp. McMullan |
| Declaration of Doug Reese in Opposition to Plaintiffs' Motion for Summary Judgment | November 24, 2010 (Docket #218) | Reese Opp. |
| Declaration of Michael Robertson in Support of MP3tunes' Motion for Summary Judgment | October 29, 2010 (Docket #184) | Robertson |
| Declaration of Michael Robertson in Opposition to Plaintiffs' Motion for Summary Judgment | November 24, 2010 (Docket #217) | Robertson Opp. |

i

| Document | Date Filed | Citation |
|---|---|---|
| Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment | October 29, 2010 (Docket #207) | Pls. Mem. |
| MP3tunes' Memorandum of Law in Support of Its Motion for Summary Judgment | October 29, 2010 (Docket #196) | Defs. Mem. |
| Plaintiffs' Memorandum of Law in Opposition to MP3tunes' Motion for Summary Judgment | November 24, 2010 (Docket #209) | Pls. Opp. |
| MP3tunes' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment | November 25, 2010 (Docket #222) | Def. Opp. |
| Plaintiffs' Statement of Uncontroverted Fact in Support of Their Motion for Summary Judgments | October 29, 2010 (Filed under seal) | SUF |
| MP3tunes' Statement of Undisputed Facts in Support of Its Motion for Summary Judgment | October 29, 2010 (Docket #195) | Defs. SUF |
| Plaintiffs' Rule 56.1 Counterstatement of Undisputed Facts in Response to MP3tunes Statement of Undisputed Facts | November 24, 2010 (Docket #214) | Pls. Counter-SUF |
| Plaintiffs' Response to MP3tunes' Counterstatement to Plaintiffs' Rule 56.1 Statement of Uncontroverted Facts in Support of Their Motion for Summary Judgment | December 17, 2010 (Filed herewith) | Pls. Reply-SUF |
| Plaintiffs' Evidentiary Objections to Evidence Presented by MP3tunes in Opposition to Plaintiffs' Motion for Summary Judgment | December 17, 2010 (Filed herewith) | Pls. Reply Obj. |

a.  As in Plaintiffs' Memorandum of Law in Support of their Motion for Summary

Judgment, references to the exhibits attached to the **Declaration of Andrew H. Bart**

(Docket # 190) and the **Errata** annexed thereto (Docket # 198) are referred to simply as

"Ex. __."  Similarly, references to the exhibits attached to the **Supplemental Declaration**

**of Andrew H. Bart** (Docket # 209) and the **Reply Declaration of Andrew H. Bart** filed

herewith ("Bart Reply Decl.") are also referred to simply as "Ex. __."  The exhibits are sequentially numbered.  As a result, citations to Exs. 1 – 98 refer to Exhibits 1 through 98 of the Declaration of Andrew H. Bart and accompanying Errata (Docket #190, #198).  Citations to Exs. 99 – 116 refer to Exhibits 99 through 116 of the Supplemental Declaration of Andrew H. Bart.  Citations to Exs. 117- 124 refer to Exhibits 117 through 124 of the Reply Declaration of Andrew H. Bart..

b.  When Plaintiffs reference transcripts of deposition testimony, the citation includes the last name of the deponent and the specific page and line numbers.  For example, "Ex. 1 (Robertson) at 46:7-12" refers to Lines 7-12 on Page 46 of the transcript of the deposition of defendant Michael Robertson, excerpts of which are collected and attached as Exhibit 1 to the Declaration of Andrew H. Bart.

c.  When Plaintiffs reference a specific paragraph of a declaration, they use the symbol "¶." For example, "Horowitz ¶ 10" refers to paragraph ten of the Declaration of Ellis Horowitz in Support of Plaintiffs' Motion for Summary Judgment.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................2

I.   THERE IS NO MATERIAL DISPUTE THAT MP3TUNES AND ITS USERS
     INFRINGED PLAINTIFFS' COPYRIGHTS.........................................................................2

     A.   Plaintiffs Have Proven the Underlying Infringements.................................................2

     B.   Plaintiffs Have Proven Knowledge of and Contribution to Infringement .....................3

     C.   Plaintiffs Have Proven Defendant's Right and Ability to Control and Financial
          Benefit From Infringement ..............................................................................4

     D.   Plaintiffs Have Proven Defendant's Direct Infringment of Plaintiffs' Public
          Performance Right ..........................................................................................6

     E.   Plaintiffs Have Proven Defendant's Direct Infringement of Cover Art .......................7

II.  MP3TUNES IS NOT ENTITLED TO A DMCA SAFE HARBOR ...................................8

     A.   MP3tunes Did Not Implement a "Repeat Infringer" Policy ..........................................8

     B.   MP3tunes Did Not Comply with Plaintiffs' DMCA Notices .....................................10

     C.   MP3tunes Knew of Widespread Copyright Infringement on its Sites.........................12

CONCLUSION.....................................................................................................................155

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Als Scan v. Remarq*,
  239 F.3d 619 (4th Cir. 2001) ................................................................12

*Greenwich Film Productions, S.A. v. DRG Records, Inc.*,
  833 F. Supp. 248 (S.D.N.Y. 1993)........................................................8

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ................................................................12

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)..................................................................3

