UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, *et al.*, <br><br>                              Plaintiffs, <br><br>         vs. <br><br> MP3TUNES, LLC., *et al.*, <br><br>                              Defendants | No.  07 Civ. 9931 (WHP) (FM) <br><br> ECF Case |

**BRIEF OF *AMICUS CURIAE***

**RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC.
IN SUPPORT OF PLAINTIFFS**

Russell J. Frackman (*pro hac* application
forthcoming)
Mitchell Silberberg & Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, California  90064-1683
(310) 312-2000

Paul D. Montclare
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor
New York, New York  10017-1028
(212)  509-3900

## TABLE OF CONTENTS

**Page**

I.     INTEREST OF *AMICUS CURIAE* ................................................................. 1

II.    ARGUMENT ............................................................................................... 2

    A.    The Plain Language of Section 301(c) Provides That Pre-1972 Sound Recordings Are Governed Exclusively by State Law. ........................................... 2

    B.    The Copyright Act Explicitly Preserves Over a Century of Exclusive State Law Protection for Sound Recordings First "Fixed" Prior to February 15, 1972. ............................................................................................ 8

    C.    The Copyright Act by Its Terms Applies Only to Claims for Infringement of Federal Copyrights. ......................................................................... 12

## TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## <u>CASES</u>

*Ali v. Federal Bureau of Prisons,*
    552 U.S. 214 (2008) ................................................................. 3

*ALS Scan, Inc. v. RemarQ Cmtys., Inc.,*
    239 F.3d 619 (4th Cir. 2001) ........................................... 6

*Apple Corps. Ltd. v. Adirondack Group,*
    124 Misc. 2d 351, 476 N.Y. Supp. 2d 716 (Sup. Ct. 1983) ..................... 6, 11

*Arista Records, Inc. v. MP3Board, Inc.,*
    2002 WL 1997918 (S.D.N.Y., Aug. 29, 2002) ............................. 11

*Arista Records LLC v. Lime Group LLC,*
    715 F. Supp. 2d 481 (S.D.N.Y. 2010) ...................................... 5, 11

*Atlantic Recording Corp. v. Project Playlist, Inc.,*
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...................................... 7, 11

*Capitol Records, Inc. v. Greatest Records, Inc.,*
    43 Misc. 2d 878, 252 N.Y.S.2d 553 (Sup. Ct. 1964) ....................... 8

*Capitol Records, Inc. v. Mercury Record Corp.,*
    109 F. Supp. 330 (S.D.N.Y. 1952),
    *aff'd*, 221 F.3d 657 (2d Cir. 1955) ...................................... 8

*Capitol Records, Inc. v. Naxos of America, Inc.,*
    372 F.3d 471 (2d Cir. 2004) ............................................. 1, 10, 12

*Capitol Records, Inc. v. Naxos of North America, Inc.,*
    4 N.Y. 3d 540, 797 N.Y.S. 2d 352 (2005) ................................. 1, 9, 10

*Firma Melodiya v. ZYX Music GmbH,*
    882 F. Supp. at 1306 (S.D.N.Y. 1995) .................................... 6, 11

*Fonotipia Ltd. v. Bradley,*
    171 F. 951 (E.D.N.Y. 1909) ............................................. 8

### TABLE OF AUTHORITIES
#### (continued)

*Gieseking v. Urania Records, Inc.,*
  17 Misc. 2d 1034, 155 N.Y.S.2d 171 (Sup. Ct. 1956) ....................................... 8

*Greater Recording Co. v. Stambler,*
  144 U.S.P.Q. 547 (Sup. Ct. 1965) ....................................... 8

*Gucci America, Inc. v. Hall & Associates,*
  135 F. Supp. 2d 409 (S.D.N.Y. 2001) ....................................... 7

*Harrison v. PBG Indus., Inc.,*
  446 U.S. 578 (1980) ....................................... 3

*In re Aimster Copyright Litig.,*
  334 F.3d 643 (7th Cir. 2003) ....................................... 5

*In re Colonial Reality Co.,*
  980 F.2d 125 (2d Cir 1992) ....................................... 6

*Korman v. Walking Co.,*
  503 F. Supp. 2d 755 (E.D. Pa. 2007)....................................... 4

