**DUANE MORRIS** LLP
Gregory P. Gulia
Vanessa Hew
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000

*and*

Edward M. Cramp (*pro hac vice*)
Michelle Hon Donovan (*pro hac vice*)

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI FEIST CATALOG, INC., EMI GOLD HORIZON CORP., EMI GROVE PARK MUSIC, INC., EMI HASTINGS CATALOG, INC., EMI MILLS MUSIC, INC., EMI MILLER CATALOG, INC., EMI ROBBINS CATALOG, INC., EMI U CATALOG, INC., EMI UNART CATALOG, INC., JOBETE MUSIC CO., INC., SCREEN GEMS-EMI MUSIC, INC., STONE AGATE MUSIC, and STONE DIAMOND MUSIC, | CIVIL ACTION NO. 07-Civ. 9931 (WHP) ECF Case |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| v. | |
| MP3TUNES, INC. and MICHAEL ROBERTSON, | |
| Defendants. | |

## TABLE OF CONTENTS

Page

I. Legal Standard ....................................................................................................................4

II. Plaintiffs Fail to Demonstrate Clear Error or Manifest Injustice Warranting a Reconsideration of the Court's Decision that the DMCA's Safe Harbors Apply to Common Law Copyright Infringement Claims ..........................................................6

    A. Plaintiffs Fail to Identify Controlling Law or Controlling Facts Overlooked by this Court in Determining that the DMCA's Safe Harbors Apply to Claims of Infringement of Pre-1927 Sound Recordings .... 6

    B. This Court's Reading of Section 512 Is Correct Because Section 512 Does Not Conflict with Section 301(c) ....................................................................... 7

    C. Applying the DMCA Safe Harbor Provisions to Pre-1972 Sound Recordings Achieves the Legislative Intent and Spirit of the DMCA .............. 9

III. Plaintiffs Fail to Demonstrate Clear Error or Manifest Injustice in this Court's Finding that MP3tunes Has Reasonably Implemented a Repeat Infringer Policy....10

    A. The Abundance of Case Law Supports the Courts' Finding that MP3tunes Reasonably Implemented a Repeat Infringer Policy ..................... 12

        1. The Weight of Authority Supports a Finding that the DMCA Does Not Require Service Providers to Terminate the Accounts of Users Identified in Multiple Take-Down Notice ............................................................. 13

        2. The Weight of Authority Supports a Finding that Subscribers Identified in Take-Down Notices Are Not "Repeat Infringers" ............................ 13

        3. Plaintiffs Improperly Attempt to Present New Arguments that Were Not Before the Court at Summary Judgment ............................................. 14

    B. Evidence in the Record Amply Demonstrates that MP3tunes Reasonably Implemented a Repeat Infringer Policy ......................................................... 16

Defendants MP3tunes Inc. ("MP3tunes") and Michael Robertson respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Reconsideration.

## PRELIMINARY STATEMENT

Having reviewed and carefully analyzed literally hundreds of pages of summary judgment briefing and amici briefing and conducting oral arguments on the parties' motions, this Court held, *inter alia*, that the Digital Millennium Copyright Act (the "DMCA") applies to sound recordings fixed prior to 1972 ("Pre-1972 Sound Recordings") and that MP3tunes had clearly complied with the DMCA safe harbor provisions by reasonably implementing a repeat infringer policy.  Despite the overwhelming efforts made by this Court, Plaintiffs, clearly displeased and unsatisfied with this Court's decision, are now seeking reconsideration of these issues—citing to no new law or evidence, but arguing that "clear error" or "manifest injustice" must have occurred.

Plaintiffs' Motion for Reconsideration is a mere vehicle to reargue positions already carefully considered—and rejected—by this Court.  However, motions for reconsideration are an extraordinary remedy and should not be made to frivolously re-litigate issues merely because a party is unhappy with the Court's ruling.  Indeed, motions for reconsideration must adhere to strict standards and are only granted in extremely rare instances where a movant can demonstrate: an intervening change in controlling law; the availability of new evidence; or the need to correct a clear error or prevent manifest injustice.

