UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                        )
CAPITOL RECORDS, LLC, *et al*,          )
                                                        )
                    *Plaintiffs*,                  )   No. 07 Civ. 9931 (WHP)(FM)
                                                        )
            v.                                         )
                                                        )
MP3TUNES, LLC, and MICHAEL ROBERTSON,   )
                                                        )
                    *Defendants*.              )
_____ )
                                                        )
MP3TUNES, LLC, and MICHAEL ROBERTSON,   )
                                                        )
                    *Counter-Claimants*,   )
                                                        )
            v.                                         )
                                                        )
CAPITOL RECORDS, LLC, *et al*,          )
                                                        )
                    *Counter-Defendants*. )
_____ )


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

I.     The DMCA Does Not Apply to Pre- 72 Sound Recordings ...................................................1

        A.    Section 301(c) of the Copyright Act Prevents The Use of that Statute To Limit State Law Protection of Pre-72 Recordings..............................................................2

        B.    Even in the Absence of Section 301(c), Section 512 Does Not Apply to Pre-72 Recordings ........................................................................................................3

        C.    Legislative Intent Does Not Support Extending the DMCA to Pre-72 Recordings ...................................................................................................5

II.    On The Crucial Fact Question of Whether MP3tunes Terminated "Repeat Infringers," The Court Overlooked Testimony and Established Law that Precluded the Grant of Summary Judgment. ........................................................................................6

        A.    MP3tunes Presented No Competent Evidence That it Terminated a Single User in Response to Copyright Infringement ................................................6

        B.    Defendants' List of Terminated Users Could Do No More than Create a Disputed Issue of Fact Requiring a Trial...................................................7

        C.    Failure to Terminate Users Identified as Infringers in Multiple Takedown Notices Disqualified Defendants from Safe Harbor......................................8

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Astoria Federal Sav. and Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991) ................................................................................................................5

*Auburn Hous. Auth. v. Martinez*,
   277 F.3d 138 (2d Cir. 2002) ....................................................................................................5

*Bibeault v. Advanced Health Corp.*,
   No. 97 Civ. 6026 (WHP), 2002 WL 24305 (S.D.N.Y. Jan. 28, 2002) .....................................6

*Capitol Records, Inc. v. Naxos of Am. Inc.*,
   372 F.3d 471 (2d Cir. 2004) ....................................................................................................2

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ................................................................................................................5

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F.Supp.2d 1090 (W.D. Wash. 2004) ................................................................................9

*Ellison v. AOL,*
   357 F.3d 1072 (9th Cir. 2004) ...............................................................................................10

*EMI Records Limited v. Premise Media Corp. L.P.*,
   No. 601209/08, 2008 N.Y. Misc. LEXIS 7485 (N.Y.Sup.Ct. Aug. 8, 2008) ..........................3

*Flava Works, Inc. v. Marques Rondale Gunter*,
   No. 10 Civ. 6517, 2011 WL 3205399 (N.D. Il July 27, 2011) ..............................................10

*Goldstein v. California*,
   412 U.S. 546 (1973) ................................................................................................................2

*In re Aimster*,
   334 F.3d 643 (7th Cir. 2003) ...................................................................................................6

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009) ....................................................................................................8

*Intern. Gateway Exchange, LLC v. Western Union Fin. Services, Inc.*,
   333 F.Supp.2d 131 (S.D.N.Y. 2004) .......................................................................................7

*Kramer v. Thomas*,
   No. 05 Civ. 8385, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 28, 2008) .........................3

*Newport Electronics, Inc. v. Newport Corp.*,
    157 F.Supp.2d 202 (D. Conn. 2001) ................................................................................... 7

*Newtown v. City of New York*,
    No. 07 Civ. 6211 (SAS), 2010 WL 329891 (S.D.N.Y. Jan 27, 2010) ....................................... 6

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) ............................................................................. 10

*Perfect 10 v. CCBill*,
    488 F.3d 1102 (9th Cir. 2007) ............................................................................... 6, 9, 10

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ................................................................................................. 7

*Reeves v. Sanderson Pluming Products, Inc.*,
    530 U.S. 133 (2000) .......................................................................................................... 8

*Rock River Communs., Inc. v. Universal Music Group, Inc.*,
    No. 8-635, 2011 U.S. Dist. LEXIS 46023 (C.D. Cal. Apr. 27, 2011) ..................................... 10

