**DUANE MORRIS LLP**
Gregory P. Gulia
Vanessa C. Hew
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; PRIORITY RECORDS LLC; VIRGIN RECORDS AMERICA, INC.; BEECHWOOD MUSIC CORP.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GOLDEN TORCH MUSIC CORP.; EMI LONGITUDE MUSIC; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC., EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI FEIST CATALOG, INC., EMI GOLD HORIZON CORP., EMI GROVE PARK MUSIC, INC., EMI HASTINGS CATALOG, INC., EMI MILLS MUSIC, INC., EMI MILLER CATALOG, INC., EMI ROBBINS CATALOG, INC., EMI U CATALOG, INC., EMI UNART CATALOG, INC., JOBETE MUSIC CO., INC., SCREEN GEMS-EMI MUSIC, INC., STONE AGATE MUSIC, and STONE DIAMOND MUSIC, <br><br> Plaintiffs, <br> v. <br><br> MP3TUNES, INC., and MICHAEL ROBERTSON, <br><br> Defendants. | CIVIL ACTION NO. 07 Civ. 9931 (WHP) <br><br> ECF Case <br><br><br> **DEFENDANT MICHAEL ROBERTSON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PERSONAL JURISDICTION** |

# PRELIMINARY STATEMENT[1]

EMI's opposition papers ignore, and thus concede, key facts that bar the exercise of jurisdiction over Michael Robertson. First, with respect to jurisdiction under section 302(a)(3), EMI never disputes that the songs allegedly sideloaded by Mr. Robertson were already publicly available on the Internet and thus were not made available by Mr. Robertson as required under *Penguin Group (USA), Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011) ("*American Buddha*"). Nor does EMI challenge the fact that Mr. Robertson did not, in his individual capacity, derive substantial revenue from selling "goods and services" in interstate commerce as required under section 302(a)(3). Moreover, with respect to jurisdiction under the agency theory, EMI does not challenge that Mr. Robertson never stood to benefit from MP3tunes' allegedly infringing activities. Finally, EMI concedes by omission that Mr. Robertson lacks minimum contacts with New York. Given that there is no dispute as to these material facts, jurisdiction over Mr. Robertson cannot be exercised.

# ARGUMENT

Contrary to EMI's claim, this Court's Order of October 16, 2009 granting EMI's motion to amend and re-add Mr. Robertson as a party to this action is not law of the case. Indeed, as this Court plainly stated in its 2009 Order:

> In making this ruling, this Court notes that while [EMI] may have provided evidence sufficient for this Court to grant [EMI's] motion, eventually personal jurisdiction must be established by a preponderance of the evidence . . . . Thus, Robertson will be free to argue at trial that the evidence does not establish personal jurisdiction by a preponderance of the evidence.

Dkt. # 120 at 16 (internal quotation and citation omitted).

Nor is there jurisdiction as a result of the 2011 Order on summary judgment. Indeed, the Court ordered the parties to limit their summary judgment papers to the issue of MP3tunes' liability,

---

[1] Capitalized terms retain the definitions set forth in Mr. Robertson's opening brief unless otherwise noted.

*see* Dkt. #182, which the parties did. In its 2011 Order on summary judgment, the Court did not even address the issue of personal jurisdiction, much less decide it.

**I.  EMI HAS NOT DEMONSTRATED ANY DISPUTED ISSUE OF MATERIAL FACT WITH RESPECT TO JURISDICTION UNDER SECTION 302(a)(3)**

EMI mischaracterizes the impact of *American Buddha* on section 302(a)(3)'s jurisprudence. In *American Buddha*, the original question certified by the Second Circuit was: "[i]n copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *American Buddha*, 16 N.Y.3d at 302. However, the New York Court of Appeals ruled on the far more narrow question: "[i]n copyright infringement cases involving the uploading of a copyrighted literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *American Buddha*, 16 N.Y.3d at 302.

At a time when various courts are faced with copyright infringement issues involving music downloads, Judge Graffeo specifically and deliberately limited his holding to <u>printed literary works</u> that are <u>uploaded</u> to the Internet. Thus, EMI grossly mischaracterizes *American Buddha* by representing that it holds that the location of the copyright holder is the situs of injury in "cases alleging infringement via the uploading of copyrighted material on the internet." Nothing in *American Buddha* supports such a broad reading and this is clearly contradicted as the Court of Appeals had an opportunity to issue a broader holding but expressly declined to do so.

