UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CAPITOL RECORDS, LLC, et al,

                      *Plaintiffs,*

           v.

MP3TUNES, LLC and MICHAEL ROBERTSON,

               *Defendants.*

-------------------------------------------------------------x

:     07 Civ. 9931 (WHP)

**MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION**
**(PERSONAL JURISDICTION)**

Ira S. Sacks
Mark S. Lafayette
AKERMAN SENTERFITT LLP
335 Madison Avenue, Suite 2600
New York, New York 10017
(212) 880-3800
(212) 880-8965 (fax)

*Attorneys for Defendant Michael Robertson*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION...................... 1

I. ROBERTSON IS NOT SUBJECT TO JURISDICTION UNDER NEW YORK'S
   LONG ARM STATUTE............................................................................................ 2

   A. There Has Been No Adjudication That Robertson Committed A Tort. ............... 2

   B. The Court Misconstrued The Facts As Applied To *American Buddha.* ............ 5

      1.    Sideloading Does Not Make Songs Available........................................ 6

      2.    Adding A New Song Link To The Sideload.com Index Is Not Unlawful............. 7

      3.    The Injury, If Any, Occurred in California........................................... 8

   C. The Court Misapplied The Law in Finding That Robertson Derived Substantial
      Revenue From Interstate Commerce .................................................................. 10

   D. The Court Erred In Finding That Robertson Had Reason To Know His Tortious
      Acts Would Have Consequences In New York.................................................. 14

II. THE COURT ERRED IN FINDING THAT THE EXERCISE OF JURISDICTION
    COMPORTS WITH DUE PROCESS .................................................................... 15

   A. The Controlling Legal Standard...................................................................... 16

   B. Robertson Does Not Have Minimum Contacts With New York...................... 16

      1.    The Court Erred By Relying on § 302(a)(1) Case Law ....................... 17

      2.    Robertson's Personal Activity In New York Is Insufficient............... 19

      3.    *Retail Software* Is Inapposite. ......................................................... 21

      4.    Robertson Did Not Expressly Aim Tortious Activity At New York.............. 22

   C. Fair Play and Substantial Justice.................................................................... 22

CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Am. Network, Inc. v. Access Am./Connect Atlanta Inc.*,
   975 F. Supp. 494 (S.D.N.Y. 1997) .................................................................................14

*Arista Records, Inc. v. MP3Board, Inc.*,
   2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002)....................................................................8

*Asahi Metal Industry Co., Ltd. v. Superior Court Of California, Solano County*,
   480 U.S. 102 (1987)......................................................................................................23, 24

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002)...............................................................................................16

*Bank of Cal. v. Smith Barney, Inc.*,
   1997 WL 736529 (N.D.N.Y. Oct. 31, 1997) ......................................................................13

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)...............................................................................................17

*Bradley v. Staubach*,
   2004 WL 830066 (S.D.N.Y. Apr. 13, 2004)......................................................................19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).............................................................................................17, 18, 20

*Calder v. Jones*,
   465 U.S. 783 (1984)...........................................................................................................17

*Capitol Records, LLC v. MP3tunes, LLC*,
   2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008)........................................................4, 18, 24

*Capitol Records, Inc. v. Thomas*,
   579 F. Supp. 2d 1210 (D. Minn. 2008)................................................................................8

*Capitol Records, LLC v MP3tunes, LLC*,
   821 F. Supp. 2d 627 (2011) ....................................................................................... passim

*Facit, Inc. v. Krueger, Inc.*,
   732 F. Supp. 1267 (S.D.N.Y. 1990)...............................................................................10, 11

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
   443 F.2d 1159 (2d Cir. 1971)...............................................................................................4

*Hamilton v. Accu-Tek*,
   32 F. Supp. 2d 47 (E.D.N.Y. 1998) .....................................................................................16

*Hanson v. Denckla,*
    357 U.S. 235 (1958)...................................................................................................17

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984)..............................................................................................17, 20

*King County, Wash. v. IKB Deutsche Industriebank, A.G.,*
    769 F. Supp. 2d 309 (S.D.N.Y. 2011)..............................................................19, 23, 24

*Lehigh Valley Industries, Inc. v. Birenbaum,*
    389 F. Supp. 798 (S.D.N.Y. 1975) .........................................................................13

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,*
    375 F. Supp. 2d 252 (S.D.N.Y. 2005)..................................................................14, 15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)......................................................................................23

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
    640 F.3d 497 (2d Cir. 2011)......................................................................................2

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ...................................................................................8

*Pincione v. D'Alfonso,*
    2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011).........................................................12

*Retail Software v. Lashlee,*
    854 F.2d 18 (2d Cir. 1988)...........................................................................16, 18, 19, 21

*Royalty Network, Inc. v. Dishant.com, LLC,*
    638 F. Supp. 2d 410 (S.D.N.Y. 2009)....................................................................15

*Siegel v. Holson Co.,*
    768 F. Supp. 444 (S.D.N.Y. 1991) ..........................................................................13

*Simon v. Philip Morris, Inc.,*
    86 F. Supp. 2d 95 (S.D.N.Y. 2000) ...................................................................16, 22

*Time, Inc. v. Simpson,*
    2003 WL 23018890 (S.D.N.Y. 2003)...............................................................16, 22, 24

*Troma Entertainment, Inc. v. Centennial Pictures Inc.,*
    853 F. Supp. 2d 326 (E.D.N.Y. 2012) .....................................................................9, 10

*Walker v. W. Mich. Nat'l Bank & Trust,*
    324 F. Supp. 2d 529 (D. Del. 2004)..........................................................................12

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980)...............................................17

STATE CASES

*Fantis Foods, Inc. v. Standard Importing Co., Inc.*,
    49 N.Y.2d 317 (1980) ...................................................................................................9

*Kreutter v. McFadden Oil Corp.*,
    71 N.Y.2d 460 (N.Y. 1988) ...........................................................................................21

*Penguin Grp. USA, Inc. v. Am. Buddha*,
    16 N.Y.3d 295 (2011) ................................................................................................5, 6

