# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

CAPITOL RECORDS, Inc., *et al.,*

                             *Plaintiffs*,

        v.

MP3TUNES, LLC, and MICHAEL ROBERTSON

                            *Defendants*.

_____

No. 07 Civ. 9931 (WHP)(FM)

ECF Case

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ROBERTSON'S MOTION FOR RECONSIDERATION (INDIVIDUAL AND PERSONAL LIABILITY ISSUES) AND FOR SUMMARY JUDGMENT (VICARIOUS LIABILITY)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

CITATION FORMAT ...................................................................... vii

INTRODUCTION ............................................................................1

LEGAL STANDARD .......................................................................2

ARGUMENT ...................................................................................3

I.   SUMMARY JUDGMENT AGAINST ROBERTSON WAS PROPER. ...................................3

II.  ROBERTSON'S ATTEMPT TO RE-LITIGATE MP3TUNES' ABANDONMENT AND
     IMPLIED LICENSE DEFENSES SHOULD BE REJECTED. ................................................4

     A. There is No Question of Fact as to Defendants' Abandonment and Licensing
        Defenses. ............................................................................................6

        1.   The Court Did Not Grant Robertson Leave to Move for Reconsideration of
             MP3tunes' Abandonment and Implied License Defenses. .............................6

        2.   Robertson's Repetition of MP3tunes' Arguments and Evidence Does Not
             Support Reconsideration. ..........................................................................6

        3.   Robertson's "New" Evidence Does Not Create a Question of Fact or Support
             Reconsideration. ......................................................................................7

        4.   Robertson Has Not Raised Authorization Defenses as to the Specific Works at
             Issue in the *MSJ Order*. ..............................................................................8

     B. Robertson's Complaints Concerning Discovery are Meritless and Beyond the
        Scope of this Motion. ..........................................................................9

     C. There is No Material Question of Fact as to Plaintiffs' Marketing Practices. ...................10

     D. Robertson's Miscellaneous Related Defenses Are Untimely and Duplicative. ................11

III. PLAINTIFFS' COPYRIGHTS REMAIN ENFORCEABLE. .................................................11

     A. Plaintiffs' Copyrights in Music Albums Registered as Compilations are
        Enforceable. ........................................................................................11

     B. Proof of Ownership Issues, If Any, Can Be Resolved at Trial. ........................................13

     C. Damages Are Beyond the Scope of This Motion to Reconsider. .....................................14

     D. Plaintiffs' Ownership in Works for Hire Remains Unrefuted. ........................................14

IV. PLAINTIFFS' UNFAIR COMPETITION CLAIM AGAINST ROBERTSON IS FIT FOR TRIAL.................................................................................................................16

V. ROBERTSON'S REQUEST TO REOPEN DISCOVERY IS UNTIMELY AND UNWARRANTED. ...................................................................................................17

VI. THE COURT PROPERLY DENIED SUMMARY JUDGMENT TO MP3TUNES ON PLAINTIFFS' COVER ART INFRINGEMENT CLAIM.....................................19

    A.  Defendants' Infringing Reproduction and Display of Plaintiffs' Cover Art is Not "Storage" Under *Viacom*.........................................................................................19

    B.  Defendants' Other Challenges to the Court's Ruling on Cover Art are Untimely and Meritless. ......................................................................................................21

        1.  Robertson's Additional Challenges to the Court's Ruling on Cover Art Are Untimely. ...........................................................................................................21

        2.  MP3tunes' Reproduction and Display of Plaintiffs' Cover Art Outside the Scope of its Amazon License Is Copyright Infringement.............................21

        3.  Plaintiffs Have Proved Their Copyrights in the Relevant Cover Art. .........23

VII.    QUESTIONS OF FACT PRECLUDE AN AWARD OF SUMMARY JUDGMENT TO ROBERTSON RELATING TO INFRINGING CONDUCT BY MP3TUNES.....................25

    A.  Robertson is Liable for Personally Directing and Participating in the Actions of MP3tunes Giving Rise to Liability. .............................................................................25

    B.  There Are Questions of Fact as to Robertson's Liability Under a Vicarious Standard. ......................................................................................................................28

        1.  Robertson Supervised and Stood to Benefit From the Acts Giving Rise to Liability..........................................................................................................28

        2.  The *MSJ Order*'s DMCA Holdings Do Not Preclude Jury Consideration of Robertson's Personal Liability for Vicarious Infringement.........................29

CONCLUSION.................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

CASES

*A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896 (N.D. Cal. 2000), *aff'd in relevant part*, 239 F.3d 1004 (9th Cir. 2001)................................................................29, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................................................3

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..................................................................................................25, 26, 27, 29

*Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 1311771 (S.D.N.Y. Apr. 4, 2011)..........................................................................................14

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)........................................................................................25, 26, 27, 28, 30

*Arthur A. Kaplan Co. v. Panaria International, Inc.*, No. 96–Civ.–7973 (HB), 1998 WL 603225 (S.D.N.Y. Sept. 11, 1998)................................................................16

*Bean v. John Wiley & Sons, Inc.*, No. 11 CV 8028, 2011 WL 3348959 (D. Ariz. Aug. 3, 2011)..............................................................................................................24

*Boisson v. Banian, Inc.*, 273 F.3d 262 (2d Cir. 2001) ...................................................................15

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) ..................................12, 16

*Caffey v. Cook*, 409 F. Supp. 2d 484 (S.D.N.Y. 2006)..................................................................13

*Capitol Records, Inc. v. Naxos of America, Inc,*, 4 N.Y.3d 540 (2005) ..................................16, 17

*Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471 (2d Cir. 2004)..............................5

*Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ........................................................................18

*Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), *superseded on other grounds as stated in Weissman v. Freeman*, 868 F.2d 1313 (2d Cir. 1989) .............16

*Elsevier B.V. v. UnitedHealth Group, Inc.*, 784 F. Supp. 2d 286 (S.D.N.Y. 2011) ...............12, 25

*Espada v. Schneider*, 522 F. Supp. 2d 544 (S.D.N.Y. 2007)........................................................18

*Feist Publications Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) .............................12

*Grady v. Affiliated Central, Inc.*, 130 F.3d 553 (2d Cir. 1997) ......................................................3

*Greenwich Film Productions, S.A. v. DRG Records, Inc.*, 833 F. Supp. 248 (S.D.N.Y. 1993) ...............................................................................................................23

*Island Software & Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005) ...................................................................................................................................8

*Jefferson Airplane v. Berkeley System Inc.*, 886 F. Supp. 713 (N.D. Cal. 1994) ........................24

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ............................................................3

*Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*, 945 F.2d 509 (2d Cir. 1991) ..................................................................................................................12

*King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812 (M.D. Tenn. 2006) ......................................12

*Masterfile Corp. v. Gale*, No. 2:09-CV-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011).............25

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010)............22, 23

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, No. 12-CV-00954-AW, __F. Supp. 2d __, 2012 WL 3711513 (D. Md. Aug, 24, 2012) ................................................................................................................................24

*Morris v. Business Concepts, Inc.*, 283 F.3d 502 (2d Cir. 2002)............................................12, 25

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010), *on reconsideration in part*, No. 09 CV 2669, 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010) ....................................................................................24

*National Union Fire Insurance Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97 (2d Cir. 2001) ......................................................................................................................................19

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) .................................................19

*Pem-America, Inc. v. Sunham Home Fashions, LLC*, 83 F. App'x 369 (2d Cir. 2003) .............16

*Pennsylvania Public School Employees Retirement System v. Bank of America Corp.*, No. 11 Civ. 733 (WHP), 2012 U.S. Dist. LEXIS 129529 (S.D.N.Y. Aug. 28, 2012).............11, 12

*Priestley v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011) ....................................................3, 4

*Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir. 1996) ............................................................................3

*Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7 (1st Cir. 2007).....................................................18

*SHL Imaging, Inc. v. Artisan House, Inc.,* 117 F. Supp. 2d 301 (S.D.N.Y. 2000) ........................5

*Shrader v. CSX Transportation, Inc.*, 70 F.3d 255 (2d Cir. 1995) .................................................2

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.,* 211 F.3d 21 (2d Cir. 2000)........................................................................................................5

*Stumm v. Drive Entertainment Inc.*, No. 00 Civ. 4676 (DC), 2002 WL 5589 (S.D.N.Y. Jan. 2, 2002) .................................................................................................26

*Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995) ............................................................12

*Ulloa v. Universal Music & Video Distribution Corp.,* 303 F. Supp. 2d 409 (S.D.N.Y. 2004) ...................................................................................................................5

*Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ...........................1, 20, 30

*Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245 (2d Cir. 1992) ... 2-3, 6

## STATUTES AND REGULATIONS

17 U.S.C. § 101 .............................................................................................................16

17 U.S.C. § 410(c) .......................................................................................................15

17 U.S.C. § 411(b) ...................................................................................................13, 24

17 U.S.C. § 504 .............................................................................................................14

17 U.S.C. § 505 .............................................................................................................14

17 U.S.C. § 512(c) ...................................................................................................19, 20

37 C.F.R. § 202.3(b)(4) .................................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(d) .................................................................................................17, 18

Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law § 6.5, Nature of Scope Provisions; Covenants Compared* (2012).............................................................23

S.D.N.Y. L. Civ. R. 6.3.................................................................................................7, 21

**CITATION FORMAT**

Plaintiffs use the following citation forms in their Memorandum of Law in Support of their Motion for Reconsideration:

1.     "Abitbol Decl." refers to the Declaration of Michael Abitbol in Support of Plaintiffs' Motion for Partial Summary Judgment, dated October 29, 2010 [Docket No. 187].

