USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
      :
CAPITOL RECORDS, INC. et al.,
      :
                 Plaintiffs,     :    07 Civ. 9931 (WHP)
      :
    -against-             :    MEMORANDUM AND ORDER
      :
MP3TUNES, LLC et al.,
      :
                 Defendants.
      :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs EMI, Inc. and fourteen record companies and music publishers (collectively, "EMI") and Defendant Michael Robertson, the CEO of MP3tunes, LLC, a defunct locker storage service for MP3 music files, seek reconsideration of this Court's Memorandum and Order, dated October 25, 2011 (the "October 2011 Order"), Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627 (S.D.N.Y. 2011). These motions spring from the Second Circuit's decision in Viacom International, Inc. v. YouTube, Inc., 676 F.3d 19 (2d Cir. 2012). Robertson also seeks reconsideration of that portion of the October 2011 Order holding him directly liable for copyright infringement of certain songs and this Court's July 20, 2012 Order finding personal jurisdiction over him. Finally, Robertson moves for summary judgment on the issue of his vicarious liability for MP3tunes' copyright infringement. For the following reasons, EMI's motion is granted in part and denied in part and Robertson's motions are granted in part and denied in part.

## DISCUSSION

A motion for reconsideration under Local Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995). It is not an invitation to re-litigate issues this Court has already decided. Reconsideration requires "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). As such, reconsideration is an "extraordinary remedy." Hinds Cnty., Miss. v. Wachovia Bank N.A., 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010).

Where there is an arguable "intervening change of controlling law," the Court should consider whether the change justifies a departure from the "law of the case" and revision of a previous decision. Pescatore v. Pan Am. World Airways, 97 F.3d 1, 6 (2d Cir. 1996). "Cogent" or "compelling" reasons must exist to justify such action. See Doe v. NYC Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983). "It is not enough . . . that [a party] could now make a more persuasive argument" under more recent case law. Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981). A court must instead have a "clear conviction of error with respect to a point of law on which its previous decision was predicated." Fogel, 668 F.2d at 109 (internal citations omitted).

I. Reconsideration in View of Viacom International v. YouTube

The October 2011 Order relied on Judge Stanton's decision in Viacom, 718 F. Supp. 2d 514 (S.D.N.Y. 2010). Because portions of that decision were later reversed by the Second Circuit, the parties urge this Court to reconsider several of its rulings.

2

A.  <u>Willful Blindness</u>

First, Plaintiffs argue that <u>Viacom</u> directs district courts to engage in explicit fact-finding on the issue of willful blindness before determining that a party is entitled to the protections of the Digital Millennium Copyright Act ("DMCA") safe harbors.  In <u>Viacom</u>, the Second Circuit considered "the application of the common law willful blindness doctrine in the DMCA context" as an issue of first impression and held that "the willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA." 676 F.3d at 34-35.  Thus, where a service provider is "aware of a high probability of the fact [of infringement] and consciously avoid[s] confirming that fact," that provider is willfully blind to infringement and may lose the protections of the safe harbor. <u>Viacom</u>, 676 F.3d at 35.

<u>Viacom</u> offers little guidance on how to reconcile the tension between the doctrine of willful blindness and the DMCA's explicit repudiation of any affirmative duty on the part of service providers to monitor user content.  <u>See</u> 17 U.S.C. § 512(m) (safe harbor protection shall not be conditioned on "a service provider monitoring its service or affirmatively seeking facts indicating infringing activity").  While <u>Viacom</u> hints in a footnote that knowledge of general infringing activity would likely not constitute willful blindness, <u>see</u> <u>Tiffany (NJ) Inc. v. eBay Inc.</u>, 600 F.3d 93, 107 (2d Cir. 2010), it eschewed any bright line rules in favor of "explicit fact-finding" on the issue.  676 F.3d at 35 n.10.

