**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
CAPITOL RECORDS, LLC, *et al.*,                   :
                                                  :
                              *Plaintiffs*,       :        07 Civ.  9931 (WHP)
                  v.                              :
                                                  :
MP3TUNES, LLC and MICHAEL ROBERTSON,              :
                                                  :
                              *Defendants.*       :
-----------------------------------------------------------x

**DEFENDANT ROBERTSON'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION *IN LIMINE* REGARDING PLAINTIFFS' EVIDENCE OF WILLFUL BLINDNESS AND RED FLAG KNOWLEDGE**

**AKERMAN SENTERFITT LLP**
Ira S.  Sacks
Mark S.  Lafayette
Vincent Y.  Liu
Jamie B.  Robbins
666 Fifth Avenue, 20th Floor
New York, New York 10103
Telephone: (212) 880-3800
Facsimile:  (212) 880-8965

September 14, 2013                    *Counsel for Defendant Michael Robertson*

{27013440;14}

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

DEFENDANT ROBERTSON'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION *IN LIMINE* REGARDING PLAINTIFFS' EVIDENCE OF WILLFUL BLINDNESS AND RED FLAG KNOWLEDGE................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ...................................................................................................................... 6

   I.    ALL OF PLAINTIFFS' EVIDENCE IS DEFICIENT UNDER *VIACOM* ..................... 6

      A.   Alleged Evidence That Defendants Had Red Flag Knowledge Or Were Willfully Blind That All EMI Tracks Sideloaded Before January 25, 2007 And All Beatles Tracks Were Infringing....................................................................................................... 6

      B.   Alleged Evidence Of Screen Shots That Do Not Establish Defendant's Awareness Of The Infringing Character Of The Domain....................................................... 12

      C.   User Ticket Posts And E-Mails Which Do Not Identify Artist, Track And URL ......... 15

      D.   User Ticket Posts And E-Mails With Non-Substantive Responses ............................... 16

      E.   Evidence Of E-Mails Related To Takedown Notices From Non-EMI Entities That Do Not Establish A Direct Connection Between Defendant's Awareness Of Specific Instances Of Infringement And Tracks-In-Suit............................................................ 18

   II.   BECAUSE ALL OF PLAINTIFFS' EVIDENCE PROFFERED ON THE ISSUES OF RED FLAG KNOWLEDGE AND WILLFUL BLINDNESS IS IRRELEVANT UNDER *VIACOM*, THE COURT SHOULD EXCLUDE IT FROM TRIAL.............. 20

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Capitol Records, Inc. v. MP3tunes, LLC*
  821 F.Supp.2d 627 (S.D.N.Y. 2011).........................................................................*passim*

*Capitol Records, Inc.  v.  MP3tunes, LLC*,
  2013 WL 1987225 (S.D.N.Y.  May 14, 2013)..........................................................*passim*

*Perfect 10, Inc., v. CCBill, LLC*,
  488 F.3d 1102 (9th Cir.  2007) ........................................................................................3, 13

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
  665 F.Supp.2d 1099 (C.D. Cal. 2009) ..............................................................................3

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) .......................................................................................3, 4

*Viacom International, Inc. v. YouTube, Inc.*,
  676 F.3d 19 (2d Cir. 2012)...........................................................................................*passim*

*Viacom International, Inc.  v.  YouTube, Inc.*,
  2013 WL 1689071 (S.D.N.Y.  April 18, 2013).........................................................*passim*

**STATUTES AND RULES**

17 U.S.C. § 512(c)(1)(A) ...........................................................................................2, 3, 17

17 U.S.C. § 512(m)(1) ..........................................................................................................13

Fed. R. Evid. 408 ...................................................................................................................9

**OTHER AUTHORITIES**

Senate Commitment on the Judiciary Report, S. Rep. No. 105-190 (1998).............................3, 13

**DEFENDANT ROBERTSON'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION *IN LIMINE* REGARDING PLAINTIFFS' EVIDENCE OF WILLFUL
BLINDNESS AND RED FLAG KNOWLEDGE**

Defendant Michael Robertson ("Robertson"), by and through his counsel, Akerman
Senterfitt LLP, submits this memorandum of law in support of his motion *in limine* precluding
Plaintiffs' evidence of screenshots, user ticket posts, e-mails and deposition testimony at trial in
support of disqualifying Defendant MP3tunes, LLC ("Defendant" or "MP3tunes") from Digital
Millennium Copyright Act (the "DMCA") safe harbor protection on the basis of Defendant's
alleged red flag knowledge and willful blindness. This is required because an analysis of every
exhibit designated in Plaintiffs' court-ordered July 12, 2013 disclosure shows that each – taken
separately or together – fails to meet the *Viacom* (as defined below) standards and, thus, cannot
support a finding for eliminating Defendant's entitlement to protection under the DMCA for the
approximately 2,500 distinct sound recordings and musical compositions Plaintiffs seek to add to
this case as a result of this Court's May 14, 2013 Memorandum and Order (the "Reconsideration
Order") (Doc. No. 368) regarding red flag knowledge and willful blindness.[1]

## FACTUAL BACKGROUND

As the Court is well aware, the Second Circuit in *Viacom* emphasized the importance of
explicit fact-finding in connection to establishing red flag knowledge and willful blindness on
the part of the internet service provider. *See Viacom International, Inc. v. YouTube, Inc.*, 676
F.3d 19, 35 (2d Cir. 2012) ("*Viacom*"). This Court has not analyzed Plaintiffs' evidence on this
issue. Plaintiffs' evidentiary showing fails under *Viacom* for the following reasons.

