UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC., *et al*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MP3TUNES LLC and Michael Robertson,<br><br>　　　　　　Defendants. | No. 07 Civ. 9931 (WHP) (FM)<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY AND DOCUMENTS "RELIED UPON" BY LAURA STAMM**

　　　　Plaintiffs move to exclude the admission of voluminous articles, reports, and webpages purportedly relied upon by Michael Robertson's damages expert Laura Stamm as exhibits at trial, as well as to preclude Ms. Stamm from testifying about Plaintiffs' supposedly "promotional" websites as to which she lacks a factual basis, and from improperly bolstering her credentials with (concededly) irrelevant testimony about her past work for EMI Music Publishing ("EMI Publishing").

　　　　First, in performing her calculations of Plaintiffs' alleged lost profits, Ms. Stamm claimed to have considered a range of academic and journalistic articles, reports, and webpages dealing with a wide range of facets of the music industry. Robertson inexplicably seeks to introduce *all* of those articles and reports as evidence at trial. These articles are not only textbook hearsay but are wholly irrelevant – they deal with subjects far beyond those on which Ms. Stamm is opining. Introduction of these articles as separate exhibits would needlessly confuse the jury and

prejudice Plaintiffs by criticizing the business methods of the music industry and casting aspersions on the current state of copyright law. They should be excluded at trial.

Second, Plaintiffs move to preclude Ms. Stamm from testifying as to the "promotional" nature of websites she reviewed in the course of drafting her report. For reasons separately spelled out in Plaintiffs' accompanying motion to exclude evidence and argument regarding "promotional" downloads, Plaintiffs' marketing strategies are irrelevant to the remaining issues to be tried and risk confusing the jury. Moreover, even if such evidence were still admissible to the remaining issues for trial, Ms. Stamm is not a competent witness to testify about them. Ms. Stamm's deposition revealed that her conclusions that websites were "promotional" were based on her and her staff's looking at the websites themselves, without any attempt to actually access the works Defendants, through sideload.com, pulled from those websites. She admitted to having no factual basis for the "inference" that the downloads on the sites were authorized by the copyright holders, or whether or not the websites required marketing or other valuable consideration in exchange for a free track (which was, as this Court determined, Plaintiffs' general practice). Ms. Stamm should not be permitted to offer her baseless conclusions as to the "promotional" nature of source websites, as she is not qualified in this area, and as such opinions are impermissible lay opinion testimony under FRE 701.

Lastly, Plaintiffs move to preclude Ms. Stamm from testifying regarding her past experience as a consultant for EMI Publishing, including the fact of her prior retention by EMI Publishing. Following Plaintiffs' motion to strike her as an expert because all that she learned as a consultant for EMI Publishing was subject to a confidentiality agreement, Ms. Stamm issued a declaration and report, both of which purported to not rely on any of the information she learned while working for EMI Publishing. Ms. Stamm's position, stated under oath, is thus that her

work as a consultant for EMI Publishing is of no relevance to the case. Permitting Ms. Stamm to testify that she previously worked for certain of the Plaintiffs would serve only to falsely bolster her credibility and lay ground for the improper, incorrect and highly prejudicial inference that her report is based on information she learned while working for EMI Publishing.

## ARGUMENT

**I.     The Hearsay Materials Relied Upon by Ms. Stamm Are Inadmissible as Trial Evidence.**

Robertson has designated as potential exhibits for trial nearly 150 academic and journalistic articles, reports, and website excerpts that Robertson claims Ms. Stamm "relied on" when drafting her report. *See* Proposed Joint Pretrial Order, Ex. D, Defs.' Exs. 1-172; *see also* Radcliff Decl. Ex. A, Stamm Declaration (June 11, 2010), ¶ 6 & Appendix C. These proposed exhibits are paradigmatic examples of hearsay, and Plaintiffs seek to preclude nearly all of them on this basis, specifically exhibits 1-2, 4-6, 8-14, 16-18, 21-24, 25- 34; 45-94, 97-121, 125-172.[1] All of these articles were authored by individuals who were not deposed and will not be testifying at trial. *See* Fed. R. Evid. 802; *United States v. Difeaux*, 163 F.3d 725, 729 (2d Cir. 1998) (newspaper articles are inadmissible hearsay); *Media Alliance, Inc. v. Mirch*, No. 09-CV-0659 (MAD), 2012 U.S. Dist. LEXIS 6332, at *3 (N.D.N.Y Jan. 19, 2012) (same).

The Federal Rules of Evidence do not allow otherwise inadmissible evidence to be admitted at trial just because an expert appends them to a report and vaguely claims to have "relied on" them. *See* Fed. R. Evid. 703. Such an end-run around the rules of evidence is

---

[1] Despite their hearsay nature, Plaintiffs are not presently seeking to preclude all introduction of Defendant's exhibits 3, 7, 15, 19, 20 and 25, all scholarly articles, because Ms. Stamm purported to actually rely on them when drafting her report. Plaintiffs reserve the right to object to the admissibility of these articles on other evidentiary bases at trial.

3

impermissible, particularly where, as here, the introduction of such hearsay evidence would be irrelevant and highly prejudicial to Plaintiffs.

