UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC., *et al*,<br><br>*Plaintiffs,*<br><br>v.<br><br>MP3TUNES LLC and Michael Robertson,<br><br>*Defendants.* | No. 07 Civ. 9931 (WHP) (FM)<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING PROMOTIONAL DOWNLOADS**

Plaintiffs respectfully submit this memorandum of law in support of their motion *in limine* to preclude from the trial of this action any evidence that Plaintiffs offered downloads of some of their copyrighted works for promotional purposes and any arguments based on such evidence. Throughout this litigation, Defendants have attempted to use the fact that, on limited occasions, Plaintiffs offered downloads of certain copyrighted works to consumers without payment as a defense to Defendants' own massive infringement of Plaintiffs' works. This Court has twice rejected Defendants' argument. As the Court recognized on summary judgment, a copyright owner's decision to offer limited promotional downloads of its works—including under conditions where consumers are exposed to marketing materials, or have to provide identifying information—does not constitute an abandonment of the owner's copyrights or thereafter act as a limit on the copyright owner's right to control the distribution of its works. Nor does it constitute an implied license for others, such as Defendants, to further copy or distribute the copyright owner's works without Plaintiffs' consent, or in a manner that bypasses

Plaintiffs' promotional materials or obviates the need for a user to visit one of the websites Plaintiffs authorized to provide the promotion.

When Defendant Michael Robertson made this argument for the second time on his motion for reconsideration, the Court expressly recognized that Robertson had simply recycled arguments the Court had already rejected in evaluating the extensive record and ruling on the parties' motions for summary judgment.

Robertson's disclosures in the August 30, 2013 Proposed Joint Pretrial Order ("JPTO") make clear that Robertson has not been deterred by this Court's repeated holdings on this subject. It is apparent that he intends at trial to argue once again that Plaintiffs offered some music for download without payment, and that these offers should somehow excuse his and MP3tunes' infringing conduct. Indeed, the sheer number of Robertson's exhibits, deposition designations, and witnesses on this topic indicate that he intends to make this theory the centerpiece of his defense and, if he can, of the trial itself.

Robertson's proffered evidence must be excluded for several reasons. First, the Court's rejections of Defendants' various defenses predicated on Plaintiffs' promotional activities are the law of the case. Robertson may not simply challenge or ignore those rulings at trial because he is displeased with the Court's rulings. Second, evidence regarding Plaintiffs' promotional uses of their works are not relevant to any issue to be tried. Third, the presentation of such evidence would confuse the jury and prejudice Plaintiffs by suggesting, contrary to this Court's express holdings, that Plaintiffs abandoned their copyrights, effectively authorized the copying of the works that Defendants infringed, or were otherwise complicit in the infringement of their works by Defendants and the users of their websites. Finally, admitting such evidence would compel Plaintiffs to put on evidence in response, would dramatically increase the length of the trial, and

would cause the trial to devolve into a lengthy sideshow that would detract from the focus and efficiency of the proceedings.

Robertson and MP3tunes have already had their chances to litigate this theory—twice. The Court should not permit Robertson a third bite at the apple.

## BACKGROUND

Defendant MP3tunes, LLC ("MP3tunes") argued at summary judgment that Plaintiffs' occasional practice of making specific works available for download without financial compensation through their websites or those of partners ("promotional downloads") had the effect of authorizing the copying and distribution, via sideload.com, of Plaintiffs' copyrighted sound recordings and musical compositions. The Court decisively rejected that argument, ruling that Defendants had failed to show the existence of an implied license to sideload these works (or to show that Plaintiffs abandoned their copyrights therein) and that, consequently, "there is no genuine dispute that MP3tunes users sideloaded [Plaintiffs'] copyrighted songs . . . without authorization." Oct. 25, 2011 Am. Mem. & Order (Dkt. No. 276) at 27 ("Summ. J. Op.").

Notwithstanding the Court's decisive resolution on the subject, Robertson subsequently made the identical argument in his reconsideration motion on his own personal liability, advancing the same claims and relying largely on the same documents, while also repackaging those arguments under additional equitable legal theories. The Court rejected what it deemed Robertson's "recycled arguments," affirmed that Plaintiffs' works were "copied unlawfully from unauthorized third party websites," and found that "Robertson fail[ed] to establish a broad implied license for the songs at issue." May 14, 2013 Mem. & Order (Dkt. No. 368) at 12-14 ("Recons. Op.").

