UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CAPITOL RECORDS, LLC, *et al.*,           :
                                          :
             *Plaintiffs*,            :
        v.                          :   07 Civ. 9931 (WHP)
                                          :
MP3TUNES, LLC and MICHAEL ROBERTSON,      :
                                          :
             *Defendants*.           :
-----------------------------------------------------------------x


**ROBERTSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE TO PRECLUDE ARGUMENT REGARDING THE LEGALITY
OF LOCKER SERVICES AND CLOUD COMPUTING**


**AKERMAN SENTERFITT LLP**
Ira S. Sacks
Mark S. Lafayette
Vincent Y. Liu
Jamie B. Robbins
666 Fifth Avenue, 20th floor
New York, New York 10103
Telephone: (212) 880-3800
Facsimile:  (212) 880-8965

October 9, 2013                           *Counsel for Defendant Michael Robertson*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

ROBERTSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE ARGUMENT REGARDING THE LEGALITY OF LOCKER SERVICES AND CLOUD COMPUTING ...................................................................................................................... 1

    I.    ROBERTSON SHOULD BE ABLE TO EXPLAIN TO THE JURY THE CONTEXT AND BACKGROUND OF THIS LITIGATION ............................................... 3

    II.    COMPARISON BETWEEN THE LOCKER SERVICE AND THE CLOUD SERVICES WITH WHICH A JURY IS FAMILIAR HELPS THE JURY TO UNDERSTAND THE TECHNOLOGY AT ISSUE ................................. 5

    III.    REFERENCES TO THE LOCKER SERVICES AND COMPARISON TO CLOUD SERVICES WILL HELP – NOT CONFUSE – THE JURY AND DOES NOT UNFAIRLY PREJUDICE PLAINTIFFS ......................................................... 7

    IV.    THE REQUESTED RELIEF IS HOPELESSLY VAGUE ............................................. 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carolina Canners, Inc. v. PBV Conway-Myrtle Beach*,
   2012 WL 2327777 (D.S.C. June 19, 2012) ................................................................. 9

*Katt v. City of New York*,
   151 F.Supp.2d 313 (S.D.N.Y. 2001) ............................................................................ 8

*Morris v. Eversley*,
   2004 WL 856301 (S.D.N.Y. Apr. 20, 2004) ................................................................ 8

*United States v. Coonan*,
   938 F.2d 1553 (2d Cir. 1991) ....................................................................................... 3

*United States v. Grimmond*,
   137 F.3d 823 (4th Cir. 1998) ........................................................................................ 8

*United States v. McCallum*,
   348 F. App'x 693 (2d Cir. 2009) .................................................................................. 3

*United States v. Wallace*,
   124 F. App'x 165 (4th Cir. 2005) ................................................................................ 8

*Weyant v. Okst*,
   182 F.3d 902 (2d Cir. 1999) ......................................................................................... 3

*Williams v. McCarthy*,
   2007 WL 3125314 (S.D.N.Y. Oct. 25, 2007) ........................................................... 3, 5

**RULES AND STATUTES**

42 U.S.C. § 1983 ................................................................................................................. 3

Fed. R. Evid. 403 ................................................................................................... 5, 7, 8, 9

**OTHER AUTHORITIES**

22 Fed. Prac. & Pro., Evidence § 5217 ............................................................................. 9

### ROBERTSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE ARGUMENT REGARDING THE LEGALITY OF LOCKER SERVICES AND CLOUD COMPUTING

Defendant Michael Robertson ("Robertson"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiffs' Motion *in Limine* to Preclude Argument Regarding the Legality of Locker Services and Cloud Computing, filed on September 18, 2013 [Doc. No. 421] (the "Motion"). The Motion should be denied because it, in essence, seeks an inappropriate and vague gag order concerning relevant information which would aid the jury in understanding the technology at issue in this case and the context in which that technology was developed.

Plaintiffs forget, intentionally so, the status of cloud computing and locker services in 2005 and thereafter, and how this case came about. In 2006, major labels took the position that a consumer could not make a copy of a CD he or she owned and upload it to be stored online – in the cloud – to be retrieved and listened to on a variety of devices, including another computer. Thus, in February 2006, the Recording Industry Association of America ("RIAA") – of which the Label Plaintiffs are prominent members – took the position that "creating a back-up copy of a music CD is not a non-infringing use," because "the fact remains that there is no general exception to the reproduction right to allow back-up copying." (*See* RIAA submission, [http://www.copyright.gov/1201/2006/reply/11metalitz_AAP.pdf](http://www.copyright.gov/1201/2006/reply/11metalitz_AAP.pdf)). Robertson was in the forefront of challenging the major labels to agree that such conduct was lawful by starting locker services, such as AnywhereCD, long before others had made them commonplace.

