UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>MP3TUNES LLC and MICHAEL ROBERTSON,<br><br>Defendants. | No. 07 Civ. 9931 (WHP) (FM)<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROBERTSON'S MOTION *IN LIMINE* REGARDING THE ORDER OF PROOF AT TRIAL**

Plaintiffs submit this memorandum of law in opposition to the motion of Defendant Michael Robertson ("Robertson") requesting that the Court sever the trials against the two defendants and prohibit any reference to the claims against MP3tunes during the trial against Robertson. Tellingly, Robertson's motion is premised upon his statement that MP3tunes "will default at trial." Unwittingly, this statement underscores that MP3tunes was always a shell for Robertson's personal business plan and direction, and that the request to sever is a disingenuous ploy to deprive Plaintiffs of the right to refer to the underlying infringing scheme for which they seek to hold Robertson responsible.

The reason Robertson knows that MP3tunes will default is because he placed MP3tunes into bankruptcy to delay this trial and to "stiff" his former counsel of fees.[1] Relying on this self-created default, Robertson's motion seeks to confuse the jury and thereby prejudice Plaintiffs by

---

[1] The fact that even after the filing of the bankruptcy, when Robertson theoretically has no influence or interest in MP3tunes, Robertson is still making unequivocal statements as to what MP3tunes *will* do only further serve to buttress what Plaintiffs have been saying since the outset of the case but that Robertson has continued (when it suits him) to dispute – that Robertson controls MP3tunes and always has.

preventing them from presenting a complete integrated case. Robertson's Orwellian attempt to scrub any trace of his company's conduct from the trial against him borders on the surreal and must be rejected.

Robertson first argues that the Court should sever the claims against MP3tunes from those against him because the Court denied his motion for summary judgment with respect to secondary or vicarious liability for the conduct of MP3tunes. *See* Robertson's Moving Brief at pp. 1-2. Robertson is correct that the Court did find that issues of fact existed with regard to his liability for MP3tunes' conduct. *See Capitol Records, Inc. v. MP3tunes, LLC*, 2013 U.S. Dist. LEXIS 68793 *34 (S.D.N.Y. May 14, 2013) ("Whether Robertson was vicariously liable for the contributory infringement of those songs that MP3tunes failed to remove upon receipt of DMCA-compliant takedown notices was not before this Court in October 2011.... [T]here is a genuine issue of material fact as to whether Robertson benefited from [MP3tunes'] infringement in satisfaction of the common law vicarious liability standard."). However, Robertson's argument that this ruling somehow mandates omitting reference to the claims against MP3tunes at trial is nonsense. One of the primary purposes of the trial is to resolve those fact issues relating to Robertson's secondary liability *for MP3tunes' conduct* that the Court directed would be resolved at trial.

More specifically, the issues remaining to be tried in this case include whether Robertson, by virtue of his control over every aspect of MP3tunes and its sideload.com website, is secondarily liable for the infringing acts of MP3tunes. In order to establish Robertson's *secondary* liability for MP3tunes' infringing acts, Plaintiffs need first establish that MP3tunes is, in fact, liable for infringement. Some of MP3tunes' acts have already been established as infringing, *i.e.*, the failure to remove works from lockers after receipt of a DMCA notice. Others

have not, *e.g.*, whether MP3tunes had red flag knowledge of or was willfully blind to the illegal sideloading activities of its users. The resolution of these issues forms the basis for this trial. MP3tunes' liability is a predicate to Robertson's secondary liability; the jury cannot decide the latter without deciding the claims about the former.

