UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

CAPITOL RECORDS, LLC, *et al.*,  :
                                      :

                        *Plaintiffs*,  :

                    v.  :      07 Civ. 9931 (WHP)

                                 :

MP3TUNES, LLC and MICHAEL ROBERTSON,  :

                                 :

                     *Defendants*.  :

-------------------------------------------------------------------x

## ROBERTSON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE RELATED TO WILLFUL BLINDNESS AND RED FLAG KNOWLEDGE

**AKERMAN LLP** (f/k/a Akerman Senterfitt LLP)
Ira S. Sacks
Mark S. Lafayette
Vincent Y. Liu
Jamie B. Robbins
666 Fifth Avenue, 20th floor
New York, New York 10103
Telephone: (212) 880-3800
Facsimile:  (212) 880-896

*Counsel for Defendant Michael Robertson*

November 1, 2013

**ROBERTSON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE RELATED TO WILLFUL BLINDNESS AND RED FLAG KNOWLEDGE**

Defendant Michael Robertson ("Robertson") submits this reply memorandum of law in further support of his motion *in limine* to preclude evidence Plaintiffs proffer to establish "red flag knowledge" or "willful blindness" at trial [Doc. No.  386] (the "Motion").  Plaintiffs' opposition to the Motion fundamentally and intentionally ignores the limits of the Second Circuit's decision in *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012)("Viacom") and this Court's May 14, 2013 Memorandum and Order *Capitol Records, Inc.  v.  MP3tunes, LLC*, 2013 WL 1987225 (S.D.N.Y.  May 14, 2013) (the "Reconsideration Order").  It remains the case that Plaintiffs' disclosure pursuant to the Court's July 12, 2013 order of the evidence they intend to proffer to establish "red flag knowledge" or "willful blindness", as contained in the August 9 Submission[1] – whether taken separately or together – fails to meet the *Viacom* standards.

*Viacom* and other controlling authorities set forth a well-defined – and narrow – legal standard for how Plaintiffs must establish red flag knowledge or willful blindness:

- First, proof of "red flag" knowledge has a subjective and an objective element: "knowledge" "turns on whether the provider actually or ***'subjectively' knew of specific infringement***, while the red flag provision turns on whether the provider was ***subjectively aware of facts that would have made the specific infringement 'objectively' obvious*** to a reasonable person."  (Mem. of Law in Support of the Motion [Doc. No. 387] ("Robertson Br.") at 2 (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012)).

- Second, although "something less than a formal takedown notice may now establish red flag knowledge" (Reconsideration Order, 2013 WL 1987225, at *4), even that "something less" must include precise information given or reasonably apparent to the service provider which identifies the location or site of the infringing matter. (Robertson Br. at 2-3 (quoting *Viacom International, Inc.  v.  YouTube, Inc.,* 2013 WL 1689071, at *2 (S.D.N.Y.  April 18, 2013) ("*Viacom remand*"); *Viacom*, 676 F.3d at 32.  "[D]eficient notifications shall not be considered in determining whether a service provider has actual

---

[1]  Unless otherwise noted, capitalized terms have the same meaning as they do in the Motion.

or constructive knowledge." *Viacom remand,* 2013 WL 1689071, at *2.

- Third, "if investigation is required to determine whether material is infringing, then those facts and circumstances are not 'red flags.'" (Robertson Br. at 3 (quoting *Capitol Records, Inc. v. MP3tunes, LLC,* 821 F.Supp.2d 627, 644 (S.D.N.Y. 2011)).

- Fourth, Plaintiffs are not the copyright police. "[S]pecific infringements of which [defendants] had knowledge or awareness [must] correspond to ***the clips-in-suit*** in these actions." "By definition, only the current ***clips-in-suit*** are at issue in this litigation." (Robertson Br. at 4 (quoting *Viacom,* 676 F.3d at 34 (emphasis added)) A showing of clips-in-suit is required for both "red-flag" knowledge and willful blindness. (Robertson Br. at 18 (citing *Viacom,* 676 F.3d at 34; *Viacom remand,* 2013 WL 1689071, at *5).

