USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                              :
CAPITOL RECORDS, INC. et al.,                                 :
                                                              :
                              Plaintiffs,                     :       07 Civ. 9931 (WHP)
                                                              :
              -against-                                       :       MEMORANDUM AND ORDER
                                                              :
MP3TUNES, LLC et al.,                                         :
                                                              :
                              Defendants.                     :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        The parties have filed nineteen motions in limine. Some seek to resurrect discovery disputes and legal determinations this Court decided previously. Others level an impressive array of claims and defenses, including perjury, fraud, and witness harassment. Many seek determinations on the merits rather a ruling on the admissibility of evidence. And a large number could have been obviated by good faith discussions among the parties.

        For the following reasons, the motions in limine pending at ECF Nos. 394 and 419 are granted. The motions in limine pending at ECF Nos. 391, 399, 401, 409, 411, 413, 421, 423, and 429 are denied. And the motions in limine pending at ECF Nos. 381, 386, 396, 415, 417, 425, and 427 are granted in part and denied in part. This Court declines to rule on the motion pending at ECF No. 403 at this time.

## DISCUSSION

### I.    Legal Standard

        The purpose of an in limine motion is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v.

Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotations omitted). Evidence should only be excluded on a motion in limine when it is "clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Courts considering a motion in limine may reserve decision until trial so that the motion is placed in the appropriate factual context. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp., 937 F. Supp. 276, 286-87 (S.D.N.Y. 1996).

## II. Motions Regarding Ellis Horowitz

The motions in limine pending at ECF No. 381, 415, and 429 relate to errors identified in Exhibit X to the Declaration of Plaintiffs' Expert, Ellis Horowitz. (Ex. A-B to Sacks Decl. in Supp. of Mot., dated 9/13/13 (ECF No. 385).) Exhibit X to Horowitz's Declaration purports to identify which of Plaintiffs' copyrighted tracks were sideloaded by Robertson and other MP3tunes employees. Horowitz opined that Robertson had personally sideloaded 47 of Plaintiffs' copyrighted songs, while other MP3tunes employees had sideloaded 123. This Court granted summary judgment against Robertson for direct infringement of 32 of those 47 songs, but not the remaining 15 tracks where fact issues remained as to Plaintiffs' copyright ownership. Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), 2013 WL 1987225, at *7-8 (S.D.N.Y. May 14, 2013) ("Reconsideration Order"). Because it was unclear whether the other MP3tunes employees had sideloaded the remaining 123 tracks in the course of their employment, those direct infringement claims are proceeding to trial.

### A. Robertson's Motion to Preclude Testimony and Exhibits from Ellis Horowitz and Related Relief (ECF No. 381)

Robertson contends that Exhibit X contains serious errors, which resulted in summary judgment against Robertson for sideloading tracks that are not copyrighted by Plaintiffs. In preparing for trial, Robertson determined that Exhibit X did not identify the full

name of the source URL from which each song was sideloaded. When Robertson viewed the full URL name in one of the MP3tunes databases, it suggested that the song actually sideloaded was not the song Horowitz identified. For example, Exhibit X indicates Robertson sideloaded the track "Get Along With You" by Kelis from http://www.john-ralston.com/music on May 9, 2006. When Robertson checked the date and time of that particular sideload on a comprehensive list of his sideloads (see Horowitz Decl. Ex. W6), it indicated that a John Ralston song—not a Kelis song—had been sideloaded. And Plaintiffs do not own the copyrights to John Ralston's music.

In all, Robertson determined that Exhibit X contains various errors invalidating 18 of the 47 direct infringement claims against him. An additional 15 of the 123 remaining claims against other MP3tunes employees are also based on erroneous information. Robertson contends that Horowitz's errors amount to fraud. He accuses Horowitz of assigning Plaintiffs' track names randomly to sideloaded files and misidentifying numerous songs in Robertson's locker. Robertson asserts that Horowitz truncated the URLs deliberately without cross-checking databases. That, Robertson argues, is tantamount to "intentional misconduct" that should be sanctioned. (Robertson Mem., dated 9/14/13 (ECF No. 382) at 6.) Robertson also seeks to preclude Horowitz's testimony and vacate the grant of summary judgment against him.

Plaintiffs concede that Robertson accurately identified errors in Exhibit X. They explain that the errors are due to an "internal inconsistency" in the Defendants' two databases and that the errors do not materially change the number of works in suit. Horowitz corrected the errors and determined that his prior work understated the number of Plaintiffs' songs sideloaded by Robertson and MP3tunes employees. Thus, while 18 of the original 47 songs were erroneously identified as belonging to Plaintiffs, they have now discovered an additional 27 of

their songs Robertson directly sideloaded, for a grand total of 56 songs. For the other employees, though 15 songs were identified as erroneous, 29 new songs were identified, for a grand total of 137. Plaintiffs contend that Horowitz's errors stemmed from inadvertence, not fraud, and that Robertson bears the blame for failing to challenge Horowitz's conclusions before judgment was entered. Plaintiffs ask this Court to remove the erroneous songs and add the newly identified songs, thereby adjusting the number of direct infringement claims to 193.

This Court is troubled by the parties' conduct. While Robertson has no obligation to correct Plaintiffs' expert report, he did have a responsibility to challenge Horowitz's findings at the summary judgment stage. Robertson's decision to raise these errors after summary judgment is perplexing. And Robertson's failure to confer with Plaintiffs before filing a sanctions motion contravenes the Federal Rules. Equally troubling are Horowitz's mistakes, which led to entry of a judgment against Robertson on grounds that are now erroneous.

This Court exercises its informed discretion to vacate that portion of its summary judgment ruling imposing direct infringement liability on Robertson for the sideloads erroneously included in Horowitz's calculations. Further, this Court denies Plaintiffs' request to add newly discovered claims for direct infringement on the eve of trial. Finally, this Court declines to impose any other sanctions against Plaintiffs for Horowitz's errors and omissions. Accordingly, the motion in limine pending at ECF No. 381 is granted in part and denied in part. Depending on Robertson's cross-examination of Horowitz, this Court will give a limiting instruction to the jury so that testimony relating to Horowitz's errors in the summary judgment phase do not confuse the jury at trial. The parties are directed to submit proposed limiting instructions.

