# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | ) | |
| CAPITOL RECORDS, LLC, *et al,* | ) | |
| | ) | |
| *Plaintiffs,* | ) | No. 07 Civ. 9931 (WHP)(FM) |
| | ) | |
| v. | ) | |
| | ) | |
| MP3TUNES, LLC, and MICHAEL ROBERTSON, | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## PLAINTIFFS' PROPOSED LIABILITY JURY INSTRUCTIONS

New York, New York
DATED:  February 14, 2014


By:  /s/_____
Andrew H. Bart
Lindsay W. Bowen
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1645
Facsimile  (212) 891-1699

Luke C. Platzer
J. Douglas Wilson
Jenner & Block LLP
1099 New York Ave. NW
Washington,  DC 20001
Telephone: (202) 639-6000
Facsimile  (202) 661-4819

   *Attorneys for Plaintiffs Capitol Records,
   LLC, EMI Christian Music Group Inc., and
   Priority Records LLC*


By:  /s/_____
Frank P. Scibilia
M. Mona Simonian
Ross M. Bagley
Pryor Cashman LLP
7 Times Square
New York, New York 10036
Telephone:  (212) 421-4100
Facsimile: (212) 326-0806

   *Attorneys for the Beechwood Music Corp.,
   Colgems-EMI Music Inc., EMI April Music
   Inc., EMI Blackwood Music, EMI Full Feel
   Music, EMI Golden Torch Music Corp.,
   EMI Longitude Music, EMI Virgin Music,
   Inc., EMI Virgin Songs, Inc., EMI Al
   Gallico Music Corp., EMI Algee Music
   Corp., EMI Feist Catalog, Inc., EMI Gold
   Horizon Corp., EMI Grove Park Music,
   Inc. EMI Hastings Catalog, Inc., EMI Mills*

*Music, Inc., EMI Miller Catalog, Inc., EMI
Robbins Catalog, Inc., EMI U Catalog,
Inc., EMI Unart Catalog, Inc., Jobete
Music Co., Inc., Screen Gems-EMI Music,
Inc., Stone Agate Music, and Stone
Diamond Music*

## INSTRUCTIONS AFTER CLOSING OF LIABILITY PHASE

**Robertson's Objection**:  Robertson Objects to the format of Plaintiffs' instruction as not tied to any specific claim in the complaint.  The claims have independent elements not addressed by Plaintiffs' instructions which attempts to create topics.  In addition, by attempting to create instructions by topic, Plaintiffs attempt to by-pass the fact that that they did not allege certain theories of liability in connection with all claims, such as vicarious liability with respect to common law copyright and unfair competition.

**Plaintiffs' Response**: Plaintiffs' format logically tracks the discrete issues identified for trial in the Court's summary judgment and reconsideration decisions (infringement by Robertson, infringement by MP3tunes executives, Cover Art infringement, and infringement by users), a format that will be far more easy for the jury to understand than organizing by section of the U.S. code and then jumping from topic to topic and event to event, as Defendant's proposal does.  Robertson's objection also mischaracterizes the Second Amended Complaint and neglects that Plaintiffs pleaded <u>all</u> causes of action against MP3tunes and Robertson <u>jointly</u>, such that Robertson's personal liability is at issue under all theories presented in the Complaint.

### Copyright

The term "copyright" is the name for the rights that Congress has decided that the law extends to an author of an original work.  As relevant to this trial, those rights include the exclusive rights to copy the work, to distribute the work, to publicly perform the work, and to license others to do so.  An "author" can be the creator of the work, the person or entity that commissions the work, or the employer of the creator.  A "work" is any material that is subject to protection under the copyright laws, including a sound recording or a musical composition.  A copyright in a work can be transferred or assigned by the author to another, including to a record label (in the case of a sound recording) or to a music publisher (in the case of a musical composition).

Musical compositions, such as those owned by some of the Plaintiffs in this case, are subject to protection under the federal copyright laws.  Sound recordings, such as those owned by some of the Plaintiffs in this case, are subject to protection under the federal copyright laws if they were recorded on or after February 15, 1972.  Sound recordings recorded before February

4

15, 1972, some of which are also owned by the Plaintiffs in this case, are covered by state "common law copyrights," and subject to protection under the laws of the various states, including the state of New York.

Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.1 "Introduction" ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106 (2005); MGM Studios, Inc. v. Grokster Ltd., 125 S. Ct. 2764 (2005); 2 Nimmer on Copyright §§ 5.01, 7.16, 7.18.

**Robertson's Objection:  Robertson objects to this instruction as overly simplistic and as stating as fact that  Plaintiffs' sound recordings and musical compositions "are subject to protection" under federal and state law. Robertson will prove otherwise. The instruction does not state that protection is only afforded to "original" sound recordings or compositions and that works may be transferred only if they are transferred in accordance with applicable law. Robertson respectfully suggests that his liability instructions should be adopted based upon the cases and authorities cited therein.**

## <u>Copyright – Infringement</u>

The allegations in this case assert a claim of copyright infringement, or violation of a copyright's legal protections.  If a copyright has been properly registered with the copyright office, the owner of that copyright can bring a legal claim under federal law against persons who violate the copyright's protections by exercising an exclusive right, such as copying, display, or reproduction, without permission from the copyright owner.

Plaintiffs in this case have alleged that their copyrights have been infringed by several parties.  These are:  Defendant Michael Robertson, Defendant MP3tunes, certain MP3tunes executives, and certain users of MP3tunes' websites and software.  Plaintiffs further allege that Defendants Robertson and MP3tunes are liable for all the infringements at issue, which I shall explain shortly.

All persons and corporations who participate in, exercise control over, or benefit from copyright infringement may be held jointly and severally liable as copyright infringers so that a copyright owner is entitled to sue all, one, or some of the infringers but not others.  You should not draw any negative inferences from the fact that the Plaintiffs here have brought claims against Robertson and MP3tunes, but not against other persons involved in the infringement.

<u>Authority</u>:  Adapted from 17 U.S.C. § 501; 2 Nimmer on Copyright § 7.16, 7.18; Black's Law Dictionary (9th ed. 2009); <u>Capitol Records, Inc. v. MP3tunes, LLC</u>, 07 Civ. 9931 (WHP), Slip Op. at *18 (S.D.N.Y. May 14, 2013) (Dkt. No. 368).


**<u>Robertson's Objection</u>:  The above is an overly simplistic, confusing and incorrect statement of copyright law.  For example, one need not obtain the consent of the owner of the copyright to legally exploit the work, if for example, one were to obtain consent from the licensee of the owner. The second paragraph unnecessarily repeats a description of the claims in this action as set forth earlier in these instructions. Among other things, there is no claim in the Second Amended Complaint asserting that Robertson is vicariously or secondarily liable for MP3tunes' common law copyright infringement.  Finally, Robertson believes that the third paragraph is a misstatement of law deriving from dicta in *Sygma Photo News, Inc. v. High Society Magazine*, 778 F.2d 89, 92 (2d Cir. 1985). *See* Robertson's**

**Reply Memorandum of Law In Support of Reconsideration (Indiv. Liability and Viacom), p. 2-3 (Dkt. 360 )**

## Copyright – Direct Copyright Infringement

A copyright owner has the exclusive right to reproduce (or "copy,") distribute, publicly perform, or display a work.  An exclusive licensee of any one of these rights would also have such right.  Because these rights are exclusive, if a person or company copies, distributes, publicly performs or displays the work without a license or other authorization from the copyright owner or exclusive licensee, he or she is said to have "infringed" the copyright.

