919 THIRD AVENUE NEW YORK NEW YORK 10022-3908

JENNER & BLOCK LLP

February 21, 2014

Andrew H. Bart
Tel 212 891-1645
Fax 212 891-1699
abart@jenner.com

**VIA ECF**

Honorable William H. Pauley III
U.S. District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 2210
New York, NY 10007

*Re:* ***Capitol Records, LLC et al. v. MP3tunes, LLC, Case No. 07 Civ. 9931 (WHP)***

Dear Judge Pauley:

I write on behalf of the Plaintiffs in this action to request guidance on certain issues in advance of trial in the above-referenced action, scheduled to commence on February 25, 2014. Given that the pretrial conference is scheduled for the day before trial, Plaintiffs believe it is appropriate to raise these issues by letter so the Court and Defendant's counsel are alerted to these issues and we can address them during the conference.

**SCOPE OF ISSUES TO BE TRIED**

The parties' unsuccessful jury instruction negotiations over the week prior to the filing of the proposed instructions on Tuesday have made clear that guidance from the Court is required to clarify the scope of the issues to be tried to the jury. Robertson's proposed jury instructions demonstrate his intention to present evidence and argument on issues that Plaintiffs believe have already been resolved by the Court's prior orders. Normally, disagreements among the parties regarding appropriate jury instructions can await the charging conference. But given that Robertson is plainly planning on trying these issues before the jury, Plaintiffs believe that direction from the Court is required before the trial begins.

**Liability Phase Issues Regarding Works Listed on Takedown Notices:** The first issue on which guidance is required concerns Plaintiffs' claim relating to works listed on Plaintiffs' takedown notices that had been sideloaded by MP3tunes users. Given this Court's prior dispositive holding on this subject, Plaintiffs believe there are no issues to try with respect to these works during the liability phase of the case, only damages.

The Court on summary judgment held that "EMI's motion for summary judgment on its claim for contributory infringement with respect to the songs listed in EMI's takedown notices and which MP3tunes failed to remove from users' lockers is granted." October 25, 2011 Order, Dkt. No. 276, at *26. The **only** remaining issue the court identified was "ownership" of works "not listed" on Plaintiffs' McMullan and Ashby declarations. *Id.* at *26 n.1. Those ownership

issues have now been resolved by agreement of the parties. *See* February 14, 2014 Order, Dkt. No. 539. Therefore, Plaintiffs submit that no liability issues remain with respect to works on their takedown notices on which Plaintiffs are suing, and that the sole role of the jury is to determine damages.

Robertson, however, has taken the position that the jury must decide **liability** for those works on a clean slate, including an evaluation of both MP3tunes' entitlement to DMCA protection and the adequacy of Plaintiffs' notices. *See* Robertson's Proposed Liability Phase Instructions, Dkt. Dkt. No. 544-3 at *30-34, 58, 59-61. This position cannot be squared with the Court's decision on summary judgment. Moreover, the Joint Pretrial Order in this case did not list MP3tunes' liability for failing to comply with takedown notices as an issue to be tried before the jury. *See* Joint Pretrial Order (submitted August 30, 2013), Robertson's portion at *12-13 (not identifying liability with respect to works on takedown notices as issue for trial). To ensure an orderly trial, the Court should clarify that these works present damages issues only.

**Affirmative Defenses:** The second issue on which guidance from the Court is required concerns Robertson's affirmative defenses based on Plaintiffs' promotional marketing of their works: equitable estoppel, implied license, waiver, and unclean hands. Equitable estoppel was never pleaded by Robertson as a defense in his Answer, *see* Defendants' Answer to Second Amended Complaint, Dkt. No. 135 at 17-19, and the Court rejected Robertson's implied license and abandonment defenses on summary judgment. *See* October 25, 2011 Order, Dkt. No. 276, at *27. On Reconsideration, when Robertson re-argued the same theory under the labels of "estoppel," "waiver," and "unclean hands," Court rejected these "equitable defenses" again as "without merit." *See* May 14, 2013 Order, Dkt. No. 368, at *14. And finally, the Court just a few weeks ago in its decision on the motions in limine held that Defendant's "promotional download" evidence may be received at trial **only** for purposes of disputing the obviousness element of red flag knowledge, the actual awareness of a "high probability" of infringement element of willful blindness, and the willfulness element of statutory damages. *See* Jan. 29, 2014 Order, Dkt. No. 525, at *14-15.

