UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITOL RECORDS, INC., et al,

*Plaintiffs,*

v.

MP3TUNES LLC and MICHAEL
ROBERTSON,

*Defendants.*

No. 07 Civ. 9931 (WHP) (FM)

**ECF CASE**

**BENCH MEMORANDUM
IN OPPOSITION TO
ROBERTSON'S TRIAL BRIEF
REGARDING SECTION 412
OF THE COPYRIGHT ACT**

Plaintiffs respectfully submit this memorandum in opposition to Robertson's application regarding Plaintiffs' eligibility to recover statutory damages under Section 412 of the Copyright Act with respect to certain works infringed by Robertson and MP3tunes.

In its January 29, 2014 Order, the Court held that "[t]o the extent the parties are unable to agree on whether any post-1972 recordings are subject to the 'ongoing series' rule, that determination will be left to trial."  Mem. and Order (Dkt. No. 525) at *22 (citation omitted). Plaintiffs' proposed jury instruction – which Robertson asks this Court to overrule, yet never actually recites in his brief – does exactly what the Court's January 29 Order directs: inform the jury of the relevant legal standard they should apply in order to reach that determination:

> In order to prove their entitlement to statutory damages for any given work, Plaintiffs must show that they registered the copyright in the work at the appropriate time.  For these purposes, Plaintiff's registration of a copyright was timely (a) if the infringement began after the effective date of the registration, or (b) if the infringement began after the work was first published, but only if registration was made within three months of the first publication of the work. If a plaintiff proves by a preponderance of the evidence that its registration was timely,   you may go on to consider statutory damages.

1

> If an infringement consisted of an ongoing series of infringing acts with respect to the same registered work, the infringement "began" when the series of ongoing acts began.  Thus, if a work was first infringed at a time that was not timely under the standards I just explained, but was then infringed again as part of an ongoing series of infringing acts at a time that would have been timely, you may not award statutory damages because the infringement "began" when the ongoing series began.

*See* Joint Proposed Post-Evidence and Damages Jury Instruction on Statutory Damages, at *14 (Timely Registration [Plaintiffs' Proposal]).

Although styled as a motion regarding the parties' competing jury instructions, what Robertson is really seeking is a belated partial summary judgment on the very dispute the Court has held should be "left to trial" – whether or not certain infringing acts of different MP3tunes executives and users for which Defendants have been held liable were part of an "ongoing series."  Deciding whether or not Plaintiffs have met the requisite legal standard on the evidence presented at trial is a question for the jury, not a determination that can or should be made as a matter of law.  Consistent with its January 29, 2014 Order, the Court should give the jury Plaintiffs' proposed instruction and allow them to apply it to the evidence presented.

## I.      BACKGROUND.

Because Robertson's application simply launches into legal argument without any context as to the contours of the parties' disagreement, Plaintiffs provide it here.

The Court had directed the parties to meet and confer regarding the specific works at issue eligible for statutory damages under Section 412.  *See* January 29, 2014 Order (Dkt. No. 525) at *22.  Following the Court's direction, Plaintiffs engaged in the massive data analysis project of investigating every sideload (for sound recordings and musical compositions) and upload (for cover art images) of each file reflected in the MP3tunes database for which the Artist and Title information (for sound recordings and musical compositions) and album information

(for cover art images) matched a registered copyrighted work at issue in the litigation, and then ascertaining the relationship of those dates to the registration and publication dates for those works.  Plaintiffs provided the results of that analysis (for negotiation purposes, subject to Rule 408) nearly two weeks ago as part of an effort to negotiate a stipulation.

