UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                             :

CAPITOL RECORDS, INC. et al.,

                             :

                Plaintiffs,                07 Civ. 9931 (WHP)

                             :

        -against-

                             :

MP3TUNES, LLC et al.,

                             :

              Defendants.

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

## JURY CHARGE

Delivered: March X, 2014

1  **I.      <u>GENERAL INSTRUCTIONS</u>**

2                                    <u>**Duty of the Court**</u>

3              Members of the Jury, my charge to you on the law is lengthy and covers many

4  points.  You must listen closely as I read the charge.  I will send one copy of these instructions

5  into the jury room for you to have in your deliberations.

6              We are now approaching the most important part of this case: your deliberations.

7  You have heard all of the evidence in this case, as well as the final arguments of the lawyers for

8  the parties.  Before you retire to deliberate, it is my duty to instruct you as to the law.  It is your

9  duty to accept these instructions of law and apply them to the facts as you determine them.

10             Regardless of any opinion that you may have as to what the law may be—or

11 ought to be—it is your sworn duty to follow the law as I give it to you.  If any attorney or

12 witness has stated a legal principle different from any that I state to you in my instructions, it is

13 my instructions that you must follow.

14             In listening to these instructions now and reviewing them later, you should not

15 single out any particular instruction as alone stating the law, but you should instead consider my

16 instructions as a whole.

17

1           **<u>Duty of the Jury</u>**

2           Your duty is to decide the fact issues in the case.  You are the sole and exclusive

3   judges of the facts.  You pass upon the weight of the evidence; you determine the credibility of

4   the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever

5   reasonable inferences you decide to draw from the facts as you determine them.

6           In determining the facts, you must rely upon your own recollection of the

7   evidence.  None of what the lawyers have said in their opening statements, in their closing

8   arguments, or in their objections is evidence.  You should bear in mind particularly that a

9   question put to a witness is never evidence.  It is only the answer in the context of the question

10  that is evidence.  You may not consider any answer that I directed you to disregard.  I remind

11  you that nothing I have said during the trial or will say during these instructions is evidence.

12  Similarly, the rulings I have made during the trial are not any indication of my views of what

13  your decision should be.

14          The evidence before you consists of the answers given by witnesses, the exhibits

15  that were received in evidence, and stipulations of counsel.  Exhibits marked for identification

16  but not received may not be considered as evidence.  Anything you may have seen or heard

17  about this case outside the courtroom is not evidence and must be disregarded entirely.

18

3

1                                           **<u>Duty of Counsel</u>**

2                It is the duty of the attorney for each side of a case to object when the other side

3 offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel

4 also have the right and duty to ask the Court to make rulings of law and to request conferences at

5 the side bar out of the hearing of the jury.  You should not harbor any prejudice against any

6 attorney or party because the attorney objected to the admissibility of evidence, or asked for a

7 conference out of the hearing of the jury, or asked me for a ruling on the law.

8

1    **<u>Burden of Proof – Preponderance of the Evidence</u>**

2    This is a civil case.  Accordingly, the parties have the burden of proving the

3    elements of their claims and affirmative defenses by a preponderance of the credible evidence.

4    To establish by a "preponderance of the evidence" simply means that something

5    is more likely so than not so.  A preponderance of the evidence means the greater weight of the

6    evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of

7    witnesses or exhibits.

8    If you find that the credible evidence on a given issue is evenly divided between

9    the parties—that it is equally probable that one side is right as it is that the other side is right—

10   then you must decide that issue against the party having this burden of proof.  That is because the

11   party bearing this burden must prove more than simple equality of evidence; the party must

12   prove the element at issue by a preponderance of the evidence.  The party's own subjective belief

13   is not sufficient to meet this burden.

14   On the other hand, the party with the burden of proof need prove no more than a

15   preponderance.  So long as you find that the scales tip, however slightly, in favor of the party

16   with this burden of proof—that what that party claims is more likely true than not true—then that

17   element will have been proved by a preponderance of the evidence.  If you conclude that the

18   party bearing the burden of proof has failed to establish its claim or affirmative defense by a

19   preponderance of the evidence, you must decide against that party on the issue you are

20   considering.

1          Some of you may have heard of proof beyond a reasonable doubt, which is the

2    proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such

3    as this, and you should put it out of your mind.

4

1                                    **Rulings on Evidence and Objections**

2                 The evidence in this case consists of the sworn testimony of the witnesses, the

3 exhibits received in evidence, and the stipulations between the parties.

4                 Exhibits which have been marked for identification but not received may not be

5 considered by you as evidence.  Only those exhibits received may be considered as evidence.

6                 Similarly, you are to disregard any testimony that I have stricken.

7                 Anything you may have seen or heard about this case outside the courtroom is not

8 evidence and must be entirely disregarded.

9

1                                    **<u>Direct and Circumstantial Evidence</u>**

2                There are two types of evidence that you may consider in reaching your verdict—

3        direct evidence and circumstantial evidence.

4                Direct evidence is evidence that proves a disputed fact directly.  For example,

5        where a witness testifies to what he or she saw, heard or did, that is called direct evidence.

6                Circumstantial evidence is evidence that tends to prove a disputed fact by proof of

7        other facts.  To give a simple example, you may remember the story of Robinson Crusoe, who

8        was marooned on a deserted island.  He spent years thinking he was alone, until one day, as he

9        walked along the beach, he noticed large footprints in the sand.  Because his feet were too small

10       to have made them, Robinson concluded that somebody else must have left the footprints, even

11       though he had not seen anyone else—in other words, he had no direct evidence of that fact.  But,

12       it would be reasonable for him to conclude from the footprints on the beach that, in fact, he was

13       not alone.

14               That is all there is to circumstantial evidence.  Using your reason and experience,

15       you infer from established facts the existence or the nonexistence of some other fact.

16               The law makes no distinction between direct and circumstantial evidence.

17       Circumstantial evidence is of no less value than direct evidence, and you can consider either or

18       both, and can give them such weight as you conclude is warranted.

19

1 **<u>Inferences</u>**

2       In their arguments, the parties have asked you to infer, on the basis of your

3 reason, experience, and common sense, from one or more established facts, the existence of

4 some other fact.  The process of drawing inferences from facts in evidence is not a matter of

5 guesswork or speculation.  An inference is a reasonable deduction or logical conclusion which

6 you, the jury, are permitted—but not required—to draw from the facts that have been established

7 by either direct or circumstantial evidence.  In drawing inferences, you should use your common

8 sense.