*Jefferson Airplane v. Berkeley Sys.*,
  886 F.Supp. 713 (N.D. Cal. 1994) ........................................................8

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ..............................................................10

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) .........................................10, 11

*Tasini v. New York Times Co., Inc.*,
  206 F.3d 161 (2d Cir. 2000)..................................................................7

*Ulloa v. Universal Music and Distribution Corp.*,
  303 F.Supp.2d 409 (S.D.N.Y. 2004).....................................................7

*Viacom Int'l Inc. v. YouTube, Inc.*,
  718 F.Supp.2d 514 (S.D.N.Y. 2010)......................................................10

*Warner Bros. Entert. v. RDR Books*,
  575 F.Supp.2d 513 (S.D.N.Y. 2008)......................................................2

**STATUTES**

17 U.S.C. § 401(a) ...................................................................................8

17 U.S.C. § 411(b) ...................................................................................8

17 U.S.C. § 512(c)(1)(C) .........................................................................10

17 U.S.C. § 512(c)(3)(A)(ii) ....................................................................14

17 U.S.C. § 512(c)(3)(A)(iii) ................................................................................12

17 U.S.C. § 512 (g)(2)(A) ....................................................................................11

17 U.S.C. § 512 (g)(2)(B) & (g)(3)(C) .................................................................11

17 U.S.C. § 512(g)(2)(C) .....................................................................................11

**OTHER AUTHORITIES**

Fed. R. Evid. 1006 ................................................................................................8

H.R. Rep. 105-551 (II) ...................................................................................10, 14

S. Rep. No. 105-190.......................................................................................12, 14

## PRELIMINARY STATEMENT

There is no *bona fide* dispute in this case as to how MP3tunes' services function and no dispute that MP3tunes and its users employ these services to engage in copyright infringement on a massive scale.  MP3tunes created its software and the Sideload Website specifically to operate as an online copyright infringement machine that would drive traffic to MP3tunes' subscription-based locker service and thus profit from exploiting Plaintiffs' copyrighted material without paying for it.  MP3tunes has failed to raise a good faith dispute about the material facts supporting the elements of each of Plaintiffs' claims.  While MP3tunes' opposition runs long on rhetoric and empty diversions, the "evidence" MP3tunes offers does not rebut any material facts, nor does it provide a defense to Plaintiffs' claims.  *See* Pls. Reply-SUF.

As its sole sustained defense of its conduct, MP3tunes claims safe harbor under the DMCA.  However, under any reasonable reading of the evidence and the DMCA, MP3tunes' conduct and knowledge of infringement occurring through its services disqualifies it from DMCA safe harbor as a matter of law.  Foremost, in the face of Plaintiffs' takedown notices, MP3tunes continued to offer its locker users unfettered access to the specific infringing works identified in Plaintiffs' notices.  Additionally, MP3tunes failed to terminate repeat infringers, had actual and red flag knowledge of massive infringement, benefitted from and had the ability to control the infringements, and failed to take any steps to address the "representative list" of infringed works provided by Plaintiffs.  Any one of these reasons, standing alone, disqualifies MP3tunes from any safe harbor defense.

While MP3tunes baldly asserts that it somehow did not know about the infringements, the uncontroverted evidence repudiates that claim.  Copyright owners sent numerous notices to MP3tunes, and users warned it repeatedly about ongoing infringement.  Moreover, MP3tunes' executives personally copied many of the infringing files at issue on this motion.  MP3tunes also

1

had "red flag" knowledge of infringement through its design and review of the Sideload Website, from which infringement was unmistakable.  MP3tunes' only answer is its invented claim that Plaintiffs routinely authorize the free distribution of their copyrighted music on the internet.  As Plaintiffs have already demonstrated, however, the "evidence" MP3tunes has presented does not remotely support these allegations.  *See, e.g.,* Pls. Opp. at 3-8; Pls. Counter-SUF at ¶ 85, 90-105.  In addition, notably, Plaintiffs never authorized *any* copyrighted material for use through the Sideload Services.  *Id.*  As a result, summary judgment should be granted to Plaintiffs.

## ARGUMENT

I.   **THERE IS NO MATERIAL DISPUTE THAT MP3TUNES AND ITS USERS INFRINGED PLAINTIFFS' COPYRIGHTS**

### A.   Plaintiffs Have Proven the Underlying Infringements

To prevail on a claim of infringement, a plaintiff must demonstrate (1) ownership and (2) unauthorized copying.  Pls. Mem. at 15-16.  Plaintiffs have proven ownership of over 3,500 works at issue.  Pls. Reply-SUF ¶¶ 1-3; Pls. Opp. at 33-35.  The Copyright Act forecloses MP3tunes' challenge to the "work for hire" basis for Plaintiffs' copyright ownership.  *See* Pls. Opp. at 33-35.  Moreover, even MP3tunes admits that Plaintiffs own over a thousand works at issue; thus rendering this, at most, a damages issue, rather than a liability issue.