*Lee v. Bankers Trust Co.,*
  166 F.3d 540 (2d Cir. 1999) ....................................... 3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005) ....................................... 5

*Metropolitan Opera Ass'n, Inc. v. Wagner-Nichols Recorder Corp.,*
  199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950), *aff'd,* 279
  A.D.2d 632, 107 N.Y.S.2d 795 (1951)....................................... 8

*Oboler v. Goldin,*
  714 F.2d 211 (2d Cir. 1983) ....................................... 6

*Radio Corp. of America v. Premier Albums, Inc.,*
  19 A.D.2d 62, 240 N.Y.S.2d 995 (1963)....................................... 8

### TABLE OF AUTHORITIES
#### (continued)

**Page(s)**

*Rostropovich v. Koch Int'l Corp.,*
     1995 WL 104123 (S.D.N.Y., Mar. 7, 1995)....................................................... 11

*Shaab v. Kleindienst,*
     345 F. Supp. 589 (D. D.C. 1972)..................................................................... 1

*Silverman v. CBS Inc.,*
     870 F.2d 40 (2d Cir. 1989) ............................................................................ 11

*United States v. Gonzales,*
     520 U.S. 1 (1997) ........................................................................................... 3

### FEDERAL STATUTES

Pub. L. No.
     92-140, § 3, 85 Stat. 391 (1971)..................................................................... 9
     93-573, § 101, 88 Stat. 1873 (1974)............................................................... 9
     105-298, 112 U.S. Stat. 2827 (1998) ........................................................... 3, 6
     105-304, 112 Stat. 2877 (1998)..................................................................... 6

17 U.S.C. (Prior Act)
     § 1 ................................................................................................................. 9
     § 5 ................................................................................................................. 9
     § 19 ............................................................................................................... 9
     § 20 ............................................................................................................... 9
     § 26 ............................................................................................................... 9

17 U.S.C.
     § 101 ...................................................................................................... 2, 9, 12
     § 301 ..................................................................................................... passim
     § 401 ........................................................................................................... 12
     § 407 ........................................................................................................... 12
     § 408 ........................................................................................................... 12
     § 503 ............................................................................................................. 7
     § 505 ............................................................................................................. 7
     § 512 ..................................................................................................... passim
     § 1101 ...................................................................................................... 3, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

47 U.S.C. § 230 ........................................................................................... 7


## CONGRESSIONAL REPORTS

H.R. Rep. No.
     105-551 (1998) ................................................................... 6
     94-1476 (1976) ................................................................... 10

S. Rep. No. 105-190 (1998) ........................................................................ 6

## STATE STATUTES

Cal. Civil Code § 980(a)(2) ........................................................................ 9

Cal. Penal Code § 653h ............................................................................... 9

Fla. Stat. Ann. § 540.11(2)(a)(1)-(2) ......................................................... 9

Mich. Comp. Laws Ann. § 752.1052(b)-(c) ............................................... 9

N.J. Stat. Ann. § 2C:21-21(c)(1)-(2) ......................................................... 9

New York Arts & Cultural Aff. Law, § 31.01 ............................................ 8

New York Penal Law, §§ 275.05, 275.10 ................................................... 8

18 Pa. Cons. Stat. Ann. § 4116 .................................................................. 9

Tex. Bus. & Com. Code Ann. § 35.92(a) ................................................... 9

Wisc. Stat. Ann. § 943.207 ......................................................................... 9

## OTHER AUTHORITIES

2 M.&D. Nimmer, Nimmer on Copyright, § 8C.03 (rev. ed.) ............................ 9, 11

5 W.F. Patry, Patry on Copyright, § 15:55 (2010 ed.) ............................................ 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Compendium II of Copyright Office Practices, § 494.02 (1984).............................. 2

S.A. Diamond, Sound Recordings and Phonorecords: History and
    Current Law, 2 U. Ill. Law Forum 337 (1979)............................................. 9

## I.    INTEREST OF *AMICUS CURIAE*

*Amicus Curiae* Recording Industry Association of America, Inc. ("RIAA"), submits this brief to respond to the recently filed brief of Amicus Curiae Google Inc. In Support Of Defendants ("Google Brief") with respect only to the issue of state law protection of sound recordings "fixed" prior to February 15, 1972.[1]