Plaintiffs themselves concede that the first two grounds do not apply here.  There has been no intervening changes in law and no new evidence has been put forth.  Plaintiffs are left with no option but to cry clear error of law or manifest injustice committed by this Court.  Thus, Plaintiffs allege that this Court committed clear error because it overlooked controlling law and facts.  Indeed,

this claim is quite incredible given that Plaintiffs offered absolutely no controlling law in support of their positions—not in their summary judgment papers or in their Motion for Reconsideration. Nor do Plaintiffs point to any facts that were not already considered by this Court. Accordingly, the Court should deny Plaintiffs' Motion for Reconsideration because Plaintiffs have failed to demonstrate any exceptional circumstances which would warrant the Court's award of such extraordinary remedy.

## ARGUMENT

**I.      Legal Standard**

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). "[T]he standard of review applicable to such a motion is strict." *United States v. Morillo-Vidal*, No. 10-CV-222, 2011 U.S. Dist. LEXIS 103051, at *5 (S.D.N.Y. Sept. 6, 2011). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391-92 (S.D.N.Y. 2000). Indeed, "[a] motion for reconsideration is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." *Hopkinson v. Estate of Siegal,* No. 10 Civ. 1743, 2011 U.S. Dist. LEXIS 76071, at *2 (S.D.N.Y. July 12, 2011); see also *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny a Motion for Reconsideration where the movant merely "seeks solely to re-litigate an issue already decided").

Motions for reconsideration are generally disfavored and "granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted).  Courts have limited these exceptional circumstances to the following: (1) "an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice.'" *Doe v. NYC Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (holding same); *Semple v. Eyeblaster, Inc.*, No. 08-CV-9004, 2009 U.S. Dist. LEXIS 52153 (S.D.N.Y. June 19, 2009) (holding even the discovery of new evidence does not warrant reconsideration of an order if the evidence is not "sufficiently cogent or compelling to warrant overturning the law of the case at this late stage of the litigation."); *EEOC v. Local 638 . . . Local 28 of The Sheet Metal Workers' Int'l Ass'n,* No. 71-CV-2877, 2001 U.S. Dist. LEXIS 19, at * 4 (S.D.N.Y. Jan. 3, 2001) (holding same); *Green v. Beer*, No. 06-CV-4156, 2009 U.S. Dist. LEXIS 98285, at  (S.D.N.Y. Oct. 22, 2009) (noting an intervening change of law must be an explicit overruling, not a mere clarification).

Courts do not differentiate between clear error and manifest injustice.  Rather, "[m]anifest injustice is defined as an error . . . that is direct, obvious, and observable . . . ." *Enron Corp. v. J.P. Morgan Sec. (In re Enron Corp.)*, 356 B.R. 343, 362 (Bankr. S.D.N.Y. 2006) (citations omitted). Courts only find clear error or manifest injustice when the movant demonstrates "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

Manifest injustice or clear error has not occurred where the movant for reconsideration merely rehashes what the court has already considered.  See *Kittay v. Korff (In re Palermo,* No. 08 CV 7421, 2011 U.S. Dist. LEXIS 11681, at *11 (S.D.N.Y. Feb. 4, 2011) (denying reconsideration on grounds of  manifest injustice where movant merely repeated previous arguments and ruling

5

manifest injustice did not result from misrepresentations to the Court or a disregard of an order); *Tortora v. SBC Communs., Inc.*, No. 09-CV-7895 2010 U.S. Dist. LEXIS 100978, at *9 (S.D.N.Y. Sept. 23, 2010) (manifest injustice not found where movant offered "nothing more than a distillation of the unsuccessful arguments" already rejected by this Court).