*Tennessee Valley Authority v. Hill*,
    437 U.S. 153 (1978) .......................................................................................................... 5

*Viacom Int' Inc. v. YouTube, Inc.*,
    718 F.Supp.2d 514 (S.D.N.Y. 2010) ................................................................................... 9

**STATUTES**

17 U.S.C. 512(c) ..................................................................................................................... 3

17 U.S.C. §§ 107, 108, 110, 111, 112, 115 ............................................................................. 4

17 U.S.C. § 512(i)(1)(A) ......................................................................................................... 9

17 U.S.C. § 1201(a) ............................................................................................................... 4

17 U.S.C. § 501(a) ................................................................................................................. 4

**OTHER AUTHORITIES**

H.R. Rep. 105-551(II) ........................................................................................................ 9, 10

H.R. Rep. No. 105-796 .......................................................................................................... 3

**PRELIMINARY STATEMENT**

Reconsideration is warranted when a decision overlooks controlling law or material facts. Plaintiffs have moved for reconsideration on two narrow grounds that satisfy that standard. First, the summary judgment decision in this case (the "Order") applied the limitations on liability found in Section 512 of the Copyright Act to state law claims of common law copyright infringement relating to sound recordings first fixed prior to February 15, 1972 ("Pre-72 Recordings"). That portion of the Order cannot be reconciled with: (1) the plain language of Section 301(c) of the Act, which prohibits anything in the Act from limiting state law protections for Pre-72 Recordings; or (2) Chapter 5 of the Act, which defines the term "infringement of copyright" to mean infringement of the rights granted under the Act, not pursuant to state law.

Second, the Order found, as a matter of undisputed fact, that Defendants had terminated repeat infringers. However, the only evidence proffered by the Defendants directly conflicted with previous testimony from the same witness and should not have been considered. Even if considered, Defendants' evidence could do no more than create an issue of fact that should be decided by a jury, since all of Defendants' employees who were deposed testified that they did not terminate users due to copyright infringement. As a result, the Court should grant Plaintiffs' motion for reconsideration and reverse the grant of summary judgment on these two issues.

**ARGUMENT**

**I.      The DMCA Does Not Apply to Pre- 72 Sound Recordings**

In their opening brief, Plaintiffs demonstrated that the Order overlooked controlling authority in holding that the limitations on liability found in Section 512 of the Copyright Act applied to Pre-72 Recordings. Specifically, the Order overlooked section 301(c) of the Copyright Act, which commands that nothing in the Act may be used to limit or annul any rights or remedies that exist under State statute or common law to protect pre-72 Recordings. In

1

addition, the definition of copyright infringement contained in Section 501 of the Copyright Act only addresses violations of federal law. These express statutory provisions confirm that the limitations on liability for infringement contained in Section 512(c) do not apply to Pre-72 Recordings. The Order also overlooked Supreme Court and Second Circuit precedent holding that the Copyright Act does not apply to Pre-72 Recordings. *Goldstein v. California*, 412 U.S. 546, 552 (1973); *Capitol Records, Inc. v. Naxos of Am. Inc.*, 372 F.3d 471, 477 (2d Cir. 2004). Defendants have presented no argument that rebuts this controlling authority.

### A.     Section 301(c) of the Copyright Act Prevents The Use of that Statute To Limit State Law Protection of Pre-72 Recordings

When amending the Copyright Act to provide federal protections for sound recordings created after February 15, 1972, Congress simultaneously enacted Section 301(c) to ensure that the Act would not limit robust state protection for Pre-72 Recordings. That section provides:

> With respect to sound recordings first fixed before February 15, 1972, <u>*any* rights *or* remedies</u> under the common law or statute of any State shall not be *annulled or limited* by this title until February 15, 2067. (Emphasis added.)