**A.  Sideloading Is Not Legally Equivalent to Uploading**

The concept of "uploading" was critical in *American Buddha* because, when "printed literary works" are uploaded, the "crux" of the injury "is not merely the unlawful electronic copying" but "the <u>intended</u> consequences of those activities—the instantaneous availability of those copyrighted

2

works" to "anyone, in New York or elsewhere, with an Internet connection . . . ." *American Buddha*, 16 N.Y.3d at 304. As demonstrated in Mr. Robertson's opening brief, the act of sideloading is hugely different from the act of uploading because sideloading involves transferring a file that is already available from a third-party website on the Internet to an individual's private, password-protected music locker. In its opposition papers, EMI does not challenge the fact that the songs sideloaded by Mr. Robertson were already publicly available on the Internet.

EMI's expert Ellis Horowitz concedes the fact that the songs Mr. Robertson allegedly sideloaded were already available on the Internet when he refers to the songs on Sideload.com as "links to music files available on the Internet . . . ." *See* Horowitz Opp. Decl. at ¶ 5. Indeed, presenting Internet users with links available elsewhere on the Internet is no different from what GOOGLE or any other search engine does every day. While Professor Horowitz claims to have identified 47 songs allegedly belonging to EMI in Mr. Robertson's music locker and on Sideload.com, this fact is immaterial as these songs were already available to the public on the Internet, with Sideload.com merely displaying links to such publicly available third-party material.

### B. EMI's Standard for "Foreseeability" under Section 302(a)(3) Is Inaccurate

To determine foreseeability under section 302(a)(3), "New York courts . . . look for tangible manifestations of a defendant's intent to target New York, or for concrete facts known to the non-domiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." *Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (citation omitted). "[S]heer speculation that defendants intended, or even knew of, a harm suffered within the state of New York . . . , alone, is insufficient to establish reasonable foreseeability and thus jurisdiction pursuant to section 302(a)(3)." *Id*.

EMI proposes a "speculation" standard that is unsupported by the very case law it cites. EMI cherry picks a quotation, out-of-context, from *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 n.4 (1980), for its proposed standard that Mr. Robertson need not foresee which of

3

his acts will have consequences in New York. However, *Fantis Foods* is inapposite, holding that while non-domicile defendants in product liability cases need not foresee the specific defect for which they have been sued, this proposition did not apply to conversion claims because the direct injury in New York was merely speculative. *Id*. Indeed, *Fantis Foods* supports Mr. Robertson's position because it holds:

> It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there. If a plaintiff could satisfy the requirements of CPLR 302 (subd [a], par 3, cl [ii]) on so attenuated a consequence of defendant's act as has been accepted by the courts below, it would burden unfairly non-residents whose connection with the state is remote.

*Id*. at 327.

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215 (2000), is equally inapposite and uncompelling. In *LaMarca,* where the non-domicile manufacturing company specifically targeted the New York market with defective products, the court held that the non-domicile defendant must "reasonably foresee that any defect in its product" sold in New York "would have <u>direct</u> consequences within [New York]." *Id*. (emphasis added). Unlike in *LaMarca*, EMI has offered no facts to demonstrate that Mr. Robertson should have foreseen that transferring publicly available music files to his password-protected music locker in California would have direct consequences in New York.[2]

EMI cites *McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) and *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). However, both cases are inapposite and neither provides any detailed analysis on the issue of foreseeability.

---

[2] In contrast to the product liability cases cited by EMI, it is important to note that "with commercial torts, those that cause monetary rather than physical injury," courts find that while "there may be financial consequences in New York, due to Plaintiff's fortuitous location," this "is insufficient to confer jurisdiction under § 302(a)(3)." *Pincione v. D'Alfonso*, 2011 U.S. Dist. LEXIS 103944, at *27-*28 (S.D.N.Y. Sept. 13, 2011).