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

17 U.S.C. § 512 *et seq*............................................................................................ passim

STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

C.P.L.R. § 302............................................................................................................ passim

**MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION
(PERSONAL JURISDICTION)**

Defendant Michael Robertson ("Robertson") respectfully submits this memorandum of law in support of his motion for reconsideration of this Court's July 20, 2012 decision (the "July SJ Decision"), finding that Robertson was subject to personal jurisdiction. In the July SJ decision, the Court found jurisdiction over Robertson pursuant to New York's long-arm statute, C.P.L.R. § 302(a)(3)(ii) ("§ 302(a)(3)(ii)"), because Robertson had committed a tort outside of New York that caused injury in New York; and that Due Process was satisfied because MP3tunes, LLC ("MP3tunes") – not Robertson – had certain minimum contacts with New York and maintenance of the present action against Robertson does not offend traditional notions of fair play and substantial justice. Respectfully, the Court erred in several respects:

(a) The Court improperly relied on what it believed to be prior summary judgment findings that ***Robertson*** (i) "infringed on plaintiff's copyrights by failing to remove from user lockers protected works that were the subject of valid DMCA takedown notices" and (ii) "infringed plaintiffs' copyrights by copying protected musical recordings from third party websites and saving them to his MP3tunes locker";

(b) The Court improperly applied the holding in *American Buddha* to Robertson's sideloading based upon the mistaken findings that (i) Robertson's sideloading made works available for others to copy and/or (ii) creating links to material on the Internet is a tort or otherwise wrongful;

(c) The Court improperly determined that Robertson had reason to know that his tortious acts would have consequences in New York;

(d) The Court misapplied the law in determining that Robertson derived substantial revenue from interstate commerce; and

1

(e) The Court improperly attributed the acts of MP3tunes to Robertson to find that Robertson had minimum contacts with the State of New York and that jurisdiction over Robertson complies with notions of fair play and substantial justice.

Accordingly, for several independent reasons, this Court should grant reconsideration and, upon reconsideration, grant summary judgment dismissing the action as to Robertson for lack of personal jurisdiction.

## I.   ROBERTSON IS NOT SUBJECT TO JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE

Under § 302(a)(3)(ii), a plaintiff can establish jurisdiction over a nondomiciliary defendant only if the plaintiff demonstrates that: "(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha,* 640 F.3d 497, 499 (2d Cir. 2011). In finding that Robertson is subject to jurisdiction in New York, the Court misconstrued undisputed facts and law in concluding that each of these elements is satisfied.

### A.  There Has Been No Adjudication That Robertson Committed A Tort.

In denying Robertson's motion for summary judgment for lack of personal jurisdiction, the Court indicated that it had previously found that Robertson had committed a tort outside of New York. Specifically, the Court observed that it had previously found that "Robertson infringed plaintiffs' copyrights by failing to remove from user lockers protected works which were the subject of valid DMCA notices" and that "MP3tunes and Mr. Robertson infringed plaintiff's copyrights by copying protected musical recordings from third party websites and

2

saving them to his MP3tunes locker." Reliance on both of these "findings" was error.

First, as set forth in Robertson's Memorandum Of Law In Support Of Reconsideration (Individual Liability And *Viacom* Issues) And For Summary Judgment (Vicarious Liability), filed contemporaneously herewith (the "Individual and Vicarious Liability Memo"), the Court's *sua sponte* grant of summary judgment against Robertson for direct infringement as a result of his sideloading was improper.

In addition, even if such determination was proper, Robertson's liability is only conditional. In this Court's October 25, 2011 summary judgment decision (*Capitol Records, LLC v MP3tunes, LLC*, 821 F. Supp. 2d 627 (2011) ("the October Summary Judgment Order"), this Court only determined that "Robertson ... is directly liable for the songs he personally sideloaded *from unauthorized sites*." 821 F. Supp. 2d at 649. Therefore, prior to a determination that Robertson is liable for a tort, there must be a determination that he sideloaded *from unauthorized sites*. As we demonstrate in the Individual and Vicarious Liability Memo, and in the papers submitted therewith, there is substantial evidence that Plaintiffs intentionally authorized songs to be downloaded for free as part of "viral" marketing campaigns and that Plaintiffs themselves cannot discern what is authorized or unauthorized. As a result, many of the sites from which Robertson sideloaded may be or are, in fact, authorized. Accordingly, because it has yet to be determined if Robertson downloaded *from unauthorized sites*, Plaintiffs have not met their burden to establish that Robertson committed a tort outside of New York under § 302(a)(3)(ii).

Further, the Court also based its long arm determination on the unfounded observation that "MP3tunes and *Robertson* infringed plaintiffs' copyrights by failing to remove from user lockers protected works that were the subject of valid DMCA takedown notices." *See* July SJ

Decision Transcript ("SJ Tr.") at 3-4 (emphasis added). On the contrary, there was no finding that *Robertson* was liable for such infringement in the Court's October Summary Judgment Order. Indeed, as a matter of undisputed fact and law, Robertson cannot be held liable for MP3tunes' infringements. *See* Individual and Vicarious Liability Memo.

As set forth in the Individual and Vicarious Liability Memo, in order to be vicariously liable for MP3tunes' copyright infringement, Plaintiffs must prove that Robertson: (i) had the right and ability to supervise the infringing conduct; and (ii) received a financial benefit directly attributable to the infringing conduct. *See, e.g., Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

This Court already determined that MP3tunes did not receive a direct financial benefit from the alleged infringing conduct. *See* 821 F. Supp. 2d at 645. *A fortiori*, Robertson could not have received a financial benefit directly attributable to the infringing conduct. Moreover, it is also undisputed that Robertson did not receive any salary, bonus or dividend from MP3tunes. (*See* Declaration of Ira S. Sacks, dated November 12, 2012 ("Sacks Dec."), Ex. 7, at ¶ 19; *Capitol Records, LLC v. MP3tunes, LLC*, 2008 WL 4450259, at *4 (S.D.N.Y. Sept. 29, 2008); Declaration of Michael Robertson, dated November 11, 2012 ("Robertson Dec."), ¶ 2; Declaration of Michael Robertson, dated March 2, 2012 ("3/2/12 Robertson Dec.") (Doc. No. 291), ¶ 2).