2.     "Ashby Decl." and "Ashby Ex." Refer respectively to the Declaration of Audrey Ashby in Support of Plaintiffs' Motion for Partial Summary Judgment, dated Oct. 29, 2010, and the exhibits attached thereto [Docket No. 188].

3.     "Bart Ex." refers to Exhibits to the Declaration of Andrew H. Bart filed in support of Plaintiff's Motion for Summary Judgment, dated October 29, 2010 [Docket No. 190].

4.     "Bart Opp. Decl." and "Bart Opp. Ex." refer respectively to the Declaration of Andrew H. Bart filed in support of Plaintiff's Opposition to Michael Robertson's Motion for Reconsideration, dated December 10, 2012, and the exhibits attached thereto.

5.     "Bart PJ Ex." refers to exhibits attached to the Declaration of Andrew H. Bart in Opposition to Defendant Michael Robertson's Motion for Summary Judgment, dated March 23, 2012 [Docket No. 293].

6.     "Defs. CSUF" refers to MP3tunes' Counterstatement to Plaintiffs' Local Rule 56.1 Statement of Uncontroverted Facts in Support of Their Motion for Summary Judgment, dated Nov. 24, 2010 [Docket No. 220].

7.     "Defs. MSJ" refers to Defendants MP3tunes' Memorandum of Law in Support of its Motion for Summary Judgment, dated October 29, 2010.

8.      "Defs. Opp. to Pls. MSJ" refers to Defendants MP3tunes' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, dated Nov. 24, 2010 [Docket No. 222].

9.      "Horowitz Decl." and "Horowitz Ex." refer respectively to the Declaration of Professor Ellis Horowitz filed in support of Plaintiff's Motion for Summary Judgment, dated October 29, 2010, and the exhibits attached thereto.

10.     "Lafayette Decl." refers to the Declaration of Mark S. Lafayette in Support of Rule 56(d) and (e) Relief, dated Nov. 12, 2012 [Docket No. 337].

11.     "MR Decl." refers to the Declaration of Michael Robertson in Support of Motions for Reconsideration and for Summary Judgment, dated Nov. 12, 2012 [Docket No. 336].

12.     "*MSJ Order*" refers to this Court's October 25, 2011 Amended Memorandum and Order on the Parties' respective cross-motions for summary judgment, 821 F. Supp. 2d 627 (S.D.N.Y. 2011) [Docket No. 276].

13.     "Pls. CSUF" refers to the Plaintiffs' Local Civil Rule 56.1 Counter-Statement of Facts (Vicarious Liability), dated December 10, 2012.

14.     "Pls. Evid. Objs." refers to Plaintiffs' Evidentiary Objections to Portions of Declarations Submitted in Support of Defendant Michael Robertson's Motions For Reconsideration and for Summary Judgment, dated December 10, 2012.

15.     "Pls. MSJ" refers to Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, dated October 29, 2010.

16.     "Pls. Opp. to Defs. MSJ" refers to Plaintiffs' Memorandum of Law in Opposition to the Motion of MP3tunes, LLC for Summary Judgment, dated Nov. 24, 2010 [Docket No. 209].

17.     "Pls. Opp. to Robertson PJ Mot." refers to Plaintiffs' Memorandum of Law in Opposition to Defendant Michael Robertson's Memorandum of Law in Support of Reconsideration (Personal Jurisdiction), dated Dec. 10, 2012.

18.     "PSUF" refers to Plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment, dated October 29, 2010.

19.     "RMSJ" refers to Defendant Robertson's Memorandum of Law in Support of Motion for Reconsideration (Individual Liability and Viacom Issues) and for Summary Judgment (Vicarious Liability), dated November 12, 2012 [Docket No. 340].

20.     "Rothman Decl." refers to the Declaration of Matthew Rothman in support of Plaintiff's Opposition to Michael Robertson's Motion for Reconsideration, dated December 10, 2012.

21.     "Sacks Ex." refers to Exhibits to the Declaration of Ira S. Sacks in Support of Motions for Reconsideration and for Summary Judgment, dated Nov. 12, 2012 [Docket No. 338].

22.     "Supp. McMullan Decl." and "Supp. McMullan Ex." refer respectively to the Supplemental Declaration of Alasdair McMullan in Opposition to MP3tunes' Motion for Summary Judgment, dated Nov. 24, 2010, and the exhibits attached thereto [Docket No. 211]

23.     "Tarpey Decl." and "Tarpey Ex." refer respectively to the Declaration of Anne Tarpey, dated Oct. 29, 2010, and the exhibits attached thereto [Docket No. 192].

## INTRODUCTION

This Court granted Defendant Michael Robertson leave to file a limited motion for reconsideration of the Court's *MSJ Order* with respect to his personal liability and the effects of the Second Circuit's opinion in *Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) on prior decisions in this case.  *See* Revised Scheduling Order, September 27, 2012 [Docket No. 323] at 1.  The motion for "reconsideration" filed by Robertson, however, bears little resemblance to the motion authorized by the Court, or to a motion for reconsideration at all.

Instead of limiting his filing to reconsideration of the issues concerning his personal liability, Robertson has treated his Motion as an excuse to re-litigate numerous issues far beyond the scope of the Court's order.  For instance, he urges the Court to revisit numerous determinations concerning *MP3tunes'* liability (thereby effectively seeking reconsideration of the *MSJ Order* in its entirety), seeks to re-litigate discovery orders entered by Magistrate Judge Maas three years ago, violates the local rule and Second Circuit precedent limiting motions for reconsideration to the record before the Court at the time of its decision, and, perhaps most egregiously, seeks to disguise a grossly untimely motion to reopen discovery as though it were a mere request to defer summary judgment under Rule 56(d) – even though Rule 56(d) does not even apply to motions for summary judgment brought after the completion of discovery. Robertson repeats the same arguments MP3tunes already made (and the Court already rejected) and advances legal theories that were equally applicable to both Defendants and thus were available to Robertson in directing MP3tunes' summary judgment filings.  In no case do they provide any basis for revisiting the Court's decisions in the *MSJ Order*.

Since the entry of summary judgment against him, Robertson has sought to manipulate the legal process to delay trial and to re-litigate the findings against him.  The lynchpin of this strategy was the decision to put MP3tunes in bankruptcy on the eve of scheduled motions for

reconsideration.  As there had been no material change in the finances or liabilities of MP3tunes, it is clear that the bankruptcy filing had nothing to do with the preservation of the estate or the protection of creditors but rather was undertaken to delay these proceedings and stave off trial. Indeed, Robertson continues to use the very MP3tunes assets that he put into bankruptcy for a related business.  However, the ruse of the bankruptcy proceedings gave him an excuse not to pay his litigation counsel in this case.  By doing so, Robertson was able to retain new counsel and now seeks to use the fact of new representation as a license to re-litigate the entire case. This Court should not reward such obvious strategic gamesmanship.

Robertson has also submitted a cursory motion for summary judgment with respect to his personal liability for the infringing acts of his company.  Here, his argument rests on misapplying the holding in the *MSJ Order* that the Digital Millennium Copyright Act ("DMCA") defense applies to some infringements by MP3tunes' users.  Robertson's personal liability is governed by common-law standards distinct from the DMCA and pertains to different acts of infringement from those for which the *MSJ Order* granted MP3tunes a DMCA defense.  Thus, for the reasons stated below, this motion should be summarily denied as well.

## LEGAL STANDARD

Robertson's motion tellingly never cites the relevant legal standard: "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Thus, reconsideration is not an invitation to "re-litigate" issues already decided, *id.*, but requires either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation*

2

*Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478).

As for Robertson's motion for summary judgment, Robertson as the moving party bears the burden of "showing the absence of any genuine dispute as to a material fact" with respect to each element of his defense. *Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 559 (2d Cir. 1997). In assessing whether a genuine dispute of fact exists, a Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005).

## ARGUMENT

## I.   SUMMARY JUDGMENT AGAINST ROBERTSON WAS PROPER.

The Court's grant of summary judgment against Robertson in the *MSJ Order* was proper. Courts in the Second Circuit have the authority to grant summary judgment *sua sponte* "[w]here it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court . . . if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996). Because Robertson directed MP3tunes' summary judgment filings and because Robertson's liability is subsumed entirely within MP3tunes' liability for the same acts of infringement, that standard was satisfied.