Defendants argue that this Court already considered the issue of willful blindness when it found that MP3tunes "does not purposefully blind itself to its users' identities and activities." <u>MP3tunes</u>, 821 F. Supp. 2d at 638.  But the context of that ruling was an evaluation of the sufficiency of MP3tunes' repeat infringer policy, which every service provider claiming DMCA safe harbor protection must implement.  Such a finding does not "explicitly" address the

3

issue of whether MP3tunes "engaged in a deliberate effort to avoid guilty knowledge" regarding the sideloaded content itself, as opposed to tracking its users' activities. Viacom, 676 F.3d at 35 (quoting In re Aimster Copyright Litig., 334 F.3d 643, 650 (7th Cir. 2003)). MP3tunes' ability to identify repeat infringers does not mean that it never looked the other way when confronted by a high probability that certain conduct was infringing. As Judge Stanton noted on remand, "[a]pplying the doctrine [of willful blindness] requires attention to its scope," and "[i]n imputing knowledge of the willfully disregarded fact, one must not impute more knowledge than the fact conveyed." Viacom Int'l, Inc. v. YouTube, Inc., --- F.Supp.2d ----, No. 07 Civ. 2103 (LLS), 2013 WL 1689071, at * 4 (S.D.N.Y. April 18, 2013). But "[u]nder appropriate circumstances the imputed knowledge of the willfully-avoided fact may impose a duty to make further inquiries that a reasonable person would make[.]" Viacom, 2013 WL 1689071, at * 4.

        This Court finds that a jury could reasonably interpret several documents in the record as imposing a duty to make further inquiries into "specific and identifiable" instances of possible infringement. Viacom, 676 F.3d at 32. For example, an email received by MP3tunes in April 2007 gives a specific blog title and states, "[a]lthough I don't like ratting myself out, everything I post is in clear violation of the DMCA . . . . please remove any MP3s that are linked to that site." (Declaration of Andrew Bart ("Bart Decl."), dated Oct. 29, 2010 Ex. 70.) Another email from November 2007 states, "if you search for 'the clash I fought the law' . . . you will get 5 results . . . 2 of which point to the website www.officerjellynutz.com[.] This website blatantly acknowledges that it contains infringing MP3's." (Bart Decl. Ex. 92.) In a third email, an MP3tunes employee acknowledges that while "it's not clear if [content from a user's site] is all copyright [sic] material . . . it probably is though." (Bart Decl. Ex. 65.) Because Viacom emphasizes the importance of explicit fact-finding in establishing willful blindness, this Court

vacates that portion of the October 2011 Order granting summary judgment to Defendants on the issue of contributory infringement liability for those songs not subject to DMCA-compliant takedown notices and finds that factual issues preclude summary judgment.

    B.  "Red Flag" Knowledge of Infringement

    Service providers can lose the protection of the DMCA safe harbors if they have actual or apparent (also called "red flag") knowledge of infringing content. See 17 U.S.C. §§ 512(c)(1)(A) and (d)(1). In the October 2011 Order, this Court found that Plaintiffs failed to show either actual or red flag knowledge of infringement for songs that were not the subject of DMCA-compliant takedown notices. MP3tunes, 821 F. Supp. 2d at 645. Plaintiffs now argue that Viacom establishes that red flag knowledge can be demonstrated by evidence other than formal takedown notices, such as internal and third-party communications regarding the content at issue.

    In Viacom, the Second Circuit affirmed that DMCA safe harbor protections can be lost only where a provider has actual or apparent knowledge of "specific and identifiable instances" of infringement. 676 F.3d at 32. In doing so, Judge Cabranes rejected Viacom's argument that red flag knowledge could be shown through a "general awareness that infringement may be occurring." Viacom, 676 F.3d at 35. Instead, Viacom establishes an exquisite "subjective/objective" standard for distinguishing between "actual" and "red flag" knowledge: "the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person." Viacom, 676 F.3d at 31. But both actual and red flag knowledge "apply only to specific instances of infringement." Viacom, 676 F.3d at 31.

While Viacom found Judge Stanton's decision and others—including this Court's October 2011 Order—to be "generally in accord" with its view of the specificity requirement, the Second Circuit nevertheless reversed Judge Stanton's grant of summary judgment to the defendant service providers as premature. 676 F.3d at 32. Because YouTube executives decided not to remove specific content they acknowledged among themselves was almost certainly infringing, the Second Circuit was "persuaded that the plaintiffs may have raised a material issue of fact regarding YouTube's knowledge or awareness of specific instances of infringement . . . . especially in the absence of any detailed examination of the extensive record on summary judgment[.]" 676 F.3d at 34. EMI contends that it introduced similar evidence sufficient to create a material issue of fact regarding Defendants' red flag knowledge of infringement.