---

[1] Contrary to Plaintiffs' representation at the conference before the Court on June 3, 2013 – that
the issue of "red-flag" knowledge and willful blindness as a result of the Reconsideration Order
would not add a great deal more to the case or greatly increase the length of the trial – Plaintiffs'
pretrial disclosures made clear that they seek to add approximately 2,500 distinct sound
recording and musical compositions to this case, for which they seek to admit thousands of
documents consisting of copyrights and other documents in support of its ownership and claims,
expanding exponentially the scope of this trial.

**First**, under *Viacom*, proof of "red flag" knowledge requires proof that the provider was aware of facts that would have made specific instances of infringement "objectively" obvious to a reasonable person. *Id. at* 31-32. Based on the text of § 512(c)(1)(A), as well as the limited case law on point, the Second Circuit proffered the subjective/objective test, finding that "the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person." *Id. at* 31. Accordingly, the Second Circuit rejected plaintiff's arguments that the statute's red flag knowledge provision "requires less specificity" than the actual knowledge provision. *Id. at* 32. Both actual and red flag knowledge provisions "apply only to specific instances of infringement." *Id. at* 31.

Thus, in *Viacom*, the Second Circuit found sufficient evidence to remand to the District Court because there was evidence that YouTube executives were aware of facts or circumstances from which ***specific infringing activity*** was apparent and expressly acknowledged that specific clips on the YouTube service were "clearly infringing" or "blatantly illegal."

This Court has found that, under *Viacom*, "something less than a formal takedown notice may now establish red flag knowledge[.]" *Capitol Records, Inc. v. MP3tunes, LLC*, 2013 WL 1987225, at *4 (S.D.N.Y. May 14, 2013). However, under *Viacom*, even that "something less" must include precise information given or reasonably apparent to the service provider which identifies the location or site of the infringing matter. *Viacom International, Inc. v. YouTube, Inc.,* 2013 WL 1689071, at *2 (S.D.N.Y. April 18, 2013) ("*Viacom remand*"); *Viacom,* 676 F.3d at 32. "[D]eficient notifications shall not be considered in determining whether a service

provider has actual or constructive knowledge." *Viacom remand,* 2013 WL 1689071, at *2.

**Second**, MP3tunes' alleged red flag knowledge cannot be established by MP3tunes' employees visiting certain domains that do not, on the face of the domain, indicate that the domain is a pirate site. This is because red-flag knowledge exists only where the infringing nature of the material at issue would be "apparent from even a brief and casual viewing." *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F.Supp.2d 627, 644 (S.D.N.Y. 2011) (citing Senate Commitment on the Judiciary Report, S. Rep. No. 105-190 (1998)). Moreover, an internet service provider does not have the burden of "determining whether [materials] are actually illegal." *Perfect 10, Inc., v. CCBill, LLC,* 488 F.3d 1102, 1114 (9th Cir. 2007); *see Capitol Records, Inc.*, 821 F.Supp.2d at 644.

In addition, "if investigation of 'facts and circumstances' is required to identify material as infringing, then those facts and circumstances are not 'red flags.'" *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F.Supp.2d 1099, 1108 (C.D. Cal. 2009), *aff'd sub nom., UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1022-23 (9th Cir. 2013) ("We reach the same conclusion with regard to the § 512(c)(1)(A)(ii) inquiry into whether a service provider is 'aware of facts or circumstances from which infringing activity is apparent.' The district court's conception of this 'red flag test' properly followed our analysis in *CCBill*, which reiterated that the burden remains with the copyright holder rather than the service provider"); *see CCBill*, 488 F.3d at 1114; *Capitol Records, Inc.*, 821 F.Supp.2d at 644 ("if investigation is required to determine whether material is infringing, then those facts and circumstances are not 'red flags'"). Here, as shown in more detail below and in the accompanying Declaration of Ira S. Sacks in Support of Motion *in Limine*, dated September 14, 2013 (the "Sacks Dec."), Plaintiffs' evidence does not meet those *Viacom* standards.

Improperly, Plaintiffs treat this Court's "reluctant[]" decision to vacate summary judgment on the issue of red flag knowledge, *Capitol Records*, 2013 WL 1987225, at *4 ("Reluctantly" concluding that certain communications offered by EMI establish MP3tunes' red flag knowledge given "MP3tunes' salutary practice of sending instructions regarding DMCA-compliant takedown notices to third parties reporting possible infringement and the DMCA's disavowal of any duty on the part of service providers to monitor user content"), as a license to submit a potpourri of exhibits that do not conform to the *Viacom* notice standard. For example, evidence of user ticket posts containing removal requests and e-mails containing takedown notices that do not identify the specific artist, specific track and identify the location of the URL upon which the corresponding links for MP3s appear on sideload.com, do not demonstrate that MP3tunes received the requisite specific notice and cannot form the basis for a finding of red flag knowledge. *See UMG Recordings*, 718 F.3d at 1022-23 ("general knowledge that one's services could be used to share infringing material" is insufficient for both "the actual knowledge requirement" or "to constitute a red flag"); Sacks Dec., ¶¶ 20-28.