Courts are clear that experts may not merely transmit hearsay evidence to the jury, such as by introducing entire articles and reports as exhibits for the jury's consideration. *See U.S. v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) ("Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the government to circumvent the rules prohibiting hearsay.") (quotation and citation omitted); *Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991) (holding that allowing an expert to read letters from others into evidence served as "a conduit for hearsay" and was reversible error).

Federal Rule of Evidence 703 allows otherwise inadmissible "facts or data" relied upon by an expert to be disclosed to a jury only in narrow circumstances: if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject" and "if their probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect." Fed. R. Evid. 703 (emphasis added). It does not permit the admission of a library of hearsay materials merely because they are appended to an expert's report, and Robertson cannot satisfy the rule here.

First, Robertson cannot plausibly show that Ms. Stamm "relied on" the voluminous number of articles and reports appended to her expert report. In her report, Ms. Stamm purported to calculate the amount of profits that Plaintiffs lost due to MP3tunes' infringement, and she performed this calculation by assuming that a certain number of infringements resulted in a corresponding number of lost sales, and that each lost sale would result in a certain amount of lost revenue to Plaintiffs. To the extent that Ms. Stamm needed to consult *any* outside sources, it was only to form her relatively narrow opinion about the number of lost sales and lost

revenues due to infringement of Plaintiffs' works. Ms. Stamm certainly did not need to rely on the vast majority of the many listed articles or reports to form her opinions, much less the entirety of those articles.

Second, Robertson can make no plausible showing that experts in Ms. Stamm's field would reasonably rely upon the types of materials appended to her report in order to conduct the type of analysis her report attempts. As detailed in the paragraph below, many of the cited materials consist of useless opinion, information, news, or criticism of Plaintiffs more generally, with no indication or explanation of how those materials might inform an analysis of Plaintiffs' lost revenues.

Third, the probative value of the materials does not outweigh, much less "substantially outweigh," their prejudicial effect. Fed. R. Evid. 703. Robertson has transparently listed all of Ms. Stamm's alleged sources with the goal of introducing inflammatory, critical articles about Plaintiffs in an effort to prejudice the jury, and to create a trial "side show" to deflect attention from his own infringing behavior. The proposed articles consist of a sustained barrage of criticism of Plaintiffs' business practices and the current state of copyright law. For example, Robertson seeks to submit as evidence an article from the Pew Internet & American Life Project titled "Downloading Free Music: Internet Music Lovers Don't Think It's Stealing." Defs.' Ex. 102. Such an article was plainly not relied on by Ms. Stamm as its subject has no relevance to the opinions Ms. Stamm offers. Further, it is not a report that any expert would rely on, as it is a subjective survey of the personal opinions of internet users about the morality of copyright infringement. Rather, the obvious purpose of the proffered article is to prejudice jurors against

Plaintiffs by suggesting that infringing conduct is morally acceptable.[2] Other articles are similarly irrelevant to Ms. Stamm's opinions and are plainly offered to portray the Plaintiffs as unsympathetic or insensitive "big businesses," including articles concerning things such as changes in ownership of the EMI Plaintiffs themselves, the sale of the Beatles' "Abbey Road" studio, Paul McCartney's alleged dissatisfaction with EMI regarding an iTunes release, and other bits of useless and irrelevant information. Defs. Exs. 65, 70, 71, 75.

In sum, the hearsay articles appended to Ms. Stamm's report largely contain opinions biased against the Plaintiffs on matters that are simply irrelevant to the case. Under Rule 703, Robertson should be barred from introducing such blatant hearsay evidence at trial. Permitting him to do so would merely create a confusing and prejudicial sideshow about Plaintiffs' business practices unrelated to the issues reserved for trial.

## II. Ms. Stamm Should Be Precluded From Offering Testimony or Evidence Regarding Alleged "Promotional Downloads."

Ms. Stamm should also be precluded from testifying or attempting to introduce documentary evidence regarding the "downloads" she and her employees independently guessed were "promotional" downloads authorized by copyright owners. Permitting Ms. Stamm to testify or to imply through her testimony that such promotional downloads were common, or comprised a significant percentage of the works at issue in the case, would greatly prejudice Plaintiffs, as Defendants have never offered credible proof of their allegations regarding the widespread proliferation by Plaintiffs of promotional downloads during the relevant time periods.

---

[2] Admissibility aside, the mere proffer of such an article as "evidence" speaks volumes about how Robertson views his own actions and those of MP3tunes – that they are infringing under the current law but that he does not agree with the law and thinks it should be changed.

6

This Court has already determined that "EMI placed careful restrictions on the use of its promotional songs and required consumers to visit certain websites or provide valuable marketing information before downloading a song," and that Defendants have failed to meet the standards for abandonment or an implied license. (Opinion on Summary Judgment dated October 25, 2011, p. 27). Plaintiffs accordingly are moving concurrently to preclude all evidence regarding Robertson's repeated irrelevant and distracting allegations that Plaintiffs' routinely gave away music for no consideration at all.[3] The same principles that animate that motion – the irrelevance of Plaintiffs' marketing strategies to the remaining issues for trial, the settled nature of the Court's previous findings on this subject (both on summary judgment and on reconsideration), and the risk of confusing the jury and needlessly lengthening the trial – require preclusion of Robertson's attempt to sneak that very evidence in under the guise of Ms. Stamm's "expert" opinion.