The Court's dual rulings on the subject are dispositive for purposes of this case and for the upcoming trial. However, brazenly disregarding this Court's opinions on summary judgment and reconsideration, Robertson has proposed deposition, witness, and exhibit designations in the JPTO that make clear that he intends to make this exact issue, yet again, the focal point of his presentation during the jury trial of the remaining issues in this case. Robertson has included in his exhibit list *over nine hundred* emails and other documents regarding promotional and marketing activities by Plaintiffs. *See* JPTO, Ex. D (DXs 175-608, 647-970, 1262-1409, *etc.*). Substantial portions of Robertson's deposition designations are for EMI witnesses whom Defendants deposed for no purpose other than to pursue their failed licensing and abandonment defenses and consist almost exclusively of questioning surrounding those topics. *Id.* Ex. B (*e.g.*, Abitbol, Heinemann, Ondrejka, Schmitt, and Schwartz deposition designations). Moreover, four of the live witnesses on Robertson's list, including EMI Music Publishing's former CEO, Roger Faxon, were never deposed or previously disclosed by Defendants and have no conceivable connection to this action beyond the fact that their work for the Plaintiffs included some responsibility for the digital promotion of certain of Plaintiffs' works or the authorization of such promotion.

## ARGUMENT

Through the use of a motion *in limine*, a party can "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted); *see also Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). The purpose of a motion *in limine* is to exclude irrelevant and

inadmissible evidence, especially where that evidence may confuse or prejudice a jury. *In re Lawrence,* No. 97-11258, 2008 WL 2095863, at *1 (N.D.N.Y. May 16, 2008). Here, an order excluding the evidence and arguments in question is warranted to ensure that Robertson does not use the jury trial in this action to re-litigate, yet again, irrelevant legal theories the Court has twice rejected, distracting from the issues actually to be tried. *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).

> **A.     The Court Has Rejected Defendants' Theories Predicated Upon Plaintiffs' Promotional Activities and Those Rulings Are Now the Law of the Case.**

As a threshold matter, Defendants have had the chance to litigate their defense theory predicated upon Plaintiffs' promotional offering of downloads. Indeed, they have had two chances to litigate it, and the Court rejected it both times. There is no remaining defense based on an implied license or abandonment of copyright left for trial. Nor, as he did on reconsideration, can Robertson simply pour old wine into new bottles and present the same argument again under different legal theories such as estoppel, unclean hands, or waiver. The Court has already expressly rejected Defendants' argument that "by offering a promotional download from an authorized website, Plaintiffs either abandoned their copyrights altogether or authorized downloads outside of the promotional context." Summ. J. Op. at 27. That decision is the law of the case and Robertson has no legal basis or right to put the parties, the Court, and the jury through the exercise of revisiting it yet again.

As the Court held at summary judgment, Defendants' attempt to argue that Plaintiffs had abandoned their copyrights or impliedly licensed the use of their copyrighted works suffered from two fatal flaws. First, Defendants had failed to establish a nexus between Plaintiffs' promotional activities and the infringing activity at issue. Thus, although there were "instances where [Plaintiffs] authorized the free distribution of songs," Defendants had not established "that

5

the websites involved in that marketing were identical to the URLs identified in the notices." *Id.* at 26. Allowing users to download one work does not thereby permit infringement of a completely different work.