With the advent of digital downloads, Robertson – through MP3tunes.com – was in the forefront of allowing consumers to buy digital music and save it in a locker for playback through a variety of devices – including phones – at any time and any place. Robertson did that long before Apple, Google, Amazon and the current market leaders. Plaintiffs seek to forget that

when they started this case, they asserted that even such conduct was unlawful, wholly apart from sideload.com.

The principal aspect of the infringement claims left in this case are that songs sideloaded on sideload.com and stored in lockers were not removed from lockers in response to takedown notices. Again Plaintiffs seek to hide from the facts that:

- They were the only label to sue asserting that such conduct was unlawful.

- They sued in connection with such conduct despite the proliferation of free downloads on the internet – including from Plaintiffs (even if they required marketing information) – and that it was impossible for a user to tell whether a song available for download was authorized.

Plaintiffs also seek this gag order on Robertson despite arguing that MP3tunes was an ISP "whose entire business plan consisted of exploiting copyrighted works who had little or no other use for the site who induced users to commit infringement…. When you have a site that has no purpose other than to make commercial sound recordings available to the public, the only use for this is to exploit it and to use it for an improper purpose." (February 14, 2013 Tr. at 4-6). The jury is entitled to hear both sides of the context of the websites at issue.

Finally, the relief the Motion seeks is vague: even if the relief was granted, it would be virtually impossible to draw the line between compliance and inadvertent non-compliance.

More specifically, in essence, the Motion argues that Robertson should not be able to introduce (1) the background of the technology at issue; (2) draw similarities between the technologies with which the jury may be familiar and the relevant technological issues, which Plaintiffs admit "would be unfamiliar to a jury" (*see* Mem. of Law in Support of the Motion, filed September 18, 2013 [Doc. No. 422] ("Pl. Br.") at 5); and (3) the context and background out of which this litigation arose. Plaintiffs argue that such issues would be irrelevant and prejudicial. (*Id*. at 3-5).

Plaintiffs wish to try this case with no context, no explanation of the technology involved, and no comparison for the benefit of the jury between a technology with which they are unfamiliar and other more familiar technologies. (*Id*. at 2-3 (narrowing defining the issues for trial)). Robertson is entitled to explain the relevant technology, to compare the relevant technology, which is admittedly "unfamiliar to a jury", to familiar technologies such as Apple and Google, because such a comparison serves as an effective pedagogical tool, and to explain to the jury the background and context of this litigation.

The Motion should be denied.

**I.     ROBERTSON SHOULD BE ABLE TO EXPLAIN TO THE JURY THE CONTEXT AND BACKGROUND OF THIS LITIGATION**

The district court has broad discretion over the admission of evidence, "including background evidence to show the circumstances surrounding the events or to furnish an explanation of the intent with which certain acts were performed…" *Weyant v. Okst*, 182 F.3d 902 (2d Cir. 1999). For this reason, the *Weyant* court affirmed the admission of a witness's testimony that defendant had punched him in the groin, even though the defendant had prevailed in a prior trial where that witness sued the defendant over that punch. *Id*.

Similarly, in *Williams v. McCarthy*, a § 1983 case in connection with the arrest of plaintiffs, the district court admitted as "background evidence" the fact that plaintiff was on parole at the time he was arrested, noting that

> The trial court may admit evidence that ***does not directly establish an element of the offense charged, in order to provide background for the events alleged*** .... Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

2007 WL 3125314, at *4 (S.D.N.Y. Oct. 25, 2007) (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)); *see United States v. McCallum*, 348 F. App'x 693, 695 (2d Cir.

3

2009) (admitting defendant's uncharged drug activity as background evidence).

Here, Plaintiffs seek to prohibit Robertson from introducing any evidence concerning MP3tunes' locker services because the "legality of the functionality of MP3tunes' locker service in allowing users to store lawfully obtained music 'in the cloud' is not and has never been an issue for the jury." (Pl. Br. at 3). This argument, as shown by case law cited above, flatly fails. First, at the outset of this case, the legitimacy of MP3tunes' locker service was at issue; Plaintiffs, in their takedown notices, argued that MP3tunes was not an ISP with DMCA protection at all. Thus, Plaintiffs stipulated in the Proposed Joint Pretrial Order, dated August 30, 2013, that

> MP3tunes received two takedown notices from EMI Music Group North America and one takedown notice from EMI Entertainment World *advising MP3tunes of alleged instances of copyright infringement occurring on the Sideload Website and Locker Website* (the "Takedown Notices").

(Proposed Joint Pretrial Order at 23, ¶ 9).