Moreover, under the legal standards governing secondary liability, the questions surrounding MP3tunes's liability and Robertson's are completely intertwined. Thus, it would be impossible for the jury to assess Robertson's liability without also hearing about the underlying wrongful conduct by MP3tunes that Plaintiffs claim he directed and participated in. Robertson will be liable for MP3tunes's conduct if, *inter alia*, he was "personally and intimately involved in many of the activities that form the basis of [MP3tunes'] copyright liability," which this Court has held to be "an open question." *Capitol Records, Inc. v. MP3tunes, LLC*, 2013 U.S. Dist. LEXIS 68793 *18, 38 (S.D.N.Y. May 14, 2013) (citing *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 158 (S.D.N.Y. 2009)). Accordingly, an assessment of whether Robertson had the requisite level of involvement with and control over the actions for which MP3tunes is or may be liable (*e.g.*, failing to implement takedown notices properly, reproducing and displaying Plaintiffs' cover art beyond the scope of any authorized license, and direct infringement by its executives) necessarily requires the jury to hear about those acts of infringement and Robertson's role in them. There is no intelligible way to separate the issues without depriving the jury of the very evidence they need to assess Robertson's personal liability.

Robertson's motion relies upon the straw man argument that the anticipated default of MP3tunes at trial mandates that the claims against MP3tunes be purged from the trial. This argument is absurd and Robertson provides no support for it. Were MP3tunes to default, Plaintiffs still need to establish its liability as a predicate to the claims against Robertson. To

3

deprive Plaintiffs of the right to reference MP3tunes during the trial would deprive Plaintiffs of the right to make their case against Robertson. Scrubbing the record clean of the entire factual basis for Robertson's liability would be like trying to write a book about Charles Ponzi without mention of his famous scheme.

Further, the history of this case shows that MP3tunes' bankruptcy – Robertson's rationale for severing claims against it at trial – was an obvious tactical ploy by Robertson that was intended, *inter alia*, to circumvent or delay his own liability. For example, when MP3tunes first went into bankruptcy, Robertson requested a stay of this action to delay trial by claiming that the bankruptcy required his attention, thereby admitting that which he had previously repeatedly denied but which all of the evidence proved – that Robertson is the driving force behind MP3tunes and the fount of all actions that it takes. As the Court noted in denying his motion:

> Defendant Michael Robertson ('Robertson') seeks a stay of this copyright infringement action in view of the filing of a bankruptcy petition by co-defendant MP3tunes, LLC ('MP3tunes').... According to defense counsel, Robertson is MP3tunes' chief executive officer and sole current employee.... Robertson has not shown any immediate adverse economic effect or irreparable harm to the MP3tunes estate if this action continues against him.

*See Capitol Records, Inc. v. MP3tunes, LLC*, 2012 U.S. Dist. LEXIS 87718 *1-3 (S.D.N.Y. June 25, 2012). MP3tunes' bankruptcy also assisted Robertson in avoiding the fees incurred by the law firm that represented him and MP3tunes in this litigation for many years, Duane Morris, which is currently a creditor in the MP3tunes bankruptcy. *See* Dkt. 313 (Memorandum of Law In Support of Duane Morris's Motion to Withdraw as Counsel); 12-06037-MM7, Doc 1-1 pg. 20 (Schedule of Creditors Holding Unsecured NonPriority Claims showing Duane Morris as a $1,400,000 creditor of MP3tunes).

Strikingly, Robertson's motion is utterly inconsistent with the arguments that he made when he requested a stay immediately following MP3tunes' bankruptcy. There he argued that

MP3tunes' involvement in the trial was *essential*, and that if the action proceeded against him without the presence of MP3tunes, MP3tunes would be prejudiced in that it would be denied the right to participate in the defense of Plaintiffs' claims. *See* Exhibit A hereto, at 2-4 (arguing that "Mr. Robertson's purported liability and any damages resulting from that purported liability are directly related to and dependent upon Plaintiffs' case against MP3tunes," that "MP3tunes is essential to any liability claims that Plaintiffs wish to pursue against Mr. Robertson," and that "it is simply not possible to litigate Mr. Robertson's purported liability and any damages resulting from that purported liability without placing MP3tunes directly in the cross hairs of Plaintiffs' case in chief"). In rejecting the argument, the Court not only noted that the question of whether the soon-defunct MP3tunes would be prejudiced is an "academic" one, it reaffirmed the "well settled" principal that a plaintiff may sue as few (or as many) joint tortfeasor copyright infringers as it chooses. *Capitol Records, Inc. v. MP3tunes, LLC*, 2012 U.S. Dist. LEXIS 87718 *4-5 (S.D.N.Y. June 25, 2012); *see also Robbins Music Corp. v. Alamo Music, Inc.*, 119 F. Supp. 29, 31 (S.D.N.Y. 1954) ("It is hornbook law that an aggrieved party is not compelled to sue all tort-feasors. He may sue one or more or all of them, at his discretion.").