- Fifth, "DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider. For that reason, § 512(m) is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringement may be occurring." (Robertson Br. at 5 (citing *Viacom,* 676 F.3d at 35 regarding DMCA § 512(m)).

- Finally, with respect to willful blindness, the issue is whether Plaintiffs' evidence establishes that, as to the sideloaded content, MP3tunes was confronted evidence with "a high probability" of the fact of infringement by specific tracks on its service and "consciously avoid[s] confirming that fact." (Robertson Br. at 5-6 (quoting Reconsideration Order, 2013 WL 1987225, at *2 (citing *Viacom,* 676 F.3d at 35)).

In sum, *Viacom* and relevant authorities mandate the following elements to establish red flag knowledge or willful blindness: (1) the evidence must refer to ***specific incidents of infringement*** or as to ***"specific tracks"***; (2) the evidence must contain precise information given or reasonably apparent to the service provider which identifies the location or site of the infringing matter; (3) the evidence must not require investigation or affirmative monitoring; and (4) the evidence must relate to ***clips-in-suit***. Otherwise, the evidence is irrelevant to either issue.

In response, Plaintiffs pay lip-service to the governing legal standards described above, and then ignore them. Instead, Plaintiffs assert that they may cobble together volumes of legally insufficient evidence that does not meet the *Viacom* standard, consisting of vague e-mails, non-specific user notifications and irrelevant screenshots, some of which post-date any relevant

period, for the jury to draw a conclusion in their favor.[2] (*See* Pl.'s Opp. to the Motion [Doc. No. 465] ("Pl. Opp.") at 7-21 (arguing evidence individually and ***collectively*** is relevant). This, obviously, cannot be the case. *Viacom* plainly requires any such jury inference be drawn based on evidence that reflects both ***specific incidents of infringement, specific tracks*** and ***clips-in-suit***. Evidence not meeting these mandates – even a mountain of it – is simply irrelevant.

In other parts, Plaintiffs argue that some evidence they proffered individually meet the *Viacom* standard. To be so, the evidence must reflect specific incidents of infringement of clips-in-suit and cannot require investigation. The Motion analyzes each piece of the proffered evidence in this light and shows none meets this standard individually or collectively. For these reasons, the Motion should be granted.[3]

## I.      Each Of The Categories Of Plaintiffs' Evidence Is Insufficient Under *Viacom*

Plaintiffs' evidence – taken separately or together – is insufficient under *Viacom*.

## A.    Alleged Evidence That All PLAINTIFFS' Tracks Sideloaded Before January 25, 2007 And All Beatles Tracks Were Infringing Is Insufficient Under *Viacom*

Pursuant to Category I and Category V of Plaintiffs' August 9 Submission, the Motion identified substantial deficiencies in evidence of willful blindness or red flag knowledge concerning all pre-January 25, 2007 Plaintiffs' copyrighted works and all Beatles tracks. (*See* Robertson Br. at 7-12). As to Category I, Plaintiffs assert that a single email communication referencing "major record labels" demonstrates MP3tunes' awareness that, prior to January 25,

---

[2]   Plaintiffs rely on *Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93 (2d Cir. 2010) and completely ignore that *Viacom* limited *Tiffany* with regard to its holding regarding the doctrine of willful blindness in the DMCA context, finding that "safe harbor protection does not require affirmative monitoring." *Viacom*, 676 F.3d at 35, fn. 10. Further, as set forth above, willful blindness may not be here found if investigation or affirmative monitoring is required.

[3]   Plaintiffs also try to bolster admissibility as relevant to the issues of statutory damages. (Pl. Opp. at 2, 21-24). However, because this evidence is not relevant to willful blindness or red flag knowledge, it is also not relevant to the amount of statutory damages. Any other conclusion would totally eviscerate the DMCA protections and the holding of *Viacom*.