B. Plaintiffs' Motion to Preclude Challenges to Robertson's Direct Liability Based on Whether He Sideloaded the Works at Issue (ECF No. 429)

Plaintiffs' motion in limine pending at ECF No. 429 is denied in view of this Court's ruling on Robertson's motion pending at ECF No. 381 to preclude Horowitz's testimony and exhibits.

C. The Parties' Letter Motions Regarding Sur-Replies and Supporting Expert Declarations of Ellis Horowitz and Kyong Son (ECF Nos. 505 and 507)

Because no new direct infringement claims based on Horowitz's corrected declaration will proceed to trial, the parties' requests to file sur-replies and supporting declarations of Ellis Horowitz and Kyong Son are moot.

D. Plaintiffs' Motion to Preclude Testimony from Undisclosed Third-Party Witnesses (ECF No. 427)

Plaintiffs move to preclude Robertson from calling two witnesses he failed to disclose pursuant to Rule 26(a) and to preclude Robertson from calling any undisclosed "corporate representatives and/or current or former employees from other record labels and/or publishers." (Pls.' Mot., dated 9/18/13 (ECF No. 427) at 1.) These witnesses relate to the direct infringement claims against Robertson. However, Robertson indicates he will not seek to call any further undisclosed witnesses. Thus, that portion of Plaintiffs' motion is moot. And in view of this Court's rulings regarding the Horowitz Declaration, the copyrights relating to John Ralston are no longer at issue.

As to singer Carla Bozulich, a party is not permitted to call a witness who was not disclosed pursuant to Rule 26(a) or (e) unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Preclusion of a witness depends on several factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the

opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation marks omitted).

Robertson fails to explain his delay in disclosing his intent to call Bozulich. Songs by Bozulich's band, the Geraldine Fibbers, were identified in Plaintiffs' first takedown notice and in Alasdair McMullan's Declaration, dated October 29, 2010 (ECF No. 191). Robertson had ample notice of Bozulich. At summary judgment, Robertson could not show that any of the sideloads listed in the McMullan Declaration or the Audrey Ashby Declaration, dated October 29, 2010 (ECF No. 188), were sideloaded from authorized websites. As a consequence, Defendants were held liable for infringement stemming from those sideloads. Robertson cannot attack that ruling at trial. His attempt to recast Bozulich as an impeachment witness is an effort to circumvent this Court's prior ruling. Moreover, Bozulich's testimony is irrelevant because she was not authorized to distribute the music on her website, as Plaintiffs owned the exclusive distribution rights. (See Ex. A. to Platzer Decl. in Supp. Pls.' Reply Mem., dated 11/1/13 (ECF No. 483.).) Accordingly, Plaintiffs' motion to preclude Robertson from calling Bozulich as a witness at trial is granted.

### III.     Motions Regarding Evidence of Willful Blindness / Red Flag Knowledge

When a service provider is "aware of a high probability of the fact [of infringement] and consciously avoid[s] confirming that fact," that provider is willfully blind to infringement and may lose the protections afforded under the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"). Viacom Int'l v. YouTube, Inc., 676 F.3d 19, 35 (2d Cir. 2013); see also 17 U.S.C. § 512 et seq. Viacom also established that something less than a formal DMCA-compliant takedown notice could constitute apparent or "red flag" knowledge

of infringement. 676 F.3d at 32. A provider who has actual or red flag knowledge of "specific and identifiable instances of infringement" forfeits the protections of the DMCA safe harbor for those infringements. Viacom, 676 F.3d at 34; see also 17 U.S.C. §§ 512(c)(1)(A) & (d)(1). In view of Viacom's direction that district courts engage in "explicit fact-finding" on the issue of willful blindness, this Court vacated summary judgment on the issue of contributory infringement for those songs not subject to DMCA-compliant takedown notices. Viacom, 676 F.3d at 35 n.10; Capitol Records, 2013 WL 1987225, at *3. This Court also withdrew its prior grant of summary judgment to Defendants on their lack of red flag knowledge. See Capitol Records, 2013 WL 1987225, at *4.

A. Robertson's Motion to Preclude Evidence Related to Willful Blindness and Red Flag Knowledge (ECF No. 386)

Plaintiffs seek to present five categories of evidence related to willful blindness and red flag knowledge at trial: (1) evidence showing Robertson's awareness that no major record label distributed authorized content in MP3 format prior to January 25, 2007; (2) evidence showing that Defendants had Beatles songs available for sideload despite being aware that works by the Beatles were not authorized for digital distribution in 2007-2008; (3) screenshots of "questionable" websites from which Defendants' executives personally sideloaded files; (4) the results of a query of MP3tunes' databases, showing multiple takedown notices Defendants received for songs on specific third-party hosting sites, coupled with another query showing songs belonging to Plaintiffs which were sideloaded from those same 'repeat offender' hosting sites; and (5) communications, either among Defendants or users, indicating possible or likely infringement. (See Pls.' Opp., dated 10/10/13 (ECF. No 465) at 4-5.)

Robertson seeks to have the evidence in all five categories precluded.[1] He contends that it falls short of establishing willful blindness or red flag knowledge under Viacom because it only demonstrates a "general awareness that infringement may be occurring." Viacom, 676 F.3d at 35. Further, he points out that much of the evidence pertains to copyrights not owned by Plaintiffs.

This Court noted in its Reconsideration Order that Viacom "offers little guidance on how to reconcile the tension between the doctrine of willful blindness and the DMCA's explicit repudiation of any affirmative duty on the part of service providers to monitor user content." Capitol Records, 2013 WL 1987225 at *2; see also 17 U.S.C. § 512(m) (safe harbor protection shall not be conditioned on "a service provider monitoring its service or affirmatively seeking facts indicating infringing activity"). Further, it appears that this Court will be the first to engage in Viacom's "explicit fact-finding" with a jury. As such, this Court is thrust into the awkward position of precluding evidence under the exacting Viacom standard without intruding on the jury's determination of whether Plaintiffs' evidence meets that standard.