When a person or company itself infringes a copyright, it is considered a "direct infringement."  In this case, Plaintiffs have claimed that their copyrights were infringed directly by Michael Robertson and by MP3tunes through MP3tunes' executives and employees.

For purposes of determining whether someone directly infringed Plaintiff's copyright, you are not to consider whether that person intended to infringe the copyright. An unintentional infringement is an infringement nonetheless.  In other words, for you to find infringement, it is not necessary to find that the alleged infringer intended the infringement.

Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.1 "Introduction" ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106 (2005); MGM Studios, Inc. v. Grokster Ltd., 125 S. Ct. 2764 (2005); Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997); 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.08 (2006).

**Robertson's Objection**: **The above instruction is incomplete and confusing.  A non-exclusive licensee with the right to license an owner's or exclusive licensee's exclusive rights may license such right to a third party, who may not be sued for infringement.  *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). The instruction also does not explain how one becomes a direct infringer and that it must be a volitional act.**

## Copyright – Common Law Copyright Infringement

As I mentioned earlier, sound recordings recorded before February 15, 1972, some of which are also owned by the Plaintiffs in this case, are covered by state "common law copyrights," and subject to protection under the laws of the various states, including the state of New York.  For these sound recordings, infringement claims are judged not by the federal standard I just explained to you, but are instead governed by the doctrine of common law copyright infringement.  A claim for common law copyright infringement pursuant to New York common law consists of two elements: (1) the existence of a valid copyright; and (2) unauthorized reproduction of the work protected by the copyright.[1]

Although this rule has some similarities to the federal standard that governs musical compositions, images, and sound recordings recorded on or after February 15, 1972, it applies only to sound recordings recorded before February 15, 1972, not to other works at issue in this case.[2]  In reaching a verdict in this case, you will need in several instances to decide whether or not a copyrighted work was infringed.  Thus, in reaching those conclusions, you should apply the common law copyright standard to sound recordings recorded before February 15, 1972, and the federal standard I explained previously with respect to all other works.


**Robertson's Objection**: **The instruction is confusing as it fails to state in which way the standards are similar to federal law and in which ways they differ.  It also gives the jury no guidance as to how to determine the existence of a valid copyright**.

---

[1] *Arista Records*, 784 F. Supp. 2d at 436.

[2] *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 559-60 (2005).

## Copyright – Direct Copyright Infringement By Michael Robertson

Earlier in this case, this Court found that Michael Robertson and certain MP3tunes executives, as well as certain MP3tunes' users, have <u>directly</u> infringed Plaintiffs' copyrights in certain musical compositions and sound recordings.  Those decisions by the Court are binding and cannot be revisited by you.

With respect to the works the Court has already found that Michael Robertson directly infringed, you will make findings during the second, damages phase of the case.  During this liability phase of the case, you may not make any determinations regarding those works or those acts of infringement.

<u>Authority</u>:   <u>Capitol Records, Inc. v. MP3tunes, LLC</u>, 821 F. Supp. 2d 627 (S.D.N.Y. 2011).

**<u>Robertson's Objection</u>: This instruction is unduly prejudicial especially given the bifurcation of the trial and the small number of works for which Robertson has been determined to be liable.   The fact that other executives may have sideloaded works and Robertson has been found liable for a small number of works is also irrelevant to the jury's determination of the liability issues it must consider.   Accordingly, the only reason for this instruction is to paint Robertson as a bad person in the minds of the jury and, therefore, should not be given. In the event that the Court is inclined to instruct the jury regarding Robertson's or the executives liability a limiting instruction should be given that the determination of liability by the Court in no way signifies a greater significance than if the jury determined liability and does not mean that Robertson or the executives intentionally or did not intentionally infringe Plaintiffs' copyrights.**

**Copyright – Secondary Copyright Infringement**

Often the individual who engages in reproduction, distribution, or other acts of infringement forms part of a greater web.  Others who participate in the copyright infringement can be held liable, even if they have not personally copied or distributed the works at issue, as if they had committed the infringement themselves.  This is known as "secondary liability."

Plaintiffs contend that both MP3tunes and Michael Robertson are secondarily liable for the infringing acts of MP3tunes executives, and for the infringing acts of the users of the defendants' websites and related software.  While a default has been entered against MP3tunes, the Court has not yet decided these allegations against Michael Robertson, which are for you as the jury to decide.

The forms of secondary liability at issue in this case are the doctrines of *respondeat superior*, vicarious liability and contributory liability.  I will explain what they are in turn.

Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.5.1 "Infringement", 1.5.13 "Vicarious Infringement' ABA Section of Litigation (2008); Nimmer on Copyright § 12.04.

**Robertson's Objection**: **This instruction is unnecessary and prejudicial.  It begins with an unsupported fact that "often" others participate in an infringement creating the impression that secondary liability occurs often when there is direct infringement. It also contains and incomplete and inaccurate standard of law regarding participation in infringement which may cause confusion to the jury.  Further, the statement regarding MP3tunes is inaccurate because a default has not been entered against MP3tunes and if MP3tunes liability is discussed, it should be disclosed that while MP3tunes disabled links to sound recordings and compositions which were available elsewhere on the Internet which were set forth in Plaintiffs' takedown notices, it was found liable because it failed to remove such the specified songs from users lockers.  Also, the default against MP3tunes should be entered by the Court after the jury reaches a verdict.**

## Copyright – Robertson's Liability for MP3tunes' Infringement

One of Plaintiffs' claims that you will be asked to decide, based on a preponderance of the evidence, is whether Michael Robertson is liable for copyright infringement committed by MP3tunes' executives.

This Court has already determined that MP3tunes executive employees Mark Wooton, Emily Richards, and Doug Reese copied without authorization and thereby infringed certain musical compositions and sound recordings by sideloading recordings onto the MP3tunes servers. The Court has also already determined that Plaintiffs own the works that these executives sideloaded, and you must treat that decision as binding.

In deciding Plaintiffs' claim that Michael Robertson is liable for these infringements, the first step is to determine whether MP3tunes is liable for infringement committed by its executives under the doctrine of *respondeat superior*. Under *respondeat superior* an employer is directly liable for acts of copyright infringement committed by its employee if those acts are in furtherance of the employer's business and are within the scope of the employee's authority. An act is within the scope of an employee's authority if it is performed while the employee is engaged generally in the performance of his or her assigned duties or if the act is reasonably necessary or incidental to the employment. The employer does not have to know about or authorize the employees' acts of infringement to be liable under *respondeat superior*, and can be liable even when the infringing conduct was expressly forbidden. Instead, the ultimate question of *respondeat superior* is whether the liability of the employer due to infringement by the employees may be fairly regarded as a risk of the employers' business. Factors determining whether an action was taken during the course of employment can include whether the infringing conduct was the kind of task the employee was employed to perform, the time and place of the infringing conduct, whether the employees acted, at least in part, for the benefit of the company,

12

the extent of departure from normal methods of performance, and whether the specific act was one that Defendants could reasonably have anticipated.