Despite these repeated orders of the Court, Robertson is now taking the position that he may try these defenses to the jury so long as he seeks to apply them to works other than those on which the Court has already reached liability determinations. *See* Robertson's Proposed Liability Phase Jury Instructions, Dkt. No. 544-3 at *75-82. The Court's holdings above dispose of that argument. And even if the issue were still open (which it is not), the Court's finding "that EMI placed careful restrictions on the use of its promotional songs and required consumers to visit certain websites or provide valuable marketing information before downloading a song" would preclude any such defenses, irrespective of the works to which they are applied. Oct. 25, 2011 Order, Dkt. No. 276, at *27.[1]

---

[1] Robertson has also failed to disclose evidence that would support any such defenses. As the Court held in its Reconsideration order, such defenses would require proof of an intent to abandon a work altogether or "evidence that websites involved in free viral marketing campaigns were identical to the URLs" of the infringing activity. May 14, 2013 Order, Dkt. No. 368, at

Plaintiffs accordingly request that the Court clarify that Robertson may introduce his "viral marketing" evidence only in support of the arguments spelled out in the Court's January 29, 2014 Order, and not to resuscitate defenses the Court has already rejected.

**Promotional Downloads Evidence Postdating December 8, 2008**: Guidance is also needed with respect to the admissibility of Defendant's "promotional downloads" evidence that postdates the relevant liability period in this case. Plaintiffs have already written to the Court on this topic, *see* Dkt. No. 533, and will not repeat the substantive argument here. Plaintiffs had understood this Court's February 11, 2014 Order (Dkt. No. 535) as permitting such evidence **only** if Robertson can make a prior showing that it "relate[s] to promotional activities in the relevant time period." *Id*. at *2.[2] However, Robertson has continued to designate trial exhibits regarding "free" music available online after the relevant time period, including a new disclosure yesterday of an exhibit showing music (not the works in suit) made available for free on Amazon **in 2012**, nearly four years after the relevant liability period ended. *See, e.g.*, DX 2295 (attached as Exhibit A). Other examples abound. Plaintiffs respectfully request that the Court make clear that its February 11, 2014 Order (Dkt. No. 535) applies to documentary evidence as well as to the testimony of Devin Krug, a marketing employee Plaintiffs hired after the relevant period in this case ended.

As for Mr. Krug, Plaintiffs made him available to Robertson for deposition in accordance with the Court's February 11, 2014 Order.[3] Mr. Krug's deposition testimony, as expected, confirmed that he did not have any personal knowledge as to the promotion of works by Plaintiffs during the relevant pre-December-2008 timeframe. Because Krug has no relevant testimony to offer at trial, Plaintiffs respectfully request that the Court preclude Robertson from calling him, in accordance with its February 11, 2014 Order.

**Cover Art Ownership and Licensing**: The parties have already submitted a joint letter to the Court regarding the need for guidance from the Court as to whether Plaintiffs' ownership of all Cover Art images in suit is to be tried before the jury, or whether such issues are limited to registrations that do not list an author for the cover art images (of which Robertson has identified

---

*13. In other words, the Court has already held that Robertson could only have created a question of fact with evidence that Plaintiffs authorized the **use of a specific work in suit by the specific website from which the infringing sideload took place**. Robertson has identified no such evidence.

[2] Up through December 8, 2008.

[3] In accordance with the Court's January 29, 2014 Order, Plaintiffs also made available Mr. Pandiscia, who has now been deposed as well. In addition, following Plaintiffs' February 18, 2014 Letter regarding their supplemental search of Mr. Pandiscia's documents, Dkt. No. 543, Plaintiffs completed an additional production of his documents on February 20th.

none, and Plaintiffs believe there are no more than ten).[4] *See* Dkt. No. 545. Plaintiffs will not repeat the substantive argument here, however, they respectfully request resolution of this issue before trial so that Plaintiffs can know whether they need to call a witness on the topic and introduce the hundreds of copyright registrations as part of their case-in-chief.