The data – which Plaintiffs had no choice but to offer into evidence as PX3801 and PX3808 when Plaintiffs were unable to reach an agreement with Robertson as directed – reflects a relatively narrow band of disagreement among the parties.  Of the 2,174 registered copyrighted works remaining at issue as to Robertson,[1] 2,090 were registered before Sideload even began operations and/or MP3tunes began copying cover art from Amazon, meaning there can be no dispute as to Section 412 eligibility.   Another 46 involve instances where each link to the infringing file on the Sideload website was created at a time that would not be eligible for statutory damages under Section 412, with all infringements of those works by MP3tunes users postdating registration being infringements that occurred by the users' sideloading or downloading the files from links created at an earlier time.  Plaintiffs do not intend to dispute at trial that the infringement of these 46 works, for which all post-registration infringements used links created before registration, were part of an ongoing series.[2]

The parties' real dispute concerns a narrow band of 38 works (34 sound recordings and 4 musical compositions).  With respect to these 38 works, the very first sideload by any user of the MP3tunes system preceded registration (and/or publication) and would not be independently

---

[1] The numbers as to MP3tunes are slightly different, as the two Defendants were not held liable on all of the same claims.

[2] Plaintiffs reserve for appeal the contention that such post-registration acts of infringement should be eligible for statutory damages for an entirely different reason: that they are independent acts of infringement by different direct infringers, eligible under Section 412 in their own right, and Defendants are jointly liable for such statutory damages by operation of secondary liability.  *See* Part V *infra*.

Section 412 eligible.  *See* PX3808 & PX3801.  However, for each of these 38 works, a *different* user independently created a *new* link to the Sideload index, from a *different* infringing source file, on a *different* webpage on a *different* location on the Internet, infringing that work at a later time that *would* be independently eligible for a statutory damages award under Section 412.  *See* PX3808 & PX3801.  The parties disagree as to whether the action of an MP3tunes user using the Sideload plugin to create an altogether new infringing link constitutes part of an "ongoing series" with a different infringing sideload by a prior user.  There is also the related issue that in two of those 38 instances, Defendants *directly* infringed the works at times eligible for statutory damages under Section 412.  Even though the works had previously been infringed by other users prior to registration, Robertson directly infringed the track "Corinne Bailey – Put Your Records On," and Doug Reese directly infringed the track "Sia – Breathe Me," *after* both works had been registered.  *See* PX 3801 & PX449-450.

Pursuant to the Court's direction, the Plaintiffs had provided all of this data to Defendant weeks ago, had engaged in repeated discussions, and hoped that the parties were close to an agreement by which the parties would stipulate that some (but not all) of these 38 works would be considered eligible for statutory damages.  However, unbeknownst to Plaintiffs, Robertson had instead been surreptitiously preparing a bench memorandum seeking to have the Court take the question away from the jury, which Plaintiffs learned of only when it was filed yesterday evening.[3]

---

[3] Robertson's representation to the Court in his letter of March 20, 2014, that his memorandum "was filed because of the position Plaintiffs took in the negotiations," is not consistent with representations made to Plaintiffs' counsel by Robertson's counsel, who informed Plaintiffs' after the filing of the brief that, unbeknownst to Plaintiffs, they had in fact begun drafting their brief on Monday, March 17.  Thus, while Robertson was secretly preparing his brief, his counsel was continuing to exchange proposals and counterproposals with Plaintiffs – indeed, Robertson's

## II.     PLAINTIFFS' PROPOSED INSTRUCTION AND THE COURT'S JANUARY 29 ORDER ACCURATELY STATE THE GOVERNING LEGAL STANDARD.

Plaintiffs' proposed instruction above correctly describes the relevant legal standard: that Plaintiffs may not recover statutory damages for a work if the first infringement of a given work occurred prior to registration but the work "was then infringed again as part of an ongoing series of infringing acts."   Joint Proposed Post-Evidence and Damages Jury Instruction on Statutory Damages, at *14 (Timely Registration [Plaintiffs' Proposal]), at 14; *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 159 (2d Cir. 2007).   Indeed, the various cases cited by Robertson all state this exact principle.   Thus, there is no disagreement among the parties as to the applicable legal principle.   There is no reason not to accurately inform the jury of the legal standard they should apply in order to determine whether or not Plaintiffs are entitled to statutory damages with respect to any works regarding which there is a dispute as to such eligibility.