9

1                                                 **Jury Note Taking**

2           During the trial, I permitted the taking of notes by those of you who wished to do

3 so.  At that time, I pointed out while I permitted the taking of notes, the court reporter takes

4 down everything that is said in the courtroom and will read back to you during your deliberations

5 any portion of the transcript that you may ask for.  I also advised you to be careful, because

6 taking notes presents the further problem that doing so may divert your attention from some very

7 important testimony given while you are taking the notes.

8          As to those jurors who did take notes during the trial, I point out to you and your

9 fellow jurors that notes are simply an aid to memory for the particular juror who takes the notes.

10 Therefore, I instruct you that your notes are only a tool to aid your individual memory and you

11 should not compare your notes with other jurors in determining the content of any testimony or

12 in evaluating the importance of any evidence.  Further, those jurors who did not take notes

13 should rely on their independent recollection of the evidence and not be influenced by the fact

14 that another juror has taken notes.  Your notes are not evidence, and are by no means a complete

15 outline of the proceedings or a list of the highlights of the trial.

16

1                                            **<u>Stipulations</u>**

2           In this case you have heard evidence in the form of stipulations.  A stipulation is

3 an agreement among the parties that, if called, a witness would have given certain testimony.

4 You must accept as true the fact that the witness would have given the testimony.  However, it is

5 for you to determine the effect to be given that testimony.

6           You have also heard evidence in the form of stipulations that contain facts that

7 were agreed to be true.  In such cases, you must accept those facts as true.

8           Finally, you heard evidence in the form of stipulations admitting certain exhibits

9 into evidence.  I instruct you that exhibits referenced in stipulations are in evidence like any

10 other exhibit.

11

1                              **<u>Charts and Summaries</u>**

2                  Some of the exhibits in this case are charts and summaries.  These charts and

3     summaries were admitted merely as analyses and summaries of voluminous documents.   They

4     are not themselves, however, direct evidence.  It is the underlying evidence that determines what

5     weight, if any, these charts and summaries deserve.  It is for you to decide whether the charts and

6     summaries correctly present the information contained in the testimony and exhibits on which

7     they are based.  You are entitled to consider the charts and summaries if you find that they assist

8     you in analyzing and understanding the evidence.

9

1                                 **<u>Redacted Exhibits</u>**

2             Some exhibits are redacted.  "Redacted" means that part of the document was

3 taken out.  You are to focus on those portions of exhibits that have been admitted into evidence.

4 You should not consider any reason why parts of exhibits were deleted or redacted.

5

1          **<u>Witness Credibility</u>**

2          You have had the opportunity to observe all the witnesses.  How do you evaluate

3    the credibility or believability of those witnesses?  The answer is that you use your plain

4    common sense.  Was the witness candid, frank and forthright?  Or, did the witness appear

5    evasive as if he or she was trying to hide something?

6          How much you choose to believe a witness may be influenced by the witness'

7    bias.  Does the witness have some incentive, loyalty or motive that might cause him or her to

8    shade the truth; or, does the witness have some bias, prejudice or hostility that may have caused

9    the witness—consciously or not—to give you something other than a completely accurate

10   account of the facts?

11         You are not required to accept testimony even though the testimony is

12   uncontradicted, and the witness' testimony is not challenged.  You may decide, because of the

13   witness' bearing or demeanor, or because of the inherent improbability of the testimony, or for

14   other reasons that the testimony is not worthy of belief.

15         If you find that a witness willfully testified falsely, that is always a matter of

16   importance that you should weigh carefully.  If you find that any witness has lied under oath, you

17   should view the testimony cautiously and weigh it with great care.  It is, however, for you to

18   determine how much of the witness' testimony, if any, you wish to believe.

19         Thus, there is no magical formula by which you can evaluate testimony.  You

20   determine for yourself every day and in a multitude of circumstances the reliability of statements

21   made to you by others.  You may consider the interest of any witness in the outcome of this case,

22   regardless of who called or questioned the witness.

14

1           The issue of credibility may, but need not, be decided in an all-or-nothing fashion.

2   If you find that a witness testified falsely in one part you still may accept his or her testimony in

3   other parts, or you may disregard all of it.  That is a determination entirely for you, the jury.

4

1                                        **__Impeachment__**

2           You have evidence that at some earlier time witnesses have said or done

3 something, or failed to say or do something, which counsel argues is inconsistent with the

4 witnesses' trial testimony.

5           Evidence of a prior inconsistent statement is not to be considered by you as

6 affirmative evidence in determining the facts.  Evidence of a prior inconsistent statement was

7 placed before you for the more limited purpose of helping you decide whether to believe the trial

8 testimony of the witness who contradicted a prior statement.  If you find that the witness made an

9 earlier statement that conflicts with the witness's trial testimony, you may consider that fact in

10 deciding how much of the witness's trial testimony, if any, to believe.

11           In making this determination, you may consider whether the witness purposely

12 made a false statement or whether it was an innocent mistake; whether the inconsistency

13 concerns an important fact, or whether it had to do with a small detail; whether the witness had

14 an explanation for the inconsistency, and whether that explanation appealed to your common

15 sense.

16           It is exclusively your duty, based upon all the evidence and your own good

17 judgment, to determine whether the prior statement was inconsistent, and if so how much, if any,

18 weight to give to the inconsistent statement in determining whether to believe all or part of the

19 witness's testimony.

20

1        **<u>Preparation of Witnesses</u>**

2                You may have heard evidence during the trial that witnesses have discussed the

3    facts of the case and their testimony with the lawyers before the witnesses appeared in court.

4                Although you may consider that fact when you are evaluating a witness'

5    credibility, I should tell you that there is nothing either unusual or improper about a witness

6    meeting with lawyers before testifying so that the witness can be aware of the subjects he will be

7    questioned about, focus on those subjects and have the opportunity to review relevant exhibits

8    before being questioned about them.  Such consultation helps conserve your time and the Court's

9    time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

10               Again, the weight you give to the fact or the nature of the witness's preparation

11   for his or her testimony and what inferences you draw from such preparation are matters

12   completely within your discretion.

13

1        **<u>Interested Witnesses</u>**

2              In determining what weight you will attach to a witness' testimony, you should

3    consider the interest or lack of interest that a witness has in the outcome of this case.  That means

4    that in evaluating the credibility of the witness, you should take into account any evidence that

5    such witness may benefit in some way from the outcome of the case.  Such interest in the

6    outcome creates a motive to testify falsely and may sway a witness to testify in a way that

7    advances his or her own interests.  A witness who is interested in the outcome of a case is not

8    necessarily unworthy of belief, but the interest of a witness is a factor or possible motive that you

9    may consider in determining the weight and credibility to be given to his or her testimony.