The unrebutted testimony of Professor Horowitz, based upon material from MP3tunes' own databases, conclusively establishes that MP3tunes' users copied (by sideloading) thousands of Plaintiffs' works.  Pls. Reply-SUF ¶¶ 37, 39.[1]  Plaintiffs have further shown that MP3tunes

---

[1] Citing only to cases involving the unauthorized use of copyrighted materials in subsequently created works by a different author, MP3tunes argues that Plaintiffs must prove "substantial similarity" in order to prove unauthorized copying.  Def. Opp. at 21; citing *Gal v. Viacom Int'l Inc.,* 518 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2007); *Warner Bros. Entm't v. RDR Books,* 575 F.Supp.2d 513, 534 (S.D.N.Y. 2008) (whether book by one author infringed series of works by another).  Those cases are inapposite.  MP3tunes does not argue, let alone present evidence, that the works on its server are not identical copies of Plaintiffs' works.  In addition, substantial similarity is an element of proving copying through circumstantial evidence.  In the context of unauthorized duplication of digital works, testimony and

executives personally copied thousands of files, including many embodying Plaintiffs' copyrighted material.  Pls. Reply-SUF ¶¶ 41-43; Ex. 122.[2]  MP3tunes has not challenged Professor Horowitz's charts or testimony in this respect.[3]

Plaintiffs also submitted unrebutted testimony that they did not authorize the copying at issue.  Pls. Reply-SUF ¶¶ 35, 44; Pls. Mem. at 15-16.  MP3tunes presents no facts or evidentiary citations to contradict the validity of these declarations; instead, it baselessly attacks the credibility of Mr. McMullan in a manner that cannot create a question of fact on this motion as a matter of law.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261-62 (2d Cir. 2005) (general attacks on witness' credibility cannot create issue of fact).[4]

### B.    Plaintiffs Have Proven Knowledge of and Contribution to Infringement

The Sideload Website contributes to infringement by offering a one-stop shopping experience where users can search for infringing files, make permanent copies of them, and download them on any internet-enabled device.  The other Sideload Features provide the means by which users can identify infringing files on the internet and sideload them into "lockers" on Defendant's servers; at which point MP3tunes adds links to those files to the searchable Sideload

---

other documents are sufficient to establish that copying occurred.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005) (finding that unauthorized duplication of software had occurred based on unrebutted testimony of two witnesses).  Nevertheless, if the Court deems it necessary, Plaintiffs will file DVD copies of each infringing work produced by MP3tunes.

[2] MP3tunes argues that executives did not commit these infringements within the scope of their employment, citing only a snippet of Ms. Lindahl's deposition testimony.  Def. Opp. at 26.  Ms. Lindahl specifically testified that MP3tunes employees sought out websites on the internet to locate files and sideload them into the Sideload Index.  She also testified that when MP3tunes employees engaged in such projects, they did so as employees, not for personal reasons.  Ex. 11 (Lindahl) at 151:11-152:22; *see also* Ex. 57 (email to MP3tunes employees stating "As requested by Michael [Robertson] for sideloading purposes here is a list of some files featuring free MP3s.  Let me know if you need more!").

[3] Contrary to MP3tunes' suggestion, the Second Amended Complaint explicitly states a cause of action for direct infringement and alleges that acts of direct infringement were committed by Robertson.  *See* Second Amend. Comp., Docket # 121, at ¶¶ 54, 59-63.

[4] MP3tunes also states, incorrectly, that the Publishers "decline[d]" to testify that their works were used without authorization.  *See* Abitbol ¶ 3.

3

Website.  Pls. Mem. at 20; Pls. Reply-SUF ¶¶ 12-17, 28, 65-68, 70-71, 89.  The parties do not dispute that the Sideload Features work in this manner.  That level of "material contribution" is more than sufficient.  *See* Pls. Mem. at 20; Pls. Opp. at 26-28.[5]

MP3tunes' incorrectly argues that liability for contributory infringement requires more than providing the site and facilities for infringement.  The law is well-settled that providing the software and websites used for infringement constitutes material contribution to infringement.  *Id*.  Moreover, here, MP3tunes' contribution to infringement was not ancillary; the MP3tunes facilities enabled, and physically performed, the unlawful reproduction of Plaintiffs' works.

MP3tunes also argues that it cannot be liable for contributory infringement because acts of infringement are "user-directed."  Not only is this argument factually baseless, *see* Supp. Horowitz ¶¶ 11-17, but it confuses the standards for direct and secondary liability.  If MP3tunes had itself directed the infringement, it would be *directly* liable.  MP3tunes indisputably made a material contribution to the infringement by providing the site and facilities through which that infringement occurred.  That makes MP3tunes liable as a *secondary* infringer.

### C.   Plaintiffs Have Proven Defendant's Right and Ability to Control and Financial Benefit From Infringement

MP3tunes acknowledges that it has the *right* to control its users' activity.  Pls. Reply-SUF ¶ 75.  And, MP3tunes manifestly has the ability to control that infringement.  Pls. Mem. at 20-21; Pls. Opp. at 28-29.  MP3tunes has complete physical control over its entire system and its subscribers while on the system.  MP3tunes, for example, maintains databases that identify every song file in its system, the user associated with the file, the source of the file, and much more.  Horowitz ¶¶ 10, 54-56, 61, 66-68, 71-72, 75-77.  MP3tunes also has the ability to remove files from the Sideload Website and from the users' Locker Accounts, and to terminate infringing

---

[5] For a discussion of MP3tunes' knowledge of infringement, *see* Pls. Mem. at 16-19, 33-35; Pls. Opp. 15-19; Section IV.C, *infra*.

users.  Pls. Reply-SUF ¶¶ 71(a)-(g), 88-92; Pls. Mem. at 30.  Those facts clearly demonstrate the ability to control for purposes of vicarious liability.  Pls. Mem. at 20-21; Pls. Opp. at 28-29.