RIAA is the trade group that represents the American recording industry.  RIAA's record company members create, manufacture, and/or distribute the vast majority of all legitimate sound recordings produced and sold in the United States, including catalogs of valuable sound recordings "fixed" before February 15, 1972.  RIAA protects the intellectual property and First Amendment rights of artists and music labels and monitors and reviews state and federal laws, regulations, and policies.  RIAA's members depend for their livelihood on effective protection of their rights in sound recordings and have been devastated by rampant piracy of music on the Internet.  RIAA has filed numerous *amicus curiae* briefs, including in *Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471 (2d Cir. 2004) (New York common law protection for sound recordings "fixed" prior to February 15, 1972), *Capitol Records, Inc. v. Naxos of North America, Inc.*, 4 N.Y. 3d 540, 797 N.Y.S. 2d 352 (2005) (same), and *Shaab v. Kleindienst*, 345 F. Supp. 589 (D. D.C. 1972) (constitutionality of the Sound Recording Amendment to Copyright Act).

---

[1]    *Amicus Curiae* does not respond to the argument in the Google Brief concerning "space shifting" (Google Brief at 9-11), as it believes no response is necessary and because that issue was not raised by the motion before the Court.  *Amicus Curiae* agrees with, but will not repeat, those arguments that were made by Plaintiffs in support of their motion.

## II.    ARGUMENT

### Introduction

*Amicus Curiae* does not agree with much of Google's rhetoric, but the issue here is not how big Google is, how salutary the Internet is, or the nature of the content created by Internet users.  The issue here involves a discrete question of law that applies to a valuable, but limited, series of rights in sound recordings "fixed" before February 15, 1972 ("pre-1972 recordings").[2] As described herein, those rights always have been, and continue to be, protected exclusively by state law, including the law of New York, that repeatedly and for many years has been applied to pre-1972 sound recordings without restriction by federal copyright law.

### A.    The Plain Language of Section 301(c) Provides That Pre-1972 Sound Recordings Are Governed Exclusively by State Law.

When Congress amended the Copyright Act in 1976, it clearly and unequivocally provided that the category of pre-1972 sound recordings would be governed solely by state law and would not be subject to the provisions of the Copyright Act:

> "With respect to sound recordings fixed before February 15, 1972, *any rights or remedies* under the *common law or statutes of any State* shall not be *annulled or limited* by this title until February 15, 2067.  The preemptive provisions of subsection (a) shall apply to any such rights and remedies pertaining to any cause of action arising from undertakings commenced on or after February 15, 2067."
> 17 U.S.C. § 301(c).  (emphasis added)

*See* Compendium II of Copyright Office Practices, § 494.02 (1984) (same).[3]

---

[2]    A sound recording is "fixed" in a tangible medium of expression "when its embodiment in a … phonorecord … is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated, for a period of more than transitory duration."  17 U.S.C. § 101.

[3]    Congress was precise in the wording of Section 301(c).  It used essentially the same language in 1994 to similarly preserve state law claims for the unauthorized fixation and

(…continued)

Congress not only exempted pre-1972 sound recordings from preemption by federal law, it also eliminated the possibility of federal protection for pre-1972 sound recordings, clearly leaving the existing state law as the only applicable law.

> "Notwithstanding the provisions of section 303, no sound recording fixed before February 15, 1972, shall be subject to copyright under this title before, on, or after February 15, 2067." *Id*.[4]

The statutory language and construct could not be more precise and unambiguous. "It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) (citation omitted). Thus, Section 301(c), under the heading "Preemption With Respect to Other Laws," specifically and broadly prohibits limiting "***any*** rights or remedies" for pre-1972 recordings. Congress' choice of the word "any" was not "uncertain" but was "expansive language [that] offers no indication whatever that Congress intended [a] limiting construction." *Harrison v. PBG Indus., Inc.*, 446 U.S. 578, 588-89 (1980) (the phrase "any other final action" in Clean Air Act "must be construed to mean exactly what it says, namely, *any other* final action") (emphasis in original). *See, e.g., United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"). The term "any" is in fact repeated four times in Section 301(c). *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218-220 (2008) (construing the Federal Tort Claims Act and noting that the word "any" that is repeated four times, including

_____

(…continued)
trafficking in sound recordings and music videos. 17 U.S.C. § 1101(d) ("Nothing in this section may be construed to annul or limit any rights or remedies under the common law or statutes of any State").