**II.     Plaintiffs Fail to Demonstrate Clear Error or Manifest Injustice Warranting a Reconsideration of the Court's Decision that the DMCA's Safe Harbors Apply to Common Law Copyright Infringement Claims**

Plaintiffs fail to meet the strict standard for moving for reconsideration. They have not identified any change in the law, nor any new evidence, nor any clear error or manifest injustice that warrants the extraordinary remedy of reconsideration. In Plaintiffs' Motion for Reconsideration, Plaintiffs allege that this Court overlooked controlling law in determining that the DMCA applied Pre-1972 Sound Recordings. Incredibly, despite this audacious claim, Plaintiffs cite to not one single case in their summary judgment papers in which a court has held that the DMCA does not apply to Pre-1972 Sound Recordings.

**A.     Plaintiffs Fail to Identify Controlling Law or Controlling Facts Overlooked by this Court in Determining that the DMCA's Safe Harbors Apply to Claims of Infringement of Pre-1927 Sound Recordings**

Plaintiffs' failure or inability to identify any controlling law purportedly overlooked by this Court is unsurprising. Despite the numerous copyright infringement actions involving the DMCA, no court has ever held that the DMCA's safe harbor provisions do not apply to infringement claims regarding Pre-1972 Sound Recordings.[1] Indeed, no court has issued any law on this issue—much less law that controls this Court.

---

[1]   Defendants pointed out the first time this issue was before this Court that Plaintiffs failed to cite any law in support of their position, relying instead on copyright law as interpreted by EMI, a point Plaintiffs never challenged. *See* Dkt. #238 at 12.

Accordingly, in Plaintiffs' Motion for Reconsideration, Plaintiffs simply rehash the convoluted statutory interpretation arguments that they presented to this Court at summary judgment and which this Court rejected. While Plaintiffs may disagree with this Court's rejection of those arguments and its finding that the "plain meaning of the statutory language makes the DMCA safe harbors applicable to both state and federal copyright claims" and "applies to sound recordings fixed prior to February 15, 1972," Order, Dkt. #267 at 12, Plaintiffs point to no clear error in the Court's finding because there is none.

Indeed, the relevant case law on statutory construction supports this Court's decision. As the Supreme Court of the United States has held, "where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (*quoting Russello v. United States*, 464 U.S. 16, 23 (1983)). In this case, section 1201 of the DMCA, which provides the statutes anti-circumvention provisions, states that that section applies to "a work protected under [the Copyright Act]." *See* 17 U.S.C. § 1201. In contrast, section 512 of the DMCA states the safe harbors apply to "infringement of copyright." *See* 17 U.S.C. § 512. Accordingly, applying principles set forth by the United States Supreme Court in *Keene*, Congress meant what it said when it referred to "infringement of copyright" in section 512 of the DMCA and then when it referred to infringement under the Copyright Act in section 1201 of the DMCA. Congress clearly intended for the DMCA's safe harbor provisions to apply to infringement of both federal and state copyright infringement claims.

> **B.   This Court's Reading of Section 512 Is Correct Because Section 512 Does Not Conflict with Section 301(c)**

In their Motion for Reconsideration papers, Plaintiffs merely reiterate their original summary judgment papers when they claim a plain reading of section 512 of the Copyright Act is

7

erroneous because it would conflict with section 301 and, given section 512's much later enactment, cause an implicit repeal of section 301.  See Dkt. 209 at 36, n. 17.   However, this argument was clearly and properly rejected.

Section 301(c) merely provides that "[w]ith respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any state shall not be annulled or limited by this title until February 15, 2067," 17 U.S.C. § 301(c).  However, there is no statutory conflict between sections 512 and 301(c) because section 512 does not limit or annul any rights or remedies under the common law or state law.  The safe harbors provided by section 512 of the DMCA do not prevent Plaintiffs from enforcing any rights or remedies under the common law or statutes of any state with respect to their Pre-1972 Sound Recordings—rather they merely help clarify what activity constitutes infringement.