The "title" referred to in this section is title 17 of the U.S. Code – the U.S. Copyright Act. There can be no good faith dispute that applying the "safe harbors" contained in Section 512 of the Copyright Act to Pre-72 Recordings would conflict with the express prohibition contained in Section 301(c). Section 512 is manifestly a limitation on liability. Indeed, it is titled "Limitations on liability relating to material online." Defendants assert that Section 512 does not limit liability but "merely help[s] clarify what activity constitutes infringement." Defs. Opp. Br. at 6. However, in enacting the DMCA, Congress clearly stated it was not changing the definition of infringement, noting that "Section 512 is not intended to imply that a service provider is or is not liable as an infringer either for conduct that qualifies for a limitation of liability or for conduct that fails to so qualify. Rather, the limitations of liability apply if the service provider is

found to be liable under existing principles of law." H.R. Rep. No. 105-796 at 73. Indeed, rather than changing the definition of infringement, Section 512 limits the remedies available for such infringement if the service provider meets the statutory criteria. 17 U.S.C. 512(c). In the Order, this Court recognized this distinction, noting that, "the DMCA provides certain safe harbors (i.e., limitations on remedies for copyright infringement)" and as with "all immunities from liability [the DMCA] should be narrowly construed." Order at 7. Since any application of Section 512(c) to Pre-72 Recordings prevents Plaintiffs from pursuing remedies such as injunctive relief and damages, it directly conflicts with Section 301.

Defendants have no real response to the dispositive language of Section 301, and instead argue that because a "fair use" defense exists in the Copyright Act and because courts have applied a "fair use" defense to claims relating to Pre-72 Recordings, federal defenses can be used to limit state law rights. However, the fair use defense invoked in the cases that Defendants cite is not that found in Section 107 but rather the fair use defense that "exists at common law." *EMI Records Limited v. Premise Media Corp. L.P.*, No. 601209/08, 2008 N.Y. Misc. LEXIS 7485, at *15 (N.Y.Sup.Ct. Aug. 8, 2008).[1] Thus, these cases do not support the application of federal copyright defenses or limitations (such as those found in Section 512) to state law claims for infringement of Pre-72 Recordings.

### B. Even in the Absence of Section 301(c), Section 512 Does Not Apply to Pre-72 Recordings

Apart from the dispositive language of Section 301(c), the text of Section 512 of the Copyright Act confirms that the safe harbor provisions do not apply to common law claims. Section 512 defines safe harbors from liability "for copyright infringement" for qualifying

---

[1] Defendants' second case on this point, *Kramer v. Thomas*, No. 05 Civ. 8385, 2006 U.S. Dist. LEXIS 96714, *34-35 (C.D. Cal. Sept. 28, 2008), merely notes that the fair use defense is applicable to California copyright claims. It says nothing about applying Section 107 of the Copyright Act to Pre-72 Recordings. As a result, *Kramer* is properly interpreted as applying a common law fair use defense.

3

service providers.  As noted in Plaintiffs' opening brief, Chapter 5 of the Copyright Act defines the term "infringement of copyright" to mean the violation of "any of the exclusive rights of the copyright owner as *provided by sections 106 through 122*" of the Copyright Act.  17 U.S.C. § 501(a)(emphasis added).  Sections 106 through 122 of the Act, however, do not confer any rights on the owners of Pre-72 Recordings.  As a result, the "copyright infringement" addressed by Section 512 is limited to claims asserting infringement under federal law.

Unable to find any authority to the contrary, Defendants instead attempt to construct an argument based on an inapposite section of the Copyright Act – Section 1201. That provision states that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a).  Defendants attach significance to the fact that Congress used the phrase "under this title" to describe "works" in section 1201, but did not use similar language to describe "infringement of copyright" under section 512.  However, as noted above, the term copyright infringement is a defined term within the Copyright Act, which only relates to rights granted by Title 17.  *See* 17 U.S.C. § 501(a).  Thus, adding the phrase "under this title" to "infringement of copyrights" in section 512 would have been redundant.  In contrast, adding "under this title" to the description of "works" in Section 1201 is not redundant, because the Act does not similarly define the term "works."  As a result, the language in Section 1201 is not probative as to the intended scope of Section 512.

The Copyright Act contains numerous provisions referring to "infringement of copyright," none of which use the phrase "under this title" and none of which apply to Pre-72 Recordings.  *See* 17 U.S.C. §§ 107, 108, 110, 111, 112, 115.  For example, Section 108 of the Act contains limitations as to what constitutes "infringement of copyright" in the context of libraries that make copies of materials for archival purposes.  Under Defendants' definition of "infringement of copyright," Section 108 would apply to Pre-72 Recordings.  Yet in 2009,

4

Congress passed a bill directing the Copyright Office to study the effect of extending federal law to Pre-72 Recordings for the purpose of granting libraries the protections afforded in Section 108. *See* H.R. 1105, Public Law 111-8 [Legislative text and explanatory statement] 1769.  If Defendants' argument were correct, this study would have been superfluous since references to "infringement of copyright" in the Copyright Act would already cover Pre-72 Recordings.