4

*McGraw-Hill* concerned jurisdiction over a non-domicile company, not an individual, that provided Internet services to New York customers that infringed the copyrights of New York companies. In *Citigroup* the defendant was a company that ran a website that transacted business in New York. *Id*. In both cases, the companies had minimum contacts with, and directly targeted. New York. In contrast, Mr. Robertson's personal sideloads do not target New York, nor does Mr. Robertson, in his personal capacity, sell goods or services to New York. Nor does EMI allege this, as EMI's jurisdictional claims under *American Buddha* concern Mr. Robertson's personal sideloads.

Indeed, adopting EMI's standard would allow jurisdiction over every person in the country who downloads music, an obviously draconian result which would clearly violate due process and set alarming precedent. *See Digiprotect United States Corp. v. Doe*, 2011 U.S. Dist. LEXIS 40679, at *9-*10 (S.D.N.Y. Apr. 13, 2011) (denying jurisdiction under *American Buddha* over non-domiciliary defendants who uploaded and downloaded infringing movies because there was "no showing that any of the Doe defendants expected or reasonably should have expected their downloading of this film to have consequences in New York"); *see also Digital Sin, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 10803, at *4-*5 (S.D.N.Y. Jan. 30, 2012) (affirming the logic of *Digiprotect*); *Millennium TGA v. Doe*, 2011 U.S. Dist. LEXIS 110135, at *3-*5 (N.D. Ill. Sept. 26, 2011) (no jurisdiction over file-sharers where there is no indication they "purposely exploited or targeted the Illinois market") (*citing West Coast Productions, Inc. v. Does*, 1-2010, No. 3:10-cv-00093-JPB (N.D. W.V. Dec. 16, 2010) (allowing complaints only against individual Does with IP addresses located within the State of West Virginia)).

### C. EMI's Standard for "Substantial Revenue from Interstate Commerce" is Incorrect

EMI's theory that MP3tunes' revenue should be attributed to Mr. Robertson under 302(a)(3)(ii) is unfounded. EMI is attempting to use the theory that MP3tunes is an agent of Mr. Robertson without first establishing that such an agency exists. Neither of the cases cited by EMI on

5

this point, *Pincione v. D'Alfonso*, 2011 U.S. Dist. LEXIS 103944, at *10 (S.D.N.Y. Sept. 13, 2011) and *Siegel v. Holson Co.*, 768 F. Supp. 444, 446 (S.D.N.Y. 1991), hold that the revenue of a corporate defendant can be attributed to its shareholders without demonstrating agency. In both cases, the courts refused to attribute a company's revenue to its corporate officers for purposes of jurisdiction. *See id*. "[I]t is the individual, and not his corporate employer, who must derive 'substantial revenue' for jurisdiction to attach under 302(a)(3)(ii)." *Pincione*, 2011 U.S. Dist. LEXIS 103944, at *31.

EMI's claims that Mr. Robertson testified that he was once a shareholder and that Mr. Robertson may one day indirectly benefit from MP3tunes are immaterial. The substantial revenue must be derived the year the complaint was filed, not at some speculative point in the future. *See Bank of Cal. v. Smith Barney, Inc.*, 1997 U.S. Dist. LEXIS 19135, at *17 n.5 (N.D.N.Y Oct. 31, 1997) ("year in which complaint is filed is the proper point in time for determining whether defendant derives substantial revenue" under § 302(a)(3)(i) and § 302(a)(3)(ii)).

EMI's claims that Mr. Robertson once benefited from the sale of the companies MP3.com and Gizmo5 are equally irrelevant—and unfounded.[3] EMI offers not one case where an individual's revenue from the sale of a business was evidence of "substantial revenue in interstate commerce" for the purposes of establishing jurisdiction under section 302(a)(3). Indeed, the case law is clear: "[t]he revenue requirement . . . contemplates a vendor placing goods or services in the interstate or international stream of commerce . . . ." *Pincione*, 2011 U.S. Dist. LEXIS 103944, at *32 (internal quotation omitted); *Int'l Alliance of First Night Celebrations, Inc. v. First Night, Inc.*, 2009 U.S.