Finally, it is undisputed that Robertson is not a shareholder of MP3tunes, Inc. and did not hold a membership interest in MP3tunes since March 2006. *See* Sacks Dec., Ex. 7, at ¶ 17; 3/2/12 Robertson Dec., ¶ 2; Robertson Dec., ¶2. Rather, he is a co-trustee of trusts that own MP3tunes, Inc. stock. 3/2/12 Robertson Dec., ¶ 2; Robertson Dec., ¶2; Sacks Dec., ¶¶ 8, 11 and Exs. 7, 10, at Stipulated Facts ## 14, 15. One of those trusts (the SKL Trust) owns 45.93 % of

4

the fully diluted shares and the other (the Robertson Descendants Irrevocable Trust) owns 21.72% of the fully diluted shares of MP3tunes, Inc. or 44.81% and 40.39%, respectively, before dilution.  Robertson and his wife were the sole beneficiaries of the SKL Trust.  (*See* Sacks Dec., ¶¶ 6, 10 and Exs. 5, 9, at ¶ 6).  In March 2005, Robertson owned 19% of the membership interests of MP3tunes; as of March 2006, he owned no membership interests, and the two trusts held 75% of the membership interests.  (*See* Steiner Declaration, dated October 29, 2009 (Doc. No. 127), Exs. 1, 2.

Accordingly, plaintiffs did not meet their burden to show that Robertson committed a tort outside New York.  As a result, this Court lacks personal jurisdiction over Robertson.

**B.  The Court Misconstrued The Facts As Applied To *American Buddha*.**

In addition to mistakenly determining that Robertson committed a tort outside of New York, the Court misapplied the holding of *Penguin Grp. USA, Inc. v. Am. Buddha*, 16 N.Y.3d 295 (2011) and misconstrued the undisputed factual record in finding that Robertson's acts caused injury in New York.  This is an independent reason why summary judgment should be granted to Robertson on the issue of personal jurisdiction.

*American Buddha* expressly limited its decision to a holding that "[i]n copyright infringement cases involving the ***uploading*** of a copyrighted printed literary work onto the Internet" the situs of the injury is the location of the copyright holder.  *Id.* at 301 (emphasis added).  In reaching this determination, the New York Court of Appeals held that "the role of the Internet in cases alleging the uploading of copyrighted books distinguishes them from traditional commercial tort cases where courts have generally linked the injury to the place where sales or customers are lost."  *Id.* at 306.

The *American Buddha* Court explained that the crucial issue with uploading copyrighted books is "the intended consequence of those activities – the instantaneous availability of those

copyrighted works on American Buddha's websites for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge." *Id.* at 304-05. The Court further explained that the location of the infringement in cases of uploading is of little importance in as much "as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York." *Id.* at 306. Accordingly, the Court held that the location of the principal place of business of the copyright holder is the situs of the injury "when [the copyright owner's] printed literary work ***is uploaded*** without permission onto the Internet for public access." *Id.* at 304 (emphasis added).

In the July SJ Decision, this Court found that the undisputed facts that (i) Robertson sideloaded songs already on the Internet, and (ii) did not upload songs, were distinctions without a difference: "plaintiffs have shown that when a user sideloaded a song, it became part of a searchable list of songs on Sideload.com and was available for other users to copy and save to their lockers. Thus the distinction drawn by Robertson between uploading and sideloading content is without merit and the holding in American Buddha applies here with equal force." SJ Tr. at 5 (citations omitted). That was wrong, for several reasons.

### 1. Sideloading Does Not Make Songs Available

Sideloading does not make songs available. Sideload.com is merely a search engine, like Google, that may be used to find songs which ***are already available on the Internet*** to be sideloaded. Users that sideload works, including Robertson, do not make copyrighted works available for other users to copy – they are already available. And ***creating links*** to copyrighted works – in the sideload.com index or otherwise – does not constitute direct copyright infringement. Indeed, if that index is created by an Internet service provider – as was the case here – that conduct is protected by the Digital Millennium Copyright Act ("DMCA"). *See* 17 U.S.C. § 512(d).

As the Court itself observed, "when a user sideloaded a song, it became part of a searchable list of songs in Sideload.com." SJ Tr. at 5. That is *not* making the song available for copying. Sideload.com is used to search for promotional music downloads that are available on the Internet. Upon finding a free song a user wishes to download, users may click the sideload icon next to the search results. Such clicking *merely* connects the user to the third party websites at which the song file is available allowing the user to store the downloadable file in his or her locker. *See* Robertson Dec., ¶¶ 8, 9; 3/2/12 Robertson Dec., ¶¶ 5, 6. After a user sideloads a song from the Internet to his or her locker, if a link to the file on the Internet is not already available on sideload.com, a link to the file will also be made available on the sideload.com index. *Id.* The fact that a link to the file is in the sideload.com index does *not* result in the song being made ***available for copying***. The song is already available for copying on the third party website. Being in the index merely makes the search function faster.

Accordingly, Robertson and other MP3tunes users who sideload songs are not making infringing song files available – or even more available – for copying. Thus, the Court's analogy of a user's sideloading to persons uploading a copyrighted printed literary work is contradicted by the undisputed factual record. As a result, *American Buddha* does not apply here; there has been no injury in New York.

**2.  Adding A New Song Link To The Sideload.com Index Is Not Unlawful**

There is an additional reason why the addition of a link to a song to the sideload.com index does not cause tortious injury in New York: adding that link to the index is not unlawful and when such a link is created by a qualified Internet service provider (which MP3tunes has been determined to be), such actions are subject to DMCA protection and do not result in liability unless, after a takedown notice, the link is not removed. *See* 17 U.S.C. § 512(d).