Here, evidence of the 47 sideloads for which Robertson was held liable was contained in Plaintiffs' summary judgment filings. They were directly at issue because Plaintiffs sought to hold MP3tunes liable for them.[1] Robertson had the opportunity at that time to come forward with evidence or argument demonstrating that those sideloads were not infringing, and he did

---

[1] Plaintiffs' motion for summary judgment with respect to MP3tunes' liability for Robertson's sideloads renders inapposite *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011), where the moving party had stated no facts as to the nonmoving party's liability. *Id.*

3

exactly that:  MP3tunes, which was controlled by Robertson (*see* Part VII.B *infra*) and represented by the same counsel, contested liability for *all* recordings on the Sideload website, including those sideloaded by Robertson, and Robertson supported MP3tunes with testimony. *See* Defs. CSUF ¶¶ 41-46; Declaration of Michael Robertson, dated November 24, 2010 [Docket No. 336].  In fact, Robertson now asserts the very same defense to his own activity that he made on behalf of MP3tunes, *i.e.*, that he was somehow "authorized" to sideload those 47 recordings because Plaintiffs had made a handful of downloads of *other* recordings available on *other* websites for promotional purposes.  Robertson's present motion makes no attempt to argue that he could not or did not represent his legal interests through the corporate entity he controls.

In addition, Robertson points to no evidence or legal argument as to the lawfulness of his sideloads that he either did not or could not have presented through MP3tunes' opposition to Plaintiffs' motion – and to the extent he inappropriately uses "new" evidence on reconsideration, *see* Part II.B *infra*, there is no reason he could not have used the same materials before.  Through MP3tunes, which he controlled, Robertson already had his "full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."  *Priestley*, 647 F.3d at 504.

Finally, even if Robertson were entitled to separate briefing before summary judgment was entered against him, any such issue would now be cured.  Robertson has now used his motion to present evidence and arguments he thinks the Court should have considered.  As discussed below, this evidence and argument fails to make the showing required.

## II.     ROBERTSON'S ATTEMPT TO RE-LITIGATE MP3TUNES' ABANDONMENT AND IMPLIED LICENSE DEFENSES SHOULD BE REJECTED.

Robertson seeks to re-litigate the same defense he already raised through MP3tunes: that the occasional distribution of recordings by Plaintiffs for promotional purposes had somehow "abandoned [Plaintiffs'] copyrights altogether or authorized downloads outside of the

promotional context," thus allowing anyone on the Internet to freely copy, distribute, and perform any of their works. RMSJ at 2. MP3tunes had the burden of proving such a broad implied license, and that burden is high. *See Ulloa v. Universal Music & Video Distrib. Corp.,* 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004); *Capitol Records, Inc. v. Naxos of Am., Inc.,* 372 F.3d 471, 483-84 (2d Cir. 2004) (abandonment defense requires an infringer prove an intent to surrender all rights in a work and an overt act demonstrating that intent); *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,* 211 F.3d 21, 25 (2d Cir. 2000); *SHL Imaging, Inc. v. Artisan House, Inc.,* 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000) ("no court has found an implied license where the nature of the use is contested"). This argument was without merit when MP3tunes made it, and it remains without merit now. The Court did not "fail[] to understand" Robertson's argument as he claims, RMSJ at 5, it considered and rightly rejected it.

In addition to repeating arguments and re-arguing evidence that he already presented through MP3tunes, Robertson proffers "new" evidence that he claims supports MP3tunes' rejected defenses. As a procedural matter, of course, this is inappropriate. If Robertson wanted to present a motion for reconsideration based on "new" evidence, he was obligated to seek advance approval from the Court. But even on the merits, Robertson's "new" evidence does not warrant a different result. Much of it is not new at all and was previously available to MP3tunes; some of it relates to downloads that postdate the relevant time period; and almost all of it relates to the promotion of recordings unrelated to the specific works for which the *MSJ Order* holds Robertson liable. *See* Parts II.A.3 & II.B, *infra*. Thus, Robertson's evidence provides no basis for a different decision that that rendered by the Court.

**A.      There is No Question of Fact as to Defendants' Abandonment and Licensing Defenses.**

        1.      <u>The Court Did Not Grant Robertson Leave to Move for Reconsideration of MP3tunes' Abandonment and Implied License Defenses.</u>

Robertson's attempts to re-argue MP3tunes' copyright abandonment and implied licensing defenses should be rejected at the outset as being beyond the scope of the motions permitted by the Court.  The Court granted Robertson leave to move for reconsideration with respect to his personal liability, not with respect to MP3tunes' abandonment and licensing defenses.  *See* Revised Scheduling Order, September 27, 2012 [Docket No. 323] at 1.  While Robertson might desire a reconsideration of the Court's rejection of those defenses, that is equally true of *every* issue that the Court decided adversely to MP3tunes.  Robertson must not be permitted to use this motion as an excuse to re-litigate the *MSJ Order* in its entirety.

        2.      <u>Robertson's Repetition of MP3tunes' Arguments and Evidence Does Not Support Reconsideration.</u>

Much of Robertson's brief is spent extensively repeating arguments the Court already considered during summary judgment motions concerning Defendants' abandonment and licensing defenses.  *See* RMSJ at 4-10.  He fails, however, to point to any "intervening change of controlling law" or "clear error or … manifest injustice" in the *MSJ Order*'s analysis of these issues, *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255, instead rearguing his view of the evidence. Defendants' "viral marketing" theory has already been briefed exhaustively. Indeed, Plaintiffs already went through the exercise of refuting the hundreds of examples of supposedly "free" downloads Defendants presented in the original summary judgment proceedings – during which Defendants' liability for Robertson's personal sideloads, as described *supra*, was already in issue.  *See* Pls. Opp. to Defs. MSJ at 3-8.  Plaintiffs, and the Court, should not be forced to undergo the same exercise twice simply because Robertson wants another bite at the apple.

3.     Robertson's "New" Evidence Does Not Create a Question of Fact or Support Reconsideration.

In addition to rearguing the evidence from the summary judgment record, Robertson introduces a handful of documents allegedly obtained through "informal discovery" which he claims support the implied license and abandonment defenses, and he complains about Plaintiffs' document productions over three years ago.  Most of what Robertson implies is new was in fact produced to the parties during discovery by third parties and has thus always been available to Defendants.  *See* Bart Opp. Decl. ¶ 3; Part II.B *infra*.  His "new" evidence is both procedurally inappropriate and fails to sustain his burden on reconsideration.[2]

The miscellaneous claims and documents Robertson puts forth are all irrelevant, cited for propositions they do not support, or otherwise inadmissible.  *See* Pls. Evid. Obj. at 11-15, 18-25.  Robertson makes the bald (and inadmissible) assertion that it has "long been known" that whenever Plaintiffs authorized specific promotional channels, they intended the entire Internet to freely copy and distribute their recordings.  *See* MR Decl. ¶ 16 & 20.  But Robertson cannot competently testify as to Plaintiffs' marketing practices or intent, and his evidence fails to support his assertion.  *See* Pls' Evid. Obj. at 3-7.  As an example, the supposedly newly-obtained license agreement he attaches (for the recording "Beatslope") relates to promotional activities by a third-party record label, not by Plaintiffs, pertains to a recording Defendants are not accused of infringing, and does not authorize unlimited downloading as he claims.  *See* Bart Opp. Decl. ¶ 4 & Rothman Decl. ¶ 3.  The sole "example of viral marketing by EMI Publishing" he presents in fact shows that the publishing Plaintiffs did *not* approve unrestricted downloading but insisted on limitations.  Pls' Evid. Obj. at 20-21.  The supposedly "viral" promotion he cites for another

_____

[2] A party seeking to use new evidence on a motion for reconsideration must obtain prior authorization from the Court.  S.D.N.Y. L. Civ. R. 6.3.  Robertson's failure to do so deprived the Court and Plaintiffs the opportunity to first evaluate whether his "new" evidence merits re-opening the Court's decision on Defendants' copyright abandonment and licensing defenses.

work, "The Rake Song," is from a later time period and is not a work he is accused of infringing. *Id*. at 23. The evidence he tries to use to suggest that six of his sideloads were authorized (an unsworn letter from a third-party record label and testimony by his counsel about a telephone call with Amazon.com) is patently inadmissible hearsay. *See* Pls. Evid. Objs. at 28-29. And the promotion by the marketing firm "Toolshed" he cites, which was fully disclosed in discovery, pertains to a recording Robertson did not sideload and does not support Robertson's strained and speculative attempts to link that promotion (or any other promotions by the same firm) to the works that Robertson did infringe. *Id*. at 8-10; *see also* Bart Opp. Decl. ¶ 3(e).

In short, Robertson's "new" evidence is immaterial and does nothing to disturb the Court's holding that Defendants cannot prove their abandonment or implied license defenses.