Since something less than a formal takedown notice may now establish red flag knowledge and EMI offers communications acknowledging likely infringement, the issue of Defendants' red flag knowledge cannot be resolved on summary judgment. This Court reaches this conclusion reluctantly, given MP3tunes' salutary practice of sending instructions regarding DMCA-compliant takedown notices to third parties reporting possible infringement and the DMCA's disavowal of any duty on the part of service providers to monitor user content. See UMG Recordings, Inc. v. Veoh Networks, Inc., 665 F. Supp. 2d 1099, 1108 (C.D. Cal. 2009) ("[I]f investigation of facts and circumstances is required to identify material as infringing, then those facts and circumstances are not red flags.") (internal citations omitted); Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1114 (9th Cir. 2007) ("We do not place the burden of determining whether [materials] are actually illegal on a service provider."). Accordingly, this Court withdraws its prior grant of summary judgment to Defendants on their lack of red flag knowledge and instead concludes that there are material issues of fact that warrant trial.

### C. Inducement of Copyright Infringement as a Distinct Cause of Action

Finally, EMI contends the Viacom ruling confirmed that inducement of copyright infringement is a cause of action separate and distinct from contributory copyright infringement. EMI relies on a footnote in which the Second Circuit cited Metro-Goldwyn-Mayer Studios Inc. v. Grokster for the proposition that "[d]octrines of secondary copyright infringement include contributory, vicarious, and inducement liability." Viacom, 676 F.3d at 29 n.5 (citing 545 U.S. 913, 930 (2005)). On October 16, 2009, this Court dismissed EMI's stand-alone inducement claim as duplicative of its contributory copyright infringement claim, also relying on Grokster. Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), 2009 WL 3364036, at *4 (S.D.N.Y. Oct. 16, 2009). EMI attributes this Court's reading of Grokster to legal uncertainty in 2009 about whether inducement liability could be a stand-alone cause of action. See, e.g., Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 150 n.17 (S.D.N.Y. 2009) ("it is worth noting that several courts recently have expressed doubt as to whether inducement of infringement states a separate claim for relief, or rather whether it is a species of contributory infringement.").

In view of subsequent decisions including Viacom, EMI asks this Court to revive its dismissed inducement claim as a separate cause of action. Defendants contend that the Viacom footnote does not announce an intervening change in law as to whether inducement liability is a stand-alone cause of action. But Viacom's reading of Grokster nevertheless warrants reconsideration of the dismissal of EMI's claim. See Virgin Atl. Airways, 956 F.2d at 1255 (a court may reconsider its own decisions prior to final judgment).

According to EMI, an inducement of copyright infringement claim requires a showing of bad faith: that the defendant engaged in purposeful conduct that encouraged copyright infringement. Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 425

7

(S.D.N.Y. 2011); see also Grokster, 545 U.S. at 937 ("The inducement rule, instead, premises liability on purposeful, culpable expression and conduct[.]"). Contributory infringement, on the other hand, requires only that the defendant, "with knowledge of the infringing activity, . . . materially contributes to the infringing conduct of another." Lime Group, 784 F. Supp. 2d at 432. Critically, EMI argues that the DMCA safe harbor cannot shelter a defendant from an inducement claim, because "the intentional nature of inducement is incompatible with the basic premise of DMCA immunity." (Pls.' Br. in Supp. of Mot. for Recons., dated Nov. 12, 2012 at 19.)

This Court is aware of no authority for the proposition that the DMCA safe harbor is per se unavailable in an inducement claim, or that evidence of inducement would obviate the requirement to prove actual or red flag knowledge of infringement. While Judge Baer noted in Usenet that "if Defendants were aware of . . . red flags [pointing to user infringement], or worse yet, if they encouraged or fostered such infringement, they would be ineligible for the DMCA's safe harbor provisions," he revoked the safe harbor protection as a discovery sanction and not because he concluded that plaintiffs established inducement liability. Usenet.com, 633 F. Supp. 2d at 142. Rather than introducing a categorical bar to the safe harbor, the case law indicates only that inducement conduct may be relevant to establish an exception to safe harbor protection, such as actual or apparent knowledge of infringement. See Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1043 (9th Cir. 2013) ("while [the defendant's] inducing actions do not necessarily render him per se ineligible for protection under § 512(c), they are relevant to our determination that [the defendant] had 'red flag' knowledge of infringement").