**Third**, Plaintiffs' evidence does not meet the requisite showing of MP3tunes' knowledge or awareness of alleged infringement with respect to ***any of the specific EMI tracks at issue***. Instead, Plaintiffs view themselves as the copyright police, complaining on behalf of all copyright holders that MP3tunes had notice of certain activities. ***Plaintiffs are not the copyright police***. Plaintiffs may only complain about their own copyrighted songs and works.

Indeed, the Second Circuit in *Viacom* instructed the district court, on remand, to determine "whether any specific infringements of which YouTube had knowledge or awareness correspond to the ***clips-in-suit in these actions***," adding that "[b]y definition, only the current clips-in-suit are at issue in this litigation." *Viacom*, 676 F.3d at 34 (emphasis added). Thus,

Plaintiffs' burden here is a showing that the documents which purportedly demonstrate MP3tunes' knowledge or awareness of specific instances of infringement, correspond to the tracks actually at issue, as to which one of the Plaintiffs owns a copyright. This burden "cannot be shifted" to MP3tunes "to disprove." *Viacom remand*, 2013 WL 1689071, at *3. For example, one of the documents cited by this Court in the Reconsideration Order (at 4) involves the song "I Fought the Law" by The Clash. That is not an EMI work. As a result, that exhibit has nothing to do with red flag knowledge.

**<u>Finally</u>**, with respect to willful blindness, the issue is whether Plaintiffs' evidence establishes that, as to the sideloaded content, MP3tunes was confronted evidence with "a high probability" of the fact of infringement by specific tracks on its service and "consciously avoid[s] confirming that fact." *Capitol Records*, 2013 WL 1987225, at *2 (citing *Viacom*, 676 F.3d at 35). However, in *Viacom*, the Second Circuit carved out a "limit[ed]" role for willful blindness within the DMCA framework, and made clear that the doctrine does not allow plaintiff to avoid the DMCA's specific-knowledge requirement – that is, knowledge of specific instances of infringement. *Viacom*, 676 F.3d at 35.

Moreover, the *Viacom* Court warned that DMCA § 512(m) limited the willful blindness concept:

> DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider. For that reason, § 512(m) is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringement may be occurring. That fact does not, however, dispose of the abrogation inquiry; as previously noted, willful blindness cannot be defined as an affirmative duty to monitor.

*Id.* As a result, Plaintiffs must proffer evidence that shows that MP3tunes was confronted evidence establishing the "high probability" of the fact of specific instances of infringement; that such high probability was apparent without conducting an additional investigation; and

MP3tunes "consciously avoid[s] confirming that fact."

Here, none of Plaintiffs' evidence meets that test. E-mails purportedly demonstrating MP3tunes' alleged awareness of the allegedly illegitimate distribution of **_entire catalogs of music_** in MP3 file format does not establish that MP3tunes was aware of the high probability of infringement on its service without further investigation, or that it actively avoided confirming facts of **_specific instances_** of infringement.

Thus, as set forth more fully below and in the Sacks Dec. and the exhibits thereto, Defendant's objections to the admission of Plaintiffs' red flag knowledge and willful blindness evidence should be sustained because Plaintiffs fail in their evidentiary showing under _Viacom_.

## ARGUMENT

## I.    ALL OF PLAINTIFFS' EVIDENCE IS DEFICIENT UNDER _VIACOM_

All of Plaintiffs' red flag knowledge and willful blindness evidence falls far short under _Viacom_. Because Plaintiffs' disclosures pursuant to the Court's July 3, 2013 Scheduling Order (served July 12, 2013, as amended on August 9, 2013, the "August 9 Submission", attached to the Sacks Dec. as Exhibit A) do not indicate whether evidence is submitted as proving sufficient notice under red flag knowledge or willful blindness, we will analyze each group of evidentiary submission under both, related standards.

### A.    Alleged Evidence That Defendants Had Red Flag Knowledge Or Were Willfully Blind That All EMI Tracks Sideloaded Before January 25, 2007 And All Beatles Tracks Were Infringing

Sections I and V[2] of the Plaintiffs' August 9 Submission contend that MP3Tunes' loses its DMCA protection because certain e-mail communications establish Defendant's awareness that EMI-copyrighted material was not authorized for distribution in MP3 file format and/or

---

[2]  Plaintiffs' August 9 Submission is broken down into five different sections, each of which is referred to as a "Section" or a "Category" herein.

Beatles tracks were not authorized for distribution in MP3 file format. (*See* Sacks Dec., ¶¶ 37-41). That is wrong. *Viacom*'s holdings on red flag knowledge and willful blindness did not create a categorical loophole for generalized knowledge as to entire catalogs of music.