Irrespective of how the Court resolves Plaintiffs' motion to preclude evidence and argument regarding their marketing strategies, it would further violate FRE 701 to allow Ms. Stamm to testify in support of Robertson's contentions regarding Plaintiffs' "promotional" downloads, because she is not a competent witness to testify about them. In her report and as explained in her deposition, Ms. Stamm performed a "lost profits" analysis that depended, in large part, on her and her staffers' independent evaluation of whether particular music files on Defendants' websites were offered elsewhere as "promotional downloads." Specifically, Ms. Stamm testified that she and her colleagues "right-clicked" on the "sideload this track" buttons on the sideload website so that the website address of the source of the track was revealed, then cut and pasted that website address in a browser, then reviewed the website "just to understand

---

[3] *See* Plaintiffs' separate Motion to Exclude Evidence or Argument Regarding "Promotional" Downloads, filed herewith.

what type of website this was." Radcliff Decl. Ex. B, Stamm Deposition, 191:8-194:5. When asked how she determined which sites were offering promotional downloads for free, Ms. Stamm responded to the following question and answer as follows:

> Q.    What factual information do you have that supports the statement here that these offered songs are in many cases used by their copyright holders to promote the sale of music or complementary goods?
>
> A.    Just looking at the website.

*Id.* 201:20-25. When she presumed, for example, that tracks made available on the South by Southwest website were being offered by the copyright holder, she admitted that she had no factual information to support this inference, and that it was merely that: the inference of a layperson viewing a website. *Id.* 202:1-17. Ms. Stamm further admitted that she and her team did not actually try to play the tracks from the source websites, but merely looked at them (*id.* 213:9-19; 214:2-24), that she had no personal knowledge as to how users obtained access to the files on the source websites (216:5-20), and that she did nothing to examine whether users had to enter email addresses or provide other information in order to obtain the tracks in question (*id.* 216:21-217:11). She also admitted that she had no knowledge whatsoever as to the ownership of the copyrights at issue or whether the media sites she visited had actual authorization to offer tracks for free. (218:2-219-10). In short, Ms. Stamm has absolutely no basis to testify that any percentage of the tracks made available for free on the sideload.com website, whether in the "top 100 sideloads" or elsewhere, were promotional in nature. Accordingly, she should be precluded from testifying or attempting to introduce documentary evidence on the subject at trial.

### III.    Ms. Stamm Should Not be Permitted to Testify Regarding Her Experience with EMI Music Publishing.

Finally, Ms. Stamm should be prohibited from improperly bolstering her testimony with evidence of her past work for some of the Plaintiffs. It is undisputed that Ms. Stamm, in her

8

capacity as a Managing Principal of the Analysis Group, worked as a consultant to EMI Music Publishing for several years ending in 2008.  *See* Radcliff Decl. Ex. C, Stamm Declaration (March 24, 2010), ¶ 2.  It is also undisputed that Ms. Stamm has taken the steadfast position that her report and testimony will rely "solely on materials produced in this litigation and/or available through public sources."  *Id.* at ¶ 4.  Indeed, Ms. Stamm's report and deposition testimony revealed that she relied principally on public materials to render her conclusions regarding the Plaintiffs' lost profits arising from the Defendants' infringing acts.

Ms. Stamm should not be permitted to be examined regarding her previous work for EMI Publishing because to allow her to do so would create a ripe opportunity for the incorrect inference that her opinion was based, in some form or another, on work she did for several of the Plaintiffs.  This incorrect inference would be highly prejudicial to Plaintiffs, lending her conclusions that Defendants' infringing acts had virtually no impact on Plaintiffs' profits – a conclusion which defies all logic, since copyrighted works were made available by the Defendants without any compensation to Plaintiffs in any form – an air of credibility that they do not deserve.  Again, Ms. Stamm has stated unequivocally that her report does not rely on information she learned at EMI Publishing.  In this respect, Plaintiffs' motion is merely a prophylactic effort to prevent an incorrect inference being made by the jury.

## **CONCLUSION**

The Court should order that Ms. Stamm may not testify or be questioned regarding her work for EMI Music Publishing, should exclude the designated exhibits appended to Ms. Stamm's expert report, and should preclude her from testifying as to the "promotional" nature of websites which served as the sources for tracks made available on www.sideload.com.

Dated: September 18, 2013

PRYOR CASHMAN LLP

By:   */s Frank P. Scibilia*
Frank P. Scibilia
Jacob B. Radcliff
M. Mona Simonian
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for EMI Publishing Plaintiffs*

JENNER & BLOCK LLP

By:   */s Andrew H. Bart*
Andrew H. Bart
Lindsay W. Bowen
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1645
Facsimile: (212) 891-1699

Steven B. Fabrizio
Luke C. Platzer
J. Douglas Wilson
1099 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 661-4819

*Attorneys for EMI Label Plaintiffs*