Second, even for the rare cases where Defendants' arguments involved the *same* copyrighted works, the record was clear and uncontradicted that the conditions Plaintiffs imposed on the promotional programs relating to such downloads did not authorize further copying or distribution and certainly did not authorize the use to which Defendants then put the works. Plaintiffs made a very limited number of works available for promotional download in exchange for specific consideration; generally either the user's provision of personal information or exposure to marketing materials. As the Court observed on summary judgment, "the record reveals that [Plaintiffs] placed careful restrictions on the use of [their] promotional songs and required consumers to visit certain websites or provide valuable marketing information before downloading a song." *Id.* at 27. Defendants, however, then set up a system that allowed members of the public to bypass the websites Plaintiffs so authorized (and thus any requests for personal information or exposure to marketing materials) and obtain the copies directly, depriving Plaintiffs of the consideration they offered in exchange for the free downloads. That use exceeded the scope of any authorization granted by Plaintiffs and was plainly infringing. There is no good faith legal dispute that, as copyright owners, Plaintiffs have the exclusive right to authorize use of their works or to prevent such use, and—when authorizing use—to control the scope of that authorization. 17 U.S.C. § 106 (providing that "the owner of copyright under this title has the exclusive rights to do *and to authorize*" reproduction and distribution of copyrighted works) (emphasis added); *see also Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, No. 98 Civ. 3448 (KMW), 2000 WL 1854903, at *3-4 (S.D.N.Y. July 12, 2000); *see generally*

6

*Leutwyler v. Royal Hashemite Court of Jordan*, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) ("It is axiomatic that a party cannot seek damages for violation of copyright law if the use was authorized by the copyright owner.  However, a copyright owner may bring a claim for infringement against a licensee whose actions exceed the scope of the license.") (citation omitted).

To the extent that any of the authorized promotional downloads were copied and distributed by Defendants (and on this record such use, if any, was *de minimis*), Defendants' act of expropriating the value of Plaintiffs' promotional downloads to drive traffic to Defendants' websites exceeded the scope of Plaintiffs' limited authorization and was infringing.  Thus, as the Court concluded, Defendants "ha[ve] the burden to prove the existence of such a broad implied license," but failed to identify "any evidence that, if credited, would meet that burden."  Summ. J. Op. at 27 (citing *Ulloa v. Universal Music and Distribution Corp.*, 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004) and *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 483–84 (2d Cir. 2004)).  The Court then reaffirmed this same holding on reconsideration, recognizing and rejecting Robertson's attempts to raise the same arguments again, under various equitable theories, as "recycled."  Recons. Op. at 12.

The Court's holdings rejecting Defendants' defenses predicated on Plaintiffs' promotional activities are now the law of the case.  The law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).  The doctrine is based on the principle that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for

7

it again." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiffs were forced to expend substantial litigation resources to defeat Defendants' repeated attempts to raise their "promotional downloads" legal theory.[1] The law of the case doctrine exists to protect Plaintiffs from having to go through the same exercise yet again. The issue is now resolved and Robertson is not permitted to re-litigate it simply because he is unhappy with the results of the Court's previous decisions. Evidence and argument on this theory should thus be precluded at trial. *See EMI Music Mktg. v. Avatar Records, Inc.*, 334 F. Supp. 2d 442, 444 (S.D.N.Y. 2004) (granting motion *in limine* to preclude introduction of evidence on issue already decided on summary judgment); *Santoro v. Signature Constr.,* No. 00 Civ. 4595 (FM), 2002 WL 31059292, at *3 (S.D.N.Y. Sept. 16, 2002) (noting that jury would receive instructions as a matter of law regarding issues decided on summary judgment); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 280-81 (S.D.N.Y. 2000) (granting motion *in limine* where Court's previous order limiting damages that could be sought for patent infringement was law of the case); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E.*

---

[1] For instance, on summary judgment, Plaintiffs were forced to go through the monumental exercise of evaluating, and responding to, each and every instance of promotional downloading that Defendants introduced as evidence individually, demonstrating Defendants' repeated mischaracterizations of the record. *See* Nov. 24, 2010 Decl. of Robert Heinemann & Ex. A (Dkt. No. 212); Nov. 24, 2010 Decl. of Abitbol & Ex. A (Dkt. No. 213). Plaintiffs were then required to undertake substantially the same exercise again on reconsideration, responding to both recycled and additional evidence of Plaintiffs' promotional activities proffered by Robertson. *See* Pls.' Opp. to Robertson's Mot. for Recons. & for Summ. J. (Dkt. No. 349) at 7-9; Pls.' Evidentiary Objections to Portions of Decls. (Dkt. No. 351). The effort required to respond to Defendants' myriad misleading examples and mischaracterization of the evidentiary record required substantial time, effort, and expense. Forcing Plaintiffs to undertake the same effort yet again at trial—where Robertson has gone back to the well and disclosed over nine hundred exhibits on this exact same topic after the Court has rejected his theories twice already—would prejudice Plaintiffs by forcing them to incur those same expenses a third time and divert vital resources from their trial preparation with mere weeks to go before trial.