Further, the second paragraph of the Complaint that commenced this litigation, for example, states flatly "MP3tunes engages in these acts of willful infringement through its operations of *two Internet websites*, www.sideload.com and www.mp3tunes.com [which offers the locker service]." (Compl. [Doc. No. 1] ¶ 2 (emphasis added)). The complaint goes on to allege that

> Through these websites, Defendant MP3tunes provides its users with an *integrated music service* through which they can listen to music over their computers, *obtain permanent copies of music stored in online "lockers" provided by MP3tunes*, transfer music *from their MP3tunes lockers* to their computers or other portable devices, and further distribute that music to others.

(*Id*. (emphasis added)).

Thus, as far as Robertson is aware, the legality of the MP3tunes locker service is still very much in issue.

Moreover, even if the MP3tunes' locker service's legality is no longer in dispute – which itself is an astonishing concession by Plaintiffs – the Court may admit evidence "that does not directly establish an element" of the claims. *Williams*, 2007 WL 3125314, at *4.

Simply put, it is not only disingenuous – but also hypocritical – for Plaintiffs to argue now that the legality of the functionality of MP3tunes' locker service in allowing users to store lawfully obtained music 'in the cloud' is not and has ***never*** been an issue for the jury." (Pl. Br. at 3 (emphasis added)). Even if this evidence "does not directly establish an element" of the claims, *Williams*, 2007 WL 3125314, at *4, it should nevertheless be admitted as background evidence. At the minimum, the jury would be extremely confused if they were told that the Takedown Notice allegedly advised Defendants of "alleged instances of copyright infringement occurring on" two websites, yet Robertson is only permitted to ever discuss only one of the websites. (Exhibits C & D to the Declaration of Ira S. Sacks, dated October 9, 2013). The Court thus should deny Plaintiffs' request to prohibit Robertson from discussing locker services.[1]

## II. COMPARISON BETWEEN THE LOCKER SERVICE AND THE CLOUD SERVICES WITH WHICH A JURY IS FAMILIAR HELPS THE JURY TO UNDERSTAND THE TECHNOLOGY AT ISSUE

Plaintiffs also seek to prohibit Robertson from making any comparison between the MP3tunes' locker services and other services, such as iTunes, Dropbox, or Google Drive, with which a jury would be more familiar. (*See* Pl. Br. at 4-5). As explained at the outset, this position is frivolous. Plaintiffs are trying to prevent Robertson from effectively explaining to the jury a technology that admittedly "would be unfamiliar to a jury" (Pl. Br. at 5) by making comparisons to technology that – again in Plaintiffs' words – would be "instantly familiar" to the jury. (*Id*.). Drawing analogies between the unfamiliar technologies with the technologies that a jury is likely to understand is a powerful pedagogical tool that can greatly help the jury to

---

[1] Plaintiffs' argument under Rule 403 is discussed in Point III below.

understand the technological issue.

*First*, despite Plaintiffs' complaint, they do not dispute – nor can they dispute – that MP3tunes' locker service is just like that of Dropbox or Google Drive. At bottom, the locker service permits a user to upload files over the internet to a remote server for storage; subsequently, the user could download the uploaded file over the internet at any different location. This is precisely what Google Drive and Dropbox offer. (*See*, *e.g.*, http://www.google.com/drive/about.html (Google Drive permits a user to "[u]pload photos, videos, documents, and other files that are important to you to Google Drive" and "[w]ith [Google] Drive, your stuff goes where you go."); https://www.dropbox.com/ ("Put your stuff in Dropbox and get to it from your computers, phones, or tablets.").

Indeed, Plaintiffs do not – and cannot – dispute that these popular services are similar to MP3tunes' locker services (users upload files to remote servers for future downloads at different locations).

In addition, Plaintiffs are not taking a position that the services have different legal ramifications. For example, Plaintiffs are *not* taking the position that if a user uploads an unauthorized copy of a sound recording onto Dropbox or Google Drive, they would not consider such an act immune from lawsuits by Plaintiffs. They simply fear that the jury may not find for Plaintiffs against technologies the jurors like. (Pl. Br. at 5). Plaintiffs' argument, if prevailed, is to artificially deprive the jury of a powerful tool through which it could better understand the relevant technologies.

*Second*, Plaintiffs decry that the jury could be unlikely to find for them if they knew that it could hold the popular internet services liable for infringement. But this position is not very different from the one that the industry group to which Plaintiffs belong took shortly before this

litigation commenced.  Though the trial date will be in 2014, this case initiated in 2007.  As explained above, in February 2006, the RIAA submitted comments to the United States Copyright Office in the rule making process.  (*See* RIAA submission, http://www.copyright.gov/1201/2006/reply/11metalitz_AAP.pdf).  This submission, for example, took the position that "creating a back-up copy of a music CD is not a non-infringing use," because "the fact remains that there is no general exception to the reproduction right to allow back-up copying."  (*Id.*).  Thus, Plaintiffs' industry group's position was certainly that backup copies, including backup copies uploaded onto sites such as MP3tunes, Google Drive, or Dropbox, are infringing.  Plaintiffs are simply trying to hide their positions from the jury, fearing that it would find a hostile audience.