Robertson also argues that Plaintiffs will suffer no prejudice if MP3tunes defaults because Plaintiffs have no right to a jury trial of their claims against MP3tunes. However, the prejudice Plaintiffs will suffer if the Court prohibits reference to MP3tunes at trial will not be from the inability to try Plaintiffs' claims against MP3tunes, but rather the inability to present the factual predicate for *Robertson's* liability. Accordingly, Robertson's citation to *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) is wholly inapposite. That case stands for the unremarkable proposition that "where there are issues common to both the equitable and legal claims, the legal claims involved in the action must be determined prior to

any final court determination of [the] equitable claims." In *Dollar*, the district court exercised its discretion to bifurcate the trial and try the counterclaimant's rescission claim to the court prior to having the jury decide the plaintiff's legal claims, because rescission "is an equitable remedy . . for which no right to a jury exists." *Id.* Here, the copyright infringement claims against both Robertson and MP3tunes are legal claims. Moreover, that case is factually inapposite because in *Dollar* "there [were] no common issues of law and fact between the two distinct set of claims to be tried." *Wechsler v. Hunt Health Sys.*, 2003 U.S. Dist. LEXIS 13775, at *25 (S.D.N.Y. Aug. 7, 2003); *Dollar Sys., Inc.*, 890 F.2d at 170-71. Here, by definition, the factual basis for MP3tunes' liability forms the predicate for Robertson's secondary liability.

Robertson also cites a case from the Northern District of Florida, *Johnson v. Mortham*, 915 F.Supp. 1574, 1581 (N.D. Fla. 1996), for the unchallenged but inapplicable proposition that "a trial court has broad discretion to exercise control over the order of presentation at trial," in order to support his argument that counsel should be prohibited from referencing the claims against MP3tunes at trial. However, in *Johnson*, a constitutional equal protection clause case, the Court found that because the Defendants had the burden of production on an issue – which was "very much akin to an affirmative defense" – it would not be error to allow them to present their evidence first at trial. *Id.* at 1579, 1582. *Johnson* has no bearing whatsoever on Robertson's motion. Also notable was the Court in *Johnson's* concern that "[i]f the trial of this matter were before a jury, there would be some risk that altering the order of presentation might confuse the jury as to which party bears the ultimate burden of persuasion." *Id.* at 1582 at n. 6. Jury confusion would plainly result here were Plaintiffs precluded from referring to the acts of MP3tunes for which they seek to hold Robertson secondarily liable.

At bottom, Robertson's motion with regard to order of proof, like several of his other motions *in limine* (most of which are not really motions *in limine* at all but are motions for reconsideration of facts already established and legal determinations already made, or disguised motions for summary judgment), is an effort to prevent the jury from hearing the whole story about Robertson, his infringing service, and his motives for operating it. It is also yet another attempt to use to his tactical advantage his thin capitalization of MP3tunes and his election to put it into bankruptcy once the Court ruled that this case was trial ready. The full strategic plan underlying this request is revealed by Robertson's request that this Court direct Plaintiffs to try their secondary liability case against Robertson without reference to MP3tunes so that "[a]fter the verdicts are returned with respect to the claims against Robertson, the Court can decide the claims against MP3tunes in light of the verdicts on the claims against Robertson." Robertson's Moving Brief at p. 2. If accepted, Plaintiffs would be required to present a case against Robertson first without being able to tell the story of the underlying infringing enterprise. Thereafter, MP3tunes's own fate would ride piggyback on the outcome of Robertson's incomplete and prejudicial trial. The prejudice and abuse of justice that would result from such a tortured trial process is manifest. Robertson's motion must be summarily denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motion *in limine* regarding the order of proof at trial should be denied.