2007, none of Plaintiffs' copyrighted material was authorized for digital distribution in MP3 file format.   This e-mail does not identify specific instances of infringement of Plaintiffs' copyrighted works and does not demonstrate MP3tunes subjective awareness as to circumstances of likely infringement.  (Robertson Br. at 7-8).

Similarly, as to Category V, relying largely on three discrete e-mails, Plaintiffs assert that Defendant was aware that works by the Beatles during the 2005-2008 timeframe were unavailable for digital distribution in MP3 file format.  (*See* Pl. Opp. at 5-6, 18-20).  None of the e-mails demonstrates an acknowledgment by Defendant of awareness of specific instances of infringement.   (Robertson Br. at 8-10).   To the contrary, one of the e-mails indicates that Robertson believed it was "***EMI's position*** that…" such was the case concerning Beatles songs. (*Id*. at 8).  Further, *Viacom* cited approvingly to language in *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 665 F.Supp.2d 1099, 1108 (C.D. Cal. 2009), to the effect that "[i]f investigation of 'facts and circumstances' is required to identify material as infringing, then those facts and circumstances are not 'red flags.'"  *Viacom*, 676 F.3d at 32.  As the Motion points out, MP3tunes could not have been expected to meaningfully investigate the source of every sideload of a Beatles track in MP3 format, nor is that required under *Viacom*.  (Robertson Br. at 9-12).  Many of those sideloads could have been of songs bought by the user, so investigation would have been required.  MP3tunes has no duty "to 'take commercially reasonable steps' in response to a generalized awareness of infringement" concerning an ***entire catalog of music***.  *Viacom*, 676 F.3d at 30-31.[4]

---

[4] Plaintiffs assert that their evidence is admissible because, beyond the e-mail submissions, Plaintiffs have identified evidence regarding: (i) Robertson's "touted expertise in the music industry" (Pl. Opp. at 19); (ii)  it was "well-known in the industry that major labels did not authorize the use of MP3 files for digital distribution" before 2007 (*id*. at 20); and (iii) it was "widely known throughout the music industry" that the Beatles made a decision not to license

Finally, Plaintiffs' argument that MP3tunes is disqualified from the safe harbor because MP3tunes itself did not affirmatively clear the rights to every Plaintiffs'-copyrighted track or Beatles song that users uploaded to its service turns the DMCA on its head.  17 U.S.C § 512(m) ("safe harbor protection cannot be conditioned on affirmative monitoring by a service provider"); *Viacom*, 676 F.3d at 35.[5]

### B. Evidence of Screenshots of Certain Hosting or Referring Domains Is Insufficient Under *Viacom*

The Motion demonstrates that Plaintiffs' submissions of screenshots of certain websites do not evidence Defendant's "red flag" knowledge or willful blindness under *Viacom*.  First, most of the screenshots post-date the relevant period of MP3tunes employees' alleged visitation of such domains and are therefore irrelevant.  (Robertson Br. at 13).  Second, none of the screenshot submissions evidence domain names containing slang terms, such as "pirate" or "bootleg", that would indicate, on its face, an illegal purpose.  (*Id*.).  Third, nothing in the screenshot of the website or the internal MP3tunes e-mails addressing certain domains constitutes a conscious effort to avoid confirming the allegedly infringing nature of certain referring or hosting domains; that is so because Plaintiffs' evidence does not show MP3tunes'

---

digital distribution (*id*. at 18-19).  Plaintiffs do not even pretend that they have evidence as to Robertson's knowledge of the Beatles, and instead frames the assertion as one that Robertson "must have been aware." (*Id*. at 19, n.13). This falls far short of "specific and identifiable" instances of infringement required under *Viacom*.