Plaintiffs concede that some of their willful blindness / red flag evidence does not relate to specific instances of infringement of copyrights in suit. Instead, they argue that the evidence "cumulatively make[s] it more probable that Defendants had the requisite suspicions of infringing activity and intent to bury their heads in the sand." (Pls.' Opp., dated 10/10/13 (ECF. No 465) at 11.) Because evidence of Defendants' general awareness of infringement has a

---

[1]      At oral argument, Robertson's counsel suggested that Robertson sought to exclude the actual copyrights "that are only in this case because of willful blindness and red-flag knowledge." (Oral Arg. Tr., dated 12/13/13 at 36-37.) Because Robertson's briefing requests only the preclusion of evidence demonstrating willful blindness / red flag knowledge, and because precluding Plaintiffs from trying these infringement claims would deprive them of their right to "explicit fact-finding" under Viacom, this Court declines to construe Robertson's motion as pertaining to preclusion of the very copyrights themselves.

"tendency to make [the] fact [of specific infringements] more or less probable than it would be without the evidence," Plaintiffs assert the evidence is admissible. Fed. R. Evid. 401.

Generally on a motion in limine, the question of admissibility, not sufficiency, is the issue for the Court. Some of the evidence Plaintiffs seek to present on the issue of willful blindness and red flag knowledge warrants preclusion under Federal Rules of Evidence 402 ("[i]rrelevant evidence is not admissible") and 403 ("[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury"). As in Viacom, "[b]y definition, only the current clips-in-suit are at issue in this litigation." Viacom, 676 F.3d at 34. Thus, only "specific infringements" that correspond to songs-in-suit are relevant to a determination of liability under a willful blindness or red flag knowledge theory. Viacom, 676 F.3d at 34. Evidence pertaining to the infringement of copyrights Plaintiffs do not own is of questionable relevance. See Santrayall v. Burrell, 993 F. Supp. 173, 177 (S.D.N.Y. 1998) (precluding as irrelevant evidence "insufficient as a matter of law to serve as the basis of [a claim]"). Plaintiffs' "cumulative" theory of willful blindness / red flag knowledge cannot be reconciled with Viacom. See Viacom, 676 F.3d at 33 (awareness of "significant" quantities of infringing content was "insufficient, standing alone, to create a triable issue of fact."). Even if the evidence were relevant, its probative value would be substantially outweighed by the danger of unfair prejudice to Defendants. And it would confuse and mislead a jury already grappling with application of a difficult legal standard. See United States v. Birney, 686 F.2d 102, 106 (2d Cir. 1982) ("The task of weighing these competing interests [under Rule 403] belongs to the trial judge. Because the trial court is in a better position to evaluate all the circumstances connected with these interests, it is given broad discretion.").

When this Court reconsidered its summary judgment decision, it was "unclear whether the [songs] referenced [in exhibits to the summary judgment papers were] among the current [songs]-in-suit." Viacom, 676 F.3d at 34. In view of Viacom's requirement for explicit fact-finding, this Court needed to account for the possibility that other evidence could satisfy Viacom's newly-announced standard. Plaintiffs have now been afforded that opportunity and have not supplemented the earlier record. Accordingly, evidence of the infringement of copyrights not owned by Plaintiffs is excluded as to Defendants' liability. The precluded evidence includes (1) any evidence regarding pre-January 2007 sideloads of songs not owned by Plaintiffs; (2) any evidence regarding Beatles songs to which Plaintiffs do not own the copyright; (3) screenshots of any "questionable" websites unless Plaintiffs' copyrighted songs were sideloaded from those websites and the screenshot accurately reflects the website's appearance at the time of such sideload; (4) evidence of or pertaining to takedown notices regarding copyrights Plaintiffs do not own; and (5) communications among the Defendants, or between Defendants and third parties, that do not reference Plaintiffs' copyrights or a website from which Plaintiffs' copyrights were sideloaded.

Plaintiffs also argue that their willful blindness / red flag knowledge evidence is admissible to enhance their statutory damages by showing willful infringement. Under section 504(c)(2) of the Copyright Act, "an infringer's intent can affect the amount of statutory damages awarded: only a minimal award may be warranted where the infringement is innocent; a higher award may be warranted where the infringer acted willfully." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143 (2d Cir. 2010). To show that a copyright infringement was willful, an owner must show that the infringer "had knowledge that its conduct represented infringement or

. . . recklessly disregarded the possibility." Bryant, 603 F.3d at 143 (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)).

It is unclear whether the thresholds announced in Viacom—the need to show "specific and identifiable" infringements and the repudiation of any affirmative duty to monitor content—affect the standard for willfulness in the statutory damages context. Compare Viacom, 676 F.3d at 31 (in context of liability, general awareness not enough), with Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 264 (2d Cir. 2005) (in context of statutory damages, "[a] jury could, without doubt, conclude that [a failure to affirmatively investigate potential infringement] reveal[s] willful blindness, or establish[es] a pattern of conduct so unreasonable as to constitute reckless disregard."). Because evidence of general infringement is relevant to the issue of willfulness, but irrelevant to infringement liability, this Court will bifurcate liability from willfulness and damages at trial. "[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court." Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988). Here, even the strongest limiting instruction would not protect Robertson against undue prejudice arising from the jury hearing evidence regarding general instances of infringement. And it would be unduly difficult and confusing for the jury to have to ignore such evidence for determining infringement, but consider it for willfulness. Therefore, during the damages phase only, Plaintiffs will be permitted to introduce evidence of potential infringement of other copyrights for the purpose of showing that Defendants engaged in a pattern of conduct so unreasonable with respect to potential infringement that it constitutes reckless disregard.