Whether or not MP3tunes knew of the employees' acts of infringement is immaterial under *respondeat superior*. Likewise, it does not matter whether MP3tunes was at fault for its employees' actions, or whether these actions were forbidden by the company. Instead, the ultimate question of *respondeat superior* is whether the liability of MP3tunes due to infringement by the employees may be fairly regarded as a risk of MP3tunes' business.

In this case, a default has been entered against MP3tunes for the infringing conduct of its employees. However, because Michael Robertson's liability stems in part from that of MP3tunes, you must consider MP3tunes' conduct as well. In order to determine whether Defendant Robertson is liable for this infringing conduct, you will need to also decide:

(1) whether Wooton, Richards, and Reese, when they copied works belonging to the Plaintiffs without authorization, did so during the course of their employment at MP3tunes, and

(2) whether Michael Robertson is secondarily liable for such acts of infringement, under any one of three doctrines I will now explain to you.

Plaintiff has the burden of proof on this issue by a preponderance of the evidence.

Authority: Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Taber v. Maine, 67 F.3d 1029, 1037 (2d Cir. 1995); Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 304 (2d Cir. 1963) Rosenthal & Co. v. Commodity Futures Trading Com'n, 802 F.2d 963, 966 (7th Cir. 1986); Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627, 649 (S.D.N.Y. 2011) ("during the course of employment" language); Blackthorne v. Posner, 883 F. Supp. 1443 (D. Or. 1995) (purpose to serve employer); McCloud v. Kimbro, 224 Ariz. 121, 228 P.3d 113, 115 (Ct. App. 2010) (scope of employment); Payne v. Tonti Realty Corp., 888 So. 2d 1090, 1095 (La. App. 2004) (scope of employment); Groob v. Keybank, 108 Ohio St. 3d 348, 843 N.E.2d 1170, 1171 (2006) (scope of employment); White v. Liberty Eylau Indep. Sch. Dist., 920 S.W.2d 809 (Tex. App. 1996) (agent in scope of employment); Hamilton v. Natrona County Educ. Ass'n, 901 P.2d 381 (Wyo. 1995) (definition of scope of employment); Restatement of Agency (Second)§§ 219-237; Restatement of Agency (Third) § 2.04 (2006).

**<u>Robertson's Objection</u>**: **The above instruction is confusing, incorrect, verbose and unnecessary. It relies on non-controlling law from other jurisdictions, which do not even support all of the assertions above.  The instruction, among other things, implies that the fact that an act is prohibited by the employer is irrelevant to whether an action is within the scope of an employees' authority. Robertson believes that his instruction regarding *respondeat superior* should be used.**

## Similar Acts – Intent, Knowledge, Absence of Mistake

You have heard evidence that may show that on a different occasion the defendant Michael Robertson engaged in conduct similar to the charges in the complaint.

If you determine that Michael Robertson committed similar acts in the past, then you may draw an inference that in infringing plaintiffs' copyrights, Robertson acted knowingly and intentionally, and not because of some mistake, accident or other innocent reason.

<u>Authority</u>: Adapted from 4 MODERN FEDERAL JURY INSTRUCTIONS, Instruction 74-7 "Similar Acts – Intent, Knowledge, Absence of Mistake.

**<u>Robertson's Objection</u>: This instruction (and permitting testimony regarding MP3.com) is highly prejudicial, contrary to F.R.E. 404 and follows on the heels of Plaintiffs' attempt to paint Robertson with the liability of MP3.com. In addition, it is an inaccurate adaptation of Instruction 74-7, without its caveats and cautions. Further, the operation of MP3.com and the circumstances in such action are not similar to the facts before this Court and, therefore, the instruction is inapplicable. Finally, the instruction would serve to intrude on the law of willfulness with respect to statutory damages.**

## **Copyright – Secondary Copyright Infringement – Corporate Officer Liability**

Under federal copyright law, corporate officers who either participate in, exercise control over, or benefit from a corporation's copyright infringement are themselves liable along with the corporation, as copyright infringers.   Any one of these things make the officer liable:  If he or she personally takes part in the infringing behavior, is personally and intimately involved in many of the activities giving rise to liability, if he or she is the dominant influence in the corporation and determines the policies that result in infringement, or if she he derives financial benefit from the infringing activities either as a major shareholder or otherwise, or any combination of these factors, he or she is liable with the corporation for its infringement.  Corporate officer liability applies no matter if the corporation's infringement is itself direct or secondary.

In making a determination about whether an officer controls a corporation's infringement, you may look at factors like whether he or she provides the capital that funds the corporation, and whether he or she supervises employees who commit the infringement.  In other words, when the officer determines what is done and what isn't done in a corporation, including copyright infringement, they can be said to control the infringement.

If you conclude, based on the preponderance of the evidence, that Michael Robertson participated in, exercised control over, or benefited from MP3tunes' infringement, then you must find Michael Robertson liable for such infringement.

Authority:  Arista Records LLC v. Usenet. com, Inc., 633 F. Supp. 2d 124, 158-59 (S.D.N.Y 2009); Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *18 (S.D.N.Y. May 14, 2013) (Dkt. No. 368); Sygma Photo News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985); Shapiro, 316 F.2d at 307; Arista Records LLC v. Usenet. com, Inc., 633 F. Supp. 2d 124, 158-59 (S.D.N.Y 2009); Peer Intern. Corp. v. Luna Records, Inc., 887 F. Supp. 560, 565 (S.D.N.Y. 1995) (Sotomayor, J); Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, 913 (D.Conn. 1980); Bentley Motors Ltd. Corp. v. McEntegart, No. 8:12–cv–1582–

T–33TBM, 2013 WL 5487212, *13 (Sept. 30, 2013. M.D. Fla.); <u>Blendingwell Music, Inc. v. Moor-Law, Inc.</u>, 612 F. Supp. 474, 482 (D. Del. 1985) ; <u>LimeWire</u>, 784 F. Supp. 2d at 438; Nimmer on Copyright § 12.04.

**<u>Robertson's Objection</u>: Robertson objects to the above as an incorrect statement of law deriving from inaccurate language in dicta in *Sygma Photo News, Inc. v. High Society Magazine*, 778 F.2d 89, 92 (2d Cir. 1985). *See* Robertson's Reply Memorandum of Law In Support of Reconsideration (Indiv. Liability and Viacom), (Dkt. 360) p. 2-3; *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971); *Shapiro, Bernstein & Co. v. H. L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963);  *Softel, Inc. v. Dragon Med., & Scientific Commic'ns, Inc.*  118 F.3d 955, 971 (2d Cir. 1997) for the correct statement of law.**

**Copyright – Secondary Copyright Infringement – Vicarious Liability**

A second way that a person can be secondarily liable for copyright infringement is under the doctrine of vicarious liability.  The doctrine of vicarious liability can apply to either a corporation or an individual when they have the right and ability to supervise or control infringing acts and have an economic incentive for tolerating such activities.  Parties are vicariously liable for copyright infringement, when they profit from direct infringement while declining to exercise a right to stop or limit it.  They do not need knowledge of the infringing conduct, and the direct infringer does not have to be an employee.

A defendant has the "right and ability" to supervise infringing behavior when the direct infringer depends upon the defendant for direction.  The right and ability to control infringing behavior can also exist where a defendant has the ability to suspend or restrict direct infringers' access to computer software used for the infringement at issue, or to block their access to files that contain infringing content.