On a similar note, Robertson has indicated that he believes that he may try to the jury the question of whether Plaintiffs have standing to sue for infringement of cover art at all. *See* Robertson's Proposed Liability Phase Jury Instructions, Dkt. No. 544-3, at *52-53. Again, Robertson has already moved both on reconsideration and on a motion in limine on this theory, and the Court has been very clear in rejecting Robertson's standing challenge and in holding that the only issue for trial is whether "MP3tunes unlawfully copied cover art images in a manner that exceeded the scope of the license." Jan. 29, 2014 Order, Dkt. No. 525 at *25-26. And again, Plaintiffs believe that absent direction from this Court, Robertson will simply disregard the Court's decisions and present argument and evidence to the jury as though this issue were still open.

**<u>Examination of Plaintiff Witnesses Regarding Works Not in Suit</u>:** The parties have already submitted a joint letter to the Court regarding the need for guidance as to whether Defendants may cross-examine Plaintiff witnesses concerning ownership of works on which Plaintiffs are not suing for infringement, which also affects the scope of the Parties' needed trial preparations and evidence. *See* Dkt. No. 536. Per the Court's February 14, 2014 Order, Dkt. No. 539, Plaintiffs understand that the Court will take up this issue at the pretrial conference.

Since that time, Robertson's counsel has further advised that he still wants to call, during his case in chief, witnesses whom the Plaintiffs designated solely on the issue of copyright ownership. For example, Robertson's advised that he wishes to call Audrey Ashby. Ms. Ashby has no knowledge beyond copyright ownership of the works in suit. She was designated as a witness for that purpose, and now that there are no remaining disputes concerning ownership of the works ***actually in suit***,[5] her testimony is unnecessary and Plaintiffs will not be calling her. Mr. Sacks has not articulated any subject as to which her testimony is required or relevant. To allow Mr. Sacks to call her would only serve to confuse the jury and unnecessarily lengthen the

---

[4] If the Court concurs that no more than these approximately ten works are in issue, Plaintiffs would consider dropping them from suit in order to shorten the trial and eliminate the need to call an additional witness.

[5] As set forth in the parties' joint letter, it is undisputed that no issues remain as to the Publishing Plaintiffs' ownership of 708 works in suit. These 708 works are the ***only*** works that the Publishing Plaintiffs are suing on. Michael Robertson cannot be held liable for any works that the Publishing Plaintiffs are ***not*** suing on. Nevertheless, Robertson's counsel has advised that they still want to spend precious trial time cross-examining witnesses with respect to the Publishing Plaintiffs' ownership of works ***that are not in suit*** – including works that ***were never in suit*** -- and that Robertson therefore cannot have any liability on.

trial.[6] Moreover, even if this Court was to entertain Mr. Sacks' request for unwarranted cross examination of witnesses on decisions as to which works to put in suit, Ms. Ashby would not be the witness. She had no part in any decisions regarding which works to place in suit.[7] And, Mr. Sacks cannot cross-examine a witness who has not been examined on direct. In view of the foregoing, the Publishing Plaintiffs respectfully request that this Court preclude Robertson from unnecessarily calling or examining Audrey Ashby.[8]

**ISSUES RELATED TO ORGANIZATION AND CONDUCT OF TRIAL**

Beyond the issues related to the scope of the trial, Plaintiffs also respectfully request clarification regarding several issues pertaining to the organization and conduct of the proceedings.

**Bifurcation**: In light of this Court's decision to bifurcate the trial into two phases – *i.e.*, liability and damages – Plaintiffs respectfully request guidance on the presentation of certain testimony and documentary evidence that is relevant in both phases, particularly with respect to evidence of bad faith by Robertson and MP3tunes and evidence of Robertson's control over the company and its infringing conduct.

For instance, the willful nature of Robertson's infringement is relevant to setting the appropriate range of statutory damages, but it is also relevant to two of the underlying liability issues in the case – contributory liability for copyright infringement,[9] and unfair competition with respect to pre-72 works.[10] Similarly, the degree and extent of Robertson's control over MP3tunes and its infringing activity is relevant to his personal liability under vicarious and corporate officer liability theories, but also relates to his personal blameworthiness for the

---

[6] Indeed, the entire purpose of resolving ownership issues in advance of trial was to eliminate the need for lengthy testimony regarding copyright registrations and chain of title documents.