## III.    ROBERTSON'S PROPOSED INSTRUCTION INVADES THE PROVINCE OF THE JURY.

Robertson's proposed instruction, by contrast, would usurp the jury's proper role as fact-finder.   Robertson would have the Court instruct the jury that, regardless of the circumstances, "you ***may not*** award statutory damages with respect to all alleged infringements of the specified work" if that work was first infringed by a user of the sideload plug-in prior to registration.   Joint Proposed Post-Evidence and Damages Jury Instruction on Statutory Damages, at *15-16 (Timely Registration [Defendant's Proposal]) (emphasis added).   Robertson's proposed instruction thus predetermines the very issue the jury is tasked with deciding: how to apply the legal standard to the facts before them, and whether or not the relevant pre- and post-registration infringements reflected in the record in this case constituted an "ongoing series."

---

counsel had not responded to Plaintiffs' latest counterproposal (claiming an inability to reach their client late at night) at the time they filed their application.

In effect, what Robertson seeks is a partial summary judgment ruling that multiple acts of direct infringement by different users *always* constitute an ongoing series, *regardless of the factual circumstances*.  This is wholly improper, and is not supported by the case law in this Circuit or elsewhere.  Depending on the particular factual circumstances, "a post-registration act of infringement will not be deemed to have commenced before registration" under some conditions even if there had been pre-registration infringements.  *See, e.g.*, *Troll Co.*, 483 F.3d at 158-59.  It is a question that can be decided only by applying the law to the facts, and thus, as the Court previously decided, must be "left to trial."  Jan. 29 Order at *22.

IV.     **THE RECORD CONTAINS AMPLE EVIDENCE ON WHICH THE JURY COULD FIND THAT THE INFRINGING ACTS POSTDATING REGISTRATION WERE NOT PART OF AN ONGOING SERIES WITH THE INFRINGING ACTS PREDATING REGISTRATION.**

Robertson's proposed instruction is particularly invasive of the jury's province to apply the law to the facts in this case because of the substantial evidence in the record supporting Plaintiffs' contention that users of the Sideload plug-in engaged in independent acts of infringement unrelated to previous infringing acts by different users of the software.

Robertson relies primarily on *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW), 2011 WL 1226277 (S.D.N.Y. Mar. 29, 2011) ("*Lime Group*").  However, there are critical factual differences between the architecture of the peer-to-peer system at issue in *Lime Group* and the use of the Sideload plug-in software at issue in this case, on which a reasonable jury could reach a different conclusion here.  *Lime Group* involved a "peer-to-peer" service in which infringing content was exchanged between users.  Thus, by necessity, infringing actions of LimeWire's users were intricately tied to infringements by other LimeWire users – users searched for, copied, and made available for copying infringing music files through an interconnected network of one another's computers. *Cf. Arista Records LLS v. Lime Group LLC*,

No. 06 Civ. 5936(KMW)(DF), 2010 WL 6230927, at *5 (S.D.N.Y. Dec. 28, 2010) (noting that "**by nature of the peer-to-peer file-share system**, LimeWire users did not act independently" and that for a user to download a recording, "another user first had to make that recording available") (emphasis added).

In contrast, the parties' disagreement in this case concerns users' actions of independently locating infringing material on the Internet and adding it to the Sideload index. Only one user is involved in the act of adding a new link to the index, and that user does it not by connecting with other users, but rather through his or her Internet browser, while connected to a third-party website.[4]  *See* Trial Tr. 306:6-16  (Testimony of E. Horowitz).

The fact that users can create new, different links on the Sideload website, from different online locations and without any interaction with other users of the system or software, is the critical distinction between this case and *Lime Group*.   The jury could very well reasonably conclude that the relative independence of each such direct infringement means that is not part of an "ongoing series of infringing acts."   Indeed, despite the various cases Robertson cites in support of his view of the legal standard, all of the cases he cites involve different procedural contexts such as summary judgment motions and bench trials, rather than (as here) situations in which a jury has heard extensive evidence on the subject and is prepared to apply the law to the facts.[5]

---

[4] Plaintiffs do not dispute that users who sideload infringing files from existing links on the Sideload website do so in a manner that is connected to other users of the system (*i.e.* the original sideloader who created the infringing link).  However, as stated in Part I *supra*, Plaintiffs do not dispute that such "subsequent" infringing sideloads using links created prior to registration of the relevant works (of which there are 46 here) are part of a continuing series.