10             Before leaving this subject, I wish to emphasize that merely because a witness has

11   an interest in the outcome of this litigation, this does not render him or her unworthy of your

12   belief.  You may, however, consider this interest as one factor, among others, in determining

13   what weight and credibility to attach to his or her testimony.

14

**Expert Opinion Testimony**

1

2          You have heard testimony from Dr. Ellis Horowitz.  Dr. Horowitz is a witness

3   who, by education or experience, has acquired learning or experience in a science or a

4   specialized area of knowledge.  Such a witness is permitted to give his opinions as to relevant

5   matters in which he professes to be knowledgeable and give his reasons for his opinions.  His

6   testimony is presented to you on the theory that someone who is experienced in the field can

7   assist you in understanding the evidence or in reaching an independent decision on the facts.

8          Your role in judging credibility applies to Dr. Horowitz as well as to other

9   witnesses.  You should consider Dr. Horowitz's opinions and give them as much or as little

10   weight as you think they deserve.  If you should decide that Dr. Horowitz's opinion was not

11   based on sufficient education or experience or on sufficient data, or if you should conclude that

12   his trustworthiness or credibility is questionable for any reason, or if his opinion was outweighed

13   in your judgment by other evidence in the case, then you might disregard Dr. Horowitz's opinion

14   entirely or in part.

15          On the other hand, if you find that Dr. Horowitz's opinion is based on sufficient

16   data, education and experience, and the other evidence does not give you reason to doubt his

17   conclusions, you would be justified in placing reliance on his testimony.

18

1                  **<u>All Available Witnesses or Evidence Need Not Be Produced</u>**

2               The law does not require any party to call as witnesses all persons who may have

3 been present at any time or place involved in the case, or who may appear to have some

4 knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as

5 exhibits all papers and things mentioned in the evidence in the case.

6

1    **II.    SUBSTANTIVE CLAIMS**

2            I will now instruct you on the substantive law to be applied in this case.  The

3    Plaintiffs' assert three categories of claims:  Federal copyright infringement claims; secondary

4    copyright infringement claims; and common law copyright infringement claims.  Each of these

5    categories will be explained in more detail in a moment.

6                        **Federal Copyright Infringement Claims**

7            First, I am going to discuss the components of Plaintiffs' federal copyright

8    infringement claims.  Musical compositions, sound recordings recorded <u>on or after</u> February 15,

9    1972, and images can be subject to federal copyright protection.  But sound recordings recorded

10   <u>before</u> February 15, 1972 are not subject to federal copyright protection.  Instead, they can be

11   subject to protection as "common law copyrights" under New York state law, which I will explain

12   later.

13                        **A.  <u>Copyright Ownership</u>**

14           The Plaintiffs in this case allege copyright infringement by MP3tunes and

15   Michael Robertson under various theories that I will explain to you.  As I mentioned at the

16   beginning of trial, the term "copyright" is the name for the rights that Congress has decided that the

17   law extends to an author of an original work.  As relevant to this trial, those rights include the

18   exclusive rights to copy the work, to distribute the work, to publicly perform the work, and to

19   license others to do so.

20           In any copyright infringement case, the first question is whether the Plaintiffs own

21   the copyrights at issue.  You will recall that the parties in this case reached a stipulation

22   regarding ownership that was read aloud to you and received in evidence.  Pursuant to that

1    agreement, there is no dispute that the Plaintiffs own the copyrights to each of the works at issue

2    in this case.

3    **B. <u>Overview of Direct and Secondary Infringement</u>**

4          The next question in a copyright infringement case is whether the copyrights

5    owned by the Plaintiffs have been infringed.

6          A copyright owner has the exclusive right to reproduce (or "copy,") distribute,

7    publicly perform, or publicly display a work.  I will explain the meaning of these exclusive rights in

8    greater detail later.  Because these rights are exclusive, if a person or company, without other

9    qualifying defenses, copies, distributes, publicly performs or publicly displays the work without a

10    license or other authorization from the copyright owner or someone the copyright owner has

11    authorized to give such permission, he or she is said to have "infringed" the copyright.

12          In brief, there are two types of infringement at issue in this case:  direct infringement

13    and secondary infringement liability.  When a person or company <u>itself</u> copies, distributes, publicly

14    performs or displays the copyrighted work without authorization or other defense, it is considered a

15    "direct infringement."  In order to be a direct infringer, a person or company must have engaged in a

16    volitional act that causes the alleged copying.  Plaintiffs claim that certain of their copyrights were

17    directly infringed by certain MP3tunes executives, by certain users of MP3tunes' system, and by

18    certain websites hosting files to which MP3tunes provided links.

19          In certain circumstances, people and companies who do not directly infringe

20    copyrights themselves can be liable for direct infringements committed by others.  This is known as

21    "secondary liability."

1          Plaintiffs contend that both MP3tunes and Michael Robertson are secondarily liable

2    for the infringing acts of MP3tunes executives, for the infringing acts of users of MP3tunes'

3    websites, and for the infringing acts of certain websites hosting files to which MP3tunes provided

4    links.  There are several different theories under which secondary liability may be imposed.  The

5    Plaintiffs' claims for secondary liability in this case include:   respondeat superior; vicarious liability;

6    corporate officer liability; and contributory liability.  I will explain these theories in greater detail

7    shortly.  In circumstances where more than one person or company is responsible for copyright

8    infringement, a copyright owner is entitled to sue all, one, or some of the infringers but not others.

9    You should not draw any inferences from the fact that the Plaintiffs here have brought claims against

10   Robertson and MP3tunes, but not against other persons involved in the infringement.

11         **C.  Reproduction Infringement Claims in Musical Compositions and Sound**
12             **Recordings**

13         One of the exclusive rights of a copyright owner is to "reproduce" a copyrighted

14   work.  As relevant here, to "reproduce" a work means to copy it.