In a demonstrably false and irrelevant argument, MP3tunes claims that the Sideload Website merely acts as a search engine that "locates links to any third-party websites offering free music downloads on the Internet."  Def. Opp. at 24.   However, the Sideload Website "search engine" does not search the internet at all, but rather only "searches" databases maintained by MP3tunes on MP3tunes' own servers.  Supp. Horowitz ¶¶ 18-20.  Moreover, MP3tunes designed the Sideload Services to transfer files to MP3tunes' servers, all of which are within Defendant's undisputed control.  Horowitz ¶¶ 20-23.  Thus, MP3tunes' constant comparison of its service to Google and Bing lacks any substance.[6]

The videos attached to Robertson's declaration in opposition to Plaintiffs' motion do not support the claim that the Sideload Website operates like other search engines.  To the contrary, those videos demonstrate that Google and Bing direct users to *webpages* on which links to files may, in some cases, be found.  In contrast, the Sideload Website gives users access to *files* without ever visiting any webpage at all.[7]  These undisputed distinctions, addressed in more detail in the Supplemental Declaration of Ellis Horowitz at paragraphs 18-20, matter both to MP3tunes' control over alleged infringement and its contribution to it.  Moreover, by

---

[6] MP3tunes also argues that liability for vicarious infringement does not attach because its services are "user directed," ignoring that liability for vicarious infringement in the copyright context requires no intentional conduct.  *See* Pls. Mem. at 20-22.

[7] Robertson attempts to obscure this distinction by showing that Google and Bing temporarily "cache" webpages from other websites on their own servers.  But that does not change anything.  Google and Bing cache webpages, not files.  Supp. Horowitz ¶ 20.  Robertson never mentions that when he clicks the "cache" button, he is viewing an entirely different website, in most cases a website at www.emp3world.com.  The Sideload Website has far more in common with www.emp3world.com than it does with Google or Bing.

disconnecting a file from the website offering it, the Sideload Website usurps the promotional benefit that is the *sine qua non* of any authorization for promotional downloads.  Pls. Opp. at 4-6.

Plaintiffs have also demonstrated, through undisputed evidence, that the purpose of the Sideload Services was to create a benefit for MP3tunes by driving paying users to the Locker Website.  Pls. Mem. 21-22; Pls. Reply-SUF ¶¶ 76-77; Ex. 98.  Plaintiffs have therefore proven that the Sideload Website acts as "a draw" for customers and, accordingly, MP3tunes is liable for vicarious infringement.  Pls. Mem. at 21.[8]

### D.    Plaintiffs Have Proven Defendant's Direct Infringement of Plaintiffs' Public Performance Right

Plaintiffs have proven that MP3tunes violates the right of public performance by using a single copy of a sound recording to perform (*i.e.*, play) the work to multiple users.  Pls. Mem. at 22-26; Pls. Opp. at 31-32.[9]  The parties do not dispute the facts as to MP3tunes' storage of digitally identical files.  MP3tunes acknowledges that its system "reconciles" – or in other words "deletes" – files that are digitally identical to files already on MP3tunes' servers.  Def. Opp. at 11 (admitting "deduplication" occurs); *see also* Ex. 6 (Brocious) at 47:12-52:15, 67:3-68:3.  Even MP3tunes' own expert admits it.  Ex. 120 (Bestavros) at 140:10-16 ("as a matter of fact [] the MP3tunes system use[s] single instance storage for music content"); *id.* at 156:7-18 (same); Gulia Opp. Ex. LL at ¶ 36, 39 (MP3tunes' expert report, same).  Plaintiffs have also presented undisputed evidence that MP3tunes performed thousands of individual song files stored on MP3tunes system to multiple users.  Pls. Reply-SUF 79.  MP3tunes cannot and does not offer

---

[8] As explained in Plaintiffs' Opposition to MP3tunes' motion, MP3tunes is disqualified from DMCA safe harbor because it profits from infringements that it could, but refuses to, control.  *See* Pls. Opp. at 23-25.

[9] MP3tunes wrongly argues that Plaintiffs failed to plead a public performance claim.  Plaintiffs brought a distinct claim for infringement of their exclusive right of public performance and devoted eight paragraphs in their complaint to the issue.  Second Amend. Comp., Docket # 121 at ¶¶ 73-80.

any rejoinder to the legal argument that its transmission (playing) to multiple users of a single copy of a digital music file constitutes an infringing public performance.

MP3tunes' issue with the term "single master architecture" is, at most, a dispute as to semantics, not relevant facts.  MP3tunes does not dispute the dispositive fact that MP3tunes does *not* maintain a *separate copy* of each "identical" content file for each user who uploads and accesses it, as did the defendant in *Cablevision*.  Pls. Mem. at 25-26.  Thus, unlike in *Cablevision*, whenever MP3tunes plays a "master" song to one of its users, it engages in a *public* performance in clear violation of the Copyright Act.