[4]    Initially, the termination date prescribed in Section 301(c) was February 15, 2047. It later was extended to February 15, 2067. Pub. L. 105-298, 112 Stat. 2827 (1998).

"any other law enforcement officer" "suggests a broad meaning" and was intended to mean law enforcement officers of whatever kind). That the provisions of Section 301(c) were to be read broadly is further apparent from the fact that its scope is defined in the disjunctive: "rights *or* remedies," "shall not be annulled *or* limited," and "under the common law *or* statutes of any State." *See Korman v. Walking Co.*, 503 F. Supp. 2d 755, 760 (E.D. Pa. 2007) (plain meaning of "or" in statute is "either").

While Google pays lip service to the principle that the plain language of the statute governs and that "[t]he Court should conclude that Congress meant what it said" (Google Brief at 2), it does not even discuss the language of Section 301(c) until the last page of its argument on this issue, never quotes the statute in full, and proceeds to ignore what "Congress said." Google Brief at 8. Its "analysis" does not apply the plain language of Section 301(c) but selectively omits or contorts it. Thus, Google contends that the phrase "any rights or remedies under the common law or statutes of any State shall not be annulled or limited" means that "section 512 does not 'annul[] or limit[]' any of Plaintiffs' rights and remedies under state common law for pre-1972 sound recordings, *but only affects* whom those rights and remedies can be enforced against," and that the statute "*merely* affect[s] who the proper defendants are for claims seeking to enforce such *rights* and from whom *remedies* may be sought." (Google Brief at 8) (emphasis added.) In other words, to Google the words "any rights or remedies" mean "some rights or remedies against some infringers;" the words "shall not be annulled or limited" mean "may be annulled or limited under some circumstances." At best, Google is disingenuous. The entire purpose of its brief, which seeks to attach to state law pre-1972 sound recording claims the limitations on liability embodied in Section 512 of the DMCA, is precisely to deprive the plaintiffs of rights *and* remedies. Certainly, Google's proposed limitation on the "proper

4

defendants" against whom rights may be enforced and remedies may be sought self-evidently limits *both* the rights and the remedies of owners of pre-1972 sound recordings.

Google argues that nevertheless, claims for direct infringement against individuals would be preserved. Google Brief at 8 ("Plaintiffs … may pursue claims of infringement against individuals (including MP3Tunes users) they reasonably believe to have *directly* infringed those rights.") (emphasis added). The first glaring problem with this construction is that it would eliminate existing claims and remedies for direct infringement of established state law rights in pre-1972 sound recordings against culpable entities such as MP3 Tunes itself. That result is barred by Section 301(c). In addition, Google would further eliminate the right to assert secondary liability claims available to owners of pre-1972 sound recordings under state law. *See Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 519-520 (S.D.N.Y. 2010) (rejecting contention that New York law prohibits only direct infringement of pre-1972 sound recordings and does not impose secondary liability) (citing cases). As Google well knows, these limitations on secondary liability would relegate the owners of pre-1972 sound recordings to the ineffective pursuit of innumerable and often anonymous individual users. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005) ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights against all direct infringers"); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("Recognizing the impracticability or futility of a copyright owner's suing a multitude of individual infringers,… the law allows a copyright holder to sue a contributor to the infringement instead.").

Moreover, applying Section 512 to pre-1972 sound recordings also would significantly limit the "remedies" available to owners of pre-1972 sound recordings. Section 512 is entitled

"Limitations on liability relating to material online" and limits not only liability but the remedies of monetary recovery (*e.g.*, §§ 512(b),(c),(d)) ("a service provider shall not be liable for monetary relief") and injunctive and other equitable relief. *Id.* (a complying service provider "shall not be liable [except for limited circumstances] for injunctive or other equitable relief"). The legislative history expressly characterizes Section 512 as a limitation on liability. *See* H.R. Rep. No. 105-551 at 50 (1998); S. Rep. No. 105-190 at 19 (1998). So, too, have the courts. *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 623 (4th Cir. 2001) (Section 512 "defines limitations of liability for copyright infringement").[5] The same remedies potentially "limited" by Section 512 otherwise would be available to owners of pre-1972 sound recordings under the common law or statutes of New York (and other states). *See, e.g., Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. at 1306, 1316 (S.D.N.Y. 1995) (preliminary injunction against distribution of unauthorized copies of pre-1972 master recordings); *Apple Corps. Ltd. v. Adirondack Group*, 124 Misc. 2d 351, 355, 476 N.Y. Supp. 2d at 716, 719 (Sup. Ct. 1983) (injunction against unauthorized distribution of plaintiff's performances). Further, owners of pre-1972 sound recordings also are entitled to punitive damages under state law, a remedy not available under the Copyright Act. *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983) ("Punitive damages are not