The courts have a long history of allowing a wide of array of common law rights and remedies to be used to protect Pre-1972 Sound Recordings, and each is available to Plaintiffs unhindered by the safe harbors of the DMCA.  *See, e.g., Capitol Records, Inc. v. Greatest Records, Inc.*, 252 N.Y.S.2d 553, 555-558 (Sup. Ct. 1964) (listing various common law rights used to protect Pre-1972 Sound Recordings from infringement).  As explained in the Brief of Amicus Curiae Google Inc. in Support of Defendants, the DMCA's safe harbors "merely affect who the proper defendants are for claims seeking to enforce such rights, and from whom remedies may be sought." Dkt. # 249 at 12.

Far from limiting or annulling Plaintiffs' common law rights, section 512 of the DMCA merely insures that innocent service providers—who cannot possibly monitor or control all the content posted by their users and who do not benefit from the infringement—are not held liable for the infringing activities of their users.  Indeed, the copyright holders' rights or remedies are clearly neither limited or annulled because the copyright holders are still capable of seeking redress from the actual infringers—the users themselves.  Indeed, Plaintiffs themselves made this same

argument, acknowledging that the DMCA's "immunity is not presumptive, but granted only to 'innocent' service providers." *See* Dkt. #207 at 35. Accordingly, section 512 does not limit or deprive Plaintiffs of their common law or state law rights in Pre-1972 Sound Recordings. It merely clarifies the definition of infringement. [DISCUSS]

Indeed, judicial recognition of federal copyright defenses in connection with Pre-1972 Sound Recordings has long peacefully coexisted with rights and remedies under state and common law. By way of example, section 107 of the Copyright Act provides the defense that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The fair use defense has been applied in cases involving common law rights in Pre-1972 Sound Recordings without conflicting with section 301(c). *See, e.g., EMI Records Limited v. Premise Media Corp. L.P.*, No. 601209/08, 2008 N.Y. Misc. LEXIS 7485, at *31 (N.Y. Sup. Ct. Aug. 8, 2008) (applying fair use defense to infringement of Pre-1972 Sound Recordings). Like the fair use defense provided under section 107, the DMCA safe harbor provisions do not annul or limit rights and remedies under state or common law for Pre-1972 Sound Recordings. Instead, these provisions merely clarify what does not constitute infringement.

### C. Applying the DMCA Safe Harbor Provisions to Pre-1972 Sound Recordings Achieves the Legislative Intent and Spirit of the DMCA

Moreover, Plaintiffs' reading of the Copyright Act is contrary to Congress' express intent. Congress' explicit goal in enacting the DMCA was to clarify copyright law with respect to the online world in order to foster faster and robust development of the Internet. As explained in the Brief of Amici Curiae Public Knowledge, Electronic Frontier Foundation, Consumer Electronics Association, and Home Recording Rights Coalition ("PK Amici Brief"), "Congress created a set of safe harbors designed to provide greater certainty to service providers concerning their legal exposure for infringements that might occur in the course of their activities." Dkt. # 203 at 8; *see*

*also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.01[A][1] (2010) (describing uncertain state of copyright law as applied to Internet companies prior to the DMCA). As Congress explained, the "DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand." S. Rep. No. 105-190, at 1-2 (1998). Applying the DMCA's safe harbor provisions to songs recorded after February 15, 1972, but not to songs recorded prior to that date, would undermine this intent by creating a climate of legal uncertainty and would discourage service providers from investing in and developing Internet based commerce due to the risk of legal exposure as the result of the activity of third parties. Since there is no way to monitor or control the activities of third parties, investment and development in the Internet would be stifled because the risk of exposure and/or the costs of creating a system to monitor and control these third parties. Even if possible, such a system would be prohibitive. Requiring service providers to make such determinations and expose themselves to liability for infringements of their users would be prohibitively expensive, thus discouraging the very investment and growth that Congress hoped to encourage when it enacted the DMCA.