### C. Legislative Intent Does Not Support Extending the DMCA to Pre-72 Recordings

With no real response to the controlling language of Sections 301(c) and 512, Defendants resort to policy arguments citing inapposite portions of legislative history.  However, legislative intent cannot be used to alter the plain language of a statute, and the meaning of these sections is clear.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).  Furthermore, Defendants' arguments run afoul of the "cardinal rule" of statutory construction that one section of a statute cannot be interpreted in a manner that implicitly repeals another section.  *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189 (1978); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 145 (2d Cir. 2002).[2]  As a result, it is for Congress, not the courts, to extend the Copyright Act to Pre-72 Recordings.  Indeed, a member of Congress has proposed such a bill, the "Sound Recording Simplification Act," H.R. 2933.  Manifestly, such a bill would be unnecessary if references to copyright infringement in the Copyright Act already applied to Pre-72 Recordings.

Moreover, Defendants do not proffer any legislative history that indicates Congress ever intended the DMCA to cover Pre-1972 Sound Recordings.  As a result, Defendants' generic assertion that the failure to apply the DMCA to Pre-72 Recordings threatens the existence of service providers is not supported by any expression of Congressional intent.

---

[2] Repeal by implication is strongly disfavored on the grounds that a statute should not be abrogated unless there is an explicit indication from Congress of an intended repeal.  *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 109 (1991). This rule is even stronger when two sections of a statute, such as Sections 301 and 512, are enacted close in time.  *Auburn Hous. Auth.* 277 F.3d at 145.

**II.      On The Crucial Fact Question of Whether MP3tunes Terminated "Repeat Infringers," The Court Overlooked Testimony and Established Law that Precluded the Grant of Summary Judgment.**

Reconsideration is warranted where a Court has overlooked material facts relevant to its decision.  *See e.g., Newtown v. City of New York*, No. 07 Civ. 6211 (SAS), 2010 WL 329891, at *1 (S.D.N.Y. Jan 27, 2010); *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026 (WHP), 2002 WL 24305, at *3 (S.D.N.Y. Jan. 28, 2002).  In accepting MP3tunes argument that it had terminated 153 users for suspected infringement, the Court overlooked significant evidence that not only contradicted this statement, but also rendered it incompetent to prove Defendants' claim.  In addition, the Order overlooked controlling authority in holding that Defendants had no obligation to terminate users that repeatedly infringed works identified in takedown notices.

   **A.     MP3tunes Presented No Competent Evidence That it Terminated a Single User in Response to Copyright Infringement**

A threshold issue in analyzing whether Defendants implemented an adequate repeat infringer policy is whether Defendants produced any evidence of terminating even a single user in response to repeated acts of infringement.  *See* Order at 8-9; *In re Aimster*, 334 F.3d 643, 655 (7th Cir. 2003); *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109-1110 (9th Cir. 2007).  The only "evidence" proffered by Defendants to prove any termination was a spreadsheet attached to the affidavit of Michael Robertson submitted in support of Defendants' motion for summary judgment, which MP3tunes claims showed 153 users who had been terminated for suspected infringement.  However, this evidence contradicted Robertson's deposition testimony, and thus was unable to create an issue of fact as to whether *any* users were terminated for infringement.

MP3tunes designated Robertson as its Rule 30(b)(6) corporate representative on issues related to terminating users for infringement.  During that deposition, Robertson disclaimed any knowledge of whether MP3tunes kept records of users accused of infringement.  Ex. 99 (Robertson), Docket Entry # 210, at 284:13-23.  Further, in response to Plaintiffs' extensive

6

efforts to obtain *any record* of user terminations, Defendants' counsel affirmed that no records existed. *See* Exs. 114, 115, Docket Entry # 210.