---

[3] After more than three years of discovery on the issue of Mr. Robertson's revenue, EMI fails to offer any evidence that Mr. Robertson obtained any revenue from any revenue from interstate or international commerce—much less any revenue from the infringement at issue in this case. EMI has based its allegation of revenue on to inadmissible newspaper article, neither of which states that Mr. Robertson received a single penny from the reported sales of his two companies, MP3.com and Gizmo5. Moreover, where a plaintiff fails to offer evidence of the magnitude or source of defendant's interstate revenue, jurisdiction is unwarranted under section 302(a)(3) on this point alone. *KIC Chemicals, Inc. v. ADCO Chemical Co.*,1996 U.S. Dist. LEXIS 3244, at *22 (S.D.N.Y. Mar. 20, 1996) (dismissing action for lack of jurisdiction based on plaintiff's failure to offer such evidence).

Dist. LEXIS 43597, at *6-*7 (N.D.N.Y May 22, 2009) (instructing that interstate commerce means "[t]he exchange of goods and services . . . ."). Unsubstantiated allegations that Mr. Robertson may have received revenue from the sale of a business do not constitute evidence that Mr. Robertson personally derived substantial revenue from the sale of goods or services in interstate commerce.

## II. EMI HAS NOT DEMONSTRATED A DISPUTED ISSUE OF MATERIAL FACT REGARDING JURISDICTION UNDER SECTION 302(a)(1)

As this Court held, to establish personal jurisdiction over Mr. Robertson under section 302(a)(1), EMI must prove that Mr. Robertson not only knew about MP3tunes' allegedly infringing activities, but also that Mr. Robertson exercised control over and benefited from those activities. *See* Dkt. # 120 at 15 (*citing Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). Indeed, EMI fails to present evidence that Mr. Robertson controlled the infringing activity now at issue or that Mr. Robertson benefited—or stood to benefit—from that infringing activity.

### A. Mr. Robertson Does Not Control the Allegedly Infringing Activity

In copyright cases where courts found jurisdiction over a corporate officer based on the agency theory, the control prong was satisfied only where the corporate officer was the "primary actor" in the corporation's direct infringement. *See, e.g., Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (for jurisdiction through agency, the defendant must be the "'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation") (emphasis added); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("[plaintiff] cannot obtain personal jurisdiction over [defendant] based solely on his position as President of P.S.C.; [i]nstead, [plaintiff] must show that [defendant] personally took part in the activities giving rise to the action at issue") (emphasis added) (citations omitted).

To create an imaginary factual dispute, EMI devotes considerable ink citing testimony in which Mr. Robertson is alleged to have known about, and participated in, activities at MP3tunes that

7

are no longer relevant to jurisdiction. EMI alleges control over "MP3tunes' shift from a music store to the locker service" and over "the first mock-up of the Sideload website." However, MP3tunes' locker service and Sideload.com were held not to be infringing. *See* Dkt. # 276 at 30-31.

EMI equally misses the mark with respect to Mr. Robertson's supposed participation in MP3tunes' decisions to use cover art from Amazon.com and not to remove songs identified in EMI's takedown notices from lockers. With respect to the cover art claim, the issue is whether or not MP3tunes' use complies with its license from Amazon.com. However, EMI offers no evidence that Mr. Robertson personally participated in any decision involving the cover art license.

Nor does EMI demonstrate that Mr. Robertson participated in the decision not to remove songs from lockers. EMI grossly misrepresents the testimony of Camille Wood, Julian Krause, and Sharmain Lindhal. Contrary to EMI's claim, Ms. Wood did not testify that takedown notices were provided to Mr. Robertson. Indeed, she testified that she did not recall seeing any takedown notices, but speculated that if she had seen such notices, she would have passed them to Mr. Robertson. *See* Bart Decl. Ex. 10 (Wood) at 53:2-16. Such speculation does not constitute evidence of Mr. Robertson's participation. Similarly, Mr. Krause did not testify that Mr. Robertson instructed staff on how to respond to takedown notices. He merely testified that Mr. Robertson told him to "keep it very simple and to have the exact pieces of information of counts and such in there." *See* Bart Dec. Ex. 7 (Krause) at 13:5-18. This testimony demonstrates that Mr. Robertson left the handling of specific notices to his employees and merely provided vague suggestions on how to generally respond. Nor did Ms. Lindhal testify that Mr. Robertson made the decision to not remove songs from lockers. Instead, she testified that Mr. Robertson told her that MP3tunes did not remove songs from its website without a proper DMCA takedown notice. *See* Bart Decl. Ex. 8 (Lindhal) at 157:3-158:17. Accordingly, there are no facts demonstrating that Mr. Robertson controlled the infringing activities now at issue in this litigation. *See* 2011 SJ Order (Dkt. # 279) at 24 ("there is no genuine

8

dispute that MP3tunes neither received a direct financial benefit nor controlled the infringing activity")[4].