First, even if Robertson created the link in the sideload.com index – which he did not –

that is not copyright infringement. *See, e.g., Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d

1210, 1223-24 (D. Minn. 2008).

Second, sideload.com, with its links to downloadable music, is nothing more than a

search engine which allows users to search for songs available on the Internet and then click on a

link which connects a user to the third party website which contains the downloadable song file.

A search engine with such links is not engaging in copyright infringement. *See Perfect 10, Inc.*

*v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007).

In *Perfect 10*, Google was sued in connection with its image search functionality. Perfect

10 alleged that Google infringed Perfect 10's copyrights by linking Google users to third-party

Internet sites that republished, without authorization, photographs copyrighted by Perfect 10.

Perfect 10 argued that Google's image search engine directly infringed on Perfect 10's right of

distribution by displaying and linking to infringing copies of Perfect 10's images.

The district court rejected Perfect 10's argument and the Ninth Circuit affirmed:

> Google's search engine communicates HTML instructions that tell a
> user's browser where to find full-size images on a website publisher's
> computer, but Google does not itself distribute copies of the infringing
> photographs. It is the website publisher's computer that distributes copies
> of the images by transmitting the photographic image electronically to the
> user's computer.

*Id.* at 1162; *see Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at *4 (S.D.N.Y.

Aug. 29, 2002). That is yet another reason why there was no injury in New York.

### 3.  **The Injury, If Any, Occurred in California**

For the reasons set forth above, Robertson's sideloading of songs into his locker is not

analogous to uploading content to the Internet and making it available to be copied. The only

connection between any injury suffered by Plaintiffs and the State of New York is the fact that

Plaintiffs' places of business are in New York. Unlike uploading, sideloading caused the alleged

8

injury where Robertson sideloaded songs, that is, in California. Robertson Dec., ¶ 13; 3/2/12 Robertson Dec., ¶¶ 3, 8, 10. Sideloading in California is insufficient to establish injury or personal jurisdiction in New York. *See, e.g.*, *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326 (1980) ("It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction[.]").

The recent decision in *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 853 F. Supp. 2d 326 (E.D.N.Y. 2012) is instructive. In *Troma*, a New York domiciled plaintiff brought a copyright infringement action in New York against California domiciliaries in connection with the illegal distribution of films which had been downloaded from the Internet. As here, the plaintiff asserted jurisdiction under § 302(a)(3)(ii). *Id.* at 327. The court observed that the defendants did nothing in New York, nor did they divert any New York sales, actual or potential. *Id.* at 328.

Plaintiff argued, as Plaintiffs do here and this Court found, that *American Buddha* created a new rule applicable to copyright cases involving the Internet: if the copyrights are held by a New York domiciliary, then the defendant has inflicted an injury "within the state." *Id.* The court disagreed. After analyzing *American Buddha*, the court found that *American Buddha* actually rejects such a theory. *Id.* at 329 ("[O]ur decision today does not open a Pandora's box allowing any nondomiciliary accused of digital copyright infringement to be haled into a New York court when the plaintiff is a New York copyright owner of a printed literary work") (quoting *American Buddha*, 16 N.Y.3d at 306-07).

The *Troma* court concluded:

> True, Lauter bought the Films from Amazon.de, but downloading is quite different from uploading, the latter of which makes the copyrighted material available to any purchaser or viewer, including New Yorkers. Lauter could have just as easily walked into a retail outlet and bought the

> DVDs to accomplish the scheme alleged here. Indeed, if the defendant in
> [*American Buddha*] had somehow blocked internet access to the
> copyrighted works for New Yorkers – allowing anyone in the world to
> view them except New Yorkers – or had refused to permit sales to New
> Yorkers, it seems clear that the Court of Appeals would have reached the
> opposite result.

*Id.* The *Troma* court granted the motion to dismiss for lack of personal jurisdiction.

For all of those reasons, the injury to Plaintiffs, if any, did not occur in New York. That

is another independent reason why jurisdiction may not be predicated on § 302(a)(3)(ii).

### C.  The Court Misapplied The Law in Finding That Robertson Derived Substantial Revenue From Interstate Commerce

The Court found that ***Robertson*** derives substantial revenue from interstate commerce.

In making this determination, the Court found that: (a) ***MP3tunes*** derived all of its revenue by

selling premium locker subscription to users throughout the country, including users in New

York; (b) Robertson oversaw the effort; and (c) as a matter of law, corporate revenue can be

imputed to officers who are significant owners of stock of the company, so long as doing so

satisfies the requirements of Due Process. SJ Tr. at 6-7. The Court erred in making this finding.

Importantly, it is undisputed – and the Court did not find to the contrary – that ***Robertson***

***derived no revenue from MP3tunes, never transacted business in New York on behalf of***

***MP3tunes and derived no revenue from personally selling goods interstate commerce.*** *See*

Robertson Dec., ¶¶ 2, 12-14; 3/2/12 Robertson Dec., ¶¶ 2, 7-9, 11.

The Court's reliance on *Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267 (S.D.N.Y. 1990),

in support of the proposition that ***MP3tunes revenues may be imputed to Robertson***, is

misplaced. *Facit* does not hold that revenues may be imputed to an individual like Robertson,

who is the trustee of trusts which own over two-thirds of a corporate defendant's stock.

Robertson Dec., ¶ 2. In *Facit*, in contrast to the facts here, the two shareholders/officers had

significant contacts with New York:

10

> Jahn and Morse state in their affidavits in support of the motion to dismiss
> that during their trips to New York they did the following: 1) met with
> Privat Banken, a bank with whom HFT has a transfer account and from
> whom HFT has obtained a loan;   2) met with HFT's independent
> manufacturing representatives;  3) appeared for deposition, and met with
> New York counsel, in connection with the litigation brought against Facit
> in New York; 4) attended several board meetings for Facit in New York;
> 5) met with the Swedish American Chamber of  Commerce; and 6) met
> with [their] attorneys on this case in New York.

*Facit*, 732 F. Supp. at 1272.