### 4.   Robertson Has Not Raised Authorization Defenses as to the Specific Works at Issue in the *MSJ Order*.

Lacking admissible evidence that his sideloading was not infringing, Robertson resorts instead to attacking the credibility of Plaintiffs' evidence showing that Defendants were *not* authorized to reproduce or distribute the specific works they infringed. *See* RMSJ at 13-15. But it is well-established that merely attacking the credibility of evidence, absent evidence of one's own, is insufficient to create a question of fact. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005). To show a fact issue as to his authorization to sideload any particular work belonging to Plaintiffs, Robertson has the burden to come forward with evidence that Plaintiffs authorized the *specific* conduct for which he stands potentially liable. With respect to the Label Plaintiffs, as discussed in Part II.A.3 *supra*, Robertson's challenges consist of speculation, inadmissible evidence, and documents he cites for propositions they do not support. With respect to the Publishing Plaintiffs, Robertson comes up with only a single claim: that the Publishing Plaintiffs' witness Michael Abitbol had somehow

been "disingenuous" in confirming that they had not authorized the unpaid distribution of one song (by Avenged Sevenfold) Robertson sideloaded.  *See* RMSJ at 14.  But there is nothing false or disingenuous about Abitbol's testimony.  He testified that none of the Publisher Plaintiffs authorized the song for free download, Abitbol Decl. ¶¶ 3-4, and Robertson presents no evidence otherwise.  Abitbol did not (and could not) testify as to whether anyone ever offered a free download of a recording embodying one of the Publishing Plaintiffs' works without their knowledge or approval.[3]  In fact, the only "evidence" Robertson introduces to support his claim that this download was "authorized" consists of inadmissible correspondence between Robertson and the GM of Hopeless Records from 2012 – six years after Robertson sideloaded the work – in which the GM *explicitly refuses* to make any legally binding representation that it had all necessary authorization to offer a free download of the song.  *See* Pls. Evid. Objs. at 14-15.

### B.   Robertson's Complaints Concerning Discovery are Meritless and Beyond the Scope of this Motion.

Robertson seeks to divert attention from the paucity of his evidence by repeatedly complaining about Plaintiffs' document productions.  *See* RMSJ at 5-7, 11.  However, virtually all of the documents Robertson complains about were produced in discovery and were available to Defendants when they moved for summary judgment.  *See* Bart Opp. Decl. ¶ 3.  At most, Robertson identifies a handful of new documents not previously part of the record in this case (*e.g.*, the third-party license to promote a recording that Defendants are not even accused of

---

[3]  Abitbol also specifically testified that, as a general matter, anyone who wants to make a song available for free download seeks permission from the Publishing Plaintiffs in the form of a "gratis license" pursuant to which the Publishing Plaintiffs waive their royalties, that these licenses were not routinely granted, and that each had to be approved by the CEO.  Abitbol Decl. ¶¶ 6-7.  Contrary to Robertson's assertion, record labels do not have a "pass through right" under federal law to use musical compositions as they see fit.  A label must obtain a mechanical license from the publisher (or its agent, the Harry Fox Agency) and pay the publisher for each download, unless the publisher expressly waives its royalty in the manner in which Abitbol testified.

infringing, discussed *supra*), and complains that the documents of the EMI custodians pertaining to Toolshed and other firms, discussed *supra*, were not searched. *See* Lafayette Decl. ¶¶ 5-6.

In evaluating the credibility of Robertson's harsh accusations, it is important to look at the procedural record. Given the burdensomeness and debatable relevance of Defendants' wide-ranging requests regarding promotion, the parties both negotiated and litigated the scope of Plaintiffs' discovery obligations with respect to this topic (such as defining search terms and custodians) before Judge Maas. *See* Bart Opp. Decl. ¶¶ 5-7 & Ex. 4. After extensive briefing and argument, Judge Maas limited the scope of the search that Plaintiffs would need to conduct to "the fifteen marketing persons with the most senior titles." *See* Docket No. 102 at 17-19, 21-23. In response to Judge Maas' Order, Plaintiffs disclosed the names and titles of the senior custodians they proposed to search, and Defendants did not raise an objection. Bart Opp. Decl. ¶ 6 & Ex. 5. If Defendants were dissatisfied with the limitations on Defendants' requested discovery, it was their obligation to seek further relief from Judge Maas or to appeal his order. They did not. That Robertson is now represented by new counsel does not give him license to revisit discovery disputes settled years ago or the tactical decisions of his previous counsel.

### C.    There is No Material Question of Fact as to Plaintiffs' Marketing Practices.

Throughout this case, Defendants have argued, without evidentiary support, that Plaintiffs abandoned their copyrights by giving away recordings without consideration. However, Plaintiffs demonstrated at summary judgment that they used the appeal of free recordings to attract users to websites where they would be exposed to promotional messages or provide marketing information – and that Defendants unlawfully misappropriated that attraction to sell memberships to their own website instead. *See* Pls. Opp. to Defs. MSJ at 4-6.

In the *MSJ Order*, the Court expressly addressed these arguments and held that Plaintiffs "required consumers to visit certain websites *or* provide valuable marketing information before

10

downloading a song."  *MSJ Order*, 821 F. Supp. 2d at 647-48 (emphasis added).

Notwithstanding this holding, Robertson now claims that there is a "question of fact" as to

whether Plaintiffs *always* required marketing information in exchange for downloads.  RMSJ at

10-12.  However, since the Court has already found that visiting a promotional site *or* providing

marketing information was adequate consideration, there is nothing to reconsider.

> **D.**    **Robertson's Miscellaneous Related Defenses Are Untimely and Duplicative.**

Finally, Robertson asserts various equitable defenses to his personal infringement of

Plaintiffs' works (equitable estoppel, unclean hands, and waiver) that are essentially duplicative

of his implied licensing and abandonment defenses and should be rejected for the same reasons.

*See* RMSJ at 15-18.  These defenses were also equally applicable to MP3tunes and were thus

waived when they were not presented at summary judgment.  *See Pa. Pub. Sch. Emps.' Ret. Sys.*

*v. Bank of Am. Corp.*, No. 11 Civ. 733 (WHP), 2012 WL 2847732, at *27 (S.D.N.Y. Aug. 28,

2012).  Moreover, the "reliance" premise behind these defenses is patently unreasonable.  No

reasonable person would believe that he could freely download *any* of Plaintiffs' works and

appropriate their value to himself and his own businesses merely because Plaintiffs made *some*

recordings promotionally available without requiring payment.

**III.**   **PLAINTIFFS' COPYRIGHTS REMAIN ENFORCEABLE.**

> **A.**    **Plaintiffs' Copyrights in Music Albums Registered as Compilations are**
>           **Enforceable.**

Robertson argues that there is a question of fact as to his infringement of several of the

record label Plaintiffs' sound recordings because Plaintiffs obtained copyrights for some of their

works in compilations (*i.e.* albums) instead of individually.  RMSJ at 18-19.[4]  But registering an

---

[4] As with Robertson's other arguments equally applicable to MP3tunes' liability, this argument
is procedurally defective because it was not raised on summary judgment and is thus outside the

album for copyright protection also results in copyright protection for the individual recordings on the album, and Robertson makes no showing otherwise.

The registration of a collective work registers the individual constituent works so long as they are owned by the claimant. *See Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) (if "all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work"); *Elsevier B.V. v. UnitedHealth Group, Inc.*, 784 F. Supp. 2d 286, 294-95 (S.D.N.Y 2011) (same); 37 C.F.R. § 202.3(b)(4) (governing collective registrations of multiple works on single application).  Musical albums are precisely the types of collective works to which this rule applies.  *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140-41 (2d Cir. 2010) (music albums are compilations under the Copyright Act).  Accordingly, registering an album also registers the individual recordings if owned by the claimant, as is the case here.  *See, e.g.*, *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 843 (M.D. Tenn. 2006) ("…the copyright of a collection of sound recordings in the form of an album extends copyright protection to both the album and the individual sound recordings contained therein…"); *Szabo v. Errisson*, 68 F.3d 940, 942-43 (5th Cir. 1995) (reversing district court holding that recordings on album must be registered separately and holding that "a copyright of a collection of unpublished works protects the individual works that are copyrightable….").

Robertson cites no authority for his patently incorrect and counterintuitive assertion that a record label does not hold a registered copyright in the sound recordings on an album when it registers the album as a compilation with the Copyright Office.  The cases he *does* cite are completely inapposite.  *Feist Publications Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) and *Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*, 945 F.2d

---

scope of a motion for reconsideration.  *See*, *e.g.*, *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2012 2012 WL 2847732 at *27.

509 (2d Cir. 1991) both involved compilations whose elements were *not* subject to copyright protection (a phone book and yellow pages). Thus, they stand for the unremarkable proposition that when individual components of a work are not copyrightable, the copyright protection for a compilation does not change the non-protected status of the components. In *Caffey v. Cook*, 409 F. Supp. 2d 484 (S.D.N.Y. 2006), since the plaintiff did not own the underlying songs, his copyright only protected the compilation of those songs in a particular sequence, but not the songs themselves. Here, the record label Plaintiffs own the individual recordings and the albums / compilations and may sue for infringement of individual recordings.

Robertson's challenge to Plaintiffs' registrations suffers from a further defect: under 17 U.S.C. § 411(b), a certificate of registration is valid "regardless of whether the certificate contains any inaccurate information" unless the inaccurate information was knowingly made and, had the true information been included, the Register of Copyrights would have refused registration. 17 U.S.C. § 411(b). Thus, even if Plaintiffs should have registered their recordings differently, it would be innocent error irrelevant to the validity of those registrations.