This is not a remarkable observation given that the DMCA safe harbor exceptions are aimed at bad faith infringers. MP3tunes, 821 F. Supp. 2d at 637 ("The purpose of subsection

8

512(i) is to deny protection to websites that tolerate users who flagrantly disrespect copyrights."). Indeed, EMI advanced evidence of inducement at summary judgment for that purpose. Such evidence included MP3tunes touting Sideload.com as a source for "free music on the internet" and encouraging users to add MP3 files from the internet to sideload.com. (Bart Decl. Ex. 86.) But this Court rejected that evidence in finding that MP3tunes "did not promote infringement" or tolerate blatant infringers. MP3tunes, 821 F. Supp. 2d at 645. Regardless of whether an inducement claim can be a separate cause of action, this Court finds that such a claim would be futile. While EMI argues that it has "significant further evidence" demonstrating defendants' intent to encourage infringement, that proposition is not buttressed by testimony or documents. The evidence before the Court is not sufficient to meet the "high degree of proof" required for an inducement claim. See Fung, 710 F.3d at 1034. And given the zealous advocacy throughout this litigation, this Court doubts that EMI held back evidence on its motion for summary judgment. Accordingly, this Court denies EMI's request to revive its inducement claim as futile.

        D.    <u>Infringement of EMI's Cover Art</u>

Robertson also cites Viacom as a basis for reconsideration of this Court's ruling regarding the alleged infringement of EMI's copyrighted album cover art. In October 2006, pursuant to a licensing agreement with Amazon.com, MP3tunes' Lockersync program began allowing users to retrieve and display the corresponding album cover art from Amazon.com while playing a song in their MP3tunes lockers. MP3tunes, 821 F. Supp. 2d at 635. If cover art was not part of a music file or stored on a user's computer, LockerSync retrieved the cover art from Amazon.com and displayed a link to that website. MP3tunes, 821 F. Supp. 2d at 635. Under the licensing agreement, MP3tunes was permitted to display the cover art for the "principal purpose" of driving traffic to Amazon.com's website. MP3tunes, 821 F. Supp. 2d at

9

635. EMI maintains that MP3tunes directly infringed its copyrights in the cover art, in breach of the licensing agreement with Amazon.com. In the October 2011 Order, this Court found questions of fact precluded a ruling because of "contradictory proof" on the issues of MP3tunes' use and storage of cover art, and the direction of traffic to Amazon.com. MP3tunes, 821 F. Supp. 2d at 650.

   Robertson now contends that Viacom precludes copyright infringement liability for the cover art because it is protected by the DMCA safe harbor, and it is undisputed that the cover art was never the subject of any takedown notices. The § 512(c) safe harbor "is only available when the infringement occurs 'by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider.'" Viacom, 676 F.3d at 39 (quoting 17 U.S.C. § 512(c)(1)). In Viacom, the Second Circuit concluded that the § 512(c) safe harbor "is clearly meant to cover more than mere electronic storage lockers." Viacom, 676 F.3d at 38. Rather, its protections "extend[] to software functions performed 'for the purpose of facilitating access to user-stored material.'" Viacom, 676 F.3d at 39 (citing UMG Recordings, Inc. v. Veoh Networks, Inc., 620 F. Supp. 2d 1081, 1088 (C.D. Cal. 2008)). The Second Circuit went on to find that YouTube's "related videos" function, "by which a YouTube computer algorithm identifies and displays 'thumbnails' of clips that are 'related' to the video selected by the user" was such a function: "Because the algorithm 'is closely related to, and follows from, the storage itself,' and is 'narrowly directed toward providing access to material stored at the direction of users,' . . . . the related videos function is also protected by the § 512(c) safe harbor." Viacom, 676 F.3d at 39-40 (quoting UMG Recordings, 620 F. Supp. 2d at 1092)).