As shown above, under *Viacom*, both red flag knowledge and willful blindness are subject to notice of specific infringing tracks and URLs. The documents cited by *Viacom* and *Viacom remand* were express acknowledgments by YouTube executives that specific clips on its service were clearly or blatantly infringing. Indeed, as this Court observed in the Reconsideration Order, "applying the doctrine [of willful blindness] requires attention to its scope and [i]n imputing knowledge of the willfully disregarded fact, one must not impute more knowledge than the fact conveyed." *Capitol Records*, 2013 WL 1987225, at *2 (citing *Viacom remand*, 2013 WL 1689071, at *4) (internal quotations omitted).

Contrary to *Viacom*, in Category I, Plaintiffs' assert that Defendants had red flag knowledge or were willfully blind that ***all songs sideloaded before January 25, 2007*** were infringing; and in Category V, that ***all Beatles songs*** were infringing. That is a gross distortion of the limited exceptions established in *Viacom*.

Here, for **<u>*Category I*</u>** – as to Sound Recordings And Compositions Prior to January 25, 2007 – Plaintiffs rely on an e-mail, dated January 25, 2007, from Michael Robertson to SanDisk's manager requesting a meeting to discuss SanDisk's Sansa Connect product. (Sacks Dec., ¶ 37, Ex. L). Michael Robertson states, in part, "[w]e have the first licenses from major record labels to sell and deliver MP3 tracks. This is very big news since popular acts have never before sold tracks in MP3 formats." (*Id.*) The e-mail does not demonstrate that MP3tunes was aware that EMI-copyrighted material was not authorized for distribution in MP3 format before January 25, 2007. Further, the document does not show how, without investigation, MP3tunes

could know what tracks sold in MP3 file format were infringements.  Nothing in this document evidences that MP3tunes or Robertson had knowledge or notice of links to infringing songs (as to which Plaintiffs owned a copyright), or that songs that had been sideloaded were infringing copyrights owned by Plaintiffs.  And nothing in this document identifies specific infringing tracks or URLs, or constitutes an acknowledgement by Robertson of awareness of specific blatantly or clearly infringing tracks on MP3tunes.com.  (*Id.*)

In addition, and importantly, this document demonstrates that songs were made freely available in MP3 format by major record companies, including EMI.  Indeed, as found by this Court, "[as] part of its innovative marketing, EMI itself regularly distributes works on the internet for free.  Because of these activities, EMI's executives concede that … MP3tunes' users and executives have no way of knowing for sure whether free songs on the internet are unauthorized."  *Capitol Records*, 821 F.Supp.2d at 644.

As to ***category V*** – all Beatles songs – Plaintiffs rely on three documents: first, an email in which Robertson indicates that he believes that "***EMI's position*** is that the Beatles have never authorized their songs to be available digitally."  (Sacks Dec., ¶ 38, Ex. M (emphasis added)).  The e-mail does not demonstrate that MP3tunes agreed with EMI's position or was aware that specific Beatles songs were not authorized for distribution in MP3 format.  Further, the document does not show how, without investigation, MP3tunes could know what Beatles tracks sold in MP3 file format were infringements, what Beatle tracks may exist on its service and where such Beatle tracks are located.  As a result, nothing in this document evidences that MP3tunes or Robertson had knowledge or notice of links to infringing songs (as to which Plaintiffs owned a copyright), or that specific songs that had been sideloaded were infringing copyrights owned by Plaintiffs.

Second, as to the Beatles, Plaintiffs rely on Bart Exhibit 61,[3] an email from a user asking whether "Strawberry Fields" by the Beatles was really freely available. There was no acknowledgment by MP3tunes that it was not, totally contrary to the evidence in *Viacom*. In addition, given EMI's viral marketing practices, MP3tunes could not know whether EMI was making free downloads of "Strawberry Fields" available. Further, there was certainly no information provided as to the location of such track on MP3tunes' service, as required. (*See* Sacks Dec., ¶¶ 33, 41, Ex. J).

Finally, as to the Beatles, Plaintiffs' rely on document Bates Stamped DSP006433-34 (Sacks Dec., ¶ 39, Ex. N), is an internal MP3tunes e-mail, dated "11.01.2008", after commencement of this action, relating to MP3tunes President's, Emily Richards', preparation for a telephone call with a corporate representatives of EMI and the related outline of a proposal between EMI and MP3tunes. It has nothing to do with whether MP3tunes thought that any Beatles tracks – or all Beatles tracks – were infringing. Rather, that email concerns proposed settlement terms for this suit with Plaintiffs, and mentions requesting an "exclusive option to purchase the entire Beatles Collection for one-click loading into music locker." It is both irrelevant on the issues of red flag knowledge and willful blindness, and also must be excluded from trial because it is protected by the settlement privilege. *See* Fed. R. Evid. 408 ("conduct or a statement made during compromise negotiations about the claim" inadmissible).