*Myers Co. Grp.*, 937 F. Supp. 276, 285-86 (S.D.N.Y. 1996) (granting motion *in limine* to preclude evidence at trial where Court previously determined that no triable issue remained to which the evidence would be relevant, and such determination was law of the case); *Branch v. Ogilvy & Mather, Inc.*, 765 F. Supp. 819, 823 (S.D.N.Y. 1990) (applying law of the case on a motion *in limine* where defendants failed to provide a reason to disregard the Court's previous holding on a copyright claim in a reasoned opinion fully supported by existing law).

### B. Plaintiffs' Promotional Activities Have No Relevance to any Material Dispute of Fact Remaining for Trial.

Aside from the fact that the defenses predicated upon Plaintiffs' promotional activities have been conclusively dismissed by this Court, the evidence proffered by Robertson is immaterial to the infringing activity as to which there are issues of fact to be tried. Thus, all such evidence should be excluded not only pursuant to the law of the case doctrine, but also because it is irrelevant under Fed. R. Evid. 402.

Lacking evidence that provides any defense to the remaining factual issues to be tried, Robertson has apparently decided to try to hijack the upcoming trial by recasting it as a inquisition focused on Plaintiffs' promotional practices. This is not conjecture; it is confirmed by Robertson's portion of the JPTO. The evidence Robertson identifies therein addressing Plaintiffs' promotional activity is too voluminous to catalog comprehensively, but it is uniformly irrelevant and inapposite. It consists, for the most part, of:

(1) Evidence about Plaintiffs' promotion of works as to which Defendants' liability for infringement is not an issue to be tried (*i.e.*, works that Plaintiffs have not claimed that Defendants infringed);[2]

---

[2] *See*, *e.g.*, JPTO, Ex. D (DXs 760-70, 1371-75, 1397-1409, 1448-94, 1732-48, 1750-90, 1979-84).

9

(2)     Evidence that Plaintiffs offered some promotional downloads as a general proposition without a nexus to any promotional download of a particular work whose infringement is in issue at trial;[3]

(3)     Evidence about Plaintiffs' promotion of works that Plaintiffs offered for online *streaming* rather than copying;[4]

(4)     Evidence about Plaintiffs' promotion of works as to which Plaintiffs offered live versions, remixes, or other alternate versions, rather than the original studio recordings that Defendants infringed in this case;[5] and

(5)     Evidence about Plaintiffs' promotion of works that postdate the relevant infringement period in this litigation for works other than those listed on Plaintiffs' takedown notices, which runs until December 9, 2009.[6]  *See Edward Andrews Group Inc. v. Addressing Servs. Co., Inc.*, No. 07 Civ. 4607 (AJP), 2008 WL 759337, at *2 (S.D.N.Y. Mar. 24, 2008) (granting motion to exclude when evidence was not relevant to the time period of the claim).

Thus, in addition to the fact that Defendants' theories about Plaintiffs' promotional downloads have been rejected twice by this Court and may not be presented again, nearly all of Robertson's "evidence" pertains to different works (and time periods) than the ones for which liability remains an issue for trial, and is thus immaterial to presenting any defense based on those promotional activities.  *See* Summ. J. Op. at 26 (noting that for much of Defendants' evidence of "instances where [Plaintiffs] authorized the free distribution of songs," Defendants had not established "that the websites involved in that marketing were identical to the URLs identified in the notices").  Moreover, even if Robertson had any evidence that pertains to Plaintiffs' offering of promotional downloads during the relevant time periods of works as to which liability remains to be tried, this Court's prior holdings establish that such evidence would still not be legally relevant to establishing authorization because Plaintiffs did not authorize

---

[3] *See, e.g., id.* (DXs 805-07, 809-10, 901, 1842, 1858, 1883).

[4] *Id.* (DXs 237, 285-86, 1520, 1969, 2140, 2195, 2196, 2253, 2254).