      This is yet another reason why the Motion should be denied.

### III. REFERENCES TO THE LOCKER SERVICES AND COMPARISON TO CLOUD SERVICES WILL HELP – NOT CONFUSE – THE JURY AND DOES NOT UNFAIRLY PREJUDICE PLAINTIFFS

      Plaintiffs also argue that Rule 403 prevents the references to either the locker services or the comparison between the locker services and the well-known cloud storage services such as Dropbox and Google Drive.  (Pl. Br. at 4-5).  They assert that these references would confuse the jury and be unfairly prejudicial to them.  Both arguments lack merit.

      *First*, as shown above in Point I, MP3tunes' locker service formed a part of key background evidence.  Based on Plaintiffs' own allegations and statements since the beginning of this case, it was an "integrated music service" through both the locker site and the sideloading site that allegedly infringed copyrights.  (Compl. ¶ 2).  Robertson is entitled to introduce this background evidence to give the jury a more complete picture of the facts of the case.  This would not confuse – but rather help – the jury to better assess the issues.

      *Second*, as shown above in Point II, comparison between MP3tunes' locker service and

7

the popular cloud services such as Google Drive and Dropbox is a powerful pedagogical tool to educate the jury on the background technology. Again, such a comparison would not confuse – but would rather help – the jury to understand the technology. Indeed, Plaintiffs do not argue that the technologies are different here; they simply fear that the jury would not find for them because the jurors may personally use Google Drive or Dropbox. (Pl. br. at 5).

*__Finally__*, admitting both categories of evidence would not ***unfairly*** prejudice the jury. Plaintiffs will argue – as they have in the past – that MP3tunes existed solely as a device to steal and infringe. The jury must be allowed to hear both sides of that argument.

A district court performing Rule 403 analysis "must balance the probative value of the evidence against the danger of unfair prejudice and confusion and considerations of undue delay." *Morris v. Eversley*, 2004 WL 856301, at *2 (S.D.N.Y. Apr. 20, 2004). When Plaintiffs ignored the relevance of both the locker service evidence and the helpfulness of comparison between the locker service and the other better known cloud services, they have already failed to perform the analysis properly.

Moreover, "[u]nder this rule, 'damage to [Plaintiffs'] case is not a basis for excluding probative evidence,' because '[e]vidence that is highly probative invariably will be prejudicial to the [opposing party]." *United States v. Wallace*, 124 F. App'x 165, 167 (4th Cir. 2005) (quoting *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998)). Unlike evidence that is *unfairly* prejudicial, the evidence here is fair because it does not make "an appeal to emotion", *Wallace*, 124 F. App'x at 167, or suggests that Plaintiffs "[are] bad [people] who [have] likely engaged in other forms of misconduct for which [they] should be punished, regardless of the merits of this case." *Katt v. City of New York*, 151 F.Supp.2d 313, 360 (S.D.N.Y. 2001).

Plaintiffs also offered no reason why the adversarial process itself, through good

8

advocacy and vigorous cross examination, could not clear up any potential prejudice or confusion. *See Carolina Canners, Inc. v. PBV Conway-Myrtle Beach*, 2012 WL 2327777, at *2 (D.S.C. June 19, 2012) ("Potential confusion to the jury or prejudice to Plaintiff may be addressed through cross-examination."). Indeed, exclusion of evidence under Rule 403 is appropriate **when the adversary system could not properly cure the use of evidence because** "the attempt to rebut the misleading inference is likely to lead the jury to infer that the evidence is of greater probative worth than it truly is." 22 Fed. Prac. & Pro., Evidence § 5217. That is clearly not the case here.

## IV.   THE REQUESTED RELIEF IS HOPELESSLY VAGUE

Finally, the requested relief is hopelessly vague. Plaintiffs request "an Order to preclude argument regarding the legality of locker services and 'cloud computing.'" (Notice of Motion [Doc. No. 421] at 1). Read literally, that would prevent an argument that any of the challenged conduct by Defendants was lawful. Such an overbroad request is baseless.

### CONCLUSION

For all of the foregoing reasons, the Motion should be denied in its entirety.

Dated: New York, New York
October 9, 2013

Respectfully Submitted,

**AKERMAN SENTERFITT LLP**

By: */s/ Ira S. Sacks*
Ira S. Sacks
Mark S. Lafayette
Vincent Y. Liu
Jamie B. Robbins
666 Fifth Avenue, 20th Floor
New York, New York 10103
Telephone: (212) 880-3800
Facsimile:  (212) 880-8965

*Counsel for Defendant Michael Robertson*

9