Dated: October 9, 2013

PRYOR CASHMAN LLP

By: _/s Frank P. Scibilia_
Frank P. Scibilia
Jacob B. Radcliff
M. Mona Simonian

7

7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806

*Attorneys for EMI Publishing Plaintiffs*

JENNER & BLOCK LLP

By:  */s Andrew H. Bart*
Andrew H. Bart
Lindsay W. Bowen
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1645
Facsimile:  (212) 891-1699

Steven B. Fabrizio
Luke C. Platzer
J. Douglas Wilson
1099 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 661-4819

*Attorneys for EMI Label Plaintiffs*

# EXHIBIT A

**Duane Morris**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

GREGORY P. GULIA
DIRECT DIAL: 212.692.1027
E-MAIL: gpgulia@duanemorris.com

www.duanemorris.com

May 25, 2012

**BY HAND**

The Hon. William H. Pauley III
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
Room 2210
New York, NY 10007

    Re:   *Capitol Records, LLC et al. v. MP3tunes, Inc. et ano*
            No. 07 Civ. 9931 (WHP)

Dear Judge Pauley:

    We represent the defendants in the above-referenced litigation (the "Litigation"). Pursuant to the Court's Order dated May 14, 2012, defendant Michael Robertson submits the following request for a stay of the Litigation against him in light of the filing of a bankruptcy petition in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") by defendant MP3tunes, Inc. ("MP3tunes") currently before the Honorable Judge Margaret M. Mann (the "Bankruptcy Case"). *See In re MP3tunes, Inc.*, Bankr. No. 12-06037-MM7 (Bankr. C.D. Cal., May 14, 2012).

    The Litigation against Mr. Robertson should be stayed for the following reasons, all of which are discussed more fully below: (1) the Litigation against MP3tunes, a necessary party, is currently stayed by virtue of section 362 of Title 11 of the United States Code (the "Bankruptcy Code"); (2) the Bankruptcy Trustee should have a reasonable opportunity to analyze the impact of the claims made against Mr. Robertson on MP3tunes and the bankruptcy estate before the Litigation should be permitted to continue against Mr. Robertson; and (3) pursuant to sections 362 and 105 of the Bankruptcy Code, this Court should stay the Litigation against Mr. Robertson.

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 2

---

I.   **MP3tunes Is Necessary to the Litigation**

First, MP3tunes is a necessary party to the Litigation because Mr. Robertson's purported liability and any damages resulting from that purported liability are directly related to and dependent upon Plaintiffs' case against MP3tunes. For example, Your Honor has already granted Plaintiffs' request to file a motion for reconsideration of this Court's October 16, 2009 order dismissing Plaintiffs' copyright inducement claim and of this Court's October 25, 2011 order granting in part, MP3tunes' motion for summary judgment that the safe harbors of the Digital Millennium Copyright Act ("DMCA") immunize MP3tunes from Plaintiffs' infringement claims with respect to all but a limited set of songs. Both of these decisions address claims brought against MP3tunes. Indeed, Plaintiffs' copyright inducement claim alleges that MP3tunes induced its users to commit copyright infringement. Yet the allegations supporting the inducement claim in Plaintiff's Second Amended Complaint, the "listing" and "advertising" of content, hinge on MP3tunes' conduct, not Mr. Robertson's conduct. *See* Dkt. # 121 at ¶¶ 90-94. Further, Plaintiffs seek reconsideration of their summary judgment motion decided by Your Honor's October 25, 2011 order but Plaintiffs never moved for summary judgment against Mr. Robertson. Plaintiffs' summary judgment motion was directed solely at MP3tunes. *See* Dkt. # 186 (Plaintiffs seeking "summary judgment defendant (sic) MP3tunes on claims 1, 2, 3, 6, 7, and 8); *see also* Dkt. 182 ("briefing with respect to all issues relating to Mr. Robertson's personal liability will be raised with the Court, if necessary, after a determination of the liability of MP3tunes"). Indeed, as indicated by Plaintiffs' letter to the Court dated April 18, 2012, Plaintiffs intend to allege that the DMCA does not apply to MP3tunes (rather than Mr. Robertson) because it was supposedly "willfully blind" and had "red flag" knowledge of its users' activities. Plaintiffs' unfair competition claim applies solely to MP3tunes as Mr. Robertson as an individual cannot possibly be in competition with Plaintiffs. *See* Dkt. 121 at ¶ 114-118. Accordingly, these are clearly issues that cannot be litigated without MP3tunes.