[5] Equally mistaken is Plaintiffs' suggestion that because MP3tunes allegedly acknowledged the general unavailability of certain tracks in MP3 file format, this establishes MP3tunes' awareness that it ***needed*** a direct license to be authorized to digitally distribute such songs.  To the contrary, both professional copyright holders and independent artists regularly authorize their copyrighted material to appear on certain hosting domains, usually as promotional downloads.  (Robertson Br. at 10).  While direct licensing agreements can incentivize copyright holders to post their material and/or allow such tracks to remain when posted by others, the absence of such direct licensing does not suggest that specific tracks sideloaded in MP3 file format were, in fact, infringing, much less establish that MP3tunes and/or Robertson had "knowledge" of infringement. (*Id*. at 8).

acknowledgement, as required under *Viacom*, that these websites offered unauthorized songs. (*See* Robertson Br. at 14-15). Finally, Plaintiffs' evidence fails because it does not relate to tracks at issue in this litigation. *Viacom*, 646 F.3d at 33-34.[6]

In their response, Plaintiffs assert that the screenshots of websites from which MP3tunes executives personally sideloaded songs, when analyzed in conjunction with their expert's query of the MP3tunes' database showing which specific files were sideloaded from the same domains, and considered alongside metadata MP3tunes allegedly had in its possession to determine which tracks were owned by Plaintiffs, cumulatively demonstrate Defendant's "red flag" knowledge and willful blindness. (Pl. Opp. at 5, 17-18). That supposed software does not exist, but even if it did, requiring MP3tunes to search for artists' names, songs and copyright owner information, and then confirm whether the copyright owner had licensed the works, Defendants would be required to conduct burdensome investigations, contrary to *Viacom*.[7]

## C. User Ticket Posts And Other Internal E-Mails

Plaintiffs have not shown that its submission consisting of user ticket posts, e-mails allegedly pointing out infringing materials, or other communications containing removal requests establish Defendant's "red flag" knowledge or willful blindness. (Robertson Br. at 15-18). Again, Plaintiffs' evidence falls far short of meeting the evidentiary burden under *Viacom*. First, while this Court held that "something less than a formal takedown notice may now establish red flag knowledge" (Reconsideration Order, 2013 WL 1987225 at *4), under *Viacom* and its

---

[6]  For example, although Robertson is alleged to have sideloaded "Thriller" by Michael Jackson from a French website referenced by Plaintiffs in their response (Pl. Opp. at 17), a review of the tracks as to which Plaintiffs claim copyright ownership does not include either a sound recording or composition copyright for that artist or song. *See* Sacks. 9/14 Dec., ¶¶ 7-8.

[7]  A little more than a month ago, another court rejected the same argument Plaintiffs advanced in another case. *Capitol Records, LLC v. Vimeo, LLC*, 2013 WL 5272932, at *22 (S.D.N.Y. Sept. 18, 2013) (no willful blindness even if defendant "did not use sophisticated monitoring technology in its possession to seek out and remove instances of infringing content").

progeny even that "something less" must include precise information given or reasonably apparent to the service provider which identifies the infringing matter and the location or site of the infringing matter. *Viacom Remand,* 2013 WL 1689071 at 82; *Viacom*, 676 F.3d at 32. Many of Plaintiffs' proffered user ticket posts and e-mails do not identify a specific artist, a specific song and location of a specific URL. (*See* Robertson Br. at 15; *see, e.g.,* Declaration of Ira S. Sacks, dated Sept. 14, 2013 [Doc. No. 389] ("Sacks 9/14 Dec."), ¶¶ 20, 22). Many more do not involve works at issue. (*Id.*, at ¶¶ 24-25).

> ***In fact, all three examples previously cited by this Court as supporting a finding of willful blindness do not evidence a work-in-suit.*** (*See* Reconsideration Order, 2013 WL 1987225 at *3). Bart Decl. Exs. 65 and 92 state names of artists and tracks not owned by Plaintiffs and Bart Decl. Ex 70 contains no information as to who or what the artist and track is and Plaintiffs have provided no other exhibit containing that information. (Sacks 9/14 Dec., ¶¶21, 23, 32; Declaration of Ira S. Sacks, dated Nov. 1, 2013 ("Sacks Reply Dec."), Exs. A, B).