B. Robertson's Motion To Preclude Horowitz's Supplemental Report and Evidence Regarding the Single Master Recording Issue (ECF No. 415)

On August 8, 2013, Plaintiffs produced a Supplemental Report from their expert Ellis Horowitz, which they plan to use to explain how they derived their lists of infringements related to their willful blindness / red flag knowledge claims. (Pls.' Opp., dated 10/9/13 (ECF No. 456).) Robertson moves to preclude the Supplemental Report as untimely and to preclude Plaintiffs from presenting evidence to show that MP3tunes used a "single master copy" storage system.

Robertson argues that the same copyrights supporting the willful blindness / red flag knowledge claims were at issue back before summary judgment when expert discovery was ongoing. Thus, Plaintiffs should have produced the information in the Supplemental Report in 2010 when expert discovery originally closed. Plaintiffs' tardy production of Horowitz's Supplemental Report is problematic. The deadline for production of that report was July 12, 2013. (Scheduling Order, dated 7/3/13, ECF No. 376.) The exclusion of evidence pursuant to Rule 37 is "an extreme sanction," especially where, as here, the testimony is undeniably important to Plaintiffs' claims. Outley v. City of N.Y., 837 F.2d 587, 590 (2d Cir. 1988). Further, Robertson cannot claim prejudice when he will have had the Supplemental Report for over six months prior to trial. And Robertson's argument that the belated production robbed him of an opportunity to take discovery is hollow in view of Robertson's failure to take discovery that could have revealed the obvious mistakes in Horowitz's original analysis prior to summary judgment. Accordingly, this portion of Robertson's motion is denied.

As for the "single master copy" storage issue, this Court held previously that MP3tunes "does not use a 'master copy' to store or play back songs stored in its lockers" and therefore did not infringe Plaintiffs' public performance rights. Capitol Records, Inc. v.

MP3tunes, LLC, 821 F. Supp. 2d 627, 650 (S.D.N.Y. 2011). Plaintiffs do not challenge this finding, but plan to offer testimony that Robertson believed the storage system was unlawful and boasted that he would not get caught. Plaintiffs argue such testimony is relevant to willfulness in assessing statutory damages. In view of the fact that this Court has already determined MP3tunes' storage system was not illegal, second-hand testimony regarding Robertson's subjective beliefs as to its legality is likely to confuse the jury. It would also precipitate a needless exploration of the technical components of Defendants' storage system. Balancing these countervailing concerns and the marginal relevance, this Court determines that evidence regarding the "single master copy" storage system is excluded under Federal Rule of Evidence 403.

IV.     **Motions Regarding "Promotional Downloads"**

At summary judgment, this Court rejected Defendants' argument that Plaintiffs' free distribution of certain songs pursuant to "viral" marketing campaigns defeated their claims for copyright infringement. Capitol Records, 821 F. Supp. 2d at 647-48. The parties launch five in limine motions concerning evidence of Plaintiffs' promotional downloads.

A.    Plaintiffs' Motion to Preclude Evidence Regarding Promotional
       Downloads (ECF No. 425)

First, Plaintiffs move to preclude Robertson from offering any evidence of promotional downloads. They argue it is irrelevant under Rule 402 because this Court rejected Robertson's viral marketing argument at summary judgment. Robertson counters that such evidence is relevant to defend against Plaintiffs' revived willful blindness / red flag knowledge claims. He also contends that it is probative of whether Defendants are innocent or willful infringers.

Robertson's argument concerning the relevance of promotional downloads to Plaintiffs' willful blindness / red flag knowledge claims has traction. Under Viacom, red flag knowledge occurs when a provider is "subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person." Viacom, 676 F.3d at 31. Willful blindness occurs when a provider engages in a "deliberate effort to avoid guilty knowledge." Viacom, 676 F.3d at 35. Evidence showing Plaintiffs' practice of making copyrighted music available for free, such that "internet users, including MP3tunes' users and executives, have no way of knowing for sure whether free songs on the internet are unauthorized" is relevant. Capitol Records, 821 F. Supp. 2d at 644. Such evidence speaks to whether infringement of a particular copyright would have been "objectively obvious to a reasonable person" and bears on the issue of whether Defendants were aware of a "high probability of the fact in dispute and consciously avoided confirming that fact." Viacom, 676 F.3d at 31, 35. Of course, Plaintiffs will be able to challenge such evidence through cross-examination.

Evidence of promotional downloads is also relevant to the issue of statutory damages. Such damages can be reduced if the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c); Bryant, 603 F.3d at 139 ("If the infringer proves that his infringement was innocent, the court may reduce damages to an amount not less than $200.").

In allowing evidence of promotional downloads for these two specific purposes, this Court cautions Defendants that such evidence may not be used to contest liability for the infringements found on summary judgment. Robertson's ambiguous assertion that he desires to use this evidence more broadly to "undermine[] Plaintiffs' trial contentions" will not be

countenanced at trial. (See Robertson Opp., dated 10/9/13 (ECF No. 453) at 11.) Accordingly, Plaintiffs' motion to preclude the testimony of Roger Faxon, Nick Clift, Devin Krug, and Stephanie Trick is also denied.

> ### B. Plaintiffs' Motion to Preclude Certain Testimony and Documents "Relied Upon" by Laura Stamm (ECF No. 396)

Next, Plaintiffs move to preclude certain testimony and documents purportedly relied on by Laura Stamm, Robertson's damages expert. First, Plaintiffs seek to preclude the admission of nearly 150 articles and reports as hearsay and unduly prejudicial. Plaintiffs complain that the articles "consist of a sustained barrage of criticism of Plaintiffs' business practices and the current state of copyright law." (Pls' Mem., dated 9/18/13 (ECF No. 397) at 5.) Because Robertson claims that he does not seek to admit these articles into evidence unless they become relevant during cross-examination, this Court defers ruling on this portion of Plaintiffs' motion.

Second, Plaintiffs argue that Stamm's testimony on promotional downloads should be precluded for the reasons discussed in their principal motion to exclude this type of evidence. As previously described, this Court will permit Stamm to testify regarding promotional downloads for the limited purposes of defending against Plaintiffs' willful blindness / red flag knowledge claims and reducing statutory damages.