An economic incentive for tolerating infringement need not involve actual earned revenue.  Instead, there simply needs to be some causal relationship between the infringement and an actual or potential financial benefit, regardless of how substantial or insubstantial the benefit may be, and regardless of how substantial the benefit is in proportion to the defendant's overall profits.  For example, the financial benefit test is satisfied where the infringing material acts as a "draw" to attract customers to a defendants' business.

Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.5.1 "Infringement", 1.5.13 "Vicarious Infringement' ABA Section of Litigation (2008); see also Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *17 (S.D.N.Y. May 14, 2013) (Dkt. No. 368); Arista Records LLC v. Usenet. com, Inc., 633 F. Supp. 2d 124, 157-589 (S.D.N.Y 2009); Ellison v. Robertson, 357 F.3d 1072, 1078-79 (9th Cir. 2004);   A&M Records, Inc. v, Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001); Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162-63 (2d Cir. 1971); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 548 (1985); Incredible Techs., Inc. v. Virtual

Techs., Inc., 400 F.3d 1007, 1011 (7th Cir. 2005); Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009); 3 Melville B. Nimmer, David Nimmer, NIMMER ON COPYRIGHT 12.11[D][2], 11.04 (2006).

**Robertson's Objection**: **Robertson objects to this instruction as an incorrect statement of the law of vicarious liability in this circuit.** ***See Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971);** ***Shapiro, Bernstein & Co. v. H. L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963);** ***Softel, Inc. v. Dragon Med., & Scientific Commic'ns, Inc.* 118 F.3d 955, 971 (2d Cir. 1997) for the correct statement of law and Robertson's proposed instruction on vicarious liability. This instruction also fails to distinguish between the whether vicarious liability is being sought with respect to a direct infringement, contributory infringement or vicarious infringement.  As Robertson's instructions make clear, vicarious liability may only be imposed with respect to a direct infringement, not with respect to contributory infringement such as MP3tunes.  Accordingly, the instruction must relate to the specific claim asserted by Plaintiffs.** ***See* alternative instruction in Robertson's instructions re vicarious liability.**

**<u>Copyright – Secondary Copyright Infringement – Contributory Liability</u>**

A third way that a person can be secondarily liable for copyright infringement is under the doctrine of contributory liability.  Like vicarious liability, contributory liability can apply to either a corporation or an individual.  A party is contributorily liable for copyright infringement if the party had knowledge of the infringing activity, and induced, caused, or materially contributed to the infringing conduct.

For contributory liability, knowledge of infringing activity can be either actual or constructive.  That means the relevant inquiry is whether the defendant knew, or had reason to know, of the direct infringement.  In the context of an employer-employee relationship, an employer is assumed to know what its employees know relevant to their jobs, because, for example, a corporation can only know things through its employees.  However, contributory infringement can take place outside of the employment context, and when the contributory infringer has no right to supervise the direct infringer.

The material contribution needed to show contributory liability exists if the defendant engages in personal conduct that is part of, encourages, or assists the infringement.  A party also materially contributes if they provide the machinery, goods, site or facilities for the infringement. The site and facilities for infringement could consist of, for example, the software and services necessary for the infringing activities, the provision of a central hub for infringing activity, or the operation of servers that physically stored the infringing content.

<u>Authority</u>: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.5.1 "Infringement", 1.5.12 "Contributory Infringement' ABA Section of Litigation (2008); see also Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. N.Y. 1971); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 548 (1985); Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1011 (7th Cir. 2005); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1019-20 (9th Cir. 2001); Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 152 n.19, 154 (S.D.N.Y. 2009); Smith v. Little Brown & Co., 245 F. Supp. 451, 459 (S.D.N.Y. 1965); In re Aimster Copyright Litig., 252

F. Supp. 2d 634, 652 (N.D. Ill. 2002); <u>Arista Records, Inc. v. Flea World, Inc.</u>, No. Civ. A. 03-2670 TBS), 2006 WL 842883, at *15 (D.N.J. Oct. 10, 2005); <u>Arista Records LLC v. Doe 3</u> 603 F.3d at 118; ; *ReDigi*, 934 F. Supp. 2d at 658; 3 Melville B. Nimmer, David Nimmer, NIMMER ON COPYRIGHT 12.11[D][2] (2006).


**<u>Robertson's Objection</u>: The above instruction is incomplete or not supported by the referenced citations, particularly the instruction regarding corporate knowledge, infringement outside the workplace corporate control and provision of site and facilities. Although this court found to the contrary in its summary judgment decision with respect to MP3tunes' failure to remove songs from lockers, the instruction also ignores the holding in *Sony Corp. v Universal Studios and Arista Records, Inc. v. Mp3Board, Inc.*, with respect to MP3tunes' system being capable of commercially significant non-infringing uses and the effect of those significant non-infringing uses on a finding of contributory infringement in this context. Moreover, as to each occasion where a user was the first to engage in sideloading, MP3tunes had a very limited role. *See* alternative instruction proposed by Robertson and cases cited and authorities in support thereof.**

**Copyright – Robertson's Liability for Works Infringed By MP3tunes Executives**

If you conclude that MP3tunes is liable for copyright infringement committed by its executives, you must further decide, based on the preponderance of the evidence, whether Plaintiffs have proven that Michael Robertson is liable for the infringing acts of these executives under one or more of the relevant legal principles I discussed earlier. To do so, you must apply the principles of corporate officer liability, vicarious liability, and contributory liability to the infringing acts of these executives. If you find that any one or more of these approaches applies to Robertson with respect to the infringing activities of these executives, then he is liable for these activities. In other words:

- If you find that Michael Robertson participated in, exercised control over, or benefited from any infringing activities of MP3tunes or its executive employees for which you have found MP3tunes liable, you must find that Robertson is liable for the infringing conduct as a corporate officer of MP3tunes.

- If you find that Robertson had the right and ability to supervise or control the infringing activity of MP3tunes or its executives, and that Robertson had an economic incentive for tolerating that infringing activity, you must find that Robertson is vicariously liable for that infringing activity. To find Robertson vicariously liable, Plaintiffs need not have proven that Michael Robertson knew of MP3tunes' or its employees' acts of infringement under this theory.

- If you find that Robertson knew or should have known about infringing activity of MP3tunes or its executives, and that he induced, caused, or materially contributed to the infringing activity, you must find Robertson secondarily liable for that infringing activity under the principle of contributory liability.

You should apply these principles to both Plaintiffs' works protected by federal law and to their works protected under the laws of the State of New York.

A default has been entered for MP3tunes' secondary liability regarding all the sideloads by MP3tunes executives. However, because Michael Robertson's liability stems in part from that of MP3tunes, you should consider MP3tunes' liability under all of the relevant approaches for holding a person or company responsible for the infringement of others. To do so, you must

apply the principles of *respondeat superior*, vicarious liability, and contributory liability, described above, to the infringing acts of these executives.   In other words, you will need to determine, based on the preponderance of the evidence, whether:

- MP3tunes' executives copied Plaintiffs' works without authorization from Plaintiffs during the course of their employment with MP3tunes;

- MP3tunes had the right and ability to supervise or control the infringing activity of its executives, and had an economic incentive for tolerating that infringing activity; or

- MP3tunes induced, caused, or materially contributed to the infringing activity of its executives.