[7] It is not clear how ***any*** cross-examination on this subject would not be privileged. The decision not to put certain works in suit has nothing to do with whether EMI Publishing owns them. The decision was part of their overall litigation strategy, the details of which are privileged.

[8] To the extent Robertson has any intent of engaging in any similar questioning of a Label Plaintiff representative, the same principles would apply and the Label Plaintiffs would share the same objection.

[9] *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) (predicating liability on "purposeful, culpable expression and conduct").

[10] Whether or not "bad faith" is an element of unfair competition under New York law is arguable. Compare *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (bad faith an element of unfair competition) with *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (2007) (omitting bad faith as element). Recognizing that there are doubts about the legal standard, Plaintiffs during jury instruction negotiations accepted Defendant's request that the instructions include the element. *See* Plaintiffs' Proposed Liability Phase Instructions, Dkt. No. 544-2 at *43; Defendant's Proposed Liability Phase Instructions, Dkt. No. 544-3 at *73.

infringing acts for which MP3tunes is found liable, and thus similarly is relevant to both the liability and damages stages of the case.

Plaintiffs accordingly believe that the appropriate approach, in instances where evidence relates to both liability and damages (such as evidence of bad faith and control) is to permit the presentation of such evidence during the liability phase, and not require that it be repeated during the damages phase. The specific evidence that led the Court to bifurcate the proceeding in the first instance – evidence regarding Defendants' awareness of infringement of copyrights belonging to other copyright holders – can be presented during the damages phase.

**Out-of-Town Witnesses:** Plaintiffs similarly request guidance concerning two issues involving out-of-town witnesses who will need to travel to New York for trial, some of them from the West Coast, and would benefit greatly from both certainty as to the timing of their testimony and avoiding the need for them to be called multiple times. First, some of the out-of-town witnesses may be able to offer testimony concerning both liability and damages. It would be inconvenient and burdensome for such witnesses to be required to travel to New York to testify during the liability phase of trial, and then return to New York a second time to testify during the damages phase. Thus, Plaintiffs respectfully request that the Court allow such out-of-town witnesses to testify to matters concerning both liability and damages during the liability phase of trial.[11]

Second, Plaintiffs seek to accommodate the request of one of the third-party out-of-town witnesses, Anne Tarpey (a representative from Amazon.com who will be flying in from Seattle), for a date certain on which she will testify, so that she will not be diverted away from her job duties for longer than is necessary. She has requested a date certain to testify (and has requested that that date be Monday, March 3d if possible). Plaintiffs are hoping the Court can provide some guidance that will allow for this reasonable request to be accommodated, such as permitting Plaintiffs, if necessary, to pause the testimony of a witness on the stand, present the testimony of Ms. Tarpey, and then resume the original witness's testimony thereafter.

**Opening Statements**: Plaintiffs also respectfully seek clarification on whether your Honor will place limitations on the parties' opening statements. Specifically, Plaintiffs request guidance on whether there will be any time limitations on the length of the parties' opening statements, whether demonstratives will be permitted to be displayed, and whether counsel may refer to damages. Plaintiffs also request guidance as to whether the Court contemplates a single opening statement to cover both the liability and damages phases of the trial, or separate opening and closing statements for each.

---

[11] The Court's purpose for bifurcating the trial was to avoid the risk that the jury might be confused, in deciding the willful blindness issues in the case, by evidence pertaining to MP3tunes' infringement of "other copyrights" belonging to third parties. *See* January 29, 2014 Order, Dkt. No. 525, at 11. Plaintiffs do not intend to elicit any testimony from any of its out-of-town witnesses touching upon those issues.

**Expected MP3tunes Default:** Finally, as this Court is aware, and as Defendant Robertson has repeatedly represented, Defendant MP3tunes is currently in bankruptcy and has elected not to appear at trial. It is, thus, undisputed that MP3tunes will default. Plaintiffs respectfully request the opportunity to move for an entry of default against MP3tunes on the record at the start of trial in order to allow a default judgment to be obtained in a timely manner.

We thank the Court for its consideration.

Respectfully submitted,

Andrew H. Bart

/s/ Andrew H. Bart
Andrew H. Bart

cc: Ira S. Sacks, Esq. (via email)
Mark S. Lafayette, Esq. (via email)
Frank P. Scibilia, Esq. (via email)
Mona Simonian, Esq. (via email)