[5] *See Arista Records*, 2011 WL 1226277, at *1 (pre-trial discovery ruling); *U2 Home Entertainment, Inc. v. Hong Wei Intern. Trading, Inc.*, No. 04 Civ. 6189(JFK), 2008 WL 3906889, at *1 (S.D.N.Y. Aug. 21, 2008) (summary judgment ruling); *C.A. Inc. v. Rocket Software, Inc.*, 579 F .Supp.2d 355, 364 (E.D.N.Y. 2008) (ruling on motion to dismiss); *Shady*

## V.    APPLICATION OF THE "ONGOING SERIES" RULE TO SECONDARY LIABILITY REMAINS AN OPEN QUESTION IN THE SECOND CIRCUIT.

Finally, Plaintiffs also note that the there is no law in the Second Circuit holding that the "ongoing series of infringing acts" doctrine precludes a statutory damages award in instances where direct infringers engage in independent acts of infringement (for which they are not jointly and severally liable with one another) and a common defendant is secondarily liable for such acts.  Nothing in Section 412 of the Copyright Act suggests that a statutory damages award is not available against the secondary infringer in that context if a statutory damages award would be available against the later-acting direct infringer.

To the contrary, Section 412 must be read consistently with the statutory text of Section 504(c)(1), which provides for a single statutory damages award for all infringements of a given individual work "for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1).  Accordingly, there is no reason to apply Section 412 as barring the operation of Section 504(c)(1) in circumstances involving multiple direct infringers who are not jointly and severally liable.[6]  Robertson's alternative reading of Section 412 reflects an attempt to infuse policy considerations into the statute that are not supported by its text – an approach that, to Plaintiffs' knowledge, has not been endorsed, or even addressed, by the Second Circuit.

---

*Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944(GEL), 2005 WL 14920, at *1 (S.D.N.Y. Jan. 3, 2005) (summary judgment ruling); *Love v. City of New York*, No. 88 Civ. 7562(MBM), 1989 WL 140578, at *1 (S.D.N.Y. Nov. 17, 1989) (pretrial motion); *Derek Andrew, Inc. v. Poof Apparel Corp*, 528 F.3d 696, 699 (9th Cir. 2008) (judgment following bench trial); *Johnson v. Jones*, 149 F.3d 494, 497 (6th Cir. 1998) (same).

[6] The court in *Arista Records* explicitly declined to decide whether the "ongoing series of infringing acts" doctrine so extends to the secondary liability context.  *See Arista Records*, 2011 WL 1226277, at *4 n.3 ("The Court need not address whether the 'ongoing series of infringing acts' doctrine should be extended to the context of a secondarily liable inducer. . . .").

\*     \*     \*     \*

For all of the foregoing reasons, the Court should allow the jury to serve its proper function as the final arbiter of the facts, and to decide whether the 38 specific post-registration acts of infringement regarding which the Parties disagree were part of an "ongoing series" of infringing acts beginning prior to the registration of the relevant works.


Dated: New York, New York
        March 21, 2014

JENNER & BLOCK LLP

By:    */s Andrew H. Bart*
        Andrew H. Bart
        Lindsay W. Bowen
        919 Third Avenue, 37th Floor
        New York, New York 10022
        Telephone: (212) 891-1645
        Facsimile:  (212) 891-1699

        Luke C. Platzer
        J. Douglas Wilson
        1099 New York Avenue, NW
        Washington, DC 20001
        Telephone: (202) 639-6000
        Facsimile:  (202) 661-4819
        *Attorneys for EMI Label Plaintiffs*


PRYOR CASHMAN LLP

By:    */s Frank P. Scibilia*
        Frank P. Scibilia
        M. Mona Simonian
        Ross M. Bagley
        7 Times Square
        New York, New York 10036
        Telephone:  (212) 421-4100
        Facsimile: (212) 326-0806
        *Attorneys for EMI Publishing Plaintiffs*