15         **1.  Direct Infringement of Reproduction Rights**

16         The Plaintiffs claim that their exclusive right to reproduce certain sound

17   recordings and musical compositions was _directly_ infringed by certain MP3tunes executives

18   when those executives made copies of those works.  This issue was previously decided by this

19   Court and you will not need to consider it, as I will describe later.

20         The Plaintiffs also claim that certain MP3tunes users _directly_ infringed Plaintiffs'

21   exclusive right to reproduce certain sound recordings and musical compositions by making

22   copies of those sound recordings and musical compositions to MP3tunes' servers.  You will need

23   to decide whether MP3tunes users directly infringed Plaintiffs' reproduction rights.  As I told

1   you, to establish direct infringement of the Plaintiffs' reproduction right, Plaintiffs must prove by

2   a preponderance of the evidence that MP3tunes users who sideloaded songs in their lockers (1)

3   copied Plaintiffs' works, and (2) Plaintiffs did not authorize such copying of the copyrighted

4   work.

5   **2.   Secondary Infringement of Plaintiffs' Reproduction Rights**

6   Plaintiffs also claim that Michael Robertson and MP3tunes are liable for

7   secondary infringement of Plaintiffs' reproduction rights under various theories.  As I have

8   mentioned, in order for there to be secondary infringement, there must be an underlying direct

9   infringement.  I am going to begin with the secondary infringement theories relating to the direct

10   infringement of MP3tunes' executives.

11   **a)   Respondeat Superior Liability for Sideloads by MP3tunes**
12   **Executives (As to MP3tunes)**
13
14   Earlier in this case, the court found that certain sideloading by certain MP3tunes

15   executives directly infringed Plaintiffs' copyrights in certain musical compositions and sound

16   recordings by reproducing them without authorization.  You will decide whether MP3tunes is

17   secondarily liable for the direct infringements of those executives under the doctrine of respondeat

18   superior.

19   Under this doctrine, an employer is responsible for the act of its employee if the act is

20   in furtherance of the employer's business and is within the scope of the employee's authority.  An act is

21   within the scope of an employee's authority if it is performed while the employee is engaged generally

22   in the performance of his or her assigned duties or if the act is reasonably necessary or incidental to the

23   employment.  The employer need not have authorized the specific act in question.

24

1    If you find MP3tunes' executives were acting within the scope of their authority as

2 MP3tunes employees and in furtherance of MP3tunes' business when they directly infringed certain of

3 Plaintiffs' copyrights, then MP3tunes is legally responsible for its executives' copyright infringement

4 under the doctrine of respondeat superior.  However, if you find that MP3tunes' executives were acting

5 for personal reasons, MP3tunes is not secondarily liable for its executives' direct  infringements under

6 the doctrine of respondeat superior.  Plaintiffs have the burden of proof on this issue.

7    In evaluating Plaintiffs' claim with respect to infringing sideloads by MP3tunes

8 executives, you need not consider sideloads by Michael Robertson personally.  Those have been

9 separately addressed by the Court, and need not form any part of your consideration during this

10 phase of the trial.

11      **b)  Vicarious Liability for MP3tunes' Copyright Infringement**
12      **   through Executives (As to Michael Robertson)**

13    If and only if you find that MP3tunes is liable for its executives' direct

14 infringement under the doctrine of respondeat superior, you must go on to consider whether

15 Robertson himself is liable for MP3tunes' infringements (through its executives) under the

16 doctrine of vicarious liability.

17    The doctrine of vicarious liability is another way that a person can be secondarily

18 liable for the direct infringements of others.  In order to prove that Robertson is vicariously liable

19 for the infringements of MP3tunes (through its executives), Plaintiffs must prove by a

20 preponderance of the evidence that (1) Robertson had the right and ability to supervise the

21 infringing activity of MP3tunes, and (2) Robertson received a financial benefit directly attributable to

22 the infringing activity of MP3tunes.

1     A defendant has the "right and ability" to supervise infringing behavior when the

2 direct infringer depends upon the defendant for direction in such matters.  The right and ability to

3 control infringing behavior can also exist where a defendant has the ability to suspend or restrict

4 direct infringers' access to computer software used for the infringement at issue, or to block their

5 access to files that contain infringing content.

6     A defendant derives a direct financial benefit from infringing activity where there

7 is a causal relationship between the infringing activity and an obvious and direct financial

8 interest.   The direct financial benefit does not need to be substantial in proportion to a

9 defendant's overall profits.  For example, a direct financial benefit may be established where

10 infringing material acts as a "draw" to attract subscribers to a defendants' business, even if it is

11 not the primary, or even a significant draw.  The mere fact that a defendant is president and

12 shareholder of a company committing infringing acts or receiving benefits from infringing acts is

13 not sufficient by itself to establish a direct financial interest.

14     A person does not need knowledge of the infringing activity to be vicariously liable

15 for copyright infringement.

16          **c)   Corporate Officer Liability for MP3tunes' Copyright**
17               **Infringement through Executives (As to Michael Robertson)**

18     If and only if you find that MP3tunes is liable for its executives' direct

19 infringement under the doctrine of respondeat superior, then you must go on to consider whether

20 Robertson himself is liable as a corporate officer for MP3tunes' infringements.

21     Under federal copyright law, corporate officers who have the right and ability to

22 supervise copyright infringement and who benefit from copyright infringement are jointly liable

23 for such infringement.

26

### d)  Contributory Liability for MP3tunes Executives' Direct Infringement (As to Michael Robertson and MP3tunes)

Contributory infringement is another form of secondary liability for copyright infringement of another.  A defendant is liable for contributory infringement if, with knowledge of the infringing activity, that defendant induces, causes, or materially contributes to the infringing conduct of another.  Plaintiffs claim that MP3tunes and Michael Robertson are each liable for contributing to the direct infringement of MP3tunes' Executives.

Knowledge of the infringing conduct occurs when the defendant either knows, or has reason to know, of the direct infringement.  Without knowledge of infringing activity, a defendant cannot be found liable for simply providing a technology that may allow others to exchange copyrighted material.

A defendant induces, causes, or materially contributes to the infringing conduct of another if the defendant engages in personal conduct that is part of, encourages, or assists the infringement.  A defendant also materially contributes to infringement if it provides the machinery, goods, site or facilities for the infringement.  The site and facilities for infringement could consist of, for example, the software and services necessary for the infringing activities or the operation of servers that physically store the infringing content.

### e)  Secondary Liability for Infringements by Users (As to MP3tunes)

Now I am going to instruct you on Plaintiffs' secondary liability claims regarding direct infringement by MP3tunes users.  If and only if you determine that MP3tunes' users directly infringed Plaintiffs' copyrights, you must determine whether MP3tunes was contributorily liable for those direct infringements.