### E.   Plaintiffs Have Proven Defendant's Direct Infringement of Cover Art

Plaintiffs have proven ownership of 328 works of Cover Art, and proven that MP3tunes copied and stored identical copies of its Cover Art on MP3tunes' servers.  Pls. Reply-SUF ¶¶ 3, 37.  MP3tunes admits that it did not have a license from the EMI Labels to copy Cover Art.  Pls. Reply-SUF ¶ 36.  Although, MP3tunes argues that it had a "license" from Amazon to "copy and display" Cover Art, MP3tunes bears the burden of proving a valid license exists, *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 170-71 (2d Cir. 2000); *Ulloa v. Universal Music and Video Distrib. Corp.*, 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004), and it has failed to do so.  Plaintiffs have shown that the Amazon agreements that were in effect *at all relevant times* explicitly forbade MP3tunes from (i) storing any cover art on its own servers and (ii) using material in a manner that was not "solely for the purpose" of driving traffic to Amazon.  Tarpey Ex. C at ¶ 4(n), Ex. B at ¶ 2.[10]  The undisputed facts show that MP3tunes stored Cover Art on its servers and that MP3tunes did not use Cover Art solely (or even partially) to drive traffic to

---

[10] The provision that MP3tunes cites on page 31 of its opposition comes from a license that went into effect on September 1, 2010 and, as Amazon confirmed, was *not in force* prior to that time.  *See* Tarpey ¶ 4.  It cannot provide license for MP3tunes' infringement, and MP3tunes' attempt to rely on the wrong contract is telling.

Amazon.  Pls. Reply-SUF ¶ 37; Ex. 22, 85.  Accordingly, there can be no dispute that MP3tunes

acted without authority.  Indeed, contrary to MP3tunes' assertion, Amazon, in fact, testified that

it did not authorize MP3tunes' activities.  Tarpey at ¶ 5.

      MP3tunes incorrectly claims that Plaintiffs lack standing to assert copyright claims

because Plaintiffs failed to properly register their Cover Art.  The only case MP3tunes cites,

*Jefferson Airplane v. Berkeley Sys. Inc.*, 886 F. Supp. 713 (N.D. Cal. 1994), was decided under

the 1909 Copyright Act, which had distinct publication notice requirements that are not

applicable to the 1976 Copyright Act.  *See* 17 U.S.C. § 401(a).  Plaintiffs registered all of the

artwork at issue here under the 1976 Act, and under this Act, owners may register sound

recordings and artwork on the same form.  *E.g.*, Ex. 119 (U.S. Copyright Office, *Copyright

Registration for Sound Recordings*, Copyright Circular # 56, at p. 3 (2004)); *Greenwich Film

Productions, S.A. v. DRG Records, Inc.*, 833 F. Supp. 248, 252 (S.D.N.Y. 1993)(same form can

be used to register two different kinds of works).  Moreover, unlike in *Jefferson Airplane,* the

registration forms at issue in this case specifically list artwork among the material being

registered.  Ex. 121 (illustrative sample of registrations).  Therefore, even if artwork should have

been registered separately, the failure to do so was an innocent error that does not render the

registration invalid.  17 U.S.C. § 411(b); Pls. Opp. at 34-35.[11]

## II.   MP3TUNES IS NOT ENTITLED TO A DMCA SAFE HARBOR

### A.   MP3tunes Did Not Implement a "Repeat Infringer" Policy

      Plaintiffs have proven, and MP3tunes has not challenged, that MP3tunes made no effort

whatsoever to identify users who infringed the works in Plaintiffs' Takedown Notices, to warn

---

[11] MP3tunes also challenges Plaintiffs' ownership of Cover Art based on the same "work for hire" theory
it uses to challenge Plaintiffs' ownership of their sound recordings and compositions.  This argument
must be rejected for the same reasons.  *See* Pls. Opp. at 33-35.

those users about their conduct, or to terminate those users who were repeat infringers.  Pls.

Mem. at 28-32; Pls. Opp. at 12-14.  Plaintiffs have also proven that 688 unique users in fact were

*repeat infringers* of the works identified on Plaintiffs' Takedown Notices.  *See* Pls. Reply-SUF

¶¶ 95-96.  This means that those MP3tunes users infringed works on *multiple* Notices, not "a

single take-down notice" as MP3tunes tries to portray.  Def. Opp. at 12.  Thus, Defendant's

suggestion, *id.*, that Plaintiffs are conflating MP3tunes' obligation to takedown with its

obligation to terminate repeat infringers is mistaken.  MP3tunes was obligated to "reasonably

implement" a repeat infringer policy.  Yet, it did not identify, warn or terminate these (or any)

users for repeatedly infringing copyrights.  Pls. Opp. at 12-14, 28-32; Pls. Reply-SUF ¶¶ 95-96.

This evidence disqualifies MP3tunes from DMCA safe harbor.[12]

MP3tunes' only substantive response is that it is not required to consider takedown

notices in implementing a repeat infringer policy.  Def. Opp. at 13.  There is more than a little

hypocrisy to MP3tunes' position: it argues vehemently, as its principal defense in this case, that

it cannot know what it is infringing without notices; yet, at the same time, it argues that it does

not need to consider notices in assessing repeat infringers.  *Id.*  In essence, MP3tunes argues that

it does not have to actually implement a repeat infringer policy at all, as long as it has one on

paper.  MP3tunes, however, is simply wrong on the law.