---

[5]     Section 512 was effective October 28, 1998 (Pub. L. 105-304, 112 Stat. 2877), only one day after the effective date of the amendment to Section 301(c) to further ***extend*** the period during which state law exclusively governs pre-1972 sound recordings. Pub. L. 105-298, 112 Stat. 2827. The same Congress addressed both statutes, which, if anything, indicates that Congress did not intend that one supersedes the other. *See In re Colonial Realty Co.*, 980 F.2d 125, 132 133 (2d Cir 1992) ("It is presumed that Congress 'legislate[s] with knowledge of former related statutes, and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction'."). This makes irrelevant Google's argument that "the Court must construe the law in section 512's favor, because section 512 is the later-enacted provision" (Google Brief at 8). In any event, as Google acknowledges, that principle requires a conflict in the language of the two statutes which does not exist here.

available in statutory copyright infringement actions.... It is true that punitive damages have

been awarded in common law copyright infringement actions as a matter of state law.")

Conversely, certain remedies available under the Copyright Act are not available in state law

actions involving pre-1972 sound recordings. *See* 17 U.S.C. §§ 503 (impoundment), 504(c)

(statutory damages), 505 (attorneys' fees).

Google's strained interpretation of Section 301(c) would result in the anomalous situation

that the rights and remedies available for violation of pre-1972 sound recordings would be

limited by the Copyright Act, while at the same time pre-1972 sound recordings were precluded

from qualifying for the significant rights and remedies afforded by the Copyright Act. Section

301(c) prohibits that disparate application of law.[6]

---

[6]    Google's footnote referring to the Communications Decency Act ("CDA") (Google Brief
at 7 n.12), actually supports plaintiffs' position. As an initial matter, Google admits that the
CDA is not an issue here. Further, while it professes to "express no view" as to the applicability
of the CDA to state common law claims, it cites only the single out of circuit case that has held
that state law intellectual property claims are preempted by the CDA. It fails to cite any of the
other cases that have criticized the reasoning of that case and have held that the plain language of
the CDA provides that state law intellectual property claims continue to subsist, including most
recently a decision by this Court. *See, e.g., Atlantic Recording Corp. v. Project Playlist, Inc.,*
603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) (Chin, J.) ("I conclude, as a matter of law, that
Section 230(c)(1) [of the CDA] does not provide immunity for either federal or state intellectual
property claims"); *Gucci America, Inc. v. Hall & Associates,* 135 F. Supp. 2d 409, 412-414
(S.D.N.Y. 2001). More to the point, notwithstanding the CDA's expressed intent "to preserve
the vibrant and free and competitive market that presently exists for the Internet ... unfettered by
Federal or State regulation" (47 U.S.C. § 230(b)(2) (the same purpose that Google claims is
behind Section 512), the CDA nevertheless excluded "any" state intellectual property laws from
its purview (as does Section 301(c)). *See Atlantic Recording Corp.,* 603 F. Supp. 2d at 704 (the
exclusion of "any" intellectual property law in § 230(e)(2) of the CDA applies equally to state
intellectual property laws.)

**B.**     **The Copyright Act Explicitly Preserves Over a Century of Exclusive State Law Protection for Sound Recordings First "Fixed" Prior to February 15, 1972.**

The Court's inquiry need not, and should not, reach any further than the plain language of Section 301(c).  However, the historical context in which Section 301(c) was adopted, amended, and implemented serves to confirm that the intent of Congress (as reflected in the statutory language) was to limit pre-1972 sound recordings to state law claims and to preclude the application of federal copyright law to those claims.