Thus, this Court correctly held that the DMCA safe harbor provisions apply to Pre-1972 Sound Recordings. Having merely rehashed arguments already considered by this Court and having failed to point to any controlling authority or facts which this Court has overlooked, Plaintiffs have failed to demonstrate any grounds for reconsideration of this Court's finding.

**III.   Plaintiffs Fail to Demonstrate Clear Error or Manifest Injustice in this Court's Finding that MP3tunes Has Reasonably Implemented a Repeat Infringer Policy**

To qualify for a safe harbor, the DMCA requires a service provider to "adopt[] and reasonably implement[] . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers . . . ." 17 U.S.C. § 512(i)(1)(A). In their summary judgment papers, Plaintiffs argued

two points in attempting to sway this Court that MP3tunes had not complied with this requirement: (1) the DMCA obligated MP3tunes to terminate the accounts of users identified in more than one takedown notice; and (2) MP3tunes' evidence that it had terminated user accounts for copyright infringement was insufficient. Dkt. # 207 at 37; Dkt. # 209 at 23. However, this Court expressly rejected these arguments holding that MP3tunes had satisfied the DMCA's repeat infringer policy requirement. Apparently dissatisfied with this result, Plaintiffs moved for reconsideration, once again crying accusations of "clear error" and "manifest injustice." However, Plaintiffs' Motion for Reconsideration again fails to demonstrate intervening law or new facts, or clear error or manifest injustice to warrant the extreme remedy of reconsideration. Instead, Plaintiffs merely rehash the same arguments from their summary judgment papers hoping that their brash persistence will lead to a better result.

Indeed, Plaintiffs' brazen accusations that this Court overlooked controlling law are incredible given that Plaintiffs have not offering one single controlling case that supports their position that MP3tunes was obligated to terminate the accounts of users who could be identified from more than one take-down notice. Given that the weight of authority clearly supports this Courts finding, Plaintiffs' accusations seem to more the product of wishful thinking than reasoned legal analysis. Accordingly, there has been no clear error or manifest injustice in this Court's decision.

Plaintiffs similarly fail to demonstrate that the Court overlooked controlling facts in finding that MP3tunes had reasonably implemented its repeat infringer policy. Plaintiffs parade the same arguments and evidence that was previously before this Court, making the same mistakes in their Motion for Reconsideration as they do in the summary judgment papers and demonstrating that there are no circumstances warranting their a motion for reconsideration.

11

### A. The Abundance of Case Law Supports the Courts' Finding that MP3tunes Reasonably Implemented a Repeat Infringer Policy

To qualify for safe harbor protection, section 512(i)(1)(A) requires that a service provider's repeat infringer policy provide for the termination of service for actual repeat infringers, and then only in "appropriate circumstances." *See Perfect 10 v. CCBill*, 488 F.3d 1102, 1109-1110 (9th Cir. 2007). "The statute permits service providers to implement a variety of procedures, but an implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright." *Id.* "The key term, 'repeat infringer,' is not defined . . . . The fact that Congress chose not to adopt such specific provisions when defining a user policy indicates its intent to leave the policy requirements, and the subsequent obligations of the service providers, loosely defined." *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099, at 1111 (C.D. Cal. 2009) (citations omitted).

As this court recognized, courts have expressly ruled on the issue of what constitutes "reasonable implementation" holding that:

> . . . implementation is reasonable if the service provider (1) has a system for dealing with takedown notices, (2) does not interfere with the copyright owner's ability to issue notices, and (3) under "appropriate circumstances, terminate users who repeatedly or blatantly infringe copyrights."

Order, Dkt. # 267, at 9 (*citing Perfect 10 v. CCBill*, 488 F.3d 1102, 1109-1110 (9th Cir. 2007).

Plaintiffs do not challenge the Court's finding that MP3tunes has a system for dealing with takedown notices, nor that MP3tunes does not interfere with the copyright owner's ability to issue notices. However, Plaintiffs accuse this Court of overlooking controlling law as to the third prong of this test but fail to cite any controlling law allegedly overlooked by this Court. Because Plaintiffs have failed to demonstrate that this Court overlooked any controlling law on this issue, their Motion for Reconsideration should be denied.