Controlling authority clearly states that "a party may not create an issue of fact by submitting an affidavit in a summary judgment brief that, by omission or addition, contradicts the affiant's previous deposition testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Newport Electronics, Inc. v. Newport Corp.*, 157 F.Supp.2d 202, 220 (D. Conn. 2001); *Intern. Gateway Exchange, LLC v. Western Union Fin. Services, Inc.*, 333 F.Supp.2d 131, 144-45 (S.D.N.Y. 2004). But that is precisely what the Court permitted Defendants to do. Under well-established law, Robertson's affidavit could not be used as proof that users were terminated for copyright infringement. Defendants make no effort to distinguish this authority, or to explain how its list of 153 terminated users suddenly became available months after discovery closed.

### B. Defendants' List of Terminated Users Could Do No More than Create a Disputed Issue of Fact Requiring a Trial

Even assuming *arguendo* that the Court properly considered Defendants' list of 153 terminated users, the only proffered support for the information contained on the list was the personal knowledge of Robertson, who vouched for its accuracy and contents. *See* Docket # 184. There was no explanation of methodology or identification of the records from which the list was compiled. Moreover, Robertson's claim of personal knowledge of the contents of the list contradicted his deposition testimony in which he testified that he was unaware of records kept of users accused of infringement.[3] Ex. 99 (Robertson), Docket Entry # 210, at 284:13-23; *see also* Ex. 114, Docket # 210 (there is "no way to tell" why user accounts were disabled). At a

---

[3] As noted in Plaintiffs' opening brief, Robertson's declaration did not clearly state the reason why Defendants terminated each of the 153 users. *See* Pls. Op. Br. at 14. However, whether the Court deems the declaration ambiguous does not change the conflict the declaration creates with the other evidence submitted on summary judgment and does not affect the outcome of Plaintiffs' motion.

minimum, this conflict created an issue of credibility for a jury.  *Reeves v. Sanderson Pluming Products, Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions"); *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009).

Robertson's declaration also contradicts the testimony of every other MP3tunes employee.  The two MP3tunes employees whose jobs involved dealing with infringement – the employees responsible for responding to takedown notices and the employee responsible for responding to user complaints of infringement – both testified that they were never instructed to (and never did) track or report any evidence of infringement.  Ex. 102 (Krause), Docket Entry # 210, at 38:2-5, 45:11-16; Ex. 103 (Lindahl), Docket Entry # 210 at 125:5-23.  Similarly, two other employees – the chief technology officer and an employee responsible for structuring MP3tunes' code to track user activity – testified that they never monitored for signs of infringement and were unaware of any records that would demonstrate such tracking.  Ex. 101 (Ford), Docket Entry # 210 at 99:23-100:19; Ex. 5 (Reese), Docket Entry #190 at 228:20-229:1.  And again, Defendant's lawyers also represented in discovery that no list existed of users who Defendants had terminated for copyright infringement.  *See* Exs. 114, 115, Docket Entry # 210.

Given this testimony, it is a reasonable inference that Robertson fabricated his self-serving summary judgment testimony.  Because Plaintiffs are entitled to the "benefit of all inferences which the evidence fairly supports" it was clear error to credit Robertson's testimony as an undisputed fact.  *In re Dana Corp.*, 574 F.3d at 152.

### C. Failure to Terminate Users Identified as Infringers in Multiple Takedown Notices Disqualified Defendants from Safe Harbor

In their summary judgment motion, Plaintiffs demonstrated that 688 MP3tunes users were repeat copyright infringers.  Plaintiffs also demonstrated that Defendants did nothing to

identify these infringers, and that Defendants terminated none of these users or even warned them about their repeat infringement.  This alone should disqualify Defendants from safe harbor.

In response, Defendants argued that they only have a duty to terminate repeat infringers who are also "blatant" (*i.e.*, knowing and willful) infringers.  This argument is incorrect.  The statute does not require that the infringement be "blatant," just that it be repeated.  17 U.S.C. § 512(i)(1)(A).  Moreover, the cases Defendants cite call for termination of users who are ***either*** "repeatedly ***or*** blatantly" infringing copyrights.  *See Perfect 10 v. CCBill*, 488 F.3d 1102, 1109-1110 (9th Cir. 2007); *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1101 (W.D. Wash. 2004); *Viacom Int' Inc. v. YouTube, Inc.*, 718 F.Supp.2d 514, 528 (S.D.N.Y. 2010); Order at 9.  Indeed the legislative history of the DMCA supports the disjunctive reading of this requirement.  *See* H.R. Rep. 105-551(II), at 61 ("those who repeatedly ***or*** flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others should know that there is a realistic threat of losing that access.") (emphasis added).