### B. Mr. Robertson Does Not Benefit from MP3tunes' Alleged Infringement

EMI's claim that the benefit prong is satisfied if Mr. Robertson stands to benefit from MP3tunes' success is in error. EMI must show that Mr. Robertson benefitted from the infringement at issue in the case. *See Basquiat v. Kemper Snowboards*, 1997 U.S. Dist. LEXIS 12653; *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984-85 (S.D.N.Y. 1992); *Craig v. First Web Bill, Inc.*, 2004 U.S. Dist. Lexis, 27432, at *37 (E.D.N.Y. Nov. 29, 2004) ("where the element of benefit is found, there is a discernable benefit which could be expected to emanate from the transaction [giving rise to the litigation], to the favor of the non-domiciliary defendant").

EMI makes no attempt to distinguish the cases cited in Mr. Robertson's opening papers, relying instead on cases in which the element of benefit is addressed without analysis, *Editorial Musical Latino Americana, S.A., v. Mar Int'l Records, Inc.*, 829 F. Supp. 62 (S.D.N.Y. 1993), and *Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1379-80 (S.D.N.Y. 1991). However, both cases are inapposite. In *Luft,* the corporate officer defendant, unlike Mr. Robertson, was a shareholder who personally owned 65% of the defendant company. *Id.* at 1380. Indeed, *Luft* undermines EMI's claim that the benefit can be indefinite and indirect by stating a "prerequisite[] for vicarious liability for copyright infringement [is] . . . an <u>obvious and direct financial interest</u> in exploitation of copyrighted materials." *Id.* (citations omitted). *Editorial Musical* is inapposite because the non-domiciliary corporate officer in that case was the president of the company who had a <u>direct</u> financial interest in the company, unlike Mr. Robertson—who receives no salary, no bonus, and owns no shares in the company. *See id.* at *66.

---

[4] Tellingly, EMI fails to even address Mr. Robertson's argument that the allegedly tortious conduct must be directed at New York and offers no evidence of such conduct. As a result, EMI concedes this point.

### III. JURISDICTION OVER MR. ROBERTSON VIOLATES DUE PROCESS

EMI's attempt to address the due process standard errs on many levels. First, it imputes MP3tunes' contacts with New York to Mr. Robertson, relying on *Retail Software Servs., Inc.*, 854 F.2d 18, 22 (2d Cir. 1988). However, *Retail Software* is inapposite because the individual defendant personally participated in the company's fraudulent sale to customers in New York and would have expected the laws of New York to enforce that sale. *Id*. at 22. In contrast, EMI fails to demonstrate that Mr. Robertson directed any tortious activity to New York, resting its claim of minimum contacts on the fact that Mr. Robertson "monitored sales" and "web traffic." This is grossly insufficient to establish minimum contacts. Secondly, EMI's claim that due process is proper because Mr. Robertson will nonetheless participate in this lawsuit is erroneous. The Supreme Court has always made clear that, even where jurisdiction is convenient, it cannot violate the fundamental right of due process:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980). Indeed, "the Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). In contrast, EMI proposes an interpretation of due process that would mock these fundamental protections.

### CONCLUSION

For all of the foregoing reasons, there is no personal jurisdiction over Mr. Robertson and his motion should be granted.

Dated: New York, NY  
       March 30, 2012

DUANE MORRIS LLP

By: /s/ _____
    Gregory P. Gulia
    Vanessa C. Hew
    R. Terry Parker
    1540 Broadway
    New York, NY 10036
    (212) 692-1000

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this 30th day of March, 2012, I caused a copy of the foregoing to be filed with this Court's Electronic Case Filing system, by which copies will be provided to the following:

>Andrew H. Bart
>Jenner & Block LLP
>919 Third Avenue, 37th Floor
>New York, NY  10022
>abart@jenner.com
>
>Frank P. Scibilia
>Pryor Cashman LLP
>7 Times Square
>New York, NY 10036
>fscibilia@pryorcashman.com

>/s/ R. Terry Parker
>_____

DM1\3231115.3

12