The *Facit* court found that it had personal jurisdiction over the individuals because the

revenue made by HFT, ***combined with the New York contacts by Morse and Jahn on behalf of***

***HFT***, supported the conclusion that they were amenable to New York's long-arm statute. *Id.* at

1273-74.  The court did not expressly impute HFT's revenues to the individuals because they

were officers and shareholders of HFT.

In addition, the *Facit* court concluded:

> In asserting personal jurisdiction over Jahn and Morse, the Court finds that
> due process concerns are more than fulfilled. Jahn and Morse's contacts
> with New York combined with HFT's New York sales are sufficient to
> give them "fair warning" that they may be subject to jurisdiction. In
> addition, due to the fact that Jahn and Morse stood to benefit from HFT's
> entry into the New York market, it is not unreasonable to subject Jahn and
> Morse to the flip-side of that benefit. Finally,  the allegations in the
> counterclaims asserted against Jahn and Morse are directly connected with
> their New York contacts, thus the assertion of jurisdiction does not
> "offend the traditional notions of fair play and substantial justice." The
> protection of the fiduciary shield doctrine having been removed, Jahn and
> Morse are properly vulnerable to individual liability in a New York forum
> based on their actions in New York on behalf of HFT.

*Id.* at 1274 (citations omitted).

Accordingly, *Facit* does ***not*** hold that revenue derived by an entity can be imputed to

non-shareholders, non-compensated officers, or even that revenue can be imputed to

shareholders for long-arm purposes.  In fact, we are not aware – nor apparently are Plaintiffs – of

11

any case holding that an entity's revenue may be imputed to a corporate officer who is also a trustee and beneficiary of trust which owns stock in such entity. *See* Sack Dec., Ex. 6, at 16-17 (citing to *Pincione v. D'Alfonso*, 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011) and S*iegel v. Holson Co.*, 768 F. Supp. 444 (S.D.N.Y. 1991) attempting to support such a holding)).  On the contrary, it is black letter law that a "mere beneficial interest in a trust is insufficient to assert personal jurisdiction over a nonresident trustee." *Walker v. W. Mich. Nat'l Bank & Trust*, 324 F. Supp. 2d 529, 534 (D. Del. 2004) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

Indeed, *Pincione* supports the conclusion that revenue may ***not*** be imputed to indirect shareholders. *Pincione*, 2011 WL 4089885, at *10.  In *Pincione,* the court found that the substantial revenue standard is ***not*** met if an individual receives revenue indirectly through a subsidiary of an entity. *Id.* at *11.  The court explained that "while it is possible to attribute a portion of these Defendants' income to Pincione [through his alleged international investment], at least two entities, of which they are not alleged to be shareholders . . . stand between them and Pincione's investment." *Id.*  Accordingly, the Court found it had no personal jurisdiction over any of these Defendants. *Id.*[1]  Ultimately, "it is the individual, and not his corporate employer, who must derive 'substantial revenue' for jurisdiction to attach under section 302(a)(3)(ii)." *Id.* at *10 (quoting *Bulk Oil (USA), Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 41 (S.D.N.Y. 1983)).

Similarly, in *Siegel*, the court found that "while [the individual defendant] is the president of a company that derives substantial revenue from interstate commerce, that revenue is not imputed to [him] for jurisdictional purposes because he is a non shareholding officer of the

---

[1] Later in the decision, the court also held that "receiv[ing] revenue from an investor, not from 'sales of goods or services in interstate [or international] commerce'" is insufficient to meet the substantial revenue requirement. 2011 WL 4089885, at *11.

corporation." *Siegel*, 768 F. Supp. at 446. The court went on to distinguish "*Facit* ... [where] two individuals formed a corporation for the purpose of competing with a company with whom they had individually contracted not to compete. The activities of the company in that case were therefore properly imputed to its officers for jurisdictional purposes." *Id.* Finally, the court in *Siegel* refused to consider the individual defendant's trips to New York because those trips did not relate to the cause of action in suit. *Id.*

In addition, while no court has ever directly held that revenue of a corporation may be imputed to shareholders for the purpose of meeting the "substantial revenue" requirement, courts that have considered the issue have stated that revenue derived by an entity is not "automatically attributable" to a shareholder and saw "no reason to make any distinction between piercing the corporate veil to find injury in New York as set forth above and piercing the corporate veil to show substantial revenue was derived from international or interstate commerce." *See Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y. 1975). Here, Robertson derived no revenue from MP3tunes and was not a shareholder of MP3tunes. Plaintiffs have failed to demonstrate any basis to impute MP3tunes' revenue to Robertson.

Further, this Court also ignored the requirement that the substantial revenue requirement must be met for the year the complaint was filed – 2007 – not thereafter, or at some speculative point in the future. *See Bank of Cal. v. Smith Barney, Inc.*, 1997 WL 736529, at *5 n.5 (N.D.N.Y. Oct. 31, 1997) ("year in which complaint is filed [is the] proper point in time for determining whether defendant derives substantial revenue" under § 302(a)(3)(i) and §302(a)(3)(ii)) (citations omitted). As a result, Plaintiffs' claims that Robertson testified that he was once a shareholder – he held membership interests in MP3tunes prior to March 2006 – and

that Robertson may one day indirectly benefit from MP3tunes are immaterial.[2]

Therefore, the Court lacked personal jurisdiction over Robertson pursuant to § 302(a)(3)(ii) for the additional independent reason that Plaintiffs have not proven that Robertson derives substantial revenue from interstate commerce.

### D. The Court Erred In Finding That Robertson Had Reason To Know His Tortious Acts Would Have Consequences In New York.

The Court held that "Robertson had reason to know that his tortious acts would have consequences in New York." SJ Tr. at 5. The Court came to this conclusion because:

i.   "Robertson's earlier company MP3.com[,] a precursor to MP3tunes[,] was sued in New York for copyright infringement by the four largest record labels, including lead plaintiff in this action" and, therefore, "Robertson knew that plaintiffs own copyrights in the music files he sideloaded and made available through MP3tunes.com and Sideload.com and he was aware that Plaintiffs were located in New York," (*id.* at 5-6); and

ii.  "MP3tunes' services were made available throughout the United States and a significant portion of MP3tunes' users were located in New York." *Id.* at 6.