### B.     Proof of Ownership Issues, If Any, Can Be Resolved at Trial.

The *MSJ Order* directed that if Plaintiffs' summary judgment materials did not include proof of ownership with respect to any works, Plaintiffs could introduce such evidence at trial. *See MSJ Order*, 821 F. Supp. 2d at 647 n.1. Thus, insofar as Robertson claims that Plaintiffs failed to produce copyright certificates for two of the works he sideloaded,[5] *see* RMSJ at 19, the issue is for trial. Robertson's claim is inaccurate in any event. Plaintiffs produced the

---

[5] Robertson fails to support his assertion that Plaintiffs have not produced proof of ownership with respect to works in their takedown notices. The evidence he cites concerns only the recordings sideloaded by Robertson personally. *See* Sacks Ex. 1.

registration for "Devil in Me" by 22-20s at EMI-R 022100, and proved ownership for "White Christmas" by Frank Sinatra through the contract at EMI-R006609.  *See* Supp. McMullan Ex. A.

### C.    Damages Are Beyond the Scope of This Motion to Reconsider.

Damages were not at issue in the *MSJ Order*, and Robertson's arguments concerning the damages Plaintiffs may ultimately recover are premature and outside the scope of this motion.

Attorneys' fees are available to prevailing parties in infringement actions under the Copyright Act, and statutory damages are available for works registered prior to the infringement.  *See* 17 U.S.C. §§ 504-505.  When damages are determined in this case, the parties will be entitled to present evidence as to the appropriate "range" within which a damages award may be set.  Robertson's attempts to argue about these issues now is premature because the parties have yet to introduce the relevant evidence or argument.  *See* RMSJ at 19-20 (arguing that Plaintiffs may not obtain statutory damages for certain works because Robertson infringed them before registration); *id* at 23 (arguing that some recordings Robertson infringed should count as one work for damages purpose because they are from the same album).  Plaintiffs will have arguments of their own on these issues when they are properly before the Court.[6]

### D.    Plaintiffs' Ownership in Works for Hire Remains Unrefuted.

MP3tunes previously challenged Plaintiffs' ownership in the infringed works registered as works for hire.  Robertson makes the identical argument.  However, there continues to be no genuine dispute that Plaintiffs own the copyrights at issue.  *MSJ Order*, 821 F. Supp. 2d at 647.

---

[6] For instance, Plaintiffs are entitled to show cases where they registered albums, but also issued recordings separately (*i.e.*, through online downloads), thus entitling them to separate statutory damages awards for each.  *See Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 1311771, at *1 (S.D.N.Y. Apr. 4, 2011) ("Plaintiffs are entitled to a statutory damage award for each sound recording that was infringed [by defendants] during the time period that Plaintiffs made that sound recording available as an individual track.").

As a threshold matter, this argument is irrelevant.  The agreements the Label Plaintiffs use to acquire their rights consistently provide two independent bases of ownership: (i) works for hire, and (ii) a separate assignment of the copyright in the works.  *See* Supp. McMullan Decl. ¶ 3, Ex A.[7]  Plaintiffs own the works in the case by assignment irrespective of whether they also own them as works for hire.  That fact alone is dispositive here and is unaddressed by Robertson.

Robertson has presented no evidence that provides a basis for revisiting the Court's determination that there is no material dispute as to Plaintiffs' ownership.  The copyright registration certificates produced by Plaintiffs constitute *prima facie* evidence of ownership. 17 U.S.C. § 410(c); *Boisson v. Banian, Inc.*, 273 F.3d 262, 267 (2d Cir. 2001).  Instead of coming forward with any evidence to support his speculation that Plaintiffs' works might be ineligible for registration as works for hire, he complains about a discovery order by Magistrate Judge Maas, entered over three years ago, that rejected Defendants' attempt to engage in a fishing expedition into Plaintiffs' work-for-hire agreements.  *See* RMSJ at 22.  But Robertson did not appeal the order of which he complains, and his dissatisfaction with Judge Maas' limitation of discovery does not constitute a basis for reconsideration of the *MSJ Order*.  Robertson's suggestion that Plaintiffs would need to rely on their agreements in order to prove the validity of their registrations reverses the burden of proof: Plaintiffs' registrations are *prima facie* evidence of ownership and Robertson has presented nothing to refute them.  *See* RMSJ at 22.

Robertson's argument that the Copyright Act ("the Act") does not permit the commissioning of sound recordings and musical compositions from nonemployees, for which he does not cite a single case, is a red herring for the same reason: Robertson has presented no

---

[7]  The Publishing Plaintiffs' musical compositions at issue here were not registered as works for hire with two exceptions.  Those works were written many years ago by employees of film companies within the scope of their employment, and were subsequently acquired by the Publishing Plaintiffs by written assignment.  *See* Ashby Ex. B.

evidence that any of Plaintiffs' registrations failed to comply with the Act. *See* RSMJ at 20-21. Robertson's argument is also incorrect: the Act permits *any* kind of work to be commissioned from non-employees as either a "contribution to a collective work," or "as a compilation," 17 U.S.C. § 101, and music albums are "compilation[s]" under the Act. *See Bryant*, 603 F.3d at 141.

Finally, Robertson lacks standing as third-party infringer to challenge the ownership of works for hire absent a dispute between Plaintiffs and the creators. *See Pem-American, Inc. v. Sunham Home Fashions, LLC*, 83 F. App'x 369, 371 (2d Cir. 2003); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superseded on other grounds as stated in Weissman v. Freeman*, 868 F.2d 1313, 1322 (2d Cir. 1989); *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, No. 96 Civ. 7973 (HB), WL 603225, at *2 (S.D.N.Y. Sept. 11, 1998).[8]

## IV.   PLAINTIFFS' UNFAIR COMPETITION CLAIM AGAINST ROBERTSON IS FIT FOR TRIAL.

Federal copyright protection only attaches to sound recordings created after Feb. 15, 1972. Liability for infringement of earlier sound recordings arises under state law under the distinct torts of common-law copyright infringement and unfair competition. *See* Second Amended Complaint, Docket No. 121, ¶¶ 109-118; *Capitol Records, Inc. v. Naxos of Am.*, 4 N.Y.3d 540, 559-61 (2005) ("*Naxos II*") (distinguishing common-law copyright from unfair competition). Robertson does not challenge the suitability of the common-law copyright claim for trial,[9]  but makes a cursory request for summary judgment on the unfair competition claim,

---

[8] In none of the cases cited by Robertson is standing even addressed, indicating that the standing of the infringer had not been raised by the plaintiff or considered by the court.

[9] Any DMCA defense to the common-law copyright claim does not extend to Robertson's and other MP3tunes representatives' sideloading, the cover art infringement, or claims arising from Defendants' failure to implement takedown notices.

asserting that he supposedly "does not compete with Plaintiffs" and "received no commercial benefit" from his personal infringement.  RMSJ at 24.  Robertson's motion should be denied.

At the outset, the unfair competition claim is ripe for trial because it is indisputably ready for trial against MP3tunes and the jury can deem Robertson personally liable for *MP3tunes'* unfair competition.  *See* Part VII *infra*.  The unfair competition claim is also fit for trial against Robertson with respect to his personal sideloads.  Robertson's claim that he "received no commercial benefit" from those sideloads, RMSJ at 24, misstates the legal standard, which is whether actions are "*designed for* commercial benefit," not whether a commercial benefit is successfully realized.  *Naxos II*, 4 N.Y.3d at 563-64 (emphasis added).  Despite Robertson's claims of "personal use," RMSJ at 24, the record clearly reveals Robertson's commercial purpose.  He described adding links to the Sideload website as "building value" for his company, Pls. CSUF ¶ 1, and encouraged MP3tunes' executives to sideload popular music files in order to build up sideload.com's music catalog so that it would become a "destination site" to attract users who would pay for an MP3tunes locker.  *See id.*; PSUF ¶¶ 45-46.  A reasonable jury could find that Robertson's infringing sideloading sought this commercial objective.[10]

## V.   ROBERTSON'S REQUEST TO REOPEN DISCOVERY IS UNTIMELY AND UNWARRANTED.

Robertson's attempt to defer resolution of the pending motions for reconsideration and to re-open discovery under Rule 56(d) is untimely and improper.  *See* RMSJ at 24.  Discovery in

---

[10] Robertson's claim that "he *personally* does not compete with Plaintiffs," RMSJ at 24 (emphasis added), is irrelevant for the same reason: Robertson's sideloading advanced MP3tunes' objective of competing in the marketplace for online music, where there is a "genuine dispute as to whether MP3tunes competes with EMI."  *MSJ Order*, 821 F. Supp. 2d at 650.

this case closed almost three years ago, on January 29, 2010.[11]  Scheduling Order, Dkt. No. 136.

Robertson's request violates the rules of this Court and is without merit.