10

MP3tunes' cover art function uses an algorithm that retrieves, copies, stores, and displays cover art from Amazon.com related to those songs a user chooses to sideload. (Defs.' Br. in Supp. of Mot. for Recons. ("D. Br."), dated Nov. 12, 2012 at 27.) Robertson likens MP3tunes' cover art algorithm to YouTube's 'related videos' algorithm, noting that both were fully automated and required no input from service provider employees. But while MP3tunes' cover art algorithm retrieved and copied cover art solely in response to a user's song selection, the cover art itself was provided by Amazon.com, not other MP3tunes users. As such, the cover art is not stored at the direction of a user, but rather presented to users by MP3tunes as part of an automated marketing ploy. Further, Robertson admits that "MP3tunes used the cover art for the principal purpose of driving traffic to Amazon.com's website." (D. Br. at 29.) As such, the primary purpose of the cover art algorithm is not narrowly tailored to "facilitat[e] access to user stored material" but rather to prompt users to go to a separate website entirely for the purpose of purchasing music. Viacom, 676 F.3d at 39.

According to Robertson, Viacom affords safe harbor protection to any software functions or "architectural decisions" which "enhance user experiences" through a fully automated system operating solely in response to user input. (D. Br. at 27.) But "facilitating access to user stored material" and "enhancing user experiences" are not coextensive. Viacom approves the former, but does not address the latter. Under Robertson's interpretation, § 512(c) would protect any fully automated software function that "enhances" a user's experience by, for example, responding to a user's sideload of one song by automatically sideloading additional songs by the same artist. Such an interpretation of Viacom would stretch the definition of "storage by direction of a user" beyond the pale. Therefore, this Court declines to rule that MP3tunes' cover art algorithm is shielded by the § 512(c) safe harbor. As such, Robertson's

motion for reconsideration of this issue is denied and EMI's cover art infringement claim must proceed to trial.[1]

## II. Robertson's Liability for Direct Copyright Infringement of 47 Songs

In the October 2011 Order, this Court found Robertson liable for direct copyright infringement of forty-seven songs he personally sideloaded from unauthorized websites in order to "seed" Sideload.com with quality songs. MP3tunes, 821 F. Supp. 2d at 649. The issue was decided sua sponte. See Fed. R. Civ. Pro. 56(f); Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc., 697 F.3d 59, 64 (2d Cir. 2012) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the losing party was on notice that it had to come forward with all of its evidence."). This Court now reconsiders this ruling with the benefit of briefing from Robertson.

To establish direct copyright infringement, a plaintiff must prove ownership of a valid copyright and unauthorized copying by a third party. See Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005). Robertson offers various factual arguments attacking the validity of EMI's copyrights in the songs and suggesting that many of them were sideloaded from authorized websites. Most of these arguments are identical to those previously advanced by MP3tunes, which this Court rejected in finding that EMI stated a prima facie case of copyright ownership in numerous songs, including the forty-seven now at issue. See MP3tunes, 821 F. Supp. 2d at 647. This Court also found that those songs were copied unlawfully from unauthorized third party websites. MP3tunes, 821 F. Supp. 2d at 647. Robertson's recycled arguments—including his "works for hire" argument—do not warrant a

---

[1] To the extent EMI failed to list the artist of any cover art registered on a form SR, copyright ownership is a disputed issue that must proceed to trial. See U.S. Copyright Office, Copyright Registration for Sound Recordings, Copyright Circular # 56, at 3 (2004).

12

different result for the bulk of the sideloaded songs.[2] However, this Court finds that Robertson has created an issue of fact as to EMI's ownership of the copyrights for two of the songs he sideloaded, "White Christmas" by Frank Sinatra and "Devil in Me" by 22-20s, because Plaintiffs did not provide registrations for those copyrights. Further, EMI relies on copyrights registered as compilations for thirteen of the songs Robertson sideloaded. Because compilations contain pre-existing constituent works that may have been fixed prior to February 15, 1972 or that may have been previously registered by another owner, Robertson has created an issue of fact with respect to those songs. See U.S. Copyright Office, Copyright Registration for Sound Recordings, Copyright Circular # 56, at 4 (2004) ("The copyright in the compilation of recordings is separate and distinct from copyright (if any) in the recordings themselves.").