At bottom, MP3tunes could not have possibly made any meaningful inquiries in connection to ***all EMI-copyrighted material*** and ***all Beatles tracks in MP3 file format*** nor is that required under *Viacom*. "Indeed, to require expeditious removal in the absence of specific

---

[3]    Declaration of Andrew Bart, dated October 29, 2010 (Doc. No. 134) and the exhibits of Andrew Bart's declaration cited in the August 9 Submission are attached as **Exhibit B** to Sacks Dec. "Bart Exhibit" refers to exhibits of Andrew Bart's declaration and can be found in Exhibit B to Sacks Dec.

knowledge or awareness would be to mandate an amorphous obligation to 'take commercially reasonable steps' in response to a generalized awareness of infringement." *Viacom*, 676 F.3d at 30-31. Again, on the contrary, to come to such a conclusion, one would have to examine the source of each and every download to determine whether it had been authorized for free download, with or without the technical requirement of capturing marketing information.

The simple fact that an artist was an EMI artist and that such artist did not allow digital downloads – even if shown – does not establish the requisite high probability of infringement as to specific tracks on MP3tunes servers, or that MP3tunes executives acknowledged such infringement, as required by *Viacom*. That is because of the pervasive use viral marketing by Plaintiffs.

Further, and although not necessary to a determination of this motion, although this Court has found that "EMI placed careful restrictions on the use of its promotional songs and required consumers to visit certain websites or provide valuable marketing information before downloading a song," *Capitol Records*, 821 F.Supp.2d at 648, EMI could have – but did not – use technical measures to block a search engine from going directly to the underlying song. (*See* Declaration of Michael Robertson dated September 10, 2013 ("Robertson Dec."), ¶¶ 4-12). In addition, the evidence submitted to this Court dispositively demonstrates that EMI did not in all instances require consumers to provide marketing information. (*See* Sacks Dec., ¶ 48 and Exs. T and U (copies of Exhibit A to the undated (filed 11/24/2010) Heinemann Declaration and Exhibit A to 11/23/2010 Abitbol Declaration, with selected entries highlighted where there is no mention of capturing marketing information)).

In addition, MP3tunes would be required to investigate the actions both by an artist's label and publisher. For example, Robertson has been accused to have illegally sideloaded the

song "Eternal Rest" by Avenged Sevenfold, as to which the Publishing Plaintiffs claim copyright. (*See* Sacks Dec. Ex. O (10/29/10 Ashby Dec. Ex. A) at 3)).  Pursuant to this Court's Order dated July 3, 2013, Robertson was granted permission to subpoena Hopeless Records for "[a]ll documents concerning the authority or right … to permit the downloading by third parties, without monetary compensation, on the Internet from and through, among other places, the url http://hoplessrecords.com/mp3" of the sound recording "Eternal Rest"  by "Avenged Sevenfold."

Pursuant to that subpoena, Hopeless Records produced a redacted copy of  an "Exclusive Recording Agreement"  made as of January 1, 2002 between Matthew Sanders, Brian Haner, Zack Baker and James Sullivan professionally known as "Avenged Sevenfold"  (the "Artists") and Hopeless Records, Inc.  A copy the recording agreement is annexed hereto to the Sacks Dec. as Exhibit P.   The recording agreement contains ████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████  ██████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████  ███████████

Public records disclose that Hopeless Records, Inc. owns the copyright in the sound recording entitled "Waking the Fallen"  by Avenged Sevenfold, which includes "Eternal Rest." (Sacks Dec., Ex. V).  EMI relies on copyright registrations PA 1-224-367 and PA 1-244-376 for the compositions on  "Waking the Fallen", including "Eternal Rest."  (*See id*., Ex. O at 3).  Those registrations disclose the authors of "Eternal Rest"  to be Matthew Sanders, Brian Haner, James Sullivan and Zack Baker, ████████████████████████████████████ ███████████████████████████████████

Accordingly, Hopeless Records had full right and authority to make free downloads of

"Eternal Rest" available on its website.  Robertson downloaded the track from the Hopeless Record site.  (*See* Declaration of Michael Robertson, dated November 12, 2012 (Doc. No. 336) ¶ 28 & Ex. 7 (email with Hopeless Records)).  Clearly, the Publishing Plaintiffs did not investigate whether any non-EMI label legitimately made songs available for free download before commencing this action.[4]

Therefore, Plaintiffs' evidence does not establish that Defendant had red flag knowledge or was willfully blind as to the unspecified sideloading of entire catalogs of all EMI music prior to January 25, 2007  in MP3 file format, and should be excluded.  *Viacom*, 676 F.3d at 35.

### B.    Alleged Evidence Of Screen Shots That Do Not Establish Defendant's Awareness Of The Infringing Character Of The Domain

In Section II of the August 9 Submission, Plaintiffs argue that Defendants had red flag knowledge of or were willfully blind to all sideloaded works from hosting or referring domains where Defendants possessed information as to the domains infringing character based on employees' use of the domains.  To state the proposition is to disclose its folly under *Viacom*. Such evidence – even if it existed – does not provide the express knowledge of infringing tracks or URLs sufficient under *Viacom*.

Moreover, the evidence relied upon by Plaintiffs does not establish the accused domains' infringing character.  The fact that Defendants' employees visited certain hosting and/or referring domains does not demonstrate "red flag" knowledge or willful blindness as to their "infringing character."  While DMCA safe harbor provisions are specifically denied to internet service providers "operating or linking to pirate sites whose illegal purpose is obvious to a reasonable person", red-flag knowledge (or willful blindness) can be established only where the infringing nature of the material at issue "would be apparent from even a brief and casual

---

[4] Plaintiffs also allege that other songs by Avenged Sevenfold were illegally sideloaded.  (*See* Sacks Dec., Ex. O, at 1 ("Bat Country")).

viewing." *Capitol Records*, 821 F.Supp.2d at 643-44 (citing S. Rep. No. 105-190 (1998)).