[5] *Id.* (DXs 212-28, 234-36, 238, 340-41, 346-47, 443, 536-42, 676-77, 683, 805-07, 809-11, 813-14, 827, 949-53, 1596, 2016, 2145, 2195, 2196, 2199, 2207).

[6] *See, e.g., id.* (DXs 1641-42).

10

Defendants' use of those tracks to attract users to Defendants' own websites. Nor is such evidence relevant to any *other* issue to be tried. Thus, the Court should further exclude all of Robertson's evidence as irrelevant under Rule 402.

> **C.** **Robertson's Evidence Risks Confusing and Biasing the Jury and Distracting From the Proceedings.**

If permitted an opportunity to re-litigate his failed abandonment and licensing defenses yet again at trial, Robertson will not only confuse the jury as to the issues to be tried (which, of course, is his intent in offering this evidence) but will hijack the trial by improperly redefining the issues remaining to be tried. Robertson's intent to recast unilaterally and improperly the issues to be tried is confirmed by the sheer volume of irrelevant evidence on Plaintiffs' marketing activities contained in Robertson's portion of the JPTO—including *over nine hundred* exhibits and at least *seven* if not more witnesses whose sole purpose is to testify on these topics. Thus, the exclusion of such evidence and argument is not only mandated under the law of the case doctrine and under Rule 402 as plainly irrelevant evidence, it is also warranted under Fed. R. Evid. 403 to prevent the trial from being overwhelmed by a distracting and potentially prejudicial sideshow about Plaintiffs' marketing strategies.

The potential for prejudice and confusion is substantial. First, having failed to establish a legally cognizable defense of abandonment or implied license, Robertson seeks to take a third bite at the apple, and accomplish the same result before the jury by conveying the prejudicial implication that Plaintiffs were somehow complicit in infringement of their works. *See, e.g.*, *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (noting that the "prejudicial effect may be created by the tendency of the evidence . . . to excite emotions against [a party]"); *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) (granting motion to exclude evidence of a compensation package because it was prejudicial given the "potential economic

11

sympathies or prejudices" of the jury).  Lacking a legally cognizable defense, Robertson should not be permitted to appeal to the passions of the jury to accomplish the same result.

Second, it is clear that by presenting voluminous evidence pertaining to Plaintiffs' marketing of works that are *not* the works that Defendants infringed, Robertson intends to create confusion as to which works Plaintiffs made promotionally available and which they did not. Given that Robertson's evidence overwhelmingly pertains to works not in issue at trial,[7] this confusion is plainly what he intends.

Finally, if this evidence is allowed at trial, it is inevitable that Robertson's presentation of evidence about Plaintiffs' marketing and promotional practices will become a time-consuming sideshow that distracts focus from the issues that actually need to be tried and decided by the jury.  As stated above, the sheer volume of Robertson's proposed exhibits, deposition designations, and live witnesses that pertain to this topic, if admitted, would overwhelm the evidence in this case relating to the material questions of fact that remain to be tried.  Moreover, if Robertson is permitted to distract the jury with this irrelevant but confusing and potentially prejudicial evidence, Plaintiffs will be left with no choice but to do what they were forced to do on summary judgment: present rebuttal evidence and witnesses regarding their marketing practices in order to counter the prejudicial implications and misimpressions that the jury will inevitably be left with after Robertson's presentation.[8]  The end result would be a trial in which substantial amounts of time are spent, by both parties, litigating an issue that the Court has

---

[7] This danger is compounded by the fact that much of Robertson's evidence is highly cumulative; for example it includes long, repetitive email chains about the promotion of specific works not in issue at trial.  *See*, *e.g.*, JPTO, Ex. D (DXs 253-58, 263-65, 267, 444-47, 908-21, 1979-83).  The sheer volume of these irrelevant materials seems designed to leave the jury with the false impression that Plaintiffs' offering of promotional downloads was so pervasive as to encompass the works in suit, even though Robertson lacks competent evidence to that effect.

[8] *See supra* note 1.

already decided twice. The Court should protect judicial economy by preventing the trial from falling down this rabbit hole.

### D. Robertson Should Be Precluded From Calling Roger Faxon, former Chairman and CEO of EMI Music Publishing, as a Witness at Trial.