However, these issues cannot currently be litigated against MP3tunes because all actions against MP3tunes, including the Litigation, are currently stayed pursuant to section 362 of the Bankruptcy Code. Accordingly, because of the essential role of MP3tunes in the litigation of Plaintiffs' claims as summarized above, the Litigation against Mr. Robertson should also be stayed until such time as the Bankruptcy Court may grant relief from the stay of the Litigation against MP3tunes.

II.  **The Bankruptcy Trustee Needs Time to Review the Claims**

Second, the Litigation against Mr. Robertson should be stayed because the Bankruptcy Trustee, Gerald H. Davis, should be given an opportunity to familiarize himself with the Litigation and analyze any impact that the Litigation could have on the bankruptcy estate of MP3tunes should the Litigation proceed against Mr. Robertson. Mr. Davis was just recently appointed as the Bankruptcy Trustee and, in that regard, has not even conducted a section 341 meeting of creditors in the Bankruptcy Case, let alone meet and confer with Mr. Robertson regarding the Litigation and MP3tunes' defenses to the claims asserted therein. Permitting the

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 3

Litigation to continue against Mr. Robertson at this early juncture of the Bankruptcy Case could severely prejudice MP3tunes and the bankruptcy estate.

### III.   A Stay Against All Parties is Warranted Under sections 362(a) and 105

Third, and finally, the Litigation against Mr. Robertson should be stayed based on the protections provided under either section 362(a) or section 105(a) of the Bankruptcy Code. The continuance of the claims against Mr. Robertson is proper as MP3tunes is the real party defendant and because continuation of the Litigation endangers MP3tunes' estate and its creditors. *See Desouza v. Plusfunds Group, Inc.*, 2006 U.S. Dist. Lexis, at *4 (S.D.N.Y.) (district courts have jurisdiction to determine whether a stay can apply to nondebtor defendants); *Hounddog Productions LLC v. Empire Film Group, Inc., et al.*, 767 F. Supp. 2d 480, 485 (S.D.N.Y. 2011) (district court determining whether automatic stay applied to nondebtor defendants).

#### A.   Under Section 362(a), Courts Apply An Automatic Stay to Non-Debtor Defendants if a Continuance of the Claims against the Non-debtor Defendants Endangers the Debtor's Estate

The automatic stay of section 362(a)(1) prohibits the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(1). Under section 362(a), an automatic stay applies to non-bankrupt defendants "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) (affirming application of automatic stay under 362(a) to non-debtor codefendant). "The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtors need the services of non-debtors facing crushing litigation)," *Gray v. Hirsch (In re Gray)*, 230 B.R. 239, 243 (S.D.N.Y. 1999), or, for example, "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . .'" *Queenie*, 321 F.3d at 288 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

#### B.   A Stay Is Proper Because MP3tunes, Not Mr. Robertson, is the Real Party Defendant

MP3tunes is essential to any liability claims that Plaintiffs wish to pursue against Mr. Robertson. As pointed out above regarding the necessary nature of MP3tunes to the Litigation, it is simply not possible to litigate Mr. Robertson's purported liability and any damages resulting from that purported liability without placing MP3tunes directly in the cross hairs of Plaintiffs'

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 4

---

case in chief, in disregard of the automatic stay imposed by section 362(a) of the Bankruptcy Code.