Further, under *Viacom*, the internet service provider that gains knowledge or awareness of specific and identifiable instances of infringement retains safe-harbor protection if it "acts expeditiously to remove, or disable access to, the material." (Robertson Br. at 17; 17 U.S.C. § 512(c)(1)(A)(iii); *Viacom*, 676 F.3d at 30). The Motion shows that in many instances, within one or two days of being notified, MP3tunes removed the links. (Robertson Br. at 18, Sacks 9/14 Dec. ¶¶29-30).[8]

---

[8] Plaintiffs assert that "less than definitive" communications sent to MP3tunes which raised, for example, "legality" or "pirated music" issues, could still provide a jury with evidence of Defendant's awareness because "[t]here is no reason" why the DMCA specificity standard set out in *Viacom* "cannot be satisfied from an aggregation of multiple different sources of evidence." (Pl. Opp. at 12, n.8, 13-14). This argument must fail because: (1) Viacom requires evidence of specific instances of infringement or specific tracks (*Viacom*, 676 F.3d at 34); (2) expeditious removal is possible only if the service provider knows with particularity which items

### D. Record Evidence Shows And Plaintiffs Admit That Repeated Takedown Notices Do Not And Cannot Establish "Infringing Host Sites"

The Motion shows that takedown notices do not evidence that a site is infringing because *Viacom* requires Plaintiffs to show awareness of the specific infringements of the works in suit. (Robertson Br. at 18-20). By definition, takedown notices from sources other than Plaintiffs have no probative value because they lack "a meaningful connection between MP3tunes' awareness and the tracks in suit." (*Id*. at 18). Again, Plaintiffs are ***not*** the copyright police. In opposition, Plaintiffs – citing only a ***pre-Viacom*** case (Pl. Opp. at 16 (citing *Arista Records*, a 2009 case)) – argue that notices that do not relate to any ***works in suit*** could still mean that a site "openly advertis[es] itself as a source for infringing content." (*Id*. at 15-17). This argument must fail because (1) it does not even pretend to link the notices to any work in suit, a *Viacom* mandate; and (2) record evidence and Plaintiffs' own admission demonstrate that the same site could host both authorized and unauthorized downloads.[9]

---

to remove (*id.* 32) and (3) the evidence does not demonstrate the MP3tunes' employees' acknowledgment that materials were infringements. (Robertson Br. at 17).

[9] Record evidence shows that Plaintiffs assert that they have made free downloads available on some sites, but then claim that the ***same*** sites were unauthorized for other materials. (*See* Robertson's Opp. to Promotional Download Mot. [Doc. No. 453] at 5). *See* Sacks Reply Dec., Ex. C (Schwartz Dep. at 60-61, 124) (Amazon authorized to host free downloads); Ex. D (interrogatory responses stating Amazon not authorized to host some songs); Ex. C (Schwartz Dep. at 67) (spin.com authorized); Ex. E (spin.com not authorized); Ex. C (Schwartz Dep. at 89-90) (stereogum.com authorized); Ex. F (stereogum.com not authorized); Ex. G (selected pages from Horowitz Supplemental Report, Exhibit K) (sxsw.com, spin.com and stereogum.com unauthorized); Ex. H (selected pages from Horowitz Supplemental Report, Exhibit L) (sxsw.com and stereogum.com unauthorized); *see* Sacks 9/14 Dec., Ex. R, S (take down notice claims amazon, spin.com, and stereogum.com host unauthorized materials); *see* Declaration of Horowitz, dated Oct. 9, 2013 [Doc. No. 461], Ex. B (claiming spin.com hosted unauthorized material).