Finally, Plaintiffs seek to preclude Stamm from testifying that she was once a consultant for EMI Publishing. This portion of Plaintiffs' motion is granted. While an expert's prior experience is important to her qualification, see Fed. R. Evid. 702, Robertson has failed to articulate a justification for this testimony that would overcome the undue prejudice Plaintiffs face by having a former employee testify on behalf of their adversary. Stamm may testify to her past experience generally, but her qualifications do not hinge on naming her former EMI

consultancy. She may testify that she was a consultant to a major music publishing company. Accordingly, the motion in limine pending at ECF No. 396 is granted in part and denied in part.

### C. Plaintiffs' Motion to Exclude the Declaration of Steve Gordon and to Preclude Gordon from Testifying at Trial (ECF No. 391)[2]

Plaintiffs move to exclude Steve Gordon, Robertson's expert on promotional downloads, from testifying at trial. They also move to exclude his declaration. Gordon, an attorney and "entertainment business consultant" would testify that is it standard practice in the music industry for copyright owners to provide free music downloads for promotional purposes and that EMI "aggressively engages" in such marketing strategies. (Ex. A ("Gordon Decl.") to Scibilia Decl, dated 9/18/02 (ECF No. 393) at 1, 4, 10.) Plaintiffs assert that Gordon lacks the experience to render an opinion on standard industry practice, that his conclusions are not reliable, that his opinion is based on nothing but his own experience and hearsay anecdotes, and that he draws impermissible legal conclusions.

"It is well established that 'the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence[.]'" Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (quoting Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962)). Federal Rule of Evidence 702 requires that a Court "first determine whether the proposed witness is qualified as an expert by knowledge, skill, experience, training, or education." Loussier v. Universal Music Grp., Inc., No. 02 Civ. 2447 (KMW), 2005 WL 5644422, at *2 (S.D.N.Y. June 28, 2005). Plaintiffs argue that Gordon is not qualified to render his opinions because he has never been personally involved in negotiating any free music downloads and has never written about the practice. Gordon has over twenty-five years of experience in the music industry and he has

---

[2] Gordon's Declaration, as opposed to his testimony, is only admissible if it falls under a hearsay exception. See, e.g., Ake v. Gen. Motors Corp., 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996).

written and lectured about how the business has changed in the digital age. (Gordon Decl. at 1-2.) He is also the host of an internet radio show featuring interviews with music artists and industry professionals. (Gordon Decl. at 2.) He has served as a business consultant to major entertainment companies such as MTV and Sony Music. (Gordon Decl. at 2.) The qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the Rule." United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985). As such, Gordon's past experience qualifies him as an expert on standard practices in the music industry. This Court is confident that any lacunae in his relevant experience can be addressed on cross-examination.

Next, courts must determine whether an expert's testimony is based on "reliable theories or principles." F.D.I.C. v. Suna Assocs., Inc., 80 F.3d 681, 686 (2d Cir. 1996) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)). "The reliability requirements do not preclude an expert from testifying on the basis of experience alone or in conjunction with other knowledge, training, skill, or education." Figueroa v. Bos. Scientific Corp., 254 F. Supp. 2d 361, 365 (S.D.N.Y. 2003). But an expert who bases his opinion solely on his own experience "must do more than aver conclusorily that his experience led to his opinion." Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001), abrogated on other grounds by Casey v. Merck & Co., 653 F.3d 95 (2d Cir. 2011). "Whether the expert bases his testimony on professional studies or personal experience, he must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

There is no "definitive checklist or test" for reliability. Daubert, 509 U.S. at 593. Rather, the inquiry envisioned by Rule 702 is a flexible one, and "[t]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its

ultimate reliability determination[.]" 24/7 Records, Inc. v. Sony Music Entm't, Inc., 514 F.

Supp. 2d 571, 574 (S.D.N.Y. 2007) (quoting Kumho, 526 U.S. at 142.). Gordon's opinions

regarding the use of promotional downloads for marketing purposes are based on his experience

in the music industry, research undertaken for his book, and interviews conducted either

informally or for his internet radio show. His opinions regarding Plaintiffs' practices with

respect to promotional downloads are based on his review of discovery materials in this case and

his independent research. Gordon's independent research appears to consist primarily of internet

searches for free downloads of Plaintiffs' music. (Ex. B ("Gordon Dep. Tr.") to Scibilia Decl,

dated 9/18/02 (ECF No. 393) at 192:5 ("I probably Googled 'EMI Free Download.'").)

   To be sure, Gordon's deposition testimony offers some troubling sound bites that

raise questions about the reliability of his conclusions. See, e.g., Gordon Dep. Tr. at 119:9-14

("[I]t's an osmosis kind of thing where it seeps and flows in and out of my consciousness what

the marketing practices of the major labels are now[.]"). But "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509

U.S. at 596; see also Marmol v. Biro Mfg. Co., No. 93 Civ. 2659 (SJ), 1997 WL 88854, at *4

(E.D.N.Y. Feb. 24, 1997) ("Doubts about the usefulness of an expert's testimony . . . should be

resolved in favor of admissibility."). Accordingly, Plaintiffs' motion to preclude Steve Gordon's

testimony is denied at this time. However, this Court will not hesitate to corral Mr. Gordon if he

strays into the wonderland of pure ipse dixit. See Daubert, 509 U.S. at 590 ("[T]he word

'knowledge' connotes more than subjective belief or unsupported speculation."); see also

Pugliano v. United States, 315 F. Supp. 2d 197, 199 (D. Conn. 2004) (excluding testimony

"connected to the research merely by ipse dixit.") It appears to be more appropriate to let a jury

hear Gordon's testimony "tested by the adversary process" rather than "exclude[] it from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998) (citing Daubert, 509 U.S. at 596).