    Authority:   Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627 (S.D.N.Y. 2011).

**Robertson's Objection: Defendant Robertson objects to the above instruction on the same basis as its objection to Plaintiffs' proffered instructions regarding corporate officer liability, vicarious liability, contributory liability and *respondeat superior*.   In addition, Robertson objects to the reference to the default of MP3tunes for the reasons previously stated.   Further, Plaintiffs seek to apply these doctrines to Robertson with respect to its common law copyright claims and unfair competition claims but did not assert these bases for liability in the Second Amended Complaint. Finally, the instruction will be confusing to the jury as it contains an inappropriate summary of Plaintiffs' statement of the law.**

**Copyright – Plaintiffs' Proof of Ownership**

To sue for copyright infringement of a work, Plaintiffs must prove that they are the owners or exclusive licensees of the copyright or copyrights in the work. There is no dispute that Plaintiffs own the copyrights to all musical compositions and sound recordings at issue in this case. You are bound by that established fact and need make no determination as to ownership of those works.

[Following instruction to be given only if Court determines there remain cover art works for which ownership is in issue]

[There are only a small number of remaining cover art works, claimed by the Label Plaintiffs, for which the parties do not agree as to whether or not the Label Plaintiffs own the works. For those works only, you are to decide by a preponderance of the evidence if the Label Plaintiffs have shown that they own the works, under standards I shall describe to you.

You should not draw any conclusions from the fact that I have already ruled on some ownership issues and that some other ownership issues are left for you to decide. It does not signify that there is any difference between the copyrights on which I have already ruled and the copyrights on which you must decide ownership; it is a product of how earlier proceedings in this case were structured. You should decide the remaining ownership questions applying the standards I am about to explain to you.]

Authority: Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *26 (S.D.N.Y. Oct. 25, 2011) (Dkt. No. 525); Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *21 (S.D.N.Y. Jan. 29, 2014) (Dkt. No. 525).

**Robertson's Objection: The jury only needs to be advised that ownership needs to be determined with respect to specified works and that there is no issue as to ownership as to other works. There is a dispute as to whether Plaintiffs certificates properly encompass**

cover art. *See* Robertson's alternative instructions and the cases and authorities cited therein.

### Copyright – Ownership

[Following instruction to be given only if Court determines there remain cover art works for which ownership is in issue]

When a copyright is registered with the United States Copyright Office, the owner is deemed to be the person or entity listed as a claimant on the copyright registration. This claimant may be the author but can also be any person or entity to whom the author assigned, sold, or otherwise transferred the copyright prior to filing the registration. The owner may also be a person or entity to whom a copyright claimant transferred the copyright after registration by virtue of an agreement or other written document.

For purposes of your deliberation here, a party may prove ownership of a copyrighted work in one of three ways: (1) through submission of a certificate of registration listing it as claimant; (2) through submission of "chain of title" documentation that confirms a valid transfer or assignment of ownership rights to it; or (3) through demonstrating that it is the owner of the exclusive right to the work by virtue of a license, administration or other agreement. I will explain each of these three ways of proving ownership in turn.

    Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.3 "Proof of Legal and Beneficial Ownership of an Exclusive Right," ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106 (2005); 17 U.S.C. § 501; 2 Nimmer on Copyright §§ 7.16, 7.18; Black's Law Dictionary (9th ed. 2009); Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *26 (S.D.N.Y. Oct. 25, 2011) (Dkt. No. 525); Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), Slip Op. at *21 (S.D.N.Y. Jan. 29, 2014) (Dkt. No. 525).

**Robertson's Objection**: **There is no dispute as to the ownership of certificates allegedly covering cover art. There is a dispute as to the scope of those certificates and whether they include cover art. Robertson will show at trial that the prima facie case on that issue is rebutted. See Robertson's alternative instruction on this issue.**

**<u>Copyright – Proof of Ownership by Submission of Certification of Registration</u>**

[Following instruction to be given only if Court determines there remain cover art works for which ownership is in issue]

For certain of the works, Plaintiffs have submitted copyright registration certificates listing one or more of the plaintiffs as a claimant.  A plaintiff's certificate of registration of its copyright is what is called *prima facie* evidence of the element of ownership, or proof "on its face."  In other words, once a copyright owner provides certificate of registration, the party has satisfied its burden of proof to show ownership.  If there is no evidence presented by Defendants that disproves Plaintiff's ownership, the registration certificate alone is sufficient to establish that the plaintiff owns the work.  This means that for each work for which Plaintiffs have presented a registration certificate listing a plaintiff as a claimant, you must find that such Plaintiff owns that work unless Defendants have proven by a preponderance of evidence that the Plaintiff does not, in fact, own such work.

<u>Authority</u>: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.3.9 "Exclusive Licensee" ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106 (2005); 17 U.S.C. 410(c) (2006).


**<u>Robertson's Objection</u>: The above is an inaccurate or incomplete statement of law. A certificate of registration with respect to the copyright and works at issue in this action may give rise to *prima facie* evidence, or a presumption of, the element of ownership.** *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411, 414 (2d Cir. 1985). **However, in the event that Plaintiffs did not register their copyright within five years after first publication of the work, there is no *prima facie* evidence of ownership or the facts stated in the certificate of registration.** O'MALLEY *ET AL.*, at § 160:22. ***Prima facie* evidence is subject to rebuttal by Defendants to prove by a preponderance of the evidence that the copyright is invalid, or a fact in the copyright certificate is not true.  The burden of proof of ownership lies with Plaintiffs.** *See* **Robertson's alternative instruction for a correct statement of the law.**

**Copyright – Proof of Ownership Through Valid Transfer**

[Following instruction to be given only if Court determines there remain cover art works for which ownership is in issue]

For certain other works at issue, Plaintiffs claim ownership through a transfer or assignment of rights.  The owner of a copyright may transfer all or any one of the exclusive rights that I described earlier, but the transfer must be made in writing.  An oral transfer that is later reduced to a signed writing satisfies this requirement.  Thus, Plaintiffs may prove ownership over works at issue in this action by submitting "chain of title" documentation that confirms that transfer (either from the original author to one or more of the Plaintiffs, or from the original author to a predecessor of a Plaintiff and then from that predecessor to one or more of the Plaintiffs), and that shows that Plaintiffs exclusively owned the right they claim to have been infringed at the time of such alleged infringement.

Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.3.8 "Ownership Through Valid Transfer"; ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106 (2005).


**Robertson's Objection**: **The above contains an incomplete statement of law.  A copyright owner may transfer to another person any or all of the exclusive rights comprised in the copyright.  To be valid, the transfer must be in writing and signed by the parties.  If the owner transfers any of the exclusive rights comprised in the copyright, *i.e.*, the right to reproduce, distribute, perform, display or otherwise use the copyrighted work, the person to whom the right is transferred is called either an assignee or an exclusive licensee. 17 U.S.C. 101, 201(d).  See Robertson's alternative instruction on this issue.**

## **Copyright – Proof of Ownership – Exclusive Licensee**

[Following instruction to be given only if Court determines there remain cover art works for which ownership is in issue]

      For certain other works at issue, Plaintiffs claim that they are the owners of exclusive rights by virtue of license, administration or other agreements which granted such rights to a Plaintiff.  The law recognizes that a copyright owner has the right to license to another person or entity one or more of the rights in a copyrighted work, such as the right to make copies of the work, or the right to distribute the work.   If the right licensed by the owner is an exclusive right, such that no one else can have this right, the person or entity to whom the right is granted is called an exclusive licensee and becomes the owner of the particular rights that have been exclusively granted in the agreement.  An exclusive license must be made in writing signed by the owner of the rights being licensed or by the owner's authorized agent.