27

1        To make this determination, you must first decide whether MP3tunes is protected

2    by a defense under a law called the Digital Millennium Copyright Act or "DMCA."  As I

3    mentioned earlier, the DMCA provides online service providers with a "safe harbor."  That safe

4    harbor protects Online Service Providers, like MP3Tunes, by limiting their liability for infringing

5    conduct by their users.  This safe harbor cannot be used to protect a service provider against specific

6    infringements of which the provider has actual or apparent knowledge.  Apparent knowledge is often

7    called "red flag knowledge."  A provider cannot avoid actual knowledge of infringement by willfully

8    blinding itself to facts indicting infringement.

9        This Court has previously determined that MP3tunes is entitled to the DMCA safe

10   harbor defense except with respect to (1) any instances where it was willfully blind to the

11   infringement of specific works by its users, and (2) any instances where it had red flag knowledge of

12   the infringement of specific works by its users.

13                                    **Willful Blindness**

14       A service provider is willfully blind to infringing activity on its system if it (1) had

15   reason to suspect specific instances of infringement by its users of the specific work, and (2) it

16   consciously or deliberately avoided confirming that fact, or shielded itself from learning of the

17   particular infringing transactions by looking the other way.  For each work as to which Plaintiffs

18   contend that MP3tunes was willfully blind as to the infringement of the work, you must conclude,

19   based on the preponderance of the evidence, whether Plaintiffs have met that standard.

20       Your willful blindness determination must be directed towards specific and

21   identifiable instances of infringement.  Thus, even if you find MP3tunes was aware of a high

22   probability of general infringement by its users, that is not enough to establish willful blindness.

28

1   Instead, MP3tunes must be aware of specific facts or circumstances indicating that a particular work

2   belonging to Plaintiffs was copied in violation of copyright laws.  Then, MP3tunes must make a

3   deliberate effort to avoid confirming those specific facts or circumstances.

4          In determining whether MP3tunes was willfully blind to specific instances of

5   infringement, I instruct you that the nothing in the DMCA requires MP3tunes to affirmatively seek

6   facts indicating infringing activity.  MP3tunes has no obligation to affirmatively monitor its site for

7   instances of infringement, to use identification tools to locate infringements, or to take commercially

8   reasonable steps to in response to a generalized awareness of infringement.  Put another way, if

9   investigation is required to determine whether material is infringing, then MP3tunes is not willfully

10  blind to specific and identifiable instances of infringement.  Finally, you may not consider evidence

11  related to works not owned by Plaintiffs in determining willful blindness.

12         If you determine that MP3tunes was willfully blind to any specific instance of

13  infringement as I have outlined above, MP3tunes does not qualify for the DMCA safe harbor with

14  respect to that instance of infringement.  If, however, you determine MP3tunes was not willfully

15  blind to a specific instance of infringement, the DMCA safe harbor applies and there can be no

16  liability for that particular claim.

17                                  **Red Flag Knowledge**

18         Another condition a service provider must meet in order to be protected by the

19  DMCA "safe harbor" is that the service provider must not be aware of facts and circumstances—or

20  "red flags"—that would have made it apparent or obvious to a reasonable person that any specific

21  activity on its service was infringing.

1       For each work as to which Plaintiffs contend that MP3tunes had red flag knowledge

2   of infringement of the work, you must conclude, based on the preponderance of the evidence,

3   whether Plaintiffs have shown 1) that MP3tunes was subjectively aware of facts that 2) would have

4   made specific and identifiable instances of infringement objectively obvious to a reasonable person.

5       To establish the subjective knowledge prong, you must find that MP3tunes was

6   subjectively aware of information identifying specific instances of infringement.  General awareness

7   of infringement is not sufficient to establish red flag knowledge.  Put another way, if further

8   investigation of facts and circumstances is required to identify the material as infringing, then those

9   facts and circumstances are not red flags.

10      In determining whether MP3tunes had "red flag" knowledge of specific instances of

11  infringement, I instruct you that nothing in the DMCA requires MP3tunes to affirmatively seek facts

12  indicating infringing activity.  MP3tunes has no obligation to affirmatively monitor its site for

13  instances of infringement, use identification tools to locate infringements, or take commercially

14  reasonable steps in response to a generalized awareness of infringement.  Finally, you may not

15  consider evidence related to works not owned by Plaintiffs in determining willful blindness.

16      If you determine that MP3tunes had "red flag" knowledge of any specific instance of

17  infringement as I have outlined above, MP3tunes does not qualify for the DMCA safe harbor with

18  respect to that instance of infringement.  If, however, you determine MP3tunes did not have red flag

19  knowledge of a specific instance of infringement, the DMCA safe harbor applies and there can be no

20  liability for that particular claim.

21      If and only if you find that MP3tunes is not entitled to the DMCA safe harbor

22  because you found that it was willfully blind or had red flag knowledge, you must determine whether

1   MP3tunes is secondarily liable for the infringement of its users, through either contributory liability

2   or vicarious liability.   In reaching this determination, you should apply the same standards that I

3   explained to you earlier.   You should only consider MP3tunes' secondary liability with respect to

4   specific sound recordings and/or musical compositions as to which you have found that MP3tunes

5   was willfully blind or had red-flag knowledge.

6   **f)   Secondary Infringement through MP3tunes' Infringements**
7   **Through Users (As to Michael Robertson)**

8   If and only if you find that 1) MP3tunes is not entitled to the DMCA safe harbor

9   because it was willfully blind or had red flag knowledge regarding any particular works and 2)

10   that MP3tunes is secondarily liable for its users' infringements of those works through either

11   vicarious liability or contributory liability, you must further determine whether Robertson is

12   secondarily liable for such infringing copying.   In deciding Robertson's secondary liability, you

13   should apply to Robertson the standards for Corporate Officer Liability, Contributory Liability, and

14   Vicarious Liability I have previously discussed above.

15   In addition, this Court has already determined that MP3tunes is not entitled to the

16   DMCA safe harbor with respect to copies of Plaintiffs' works listed on takedown notices that

17   MP3tunes did not remove from users' lockers.   You must determine whether Robertson is

18   secondarily liable for such infringing copying.   To decide Robertson's secondary liability, you

19   should apply to Robertson the standards for Corporate Officer Liability, Contributory Liability,

20   and Vicarious Liability I have previously discussed above.