No court has ever held that a service provider can disregard copyright owner notices

when implementing a repeat infringer policy.  In *Viacom*, for example, defendant terminated

users based on both formal DMCA notices and informal copyright owner notices.  *Viacom Int'l*

*Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527-28 (S.D.N.Y. 2010).  And, the *Corbis*

---

[12] As explained in Plaintiffs' Opposition to MP3tunes motion, MP3tunes' newly manufactured evidence that it terminated 153 other users is inadmissible and is directly contradicted by the sworn deposition testimony of *every witness* in this case, including Robertson.  Pls. Opp. at 13-15.  It does not and cannot controvert the record evidence that MP3tunes has never terminated any subscriber as a repeat infringer.

proposition cited by MP3tunes (Def. Opp. at 13-14) was in fact rejected by the Ninth Circuit in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111-13 (9th Cir. 2007).  In *CCBill*, the Ninth Circuit made clear that takedown notices must be considered in assessing repeat infringers, and reversed the district court because it disregarded third-party takedown notices in evaluating the defendant's implementation of a repeat infringer policy.  *Id.* at 1113; *see also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1176-78 (C.D. Cal. 2002); H.R. Rep. 105-551 (II), at 61 (512(c) knowledge standards apply to 512(i) repeat infringer determination).  If MP3tunes' "implementation" of a repeat infringer policy can pass muster as "reasonable" under the DMCA, it is hard to fathom what level of inaction could ever disqualify a service provider.

### B.     MP3tunes Did Not Comply with Plaintiffs' DMCA Notices

MP3tunes does not and cannot dispute that it failed to remove files identified in Takedown Notices from users' lockers.  Pls. Reply-SUF at ¶¶ 83-86; Pls. Opp. at 9-13, 19-22.  Accordingly, it cannot claim a safe harbor under the DMCA.  17 U.S.C. § 512(c)(1)(C).

MP3tunes attempts to justify its failure to remove works from lockers by arguing that users would have complained if MP3tunes had removed the files.  Def. Opp. at 15.  This assertion is an indictment, not an excuse, and has been expressly rejected.  *Cybernet Ventures*, 213 F. Supp. 2d at 1177 & n.22.  The DMCA does not permit service providers to ignore Takedown Notices – especially for infringing content stored *on their own servers* – because their users might complain that the service providers deleted their illegally obtained files.

MP3tunes also argues, without any evidentiary support, that it did not comply with the Takedown Notices because Plaintiffs may have authorized the use of some of the files on the notices.  Def. Opp. at 15.  First, this argument is disingenuous: the song files in MP3tunes users' lockers were the exact same song files, from the exact same sources, that Plaintiffs  identified as unauthorized and infringing in their Takedown Notices.  If MP3tunes genuinely believed that

noticed works were not infringing, it would not have removed the links to those works from the

Sideload Website.  In fact, MP3tunes removed works from the Sideload Website, but not from its

lockers.  MP3tunes did so because, while copyright owners could verify compliance as to the

Sideload Website, they could not see whether MP3tunes complied as to user lockers.  MP3tunes'

argument, moreover, is irrelevant.  The DMCA dictates a specific course of action in order to

preserve a safe harbor defense:  it required MP3tunes to disable access to files "expeditiously,"

and then provide notice to the affected user pursuant to 17 U.S.C. § 512(g)(2)(A).  Users could

then serve a "counter notification" claiming that the material was disabled "as a result of

mistake."  17 U.S.C. § 512(g)(2)(B) & (g)(3)(C).  Upon receipt of such a "counter notification,"

MP3tunes would have been free to reinstate access to the disabled material unless the copyright

owner sending the original notice took action directly against the user.  17 U.S.C. § 512(g)(2)(C).

Ignoring the Congressionally mandated course of action, Defendant did not notify users

or follow any of the DMCA's counter notification procedures.  Pls. Reply-SUF ¶ 82-83, 88, 90;

*Cybernet*, 213 F. Supp. 2d at 1180 (criticizing deviations from counter notification process).  The

DMCA clearly provides that, in such circumstances, when a service provider disregards notices

and makes its own determinations as to infringement, its "liability, if any, will be decided

without reference to section 512(c)," *i.e.*, without any DMCA safe harbor.  S. Rep. No. 105-190

at 45; *see also ALS Scan, Inc. v. RemarQ Communities, Inc.,* 239 F.3d 619, 625 (4th Cir. 2001).

Finally, MP3tunes makes a half-hearted argument that it was excused from disabling

access to infringing works listed on Takedown Notices because it could not do so through a

single database query.  Def. Opp. at 15.  That argument flies in the face of the DMCA's express

terms.  The DMCA requires only that a notice provide "information reasonably sufficient to

permit the service provider to locate the material."  17 U.S.C. § 512(c)(3)(A)(iii).  Here, the

undisputed evidence proves (and MP3tunes' CTO admits) that, from the URLs provided in Plaintiffs' notices, MP3tunes easily could have identified every user who had sideloaded the work into his or her locker.  Horowitz ¶¶ 70-72, Ex. S; Pls. Reply-SUF ¶ 89; Ex. 5 (Reese) at 226:17-227:5.  The rule MP3tunes argues for would be nonsensical.  If dividing up information into separate database tables could shield MP3tunes from liability, any service provider could gut the notice and takedown provisions of the DMCA simply by storing user data separately from file names.  *See In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) (designing system that could not track infringers did not relieve defendant of DMCA obligations).