New York first provided protection to sound recordings over a century ago.  *See Fonotipia Ltd. v. Bradley*, 171 F. 951 (E.D.N.Y. 1909) (holding that making and selling copies of plaintiffs' commercial records constituted unfair competition).  New York courts, both state and federal, continued to provide protection against the unauthorized duplication and distribution of sound recordings "fixed" prior to February 15, 1972.  Although Google refers to these as "copyright" claims, in fact these claims have been brought and sustained under a variety of theories, including common law copyright, unfair competition, and misappropriation.  (Several of these cases were brought by some of the plaintiffs here).  *See, e.g., Capitol Records, Inc. v. Mercury Record Corp.*, 109 F. Supp. 330, 345- 346 (S.D.N.Y. 1952), *aff'd*, 221 F.3d 657 (2d Cir. 1955) (unfair competition); *Radio Corp. of America v. Premier Albums, Inc.*, 19 A.D.2d 62, 63-64, 240 N.Y.S.2d 995, 996-97 (1963) (misappropriation); *Greater Recording Co. v. Stambler*, 144 U.S.P.Q. 547 (Sup. Ct. 1965) (misappropriation); *Capitol Records, Inc. v. Greatest Records, Inc.*, 43 Misc. 2d 878, 880, 252 N.Y.S.2d 553, 555 (Sup. Ct. 1964) (common law copyright, unfair competition); *Gieseking v. Urania Records, Inc.*, 17 Misc. 2d 1034, 1035, 155 N.Y.S.2d 171, 172 (Sup. Ct. 1956) (unfair competition);  *Metropolitan Opera Ass'n, Inc. v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 802, 101 N.Y.S.2d 483, 497 (Sup. Ct. 1950), *aff'd*, 279

A.D.2d 632, 107 N.Y.S.2d 795 (1951) (unfair competition).[7]

This protection for pre-1972 sound recordings is mirrored in the statutory and/or common law of virtually every state.[8]

Exclusive state law protection for pre-1972 sound recordings continued after February 15, 1972, the date Congress first allowed copyright of sound recordings. *See* Pub. L. 92-140, 85 Stat. 391 (1971) (previous 17 U.S.C. §§ 1(f), 5(n), 19, 20, 26, 101(e)) ("Sound Recording Amendment") (effective February 15, 1972). Concurrently, Congress expressly decided that the new availability of federal copyright for sound recordings "shall apply only to sound recordings fixed, published, and copyrighted on and after the effective date of this Act [February 15, 1972] and before January 1, 1975." *Id.*[9] However, recognizing the need for continued protection of pre-1972 sound recordings, Congress further provided that nothing in the Sound Recording Amendment

> "shall be applied retrospectively or be construed as affecting in any way any rights with respect to sound recordings fixed before the effective date of this Act [February 15, 1972]." *Id.*

---

7   New York also provides criminal penalties for unauthorized transfers of sound recordings. New York Penal Law, §§ 275.05, 275.10. *See* New York Arts & Cultural Aff. Law,

§ 31.01 (civil and criminal penalties for unauthorized sound recordings of performances). *See also, e.g.*, Cal. Penal Code § 653h. *See generally Naxos of North America*, 4 N.Y.3d at 555, 797 N.Y.S.2d at 362 ("By the 1970s … about one half of the state legislatures, including New York, adopt[ed] criminal statutes prohibiting such piracy") (citation omitted).

8   *See generally* S.A. Diamond, Sound Recordings and Phonorecords: History and Current Law, 2 U. Ill. Law Forum 337 (1979). This protection is reflected either in state statutes, *e.g.*, Cal. Civil Code § 980(a)(2), Fla. Stat. Ann. §§ 540.11(2)(a)(1)-(2), Mich. Comp. Laws Ann. § 752.1052(b)-(c), N.J. Stat. Ann. § 2C:21-21(c)(1)-(2), 18 Pa. Cons. Stat. Ann. § 4116, Tex. Bus. & Com. Code Ann. § 35.92(a), Wisc. Stat. Ann. § 943.207 and/or the common law as decided by both federal and state courts. *See* 2 M.&D. Nimmer, Nimmer on Copyright, § 8C.03[B] at 8C-8 (Rev ed.) (citing numerous cases).