## 1. The Weight of Authority Supports a Finding that the DMCA Does Not Require Service Providers to Terminate the Accounts of Users Identified in Multiple Take-Down Notice

Despite Plaintiffs' allegations of error, the DMCA does not obligate service providers to conduct an investigation to determine whether its users appear on multiple take-down notices. Indeed, the weight of authority holds explicitly to the contrary: "To identify and terminate repeat infringers, a service provider need not affirmatively police its users for evidence of repeat infringement." *CCBill*, 488 F.3d at 1111; *Viacom Int'l, Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 520 (S.D.N.Y. 2010) (*"*a service provider need not affirmatively seek facts indicating infringing activity in order to claim [this safe harbor]."); *Io Group, Inc. v. Veoh Network, Inc.*, 586 F. Supp. 2d 1132, 1143 (N.D. Cal. 2008) ("512(i) does not require service providers to track users in a particular way to or affirmatively police users for evidence of repeat infringement."); *see also UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1116 (C.D. 2009) (emphasizing that the termination of users' account is a drastic action that must be justified by reliable evidence). Plaintiffs, having not presented any cases to the contrary, controlling or otherwise, cannot, with a straight face, accuse this Court of overlooking controlling law.

## 2. The Weight of Authority Supports a Finding that Subscribers Identified in Take-Down Notices Are Not "Repeat Infringers"

Plaintiffs further err in concluding that a user identified in more than one take-down notice is a "repeat infringer." The weight of authority is unambiguous in holding that an appearance on a take-down notice does not demonstrate that a user is an infringer—much less a blatant, repeat infringer. *See CCBill LLC*, 488 F.3d at 1113 (holding that Perfect 10's notices of infringement were not evidence of infringement); *Viacom*, 718 F. Supp. 2d at 528 (explaining that "even DMCA-compliant notices did not, in themselves, provide evidence of blatant copyright infringement."); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1105 (W.D. Wash. 2004) (DMCA compliant take-down notices "did not, in themselves, provide evidence of blatant copyright

13

infringement."); *Rock River Communs., Inc. v. Universal Music Group, Inc.*, No. 8-635, 2011 U.S. Dist. LEXIS 46023, *42-43 (C.D. Cal. Apr. 27, 2011) (explaining that a take-down notice is a mere allegation of infringement).

A leading treatise on copyright law, *Nimmer on Copyright*, also rejects Plaintiffs' claim that service providers are obligated to terminate users who appear on more than one take-down notice. *See* 6 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[B][3][b] (2011) ("the detailed process of notice refers to notifications of 'claimed infringement,' there by signaling that notification by itself cannot prove actual infringement.") (emphasis in the original). According to *Nimmer on Copyright*, the standard for determining whether a user is an infringer requires a higher degree of evidence than just mere identification in a take-down notice. Thus, "an infringer in the statutory sense may be either a party who has been adjudicated to have committed copyright infringement, or a party about whom the service provider has actual knowledge that s/he has engaged in infringement." *Id*. at § 12.10[B][3][c].

Accordingly, there is no clear error in this Court's holding that MP3tunes has reasonably implemented a repeat infringer policy even though it did not conduct an investigation to determine which of its users appeared on multiple take-down notices and did not terminate the accounts of such users.

      **3.**    **Plaintiffs Improperly Attempt to Present New Arguments that Were Not Before the Court at Summary Judgment**

"[A] Motion for Reconsideration cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been considered." *Koehler v. Bank of Berm. Ltd.*, No. M18-302, 2005 U.S. Dist. LEXIS 8694, at * 1-*2 (S.D.N.Y. May 9, 2005) (*citing Kunica v. St. Jean Financial, Inc.*, 63 F.Supp.2d 342, 346 (S.D.N.Y. 1999)) (rejecting motion that presented arguments not previously presented).