Defendants also argue that they are not required to consider takedown notices when deciding whether a user is a repeat infringer.  However, this Court's Order recognized that reasonable implementation of a repeat infringer policy requires tracking users in response to takedown notices.  *See* Order at 9.  Furthermore, no precedent supports the idea that a service provider can disregard copyright owner notices when implementing a repeat infringer policy.  In *Viacom*, for example, defendant terminated users based on both formal DMCA notices and informal copyright owner notices.  *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527-28 (S.D.N.Y. 2010); *see also* Pls. Br. in Support of Summary Judgment at 31-32, Docket # 207.  In fact, Defendants' argument was explicitly rejected in *Perfect 10, Inc. v. CCBill LLC*, where the Ninth Circuit required consideration of takedown notices in assessing repeat infringers and reversed the district court because it disregarded third-party takedown notices in evaluating the

defendant's implementation of a repeat infringer policy.[4]  488 F.3d at 1113; *see also Flava Works, Inc. v. Marques Rondale Gunter*, No. 10 Civ. 6517, 2011 WL 3205399, at *10 (N.D. Il July 27, 2011); *Ellison v. AOL,* 357 F.3d 1072, 1080 (9th Cir. 2004); H.R. Rep. 105-551 (II), at 61 (512(c) knowledge standards apply to repeat infringer determination).

Notably, the logical consequence of Defendants' positions that: (i) it need not consider takedown notices in terminating users, and (ii) it is under no obligation to ever investigate the activities of its users, is that Defendants are never required to terminate users.  This argument reads the repeat infringer provisions out of the DMCA.  Furthermore, the argument that terminating users in response to takedown notices might result in the termination of "innocent" users is incorrect.  Knowledge is not an element of copyright infringement, and the DMCA provides a mechanism through which service providers may give users notice of a claim of infringement and provide the user with the opportunity to dispute it.  Defendants' decision not to use this procedure cannot form the basis of a claim that its users were not actually infringers. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1180 (C.D. Cal. 2002)

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion and further grant summary judgment in their favor with respect to Plaintiffs' claims relating to their Pre-1972 Recordings as well as MP3tunes' eligibility for DMCA safe harbor.  In the alternative, on the second branch of the instant motion, plaintiffs request that the Court grant a trial on the issue of whether MP3tunes adequately implemented a repeat infringer policy.

---

[4] Defendants' citation to *YouTube* for the proposition that "DMCA-compliant notices did not, in themselves, provide evidence of blatant copyright infringement" is actually a quote from *Corbis*. Furthermore, the quote from *Corbis*—a case from the Western District of Washington from 2004—was not adopted in the *YouTube* case, making Defendants' citation entirely inapposite.  Similarly, Defendants' citation to *Rock River Communs., Inc. v. Universal Music Group, Inc.,* No. 8-635, 2011 U.S. Dist. LEXIS 46023, *42-43 (C.D. Cal. Apr. 27, 2011) has nothing to do with setting a standard for terminating repeat infringers.

DATED: October 5, 2011                    Respectfully submitted,

By: /s/ Andrew H. Bart

Andrew H. Bart
Carletta F. Higginson
Joseph J. McFadden
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690
fax (212) 891-1699

-and-

Steven B. Fabrizio
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC, EMI Christian Music Group Inc., and Priority Records LLC.*

By: /s/ F. Scibilia

Donald S. Zakarin
Frank P. Scibilia
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for the Beechwood Music Corp., Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music, EMI Full Feel Music, EMI Golden Torch Music Corp., EMI Longitude Music, EMI Virgin Music, Inc., EMI Virgin Songs, Inc., EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI Feist*

11

*Catalog, Inc., EMI Gold Horizon Corp., EMI Grove Park Music, Inc. EMI Hastings Catalog, Inc., EMI Mills Music, Inc., EMI Miller Catalog, Inc., EMI Robbins Catalog, Inc., EMI U Catalog, Inc., EMI Unart Catalog, inc., Jobete Music Co., Inc., Screen Gems-EMI Music, inc., Stone Agate Music, and Stone Diamond Music*