In support of finding (i) above, the Court cited to *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) and *Am. Network, Inc. v. Access Am./Connect Atlanta Inc.*, 975 F. Supp. 494, 500 (S.D.N.Y. 1997) for the proposition that "[i]t is reasonably foreseeable that the provision of materials that infringed the copyrights and trademarks of a New York Company will have consequences in New York." SJ Tr. at 6.

The Court erred in several respects. First, as set forth above, there has been no proper determination that Robertson committed a tort.

Second, *McGraw Hill* is founded on the incorrect basis that, ***in any copyright litigation,***

---

[2]   This is even more remote now that MP3tunes, Inc. is now in chapter 7 bankruptcy.

injury occurs where the copyright owner is domiciled. *See McGraw Hill*, 375 F. Supp. 2d at 256. As discussed above, that is wrong; and the injury here, if any, is not in New York.

Further, Robertson's acts of alleged infringement occurred solely in California. Robertson Dec., ¶ 13; 3/2/12 Robertson Dec., ¶¶ 3, 8, 10.

Finally, this action was commenced in 2007, based on conduct in 2007 and prior. Thereafter, there were sufficient questions about the location of injury in an Internet uploading copyright case that the Second Circuit certified the question to the New York Court of Appeals in *American Buddha*. Robertson had no reason to believe in 2006 and 2007 that alleged copyright infringement by conduct in California would have consequences in New York. Robertson simply did not reasonably anticipate that his acts would have consequences in New York. Robertson Dec., ¶ 13; 3/2/12 Robertson Dec., ¶¶ 3, 8, 10.

To determine foreseeability under § 302(a)(3)(ii), "New York courts . . . look for tangible manifestations of a defendant's intent to target New York, or for concrete facts known to the nondomiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." *Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009). Here, there was no evidence of tangible manifestations by ***Robertson*** of an intent to target New York or concrete facts known to Robertson that would have alerted him to the possibility of being hauled before a New York court.

Accordingly, there is no evidence supporting a finding that Robertson should have known his acts would have consequences in New York. This is yet another independent reason why the Court erred in finding that it had personal jurisdiction over Robertson.

## II.   THE COURT ERRED IN FINDING THAT THE EXERCISE OF JURISDICTION COMPORTS WITH DUE PROCESS

The Court erred in finding, and Plaintiffs failed to meet their burden of establishing, that

subjecting Robertson to jurisdiction in New York comports with Due Process because: (i) the Court incorrectly ascribed MP3tunes' actions to Robertson; (ii) Robertson personally does not have sufficient minimum contacts with this forum; (iii) *Retail Software v. Lashlee*, 854 F.2d 18 (2d Cir. 1988), the case the Court cites to support its minimum contacts finding, is inapposite; (iv) Robertson did not expressly aim any alleged tortious activity at New York; and (v) subjecting Robertson to New York jurisdiction is unreasonable.

### A. The Controlling Legal Standard

Whether personal jurisdiction over a non-resident defendant comports with Due Process is an inquiry consisting of two components: the "minimum contacts" test and the "reasonableness" inquiry. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "The strengths of the showings required to satisfy the 'minimum contacts' and 'reasonableness' prongs are inversely related." *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 126 (S.D.N.Y. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Thus, "where a plaintiff's showing on minimum contacts is weak, the reasonableness showing must be greater in order for a forum state to validly assert personal jurisdiction over the defendant." *Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 57 (E.D.N.Y. 1998) (citing *Metro. Life Ins.*, 84 F.3d at 568–69). Plaintiffs have the burden on this issue (*Time, Inc. v. Simpson*, 2003 WL 23018890, at *1 (S.D.N.Y. 2003) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))) and Plaintiffs have failed to meet this burden.

### B. Robertson Does Not Have Minimum Contacts With New York

Robertson does not have the requisite minimum contacts with New York. The "'minimum contacts' prong has been described as a 'fair warning' requirement." *Simon*, 86 F. Supp. 2d at 126 (citing *Burger King*, 471 U.S. at 472). "The crucial question is whether the

16

defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-43 (2d Cir. 2007) (citations omitted); *see Burger King*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen*, 444 U.S. 286, 297 (1980)).

The Supreme Court applied these dual principles of purposeful availment and reasonable anticipation in two seminal cases – *Calder v. Jones*, 465 U.S. 783 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) – which "although ... handed down simultaneously on similar subjects,... relied on independent, if conceptually overlapping, methods of demonstrating minimum contacts – *Keeton* on the defendant's overall activity within the forum state; *Calder* on the in-state effects of out-of-state activity." *Best Van Lines*, 479 F.3d at 243.

Under *Calder* – which governs here – jurisdiction is appropriate only when a defendant's "intentional, and allegedly tortious, actions ... [are] ***expressly aimed*** at" the forum state such that the defendant "must [have] reasonably anticipated being haled into court there[.]" *Calder*, 465 U.S. at 789-90 (emphasis added) (citations omitted).  None of Robertson's alleged tortious activity was ***expressly aimed*** at New York, and surely not such that Robertson must have reasonably anticipated being haled into New York courts.  Similarly, under *Keeton*, Robertson cannot be said to have "continuously and deliberately exploited" the New York market via his personal activities outside of New York. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).  As a result, Robertson has insufficient contacts with New York to meet Due Process concerns.

### 1.  The Court Erred By Relying on § 302(a)(1) Case Law

As set forth above, the Court found, albeit incorrectly, that Robertson was subject to personal jurisdiction under § 302(a)(3)(ii) – tortious actions outside of the state causing injury in

New York, where the defendant expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. *See* SJ Tr. at 3. The Court has ***not*** found jurisdiction under C.P.L.R. § 302(a)(1). Rather, as this Court previously observed, Robertson's "two visits to New York are insufficient to show regular solicitation of business[.]" *Capitol Records*, 2008 WL 4450259, at *4 (S.D.N.Y. Sept. 29, 2008).