Rule 56(d) permits summary judgment to be deferred when a party moves for summary

judgment "before discovery is concluded" – not, as here, after discovery is closed.  *See Clarke v.*

*JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778, at *23

(S.D.N.Y. Mar. 26, 2010) (quotation marks omitted) (denying a Rule 56([d]) motion made only

four months after the close of discovery).  Simply put, "[t]he relief that may be afforded under

Rule 56([d]) is not available when summary judgment motions are made after the close of

discovery."  *Espada v. Schneider*, 522 F. Supp. 2d 544, 549 (S.D.N.Y. 2007).  If Robertson truly

believed that he needed further discovery or that Plaintiffs' production contained omissions, he

was obligated to move to extend or reopen discovery at that time.  *See Rivera-Torres v. Rey-*

*Hernandez*, 502 F.3d 7, 11 (1st Cir. 2007) (defendants' "abject failure to use the available means

of discovery during the generous discovery period" justified a denial of Rule 56([d]) motion).

Not only is Rule 56(d) relief unavailable when discovery is over, but Defendants' decision not to

seek this relief as part of the prior summary judgment motions waived any right to do so at a

later date.[12]  As discussed in Part II.B *supra*, the scope of Plaintiffs' discovery obligations on this

topic was heavily litigated before Judge Maas.  Robertson may not upset long-settled decisions

he failed to challenge at the time.  Moreover, his attempts to blame Plaintiffs for his failure to

pursue discovery remedies mischaracterizes the relevant history.  *See* Bart Opp. Decl. ¶ 9.

Robertson's request also lacks any merit.  The Court may "reject a [Rule 56(d)] request

for discovery ... if it deems the request to be based on speculation as to what potentially could be

---

[11] Indeed, Magistrate Judge Maas denied the Plaintiffs' request to re-open discovery on a narrow issue on July 19, 2010.  *See* Discovery Order, Dkt. No. 178.

[12] Robertson's attempt to disguise a motion to reopen discovery as a Rule 56(d) motion further fails to comply with this Court's individual rules requiring pre-motion conferences.

discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *see also*

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (same).

As described in Part II.A.3 *supra*, Robertson's memorandum exaggerates the documents he

relies on, and thus fails to raise a nonspeculative claim that further discovery would be fruitful.

## VI.   THE COURT PROPERLY DENIED SUMMARY JUDGMENT TO MP3TUNES ON PLAINTIFFS' COVER ART INFRINGEMENT CLAIM.

It is undisputed that Defendants' system copied Plaintiffs' copyrighted cover art from

Amazon.com, Inc.'s ("Amazon") servers and displayed it to MP3tunes' users when they played

back the corresponding sound recordings. *MSJ Order*, 821 F. Supp. 2d at 650; PSUF ¶ 66.

Neither the Second Circuit's decision in *Viacom*, nor the other challenges raised by Robertson,

merit reconsidering the *MSJ Order*'s decision that Defendants must stand trial on whether this

use of Plaintiffs' works was beyond the scope of any license from Amazon, and thus

infringing.[13]

### A.   Defendants' Infringing Reproduction and Display of Plaintiffs' Cover Art is Not "Storage" Under *Viacom*.

Robertson's argument that MP3tunes' infringement of Plaintiffs' copyrights in cover art

constitutes "storage at the direction of a user" qualifying for protection under the DMCA

§ 512(c) safe harbor is frivolous.  RMSJ at 26-28.  The critical and undisputed fact here is that

MP3tunes' users did not "direct" the "storage" of the infringing cover art on MP3tunes' system

within the meaning of 17 U.S.C. § 512(c).  Rather, MP3tunes set up its system to unlawfully

reproduce and display copyrighted images that MP3tunes' users had *not* stored on the system.

Robertson's argument stretches the meaning of the word "storage" far beyond its breaking point.

---

[13] The *MSJ Order* references "contradictory proof on MP3tunes['] use and storage of [the] cover art and the direction of traffic to Amazon.com."  821 F. Supp. 2d at 650.  However, Defendants' evidence did not contradict the pertinent fact that MP3tunes' system copied the relevant cover art from Amazon's servers to Defendants' servers.  *See* Defs. CSUF ¶ 37 (disputing Plaintiffs' ownership of cover art but not contesting that Defendants reproduced files on their servers).

*Viacom* held that a service did not lose its safe harbor for "storage" of videos uploaded by users merely because it helped users access those stored videos by changing them to a more accessible file format and providing links helping other users to locate them.  676 F.3d at 39. There is no sensible reading of either the DMCA or of *Viacom* under which MP3tunes' copying of cover art from Amazon's servers to MP3tunes' servers and displaying it to subscribers could conceivably be described as "storage at the direction of a user."  17 U.S.C. § 512(c).  It bears two critical differences with the functions considered by the Second Circuit.

First, the software functions *Viacom* deemed within the safe harbor all involved the further copying or display, by YouTube, *of the work uploaded by YouTube's users*.  In contrast, MP3tunes' copying of cover art did not involve manipulating the files MP3tunes' users stored on the system (the music files) but rather the copying and display of a *different* file (a cover art image), embodying a *different* copyrighted work, that the user did *not* upload to the service. Thus, MP3tunes' copying of images from Amazon does not involve "material that resides on a system" "at the direction of a user," 17 U.S.C. § 512(c), because the image being copied and displayed by MP3tunes is not the sound recording the user stored.

Second, the purpose of the service provider's actions in *Viacom* was "facilitating access to user-stored material."  676 F.3d at 39 (quotation marks omitted).  Once a user uploaded a video to the service, YouTube took steps to help other users locate and watch it.  But there is no sense in which MP3tunes' copying of images from third-party servers can be said to be "facilitating access" to music MP3tunes' users had already stored on the system.  As Robertson admits, the purpose of this function was rather to "enhance user experience."  RMSJ at 27.

*Viacom* most definitely did *not* hold that *any* software function that infringes copyrighted works is immunized by § 512(c) so long as it happens "automatically," "enhance[s] user

experience," and is initiated by a user's uploading of an infringing file, as Robertson asserts.  *See* RMSJ at 27-28.  Robertson's reading would distort the safe harbor beyond recognition and unmoor it from the statutory text.  Under Robertson's reading, for instance, MP3tunes could have set up its system to respond to a user's uploading of a music file by automatically also copying into the user's locker all other recordings from the same album, or every recording by the same artist.  That is not what the DMCA permits or what *Viacom* holds.

**B.  Defendants' Other Challenges to the Court's Ruling on Cover Art are Untimely and Meritless.**

1.  Robertson's Additional Challenges to the Court's Ruling on Cover Art Are Untimely.

Robertson's further arguments with respect to cover art infringement fall outside the scope of the reconsideration motions authorized by the Court and are thus untimely under Local Civil Rule 6.3, which limits motions for reconsideration to fourteen days from the order complained of.  As explained in Part I.A.1 *supra*, the Court's grant of leave to Robertson to move for reconsideration with respect to his personal liability does not give him license to re-litigate the entire case.  Robertson's arguments that MP3tunes had a "license" to use Plaintiffs' cover art, *see* RMSJ at 28-29, and that Plaintiffs lack copyrights in their cover art, *id*. at 30-32, are not only arguments about *MP3tunes*' liability – a point even Robertson himself concedes, *see* RMSJ at 25 n.1 – but are effectively identical to those already made by MP3tunes and should be rejected as untimely and beyond the scope of this motion.  *See* Defs. Opp. to Pls. MSJ at 31-33.

2.  MP3tunes' Reproduction and Display of Plaintiffs' Cover Art Outside the Scope of its Amazon License Is Copyright Infringement.

Robertson's claim that MP3tunes' use of Plaintiffs' cover art was "licensed," RMSJ at 28, is meritless.  MP3tunes' copying and display of Plaintiffs' cover art fell outside the scope of any licenses Defendants obtained from Amazon and thus infringed Plaintiffs' exclusive rights.

Amazon's license for its application programming interface ("API"), through which MP3tunes obtained the cover art in question, requires licensees to use content provided by Amazon "*only … to send end users and sales to the Amazon Site,*" and requires that "you *will not store* or cache Product Advertising Content consisting of an image…."  Tarpey Ex. C, at 3 & 4 (emphasis added).  MP3tunes exceeded the limited scope of that permission.  It stored cover art on its servers and used the art to "enhance the user's experience" with music they already owned, not to send potential customers to Amazon.  Tarpey Decl. ¶ 5.  In addition, the license for the "Associate" program, in which MP3tunes also participated, granted a "limited license … *solely for the purpose of identifying your site as a Program Participant and to assist in generating Product sales.*"  Tarpey Ex. B, at 9 (emphasis added).  MP3tunes' use exceeded this limitation too.  Tarpey Decl. ¶ 5.

Robertson has not shown that MP3tunes acted within the scope of this license.  First, while he claims that the license gave MP3tunes the right to "'copy and display' artwork that is at issue in this litigation," MR Decl. ¶ 31, MP3tunes obtained Plaintiffs' cover art through the API license, not the Associates Program Operating Agreement, and the API license clearly forbids copying of the images.  *See* PSUF ¶¶ 31-33; Tarpey Ex. C at 3.  Further, his claim that MP3tunes has directed sales to Amazon, *see* MR Decl. ¶ 31, is missing a critical step: it does not establish that MP3tunes' *use of the images for recordings the user already owned* is what directed that traffic, much less that the images were used "only" or "solely" for that purpose, as required by both licenses.  Tarpey Ex. C, at 2 (emphasis added).