While Robertson proffers some new evidence, it falls short of what this Court indicated would be required to rebut a finding of direct infringement of the remaining songs—either evidence that the websites involved in free viral marketing campaigns were identical to the URLs from which Robertson sideloaded, or evidence sufficient to show a broad implied license to use the songs. See MP3tunes, 821 F. Supp. 2d at 647-48. For instance, Robertson points to a letter from Hopeless Records stating that it was "authorized" to offer free MP3s of the song "Eternal Rest" by Avenged Sevenfold. (Declaration of Michael Robertson ("Robertson Decl."), dated Nov. 11, 2012 Ex. 7.) Similarly, Robertson's counsel offers a conversation he had with an Amazon.com legal assistant, who indicated that Amazon.com was "authorized" to make the song "A Groovy Kind of Love" by the Royal Philharmonic Orchestra available for download, though she could not confirm it was for free. (Declaration of Mark Lafayette, dated Nov. 12, 2012 at ¶

---

[2] Robertson's arguments regarding the availability of statutory damages or attorney's fees for three songs by the music group Air and his argument that some of the sideloaded songs violate the same copyright relate to the issue of damages, and this Court does not resolve them now.

13

11.) But this evidence fails to show that Plaintiffs themselves authorized any free downloads, or when such downloads were even offered. Similarly, a screenshot indicating that Spin.com offered a free MP3 file of another song at issue by the band Panic at the Disco is unauthenticated and does not show that EMI authorized the promotion. (Robertson Decl. Ex. 4.) Such evidence does not constitute the "narrow circumstances" under which courts find implied licenses. Ulloa v. Universal Music and Video Distrib. Corp., 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004). Nor does it suffice to show abandonment of Plaintiffs' copyrights. See Capitol Records, Inc. v. Naxos of Am., Inc., 372 F.3d 471, 483-84 (2d Cir. 2004).

Because this Court finds that Robertson fails to establish a broad implied license for the songs at issue, the equitable defenses he raises against EMI are without merit. Further, this Court rejects Robertson's request to reopen discovery or revisit earlier discovery disputes. Relief under Rule 56(d) "is not available when summary judgment motions are made after the close of discovery." Espada v. Schneider, 522 F. Supp. 2d 544, 549 (S.D.N.Y. 2007). Discovery in this action was supervised by Magistrate Judge Maas and closed in January 2010. This Court declines to entertain another encore.

III.  Personal Jurisdiction over Defendant Robertson

In July 2012, this Court ruled it had personal jurisdiction over Robertson. On his reconsideration motion, Robertson advances substantially the same arguments this Court previously rejected, including his argument that "sideloading" is distinct from "uploading" in determining the situs of copyright injury under Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d 295, 302 (2011)—an argument this Court still finds to be without merit. (See Transcript, dated July 20, 2012 ("July 2012 Tr.") at 5:5-7.) A motion for reconsideration is not an opportunity to "treat the court's initial decision as the opening of a dialogue . . . in response to

14

the court's rulings." De Los Santos v. Fingerson, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). Therefore, this Court addresses only one of Robertson's arguments.

Robertson, a California resident, contends this Court erred in finding that he committed tortious conduct that could reasonably be expected to cause injury in New York under its long arm statute, CPLR § 302(a)(3)(ii). In making that finding, this Court relied on its sua sponte ruling in the October 2011 Order that Robertson was directly liable for copyright infringement of songs he personally sideloaded to MP3tunes' server. (July 2012 Tr. at 4:3-10.) Robertson argues that this is improper. But this Court has now reaffirmed Robertson's liability for most of the forty-seven songs after affording him an opportunity to brief the issue. Further, a showing of conclusive liability for tortious conduct is not required for personal jurisdiction. Rather, "where the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). The record EMI submitted on summary judgment satisfies this burden. Therefore, this Court adheres to its finding of personal jurisdiction over Robertson.