Plaintiffs' evidence of the character of the websites that are the subjects of the screenshots does not establish red flag knowledge. *Id. at* 644 ("the websites rapidshare.com, fileden.com, and filefactory.com, as well as the other sites used by MP3tunes executives to sideload songs do not use the words 'pirate' or 'bootleg' or other slang to indicate their illegal purpose and they are not otherwise clearly infringing. They are simply popular file sharing sites.").

Defendant's objections to the admission of such screenshots should be sustained for the following reasons. First, with one exception, Plaintiffs' evidence consists of screenshots from 2010; an irrelevant time frame for determining what the domain looked like in 2006-2008.

Second, nothing on the face of the screenshot demonstrates the alleged "infringing character" of such domains that would have been apparent upon a "brief and casual viewing." *Capitol Records*, *Inc.,* 821 F.Supp.2d at 643-44. For example, it is not apparent that the home page of Oregon State University, College of Engineering is a "pirate" site. (*See* Sacks Dec., ¶ 10, Bart Ex. 50). MP3tunes would have had to investigate the domain to determine whether facts or circumstances existed to indicate the unauthorized distribution of MP3 files from such a domain and, in any case, it would be impossible for MP3tunes' executives to discern whether such site had authority from EMI to distribute free downloads as a result of EMI's viral marketing practices. Plaintiffs' evidence ignores the fact that the DMCA is explicit that safe harbor shall *not* be conditioned on "a service provider….affirmatively seeking facts indicating infringing activity." 17 U.S.C. § 512(m)(1); *Viacom remand*, 2013 WL 1689071 at *5. As stated above, an internet service provider does not have the burden of "determining whether [materials] are actually illegal." *CCBill*, 488 F.3d at 1114; *see Capitol Records*, 821 F.Supp.2d

at 644.

Third, evidence that MP3tunes employees sent and received e-mails discussing certain domains, and that screenshots of those same domains contain language related to the free distribution of MP3s, does not constitute "red flag" knowledge or willful blindness to specific tracks. Not only is it is well-established that an internet service provider is not obligated to "take commercially reasonable steps in response to a generalized awareness of infringement", the Second Circuit has additionally held that red flag knowledge occurs where the service provider is

> subjectively aware of facts that would have made the specific infringement "objectively" obvious to a reasonable person. The red flag provision, because it incorporates an objective standard, is not swallowed up by the actual knowledge provision under our construction of the § 512(c) safe harbor. Both provisions do independent work, and both apply only to specific instances of infringement.

*Viacom,* 676 F.3d at 31. Plaintiffs' emails and screenshots fall far short.

This Court also observed in the Reconsideration Order (at 6; emphasis added) that, in *Viacom*, the Second Circuit found that

> [b]ecause YouTube executives ***decided not to remove specific content they acknowledged among themselves was almost certainly infringing***, the Second Circuit was "persuaded that the plaintiffs may have raised a material issue of fact regarding YouTube's knowledge or awareness of specific instances of infringement … especially in the absence of any detailed examination of the extensive record on summary judgment[.]" 676 F.3d at 34. EMI contends that it introduced similar evidence sufficient to create a material issue of fact regarding Defendants' red flag knowledge of infringement.
>
> Since something less than a formal takedown notice may now establish red flag knowledge and EMI offers communications acknowledging likely infringement, the issue of Defendants' red flag knowledge cannot be resolved on summary judgment.

Now that Plaintiffs have disclosed their full evidentiary foundation, it is clear that none of the evidence meets the *Viacom* test. Plaintiffs provide no evidence of the requisite acknowledgment by MP3tunes. (*See* Sacks Dec., ¶¶ 5-28, 32, 35-40, 42). For example, Bart Exhibits 55, 57, 58 are related e-mail chains, dated November 21 2005 through November 27, 2005, containing an

internal MP3tunes discussion related to the sideload and webload compatibility of certain numerous domains featuring free MP3s.  Nothing in these documents evidences that MP3tunes perceived these websites to be carrying infringing songs.  (*See* Sacks Dec., ¶ 35).

**C.**  **User Ticket Posts And E-Mails Which Do Not Identify Artist, Track And URL**

Plaintiffs' Section III asserts that Defendants had red flag knowledge or willful blindness of works from domains where the domains infringing character was disclosed in internal or external communications.  Again, the evidence is irrelevant under *Viacom*.  Under *Viacom*, both red flag knowledge and willful blindness focus on notice of specific instances of infringement.  If the specific locations of specific infringements are not supplied and the internet service provider is left to find the infringing track in suit, such cannot lead to a finding of red flag knowledge or willful blindness, as it is incompatible with the DMCA.  *Viacom remand*, 2013 WL 1689071, at *3-5; *Viacom,* 676 F.3d at 31, 35, 41-42.