In addition to excluding the unnecessary, irrelevant and prejudicial evidence concerning Plaintiffs' promotional downloads, this Court should also preclude Robertson from calling Roger Faxon as a witness at trial because his testimony would be irrelevant and cumulative evidence concerning the EMI Publishing Plaintiffs' authorization of promotional downloads. In the JPTO, Robertson designated Mr. Faxon, former Chairman and CEO of EMI Music Publishing, as a witness despite the fact that Mr. Faxon has not been deposed in this action, and despite the fact that the only specialized knowledge Mr. Faxon has with regard to the issues in this action relate to the ultimate approval of promotional download licenses. JPTO at 28.

Specifically, because granting licenses for free promotional downloads was not a common occurrence for the EMI Publishing Plaintiffs, Mr. Faxon, as then-CEO, was responsible for giving the final approval of any proposed license. Nov. 24, 2010 Decl. of Michael Abitbol (Dkt. No. 213) ¶7. All such final approvals and rejections were produced to Defendants during discovery. However, Mr. Faxon is not the only person with knowledge of such licenses. *See id.* ¶2. Indeed, Robertson knows this because Defendants deposed EMI Music Publishing Vice President of Legal and Business Affairs, Michael Abitbol, mainly with respect to the issue of promotional downloads, and Mr. Abitbol proved more than qualified to testify to such matters.[9]

---

[9] In fact, this Court credited Mr. Abitbol's testimony by declaration concerning such promotional downloads on summary judgment and used it as a basis to find that Plaintiffs had not created an implied license or abandoned their copyrights. *See* Summ. J. Op. at 27. Indeed, Mr. Abitbol's November 24, 2010 Supplemental Declaration (Dkt. 213) identified *each and every* license for promotional downloads that the EMI Publishing Plaintiffs authorized during the relevant time period, as well as the time, volume, consumer data or other restrictions placed on such licenses. (Dkt. 213, Nov. 24, 2010 Supp. Abitbol Decl., ¶¶14-26, Ex. A.)

13

1. <u>Mr. Faxon's Testimony Would Be Irrelevant, Prejudicial, and Cumulative.</u>

As set forth above, this Court twice determined that Defendants have no defense to their own infringing activities on the basis of Plaintiffs' licensing of certain promotional downloads. Thus, Mr. Faxon's testimony with respect to his ultimate approval or denial of particular licenses would be wholly irrelevant under Fed. R. Evid. 402. Similarly, just as with the documentary evidence concerning promotional downloads, Mr. Faxon's testimony concerning such promotional licenses would only serve to confuse the jury and muddy the issues that are to be presented for trial.

Moreover, even if this Court determined that Faxon's testimony would be relevant, it would be entirely cumulative of the testimony of Michael Abitbol, who (unlike Mr. Faxon) has been deposed in this action and already provided testimony on this issue, which testimony has been presented to and credited by the Court. Mr. Faxon has no particularized knowledge of any of the remaining issues to be tried, and could only offer particularized knowledge of his approval of promotional download licenses, for which Mr. Abitbol has already been deposed and offered testimony. As such, for the reasons stated above, Defendants should be precluded from calling Mr. Faxon as a witness designated to provide only cumulative testimony.

2. <u>Robertson Designated Mr. Faxon For The Sole Purpose Of Harassment.</u>

Given that Mr. Faxon has no other particularized knowledge of the issues in this action beyond the approval or denial of promotional download licenses, it is apparent that Robertson only designated Mr. Faxon as a witness to harass Faxon and Plaintiffs. Indeed, Plaintiffs explained that Mr. Faxon did not have knowledge of matters beyond the issue of his approval of promotional download licenses, and that matter had already been resolved by the Court. Plaintiffs also explained that any testimony concerning such licenses he could provide would be

14

cumulative of Mr. Abitbol's testimony. Thus, Plaintiffs requested that Robertson withdraw his designation. Robertson, however, refused.