### C. A Stay Is Warranted Against All Parties Because Proceeding with the Litigation Against Mr. Robertson Will Harm the MP3tunes Estate and its Creditors

Courts in this circuit and elsewhere have extended the automatic stay provided by section 362(a) to non-debtor codefendants where there may be harm to debtor funds or personnel. For example, in the case *In Re North Star Contracting Corp. v. McSpedon*, 125 B.R. 368, 370-371 (S.D.N.Y. 1991), the court granted an expansion of the section362(a)(1) stay to a non-bankrupt president of the debtor because "a judgment against the non-debtor will affect directly the debtor's assets." *Id.* In its holding, the court reasoned that the stay should apply to the president of the debtor because, *inter alia*, he is a "principal player" in the bankruptcy process. *Id.* at 371. *See also In re Rustic Manufacturing, Inc.*, 55 Bankr. 25, 31 (Bankr. W.D. Wis. 1985) (stay applied to non-debtor principals who performed most of the debtor's business); *In re Northlake Building Partners*, 41 Bankr. 231, 233 (Bankr. N.D. Ill. 1984) (stay applied to non-debtor principals responsible for management of the debtor's business).

If the Litigation against Mr. Robertson is not stayed, Mr. Robertson would face crushing litigation demands that would harm the MP3tunes estate and its creditors. As Chief Executive Officer of MP3tunes, Mr. Robertson's role in MP3tunes' Chapter 7 process is integral and irreplaceable. Mr. Robertson must aid the Bankruptcy Trustee in taking inventory of MP3tunes' assets, including not only its physical equipment but also any intellectual property belonging to MP3tunes. For example, the Bankruptcy Trustee will have to determine whether MP3tunes owns any proprietary trade secrets and whether those trade secrets have been adequately maintained. The Bankruptcy Trustee will also have to determine whether MP3tunes owns proprietary software, whether such software was adequately protected by work-for-hire provisions in employment contracts, and whether such software was developed by independent contractors with adequate assignments. For proprietary software co-developed or jointly developed with third parties, the Bankruptcy Trustee will need to determine which components of the software belong to MP3tunes. Where the proprietary software is derived from or incorporates third-party software, such as open source software, this is also true. The Bankruptcy Trustee will need to prepare detailed schedules of third-party ownership of any proprietary software incorporated in the technology, as well as any licenses granted by MP3tunes and the scope and assignment of such licenses. This will require knowledge of MP3tunes' software, technology and its corporate history. The Bankruptcy Trustee will need to prepare the representations and warranties as to these assets. As the last remaining employee at MP3tunes, only Mr. Robertson can aid the Bankruptcy Trustee in these matters. In addition, Mr. Robertson must be available to potential buyers to answer questions they may have about those assets and must provide assistance in negotiating the fair value of the assets so that the MP3tunes estate can best satisfy the debts of its creditors. Thus, the MP3tunes estate and its creditors will be greatly

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 5

harmed if Mr. Robertson is unable to devote his undivided attention to his responsibilities to bankruptcy process.

Denial of the stay will substantially impair Mr. Robertson's ability to perform his essential role in the bankruptcy process. Throughout this entire Litigation, Mr. Robertson played a central role in gathering facts, documents, and other information and developing strategies in this case. For example, in order to respond to Plaintiffs' motion for reconsideration on the issue of MP3tunes' supposed knowledge of its users activities, Mr. Robertson will be needed to provide factual background. Immediately following the parties' motions for reconsideration, there will be pre-trial demands followed by the demands of trial. Indeed, Mr. Robertson will certainly be called as a witness throughout the trial. Not staying the Litigation would mean that Mr. Robertson's duties to the MP3tunes estate would have to compete with his right to defend himself in the Litigation.

In order to protect the MP3tunes estate and its creditors, the Court should stay the Plaintiffs' claims against Mr. Robertson under section 362(a).