Plaintiffs also deceptively quote the Court to argue that Defendants "had a 'duty to make further inquiries that a reasonable person would make…'" (Pl. Opp. at 16). This quote omits the Court's language articulating the very reason this argument must be rejected: "This Court finds that a jury could reasonably interpret several documents in the record as imposing a duty to make ***further inquiries into 'specific and identifiable' instances of possible infringement***." Reconsideration Order, 2013 WL 1987225, at *3 (quoting *Viacom*, 676 F.3d at 32).

**II.     Plaintiffs' Evidence That Individually Do Not Meet The *Viacom* Standard Also Do Not Meet It Collectively.**

To meet the *Viacom* standard, Plaintiffs must proffer evidence which demonstrates MP3tunes' knowledge or awareness of "specific and identifiable" instances of infringement of works in suit. (*See* Robertson Br. at 2-6).  Plaintiffs' attempt to argue that the collective consideration of the evidence could meet the *Viacom* standard – when the evidence considered individually do not – attempts to revive an argument that both *Viacom* and this Court have rejected.

In *Viacom*, "Judge Cabranes rejected Viacom's argument that red flag knowledge could be shown through a 'general awareness that infringement may be occurring.'"  Reconsideration Order, 2013 WL 1987225, at *3 (quoting *Viacom*, 676 F.3d at 35).  The rejection of "general awareness" led to the holding that red flag knowledge must make "***specific infringement*** 'objectively obviously to a reasonable person.'" *Id*.  The collective consideration of evidence is thus just a showing of "general awareness" through a collection of evidence that is already shown to individually lack sufficient specificity under *Viacom*.  At bottom, Plaintiffs' argument is just that Defendant ***must have known*** – because there are many emails from different people – "that infringement may be occurring." *Viacom*, 676 F.3d at 35. This fails under *Viacom*.

**III.    Acknowledging Their Evidence Is Deficient Under *Viacom*, Plaintiffs' Alternatively And Improperly Seek to Admit Their Evidence For the Purpose of Statutory Damages**

The Motion shows every piece of evidence proffered by Plaintiffs on red flag knowledge or willful blindness fails, on its face, to meet the *Viacom* standard and is therefore irrelevant. Plaintiffs propose an alternative theory of admissibility – that their proffer is relevant in calculating statutory damages to demonstrate Robertson's willfulness. (Pl. Opp. at 21-23). The evidence fails under *Viacom*.  To then allow the evidence to be considered by the jury on the

issue of willfulness for statutory damages purposes turns *Viacom* on its head:  if the evidence is insufficient on willful blindness or red flag knowledge, it cannot be received on the issue of willfulness.

Moreover, even if the evidence has minimal probative value – which it does not – that probative value is substantially outweighed by its prejudicial effect.  The evidence is of no probative value.  Most of the snippets are unrelated to works in suit and lack specificity.   This evidence has nothing to do with Robertson's alleged infringement of Plaintiffs' works in suit.

On the other hand, the evidence is extremely prejudicial.  Plaintiffs will use it to imply to the jury that Robertson had "red flag" knowledge and was willfully blind. (Pl. Opp. at 22).  Even though the evidence has no relevance to these issues, they are unfairly prejudicial because they *appear* to bear on these issues.  Exclusion of evidence under Rule 403 is particularly appropriate when the adversary system could not properly cure the use of misleading evidence because, like here, "the attempt to rebut the misleading inference is likely to lead the jury to infer that the evidence is of greater probative worth than it truly is."  22 Fed. Prac. & Pro., Evidence § 5217.

## CONCLUSION

For all of the foregoing reasons, the Motion should be granted in all respects.

Dated: New York, New York                               Respectfully Submitted,
       November 1, 2013

AKERMAN LLP (f/k/a Akerman Senterfitt LLP)

By:*/s/ Ira S. Sacks*
   Ira S. Sacks
   Mark S. Lafayette
   Vincent Y. Liu
   Jamie B. Robbins
   666 Fifth Avenue, 20th floor
   New York, New York 10103
   Telephone: (212) 880-3800
   Facsimile:  (212) 880-8965
   *Counsel for Defendant Michael Robertson*