### D. Robertson's Motion to Preclude Testimony from Previously Undisclosed Witnesses and Deposition Designations of Mark Piibe (ECF No. 413)

Robertson also moves in limine regarding the "promotional downloads" evidence. Specifically, he seeks to preclude the testimony of Pat Shah and Dominic Pandiscia under Rule 37 because they were not disclosed as witnesses prior to the August 2013 Joint Pre-Trial Order. Plaintiffs counter that Shah and Pandiscia are substitute corporate representative witnesses because Mark Piibe—Plaintiffs' original corporate representative—left for employment with a competitor. "Sanctions pursuant to Rule 37 are awarded at the discretion of the district court, and preclusion is generally not ordered." Harkabi v. SanDisk Corp., No. 08 Civ. 8203 (WHP), 2012 WL 826892, at *7 (S.D.N.Y. Mar. 12, 2012) (internal quotation marks omitted). While it appears that Plaintiffs delayed designating a new corporate representative, this Court cannot order them to call a representative who is no longer in their employ.

Robertson is correct that corporate representatives cannot necessarily testify as interchangeable conduits for the collective knowledge of a corporation. See L-3 Commc'n Corp. v. OSI Sys., Inc., No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *2 (S.D.N.Y. Apr. 13, 2006) ("[A]t trial, [a non-adverse party] may only offer testimony from [its corporate representative] as a fact witness based on his personal knowledge and in compliance with Federal Rule of Evidence 701"). At this juncture, however, any prejudicial effect is negligible. See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 962 (2d Cir. 1997) (preclusion not warranted where delay caused only "slight" prejudice). Plaintiffs represent that Pandiscia and Shah will act

largely as substitutes for the testimony of Piibe, and Robertson may use Piibe's Rule 30(b)(6) testimony for any purpose. See Fed. R. Civ. P. 32(a)(3). This Court will permit Robertson to conduct brief depositions of Shah and Pandiscia before they take the stand at trial. Finally, Robertson's application to preclude excerpts of Piibe's deposition is denied as moot because Plaintiffs did not designate his deposition testimony in their case-in-chief. Accordingly, the motion in limine pending at ECF No. 413 is denied.

### E. Robertson's Motion to Overrule Plaintiffs' Authenticity Objections to Certain Trial Exhibits (ECF No. 403)

Finally, Robertson asks this Court to overrule Plaintiffs' authenticity objections concerning certain third party documents and screenshots of websites purporting to offer free downloads. The parties are directed to meet and confer regarding authenticity objections. Further, the parties are cautioned that no exhibit will be received into evidence unless a witness offers testimony about it. Accordingly, the Court will defer ruling on Robertson's motion at this time.

## V. Plaintiffs' Motion Regarding "Works for Hire" Status (ECF No. 419)

Plaintiffs move to preclude Robertson from challenging ownership of certain copyrights based on their "works for hire" status. This appears to be a pre-emptive strike by Plaintiffs. Robertson indicates that he does not intend to challenge Plaintiffs' ownership on this basis. While that may moot the motion, finality is important. Accordingly, Plaintiffs' motion pending at ECF No. 419 is granted. No challenge to Plaintiffs' copyright ownership of any song in this action may be based on its "work-for-hire" status.

## VI. Robertson's Motion to Limit Plaintiffs' Statutory Damages Claims (ECF No. 417)

Robertson moves to preclude myriad copyright registration certificates and related ownership documents. The motion cannot properly be styled as a motion in limine. It is a smorgasbord of legal arguments against Plaintiffs' ownership claims. On summary judgment, this Court ruled that Plaintiffs had demonstrated prima facie copyright ownership of nearly all of the copyrights listed in the McMullan and Ashby Declarations. Capitol Records, 821 F. Supp. 2d at 647. Robertson failed to rebut that prima face case. He now contends that various defects in the copyright registrations warrant their exclusion from evidence. That would be a de facto dismissal. He also attempts to torpedo some claims on a variety of grounds, including statute of limitations, failure to produce ancillary ownership evidence, and lack of respondeat superior liability.

This Court already ruled on Plaintiffs' copyright ownership for the bulk of the works identified in the McMullan and Ashby Declarations. Capitol Records, 821 F. Supp. 2d at 647. That ruling will not be revisited.

Robertson also claims that certain copyright registrations should be precluded because they were produced after the close of discovery. Specifically, he seeks preclusion of six separate productions, beginning on November 13, 2009 and ending on August 29, 2013. At summary judgment, this Court specifically permitted Plaintiffs to provide further proof of ownership with respect to certain works listed the Ashby and McMullan declarations. Capitol Records, 821 F. Supp. 2d at 647 n.1. Again, on July 3, 2013, this Court ordered Plaintiffs to "identify tracks, copyrights and evidence added" by this Court's Reconsideration Order. (Order, dated 7/3/13 (ECF No. 376).) These directives authorized belated productions and put Robertson on notice. Further, even if Plaintiffs failed to produce the actual copyright registrations, which

are public records, Robertson has been aware of every song at issue in this litigation for years. "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002). Robertson simply cannot show prejudice from any belated production of registrations for songs he has known about for years.

On July 28, 2009, Plaintiffs amended their complaint to add fifteen additional publishing plaintiffs. Robertson argues that any infringement claims asserted by these newer plaintiffs for songs sideloaded on or after July 28, 2006 are time-barred. But the claims of the publishing plaintiffs relate back to the time the original complaint was filed because their claims "arose out of the conduct, transaction, or occurrence" set out in the original complaint. See Fed R. Civ. P. 15(c); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997); Jones v. Goord, No. 95 Civ. 8026 (WHP), 2000 WL 290290, at *3 (S.D.N.Y. Mar. 20, 2000). Accordingly, no claims are barred on statute of limitations grounds.

Robertson's motion to preclude Plaintiffs from presenting copyright certificates reflecting a registration date more than three months past December 6, 2008 (the day of the last sideload alleged this action) is granted with respect to copyright certificates for post-1972 recordings only. See 17 U.S.C. § 412. Counsel are directed to confer in good faith to eliminate any additional post-1972 copyright certificates that were sideloaded more than three months prior to their registration date. To the extent the parties are unable to agree on whether any post-1972 recordings are subject to the "ongoing series" rule, see C.A. Inc. v. Rocket Software, Inc., 579 F. Supp. 2d 355, 636-64 (E.D.N.Y. 2008), that determination will be left to trial.