      The exclusive licensee has the right to exclude others from exercising the rights granted in the license and has the right to bring an action to enforce the rights granted by the license. Thus, Plaintiffs may prove ownership over exclusive rights to works at issue in this action by proving that the copyright owner exclusively licensed to Plaintiffs the relevant right alleged to have been infringed.

      Authority: Adapted from MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK AND TRADE DRESS LITIGATION: 1.3.9 "Exclusive Licensee" ABA Section of Litigation (2008) citing as authority 17 U.S.C. §§ 101, 102, 106.

**Robertson's Objection: Robertson has no objection but believes in accordance with his proposed instructions that an instruction for non-exclusive licensee must be given as proposed by him.**

### Copyright – Copyright Infringement – Cover Art

The next claim you must decide is whether MP3tunes is liable for directly infringing cover art belonging to the Plaintiffs, and, if so, whether Michael Robertson is personally liable for such infringement.

Images, like sound recordings and musical compositions, can be subject to the protection of the copyright laws. A defendant is liable for infringement of copyrighted images if it publicly displays or reproduces the images in a manner not authorized by the copyright holder. To "reproduce" an image means to copy it, such as by making copies of a computer file of the image. To "publicly display" an image, as relevant here, means to transmit or otherwise communicate the image (such as over the Internet) to members of the public in a way where the people capable of receiving the image receive it in the same place or in separate places, and at the same time or at different times.

The Plaintiffs claim that MP3tunes directly infringed certain cover art images they own, and that Robertson is secondarily liable for such infringement under the theories I have been discussing.

It is your role to conclude, based on the preponderance of the evidence, whether Robertson is secondarily liable for infringement by MP3tunes of Plaintiffs' cover art. As with the sideloads by MP3tunes executives, an Order of Default has been entered for MP3tunes' direct liability for infringing Plaintiffs' cover art. However, because Michael Robertson's liability stems in part from that of MP3tunes, you should consider MP3tunes' direct liability as well.

In making that decision, you must answer three questions:

First, have Plaintiffs proved that MP3tunes copied or displayed the cover art in which they own copyrights?

Second, if so, have Defendants proved that MP3tunes copied or displayed the cover art in a manner that was within the scope of what was it was permitted to do by a license?

Third, if not, have Plaintiffs proved that Michael Robertson is secondarily liable for such actions by MP3tunes?

If you conclude that MP3tunes copied or displayed the cover art, that such copying or displaying was not licensed, and that Michael Robertson is secondarily liable for such unauthorized copying and/or displaying under the theories of secondarily liability I explained earlier – Corporate Officer Liability, Vicarious Liability, and Contributory Liability – then you must find that Robertson is secondarily liable for the infringement.

Authority:  Opinion, pp. 31-32; 17 U.S.C.§§ 106(6), 501.

**Robertson's Objection**: **The forgoing instruction objection is overly simplistic, inaccurate and confusing.  It fails to accurately describe the law on public display, fails to address that Robertson contends that Plaintiffs' copyright certificates do not properly encompass cover art and fails to take into account that MP3tunes may not be liable unless it breached the Amazon license in such a way as to implicate one of Plaintiffs' exclusive rights.  The jury must be instructed that if Plaintiffs licensed Amazon to copy and display cover art and to permit others to do so, that they lack standing to sue for infringement. Further, Plaintiffs instruction provides nothing to allow the jury to assess whether Plaintiffs' copyright registrations properly encompass cover art. Accordingly, the Court should adopt Robertson's instructions with respect to cover art based upon the cases and authorities cited therein.**

**Copyright – Copyright Infringement – Amazon License**

In deciding the Plaintiffs' claim for infringement of their Cover Art, if you decide that the Defendants copied or displayed cover art, you will need to decide whether they did so within the scope of what was permitted by their license with Amazon.com.

Evaluating what activities a license does and does not permit is a question of law for the Court. Therefore, you should not try to interpret the license agreement yourself, but should follow my direction regarding the meaning of the license agreement.

Amazon.com's Product Advertising API license permits users "to access and use" Product Advertising Content made available by Amazon to licensees, which includes the Cover Art at issue in this case. The license allows users to use such content "only … to send end users and sales to the Amazon site." Additionally, the license does not permit a user of the Amazon API to "store or cache Product Advertising Content consisting of an image," such as the Cover Art at issue in this case.

Therefore, if you find that MP3tunes accessed and used the Cover Art at issue in this case through Amazon.com, did so "only … to send end users and sales to the Amazon site" and did not "store or cache" the Cover Art, you should find that MP3tunes' actions were within the scope of the license, and that its use of Plaintiffs' Cover Art images is not copyright infringement.

If you (1) find that MP3tunes accessed and used the Cover Art from Amazon for purposes other than "only … to send end users and sales to the Amazon site," or (2) find that MP3tunes "store[d] or cache[d]" the Cover Art, you should find that MP3tunes' actions were not within the scope of the license and that its use of the Cover Art was infringing.

If you find that MP3tunes' use of Plaintiffs' Cover Art was infringing, you should apply the standards of secondary liability I explained earlier -- Corporate Officer Liability, Vicarious

Liability, and Contributory Liability -- to determine whether or not Michael Robertson is personally liable for such infringement.

 Authority:  Amazon.com Product Advertising API License Agreement, Dkt. 192-3, at ¶¶ 1, 4(b) & 4(m).


**Robertson's Objection**: **The above instruction improperly invades the province of the jury. Plaintiffs have not moved for summary judgment with respect to the meaning of the Amazon license nor can they assert that the agreement is clear and unambiguous or determine which terms are important to the jury in determining its meaning. Further, it is irrelevant as to whether MP3tunes acted within the scope of its Amazon license.  What is relevant on this issue is the scope of rights that Plaintiffs' licensed to Amazon.  Also, Plaintiffs' instruction with respect to secondary liability is objectionable as set forth above. Robertson respectfully requests that the Court adopt his instructions with respect to cover art based upon the cases and other authorities cited therein.**

**<u>Introduction – Robertson and MP3tunes's Liability For Its Users' Infringement</u>**

Another of Plaintiffs' claims against Robertson that you must decide is Plaintiffs' claim that Robertson is liable for certain acts of copyright infringement by the users of MP3tunes' websites, as opposed to by the company and its employees themselves.

Plaintiffs have already proven that MP3tunes' users committed copyright infringement of certain works by copying them without authorization.  With respect to all of the relevant musical compositions and sound recordings, Plaintiffs have also already proven, or the parties have already agreed, that Plaintiffs own the relevant works.

Because these infringements were by MP3tunes' users, as opposed to Robertson himself or one of MP3tunes' executives, you will need to decide whether Robertson is personally liable for those infringements.  Here, there will be three questions you will need to decide:

(1) First, whether MP3tunes is protected by a defense under a law called the Digital Millennium Copyright Act or "DMCA," which I will explain shortly;

(2) Second, if you find that the DMCA defense is not available, whether MP3tunes is secondarily liable for infringements by its users; and

(3) Third, if you find that the DMCA defense is not available and that MP3tunes is secondarily liable for infringements by its users, whether Michael Robertson is also liable, under the standards of secondary liability I explained earlier.