21

31

1

### D. Public Performance Infringement Claims in Musical Compositions and Sound Recordings

4      I will now turn to Plaintiffs' public performance claims.  Plaintiffs claim that MP3tunes secondarily infringed their exclusive rights to perform publicly their copyrighted sound recordings and musical compositions under federal law.  Plaintiffs also allege that Robertson is secondarily liable for such infringement.

8      To "perform" a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible.

11      To perform or display a work "publicly" means to 1) perform or display it at a place open to the public or at any place where a substantial number of persons outside a normal circle of a family and its social acquaintances is gathered; <u>or</u> 2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places, and at the same time or at different times.  A mere download is not a public performance.

18      The DMCA safe harbor is a defense to the public performance claim for the musical compositions and sound recordings at issue in this trial.  Therefore, you should only consider Plaintiffs' public performance claims with respect to those works, if any, for which you already found that MP3tunes was willfully blind or had red flag knowledge.

22

32

1
2

**1. Secondary Infringement of Plaintiffs Public Performance Rights (As to MP3tunes)**

3   First, you must consider whether any websites to which MP3tunes was providing

4   links through the Sideload.com website were publicly performing those works without authorization.

5   If and only if you find that these other websites directly infringed Plaintiffs' public

6   performance rights, you must consider whether MP3tunes is secondarily liable for such infringement

7   by applying the standards of Vicarious Liability and Contributory Liability that I explained to you

8   previously.

9
10

**2. Secondary Infringement of Plaintiffs' Public Performance Rights (As to Michael Robertson)**

11   If and only if you find that MP3tunes is secondarily liable for the infringing public

12   performance of Plaintiffs' sound recordings and musical compositions, you must also determine

13   whether Robertson is secondarily liable for that public performance.  To decide Robertson's personal

14   liability, you should apply to Robertson the standards of Corporate Officer Liability, Vicarious

15   Liability and Contributory Liability which I explained to you previously.

16
17

**E. Plaintiffs' Distribution Infringement Claim in Musical Compositions and Sound Recordings**

18   Now I will turn to Plaintiffs' distribution claims.  Plaintiffs claim that MP3tunes

19   directly and secondarily infringed their exclusive rights to distribute their copyrighted sound

20   recordings and musical compositions under federal law, and that Robertson is personally liable

21   for such infringement.

22   To "distribute" a work means to make it available to the public by sale or other

23   transfer of ownership, or by rental, lease or lending.  This includes electronic transfers of files

24   containing copyrighted works.

1    The DMCA safe harbor is a defense to the distribution claims at issue in this trial.

2    Therefore, you should only consider Plaintiffs' distribution claims with respect to those works, if

3    any, for which you already found that MP3tunes was willfully blind or had red flag knowledge.

### 1. Direct Infringement of Plaintiffs' Distribution Rights (As to MP3tunes)

6    In order to be a direct infringer of Plaintiffs' distribution rights, you must find that

7    MP3tunes made Plaintiffs' works available for distribution by allowing one user to freely move,

8    copy or transfer files from his or her own locker to a third party who did not have a right to the work.

### 2. Secondary Infringement of Plaintiffs' Distribution Rights

10    If you do not find that MP3tunes directly infringed Plaintiffs' distribution rights, you

11    must still consider whether other websites to which MP3tunes was providing links through

12    Sideload.com made Plaintiffs' works available for distribution without authorization, by allowing

13    one user to freely move, copy or transfer files to a third party who did not have a right to the work.

### a) Secondary Infringement of Plaintiffs' Distribution Rights (As to MP3tunes)

16    If and only if you find that these other websites were distributing Plaintiffs' works

17    without authorization, you must consider whether MP3tunes is secondarily liable for such

18    infringement of Plaintiffs' distribution rights, applying the standards of Vicarious Liability and

19    Contributory Liability that I explained to you previously.

### b) Secondary Infringement of Plaintiffs' Public Performance Rights (As to Michael Robertson)

22    If and only if you find that MP3tunes is either directly or secondarily liable for the

23    infringing distribution of Plaintiffs' sound recordings and musical compositions, you must also

24    determine whether Robertson is secondarily liable for those distributions.  To decide Robertson's

34

1   personal liability, you should apply to Robertson the standards of Corporate Officer Liability,

2   Vicarious Liability and Contributory Liability which I explained to you previously.

3   **Common Law Copyright Infringement Claims**

4   As I mentioned earlier, sound recordings recorded before February 15, 1972, may be

5   covered by state "common law copyrights," and may be subject to protection under the laws of the

6   various states, including the state of New York.  For these sound recordings, infringement claims are

7   judged not by the federal standard I just explained to you, but are instead governed by the doctrine of

8   common law copyright infringement.  A claim for New York common law copyright infringement

9   consists of two elements: 1) the existence of a valid copyright; and 2) unauthorized reproduction of

10  the work protected by the copyright.

11  **Unfair Competition Claim (As to MP3tunes)**

12  Now I will instruct you on Plaintiffs' unfair competition claim, which you must

13  evaluate only with respect to Plaintiffs' sound recordings and musical compositions recorded

14  before February 15, 1972.  To establish a claim for unfair competition under New York law

15  Plaintiffs must prove that 1) MP3tunes used Plaintiffs' works without authorization, 2) that

16  MP3tunes competed with Plaintiffs in the marketplace, and 3) that MP3tunes acted for

17  commercial benefit; or deceived the public.  Plaintiffs must also establish that MP3tunes

18  committed these acts in bad faith.  Bad faith exists, for example, when a defendant engages in a

19  pattern of behavior evincing a gross indifference to the rights of another or with knowledge that

20  it lacks authorization to do an act.

21  Earlier in this case, this Court determined that MP3tunes contributed to the

22  unauthorized use of Plaintiffs' works for purposes of the unfair competition claim only.  This finding

1   is irrelevant to the other determinations you are asked to make regarding MP3tunes' secondary

2   liability regarding Plaintiffs' other claims.   Thus, the remaining issues for your determination are

3   whether MP3tunes competed with Plaintiffs in the marketplace, whether MP3tunes acted for

4   commercial benefit or deceived the public, and whether MP3tunes' acted in bad faith.

5   **Secondary Liability for Unfair Competition (As to Robertson)**

6   If and only if you find that MP3tunes unfairly competed with the Plaintiffs, you

7   must also determine whether Robertson is secondarily liable for that unfair competition.   To decide

8   Robertson's secondary liability, you should apply to Robertson the standards of Corporate Officer

9   Liability, Vicarious Liability, and Contributory Liability I explained to you previously, with respect

10  to MP3tunes' conduct giving rise to liability for unfair competition.