### C.    MP3tunes Knew of Widespread Copyright Infringement on its Sites

Plaintiffs have presented overwhelming proof that MP3tunes had knowledge that customers and executives were using its services to infringe.  Pls. Mem. at 8-20; Pls. Opp. at 18-19.  Such knowledge renders MP3tunes ineligible for safe harbor under the DMCA.

The evidence shows both that MP3tunes turned a blind eye to "red flags" of infringement and that MP3tunes had actual knowledge of infringement.  Pls. Mem. at 12-19, 33-35.  MP3tunes' executives themselves sideloaded thousands of files, including many works at issue on summary judgment.  Pls. Mem. at 18; Pls. Opp. at 29-30; Pls. Reply-SUF ¶¶ 41-43; Ex. 122.  That alone constitutes disqualifying knowledge.  Many of these files were from obviously infringing sources.  *See* Horowitz ¶ 84.  Plaintiffs' proof is based on (1) MP3tunes' own disclosure of the user IDs of its executives, *see* Horowitz ¶ 10(e); Ex. 122; and (2) MP3tunes' own database revealing the sideloading activity of those executives.  Horowitz ¶¶ 10, 82-84.  The activity of MP3tunes' executives proves MP3tunes' actual knowledge of infringement, as well as the direct infringement of its executives.

MP3tunes does not rebut any of this evidence.  Instead it engages in diversion.  For example, it proffers a document (Ex. KK of the Gulia Decl.) claiming it shows that Plaintiffs

used www.rapidshare.com to distribute free downloads to consumers.  But, MP3tunes grossly

mischaracterizes the document.  The document concerns a request from AOL to have the EMI

Labels send a CD so that AOL could encode the file for *licensed* streaming to its listeners.  Gulia

Decl., Ex. KK.  At AOL's request, the EMI Labels used Rapidshare solely to transfer the CD to

AOL, whereupon the EMI Labels promptly removed the file from the Rapidshare site.  *Id.*; Supp.

Heinemann ¶¶ 4-5.  This document does not relate to a download offered to consumers at all.

Plaintiffs do not use Rapidshare to distribute music to end users.  *Id.*

MP3tunes does not address the evidence proving that its users regularly informed it of

copyright infringement occurring through the Sideload Website.  Pls. Mem. at 15; Pls. Reply-

SUF ¶ 48.  Rather, MP3tunes claims that "third-party notices are insufficient to satisfy the

requirements for constructive notice under the DMCA."  Def. Opp. at 18.  But the only case

MP3tunes cites for that (*Corbis Corp. v. Amazon.com, Inc.*) says no such thing; in fact, *Corbis*

considered the third-party notices finding, *inter alia*, that Amazon fully complied with them.

351 F. Supp. 2d 1090, 1108 (W.D. Wash. 2004).  Likewise, MP3tunes asserts that it took

appropriate action to disable domains that were used for infringement.  The actual evidence,

however, demonstrates that MP3tunes did not care about infringement but *only* terminated

domains when it suited its financial interest – that is, when users "gamed" the system by using

the Sideload Services to load personal files into lockers to avoid size restrictions.  Pls. Mem. at

18-19; Pls. Counter-SUF at ¶ 67; Pls. Reply-SUF ¶ 47.  MP3tunes has no evidence that it ever

terminated a domain because of concerns about infringement.

In the final analysis, MP3tunes does not controvert facts, but instead makes legal

arguments, most of which were fully addressed in Plaintiffs' Opposition to MP3tunes' motion:

      1.     MP3tunes wrongly argues that it cannot have knowledge because Plaintiffs did

not send notices covering each and every work in suit.  Def. Opp. at 16.  That argument turns the

DMCA on its head.  First, the DMCA very clearly does not require notices at all.  Independent of

notices, a service provider's actual or red flag knowledge provide *separate* bases for safe harbor

disqualification.  The statute and legislative history are unequivocal:

> Section 512 does not require use of the notice and take-down procedure.  A service
> provider wishing to benefit from the limitation on liability under subsection (c)
> must "take down" or disable access to infringing material residing on its system or
> network of which it has actual knowledge or that meets the "red flag" test, ***even if
> the copyright owner or its agent does not notify it of a claimed infringement***. . . .
> For their part, ***copyright owners are not obligated to give notification of claimed
> infringement in order to enforce their rights***.

 S. Rep. 105-190, at 45; H.R. Rep. 105-551 (II), at 54 (emphasis added).

Second, the DMCA is explicit that copyright owner notices do not need to identify each

work infringed in order to put a service provider on notice of broader infringement.  17 U.S.C.

§ 512(c)(3)(A)(ii)("if multiple copyrighted works at a single online site are covered by a single

notification, [only] a representative list of such works at that site" is necessary).  As detailed in

Plaintiffs' Opposition to MP3tunes' motion, at 19-23, Plaintiffs' gave MP3tunes valid notice of

specific infringements well beyond the illustrative works listed in the notices.  MP3tunes' failure

to act on the "representative list" independently disqualifies it from safe harbor.