9   The expiration date later was removed. Pub. L. No. 93-573, 88 Stat. 1873 (1974).

Congress was not legislating in a vacuum when it passed the Sound Recording Amendment, then when it adopted Section 301(c) as part of the general revision of the Copyright Act in 1976 (effective in 1978), and most recently in 1998, when it extended the end date of Section 301(c) (until 2067). Rather, Congress was acutely aware of the lengthy history of state law protection and that in many cases sound recordings already were "protected by State statute or common law" when it decided to continue the state law regime as the exclusive source of the "rights and remedies" afforded pre-1972 sound recordings. *See* H.R. Rep. No. 94-1476, at 133 (1976). It did so based on the perceived need to continue the application of decades of state law jurisprudence to pre-1972 sound recordings.

Although Google refers to the issue here as one of "first impression" (Google Brief at 1), it surely is not. That Congress had exclusively relegated claims involving pre-1972 sound recordings to the states has been recognized by all courts applying those state laws after 1972. *Capitol Records, Inc. v. Naxos of America*, 372 F.3d 471 (2d Cir. 2004), most recently reiterated the exclusive application of New York law to pre-1972 sound recordings:

> "[B]ecause the original recordings were fixed before February 15, 1972, they are neither protected nor preempted by federal copyright law, and [plaintiff's] copyright claim therefore depends on state law protection until federal preemption occurs on February 15, 2067." *Id.* at 477.

The Court recognized that:

> "the preemption provision of the 1976 Act explicitly preserved until 2067 state law authority over sound recordings fixed before February 15, 1972. 17 U.S.C. § 301(c) ... [I]t is entirely up to New York to determine the scope of its common law copyright with respect to pre-1972 sound recordings." *Id.* at 478 (citation omitted).[10]

---

[10]    Precisely because it is strictly a state law matter, the Second Circuit certified several questions concerning the scope of protection for pre-1972 sound recordings under New York law to the New York Court of Appeals. 371 F.3d at 484. *See Capitol Records, Inc. v. Naxos of*

(…continued)

10

*See, e.g., Arista Records,* 715 F. Supp. 2d at 519 ("Federal copyright law does not cover sound

recordings made prior to 1972"); *Atlantic Recording Corp.*, 603 F. Supp. 2d at 694 & n.5 ("The

Copyright Act does not govern sound recordings created before February 15, 1972")

*Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at *12 (S.D.N.Y., Aug. 29, 2002)

("The record companies have also sued ... for unfair competition pursuant to New York common

law with respect to the record companies' pre-1972 sound recordings, which are not subject to

federal statutory copyright."); *Firma Melodiya*, 882 F. Supp. at 1316 n.14 ("Melodiya's common

law copyright and unfair competition claims are not pre-empted by the Federal Copyright Act

since the master recordings were made prior to February 15, 1972, the date when Congress first

extended federal copyright protection to sound recordings."); *Rostropovich v. Koch Int'l Corp.*,

1995 WL 104123, at *6 (S.D.N.Y., Mar. 7, 1995) (claims for misappropriation and unfair

competition are "property rights [that] arise under New York law"); *Apple Corps Ltd.,* 124 Misc.

2d at 355, 476 N.Y.S. 2d at 719 ("The passage of the Sound Recording Copyright Law [sic] in

1972 did not preempt state courts from enforcing claims for unfair competition, common law

copyright."). *See also Silverman v. CBS Inc.*, 870 F.2d 40, 43-44 n.2 (2d Cir. 1989) ("These

sound recordings were made prior to February 15, 1972, the date as of which Congress first

extended copyright protection to sound recordings."). Commentators agree. *See* 5 W.F. Patry,

Patry On Copyright, § 18:55 at 188-189 (2010 ed.) ("Section 301(c) is directed toward material

(pre-1972 sound recordings) that Congress has expressly told the states they may protect....¶

States are thus free to extend to pre-1972 sound recordings the full panoply of rights granted to

original works of authorship by the Federal Copyright Act ***and beyond***.") (emphasis added); 2

---

(...continued)
*America, Inc.*, 4 N.Y. 3d 540, 560, 797 N.Y. 2d 352, 368 (2005) (New York state law
"continue[s] to protect sound recordings made before 1972").

Nimmer on Copyright, § 8C.03[A] at 8C-7 ("[S]tatutory copyright does not extend to sound recordings first fixed prior to February 15, 1972. Concomitantly, an exception to federal pre-emption allows the states to accord their own protection to this category of works.").