Plaintiffs attempt to add a new argument to their claim that the DMCA obligates service providers to terminate the accounts of users found in more than one take-down notice. Plaintiffs now argue that this Court erred in its distinquishing between "blatant infringers" who "know they lack authorization and nevertheless upload content to the internet for the world to experience or copy, and users who download content for their personal use and are otherwise oblivious to the copyrights of others." Order, Dkt. # 267 at 10. Plaintiffs, in a move wholly unfit for a Motion for Reconsideration, claim this Court is wrong because knowledge is not an element of copyright infringement. Plaintiffs' new argument clearly proffers improper grounds for reconsideration and should be denied.

Nevertheless, Plaintiffs' new argument demonstrates that there was no error in this Court's decision. First, Plaintiffs misrepresent this Court's decision when they claim that this Court considered knowledge relevant as an element for infringement. This Court made no such holding. Rather, the Court stated the following:

> There is a difference between users who know they lack authorization and nevertheless upload content to the internet for the world to experience or copy, and users who download content for their personal use and are otherwise oblivious to the copyrights of others. The former are blatant infringers that internet service providers are obligated to ban from their websites. The latter, like MP3tunes users who sideload content to their lockers for personal use, do not know for certain whether the material they are downloading violates the copyrights of others.

See Order, Dkt. # 267 at 10.

The Court is clearly not asserting knowledge as an element of infringement but as an element in determining whether or not the allegedly infringing activity of MP3tunes' users identified in a take-down notice was "blatant" and egregious enough to warrant the termination of their accounts. While knowledge is certainly not an element of copyright infringement, knowledge is certainly a relevant factor in a service provider's determination of whether or not circumstances termination of a user's is appropriate.

B.     **Evidence in the Record Amply Demonstrates that MP3tunes Reasonably Implemented a Repeat Infringer Policy**

First, Plaintiffs' claim that this Court has made an improper factual determination, again a point suited for an appeal, not a Motion for Reconsideration, is simply inaccurate. Under Rule 56, the Court may determine whether a genuine issue of fact remains for trail. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (holding that if the evidence advanced in opposition to a motion for summary judgment "is merely colorable, or is not significantly probative, then summary judgment may be granted."). Here, this Court has ruled that Plaintiffs have failed to show that there is a sufficient factual dispute as to whether MP3tunes terminates, under appropriate circumstances, the accounts of users who repeatedly or blatantly infringe copyrights. Plaintiffs claim that this Court has made an improper factual determination is a gross mischaracterization of this Court's decision.

Plaintiffs' claim that there was no basis in the record presented to this Court for such a determination is in essence a repeat of the very same argument and evidence that was made, and rejected, at summary judgment. *See* Plaintiffs' Memorandum of Law in Opposition to the Motion of MP3tunes, LLC for Summary Judgment, Dkt. # 209 at 25-26. Unless Plaintiffs are accusing this Court of not reading their motion papers, this Court properly considered these arguments and dismissed them at summary judgment. Plaintiffs are unable to demonstrate the extraordinary circumstances that would warrant this Court's reconsideration of this issue. They fail to point to any intervening changes of law, or new facts, clear error or manifest injustice which would justify re-litigating these issues.

As demonstrated at summary judgment, the evidence that MP3tunes terminated 153 repeat infringers was not contradicted by other testimony from Mr. Robertson. Mr. Robertson testified that he could not remember the different types of conduct that had resulted in users having their

accounts terminated, other than file sharing. See Dkt. # 196,[2] Ex. 4, 195:2-25 ("Q. Okay, are you aware, sitting here today, of any other reasons why accounts were terminated, other than that broad category of---of sharing that you just talked about? A. Yes. I remember an incident where—there was some incidents around some hate—hate group . . . .") This testimony does not contradict Mr. Robertson's later testimony that MP3tunes had terminated 153 user accounts for copyright infringement. Plaintiffs attempt to manufacture a contradiction by claiming that users who distribute passwords to their MP3tunes lockers are not necessarily engaged in copyright infringement. However, the point is MP3tunes understood the sharing of files as blatant and repeated infringement and acted upon that understanding. Nothing in Mr. Robertson's testimony contradics that fact.