In analyzing whether the exercise of jurisdiction comports with Due Process, this Court did ***not*** find that ***Robertson's*** minimum contacts with New York were sufficient; rather, the Court found that ***MP3tunes' contacts were sufficient*** to meet Due Process concerns: "Plaintiffs have established Robertson's minimum contacts with New York by showing that MP3tunes did a significant amount of business with New York and Robertson exercised extensive control over MP3tunes." SJ Tr. at 7. Exposing Robertson to suit in New York because of conduct by MP3tunes runs counter to the very purpose of Due Process clause limitations. *See Burger King Corp.*, 471 U.S. at 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the 'unilateral activity of another party or a third person[.]'") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)) (other citations omitted).

To subject Robertson to personal jurisdiction based on the actions of MP3tunes, the Court incorrectly relied entirely upon *Retail Software*. *See* SJ Tr. at 7. *Retail Software* found jurisdiction under C.P.L.R. § 302(a)(1)'s corporation-as-agent theory. That theory does not apply under § 302(a)(3)(ii). That is so because § 302(a)(1) involves the actual transaction of business in New York and, *per se*, "[c]ontacts sufficient to establish jurisdiction under C.P.L.R. §

18

302(a)(1) are sufficient to meet the minimum contacts requirement of the Due Process clause." *Bradley v. Staubach*, 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) (citing *Stone v. Chung Pei Chemicals Indus.*, 790 F.2d 20, 21-22 (2d Cir. 1986)).   The same is not true under § 302(a)(3), which requires no activity in New York at all, but merely injury in New York.

Moreover, in *Retail Software*, Due Process concerns were satisfied because of each of the individual defendants' actual contacts within the State of New York and the Court found the individual defendants to be the "primary actor[s] in the transaction in New York." *See Retail Software*, 854 F.2d at 20, 22-23.

*King County, Wash. v. IKB Deutsche Industriebank, A.G.*, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011), is instructive.  The court there found that "[e]ven if the requirements of New York's long-arm statute were met as to [defendants], due process considerations preclude the exercise of jurisdiction over either defendant."  Despite the facts that (i) one defendant was compensated based, in part, on the performance of the corporate defendants in New York, (ii) the corporate defendants had substantial activities in New York and (iii) defendants were the CEOs of the corporate defendants, the court held that the individual defendants' limited direct activities in New York did not render it fair and reasonable for them to defend themselves in New York. *Id.*

This Court was required to perform the same analysis here of Robertson's personal activities to determine if Robertson's personal contacts with New York met Due Process standards.  The Court did not do so.

## 2. Robertson's Personal Activity In New York Is Insufficient.

Robertson's personal New York contacts are insufficient to meet Due Process concerns. Indeed, by relying on MP3tunes' contacts with New York – and not Robertson's – the Court implicitly acknowledged that fact.  It is undisputed that Robertson does not: reside in New York,

transact business in New York, sell any products in New York, ship any goods to New York, have a phone number in New York, own real property in New York, hold bank accounts in New York, or pay any taxes in New York. *See* Robertson Dec., ¶¶ 10-14; 3/2/12 Robertson Dec., ¶¶ 3, 8-10. Robertson's alleged tortious activity – sideloading—did not take place in New York and consists of songs sideloaded for Robertson's personal use and was not purposefully directed at New York. Robertson Dec., ¶ 13 (works sideloaded by Robertson were "for [his] own personal use" and "[n]one of these activities were directed or targeted at New York consumers"); 3/2/12 Robertson Dec., ¶ 10.

Fundamentally, in relying on MP3tunes contacts with New York and not Robertson's, this Court overlooked the fundamental Due Process rule enunciated by the U.S. Supreme Court twenty-two years ago:

> Although it has been argued that *foreseeability of causing injury* in another State should be sufficient to establish such contacts there when policy and consideration so require, the Court has consistently held that *this kind of foreseeability is not a sufficient benchmark for exercising personal jurisdiction*. Instead, the foreseeability that is crucial to due process analysis ... is that the *defendant's conduct and connection with the forum State are such that he should be reasonably anticipate being haled into court there*. In defining when it is that a potential defendant should reasonably anticipate out-of-state litigation ..., it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protections of its laws.

*Burger King*, 471 U.S. at 474-75 (emphasis added) (citations omitted); *see Keeton*, 465 U.S. at 775 (minimum contacts analysis "focuses on 'the relationship among the *defendant*, the forum and the litigation'") (emphasis added) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Under that controlling law, Robertson lacks minimum contacts with the State of New York.

### 3. *Retail Software* Is Inapposite.

This Court relied solely upon *Retail Software* in attributing MP3tunes' contacts with New York to Robertson for Due Process purposes. *See* SJ Tr. at 7. That was wrong.

*Retail Software* itself relied upon *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (N.Y. 1988) for the proposition that a corporation may be found to act as an individual's agent. *Retail Software*, 854 F.2d at 22. *Retail Software* did *not* invoke *Kreutter* (or its agency theory of personal jurisdiction) *for purposes of Due Process analysis*. *Id.* at 22-24. Instead, *Retail Software* addressed Due Process concerns by undertaking a fact specific analysis to find that two individual defendants "reached into New York to obtain the benefits of selling seven franchises to be operated in the state" after having received "explicit notice, through the [Franchise Sales Act], that they would be individually liable in any suit arising under the act." *Id.* at 23. No such facts are present here. As a result, *Retail Software* does not support compliance with Due Process concerns as to Robertson.