Using copyrighted works in a manner not authorized by a license is different from using them in a manner authorized but then failing comply to with a covenant with the licensor.  *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).  The former is

copyright infringement, the latter mere breach of contract. *Id.*; *see generally* Raymond T.

Nimmer & Jeff Dodd, Modern Licensing Law § 6.5, Nature of Scope Provisions; Covenants

Compared (2012). *MDY Industries*, relied upon by Robertson, involved breach of a covenant

(the terms of use for a video game), not of a scope restriction. *MDY Indus., LLC*, 629 F. 3d at

939-42. The terms of the Amazon licenses that Defendants breached are, on their face, scope

restrictions and not covenants. *See* Tarpey Ex. C at 4 (license granted is "*solely* for the limited

purposes of advertising Products on, and directing end users to, the Amazon site" and "*solely* in

accordance with the Specifications and this License Agreement"); Tarpey Ex. B at 9 (granting

"limited license … *solely* for the purpose of identifying your site as a Program Participant and to

assist in generating Product sales") (emphasis added).[14] MP3tunes' copying and displaying of

Plaintiffs' cover art outside the scope of its license was thus infringement, not mere breach of

contract.[15]

### 3.   Plaintiffs Have Proved Their Copyrights in the Relevant Cover Art.

Finally, Plaintiffs have proved their ownership of the infringed cover art images.

Plaintiffs registered the cover art images on the same forms as their music albums. *See* Bart Ex.

121 (illustrative registrations). The Copyright office expressly permits use of the form SR to

"include[] artwork or photographs" in the registration, and it is entirely proper to use the same

form to register multiple, different kinds of works. *See* Bart Ex. 119 (U.S. Copyright Office,

Copyright Registration for Sound Recordings, Copyright Circular # 56, at 3 (2004)); *see also*

*Greenwich Film Productions, S.A. v. DRG Records, Inc.*, 833 F. Supp. 248, 252 (S.D.N.Y.

---

[14] Both licenses contain automatic termination clauses in the event the licensing restrictions are
not followed. *See* Tarpey Exs. C, at 4, & A, at 14. These clauses render irrelevant Robertson's
claim that Amazon has not notified MP3tunes of a breach. *See* MR Decl. ¶ 32.

[15] Robertson's argument that Plaintiffs lack standing because they are not third-party
beneficiaries to MP3tunes' license with Amazon is predicated on the same conflation of
covenants with scope provisions and is therefore off-base. *See* RMSJ at 29.

1993).  Plaintiffs' registrations identify the works and list an author.  They thus satisfy the requirements of the statute.  *See* Bart Ex. 121.  Even if Plaintiffs should have registered their cover art images differently, Section 411(b) of the Act, discussed in Part III.A *supra*, would render the omission innocent error irrelevant to the effectiveness of the registrations.

The only case Robertson cites involving album cover art, *Jefferson Airplane v. Berkeley Systems Inc.*, 886 F. Supp. 713 (N.D. Cal. 1994), is inapposite.  In *Jefferson Airplane*, the plaintiffs had not listed cover art on the form by which they registered their sound recordings but still argued that their sound recording registration extended to the cover art.  886 F. Supp. at 717.  Plaintiffs, by contrast, did list cover art images on their applications.  *See* Bart Ex. 121.[16]

The other cases Robertson cites involve a completely different context: stock photography companies that register databases containing thousands of images, generally owned by third-party artists, without identifying those artists or linking them to their works.  *See Bean v. John Wiley & Sons, Inc.*, No. CV 11-8028, 2011 WL 3348959, at *3 (D. Ariz. Aug. 3, 2011) (citing *Bean v. Houghton Mifflin Harcourt Pub. Co.*, No. CV10-8034-PCT-DCG, 2010 WL 3168624, at *3-4 (D. Ariz. 2010)), and *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F. Supp. 2d 84, 87-88, 93-95 (S.D.N.Y. 2010), *on reconsideration in part*, No. 09 Civ. 2669, 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010).  In those cases, the courts held that registering the databases did not register each individual image.  *Muench*, 712 F. Supp. 2d at 94-95; *Bean*, 2011 WL 3348959, at *3.  Those two cases have no application here because Plaintiffs own both the cover art and the sound recordings.[17]  As discussed in Part III.A *supra*,

---

[16] *Jefferson Airline* was also decided under 1970s-era Copyright Office interpretations of the Act, which, unlike the Office's current Circular #56, required separate registration for cover art.

[17] They also do not represent the majority rule even in the context of image databases.  *See, e.g., Metro. Reg'l Infor. Sys., Inc. v. Am. Home Realty Network, Inc.*, No. 12-CV-00954-AW, __ F. Supp. 2d __, 2012 WL 3711513 (D. Md. Aug 24, 2012) (registration of database permits suit for

Second Circuit precedent holds that when "all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work." *Morris*, 283 F.3d at 505; *Elsevier B.V.*, 784 F. Supp. 2d at 294-95 (same).

## VII. QUESTIONS OF FACT PRECLUDE AN AWARD OF SUMMARY JUDGMENT TO ROBERTSON RELATING TO INFRINGING CONDUCT BY MP3TUNES.

Finally, the jury could reasonably find Robertson personally liable for the copyright infringement committed by MP3tunes. As the dominant force in the company, he personally directed, participated in, controlled, and supervised the actions that formed the basis for the corporation's liability. Not only do those actions give rise to Robertson's joint liability with MP3tunes, no reasonable jury could find otherwise. In his motion, Robertson misapplies a prior holding of this Court to assert that Plaintiffs are "collaterally estopped" from contending that he is vicariously liable for the infringement by the company, RMSJ at 33-34. However, Robertson ignores the fact that the personal liability of corporate officers need not derive from vicarious liability, but can also arise from personal involvement in the infringing acts. Moreover, Robertson relies on the Court's interpretation of the statutory standards governing the DMCA safe harbor – a wholly distinct issue from the common-law standards for vicarious liability. Indeed, the *MSJ Order* expressly declined to reach a holding on MP3tunes's vicarious liability. On both independent bases on which a corporate officer can be held personally liable for the infringing acts of a corporation, Robertson's personal liability must be decided by the jury.

### A. Robertson is Liable for Personally Directing and Participating in the Actions of MP3tunes Giving Rise to Liability.

In both *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ("*Lime Group*") and *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y.

---

infringement of individual image); *Masterfile Corp. v. Gale*, No. 2:09-CV-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011) (same).

2009) ("*Usenet.com*"), the Courts in this District granted summary judgment against corporate officers who dominated the affairs of corporations that the court had found liable for online, secondary infringement of copyrights in sound recordings.  Robertson's behavior and control is essentially identical to if not more dominant than that of the officers held liable in those cases. Thus, he is not entitled to summary judgment on his joint liability for the acts of infringement.

It is "well settled in this circuit that '[a]ll persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.'"  *Usenet.com*, 633 F. Supp. 2d at 158 (quoting *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)).  In the case of corporate defendants who are secondarily liable for the infringing actions of their users, a corporate officer can be liable for directing and participating in the actions giving rise to the corporation's secondary liability as well as in direct acts of infringement; "[t]hese principles apply equally to claims of direct infringement and claims based on secondary liability." *Lime Group*, 784 F. Supp. 2d at 438 (quoting *Capital Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 284-85 (E.D.N.Y. 2002)).  Critically, such liability for corporate officers involves their own direction of or participation in corporate acts giving rise to liability and is thus distinct from vicarious liability, which contains no personal involvement element.  *See Stumm v. Drive Entm't Inc.*, No. 00 Civ. 4676 (DC), 2002 WL 5589, at *5 (S.D.N.Y. Jan. 2, 2002) ("[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, *or* who personally participates in that activity is personally liable for the infringement.") (quotation marks omitted) (emphasis added).

This district has not hesitated to grant summary judgment against corporate officers for infringement through online properties operated by corporations the officers controlled.

*Usenet.com* found such personal liability where the director and sole shareholder had a "ubiquitous role in the [defendant corporation's] activities" and "was personally and intimately involved in many of the activities that form[ed] the basis of [d]efendants' copyright liability," such as setting "overall strategic vision," directing marketing materials, and taking an "active role in … technical operations."  633 F. Supp. 2d at 158-59 (internal quotation marks omitted). *Lime Group* found such liability where the individual defendant, a corporate officer with an indirect ownership stake through a family partnership, "directed and approved many aspects of [the corporate defendant's] design and development," "conceived" of the business plan for the corporate defendant, oversaw various technical projects, and "made decisions regarding [the corporate defendant's] public relations and advertising efforts."  784 F. Supp. 2d at 438.