IV.     Robertson's Secondary Copyright Infringement Liability

Whether Robertson was vicariously liable for the contributory infringement of those songs that MP3tunes failed to remove upon receipt of DMCA-compliant takedown notices was not before this Court in October 2011. This Court now considers Robertson's motion for summary judgment on the issue of his vicarious liability. To prevail on a motion for summary

judgment, the moving party must demonstrate each essential element of its infringement claim or defense. Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

To be vicariously liable for MP3tunes' contributory infringement, Robertson must have (1) had the right and ability to supervise the infringing conduct and (2) received a financial benefit directly attributable to the infringing conduct. Usenet.com, 633 F. Supp. 2d at 156; see also Grokster, 545 U.S. at 930 (a defendant is liable for vicarious copyright infringement by "profiting from direct infringement while declining to exercise a right to stop or limit it"); Viacom, 676 F.3d at 36 ("The common law imposes liability for vicarious copyright infringement when the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials[.]") (internal alterations and quotations omitted).

Robertson argues that he is entitled to summary judgment on the issue of his vicarious liability because this Court found, in evaluating whether MP3tunes was eligible for the DMCA safe harbor, that MP3tunes "neither received a direct financial benefit nor controlled the infringing activity." MP3tunes, 821 F. Supp. 2d at 646. Thus, Robertson contends that EMI is collaterally estopped from proving the financial benefit prong of the vicarious liability test.

Robertson also argues that the "law of the case" doctrine prohibits a finding of vicarious liability. Under this doctrine, a "decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991).

The DMCA safe harbor is lost where a direct financial benefit from the users' infringing activity is found. But vicarious liability arises from common law, not from the DMCA. See Viacom, 676 F.3d at 37-38 (finding that the DMCA is not a codification of common law vicarious liability principles for copyright infringement). Under the common law vicarious liability standard, there must be "a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004); see also Usenet.com, 633 F. Supp. 2d at 157 ("the law is clear that to constitute a direct financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw—rather, it need only be 'a' draw."). Further, the financial benefit prong for vicarious liability has been found even where no financial benefit was realized. See, e.g., A & M Records, Inc. v. Napster, Inc., 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000) ("direct financial benefit does not require earned revenue, so long as the defendant has economic incentives for tolerating unlawful behavior"), rev'd on other grounds, 239 F.3d 1004 (9th Cir. 2001). Because it is clear that the "direct financial benefit" prong of the common law vicarious liability standard is construed more broadly than it is under the DMCA, Robertson's collateral estoppel and "law of the case" arguments are without merit.

While Robertson argues that he did not personally benefit from MP3tunes' infringement because he is not a shareholder of MP3tunes and has not held any membership

interest since 2006, it is undisputed that he held a beneficial interest in the SKL trust, which held a substantial interest in MP3tunes. Cf. Lime Group, 784 F. Supp. 2d at 439 (holding that an individual holding an indirect ownership interest could be liable for that company's infringement). As such, there is a genuine issue of material fact as to whether Robertson benefited from the infringement in satisfaction of the common law vicarious liability standard. Further, "[a]ll persons and corporations who participate in, exercise control over, or benefit from the infringement" may be held jointly and severally liable as copyright infringers. Usenet.com, 633 F. Supp. 2d at 158. Whether Robertson was "personally and intimately involved in many of the activities that form the basis of [MP3tunes'] copyright liability" is an open question. Usenet.com, 633 F. Supp. 2d at 158. Accordingly, Robertson's motion for summary judgment is denied.

Finally, because there are issues of fact regarding whether Robertson can be held liable for the infringement of MP3tunes, or whether Robertson received any commercial benefit from the infringement, EMI's unfair competition claim against Robertson will also proceed to trial.

## CONCLUSION

For the foregoing reasons, EMI's motion for reconsideration in light of Viacom v. YouTube is granted in part and denied in part. Specifically, EMI's motion is granted as to the issue of willful blindness and "red flag" knowledge, and denied as to the inducement of copyright claim. Defendant Robertson's motion for reconsideration of the October 2011 Order regarding direct copyright infringement is granted in part and denied in part. Robertson's motions for (1) reconsideration of the October 2011 Order regarding infringement of EMI's cover art, (2) reconsideration of the July 2012 Order regarding personal jurisdiction, and (3)

summary judgment as to his vicarious liability are denied. The Clerk of Court is directed to terminate the motions pending at ECF No.'s 333, 334, and 341.

Dated: May 14, 2013
      New York, New York

                                SO ORDERED:

                                WILLIAM H. PAULEY III
                                    U.S.D.J.

*All Counsel of Record*