Plaintiffs' submissions of user ticket posts and e-mails that do not identify a specific artist, a specific song and location of a specific URL cannot meet the requisite showing of MP3tunes' knowledge or awareness of "specific and identifiable"  instances of infringement and cannot form the basis for a finding of red flag knowledge or willful blindness.  Certain user ticket posts establish only the most generalized awareness that unspecified material (not necessarily copyrights owned by the Plaintiffs) were allegedly sideloaded onto the MP3tunes server from unauthorized domains.  (*See* Sacks Dec., ¶¶ 20-28).

For example, Bart Exhibit 72 is a user ticket post received by MP3tunes on December 27, 2007.  (*See* Sacks Dec., ¶ 22).  The user's request to remove links to MP3s states "I'd like to have my server removed from your listings", because the user "would rather have traffic to these files run through [his] blogspot page."  The user did not indicate that he believed the files were

infringing.    Moreover,  the  user  only  identifies  two  specific  hosting  websites, solidgoldberger.com  and  music.solidgolberg.blogspot.com  and  does  not  identify  any  specific artists and track information.  Such evidence is not sufficient under *Viacom*.  In the face of such a general removal request, Defendant would have to first investigate what songs were downloaded from  the  subject  websites  and  then  perform  a  burdensome  track-by-track  investigation  to determine, among other things, whether the copyright owner had ever licensed the works to be available  in  MP3  file  format,  whether  the  copyright  owner  had  ever  changed,  whether  the copyright had expired and the work was now in the public domain, which MP3tunes users had sideloaded from such websites and the like.  Moreover, in response, MP3tunes explained to the user that sideload.com respects the intellectual property of others and explained to the user how to draft a DMCA complaint takedown notice if the user believed one was appropriate.

**D.**    **User Ticket Posts And E-Mails With Non-Substantive Responses**

Even where the user ticket post and/or e-mail identifies a specific artist, specific track and specific  hosting  URL  for  removal,  such  exhibits  do  not  disqualify  Defendant  from  DMCA protection.  Under *Viacom*, Plaintiffs' burden is to establish that once MP3Tunes was notified that the specific artist, tracks and URLs were infringing, MP3tunes *acknowledged* that the artist, album  and  track  were  "clearly"  or  "blatantly"  infringing.   *Viacom,* 676 F.3d at 33-34 ("[t]he foregoing  Premier  League  e-mails  request  the  identification  and  removal  of  'clearly infringing, official broadcast footage.  The March 2006 report indicates Karim's awareness of specific clips that he perceived to be 'blatantly illegal'" constituted evidence of red flag knowledge).

Here, however, Plaintiffs fall far short.  (*See* Sacks Dec., ¶¶ 22, 25, 28).  The exhibits demonstrate  that  MP3tunes'  response  to  certain  user  ticket  posts  and  e-mails  contained  only language from MP3tunes' Terms of Use relating to instructions for sending DMCA-compliant takedown notices.  Plaintiffs' evidence draws no connection between what the user ticket posts

identified and MP3tunes' subjective awareness of specific instances of infringement of EMI-owned copyrights.  (*See id.*, ¶¶ 20-28).  Moreover, Plaintiffs' evidence that MP3tunes forwarded certain user ticket posts internally for discussion does not demonstrate "red flag knowledge"; the evidence, on its face, does not demonstrate the MP3tunes' employees' acknowledgement that materials identified were infringements.  (*See id.*).

For example, Bart Exhibit 68 (*see id.*, ¶ 24) is a user ticket post received by MP3tunes on November 17, 2007.  The user's request to remove links to MP3s identifies a specific artist, Peter Gabriel; specific song titles: My Head Sounds Like That, Barry Williams, Show, Sky Blue, The Drop, and No Way Out; and identifies a specific hosting website, deborahfayecarter.com.  *A review of the tracks as to which Plaintiffs claim copyright ownership does not include either a sound recording or composition copyright for any of those songs*.  The ticket post content states, in part, "I don't want them seen in google (or other search engines)".  MP3tunes responded on November 20, 2007, and informed the user that

> the easiest path is for you to disable or remove the links on your site.  If they are disabled when someone clicks on them again an error is generated which flags the track for automatic removal by our system.  The only provisions we have for manually removing tracks is through the Digital Millennium Copyright Act:  if the copyright holder contacts us with a specific notice of infringement.

Plainly, that exchange does not provide MP3tunes with knowledge of specific tracks infringing Plaintiffs' copyrights, a "high probability" of infringement of Plaintiffs' copyrights, or any acknowledgment that any tracks are infringing.

Finally, as stated above, the internet service provider that gains knowledge or awareness of specific and identifiable instances of infringement retains safe-harbor protection if it "acts expeditiously to remove, or disable access to, the material."   17 U.S.C. §512(c)(1)(A)(iii); *Viacom*, 676 F.3d 19, 30, and 32.  Plaintiffs' evidence does not demonstrate that MP3tunes did not expeditiously remove the referenced link or material identified in certain numerous user

ticket posts and e-mails containing removal requests.  (*See* Sacks Dec. ¶¶ 21-32).  In fact, in many instances, the communications demonstrate that within one or two days of being notified of possible instances of infringement, MP3tunes removed the links.  (*See id*. ¶¶ 29-30).