Having been unable to identify any other triable issues with respect to which Mr. Faxon has particularized knowledge, Robertson should not be permitted to call Mr. Faxon as a witness. Because Mr. Faxon's testimony would not offer any unique information relevant to the trial, it is clear that Robertson seeks to impose a burden on Mr. Faxon and on Plaintiffs for the purposes of harassing a former high-level executive at EMI. The Courts are mindful of this common motivation in designating high-level executives to testify, and may preclude examination where the executive has no "unique knowledge of the issues in the case." *Plew v. Ltd. Brands, Inc.*, No. 08 Civ. 3741 (LTS)(MHD), 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012) (internal quotation marks omitted). Here, it cannot be disputed that Mr. Faxon lacks any specialized knowledge of the issues remaining for trial and thus, Robertson should be precluded from calling him as a witness. *See id.*

### E. Robertson Should Be Precluded From Calling Former and Current Label Plaintiffs Marketing Employees Not Previously Disclosed as Witnesses.

Finally, Robertson should be precluded from calling three witnesses named in his JPTO disclosures whose testimony would serve no purpose other than to present cumulative and irrelevant testimony about the promotional activities discussed above. Robertson's witness list includes Nick Clift, Devin Krug, and Stephanie Trick, two current and one former marketing employee of the Label Plaintiffs, whom Defendants had not deposed during discovery in this action nor previously disclosed as intended witnesses in the previous iteration of the JPTO from April 2012. *See* JPTO at 28. Counsel for Robertson has represented that Robertson intends to call these witnesses to testify regarding Plaintiffs' offering of downloads for promotional purposes reflected in Robertson's proposed trial exhibits, and declined to identify any other

subject on which these witnesses might testify.[10]  For all the reasons stated above, calling these three witnesses would be irrelevant, prejudicial, and detract focus from the issues to be tried.[11]

Irrelevance and prejudice under Rules 402 and 403 aside, Robertson's attempt to call these witnesses is unwarranted given the discovery history in this case.  Defendants had every opportunity to depose these three employees, whose names were indicated in communications produced during discovery, to discover whether they possessed knowledge relevant to the issues that remain for trial.  Defendants declined to do so.  Robertson instead intends to obtain their testimony for the first time on the witness stand at trial, without any indication that the employees have any relevant knowledge to offer.  Particularly given that the sole topics on which these witnesses might testify pertain to defenses the Court has already rejected, there is no reason to put the witnesses, the parties, or the jury through this pointless exercise.

## CONCLUSION

Trial in this matter should be focused on the material disputes of fact identified by the Court in its summary judgment and reconsideration decisions, and not on providing Robertson a chance to revisit issues already decided in Plaintiffs' favor.  The Court should preclude Robertson from arguing or presenting evidence at trial regarding Plaintiffs' offering of promotional downloads of their works.

---

[10] Robertson was not willing to accept, in lieu of the testimony of these three witnesses, an agreement by Plaintiffs that Plaintiff-produced documents on which these three witnesses appear are authentic and not barred on hearsay grounds.

[11] Plaintiffs are also separately moving to preclude testimony by Defendants' witness Steve Gordon regarding Plaintiffs' marketing strategies, which—in addition to other problems with the testimony—is irrelevant and prejudicial for the reasons stated in this Motion.  *See* Pls.' Mem. of Law in Supp. of Mot. *in Limine* to Exclude the Decl. of Steve Gordon and to Preclude Gordon from Testifying at Trial, filed herewith.

DATED:  September 18, 2013        Respectfully submitted,

By:   */s Andrew H. Bart*
    Andrew H. Bart
    Lindsay W. Bowen
    JENNER & BLOCK LLP
    919 Third Avenue, 37th Floor
    New York, New York 10022
    Telephone: (212) 891-1645
    Facsimile:  (212) 891-1699

    Steven B. Fabrizio
    Luke C. Platzer
    J. Douglas Wilson
    JENNER & BLOCK LLP
    1099 New York Avenue NW
    Washington, DC 20001
    Telephone: (202) 639-6000
    Facsimile:  (202) 661-4819

    *Attorneys for EMI Label Plaintiffs*

By:   */s Frank P. Scibilia*
    Frank P. Scibilia
    Jacob B. Radcliff
    M. Mona Simonian
    PRYOR CASHMAN LLP
    7 Times Square
    New York, New York 10036
    Telephone:  (212) 421-4100
    Facsimile: (212) 326-0806

    *Attorneys for EMI Publishing Plaintiffs*