### D.    A Stay is Proper Under Section 105

Under section 105 of the Bankruptcy Code, "'[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re Chateaugay*, 93 B.R. 26, 30 (S.D.N.Y. 1988) (quoting 11 U.S.C. § 105(a)). "Pursuant to their authority under § 105, courts have stayed actions against non-debtor third parties where they have found that the estate will be adversely affected . . . because the action would detract from the invaluable time and attention the non-debtor third party would otherwise devote to the continued operation of the debtor's business or the reorganization effort, or because the claims against the non-debtor third parties are really claims against the debtor and therefore impair the automatic stay." *In re Third Eighty-Ninth Assoc.*, 138 B.R. 144, 147 (S.D.N.Y. 1992). While section 105 essentially offers injunctive relief, courts do not follow the traditional analysis for injunctive relief. *See Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987) (holding "[s]ince injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown."); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994) ("[u]nder Section 105, however, a debtor need not show irreparable harm").

To differentiate the extension of the automatic stay to non-debtor defendants under section 362(a) of the Bankruptcy Code from the extension of the automatic stay under section 105, courts have held that section 105 is "broader than the automatic stay provisions of section 362(a)," *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985), and supports the issuance of an injunction for parties who do not fall within the scope of section 362(a). *See In re Chateaugay*, 93 B.R. 26, 30 (S.D.N.Y. 1988) (extending a stay pursuant to section 105 despite the inapplicability of section 362); *Queenie*, 321 F.3d 282 at 287 ("Section 105 of the Bankruptcy Code [] grants broader authority"); *Rosetta Res. Operating LP v. Pogo Producing*

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 6

---

Co. *(In re Calpine Corp.)*, 2007 Bankr. LEXIS 2025, *12-*13 (Bankr. S.D.N.Y. Apr. 30, 2007) (applying stay under section 105(a) where it might not apply under § 362(a)); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp. (In re Calpine Corp.)*, 2006 U.S. Dist. LEXIS 92499, at *18 (S.D.N.Y. Dec. 20, 2006) (same).

        1.    **An Extension of the Stay Under Section 105 is Warranted Where, as here, Proceeding with Claims Detract from the Nondebtor Defendant's Attention to the Debtor Estate**

As with section 362(a), courts use section 105 to extend an automatic stay where continued litigation against the corporate officer would detract from the officer's attention to the debtor estate. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 316 (Bankr. S.D.N.Y. 2011) (employing section 105 to extend section 362 stay to third-party actions against nondebtor entities against whom third-party actions "will have an immediate adverse economic consequence for the debtor's estate" because employees who are "thus central to the Trustee's investigation" would have to devote time to the litigation); *Nevada Power Company v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 413 (S.D.N.Y March 28, 2007) (same); *In re Alert Holdings*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where there is a showing that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects, the Bankruptcy Court may issue injunctive relief."); *In re Ionosphere Clubs Inc.*, 124 B.R. 635, 642 (S.D.N.Y. 1991) (affirming extension of stay under section 105 to nondebtor co-defendants where the "drain on key officers' time and energy . . . could frustrate . . . efforts at formulating a fair and equitable plan"); *Johns-Manville Corp.*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983) (employing section 105 to extend automatic stay to key employees of debtor defendants because it would distract them from their obligations to the estate). Indeed, while recognizing that irreparable harm was not necessary to a section 105 analysis, the district court in *In re Lomas Financial Corp.*, 117 B.R. 64 (S.D.N.Y. 1990), agreed that, if the creditors' actions were sustained, "key Lomas personnel" would be "distracted from participating" in the bankruptcy process and that such a distraction would "cause[] Lomas and its creditors both <u>immediate and irreparable harm</u>." *Id.* at 67 (emphasis added).

Accordingly, as demonstrated above, because a continuation of Plaintiffs' Litigation against Mr. Robertson would distract him from his duties to the MP3tunes estate and its creditors, an extension of the automatic stay is proper under section 105(a) of the Bankruptcy Code. Staying Plaintiffs' Litigation against Mr. Robertson will not cause any harm to Plaintiffs but rather preserves the status quo. Plaintiffs would be no worse off at a future date than they are now. Accordingly, the Court should grant a stay of the litigation against Mr. Robertson under section 105.