Robertson also moves to preclude Plaintiffs from introducing copyright registrations for songs sideloaded by unidentified third parties from Defendants' IP address,

198.172.200.5. In deciding summary judgment, this Court found issues of fact remained regarding whether certain MP3tunes executives had sideloaded 123 songs in the course of their employment. Capitol Records, 821 F. Supp. 2d at 649. Though not presented at summary judgment, Plaintiffs' expert identified an additional 19,068 sideloaded songs from the same MP3tunes IP address, hundreds of which were copyrighted by Plaintiffs. (Robertson's Mem., dated 9/18/13 (ECF No. 418) at 10.) Robertson contends that Plaintiffs should not be permitted to present these claims at trial because it is impossible to determine who sideloaded them, let alone whether they were sideloaded for professional or personal use. Plaintiffs counter that the additional sideloads from the Defendants' IP address is "powerful and admissible circumstantial evidence of guilt." (Pls.' Opp., dated 10/9/13 (ECF No. 442) at 22.) While "dismissing claims is not the prototypical purpose of a motion in limine, such motions . . . have sometimes been construed as or converted into motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or motions for summary judgment under Rule 56." Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (internal quotations omitted). The direct infringement claims against unidentified third parties cannot be substantiated against MP3tunes absent evidence that the songs were sideloaded during the course of employment. This Court previously found questions of fact as to whether identified executives sideloaded particular songs as part of "seeding" projects for MP3tunes or for their own personal benefit. Capitol Records, 821 F. Supp. 2d at 649. But it is impossible to determine whether an unknown person sideloaded a song in the course of his or her employment. Aside from the fact of the sideload, no evidence pertaining to the circumstances surrounding these particular sideloads exists. Because Plaintiffs cannot prevail on these claims, their direct infringement claims against unknown users from the IP address 198.172.200.5 are dismissed.

Robertson next moves to preclude copyright registrations for sound recordings fixed prior to February 15, 1972 because statutory damages are not permitted for these works. See 17 U.S.C. § 301. Because the copyright registrations are still relevant evidence of ownership for pre-1972 works even if statutory damages are not available, Robertson's motion is denied.

Robertson's remaining contentions seek to challenge the validity of Plaintiffs' copyright registrations. A certificate of registration constitutes prima facie evidence of copyright ownership. 17 U.S.C.§ 410(c); Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003). Generally, this presumption may only be rebutted where "other evidence in the record casts doubt on the question" of ownership as opposed to "formal inadequacies" in the registration itself. Fonar Corp. v. Domenick, 105 F.3d 99, 104-05 (2d Cir. 1997) (emphasis in original) (internal quotation marks omitted). Even if such errors in the registrations exist, they would not be a basis to exclude evidence of copyright ownership altogether. As such, Robertson's motion to preclude copyright certificates lacking registration numbers is denied. Further, Plaintiffs do not bear the burden of providing chain of title evidence or other supporting documents for works in which they are the named claimant on the registration. Thus, Robertson's motion to preclude such copyrights for Plaintiffs' failure to produce written transfer agreements is also denied. Finally, Robertson's motion to preclude copyright registrations in which the claimants are Plaintiffs' foreign affiliates is denied without prejudice. Plaintiffs are directed to produce chain of ownership documentation regarding those copyright registrations claimed by foreign affiliates by February 7, 2014. By February 11, 2014, the parties are directed to submit a joint letter identifying any copyrights-in-suit for which ownership remains a contested issue, and outlining the contours of any such dispute.

## VII. Robertson's Motion to Preclude Evidence Concerning Cover Art (ECF No. 409)

Robertson moves to preclude Plaintiffs from offering certain evidence concerning the cover art infringement claims in this action, including sound recording ("SR") registrations as evidence of copyright ownership and any evidence that Defendants breached their licensing agreement with Amazon.com. Robertson contends that cover art cannot be registered ancillary to SR copyrights. But the case law Robertson cites is distinguishable and Copyright Circular #56 contemplates that an SR Registration may include "artwork, photographs, and/or liner notes." Copyright Office, Copyright Registration for Sound Recordings, Copyright Circular # 56, at 3 (2004). Robertson also argues that registrations in which a corporate entity is listed as the artist should be precluded. But a certificate of copyright registration is prima facie evidence of copyright ownership. 17 U.S.C.§ 410(c). "The Copyright Office has expertise to determine in the first instance whether a filer has complied with the technical requirements for a registration certificate." Fonar, 105 F.3d at 105. Absent evidence of "proof of deliberate misrepresentation" to the Copyright Office, Robertson's hyper technical quibbles with Plaintiffs' registration forms do not rebut the presumption of ownership. Fonar, 105 F.3d at 105; cf. Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co., 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010) (registrations invalid where they contained "none of the information required by § 409") (internal quotation marks omitted).

Finally, Robertson also challenges Plaintiffs' standing to claim a breach of the Amazon.com licensing agreement with MP3tunes. But Plaintiffs allege copyright infringement, not breach of contract. "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful

reproduction or distribution)." <u>MDY Indus., LLC v. Blizzard Entm't, Inc.</u>, 629 F.3d 928, 941 (9th Cir. 2010). Plaintiffs meet this standard by alleging that MP3tunes unlawfully copied cover art images in a manner that exceeded the scope of the license. As noted at summary judgment, the cover art claims will therefore proceed to trial, and Robertson's motion pending at ECF No. 409 is denied.

## VIII. Robertson's Motion to Establish Certain Facts for Trial (ECF No. 411)

Robertson moves pursuant to Federal Rule of Civil Procedure 56(g) to have this Court establish certain uncontroverted facts for trial. But the uncontroverted facts are not facts at all, they are pure advocacy. For example, Robertson would have this Court regard as undisputed that MP3tunes does not "purposefully blind itself to its users' identities and activities" when in fact the issue of willful blindness is now a key point of dispute for trial. (Ex. DA to Sacks Decl., dated 9/19/13 (ECF No. 433-3) at 1.) Robertson is no doubt aware that this Court qualified the very finding he cites in its Reconsideration Order. See <u>Capitol Records</u>, 2013 WL 1987225, at *2 ("Such a finding does not 'explicitly' address the issue of whether MP3tunes 'engaged in a deliberate effort to avoid guilty knowledge' regarding the sideloaded content itself".). This motion is patently frivolous. It is denied.