**<u>Robertson's Objection</u>: The instruction improperly states that Plaintiffs have already proven ownership of relevant works. Either ownership is not an issue or it remains to be proven by Plaintiffs. Moreover, Robertson cannot be liable for MP3tunes' contributory infringement.  Again, it is respectfully requested that the Court adopt Robertson's instructions regarding the DMCA and vicarious liability.**

**Introduction – DMCA**

As I mentioned earlier, there is a law known as the Digital Millennium Copyright Act or "DMCA," which provides online service providers with a limitation on liability or "safe harbor" defense from liability for infringing conduct by their users, if certain conditions are met.  The Court has decided that if this defense applies in this case, it will protect MP3tunes and, thus Robertson, from claims that they are liable for infringements committed by MP3tunes' users of both copyrights protected by federal copyright law and those protected by state common law because they were recorded before February 15, 1972.

There are several issues you must decide to determine whether this "safe harbor" rule applies or not.  If the "safe harbor" rule applies to any of these infringements by MP3tunes' users, then the DMCA will protect Robertson from liability for infringement of those works, and you should hold him not liable.  Defendant Robertson has the burden of proof – that is he must prove by a preponderance of evidence – whether the safe harbor applies.

If you find that the "safe harbor" rule does not apply, then you must move on to decide whether MP3tunes is liable for its users' infringement, and, if so, whether Robertson is secondarily liable as well.

Authority: 17 U.S.C. 512; Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627, 636-39 (S.D.N.Y. 2011).


**Robertson's Objection**: **This Court has already determined that the "safe harbors" apply, unless Plaintiffs can demonstrate red-flag knowledge or willful blindness. The instruction improperly seeks to put the burden of proof with respect to red-flag knowledge and willful blindness on Robertson.**

**DMCA – Obligation to Comply With Takedown Notices**

One condition a service provider must meet in order to be protected by the DMCA "safe harbor" is that the service provider must remove infringing material after it is notified by a copyright owner that it is hosting or linking to infringing works or websites.

I have already determined that MP3tunes failed to remove works that were sideloaded from unauthorized websites and thereby added to users' locker accounts, but that were not removed or deleted by MP3tunes from such locker accounts in response to notifications from Plaintiffs, and that MP3tunes is secondarily liable for the infringement of those works. You must treat these issues as decided.

I have also already determined, or the parties have agreed, that the Plaintiffs own all of the sound recordings and musical compositions on which they are suing that were not removed or deleted by MP3tunes from locker accounts in response to notifications. You must also treat this issue as decided.

You must decide, using the secondary liability standards I explained earlier, whether Michael Robertson is secondarily liable for MP3tunes' infringement in failing to remove infringing material of which it had received notification from the Plaintiffs. To decide Robertson's personal liability, you should apply the same three forms of secondary liability I have already discussed -- Corporate Officer Liability, Vicarious Liability, and Contributory Liability.

Authority: 17 U.S.C. § 512(c)-(d); Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627, 636-640 (S.D.N.Y. 2011); ALS Scan, Inc. v. RemarQ Communities, Inc., 239 F.3d 619, 625 (4th Cir. 2001).

**Robertson's Objection**: **The instruction improperly summarizes the law regarding removal in response to a takedown notice. The instruction also does not give a complete or accurate recount of this Court's holding with respect to MP3tunes and should advise that MP3tunes**

did disable links in response to the notices and the finding that MP3tunes was only responsible to remove certain specified songs from lockers, to mitigate any prejudice form the instructions. Plaintiffs have not proven that they own all sound recording and musical composition that were not removed from lockers. Also as set forth above, Plaintiffs instructions regarding secondary liability are contrary to law.  MP3tunes is liable for contributory infringement only, and Robertson cannot be vicariously liable for that contributory infringement.

## DMCA – Obligation Not to Exhibit "Willful Blindness" (Specific Works)

Another condition a service provider must meet in order to be protected by the DMCA "safe harbor" is that the service provider must not be willfully blind to any particular infringing activity on its service. You must decide, with respect to such infringing activity by MP3tunes users, whether MP3tunes was willfully blind towards such conduct.

A service provider is willfully blind to infringing activity on its system if it (1) has reason to suspect that users of its service are infringing protected works, and (2) shields itself from learning of the particular infringing transactions by looking the other way.

For each work as to which Plaintiffs contend that MP3tunes was willfully blind as to the infringement of the work, you must conclude, based on the preponderance of the evidence, whether Plaintiffs have shown (1) that MP3tunes had reason to suspect specific instances of infringement by its users of the work, and (2) that MP3tunes consciously or deliberately avoided confirming that fact, or shielded itself from learning of the particular infringing transactions by looking the other way. If you find both in the affirmative, you must also determine whether Robertson is secondarily liable for the infringement. To decide Robertson's personal liability, you should apply the same three forms of secondary liability I have already discussed -- Corporate Officer Liability, Vicarious Liability, and Contributory Liability.

Authority: 17 U.S.C. § 512(c)-(d) Viacom International, Inc. v. YouTube, Inc., 676 F.3d 19, 35 (2d Cir. 2012); Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 109 (2d Cir. 2010); Capitol Records, Inc. v. MP3tunes, LLC, 2013 U.S. Dist. LEXIS 68793 (S.D.N.Y. May 14, 2013).

**Defendant's Objection: This objection is insufficient, incomplete, vague and contrary to law. Among other things, one must be willfully blind to specific and identifiable instances of infringement. *See* Roberson's willful blindness instructions submitted in connection with his liability instructions and thecae and other authorities cited therein. The instruction also adopts Plaintiffs' instructions with respect to secondary liability which are objectionable for the reasons set forth above and in Robertson's liability instructions.**

## DMCA – Obligation Not to Exhibit "Willful Blindness" (In General)

In addition to considering whether MP3tunes was willfully blind towards specific infringing activity on its system, you should also consider whether MP3tunes was willfully blind towards all infringing activity on its system.  If you find that MP3tunes took affirmative steps to blind itself to infringing activity on a wholesale basis, then the infringement of any of Plaintiffs' works on or via Sideload.com is not subject to the DMCA safe harbor.  If you so conclude, you must also determine whether Robertson is secondarily liable for those infringements.  To decide Robertson's personal liability, you should apply the same three forms of secondary liability I have already discussed -- Corporate Officer Liability, Vicarious Liability, and Contributory Liability.

Authority: Columbia Pictures Indus. v. Gary Fung, 710 F.3d 1020, 1043 n. 20 (9th Cir. 2013).

**Defendant's Objection**: **This is a new claim which has not previously been asserted by Plaintiffs.  This instruction is also inconsistent with Plaintiffs' court-ordered disclosures as to the specific sound recordings and compositions Plaintiffs assert are at issue as a result of red-flag and willful blindness.  It is now being asserted solely to harass Defendant and this Court. The instruction also adopts Plaintiffs' instructions with respect to secondary liability which are objectionable for the reasons set forth above and in Robertson's liability instructions.**

### DMCA – Obligation Not to Have "Red Flag" Knowledge

Another condition a service provider must meet in order to be protected by the DMCA "safe harbor" is that the service provider must not be aware of facts and circumstances—or "red flags"—that would have made it apparent or obvious to a reasonable person that any particular activity on its service was infringing.