11  **Federal Copyright Infringement (Cover Art Images)**

12  Now I will turn to Plaintiffs' infringement claims regarding cover art images they

13  own.   Images, like sound recordings and musical compositions, can be subject to the protection of the

14  copyright laws.

15  **Reproduction Infringement Claim (Cover Art)**

16  A defendant is liable for infringing reproduction of copyrighted images if it

17  reproduces (copies) the copyrighted images without permission from the copyright owner or

18  someone the copyright owner has authorized to give such permission.   To "reproduce" an image

19  means to copy it, such as by making copies of a computer file of the image.   Plaintiffs claim that

20  MP3tunes directly infringed certain cover art images they own by making copies of those images

21  onto the MP3tunes servers.   They also claim that Robertson is secondarily liable for such

22  infringement under the theories I have been discussing.   It is your role to conclude, based on the

36

1  preponderance of the evidence, whether MP3tunes directly infringed Plaintiffs' cover art images and,

2  if so, whether Robertson is secondarily liable for that infringement under the theories I have been

3  discussing.

4  **1.  Direct  Reproduction  Infringement  of  Cover  Art  Images**
5  **(As to MP3tunes)**

6  First, you must determine whether Plaintiffs have proved that MP3tunes engaged in a

7  volitional act causing the copying of cover art images in which Plaintiffs own copyrights, without

8  permission from the Plaintiffs or someone the copyright owner has authorized to give such

9  permission.

10  If you decide that the MP3tunes copied cover art, you will need to decide whether it

11  had permission, in the form of a license, to display that cover art in the manner that it did, or whether

12  it exceeded the scope of what was permitted under that license.  Reproduction is not unauthorized if

13  the company doing the copying has permission to do so from the copyright holder or someone the

14  copyright holder authorizes to give such permission.

15  **2.  Secondary Liability for MP3tunes' Reproduction Infringement of Cover**
16  **Art Images (As to Michael Robertson)**

17  If and only if you determine that MP3tunes directly infringed Plaintiffs' cover art

18  images, you must go on to determine whether Michael Robertson is secondarily liable for that

19  infringement.   To decide Robertson's secondary liability, you should apply to Robertson the

20  standards of Corporate Officer Liability, Vicarious Liability, and Contributory Liability, which I

21  explained to you previously.

22

23

**Public Display Infringement Claim (Cover Art)**

Plaintiffs' next claim is for infringement of their public display rights in connection with certain cover art.  Plaintiffs claim that MP3tunes directly infringed their exclusive rights to publicly display their cover art, and that Robertson is secondarily liable for such direct infringement.

As I mentioned before, to "display" a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process.  To perform or display a work "publicly" means 1) to display it at a place open to the public or at any place where a substantial number of persons outside a normal circle of a family and its social acquaintances is gathered; or 2) to transmit or otherwise communicate a display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places, and at the same time or at different times.

**1. Direct Public Display Infringement of Cover Art Images (As to MP3tunes)**

First, you must determine whether Plaintiffs proved that MP3tunes engaged in a volitional act causing the display of the works as to which Plaintiffs claim infringement of their public display rights, without authorization.

Unlike the public performance claims regarding musical compositions and sound recordings, the DMCA safe harbor I discussed earlier does not apply with respect to Plaintiffs' claim that MP3tunes directly infringed their rights in cover art images from Amazon.com, and you should not consider it here.

If you decide that MP3tunes infringed Plaintiffs' rights to publicly display their cover art, you will need to decide whether it had permission, in the form of a license, to display the cover

1   art in the manner that it did, or whether it exceeded the scope of what was permitted under that

2   license.  Public display is not unauthorized if the company making the display has permission to do

3   so from the copyright holder or someone the copyright holder authorizes to give such permission.

4           **2.    Secondary Liability for MP3tunes' Public Display Infringement of Cover**
5                   **Art Images (As to Michael Robertson)**

6           If and only if you determine that MP3tunes directly infringed Plaintiffs public display

7   rights in cover art images, you must go on to determine whether Michael Robertson is secondarily

8   liable for that infringement.   To decide Robertson's secondary liability, you should apply to

9   Robertson the standards of Corporate Officer Liability, Vicarious Liability, and Contributory

10  Liability, which I explained to you previously.

11

1 **Additional Charges under Consideration**

2 **Promotional Download Evidence**

3     You have heard evidence in this case regarding the Plaintiffs' offering of "promotional

4 downloads" over the Internet of certain copyrighted works.

5     At an earlier point in this proceeding, I decided that the Plaintiffs' promotion of some of their

6 music through online downloads during the times relevant to this litigation did not have the effect of

7 authorizing the Defendants to make Plaintiffs' copyrighted works available for download, or of

8 abandoning Plaintiffs' rights to enforce their copyrights in those works.  Therefore, you should treat

9 as decided that to the extent that Plaintiffs offered promotional downloads of their copyrighted works

10 during the relevant times, such conduct by Plaintiffs did not make it permissible for the Defendants

11 or their users to infringe Plaintiffs' copyrights, and you may not excuse Defendants from liability on

12 that basis.

13     However, I am still allowing the parties to present evidence on this topic for a more limited

14 different purpose.  During the liability phase of this case, in deciding Plaintiffs' claims regarding

15 willful blindness and red flag knowledge which I just explained to you, you must decide whether the

16 Defendants were willfully blind to, or had red flag knowledge of, particular infringing activity on

17 their websites.  You may consider the promotional activities of the Plaintiffs in deciding whether the

18 Defendants were willfully blind to, or had red flag knowledge of, the infringement of particular

19 works by their users, and may give such evidence the weight you deem appropriate, or no weight, as

20 you see fit from the evidence presented.

21

1                                    **<u>Controlled Composition Clauses</u>**

2            You heard testimony on the subject of "controlled composition" clauses and similar

3 mechanical royalty provisions in recording agreements between record labels and recording artists

4 that are also songwriters.   A "controlled compositions clause" and similar mechanical royalty

5 provisions in recording agreements executed after June 22, 1995 between record labels and recording

6 artists who are also songwriters do not reduce or eliminate the mechanical royalties payable to

7 songwriters and music publishers in connection with the making of digital downloads.   Thus, no

8 controlled composition clause or similar provision in any post-June 22, 1995 recording agreement

9 would permit a record label to make free promotional downloads without having an obligation to pay

10 the songwriter and the publisher the full mechanical royalty for each download, or obtaining a waiver

11 of such mechanical royalty pursuant to a "gratis license request."