2.      Plaintiffs have also addressed the correct interpretation of the DMCA's "red flag"

provision and why this Court should not follow *Viacom*.  *See* Pls. Opp. at 15-18.  Moreover,

Plaintiffs have demonstrated that, even under *Viacom*, MP3tunes had knowledge of countless

specific infringements – but did nothing.  *See* Pls. Opp. at 18-19.  Those facts remain undisputed.

3.      Plaintiffs have debunked MP3tunes' argument (Def. Opp. at 18) that, because

Plaintiffs "have made so many downloads available for free on the Internet," MP3tunes was

justified in taking no action to curtail rampant infringement occurring on its sites.  Pls. Opp. at 3-

8.[13] MP3tunes' assertion that the Sideload Website only works with files that have no "access restrictions," Def. Opp. 1, 10, disregards the difference between a *technical* restriction and a *legal* restriction.  MP3tunes treats as unrestricted any song file to which it or its users are able to gain technical access.  *Id.*  MP3tunes ignores that any lawfully authorized access was limited to users who visited authorized sites and participated in the marketing event.  When MP3tunes deliberately enabled users to copy song files without visiting authorized sites, it provided access beyond any authorization from Plaintiffs and turned its users into infringers – infringement for which MP3tunes is responsible.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that their motion for summary judgment be granted.

DATED:  December 17, 2010

Respectfully submitted,

By: *Andrew H Bart*

Andrew H. Bart
Joseph J. McFadden
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690

---

[13] MP3tunes' only new "evidence" of this alleged "practice" comes in the form of inadmissible declarations from purported "experts" Steve Gordon and Laura Stamm.  Plaintiffs have renewed their application to move to strike Mr. Gordon's testimony on numerous grounds, including his lack of qualification, lack of supporting research, and that his deposition revealed that his conclusions are based almost exclusively on speculation and hearsay.  *See* Pls. Reply Obj. § V.  Similarly, Ms. Stamm is an economist who has never worked in the music industry or with authorized downloads.  Ex. 117 (Stamm) at 31:14-33:25, 171:23-172:12.  Her "opinion" as to what files were authorized by the EMI Labels is based on her assistant's review of the "top 100" sources for sideloads on the Sideload Website as of February 2010, and that assistant's opinion of what percentage of those websites appeared to be authorized.  Ex. 117 (Stamm) at 45:12-46:10, 201:20-25, 218:2-220:12.  This "evidence" is not only speculative, it relates to sideloads from an irrelevant point in time and should be rejected in its entirety.

fax (212) 891-1699

-and-

Steven B. Fabrizio
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC,*
*Caroline Records, Inc, EMI Christian Music*
*Group Inc., Priority Records LLC, Virgin*
*Records America, Inc.*


By:  _____

Donald S. Zakarin
Frank P. Scibilia
Jacob B. Radcliff
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for the Beechwood Music Corp.,*
*Colgems-EMI Music Inc., EMI April Music Inc.,*
*EMI Blackwood Music, EMI Full Feel Music,*
*EMI Golden Torch Music Corp., EMI Longitude*
*Music, EMI Virgin Music, Inc., EMI Virgin*
*Songs, Inc., EMI Al Gallico Music Corp., EMI*
*Algee Music Corp., EMI Feist Catalog, Inc.,*
*EMI Gold Horizon Corp., EMI Grove Park*
*Music, Inc. EMI Hastings Catalog, Inc., EMI*
*Mills Music, Inc., EMI Miller Catalog, Inc.,*
*EMI Robbins Catalog, Inc., EMI U Catalog,*
*Inc., EMI Unart Catalog, inc., Jobete Music*
*Co., Inc., Screen Gems-EMI Music, inc., Stone*
*Agate Music, and Stone Diamond Music*

16

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| _____ )<br>CAPITOL RECORDS, LLC, *et al,* )<br> )<br>          *Plaintiffs*, )<br> )<br>      v. )<br> )<br>MP3TUNES, LLC, and MICHAEL ROBERTSON, )<br> )<br>         *Defendants.* )<br>_____)<br> )<br>MP3TUNES, LLC, and MICHAEL ROBERTSON, )<br> )<br>         *Counter-Claimant*, )<br> )<br>      v. )<br> )<br>CAPITOL RECORDS, LLC, *et al,* )<br> )<br>         *Counter-Defendants*. )<br>_____) | No. 07 Civ. 9931 (WHP)(FM) |

     I, Joseph J. McFadden, do hereby certify that on this 17th day of December 2010 I caused the within **Reply Memorandum of Law, Plaintiffs' Evidentiary Objections, Plaintiffs' Response to MP3tunes' Counterstatement, Reply Declaration of Andrew H. Bart,** and **Supplemental Declaration of Robert Heinemann** to be served via U.S. First Class mail delivery and electronic delivery upon:

     **Gregory Paul Gulia**
     Duane Morris, LLP (NYC)
     1540 Broadway
     New York, NY 10036-4086
     212-692-1000
     Fax: 212-692-1020
     Email: gpgulia@duanemorris.com

BY: _____

Joseph J. McFadden
919 Third Avenue
37th Floor
New York, NY 10022
212 891-1600

16655.1