No legislative history, including that of the DMCA, states or even implies that Section 301(c) does not mean what it says. In the 40 years since the Sound Recording Amendment and the 35 years since the adoption of Section 301, no court – federal or state – has held that *any provision* of the federal Copyright Act applies to pre-1972 sound recordings. To the contrary, it is "entirely up to New York" (and to other states) to determine the scope of rights with respect to pre-1972 sound recordings. *See, e.g., Naxos*, 372 F.3d at 478, and cases cited at p. 10-11, *supra*.

## C.    The Copyright Act by Its Terms Applies Only to Claims for Infringement of Federal Copyrights.

Consistent with the proscriptions of Section 301(c), no provision of the Copyright Act, including the DMCA, by its terms (or otherwise) refers to or applies to pre-1972 sound recordings. The opposite is true. Section 501 (in Chapter 5 of the Copyright Act) defines infringement of copyright as a violation of "the exclusive rights of the copyright owner as provided in sections 106 through 122 [of the Copyright Act]". A "copyright owner" is the owner of "any of the exclusive rights comprised in a copyright." 17 U.S.C. § 101. Section 512 of the DMCA (also part of Chapter 5) by its terms applies only to "infringement of copyright," *i.e.*, a violation of the exclusive rights *comprised in a copyright owned by a copyright owner*.

Google necessarily must strain to argue that the term "copyright" somehow includes pre-1972 sound recordings that, among other things, are not subject to "copyright," that cannot be registered for "copyright" (§ 408), that are not subject to deposit with the Copyright Office (§ 407), and that cannot carry a "copyright notice" (§ 401). That contention simply makes no sense. It is beyond question that the entire purpose and structure of the Copyright Act is to

12

prescribe rights and remedies for owners of federal copyrights. Thus, the Act includes sections on "the subject matter and scope of copyright"; "copyright ownership and transfer"; "duration of copyright"; "copyright notice, deposit, and registration"; and "copyright infringement and remedies." The Copyright Act, including with respect to specific rights and remedies, invariably uses the term "copyright" to refer to federal copyrights obtained pursuant to federal law. It never refers to rights in pre-1972 sound recordings as "copyrights". When the Act means to refer to other rights or other works, it says so, as in Section 301(c). *See also* 17 U.S.C. § 1101 (referring to "unauthorized fixation and trafficking in sound recordings and music videos").

Moreover, if Google is correct – that when the Copyright Act uses the term "copyright" it encompasses separate state law claims for pre-1972 sound recordings – the result would be that numerous provisions of the federal Copyright Act (not just the DMCA) relating to rights, remedies, and defenses, would be applied to pre-1972 sound recordings. That is directly contrary to Section 301(c) that ***removes*** pre-1972 sound recordings from the general preemption provisions of the Copyright Act. Limiting the rights and remedies of owners of pre-1972 sound recordings by appending Section 512 (or other provisions of the Copyright Act) to those rights and remedies would effect precisely such a preemption. Indeed, the result would be to require all state courts applying their own state law (or federal courts applying state law) to claims involving pre-1972 sound recordings, to adjudicate issues unique to federal law (*e.g.*, the applicability of Section 512). Carried to a logical conclusion, if Copyright Act defenses somehow were applied to pre-1972 sound recordings, every state law pre-1972 sound recording claim effectively would be converted into a federal action. That result is contrary to the language, structure, intent, and history of the Copyright Act.

13

**Conclusion**

*Amicus Curiae* respectfully submits that Section 301(c) must be read to mean what it says and, therefore, this Court should hold that pre-1972 sound recordings are not subject to the limitations contained in any section of the Copyright Act, including the DMCA.

Dated:  New York, New York
        January 13, 2011

MITCHELL SILBERBERG & KNUPP LLP

By: _____
    Paul D. Montclare
    Mitchell Silberberg & Knupp LLP
    12 East 49th Street, 30th Floor
    New York, New York  10017-1028
    Telephone:  (212) 509-3900
    Facsimile:   (212) 509-7239

    Russell J. Frackman (*pro hac* application
      forthcoming)
    Mitchell Silberberg & Knupp LLP
    11377 West Olympic Boulevard
    Los Angeles, California  90064-1683
    Telephone:  (310) 312-2000
    Facsimile:   (310) 312-3100

14