     As demonstrated at summary judgment, the testimony of other MP3tunes witnesses in this case does not contradict Mr. Robertson's testimony. The fact that Julian Krause testified that he did not attempt to determine whether infringers could be identified on multiple take-down notices does not contradict the fact that MP3tunes terminated 153 users it suspected of file sharing. Nor is there a factual dispute created by the testimony of Derek Ford, Sharmaine Lindahl, or Doug Reese. As Mr. Ford testified, patrolling for copyright infringement was not in his job description. See Dkt. #101, Ex. 101 at 99:23-100:19 ("Q. Did Michael ever instruct you that if you saw things that appeared to be infringing on sideload.com, you should do something about it? . . . . A. I just programmed."). Similarly, the fact that Doug Reese, MP3tunes' Chief Technology Officer, and Sharmain Lindahl were not instructed to take action as to copyright infringement does not create a factual dispute. As Sharmain Lindahl explained in the very excerpt quoted by Plaintiffs' in their Motion for Reconsideration: "That was not my job duties (sic) to deal with taking down music from our site." See Dkt. # 210, Ex. 103, 125:16-17. Nor would such work be the territory of the Chief

---

[2]   Plaintiffs' mistakenly cite Exhibit 4 of Document Entry No. 210 when in fact the relevant testimony is found in Exhibit 4 of Document Entry No. 198.

Technology Officer. Accordingly, the fact that these employees did not take action against infringement does not create a factual dispute as to whether or not 153 user accounts were terminated for sharing files.

Moreover, Plaintiffs absurdly claim that "Robertson's declaration did not actually state that the 153 users listed were terminated for suspected copyright infringement." Dkt. # 269 at 19. To the contrary, Mr. Robertson states: "MP3tunes has terminated the accounts of users whom it has suspected of using MP3tunes' services for the purposes of infringing activity. Attached hereto as Exhibit D is a chart listing user accounts that were terminated for such reasons." Dkt. # 184 at ¶ 11 (emphasis added). Plaintiffs convoluted reading of that statement does not create a dispute as to whether or not MP3tunes terminated the accounts of 153 users for copyright infringement.

Plaintiffs have used the testimony of Mr. Robertson and other witnesses out of context in an attempt to manufacture a contradiction where it does not exist, while ignoring testimony from witnesses that demonstrates that MP3tunes clearly had a policy for terminating the accounts of repeat infringers and user accounts were in fact terminated due to repeated infringement. *See* Dkt. #189, Ex. W at 239:15-240:14) (Lindahl testifying to instance where a user account was terminated for sharing content); Ex. V at 242:11-243:10) (MP3tunes employee Kendall Dawson testifying to terminating a user account for file sharing). Accordingly, none of the testimony cited creates an triable issue of fact.

In addition, Plaintiffs repeat their claim that MP3tunes was unable to determine the reasons why it terminated user accounts, with a reference to an email displaying a chart that shows 88,642 disabled user accounts in which MP3tunes stated there is no way to tell why any given record was set to "disabled" status. This argument has already been presented to this court, *see* Dkt. Entry # 209 at n. 11, and rejected. MP3tunes' inability to state why those 88,642 user accounts were terminated is irrelevant to whether or not MP3tunes was able to determine whether it terminated 153 users for file sharing.

Accordingly, this Court did not commit an error, much less a clear error, when it held that MP3tunes terminated the accounts of users for copyright infringement.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Reconsideration should be denied in all respects.

Dated:  New York, NY
         September 23, 2011

DUANE MORRIS LLP

By: /s/_____
Gregory P. Gulia
Vanessa Hew
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000

Edward M. Cramp (*pro hac vice*)
Michelle Hon (*pro hac vice*)

*Counsel for Defendants*

DM1\2856785.2