Moreover, although *Kreutter* overturned the fiduciary shield doctrine in New York, *Kreutter* does not relate to, or in any way alter, Due Process scrutiny for minimum contacts. *Kreutter* was explicit on this point: "'inasmuch as the constitutional and statutory safeguards sufficiently alleviate the equitable concerns posed by long-arm jurisdiction, there is no convincing reason why the mere fact of corporate employment should alter the jurisdiction calculus[.]" *Kreutter*, 71 N.Y.2d at 471 (citations omitted). Thus, as set forth in *Retail Software*, while "*Kreutter* thus resolves the issue of whether a corporation can act as an agent for an individual for the purposes of § 302(a)(1)[,]" both *Kreutter* and *Retail Software* still require a fact specific analysis of whether minimum contacts exist. *Kreutter*, 71 N.Y.2d at 466-67; *Retail Software Services, Inc.*, 854 F.2d at 22.

Therefore, *Retail Software* does not support the Court's finding that Robertson had

sufficient minimum contacts in New York such that Due Process is satisfied.

### 4. Robertson Did Not Expressly Aim Tortious Activity At New York

As noted above, this Court found that "Plaintiffs have established Robertson's minimum contacts with New York by showing that MP3tunes did a significant amount of business with New York and Robertson exercised extensive control over MP3tunes." SJ Tr. at 7 (citing *Retail Software*, 854 F.2d at 22). However, with respect to Due Process issues, Robertson's alleged control over MP3tunes is ***only relevant if, and to the extent, Robertson exercised control to expressly aim tortious activity at New York from outside of New York***. *Time, Inc.*, 2003 WL 23018890, at *7. There is no such evidence of record. Indeed, although the record reflects the number of MP3tunes users from New York and the number of sideloads involving those users, that is not the tort with which MP3tunes is charged. Rather the tort is for contributory infringement for the failure to remove songs from lockers. That occurred in California. Robertson Dec., ¶ 10; 3/2/12 Robertson Dec., ¶ 3.

Therefore, whether MP3tunes has sufficient minimum contacts with New York is irrelevant for the purposes of determining whether the minimum contacts test is satisfied as to Robertson individually. Plaintiffs have not met their burden to show that Robertson exercised his alleged control over MP3tunes to ***expressly aim*** tortious activity by MP3tunes at New York.

### C. Fair Play and Substantial Justice

The "fair play and substantial justice" prong of Due Process analysis "assesses the reasonableness of exercising jurisdiction once 'minimum contacts' have been established." *Simon*, 86 F. Supp. 2d at 126 (citing *Burger King*, 471 U.S. at 476-77). The Court erred in determining that the exercise of jurisdiction over Robertson comports with "traditional notions of fair play and substantial justice".

In making its reasonableness determination, the Court was required to consider the

22

following five factors: (1) the burden on the defendant in defending the lawsuit in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court Of California, Solano County*, 480 U.S. 102, 112 (1987). Moreover, where, as here, Robertson has had no contact with New York in relation to this case, "the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Metro. Life Ins. Co.*, 84 F.3d at 569 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

This Court did not engage in the required balancing of the five *Asahi* factors. Rather, the Court summarily found that "[e]xercising jurisdiction over Robertson in this action would be reasonable and comports from traditional notions of fair play and justice. The burden on Robertson in litigating in New York is minimal and New York State has a significant interest in protecting the property rights of its residen[ts]." SJ Tr. at 7-8. On the contrary, an examination of the *Asahi* factors leads to only one conclusion: exercising jurisdiction over Robertson in this action would be unreasonable and does not comport with traditional notions of fair play and justice.

First, looking at the burden on Robertson, Robertson would be subjected to litigation in New York three thousand miles away from where he resides, when his contacts with New York are non-existent. *See King County*, 769 F. Supp. 2d at 321 ("subjecting ... defendant[s] to personal jurisdiction ... would impose on [them] an undue burden in terms of travel, expense, and time"). Additionally, here, MP3tunes, Inc. is in bankruptcy and will not contest the claims

against it.  Thus, Robertson will not otherwise be present in this Court.  Robertson Dec., ¶ 15. Indeed, the fact that Robertson was required to participate in this lawsuit as a witness for MP3tunes was the foremost reason previously offered by Plaintiffs for finding this factor in support of reasonableness.  (*See* Sacks Dec., ¶ 7 and Ex. 6, at 23-24).

As to the second and third prongs, "New York will preserve its interests in the case, and plaintiffs will be protected in their efforts to obtain effective and convenient relief, by continuing the adjudication of the underlying action against the corporate defendant[]."  *King County*, 769 F. Supp. 2d at 321.  Here, as in *King County*, Plaintiffs will be able to proceed in New York against MP3tunes, and will no doubt obtain a default judgment.  Further, Plaintiffs are "not bereft of 'other options for legally proceeding' against" Robertson.  *Time, Inc.*, 2003 WL 23018890, at *7 (citing *Karabu Corp. v. Gitner*, 17 F. Supp. 2d 319, 324 (S.D.N.Y. 1998)).

As to the fourth prong, requiring Robertson – an individual defendant – to try this matter in New York is not "the most efficient resolution of the controversy."  In 2008, this Court rejected venue transfer "[b]ecause Plaintiffs and MP3tunes are all corporations, the relative means of the parties is not entitled to great weight."  *Capitol Records*, 2008 WL 4450259, at *6. That no longer applies.

Finally, the substantive social policies of other states would not be adversely affected by dismissing this action as to Robertson.

Thus, these factors, weighed – as the Court must – in light of the nonexistent personal contacts Robertson has with New York in connection with the facts underlying this lawsuit, dictate that "traditional notions of fair play and substantial justice" are best served by granting the motion to dismiss for lack of personal jurisdiction.  *Asahi*, 480 U.S. at 113 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

24

## CONCLUSION

For the foregoing reasons, this Court should grant reconsideration, and upon reconsideration, dismiss the action as to Robertson for lack of personal jurisdiction.

Dated: New York, New York
      November 12, 2012

                                      Respectfully Submitted,
                                      AKERMAN SENTERFITT LLP

                                      By _____
                                      Ira S. Sacks
                                      Mark S. Lafayette
                                      335 Madison Avenue, Suite 2600
                                      New York, New York 10017
                                      Telephone: (212) 880-3800
                                      Facsimile:  (212) 880-8965

                                      *Attorneys for Defendant Michael Robertson*