Robertson is strikingly similar to the corporate officials held liable in *Usenet.com* and *Lime Group*.  As detailed in Plaintiffs' opposition to Robertson's Motion for Reconsideration (Personal Jurisdiction), Robertson exercised complete dominion over MP3tunes as a corporate entity, directing virtually every decision.  *See* Pls. Opp. to Robertson PJ Mot. at 14-19.  Indeed, he was intimately involved in the decisions leading to the very infringement for which MP3tunes remains liable or potentially liable under the *MSJ Order*: infringement by individual executives and employees to "seed" sideload.com with desirable content, the program to copy cover art and load it to users' lockers, and the handling of takedown notices.  *See id.*; Pls. CSUF ¶¶ 11-13.

If the evidence in *Usenet.com* and *Lime Group* was sufficient to hold the corporate officers liable on summary judgment, then the highly similar evidence of Robertson's complete domination of MP3tunes, and his personal participation in and direction of the company's actions giving rise to both direct and secondary liability, at least present a jury question here.

27

**B.      There Are Questions of Fact as to Robertson's Liability Under a Vicarious Standard.**

Finally, there is a question for the jury regarding Robertson's liability for the acts of MP3tunes under the traditional vicarious liability standard.  Robertson both controlled and stood to benefit from the infringing activities of both MP3tunes and its users.  Nothing in the *MSJ Order* would preclude the jury from finding Robertson vicariously liable.

1.      Robertson Supervised and Stood to Benefit From the Acts Giving Rise to Liability.

A defendant is "liable for vicarious copyright infringement by 'profiting from direct infringement while declining to exercise a right to stop or limit it.'"  *Usenet.com*, 633 F. Supp. 2d at 156 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  Given Robertson's domination of and involvement in all aspects of MP3tunes' affairs, a jury could reasonably find that he had the ability to stop both the directly and secondarily infringing acts of the company, such as the sideloads by its employees, its copying of cover art without authorization, and its failure to respond properly to takedown notices.  *See supra* Part VII.A.  The jury could likewise find that he had the ability to "stop or limit" the infringement by MP3tunes' users themselves.  Under the common-law standard for the "control" element of vicarious liability, "the ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."  *Usenet.com*, 633 F. Supp. 2d at 157 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)).  The jury could conclude both that MP3tunes had many measures available to it to limit infringing users and files on the system, *see* Pls. CSUF ¶ 1, and that Robertson's control over the company granted him the ability, never exercised, to cause the company to use those measures.

The jury could also find the financial benefit standard met.  Courts applying the common-law vicarious standard have found this element satisfied even where a defendant realizes no

28

financial revenue at all, so long as "the defendant has economic incentives for tolerating unlawful behavior." *A&M Records, Inc. v, Napster, Inc.*, 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000), *aff'd in relevant part*, *Napster*, 239 F.3d 1004 (9th Cir. 2001).  Such economic incentives include cases where infringement "enhance[s] the attractiveness of a venue" to consumers, thus standing to deliver potential revenue in the future as more customers are attracted to a website. *Napster*, 239 F.3d at 1023 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)).  A jury could reasonably conclude that Robertson, through his beneficial interest in the SKL trust, which owned the majority of MP3tunes, stood to benefit from a lax approach to copyright enforcement that would attract subscribers to MP3tunes' websites.[18] Under the common-law standard, the jury is entitled to make those determinations at trial.

### 2.   The *MSJ Order*'s DMCA Holdings Do Not Preclude Jury Consideration of Robertson's Personal Liability for Vicarious Infringement.

Robertson's claim that the *MSJ Order* has already determined that he is not vicariously liable is mistaken.  *See* RMSJ at 33-34.  While the *MSJ Order* discussed the "control" and "financial benefit" elements of the DMCA defense, that discussion did not apply to the infringements for which Robertson is potentially liable.  Moreover, Robertson wrongly conflates this DMCA standard with the distinct common-law standard for vicarious liability.

The *MSJ Order* did discuss the issues of control and financial benefit, but did so in the context of infringements by the site's users.  821 F. Supp. 2d at 645-46.  In contrast, potential personal liability for Robertson under the *MSJ Order* concerns the infringement of cover art, direct infringement by MP3tunes employees, and MP3tunes' contributory infringement for

---

[18] Robertson points to no authority to support his claim that his financial stake in the company as the beneficiary of a trust is any different from direct ownership for purposes of vicarious liability.  To the contrary, the individual defendant in *Lime Group*, who was held personally liable on summary judgment, held only an indirect ownership interest in the corporate defendant through a family partnership.  *See Lime Group*, 784 F. Supp. 2d at 438 & n.36.

failing to remove infringing copies of Plaintiffs' works from users' lockers even after receiving formal takedown notices.  *See* 821 F. Supp. 2d 649-50.  The *MSJ Order*'s discussion of the DMCA "control and financial benefit" standard has no application to these first two categories of infringement, which concern direct infringements by MP3tunes itself, not "storage" by users (Section 512(c)) or linking (Section 512(d)) covered by the safe harbor.  And with respect to the third category, the Court expressly did "not reach EMI's claim of vicarious infringement."  821 F. Supp. 2d at 649 n.3.  This alone disposes of Robertson's "collateral estoppel" defense.

The infringements by Defendants' users more generally may be in issue in this case if the Court grants Plaintiffs' motion for reconsideration.  Even with respect to such infringements, however, the *MSJ Order* would not preclude the jury from finding Robertson vicariously liable. The DMCA standard addressed by the *MSJ Order* is not the same as the common law standard. The DMCA, critically, requires "something more" in addition to the ability to block infringing files and users from the site, whereas under the common-law liability standard, that ability is sufficient.  *Viacom*, 676 F.3d at 38; *Usenet.com*, 633 F. Supp. 2d at 157.  And although the Court determined in the *MSJ Order* that MP3tunes' financial benefit from its users' infringement was too "attenuated" to constitute "direct" financial benefit under the DMCA, 821 F. Supp. 2d at 645, as discussed *supra*, courts applying the common-law standard have applied a much looser standard where an economic incentive in potential future financial benefits is sufficient.  *See Napster, Inc.*, 114 F. Supp. 2d at 921.  A reasonable jury could find this standard satisfied here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Robertson's motion for reconsideration with respect to his personal liability, and Robertson's motion for summary judgment with respect to his vicarious liability, be denied.

DATED:  December 10, 2012

Respectfully submitted,

By: *[signature: Andrew H. Bart]*

Andrew H. Bart
Joseph P. Fishman
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690
fax (212) 891-1699

*-and-*

Steven B. Fabrizio
Luke C. Platzer
J. Douglas Wilson
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066

*Attorneys for Plaintiffs Capitol Records, LLC,
Caroline Records, Inc, EMI Christian Music
Group Inc., Priority Records LLC, Virgin Records
America, Inc.*


By: /s/ Frank P. Scibilia_____
Frank P. Scibilia
Jacob B. Radcliff
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806


*Attorneys for the Beechwood Music Corp.,
Colgems-EMI Music Inc., EMI April Music Inc.,
EMI Blackwood Music, EMI Full Feel Music, EMI
Golden Torch Music Corp., EMI Longitude Music,
EMI Virgin Music, Inc., EMI Virgin Songs, Inc.,
EMI Al Gallico Music Corp., EMI Algee Music
Corp., EMI Feist Catalog, Inc., EMI Gold Horizon
Corp., EMI Grove Park Music, Inc. EMI Hastings*

*Catalog, Inc., EMI Mills Music, Inc., EMI Miller
Catalog, Inc., EMI Robbins Catalog, Inc., EMI U
Catalog, Inc., EMI Unart Catalog, Inc., Jobete
Music Co., Inc., Screen Gems-EMI Music, Inc.,
Stone Agate Music, and Stone Diamond Music*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served by electronic mail a copy of Plaintiffs' Memorandum of Law in Opposition to Robertson's Motion for Reconsider (Individual and Personal Liability) and for Summary Judgment (Vicarious Liability), Plaintiffs' Memorandum of Law in Opposition to Robertson's Motion for Reconsideration (Personal Jurisdiction), along with the accompanying Declaration of Andrew H. Bart and the exhibits attached thereto, the Declaration of Matthew Rothman, Plaintiffs' Evidentiary Objections to Portion of Declarations Submitted in Support of Defendant Michael Robertson's Motions for Reconsideration and for Summary Judgment, and Local Civil Rule 56.1 Counter-Statement of Facts (Vicarious Liability) on this 10th day of December, 2012 to the following persons:

> Gerald H. Davis (via email and overnight delivery)
> Chapter 7 Trustee
> 500 W. Harbor Dr.
> San Diego, CA 92101
> davisatty@aol.com
>
> Richard C. Norton (via email and overnight delivery)
> Norton Moore & Adams LLP
> 525 B Street, Suite 1500
> San Diego, CA 92101
> richnor@aol.com
>
> Christopher Celentino
> Foley & Lardner LLP
> 402 West Broadway, Suite 2100
> San Diego, CA 92101
> ccelentino@foley.com
>
> Ira S. Sacks
> Mark S. Lafayette
> Akerman Senterfitt LLP
> 335 Madison Avenue, 26th Floor
> New York, NY 10017
> ira.sacks@akerman.com
> mark.lafayette@akerman.com
>
> */s/ Luke C. Platzer*
> Luke C. Platzer