      **E.**    **Evidence Of E-Mails Related To Takedown Notices From Non-EMI Entities That Do Not Establish A Direct Connection Between Defendant's Awareness Of Specific Instances Of Infringement And Tracks-In-Suit**

Section IV of the August 9 Submission argues that Defendants had red flag knowledge or were willfully blind to infringing domains identified in takedown notices.  Again, this is insufficient under *Viacom*.  Once again, Plaintiffs suggest that Defendants were supposed to blithely block all songs from hosting or referring domains merely because those domains were referred to in multiple takedown notices.  That is not the law.

Plaintiffs' evidence consists of e-mails relating to takedown notices from a variety of non-EMI entities and other third-parties purportedly to demonstrate that Defendant was aware that certain domains, repeatedly identified, were of an "infringing character."  (*See* Sacks Dec. ¶¶ 29-33).  However, Plaintiffs' burden is a showing of knowledge or awareness of the specific infringements of the ***works in suit***.  *Viacom remand,* 2013 WL 1689071, at *3.  Stated another way, unless the evidence shows knowledge or awareness of specific tracks at issue in this litigation, application of the principles of willful blindness or red flag knowledge cannot be shown.  *See Viacom*, 676 F.3d at 34; *Viacom remand*, 2013 WL 1689071 at *5.  This burden cannot be shifted to MP3tunes to disprove.  *Id*.

To meet this standard, Plaintiffs' evidence, on its face, must establish that MP3Tunes was actually aware of the infringing track-in-suit (or the supposed "red flags" associated with it) and, without burdensome investigation, acknowledged the infringement, and did not act expeditiously to remove the unauthorized track.  Here, none of the takedown notices demonstrate a meaningful connection between MP3Tunes' awareness and the tracks in suit.  (*See* Sacks Dec.

¶¶ 29-33).

For example, an August 2007 e-mail containing a takedown notice from Warner Brothers Records, Inc., the IP owner of Damien Rice works, plainly demonstrates that the tracks by artist Damien Rice are not EMI-copyrighted material. (*See* Sacks Dec., ¶ 30, Ex. G). Thus, such evidence does not meet the *Viacom* standard because it does not demonstrate MP3tunes' awareness of specific instances of infringement of tracks actually at issue in this litigation. Further, there is no evidence, on the face of the document, that MP3tunes did not act expeditiously to remove the referenced link or material once notified. To the contrary, the exhibit demonstrates that the very next day, August 29, 2007, all of the identified links were removed from sideload.com. (*Id.*)

Further, EMI's own admissions establish that if MP3tunes disabled links and removed songs from users' lockers on the basis of URLs identified in takedown notices, it would be disabling links which offered authorized free downloads and removing songs which Plaintiffs had made available for free as part of their viral marketing efforts. For example, in the Label Plaintiffs' Amended Responses and Objections to Defendants' Requests for Admissions, dated January 10, 2010, the Label Plaintiffs admit that they made available for free download dozens of songs from the website http://audio.sxsw.com, and yet assert that they did not approve the download of other songs from the same website. (*See* Sacks Dec., Ex. Q at 4, 5, 18, 75 (lines 67, 68, 72 and 1018)).

Similarly, Plaintiffs admit that they approved a track for free download on http://mtv.com or an affiliated website and deny that another song from such website was approved for free download. (*See* Sacks Dec. Ex Q at 84 (lines 1285, 1286, 1290). In addition, Plaintiffs admit that they made free downloads available from the website http://toolshed-media.com. (*See id.*,

Ex Q. at 5 (line 69)).

Further, Plaintiffs own takedown notices assert that downloads from http://audio.sxsw.com and http://toolshed-media.com violate their copyright (*see* Sacks Dec. Exs. R and S), yet as set forth above, they admit that these same URLs hosted approved free downloads.  Accordingly, it is clear that simply because a takedown notice – or multiple takedown notices – alleges that a given URL hosts an infringing song does not provide any knowledge or notice that other matter hosted on that URL may be infringing.

## II.    BECAUSE ALL OF PLAINTIFFS' EVIDENCE PROFFERED ON THE ISSUES OF RED FLAG KNOWLEDGE AND WILLFUL BLINDNESS IS IRRELEVANT UNDER *VIACOM*, THE COURT SHOULD EXCLUDE IT FROM TRIAL

The evidence Plaintiffs proffered on the issues of red flag knowledge and willful blindness is insufficient – and therefore, irrelevant – as a matter of law under *Viacom* – the Court must exclude such evidence from trial.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' red flag knowledge and willful blindness evidence must be excluded.

Dated: New York, New York                       Respectfully Submitted,
       September 14, 2013

                                   AKERMAN SENTERFITT LLP

                        By: */s/ Ira S. Sacks*
                              Ira S.  Sacks
                              Mark S.  Lafayette
                              Vincent Y.  Liu
                              Jamie B.  Robbins
                              666 Fifth Avenue, 20th Floor
                              New York, New York 10103
                              Telephone: (212) 880-3800
                              Facsimile:  (212) 880-8965

                              *Counsel for Defendant Michael Robertson*