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 7

---

      **2.      An Extension of the Stay Under Section 105 is Warranted Where, as here, a Continuance Poses the Potential Threat of Collateral Estoppel to Nondebtor Defendants**

      In addition, Courts have also employed section 105 to extend the automatic stay to nondebtor defendants where there is the danger of collateral estoppel. *See Rosetta Res. Operating LP v. Pogo Producing Co. (In re Calpine Corp.)*, 2007 Bankr. LEXIS 2025, at *12-*13 (Bankr. S.D.N.Y. Apr. 30, 2007) (extending stay for estoppel reasons); *Nevada Power Company v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 413 (S.D.N.Y 2007) (same); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp. (In re Calpine Corp.)*, 2006 U.S. Dist. LEXIS 92499, at *18 (S.D.N.Y. Dec. 20, 2006) (same); *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) (extending stay because "a finding of liability as to [the debtor] Eastern's codefendants may be extended to Eastern and collateral estoppel may bar Eastern from litigating factual and legal issues critical to its defense."); *In re Lomas Financial Corp.*, 117 B.R. 64, 67 (S.D.N.Y. 1990) (affirming stay because of collateral estoppel concerns); *In re Johns-Manville*, 26 B.R. 420 (Bankr. S.D.N.Y. 1983), vacated on other grounds 41 B.R. 916 (S.D.N.Y. 1984) (staying litigation against officers and directors based in part on collateral estoppel).

      Courts also have extended the automatic stay to joint tortfeaser co-defendants in copyright infringement cases. *See Queenie,* 321 F.3d at 287 (extending stay in copyright infringement action); *Roberts v. We Love County Inc.,* 2005 U.S. Dist. LEXIS 18566, at *6-*9 (E.D. Pa. Aug 29, 2005) (extending the automatic stay to solvent co-defendants facing copyright infringement claims).

      Indeed, the danger of estoppel to MP3tunes is particularly acute given the fact that MP3tunes is liquidating under Chapter 7. An entity does not cease to exist following liquidation under Chapter 7 and may be sued. The case *Jackson v. CorporateGear, LLC*, 2005 U.S. Dist. LEXIS 35579, at *12-*13 (S.D.N.Y. Dec. 21, 2005), is instructive:

> [I]n a Chapter 7 case, a corporate debtor cannot be discharged. As the Second Circuit has observed, 'Congress deliberately excluded corporations from eligibility for discharge under Chapter 7 to avoid trafficking in corporate shells and in bankrupt partnerships.' Moreover, the Chapter 7 proceedings do not dissolve a corporation, and unless the corporation is dissolved under state law, the corporation continues to exist and is subject to liability. Hence, if a claim against a debtor corporation was not administered in the Chapter 7 proceeding, it survives and can be pursued after the Chapter 7 case is closed.

*Id.* (citations omitted)

DuaneMorris

The Hon. William H. Pauley III
May 25, 2012
Page 8

---

Plaintiffs' claims against MP3tunes are not extinguished following its Chapter 7 proceedings. Thus, the collateral estoppel concerns at issue in the above cases apply equally to MP3tunes. The claims against Mr. Robertson and MP3tunes are identical. Pursuit of the Litigation against Mr. Robertson will prejudice MP3tunes' future defense against identical claims concerning the same set of facts. Permitting the Litigation to continue against Mr. Robertson would obviously prejudice MP3tunes because collateral estoppel may bar MP3tunes from re-litigating the facts and legal issues critical to its defense. It should be noted that at trial Plaintiffs intend to pursue liability beyond the works subject to the Court's October 25, 2011 order, in addition to any purported damages resulting from the alleged infringement of those works. MP3tunes should not be subject to a finding of liability or damages that may be decided as to Mr. Robertson without being able to defend itself. Enabling Plaintiffs to pursue their claims against Mr. Robertson while the automatic stay is in effect against MP3tunes would allow Plaintiffs to effectively undermine the legislative intent of section 362(a).

Accordingly, we respectfully request a stay of the Litigation against Mr. Robertson for a period of 90 days following which this Court could revisit all of the issues raised herein and determine whether an additional stay is necessary and appropriate.

We thank the Court for its consideration.

Respectfully submitted,

Gregory P. Gulia

cc: All Counsel of Record (by e-mail)