## IX. Plaintiffs' Motion to Preclude Argument Regarding the Legality of Locker Services and Cloud Computing (ECF No. 421)

Plaintiffs move pursuant to Federal Rule of Evidence 403 to preclude Robertson from arguing legality of "cloud computing" and locker services. (Pls.' Mem., dated 9/18/13 (ECF No. 422.) Plaintiffs maintain that argument about these technical functions is irrelevant and unduly prejudicial because the jury might determine that a verdict for Plaintiffs would threaten beloved internet services such as iTunes and Google. Plaintiffs' fears are far-fetched

and premature. Such a motion can only be considered in the context of trial. Accordingly, the motion is denied at this time.

### X. Plaintiffs' Motion to Preclude Evidence Pertaining to Communications Between Plaintiff's Counsel and Former Employees of Defendants (ECF No. 423)

Plaintiffs move to preclude Robertson from introducing evidence of communications between Plaintiffs' counsel and Emily Richards, MP3tunes' former president, as well as Cody Brocious. While this Court found no basis to sanction Plaintiffs' counsel for their communications with Richards in 2009, it noted that Richards gave contradictory testimony at two depositions, that it was "apparent" she was "untruthful" at one of those depositions, and that the circumstances surrounding her terminated employment at MP3tunes bears on her credibility. (See Order, dated 10/16/09 (ECF No. 120) at 12, 14.) It is clear that Richards' communications with Plaintiffs' counsel are therefore admissible and relevant as evidence of bias, as are the Brocious communications. See United States v. Abel, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant[.]"). While the parties may reference this Court's conclusion that Richards was apparently untruthful at one of her depositions, they may not allude to this Court's conclusion that Plaintiffs' counsels' communications were not sanctionable. This Court's finding that sanctions were unwarranted does not bear on Richards' bias against the Defendants. Further, this Court will consider a countervailing limiting instruction that there is nothing illegal or improper about reimbursing legal and travel fees incurred by a witness responding to a subpoena. Accordingly, the in limine motion pending at Docket No. 423 is denied.

## XI. Robertson's Motion to Preclude Plaintiffs from Presenting Robertson's Deposition Designations in their Case-in-Chief (ECF No. 401)

Robertson moves to preclude Plaintiffs from introducing his deposition testimony in their case-in-chief at trial. Robertson argues that because he will also be testifying live in Plaintiffs' case-in-chief, the deposition testimony is needlessly duplicative and should be used only for impeachment purposes. "Rule 32(a)(3) is liberally construed, and although the court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person." Redd v. N.Y. State Div. of Parole, 923 F. Supp. 2d 393, 408 (E.D.N.Y. 2013) (internal quotation marks omitted). Because the deposition testimony is admissible, this Court will not preclude Plaintiffs from using it in their case-in-chief at this time, and the in limine motion pending at Docket No. 401 is denied.

## XII. Robertson's Motion Regarding the Order of Proof at Trial (ECF No. 399)

Robertson moves to have the claims against MP3tunes severed from the trial of the claims against him. He also moves to preclude Plaintiffs from referring to the claims against MP3tunes at his trial. Robertson claims that he would be prejudiced if the claims against MP3tunes were not severed because MP3tunes will likely default at trial, and it may appear to the jury that MP3tunes has no defense to the claims against it. Robertson's contentions are unavailing. The claims against MP3tunes are inextricably intertwined with the claims against Robertson, and severing them would prejudice Plaintiffs by making it unduly difficult to prove the predicate for the secondary and vicarious liability claims against Robertson. Indeed, as Robertson himself once argued, "it is simply not possible to litigate [his] purported liability and any damages resulting from that purported liability without placing MP3tunes directly in the

cross hairs of Plaintiffs' case in chief." (See Ex. A to Pls.' Mot., Letter from Gregory Gulia, dated May 25, 2012.) Accordingly, the motion in limine pending at Docket No. 399 is denied.

### XIII. Plaintiffs' Motion to Preclude Argument and Evidence Regarding Personal Jurisdiction (ECF No. 394)

Plaintiffs move to preclude Robertson from challenging personal jurisdiction. Plaintiffs' motion is granted. On July 20, 2012, and again in the Reconsideration Order, this Court determined that it had personal jurisdiction over Robertson. Robertson cannot re-litigate that determination. Contrary to Robertson's contention, this Court did not find that genuine questions of material fact existed regarding personal jurisdiction. Robertson's reliance on language in this Court's Reconsideration Order is misplaced. See Capitol Records, 2013 WL 1987225, at *9. Accordingly, Plaintiffs' motion pending at ECF No. 394 is granted.

CONCLUSION

Finally, a caution to the parties and their attorneys. The sheer volume of in limine motions and the arguments advanced in some of them suggest to this Court a fundamental misconception about a jury trial. While the claims and defenses expanded exponentially as the litigation unfolded, trials distill matters to manageable proportions that a jury can understand. Argument proliferation will be interdicted at trial. Both sides would be well advised to focus on the relevant evidence instead of endless mudslinging, which reached a feverish pitch in the nineteen "in limine" motions.

For the foregoing reasons, the motions in limine pending at ECF Nos. 394 and 419 are granted. The motions in limine pending at ECF Nos. 391, 399, 401, 409, 411, 413, 421, 423, and 429 are denied. The motions in limine pending at ECF Nos. 381, 386, 396, 415, 417, 425, and 427 are granted in part and denied in part. This Court will not rule on the motion pending at ECF No. 403 at this time. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 381, 386, 391, 394, 396, 399, 401, 403, 409, 411, 413, 415, 417, 419, 421, 423, 425, 427, and 429.

Dated: January 29, 2014
     New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*