For each work as to which Plaintiffs contend that MP3tunes was aware of facts that would have made it apparent or obvious to a reasonable person that the work was being infringed on MP3tunes' service, you must conclude whether Plaintiffs have shown, by a preponderance of the evidence, that MP3tunes had such "red flag" knowledge regarding the infringement of that work.  Plaintiffs do not need to show that MP3tunes actually knew that the materials were infringing, only that those facts that it *did* know would have made such infringement apparent to a reasonable person.  If you find that Plaintiffs have made this showing, MP3tunes is not subject to the DMCA safe harbor.  If you so conclude, you must also determine whether Robertson is secondarily liable for the infringement.  To decide Robertson's personal liability, you should apply the same three forms of secondary liability I have already discussed -- Corporate Officer Liability, Vicarious Liability, and Contributory Liability.

Authority: Viacom International, Inc. v. YouTube, Inc., 676 F.3d 19, 31 (2d Cir. 2012); Capitol Records, Inc. v. MP3tunes, LLC, 2013 U.S. Dist. LEXIS 68793 *16-19 (S.D.N.Y. May 14, 2013)

**Robertson's Objection**:  **This is an incomplete, misleading and confusing instruction. It contains no instruction, among other things, that MP3tunes must have acquired knowledge of specific and identifiable instance of infringement or other factors or guidance for the jury to evaluate when determining red-flag knowledge. It could also lead the jury to conclude that general awareness of infringing activity may be enough for MP3tunes to have acquired red-flag knowledge**. The instruction also adopts Plaintiffs' instructions with respect to secondary liability which are objectionable for the reasons set forth above and in Robertson's liability instructions.

## Copyright – Promotional Downloads

You have heard evidence in this case regarding the Plaintiffs' offering of "promotional downloads" over the Internet of certain copyrighted works.

At an earlier point in this proceeding, I decided that the Plaintiffs' promotion of some of their music through online downloads during the times relevant to this litigation did not have the effect of authorizing the Defendants to make Plaintiffs' copyrighted works available for download, or of abandoning Plaintiffs' rights to enforce their copyrights in those works. Therefore, you should treat as decided that to the extent that Plaintiffs offered promotional downloads of their copyrighted works during the relevant times, such conduct by Plaintiffs did not make it permissible for the Defendants or their users to infringe Plaintiffs' copyrights, and you may not excuse Defendants from liability on that basis.

However, I am still allowing the parties to present evidence on this topic for a more limited different purpose.  During the liability phase of this case, in deciding Plaintiffs' claims regarding willful blindness and red flag knowledge which I just explained to you, you must decide whether the Defendants were willfully blind to, or had red flag knowledge of, particular infringing activity on their websites.  You may consider the promotional  activities of the Plaintiffs in deciding whether the Defendants were willfully blind to, or had red flag knowledge of, the infringement of particular works by their users, and may give such evidence the weight you deem appropriate, or no weight, as you see fit from the evidence presented.


**Robertson's Objection**: **This instruction is unnecessary, an inaccurate statement of this Court's holding with respect to promotional downloads, and uses prejudicial language regarding liability that will confuse the jury when considering MP3tunes' red-flag knowledge and willful blindness, statutory damages and Plaintiffs' credibility.  Further, promotional downloads also are relevant with respect to Defendant's remaining affirmative defenses.**

**<u>Copyright – Promotional Downloads – Specific Works Only</u>**

In considering evidence of promotional downloads for the purposes I just explained to you, you may consider the promotional activities of the Plaintiffs only if such activities relate to the specific works at issue in this case.

<u>Authority</u>:  <u>Capitol Records, Inc. v. MP3tunes, LLC</u>, 07 Civ. 9931 (WHP), Slip Op. at *24 (S.D.N.Y. Oct. 25, 2011) (Dkt. No. 525); <u>Capitol Records, Inc. v. MP3tunes, LLC</u>, 07 Civ. 9931 (WHP), Slip Op. at *14-15 (S.D.N.Y. Jan. 29, 2014) (Dkt. No. 525).

**<u>Defendant's Objection</u>: This instruction is incorrect and is an attempt at an additional motion *in limine*.  Promotional downloads, even if they do not relate to the specific works at issue, are relevant to willful blindness, red-flag knowledge, Defendant's defenses and Plaintiffs' credibility.**

## Unfair Competition

In addition to the federal copyright claims at issue in this case, Plaintiffs have also brought a claim for unfair competition under New York law, which alleges that Defendants unfairly competed with Plaintiffs using sound recordings subject to the protection of New York State law, which, as I explained earlier, consist of sound recordings recorded before February 15, 1972.  To establish unfair competition, Plaintiffs must show that MP3tunes and Robertson used Plaintiffs' works without authorization and (i) that Defendants competed with Plaintiffs in the marketplace; (ii) that Defendants acted for commercial benefit; or (iii) that Defendants deceived the public.   Plaintiffs must also establish that Defendants committed these acts in bad faith.[3] Bad faith exists, for example, when a defendant engages in a pattern of behavior evincing a gross indifference to the rights of another or with knowledge that it lacks authorization to do an act.[4]

This Court has already determined that MP3tunes contributed to the unauthorized use of Plaintiffs' copyrighted works and that Plaintiffs distribute their works over the Internet while MP3tunes offered free copies and storage of those works to Internet users.  Thus,  the only remaining issues for your determination during the liability phase of the trial are whether MP3tunes either competes with Plaintiffs in the marketplace, acted for commercial benefit, or deceived the public, and whether Defendants acted in bad faith.


Authority:  Capitol Records, Inc. v. MP3tunes, LLC, 821 F. Supp. 2d 627, 650 (S.D.N.Y. 2011).

---

[3] *Empresa Cubana Del Tabaco v. Gen. Cigar Co. Inc.*, 385 Fed. Appx. 29, 32 (2d Cir. 2010); *Bulger v. Royal Doulton, PLC,* No. 05 Civ. 7709(DAB), 2006 WL 3771016, at *8 (S.D.N.Y. Dec. 19, 2006) ("[A]n element of bad faith is central to unfair competition").

[4] *Vecchione v. Amica Mut. Ins. Co.,* 274 A.D.2d 576, 711 N.Y.S.2d 186, 188 (2d Dep't 2000); *Out of Box Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 578, 866 N.Y.S.2d 677, 681 (2008); *New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*, 909 N.Y.S.2d 866, 871 (N.Y. Sup. Ct. 2010); *see Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).

**Robertson's Objection**:  The language "[t]his Court has already determined that MP3tunes contributed to the unauthorized use of Plaintiffs' copyrighted works and that Plaintiffs distribute their works over the Internet while MP3tunes offered free copies and storage of those works to Internet users", is inaccurate and prejudicial.  Further, none of the elements have been established as to Robertson, yet Plaintiffs assert that, with respect to Robertson, all that needs to be proven is that he acted in bad faith. The instruction is also prejudicial because it makes it appear that the Court has already determined that MP3tunes is liable for contributory infringement with respect to all of Plaintiffs' works. *See* Robertson's alternative instruction provided as part of his liability instruction and the cases and authorities relied upon therein.