12

1    **III.    <u>CLOSING INSTRUCTIONS</u>**

2                             <u>**Improper Considerations**</u>

3                 Your verdict must be based solely on the evidence or the lack of evidence.  It

4    would be improper for you to consider any personal feelings you may have about a party's race,

5    national origin, sex, sexual orientation, or age.  Similarly, it would be improper for you to

6    consider any personal feelings you may have about the race, religion, national origin, sex, or age

7    of any witness or anyone else involved in this case.  It would be equally improper for you to

8    allow any feelings you might have about the nature of the parties' claims to interfere with your

9    decision-making process.  Each of the parties are entitled to a trial free from prejudice, and our

10   judicial system cannot work unless you reach your verdict through a fair and impartial

11   consideration of the evidence.

12

## Duty to Deliberate/Unanimous Verdict

1

2          Shortly, you will go into the jury room to begin your deliberations.  In order to

3   prevail on their claims, the parties must sustain their burden of proof as I have explained to you

4   with respect to each element of their claims and affirmative defenses.

5          As you deliberate, please listen to the opinions of your fellow jurors, and ask for

6   an opportunity to express your own views.  Every juror should be heard.  No one juror should

7   hold center stage in the jury room, and no one juror should control and monopolize the

8   deliberations.  If, after listening to your fellow jurors, and if, after stating your own view, you

9   become convinced that your view is wrong, do not hesitate to change your view.  On the other

10  hand, do not surrender your honest convictions and beliefs solely because of the opinions of your

11  fellow jurors or because you are outnumbered.  Your final vote must reflect your conscientious

12  belief as to how the issues should be decided.

13         Your verdict must be unanimous.  Each of you must decide this case for yourself.

14  If at any time you are not in agreement, you are instructed that you are not to reveal the standing

15  of the jurors, that is, the split of the vote, to anyone, including the court, at any time during your

16  deliberations.  Finally, I say this not because I think it's necessary, but because it is the custom in

17  this courthouse to say this: you should treat each other with courtesy and respect in these

18  deliberations.

19         Your duty is to decide the issues fairly and impartially, and to see that justice is

20  done.  Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your

21  sole interests are to seek the truth from the evidence in the case, and to determine whether the

22  parties have proved their claims by a preponderance of the evidence or the parties have proved

1   their affirmative defenses by a preponderance of the evidence.  Discuss and weigh your

2   respective opinions dispassionately, without regard to sympathy, without regard to prejudice or

3   favor for either party, and adopt that conclusion which in your good conscience appears to be in

4   accordance with the truth.

5

1          **<u>Oath as a Juror</u>**

2          Under your oath as jurors you are not to be swayed by fear, prejudice, bias or

3    sympathy.  You are to be guided solely by the evidence in this case.  It is for you and you alone

4    to decide whether the Plaintiffs have proven that MP3tunes and Michael Robertson are liable for

5    copyright infringement, solely on the basis of the evidence or lack of evidence, and subject to the

6    law as I have instructed you.  It must be clear to you that once you let fear or prejudice, or bias or

7    sympathy interfere with your thinking there is a risk that you will not arrive at a true and just

8    verdict.

9          If you believe that the Plaintiffs have not proven by a preponderance of the

10   evidence a defendant's liability, you should not hesitate to render a verdict of not liable.  But, on

11   the other hand, if you should find that the Plaintiff's have met their burden of proving a

12   defendant's liability by a preponderance of the evidence, you should not hesitate because of

13   sympathy or any other reason to render a verdict of liable.

14

1    **<u>Right to See Exhibits and Hear Testimony; Communications with Court</u>**

2            Your first duty in the jury room is to elect one member of the jury as your

3    foreperson.  The foreperson has no greater voice or authority than any other juror, but is the

4    person who will communicate with the Court when questions arise.

5            Shortly you will go into the jury room and begin your deliberations.  If during

6    those deliberations you want to see any of the exhibits, they will be sent to you in the jury room

7    upon request.  A list of the exhibits received in evidence will be forwarded to you in the jury

8    room.  If you want any of the testimony read, that can also be done and will occur in open court.

9    But, please remember that it is not always easy to locate what you might want, so be as specific

10   as you possibly can in requesting exhibits or portions of testimony which you may want.

11           Your requests for exhibits or testimony – in fact any communication with the

12   court – should be made in writing, signed by your foreperson, and given to one of the marshals.

13   I will respond to any questions or requests you have as promptly as possible, by having you

14   return to the courtroom so I can speak with you in person.

15

1       ## Duty to Consult and Need for Unanimity

2               The most important part of this case is the part that you as jurors are now about to

3       play as you deliberate on the issues of fact.  It is for you, and you alone, to decide whether the

4       party with the burden of proof has proven the relevant elements of the claims or defenses by a

5       preponderance of the evidence.  In your oath, you promised that you would well and truly try the

6       issues joined in this case, and a true verdict render.

7               As you deliberate, please listen to the opinions of your fellow jurors, and ask for

8       an opportunity to express your own views.  All of you must be present together to hear one

9       another when you deliberate.  If one or more of you are not present, all deliberations should

10      cease until you are together again around the jury table.  Every juror should be heard.  No one

11      juror should control or monopolize the deliberations.  Each of you must decide this case for

12      yourself after consultation with your fellow jurors.  If after listening to your fellow jurors you

13      become convinced that your view is wrong, do not hesitate to change your view.  On the other

14      hand, do not surrender your honest convictions and beliefs solely because of the opinions of your

15      fellow jurors or because you are outnumbered.  Your final vote must reflect your conscientious

16      belief as to how the issues should be decided.

17              Your verdict must be unanimous.  If at any time you are not in agreement, you are

18      instructed that you are not to reveal the standing of the jurors, that is, the split of the vote, to

19      anyone, including the court, at any time during your deliberations.  Finally, I say this not because

20      I think it is necessary, but because it is the custom in this courthouse to say this: you should treat

21      each other with courtesy and respect in these deliberations.

1          Your duty is to decide the issues fairly and impartially, and to see that justice is

2  done.  Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your

3  sole interests are to seek the truth from the evidence in the case, and to determine whether the

4  Plaintiff's have proved or failed to prove their case by a preponderance of the evidence.

5          Members of the jury, I ask your patience for a few moments longer.  It is

6  necessary for me to spend a few moments with counsel and the reporter at the sidebar.  I will ask

7  you to remain patiently in the jury box without speaking to each other and we will return in a few

8  moments.